# Exhibit E3

Electronically Filed - St Louis County - December 11, 2017 - 04:27 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY,                )
PHARMACIA, LLC, and SOLUTIA,     )
INC.,                            )
                                 )
      Plaintiffs,                )
                                 )
v.                               )    Case No. 17SL-CC03368
                                 )
MAGNETEK, INC.,                  )    Oral Argument Requested
                                 )
      Defendant.                 )

**DEFENDANT MAGNETEK, INC.'S MOTION TO
DISMISS OR STAY THIS ACTION**

COMES NOW Defendant Magnetek, Inc., by and through its undersigned counsel, and hereby moving the Court for an order: (1) dismissing Plaintiffs' petition on principles of comity and equity based on an already-pending action in New Jersey involving the same parties and the same transactions and occurrences; (2) dismissing Plaintiff's petition pursuant to Rule 55.27(a)(2) based on a lack of personal jurisdiction over defendant, Magnetek, Inc.; or, (3) alternatively, dismissing Count VI of the petition pursuant to Rule 55.27(a)(6) for failure to state a claim upon which relief can be granted, together with such other and further relief as the Court deems just and proper.

As set forth more fully in the annexed affidavit of Ryan A. Lema, sworn to December 8, 2017, with exhibits, the affidavit of David Pierce, sworn to December 7, 2017, and the accompanying memorandum of law, Plaintiffs' petition should be dismissed because Plaintiffs commenced this duplicative action against Magnetek months after Magnetek commenced an action in New Jersey regarding the same underlying dispute. In the alternative, Plaintiffs' petition should either be dismissed, in its entirety, pursuant to

Electronically Filed - St Louis County - December 11, 2017 - 04:27 PM

Rule 55.27(a)(2) – because Magnetek is not subject to personal jurisdiction in Missouri; or dismissed, in part, pursuant to Rule 55.27(a)(6) – because Plaintiffs' count for negligent misrepresentation fails to state a claim upon which relief can be granted.  Finally, if the Court declines to dismiss Plaintiffs' petition in its entirety, this action should be stayed based on grounds of comity and equity.

WHEREFORE, Defendant Magnetek, Inc. respectfully moves this Court for an order dismissing Plaintiff's petition in its entirety or, in the alternative, dismissing Plaintiff's petition in part while further ordering that this action be stayed based on grounds of comity and equity.

**LEWIS RICE LLC**

By:    /s/  Scott A. Wissel
Scott A. Wissel, #49085
1010 Walnut Street, Suite 500
Kansas City, MO, 64106
(816) 421-2500 – Telephone
(826) 472-2500 – Facsimile

PHILLIPS LYTLE LLP
Craig A. Leslie (*pro hac vice* motion to be filed)
Ryan A. Lema (*pro hac vice* motion to be filed)
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
cleslie@phillipslytle.com
rlema@phillipslytle.com

Electronically Filed - St Louis County - December 11, 2017 - 04:27 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to interested parties.

/s/ Scott A. Wissel

Electronically Filed - St Louis County - December 14, 2017 - 11:10 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

| | |
|---|---|
| MONSANTO COMPANY, ) | |
| PHARMACIA, LLC, and ) | |
| SOLUTIA, INC., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | Case No. 17SL-CC03368 |
| vs. ) | |
| ) | Division 8 |
| MAGNETEK, INC., ) | |
| ) | |
|     Defendant. ) | |

**ENTRY OF APPEARANCE**

COMES NOW John M. Hessel of the law firm of Lewis Rice LLC and hereby enters his appearance as co-counsel for Defendant Magnetek, Inc.

Respectfully submitted,

**LEWIS RICE LLC**

By:/s/  John M. Hessel
    John M. Hessel, #26408
    600 Washington Avenue, Suite 2500
    St. Louis, MO 63101
    (314) 444-7735 – Phone
    (314) 612-7335 – Facsimile
    jhessel@lewisrice.com

    *Co-Counsel for Defendant*
    *Magnetek, Inc.*

2190772

Electronically Filed - St Louis County - December 14, 2017 - 11:10 AM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on plaintiff's counsel and all defense counsel of record via the Missouri Courts e-Filing System Pursuant to Missouri Rules of Civil Procedure 103.08 this 14th day of December, 2017.

In addition, the undersigned counsel certifies under Rule 55.03(a) of the Missouri Rules of Civil Procedure that he has signed the original of this certificate and the foregoing pleading.

/s/ John M. Hessel

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                  Plaintiffs,

    v.

MAGNETEK, INC.

                  Defendants.

Case No. 17SL-CC03368

**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Craig A. Leslie ("Applicant") in the above-captioned matter.  Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

_____
Presiding Judge

January 02, 2018

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                Plaintiffs,

    v.

MAGNETEK, INC.

                Defendants.

Case No. 17SL-CC03368


**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Jacob S. Sonner ("Applicant") in the above-captioned matter.  Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

_____
Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                         Plaintiffs,

      v.

MAGNETEK, INC.

                    Defendants.

Case No. 17SL-CC03368

## **ORDER**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Ryan A. Lema ("Applicant") in the above-captioned matter. Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

_____
Presiding Judge

January 02, 2018

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, )
PHARMACIA, LLC, and SOLUTIA, )
INC. )     Case No. 17SL-CC03368
)
Plaintiffs, )
)
v. )
)
MAGNETEK, INC. )
)
Defendant. )

**MOTION TO ADMIT *PRO HAC VICE*
CRAIG A. LESLIE**

COMES NOW Magnetek, Inc. ("Magnetek"), by and through its undersigned counsel, and hereby moves the Court for entry of an Order for admission *pro hac vice* of Craig A. Leslie ("Applicant"), attorney with the law firm Phillips Lytle LLP, as counsel for Magnetek in this action. In support of this motion, Magnetek states:

1. That the undersigned is a member in good standing of the Bar of the State of Missouri.

2. The undersigned is an attorney with the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri.

3. Applicant is counsel at Phillips Lytle LLP. He is a member in good standing of the bar of the state of New York and have been admitted to practice in the following Courts:

> Courts of the State of New York; U.S. District Court, Eastern District of New York; U.S. District Court, Northern District of New York; U.S. District Court, Southern District of New York; U.S. District Court, Western District of New York; U.S. Bankruptcy Court, Northern District of New York; U.S. Bankruptcy Court, Western District of New York; U.S. Court of Appeals, Second Circuit.

2008099.1

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

4.    Applicant is not under suspension or disbarment by the highest court of any state or territory of the United States or of the District of Columbia.

5.    Applicant will be acting in association with the undersigned for the purposes of representing Magnetek.

6.    The undersigned finds Applicant to be a reputable attorney and recommends that he be admitted to practice before this Court for the limited purpose of representing Magnetek in this action.

7.    Applicant's admission *pro hac vice* will assist in providing effective representation of Magnetek and will assist the Court in efficiently and expeditiously addressing and deciding the issues presented by this lawsuit.

8.    In support of this Motion, the Affidavit of Craig A. Leslie is attached together with a receipt for payment of the fee required by Supreme Court Rule 6.01(m), which items are marked Exhibits A and B, respectively.

9.    A proposed Order is also attached hereto as Exhibit C.

WHEREFORE, Movant asks that the Court enter an order granting this Motion and admitting Applicant to practice *pro hac vice* in this action.

Respectfully submitted,

**LEWIS RICE LLC**

By:    /s/ Scott A. Wissel
Scott A. Wissel, #49085
1010 Walnut Street, Suite 500
Kansas City, MO, 64106
(816) 421-2500 – Telephone
(826) 472-2500 – Facsimile

*ATTORNEYS FOR PLAINTIFF*

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to interested parties.

 /s/ Scott A. Wissel

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit A

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC. | ) ) ) | |
| Plaintiffs, | ) | Case No. 17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| Defendant. | ) ) | |

### AFFIDAVIT OF CRAIG A. LESLIE

I, Craig A. Leslie, being duly sworn, state as follows:

1.    I am an attorney with the law firm of Phillips Lytle LLP.

2.    I am a licensed attorney and a member in good standing of the bar in the State of New York.  Neither I nor any member of my firm are under suspension or disbarment by any such court.

3.    I wish to appear *pro hac vice* on behalf of Magnetek, Inc. in the above-styled case.

4.    I agree to subject myself to the jurisdiction of the courts of Missouri in any manner arising out of my conduct in such proceedings and agree to be bound by the Code of Professional Responsibility applicable to Missouri lawyers and the interpretation thereof by Missouri courts.

5.    Scott A. Wissel, of the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri, is the attorney of record in this case and will serve as associate counsel.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Craig A. Leslie

Sworn to and subscribed before me this _____ day of December 2017.

_____
Notary Public

RHONDA A. MILLER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20___

- 2 -

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit B

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM



**CLERK OF THE SUPREME COURT**
**STATE OF MISSOURI**
**POST OFFICE BOX 150**
**JEFFERSON CITY, MISSOURI**
65102

BETSY AUBUCHON
CLERK

TELEPHONE
(573) 751-4144

December 14, 2017

*This will hereby acknowledge receipt of $1230 as required by Rule 6.01(m) for Craig A. Leslie, Ryan A. Lema and Jacob S. Sonner, appearing in Monsanto Company et al. v. Magnetek, Inc., Case No. 17SL-CC03368, before the Circuit Court of St. Louis County, State of Missouri.*

Betsy AuBuchon, Clerk

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit C

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

              Plaintiffs,

   v.

MAGNETEK, INC.

             Defendants.

Case No. 17SL-CC03368

**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice*

Craig A. Leslie ("Applicant") in the above-captioned matter.  Applicant is hereby admitted

pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

                                        _____

                                        Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

MONSANTO COMPANY,       )
PHARMACIA, LLC, and SOLUTIA,  )
INC.                        )
                           )
       Plaintiffs,         )
                           )
v.                           )
                           )
MAGNETEK, INC.           )
                           )
       Defendant.        )

Case No. 17SL-CC03368

## MOTION TO ADMIT *PRO HAC VICE*
## JACOB S. SONNER

COMES NOW Magnetek, Inc. ("Magnetek"), by and through its undersigned counsel, and hereby moves the Court for entry of an Order for admission *pro hac vice* of Jacob S. Sonner ("Applicant"), attorney with the law firm Phillips Lytle LLP, as counsel for Magnetek in this action. In support of this motion, Magnetek states:

1. That the undersigned is a member in good standing of the Bar of the State of Missouri.

2. The undersigned is an attorney with the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri.

3. Applicant is counsel at Phillips Lytle LLP. He is a member in good standing of the bar of the state of New York and have been admitted to practice in the following Courts:

    Courts of the State of New York; U.S. District Court, Western District of New York; U.S. Bankruptcy Court, Western District of New York.

4. Applicant is not under suspension or disbarment by the highest court of any state or territory of the United States or of the District of Columbia.

2008099.1

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

5.     Applicant will be acting in association with the undersigned for the purposes of representing Magnetek.

6.     The undersigned finds Applicant to be a reputable attorney and recommends that he be admitted to practice before this Court for the limited purpose of representing Magnetek in this action.

7.     Applicant's admission *pro hac vice* will assist in providing effective representation of Magnetek and will assist the Court in efficiently and expeditiously addressing and deciding the issues presented by this lawsuit.

8.     In support of this Motion, the Affidavit of Jacob S. Sonner is attached together with a receipt for payment of the fee required by Supreme Court Rule 6.01(m), which items are marked Exhibits A and B, respectively.

9.     A proposed Order is also attached hereto as Exhibit C.

WHEREFORE, Movant asks that the Court enter an order granting this Motion and admitting Applicant to practice *pro hac vice* in this action.

Respectfully submitted,

**LEWIS RICE LLC**

By:  ____/s/ Scott A. Wissel___
Scott A. Wissel, #49085
1010 Walnut Street, Suite 500
Kansas City, MO, 64106
(816) 421-2500 – Telephone
(826) 472-2500 – Facsimile

*ATTORNEYS FOR PLAINTIFF*

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to interested parties.


 /s/ Scott A. Wissel

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit A

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY,                    )
PHARMACIA, LLC, and SOLUTIA,         )        Case No. 17SL-CC03368
INC.                                 )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )
                                     )
MAGNETEK, INC.                       )
                                     )
            Defendant.               )

**AFFIDAVIT OF JACOB S. SONNER**

I, Jacob S. Sonner, being duly sworn, state as follows:

1.      I am an attorney with the law firm of Phillips Lytle LLP.

2.      I am a licensed attorney and a member in good standing of the bar in the State of New York.  Neither I nor any member of my firm are under suspension or disbarment by any such court.

3.      I wish to appear *pro hac vice* on behalf of Magnetek, Inc. in the above-styled case.

4.      I agree to subject myself to the jurisdiction of the courts of Missouri in any manner arising out of my conduct in such proceedings and agree to be bound by the Code of Professional Responsibility applicable to Missouri lawyers and the interpretation thereof by Missouri courts.

5.      Scott A. Wissel, of the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri, is the attorney of record in this case and will serve as associate counsel.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jacob S. Sonner

Sworn to and subscribed before me this 11th day of December 2017.

_____
Notary Public

RHONDA A. MILLER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20 21

- 2 -

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit B

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM



**CLERK OF THE SUPREME COURT**
STATE OF MISSOURI
POST OFFICE BOX 150
**JEFFERSON CITY, MISSOURI**
65102

BETSY AUBUCHON
CLERK

TELEPHONE
(573) 751-4144

December 14, 2017

*This will hereby acknowledge receipt of $1230 as required by Rule 6.01(m) for Craig A. Leslie, Ryan A. Lema and Jacob S. Sonner, appearing in Monsanto Company et al. v. Magnetek, Inc., Case No. 17SL-CC03368, before the Circuit Court of St. Louis County, State of Missouri.*

Betsy AuBuchon, Clerk

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit C

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

     Plaintiffs,

 v.

MAGNETEK, INC.

     Defendants.

Case No. 17SL-CC03368


<u>**ORDER**</u>

   IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice*

Jacob S. Sonner ("Applicant") in the above-captioned matter.  Applicant is hereby admitted

pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.


        _____

         Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

MONSANTO COMPANY,        )
PHARMACIA, LLC, and SOLUTIA,  )
INC.                                 )
            )
       Plaintiffs,            )
            )
v.                                   )
            )
MAGNETEK, INC.            )
            )
       Defendant.          )

Case No. 17SL-CC03368

## MOTION TO ADMIT *PRO HAC VICE* RYAN A. LEMA

COMES NOW Magnetek, Inc. ("Magnetek"), by and through its undersigned counsel, and hereby moves the Court for entry of an Order for admission *pro hac vice* of Ryan A. Lema ("Applicant"), attorney with the law firm Phillips Lytle LLP, as counsel for Magnetek in this action.  In support of this motion, Magnetek states:

1.      That the undersigned is a member in good standing of the Bar of the State of Missouri.

2.      The undersigned is an attorney with the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri.

3.      Applicant is counsel at Phillips Lytle LLP. He is a member in good standing of the bar of the state of New York and have been admitted to practice in the following Courts:

> Courts of the State of New York; Courts of the Commonwealth of Massachusetts; U.S. District Court, Eastern District of New York; U.S. District Court, Northern District of New York; U.S. District Court, Southern District of New York; U.S. District Court, Western District of New York; U.S. Bankruptcy Court, Western District of New York; U.S. Court of Appeals, Second Circuit.

2008099.1

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

4.    Applicant is not under suspension or disbarment by the highest court of any state or territory of the United States or of the District of Columbia.

5.    Applicant will be acting in association with the undersigned for the purposes of representing Magnetek.

6.    The undersigned finds Applicant to be a reputable attorney and recommends that he be admitted to practice before this Court for the limited purpose of representing Magnetek in this action.

7.    Applicant's admission *pro hac vice* will assist in providing effective representation of Magnetek and will assist the Court in efficiently and expeditiously addressing and deciding the issues presented by this lawsuit.

8.    In support of this Motion, the Affidavit of Ryan A. Lema is attached together with a receipt for payment of the fee required by Supreme Court Rule 6.01(m), which items are marked Exhibits A and B, respectively.

9.    A proposed Order is also attached hereto as Exhibit C.

WHEREFORE, Movant asks that the Court enter an order granting this Motion and admitting Applicant to practice *pro hac vice* in this action.

Respectfully submitted,

**LEWIS RICE LLC**

By:  ___/s/ Scott A. Wissel___
Scott A. Wissel, #49085
1010 Walnut Street, Suite 500
Kansas City, MO, 64106
(816) 421-2500 – Telephone
(826) 472-2500 – Facsimile

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2017, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to interested parties.

 /s/ Scott A. Wissel

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit A

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY,        )
PHARMACIA, LLC, and SOLUTIA,  )
INC.                                   )
                                 )
               Plaintiffs,     )      Case No. 17SL-CC03368
                                 )
     v.                             )
                                 )
MAGNETEK, INC.            )
                                 )
              Defendant.     )

**AFFIDAVIT OF RYAN A. LEMA**

I, Ryan A. Lema, being duly sworn, state as follows:

1.      I am an attorney with the law firm of Phillips Lytle LLP.

2.      I am a licensed attorney and a member in good standing of the bar in the State of New York and the Commonwealth of Massachusetts.  Neither I nor any member of my firm are under suspension or disbarment by any such court.

3.      I wish to appear *pro hac vice* on behalf of Magnetek, Inc. in the above-styled case.

4.      I agree to subject myself to the jurisdiction of the courts of Missouri in any manner arising out of my conduct in such proceedings and agree to be bound by the Code of Professional Responsibility applicable to Missouri lawyers and the interpretation thereof by Missouri courts.

5.      Scott A. Wissel, of the law firm Lewis Rice, having an office at 1010 Walnut, Suite 500, Kansas City, Missouri, is the attorney of record in this case and will serve as associate counsel.

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

FURTHER AFFIANT SAYETH NAUGHT.

_____
Ryan A. Lema

Sworn to and subscribed before me this ___ day of December 2017.

_____
Notary Public

MARIAN SARZYNIAK
No. 01SA6206283
Notary Public, State of New York
Qualified in Niagara County
My Commission Expires 05/18/20__

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit B

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM



**CLERK OF THE SUPREME COURT**
STATE OF MISSOURI
POST OFFICE BOX 150
**JEFFERSON CITY, MISSOURI**
65102

BETSY AUBUCHON
CLERK

TELEPHONE
(573) 751-4144

December 14, 2017

*This will hereby acknowledge receipt of $1230 as required by Rule 6.01(m) for Craig A. Leslie, Ryan A. Lema and Jacob S. Sonner, appearing in Monsanto Company et al. v. Magnetek, Inc., Case No. 17SL-CC03368, before the Circuit Court of St. Louis County, State of Missouri.*

Betsy AuBuchon, Clerk

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

# Exhibit C

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                  Plaintiffs,

    v.

MAGNETEK, INC.

                Defendants.

Case No. 17SL-CC03368

**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Ryan A. Lema ("Applicant") in the above-captioned matter. Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

                               _____

                                 Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                        Plaintiffs,

    v.

MAGNETEK, INC.

                        Defendants.

Case No. 17SL-CC03368

**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Craig A. Leslie ("Applicant") in the above-captioned matter.  Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

_____

Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                 Plaintiffs,

    v.

MAGNETEK, INC.

                 Defendants.

Case No. 17SL-CC03368

<u>**ORDER**</u>

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Jacob S. Sonner ("Applicant") in the above-captioned matter.  Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

                                        _____

                                          Presiding Judge

Electronically Filed - St Louis County - December 19, 2017 - 04:35 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.

                Plaintiffs,

    v.

MAGNETEK, INC.

                Defendants.

Case No. 17SL-CC03368

**<u>ORDER</u>**

IT IS HEREBY ORDERED THAT this Court grants the Motion to Admit *Pro Hac Vice* Ryan A. Lema ("Applicant") in the above-captioned matter.  Applicant is hereby admitted pursuant to Missouri Supreme Court Rule 9.03 to appear on behalf of Magnetek, Inc.

                                             _____
                                                 Presiding Judge

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

**FILED**
DEC 22 2017
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

MONSANTO COMPANY,          )
PHARMACIA, LLC, and        )
SOLUTIA, INC.,             )
                           )
        Plaintiffs,        )
                           )     Case No. 17SL-CC03368
vs.                        )
                           )     Division 8
MAGNETEK, INC.,            )
                           )
        Defendant.         )

## ORDER

By agreement of the parties, Plaintiff shall file its Memorandum in Opposition to Defendant's Motion to Dismiss or Stay on or before January 19, 2018. Defendant shall file its Reply Memorandum on or before February 2, 2018. A hearing for oral argument on the Motion is set for February _16_, 2018. *at 1:30 pm .*

THOMPSON COBURN LLP              **LEWIS RICE LLC**

By: _/s/ Christopher M. Hohn_    By: ___/s/ John M. Hessel____
   John R. Musgrave, #20358         John M. Hessel, #26408
   Christopher M. Hohn, #44124      600 Washington Avenue, Suite 2500
   A. Elizabeth Blackwell, #50270   St. Louis, MO 63101
   Susan L. Werstak, #55689         (314) 444-7735 – Phone
   David M. Mangian, #61728         (314) 612-7335 – Facsimile
   One U.S. Bank Plaza              jhessel@lewisrice.com
   St. Louis, MO 63101
   (314) 552-6000 (telephone)       *Co-Counsel for Deft. Magnetek, Inc.*
   chohn@thompsoncoburn.com

*Counsel for Plaintiff*

So ordered,
Dean P. Waldemer

2190772

**LEWIS RICE LLC**

By:  /s/  Scott A. Wissel
    Scott A. Wissel, #49085
    1010 Walnut Street, Suite 500
    Kansas City, MO 64106
    (816) 421-2500 – Phone
    (816) 472-2500 – Facsimile
    sawissel@lewisrice.com

*Co-Counsel for Deft. Magnetek, Inc.*

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
MAGNETEK, INC.'S MOTION TO DISMISS OR STAY THIS ACTION**

John R. Musgrave #20358
Christopher M. Hohn #44124
A. Elizabeth Blackwell #50270
Susan L. Werstak, #55689
David M. Mangian #61728
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 2

   A.  UMC Entered Into The SUA In Missouri ................................................ 2

   B.  Defendant Refused To Defend Or Indemnify Old Monsanto Under The SUA ................. 4

   C.  Defendant Filed A Preemptive "Placeholder" Declaratory Judgment Lawsuit In New Jersey During The Parties Negotiations ................. 5

   D.  The Court Denied Plaintiffs' Motions To Dismiss The New Jersey Action *Without Prejudice* Subject To Further Jurisdictional Discovery Proceedings ................. 6

III.   ARGUMENT ................................................................................................. 7

   A.  Magnetek Is Subject To Specific Personal Jurisdiction In Missouri ................. 7

      1.  UMC's Jurisdictional Contacts With Missouri Are Imputed To Magnetek ................. 8

      2.  Missouri's Long-Arm Statute Is Satisfied ................. 8

         a.  Magnetek Made Multiple Contracts In Missouri ................. 9

         b.  Magnetek Transacted Business In Missouri ................. 9

         c.  Magnetek Contracted To Insure A Person, Property, Or Risk Located Within Missouri At The Time Of Contracting ................. 10

         d.  Magnetek Committed Tortious Acts Producing Actionable Consequences In Missouri ................. 11

      3.  Magnetek's Substantial Contacts With Missouri Relating to the SUA Are Sufficient Minimum Contacts To Satisfy Due Process ................. 12

         a.  Magnetek Entered Into The Contract At Issue In Missouri And It Requires Magnetek To Defend And Indemnify A Missouri Company Relating To PCBs Magnetek Purchased In Missouri ................. 13

         b.  Defendant Communicated With Old Monsanto In Missouri Regarding Alleged Insurance Covering UMC's Obligations Under The SUA ................. 15

i

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

c.    Magnetek Rejected Plaintiffs' Tender And Thereby Breached The SUA In Missouri ................................................................................................... 16

d.    UMC Committed Tortious Acts In Missouri With Effects Directed And Felt In Missouri ................................................................................................... 16

e.    UMC Was Physically Present In Missouri Relating to PCBs Purchased Pursuant To The SUA .......................................................................................... 17

f.    Magnetek's Due Process Analysis Should Be Rejected ..................................... 18

g.    Exercise Of Personal Jurisdiction Over Magnetek Is Reasonable ................... 21

4.    Alternatively, The Court Should Allow Jurisdictional Discovery ........................... 22

B.    This Court Should Not Exercise Its Discretion To Dismiss Or Stay This Case In Favor Of The New Jersey Action ................................................................................................... 23

C.    Plaintiffs' Negligent Misrepresentation Claim Is Sufficiently Pleaded ........................... 26

IV.    CONCLUSION ................................................................................................... 28

CERTIFICATE OF SERVICE ................................................................................................... 29

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmSouth Bank v. Dale,*
    386 F.3d 763 (6th Cir. 2004) ................................................................24

*Andra v. Left Gate Property Holding, Inc.,*
    453 S.W.3d 216 (Mo. 2015) ......................................................... *passim*

*BASF Corp. v. Symington,*
    50 F.3d 555 (8th Cir. 1995) ................................................................24

*Bennett v. Rapid Am. Corp.,*
    816 S.W.2d 677 (Mo. 1991) ................................................................8

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
    137 S.Ct. 1773 (2017) ................................................................7

*Bryant v. Smith Interior Design Group, Inc.,*
    310 S.W.3d 227 (Mo. banc 2010) .................................................. *passim*

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................20

*Burnham v. Superior Court of California, County of Marin,*
    495 U.S. 604 (1990) ................................................................17

*Cepia, LLC v. Universal Pictures Visual Programming Limited,*
    177 F. Supp. 3d 1129 (E.D. Mo. 2016) ..................................................19

*Chromalloy Am. Corp. v. Elyria Foundry Co.,*
    955 S.W.2d 1 (Mo. 1997) ......................................................... *passim*

*Clockwork Home Servs., Inc. v. Robinson,*
    423 F.Supp.2d 984 (E.D. Mo. 2006) ................................................24

*Cutten v. Latshaw,*
    344 S.W. 2d 257 (Mo. Ct. App. 1961) ................................................25

*Daimler AG v. Bauman,*
    134 S.Ct. 746 (2014) ................................................................7, 12

*State ex rel. Deere & Co. v. Pinnell,*
    454 S.W.2d 889 (Mo. 1970) ................................................................22

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Digitrax Entm't, LLC v. Universal Music Corp.*,
  21 F.Supp.3d 917 (E.D. Tenn. 2014) .................................................................24

*Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*,
  23 F.Supp.2d 906 (N.D. Ill. 1998) ....................................................................24

*Fruit of the Loom, Inc. v. Travelers Indemn. Co.*,
  284 Ill. App. 3d 485 (Ill. App. 1996) .......................................................2, 3, 26

*Green v. Montgomery Ward & Co.*,
  775 S.W.2d 162 (Mo. Ct. App. 1989) .................................................................8

*Grey v. Independent Orders of Foresters*,
  196 S.W. 779 (Mo. Ct. App. 1917) ...................................................................25

*Hale v. Hale*,
  781 S.W. 2d 815 (Mo. Ct. App. 1989) ..............................................................25

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................19, 20

*Jewell v. Jewell*,
  484 S.W. 2d 668 (Mo. Ct. App. 1972) ..............................................................25

*Magnetek, Inc. v. The Travelers Indemnity Co., et al.*,
  Case No. 1:17-CV-3173-RWG-SEC, ECF No. 32 (N.D. Ill. Jan. 5, 2018)........27

*State ex rel Miller v. Jones*,
  349 S.W.2d  534 (Mo. Ct. App. 1961) ..............................................................25

*Monsanto Co. v. Gould Electrs., Inc.*,
  965 S.W.2d 314, 317-18 (Mo. Ct. App. 1998) ..............................................4, 24

*Mountaire Feeds, Inc. v. Agro Impex, S.A.*,
  677 F.2d 651 (8th Cir. 1982) .............................................................................18

*State ex. rel. Newport v. Wiesman*,
  627 S.W.2d 874 (Mo. 1982) ................................................................................9

*State ex rel. Nixon v. Beer Nuts, Ltd.*,
  29 S.W.3d 828 (Mo. Ct. App. 2000).................................................................10

*Peoples Bank v. Frazee*,
  318 S.W.3d 121 (Mo. 2010) .......................................................................*passim*

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ...............................................................................8

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
    322 S.W.3d 112 (Mo. 2010) ................................................................27

*Strobehn v. Mason*,
    397 S.W.3d (Mo. Ct. App. 2013) ...................................................9, 13

*U.S. Durum Milling, Inc. v. Frescala Foods, Inc.*,
    785 F. Supp. 1369 (E.D. Mo. 1992) .................................................9

**Statutes**

RSMo. § 506.500.1 ......................................................................8, 11

RSMo. § 506.500.1(1) ..............................................................8, 9, 10

RSMo. § 506.500.1(2) ..................................................................8

RSMo. § 506.500.1(3) ..............................................................9, 11, 12

RSMo. § 506.500.1(5) ..................................................................8

RSMo. § 506.500.1(5) ..................................................................10

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## I.    INTRODUCTION

This Court has specific personal jurisdiction over Defendant Magnetek, Inc. ("Magnetek"), which is the successor in interest to Universal Manufacturing Company ("UMC"). This case arises directly out of Magnetek's breach of a Missouri contract, its predecessor's purchases of millions of pounds of polychlorinated biphenyls ("PCBs") from Pharmacia, LLC, f/k/a Monsanto Chemical Co. ("Old Monsanto") that was based in Missouri, and UMC's negligent misrepresentations made in Missouri that have resulted in harm being sustained in Missouri. Magnetek's motion to dismiss ignores the substantial factual record and the black-letter law of specific personal jurisdiction and should be denied.

The central contract at issue—the 1972 "Special Undertaking by Purchasers of Polychlorinated Biphenyls" (the "SUA")—requires Magnetek to defend, indemnify, and hold harmless Old Monsanto "from and against all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses arising out of or in connection with" the more than eleven million pounds of PCBs UMC purchased from Old Monsanto between 1972 and 1977. Plaintiffs Old Monsanto, Monsanto Company ("New Monsanto"), and Solutia, Inc. (collectively, "Plaintiffs") were subsequently sued by third parties in Missouri and elsewhere in connection with UMC's use of PCBs sold pursuant to the SUA. The SUA requires Magnetek to defend and provide indemnification for those suits, but Magnetek has refused to do so, a breach of contract resulting in significant damages to Plaintiffs. UMC's entry into a Missouri contract requiring it to defend and indemnify a company that was located in Missouri, UMC's submission of PCB purchase orders to Old Monsanto in Missouri, along with UMC's numerous other suit-related contacts with Missouri described in detail below are more than sufficient to subject Magnetek to specific personal jurisdiction in Missouri.

1

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

The Court should also deny Defendant's request to dismiss or stay this lawsuit in favor of Magnetek's preemptive "placeholder" declaratory judgment lawsuit filed by Magnetek in New Jersey state court during the pendency of the parties' settlement-related discussions. First, the New Jersey action is due to be dismissed, because the New Jersey court lacks jurisdiction over New Monsanto and Solutia, both of whom are indispensable parties to the litigation. Second, the Plaintiffs here are the rightful Plaintiffs who are seeking significant damages from Magnetek for breach of a Missouri contract and other claims, whereas Magnetek solely seeks in its New Jersey action a declaration of non-liability. Plaintiffs should not be denied their right to litigate their claims for damages in their chosen forum simply because Defendant surreptitiously filed a preemptive declaratory judgment lawsuit first in New Jersey.

Finally, the Court should reject Defendant's challenge to Plaintiffs' negligent misrepresentation claim. The Petition sufficiently alleges all of the elements of a claim for negligent misrepresentation under Missouri law, including that UMC's representations to Old Monsanto were false due to the failure to exercise reasonable care. For these reasons, this Court should deny Defendant's Motion to Dismiss or Stay This Action ("MTD").

## II.     <u>BACKGROUND</u>

### A.     UMC Entered Into The SUA In Missouri.

Magnetek is the successor by merger to UMC. Pet., ¶ 15; Affidavit of David Pierce ("<u>Pierce Aff.</u>"), ¶ 2. UMC purchased approximately 11,918,600 pounds of PCBs—which are extremely stable, chemically inert, resistant to heat and fire, and highly electrically resistive (Pet., ¶ 20)—from Old Monsanto between January 1972 and 1977. Affidavit of Robert G. Kaley, II ("<u>Kaley Aff.</u>"), Ex. B. UMC incorporated those PCBs into capacitors and lighting ballasts it manufactured and sold. *See Fruit of the Loom, Inc. v. Travelers Indemn. Co.*, 284 Ill.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

App. 3d 485, 487 (Ill. App. 1996); Pierce Aff., ¶ 4.  At the time, Old Monsanto's principal place of business was in Missouri.  UMC purchased PCBs by contacting Old Monsanto in Missouri— by telephone and by sending purchase orders to Old Monsanto in Missouri (*see* Kaley Aff., Ex. C). UMC entered into sales contracts for PCBs that were executed in Missouri and that contain Missouri choice of law provisions.  Kaley Aff., Ex. D.  UMC ultimately released thousands of gallons of the PCBs it purchased from Old Monsanto into the environment through spills, leaks, and improper disposal and dumping.  *See Fruit of the Loom, Inc.*, 284 Ill. App. 3d at 488-89. PCBs purchased by UMC also were released into the environment from PCB-containing products manufactured and sold by Defendant.

In 1970, Old Monsanto announced a preliminary decision to cease all production of PCBs, which would have eliminated all then-existing PCB production in the United States.  Pet., ¶ 26. Because its decision would have left members of the U.S. electric industry without a domestic source for the PCBs required by existing industry standards, and deemed "necessary" by the federal government, Old Monsanto revised its approach at the request of its customers. Pet., ¶ 27.  Old Monsanto agreed to continue to supply PCBs for certain closed electrical applications until the U.S. Environmental Protection Agency, members of the transformer and capacitor industries, and Old Monsanto could reach a consensus judgment that suitable alternatives to PCBs were available.  Pet., ¶ 28.  Old Monsanto agreed to continue to produce PCBs for its customers to use in electrical applications after 1971, but only if they would agree to defend and indemnify Old Monsanto against future PCB-related claims.  Pet., ¶ 41.

After negotiating the particular terms of the agreement, on January 7, 1972, UMC and Old Monsanto entered into the SUA.  Pet., ¶ 43. The SUA, which was executed by Old Monsanto *in Missouri* (Kaley Aff., Ex. A), required UMC, and now requires Magnetek, to

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

defend and indemnify Old Monsanto from certain "liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses . . . arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of" the 11,918,600 pounds of PCBs UMC purchased from Old Monsanto between January 1972 and 1977.  Pet., ¶¶ 45-46; Pet., Ex. 1.  The SUA is not limited to claims connected only to PCBs purchased by UMC after January 7, 1972, but also applies to claims connected to those PCBs "whether alone or in combination with other substances," including PCBs purchased by UMC prior to the date of the SUA.  Pet., ¶ 49; Pet., Ex. 1; *See Monsanto Co. v. Gould Electrs., Inc.*, 965 S.W.2d 314, 317-18 (Mo. Ct. App. 1998).

**B.    Defendant Refused To Defend Or Indemnify Old Monsanto Under The SUA.**

Plaintiffs recently have been sued in approximately 46 lawsuits ("the PCB lawsuits") covered by the SUA.  Affidavit of Christopher M. Hohn ("Hohn Aff."), ¶ 3.  Thus, on August 29, 2016, Chris Hohn, counsel for the Plaintiffs located in Missouri, sent a letter to Mr. Scott S. Cramer of Magnetek, Inc. on behalf of Plaintiffs, requesting that Defendant defend and indemnify Old Monsanto in those PCB lawsuits, as required by the SUA.  *See* Hohn Aff. ¶ 3; Hohn Aff., Ex. Q.  On September 13, 2016, counsel for Magnetek, Mr. Craig A. Leslie, responded to Mr. Hohn by sending a letter to Mr. Hohn in Missouri, rejecting Plaintiffs' tender of the defense and demand for indemnification in the PCB lawsuits on behalf of Defendant.  *See* Hohn Aff. ¶ 4; Hohn Aff., Ex. R.

On April 7, 2017, counsel for Plaintiffs invited Defendant to attend a meeting on May 16, 2017, at the offices of Thompson Coburn LLP in St. Louis, Missouri, to discuss the parties' positions regarding Defendant's obligations under the SUA.  Hohn Aff. ¶ 5.  The purpose of the meeting was to provide information to Defendant and assess whether the parties could structure a dispute resolution process to try to resolve Plaintiffs' claims outside the context of formal

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

litigation. *Id.* In addition to Defendant, other companies that had signed SUAs with Old Monsanto (and that also were obligated to defend and indemnify Old Monsanto in the PCB lawsuits) were also invited to the meeting. *Id.* On May 1, 2017, Mr. Leslie responded that he would attend the meeting in Missouri on behalf of Defendant, along with two other individuals for Defendant. *See* Hohn Aff. ¶ 6; Hohn Aff., Ex. U.

### C.   Defendant Filed A Preemptive "Placeholder" Declaratory Judgment Lawsuit In New Jersey During The Parties Negotiations.

On Friday May 12, 2017, four days before the parties' scheduled meeting and without informing Plaintiffs or their counsel, Defendant preemptively filed an eight-count declaratory judgment lawsuit against Plaintiffs in the Superior Court of Bergen County, New Jersey (the "New Jersey Action"). *See* Affidavit of Ryan A. Lema ("Lema Aff."), ¶ 8; Hohn Aff., ¶ 8.[1] Four days later, on May 16, 2017, counsel for Defendant, Mr. Joe Schmit, arrived at Thompson Coburn's offices to attend the scheduled meeting on behalf of Defendant, without informing counsel for Plaintiffs that Defendant had filed the New Jersey Action four days earlier. Hohn Aff. ¶ 9. Approximately one hour before the meeting was scheduled to begin, counsel for Plaintiffs learned, through a docket alert email, that Defendant had filed the New Jersey Action. *Id.* Counsel for Plaintiffs met with Mr. Schmit privately before the start of the planned meeting and raised Defendant's filing of the New Jersey Action. *Id.* Mr. Schmit confirmed that the New Jersey Action had been filed, but noted that it had not been served, and stated that the New Jersey Action was a "placeholder." *Id.* Since Plaintiffs were preparing to meet with representatives from other companies that had not filed suit, counsel for Plaintiffs excused

---

[1] In the New Jersey Action, Defendant seeks *inter alia* a declaration that the SUA is void or unenforceable (Lema Aff., Ex. B at ¶¶ 76, 116, 122), that Defendant is not required to defend and indemnify New Monsanto, Old Monsanto, or Solutia under the SUA (*id.* at ¶¶ 83, 89, 100), and that the SUA does not impose market share liability on Defendant. *See id.* at ¶ 126.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Defendant's counsel from the meeting, but requested that Defendant agree to dismiss the New Jersey Action and enter into a standstill and tolling agreement to permit the parties to continue their negotiation outside the context of formal litigation.  Hohn Aff. ¶ 10.  After considering that proposal for approximately one month, Defendant ultimately declined and served Plaintiffs with the Complaint in the New Jersey Action on June 21, 2017.  *Id.*

> D.     **The Court Denied Plaintiffs' Motions To Dismiss The New Jersey Action** *Without Prejudice* **Subject To Further Jurisdictional Discovery Proceedings.**

On September 5, 2017, Solutia and New Monsanto filed a joint motion to dismiss Defendant's claims against them in the New Jersey Action for lack of personal jurisdiction.  *See* Lema Aff., ¶ 10.  Solutia and New Monsanto argued that they are not subject to general personal jurisdiction in New Jersey because they are not "at home" in New Jersey—i.e., they are not incorporated there, do not have their principal places of business there, and New Jersey is not a surrogate for their place of incorporation or principal place of business.  They are not subject to specific personal jurisdiction in New Jersey because neither was in existence when the SUA was signed and the PCBs sold to UMC, and as separate corporate entities, the jurisdictional contacts of New Monsanto are not imputed to them. That same day, Old Monsanto filed a motion to dismiss Defendant's claims against it in the New Jersey Action arguing that the case should be dismissed in its entirety because Solutia and New Monsanto are indispensable parties and the New Jersey Court lacks personal jurisdiction over them.  The New Jersey Court heard oral argument on both motions, and on October 13, 2017 entered an order denying the motions without prejudice "***subject to further jurisdictional discovery proceedings***."  *See* Lema Aff., Exs. C at 4  (emphasis added).  The Court explained that due to the "fact sensitive nature of Defendants' corporate structure and activities, a more robust record must be cultivated by the Plaintiff in order for this Court to make the necessary determination as to its jurisdiction over the

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Defendants." *Id.* at 5.  Plaintiffs filed their Answer and Affirmative Defenses in the New Jersey Action—which include *inter alia* defenses that the New Jersey Court lacks personal jurisdiction over New Monsanto and Solutia—on November 29, 2017.  *See* Lema Aff., ¶ 11; Lema Aff., Ex. E.

On December 8, 2017—almost two months after the Court denied the Motions to Dismiss the New Jersey Action and three days before Magnetek filed its Motion to Dismiss in this case— Defendant served interrogatories, requests for production, and deposition notices on Plaintiffs. Lema Aff., Ex. 12.  Magnetek's discovery requests go well beyond the limited jurisdictional discovery allowed by the New Jersey Court.  Plaintiffs served their objections and responses to the discovery just three days ago, on January 16, 2018.  Hohn Aff., ¶ 12.

## III.    ARGUMENT

### A.    Magnetek Is Subject To Specific Personal Jurisdiction In Missouri.

There are two categories of personal jurisdiction—specific and general.  *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014).  "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) (internal quotations omitted) (quoting *Daimler AG*, 134 S.Ct. at 754).  "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).  This Court has specific jurisdiction over Magnetek for claims arising out of the SUA.

"Missouri courts employ a two-step analysis to evaluate personal jurisdiction."  *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010).  "First, the Court

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

inquires whether the defendant's conduct satisfies Missouri's long-arm statute, section 506.500." *Id.* If the long-arm statute is satisfied, "the court next evaluates whether the defendant has sufficient minimum contacts with Missouri such that asserting personal jurisdiction over the defendant comports with due process." *Id.* Both the Missouri long-arm statute and due process are easily satisfied by Magnetek's conduct in this case and substantial suit related contacts with the State of Missouri.

        1.    <u>UMC's Jurisdictional Contacts With Missouri Are Imputed To Magnetek</u>.

Magnetek concedes that it is the "successor by merger to UMC." MTD, p. 2. Therefore, UMC's jurisdictional contacts with Missouri are imputed to Magnetek. *See Bennett v. Rapid Am. Corp.*, 816 S.W.2d 677, 678 (Mo. 1991) ("A myriad of cases hold that a corporation may be subject to personal jurisdiction if its predecessor had sufficient contacts with the state to allow the exercise of jurisdiction."); *Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 166 (Mo. Ct. App. 1989).[2]

        2.    <u>Missouri's Long-Arm Statute Is Satisfied</u>.

Missouri permits the exercise of long-arm jurisdiction where a defendant commits any act "sufficient to invoke" Section 506.500. *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. 1997). The long-arm statute is satisfied where, as here, the defendant (a) transacted business within Missouri (RSMo. § 506.500.1(1)), (b) made a contract within Missouri (RSMo. § 506.500.1(2)), (c) contracted to insure a person, property or risk located within Missouri at the time of contracting, RSMo. § 506.500.1(5), or (d) committed tortious acts

---

[2] Magnetek made this same argument with respect to Solutia and New Monsanto in the New Jersey Action. The key difference between Magnetek on one hand, and Solutia and New Monsanto on the other, is that Solutia and New Monsanto are *not* successors-in-interest to Old Monsanto. Rather, Solutia and New Monsanto were created as separate corporate entities, and neither is the successor of Old Monsanto, which continues to exist as Pharmacia LLC. Solutia and New Monsanto received their rights relating to the SUA through assignment, which does not result in transfer of jurisdictional contacts. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783–84 (7th Cir. 2003).

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

producing actionable consequences in Missouri.  *See* RSMo. § 506.500.1(3).  While a defendant need have committed only one of the foregoing acts to support long-arm jurisdiction, Magnetek here committed ***all four*** of the identified acts.

a.  <em>Magnetek Made Multiple Contracts In Missouri.</em>

"For purposes of the long-arm statute, a contract is made where acceptance occurs." *Strobehn v. Mason*, 397 S.W.3d, 487 498 (Mo. Ct. App. 2013); *see also U.S. Durum Milling, Inc. v. Frescala Foods, Inc.*, 785 F. Supp. 1369, 1371–72 (E.D. Mo. 1992) ("A contract is made in Missouri if the final act which gives rise to a binding agreement occurs within this state.") (citing *Shady Valley Park & Pool, Inc. v. Dimmic*, 576 S.W.2d 579, 580 (Mo. Ct. App. 1979)).  Here, although UMC signed the SUA in New Jersey (*see* Pet., Ex. 2), the evidence clearly establishes that the final act creating the SUA—*i.e.,* Old Monsanto's signature on the SUA—occurred in Missouri.  *See* Kaley Aff., Ex. A (stating:  "Thank you for signing and returning the 'Special Undertaking By Purchasers of Polychlorinated Biphenyls' document. ***It has now been signed by Monsanto and we are enclosing a copy for your files***.") (emphasis added).  UMC and Old Monsanto also entered into multiple sales contracts for the purchase of PCBs from Old Monsanto in Missouri.  *See, e.g.* Kaley Aff., Ex. D.  Because Magnetek entered into a the SUA and other contracts in Missouri, and this action arises out of those contracts, the long-arm statute is satisfied.

b.  <em>Magnetek Transacted Business In Missouri.</em>

Missouri courts construe the "transaction of business" for purposes of Section 506.500.1(1) "broadly."  *State ex. rel. Newport v. Wiesman*, 627 S.W.2d 874, 876-77 (Mo. 1982); *Chromalloy Am. Corp.*, 955 S.W.2d at 4 ("We must construe broadly the 'transaction of business' element in the long arm statute so that ***even a single transaction*** may confer

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

jurisdiction, if that is the transaction that gives rise to the suit.") (emphasis added).  Here, UMC purchased millions of pounds of PCBs covered by the SUA from Old Monsanto in Missouri by calling sales representatives in Missouri and sending purchase orders into Missouri.  Kaley Aff., Ex. B.  Missouri courts have long held this kind of on-going and substantial business activity with a Missouri resident constitutes the "transaction of business" within the meaning of Section 506.500.1(1).  *See, e.g.*, *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 835 (Mo. Ct. App. 2000) (regularly soliciting customers in and from Missouri and maintaining commercial relationships within this state constitutes the transaction of business); *Chromalloy Am. Corp.*, 955 S.W.2d at 4-5 (negotiations to buy a Missouri business sufficient to constitute transaction of business). This action arises directly out of UMC's purchases of PCB's which trigger liability under the SUA.  Thus, the long-arm statute is also satisfied because Magnetek transacted business within the State.

        c.     *Magnetek Contracted To Insure A Person, Property, Or Risk Located Within Missouri At The Time Of Contracting.*

When UMC entered into the SUA, it agreed to "defend, indemnify and hold harmless"— *i.e.*, "insure"—Old Monsanto "from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses . . . arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under [UMC], whether alone or in combination with any other substance."  Pet., Ex. 1.  There is no dispute that, at the time UMC entered into the SUA, Old Monsanto—the "person" UMC agreed to insure—was located in Missouri.  Thus, UMC contracted to insure a person, property, or risk located within Missouri at the time of contracting under RSMo. § 506.500.1(5).  Magnetek's conclusory assertion that RSMo. § 506.500.1(5) "does not apply to non-insurers such as [Magnetek], or its predecessor UMC" (at p. 11) is completely unsupported.  It is also

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

directly contrary to the plain language of the statute, which makes clear that Section 506.500.1 applies equally to everyone.  *See* RSMo. § 506.500.1 ("***Any person or firm . . or any corporation, who . . . does any of the act enumerated in in this section***, thereby submits such person, firm, or corporation . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:*") (emphasis added).  Thus, the long-arm statute also is satisfied because Magnetek contracted to insure a company in Missouri.

    d. *Magnetek Committed Tortious Acts Producing Actionable Consequences In Missouri.*

  Section 506.500.1(3) is broad and extends jurisdiction of Missouri courts to "[e]xtraterritorial acts that produce consequence in [Missouri]." *Bryant*, 310 S.W.3d at 232. Here, Plaintiffs' Complaint alleges that Magnetek negligently misrepresented to Old Monsanto in Missouri that it would use the PCBs in closed applications such that PCBs would not escape Magnetek's products and enter the environment, and that Magnetek negligently misrepresented to Old Monsanto in Missouri that the SUA was "covered by a blanket liability policy with the Travelers Insurance Company." *See* Petition, ¶¶ 153-155, 160-62; *see also* Pet., Ex. 2.  Magnetek's misrepresentations were made to a company inside the State of Missouri, deceived a company inside the State of Missouri, and are causing harm to Plaintiffs within the state of Missouri.  Plaintiffs have been sued in the State of Missouri and other jurisdictions for manufacturing PCBs for companies, including Magnetek, that released or permitted the release of those PCBs into the environment.  *Id.*, ¶ 156-57, 166 & Ex. 3 (listing 27 of 46 lawsuits brought in Missouri).  The allegations in the Petition are sufficient to demonstrate the commission of a tortious act within Missouri under RSMo. § 506.500.1(3) and to place Magnetek within the reach of Missouri's long-arm statute.  *See Bryant*, 310 S.W.3d at 232 (allegations that sending false and misleading documents into Missouri and misrepresenting or

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

concealing information via telephone, e-mail, and letter were sufficient to confer jurisdiction pursuant to Section 506.500.1(3)).  Missouri's long-arm statute is satisfied for this additional reason.

3.   <u>Magnetek's Substantial Contacts With Missouri Relating to the SUA Are Sufficient Minimum Contacts To Satisfy Due Process.</u>

This Court has specific personal jurisdiction over Magnetek for claims arising out of the SUA.  "To evaluate whether a defendant's contact with [Missouri] satisfies due process, the court considers whether the defendant purposefully avails itself of the privilege of conducting activities within [Missouri] such that the defendant enjoys the protections of [Missouri] laws and, therefore, should reasonably anticipate being haled into court in [Missouri]."  *Andra v. Left Gate Property Holding, Inc.*, 453 S.W.3d 216, 225 (Mo. 2015).[3]  Importantly, the Supreme Court has made clear that "the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG*, 134 S.Ct. at 754 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317-18 (1945)); *see also Bryant*, 310 S.W.3d at 233 ("In some cases, single or isolated acts by a defendant in a state, because of their nature and quality and the circumstances of their commission, provide sufficient minimum contacts to support jurisdiction for liability arising from those acts.").

Plaintiffs' claims in this suit arise directly out of Magnetek's breach of the SUA, UMC's purchases of millions of pounds of PCBs from Old Monsanto that was based in Missouri, and UMC's negligent misrepresentations made in Missouri that have resulted in harm being sustained in Missouri.  The totality of these and other suit-related contacts discussed below

---

[3] The Supreme Court of Missouri has expressly rejected the "five-factor test" cited by Defendant (at p. 14) and instead emphasized that that "a personal jurisdiction inquiry must not be mechanical."  *Id.* at 227 n. 9; *see also Bryant*, 310 S.W.3d at 233 n. 4.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

between UMC —which are imputed to Magnetek as UMC's corporate successor—is more than sufficient to satisfy due process and comply with traditional notions of fair play and substantial justice.

> a.    *Magnetek Entered Into The Contract At Issue In Missouri And It Requires Magnetek To Defend And Indemnify A Missouri Company Relating To PCBs Magnetek Purchased In Missouri.*

This case seeks *inter alia* to enforce Plaintiffs' rights in the SUA.  The SUA is a defense and indemnification contract made in Missouri between Old Monsanto and UMC relating to UMC's purchase of PCBs from Old Monsanto.  *See* Kaley Aff., Ex. A; Pet., Ex. 1; *Strobehn*, 397 S.W.3d at 498-99.  Magnetek's execution of the SUA in Missouri, Magnetek's conduct in connection with the SUA in Missouri, the parties' course of dealing relating to the SUA and the PCBs purchased by Magnetek in Missouri, the terms and foreseeable future consequences of the SUA in Missouri, and Magnetek's commission of a tort relating to its execution of the SUA, which caused harm in Missouri, taken together, establish sufficient minimum contacts with the State of Missouri for this Court to exercise specific personal jurisdiction over Magnetek for claims arising out of those contacts.  *See Peoples Bank v. Frazee*, 318 S.W.3d 121, 129-30 (Mo. 2010) ("Prior negotiations and 'contemplated future consequences,' as well as the terms of the contract and the parties' course of dealings, are all factors that must be evaluated in determining 'whether the defendant purposefully established minimum contacts within [Missouri].'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)); *Andra*, 453 S.W.3d at 230 (same).

UMC was one of the largest purchasers and users of PCBs manufactured by Old Monsanto.  Old Monsanto's records reflect that UMC purchased 11,918,600 pounds of PCBs covered by the SUA from Old Monsanto in Missouri between 1972 and 1977.  *See* Kaley Aff.,

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Ex. B.  These purchases were made pursuant to certain written sales contracts, which were made in Missouri and are "governed and construed in accordance with the laws of the State of Missouri."  *See* Kaley Aff., Ex. D.  UMC ordered PCBs pursuant to those Missouri sales contracts by calling Old Monsanto's sales representatives located in Missouri and/or by sending purchase orders to Old Monsanto in Missouri.  *See* Kaley Aff., Ex. C.  Old Monsanto accepted and processed UMC's orders for PCBs in Missouri.  *See* Kaley Aff., Ex. C-D.

The nature and terms of the SUA also create a substantial connection with Missouri such that Magnetek could reasonably anticipate being haled into Court in Missouri.  The plain language of the SUA makes clear that it was signed by UMC in order to induce Old Monsanto to continue to sell PCBs to UMC. *See* Pet., Ex. 1 ("[Old] Monsanto has therefore adopted certain restrictive policies with respect to its further production, sale and delivery of PCB's, including the receipt of undertakings from its customers as set forth below, and [Magnetek] is willing to agree to such undertakings with respect to sales and/or deliveries of PCB's by [Old] Monsanto to [Magnetek].").  UMC's inducement of Old Monsanto is an intentional contact with Missouri sufficient to satisfy due process.  *See Peoples Bank*, 318 S.W.3d at 130-31 ("[T]he fact that Mr. Frazee's execution of the guaranty induced Peoples Bank to extend credit to Stephen and Jennifer and Mr. Frazee's active role in the process is sufficient to justify an exercise of personal jurisdiction over the non-resident guarantor.").

The "contemplated future consequences" of the SUA also provide a basis for satisfying due process.  Under the SUA, UMC agreed to "defend, indemnify, and hold harmless [Old] Monsanto . . . from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses . . . arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under [Magnetek],

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

whether alone or in combination with any other substance." Pet, Ex. 1. There is no question that UMC knew, at the time it signed the SUA, that Old Monsanto was located in Missouri. *See, e.g.,* Kaley Aff., Exs. A, C-D; Pet., Ex. 2. It is, therefore, reasonable to conclude that UMC knew—at the time it signed the SUA and agreed to defend and indemnify Old Monsanto relating to the PCBs it purchased—that it could be required to defend and indemnify Old Monsanto under the SUA in Missouri. These continuing obligations and future consequences constitute intentional contacts with Missouri. *See Andra*, 453 S.W.3d at 230-31 (representations and warranties regarding a motor vehicle created continuing obligations between the out-of-state defendant and the Missouri plaintiff making it reasonable to conclude that the defendant knew the vehicle would be repaired in Missouri was intentional contacts with Missouri for due process analysis).

> b.   *Defendant Communicated With Old Monsanto In Missouri Regarding Alleged Insurance Covering UMC's Obligations Under The SUA.*

In a letter dated January 7, 1972, the President of UMC sent a letter to Old Monsanto *in Missouri* representing that UMC's continuing defense and indemnity obligations under the SUA were "covered by a blanket liability policy with the Travelers Insurance Company having limits of 10 million dollars." Pet., Ex. 2; Kaley Aff., Ex. F. On January 17, 1972 the insurance manager for UMC's then parent company, Northwest Industries, Inc., sent a letter to Old Monsanto *in Missouri* providing a "Certificate of Insurance" "[i]n furtherance of the undertaking between [Old Monsanto] and our Universal Manufacturing Corporation." Kaley Aff., Ex. I. UMC and Northwest Industries, Inc. sent additional communication regarding this alleged insurance coverage to Old Monsanto *in Missouri* between January 7, 1972 and May 31, 1977 including at least three letters sent by UMC to Old Monsanto in Missouri (*see* Kaley Aff., Ex. H), three letters sent by Northwest Industries, Inc. to Old Monsanto in Missouri (*see* Kaley Aff.,

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Ex. I), and various Certificates of Insurance issued to Old Monsanto every year from 1972 to 1977.  *See* Kaley Aff., Ex. G.  Old  Monsanto received and processed the letters from UMC and Northwest Industries, Inc., and the Certificates of Insurance, in Missouri.  *See* Kaley Aff., Exs. H-I, J.  These communications with Old Monsanto in Missouri satisfy due process because they were made with the intention of furthering the SUA and UMC's continued purchases of PCBs from Old Monsanto, out of which this lawsuit arises.  *See Andra*, 453 S.W.3d at 230 (mailing purchase order and federal buyer's guide in order to obtain buyer's signature on legal documents from Missouri were made with the intention of furthering the purchase).[4]

        c.     *Magnetek Rejected Plaintiffs' Tender And Thereby Breached The SUA In Missouri.*

Counsel for Plaintiffs and Magnetek have also had multiple communications regarding Magnetek's obligations to defend and indemnify Old Monsanto pursuant to the SUA.  *See* Hohn Aff., Exs. Q-V.  These communications include multiple letters sent by counsel for Plaintiffs to Magnetek (*see* Hohn Aff., Exs. Q, S, T), and a letter sent by counsel for Magnetek to counsel for Plaintiffs in Missouri rejecting Plaintiffs' tender of defense and demand for indemnification under the SUA.  *See* Hohn Aff., Ex. R.

        d.     *UMC Committed Tortious Acts In Missouri With Effects Directed And Felt In Missouri.*

This lawsuit also seeks to recover for Plaintiffs' negligence and negligent misrepresentations.  Plaintiffs allege that UMC committed tortious acts inside and outside Missouri—*e.g.*, made material misrepresentations regarding use of PCBs and insurance coverage for obligations under the SUA to Old Monsanto in Missouri—that induced Old Monsanto to sell

---

[4] UMC also communicated with Old Monsanto regarding changes in Connecticut law regarding use of PCBs, with regard to preparing for testimony concerning the EPA's proposed PCB effluent standards, and with regard to Old Monsanto's letter to the editor of Business Week regarding PCBs.  *See* Kaley Aff., Ex. O.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

UMC PCBs and led to Old Monsanto being sued in Missouri and elsewhere related to the PCBs sold to UMC. *See* Petition, ¶¶ 153-57, 160-62, 166; *see also* Pet., Ex. 3; Kaley Aff., Ex. F. This tortious conduct by UMC is directly analogous to the conduct that the Supreme Court of Missouri found "presents a ready example of facts supporting specific jurisdiction" in *Bryant*, and, along with UMC's numerous other contacts with Missouri regarding the purchase of PCBs, is sufficient to satisfy due process. *See Bryant*, 310 S.W.3d at 235 (documents containing material misrepresentations or fraudulent omissions about fees, commissions, and costs that were mailed to Missouri resident along with other related communication and physical presence in Missouri sufficient to satisfy due process).

      e.    *UMC Was Physically Present In Missouri Relating to PCBs Purchased Pursuant To The SUA.*

On September 16, 1970, Glen Rayno of UMC visited Old Monsanto in Missouri regarding PCBs. *See* Kaley Aff., Ex. K. On February 28, 1974, UMC's Vice President, N. Ray Clark attended a meeting in Missouri at Old Monsanto's headquarters regarding PCBs. *See* Kaley Aff., Ex. L. The minutes of the meeting, which were sent to Mr. Clark after the meeting, reflect that Mr. Clark participated in the meeting. *See id*. Mr. Clark also attended the International Dielectrics Symposium put on by Old Monsanto in St. Louis, Missouri on September 23, 1974. *See* Kaley Aff., Ex. M. These visits to Missouri relate to the PCBs UMC purchased from Old Monsanto pursuant to the SUA.[5]

Physical presence in Missouri is the hallmark of due process. *See Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 619 (1990) ("The short of the matter is that

---

[5] Mr. Clark was also present in Missouri at Old Monsanto's facilities in November 1971. *See* Kaley Aff., Ex. N ("As a follow-up to our conversations of November 11 in St. Louis . . . ."). The November 1971 meeting related to Old Monsanto's purchase of certain capacitors from UMC, which Old Monsanto used to test its PCBs. *See id*. Old Monsanto's records reflect that UMC sent three shipments of capacitors—some of which were impregnated with PCBs purchased from Old Monsanto—to Old Monsanto in Missouri pursuant to purchase orders from Old Monsanto. *See* Kaley Aff., Ex. E.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

jurisdiction based on physical presence…constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'   That standard was developed by *analogy* to 'physical presence,' and it would be perverse to say it could now be turned against that touchstone of jurisdiction.") (emphasis in original); *Andra*, 453 S.W.3d at 226 (noting the existence of a "traditional territorial basis such as a defendant's physical presence in the forum state" which permits the exercise of personal jurisdiction); *Bryant*, 310 S.W.3d at 232 (same).

### f.    *Magnetek's Due Process Analysis Should Be Rejected.*

The decisions Magnetek cites and relies on to support its argument that it did not "engage[] in the type of activity purposefully directed to Missouri that would amount to minimum contacts sufficient to satisfy due process" (*see* MTD, pp. 14-17) are easily distinguishable.  This case involves much more than the "unilateral performance" of a contract for the sale of goods found insufficient to satisfy due process by the Eighth Circuit in *Mountaire Feeds, Inc.* (*see Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655 (8th Cir. 1982)), or the sporadic communication into Missouri relating to a non-Missouri contract found insufficient to satisfy due process in *Vetrotex*, *CPC-Rexcell*, *Institutional Marketing*, *Scullin Steel*, *and T.S.E. Supply Co*.  Magnetek's contacts with Missouri in this case—e.g., entering into a contract in Missouri to defend and indemnify a Missouri corporation, purchasing millions of pounds of PCBs from Old Monsanto by sending purchase orders into Missouri, and making negligent misrepresentations to Old Monsanto in Missouri—are also far more substantial than the choice of law provision in a non-Missouri contract, sporadic e-mails and phone calls into Missouri, and payment of money into Missouri found insufficient to satisfy due process by the

Eastern District of Missouri in *Cepia*.   *See Cepia, LLC v. Universal Pictures Visual Programming Limited*, 177 F. Supp. 3d 1129, 1148 (E.D. Mo. 2016).

Magnetek's due process argument—which does not address the nature, quantity, or quality of Magnetek's substantial, suit-related contacts with Missouri—is exactly the type of mechanical application of the minimum contacts analysis the Supreme Court of Missouri has repeatedly said should not be followed.  *See Chromalloy Am. Corp.*, 955 S.W.2d at 5 ("This minimum contacts test is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present."); *Bryant*, 310 S.W.3d at 232 (the personal jurisdiction inquiry "cannot be simply mechanical or quantitative") (internal quotations omitted); *Peoples Bank*, 318 S.W.3d at 130 (the minimum contacts "due process analysis is a multifaceted, fact-specific inquiry, and never a mechanical application of rules"); *see also International Shoe Co.*, 326 U.S. at 319 ("It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative…[instead] [w]hether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.").

When viewed in total, Magnetek's suit-related contacts with Missouri are substantial and establish that Magnetek purposefully availed itself of the privilege of conducting activities in Missouri such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice"—i.e., it comports with due process.  *Int'l Shoe Co.*, 326 U.S. at 316. Magnetek executed the SUA in Missouri agreeing to defend and indemnify a Missouri corporation; Magnetek purchased millions of pounds of PCBs pursuant to the SUA and purchase

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

agreements entered into with Old Monsanto in Missouri; Magnetek communicated with Old Monsanto regarding the SUA and PCBs in Missouri; Magnetek was physically present in Missouri relating to its purchase of PCBs from Old Monsanto; and Magnetek committed a tort relating to its execution of the SUA, which caused harm in Missouri. These contacts are not "random," "fortuitous," or "attenuated."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Rather, they are the result of Magnetek's deliberate and intentional engagement of significant activity within the State of Missouri and have created continuing obligations between Magnetek and Plaintiffs in the State of Missouri. *Id.*

This conclusion is supported by the Supreme Court of Missouri's decisions in *Andra*, *Bryant*, *Chromalloy*, and *Peoples Bank* as discussed above.  It is also consistent with decisions from the United States Supreme Court.  For example, the facts of this case are very similar to *Burger King Corp.*, where the Supreme Court held that a defendant with no physical ties to Florida was subject to specific personal jurisdiction in Florida based on a franchise agreement negotiated with a Florida corporation that resulted in a long-term relationship and eventually ended with the defendant breaching the contract thereby causing foreseeable injuries to the Florida corporation in Florida.  *See Burger King Corp.*, 471 U.S. at 480 ("This reasoning overlooks substantial record evidence indicating that [the defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in Florida . . . . Moreover, the parties' actual course of dealing repeatedly confirmed that decision making authority was vested in the Miami headquarters"); *see also International Shoe Co.*, 326 U.S. at 320 (specific personal jurisdiction over out-of-state defendant in Washington where the defendant's activities in Washington "resulted in a large volume of interstate business").  Based upon the nature, quality

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

and quantity of suit-related contacts by Magnetek in Missouri, there are unquestionably sufficient minimum contacts to satisfy due process.

> g.    *Exercise Of Personal Jurisdiction Over Magnetek Is Reasonable.*

"[A] defendant with minimum contacts to [Missouri] has the burden to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Andra*, 453 S.W.3d at 233 (quoting *Burger King*, 471 U.S. at 477).  The exercise of personal jurisdiction over Magnetek is only unreasonable "if it makes litigation so gravely difficult and inconvenient that [Magnetek] unfairly is at a severe disadvantage in comparison to [Plaintiffs]." *Id.* (quoting *Burger King*, 471 U.S. at 478).  "The burden on the defendant largely involves the foreseeability of defending a lawsuit in [Missouri]." *Peoples Bank*, 318 S.W.3d at 132.  "The foreseeability of defending a lawsuit can be construed as 'contemplated future consequences' of a contract." *Id.* (quoting *Burger King*, 471 U.S. at 479).

Magnetek has not established any basis—much less a compelling basis—for this Court to determine that litigating this dispute in Missouri would place it at a severe disadvantage.  There is no question that Missouri has a significant interest in adjudicating this dispute, which is brought by Missouri citizens relating to a Missouri contract requiring Magnetek to defend and indemnify Old Monsanto in cases filed in Missouri courts.  Magnetek's arguments regarding the New Jersey Action should be rejected for the reasons discussed in Section B below—most importantly there is no jurisdiction over Solutia and New Monsanto in New Jersey and Plaintiffs are the rightful plaintiffs who are seeking significant damages from Magnetek for breach of a Missouri contract and other claims.  Finally, the fact that documents and witnesses related to UMC's use of PCBs may be physically located outside Missouri, or that some action relating to UMC's liability to Plaintiffs occurred in New Jersey, does not disadvantage Magnetek in this

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

litigation, which concerns, among other things, Magnetek's contractual obligations to defend and indemnify Old Monsanto.  To the extent those documents, witnesses, and conduct are relevant, they can, like in any other modern litigation, be obtained, investigated, and/or interviewed/deposed with minimal inconvenience to the parties.

In short, "[t]here is nothing unfair in requiring a defendant with minimum contacts in Missouri that has benefit from large-scale commercial transactions in Missouri to defend claims in Missouri that arise from these business transactions."  *Andra*, 453 S.W.3d at 234.  Nor is it unreasonable to require Magnetek, who should have known that it was subjecting itself to possible litigation in Missouri by agreeing to defend and indemnify a Missouri company relating to products purchased in Missouri, to defend a lawsuit to enforce that agreement in Missouri. *See Peoples Bank*, 318 S.W.3d at 133 (finding jurisdiction over out of state guarantor reasonable because guarantor "should have contemplated the potential future consequences in Oklahoma and the possibility of being haled into an Oklahoma court to defend a lawsuit if the loan was called").

4.    Alternatively, The Court Should Allow Jurisdictional Discovery.

The Supreme Court of Missouri has made clear that discovery can be "used to inquire into facts relating to jurisdiction of the Court over the person of the defendant."  *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 894 (Mo. 1970).  Here, Plaintiffs have provided more than sufficient facts to support the exercise of specific personal jurisdiction over Magnetek.  To the extent there is any question, however, the Court should allow jurisdictional discovery relating to Magnetek's contacts with the State of Missouri.  This is the same procedure adopted by the Court in the New Jersey Action (at Magnetek's request), will not prejudice Magnetek, and is "consistent with the standards of fair play and substantive justice."  *Id.*

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**B.    This Court Should Not Exercise Its Discretion To Dismiss Or Stay This Case In Favor Of The New Jersey Action.**

The Court should not exercise its discretion to dismiss or stay these proceedings in favor of the New Jersey Action because (i) the New Jersey Action is due to be dismissed because the New Jersey Court lacks personal jurisdiction over New Monsanto and Solutia, both of whom are indispensable parties to the litigation, and (ii) Plaintiffs—who are the rightful plaintiffs and are seeking significant damages from Magnetek for breach of a Missouri contract and other claims—should not be denied their preferred forum simply because Magnetek filed a preemptory, "placeholder" declaratory judgment case first in New Jersey.

The New Jersey Action and this case are not the same.  This case is a multi-count lawsuit seeking to affirmatively enforce the SUA against Magnetek and to recover substantial damages from Magnetek for breach of the SUA and related tortious conduct occurring in Missouri. By contrast, the New Jersey Action is a preemptory, declaratory judgment suit seeking to establish that the SUA is unenforceable—i.e., a suit seeking to obtain favorable rulings on purported defenses to Plaintiffs' claims in this suit.  As explained above, the New Jersey Action is due to be dismissed because New Monsanto and Solutia—who are indispensable parties to the litigation—are not subject to personal jurisdiction in New Jersey.  Thus, in order to obtain the same relief in the New Jersey Action that they can obtain here, New Monsanto and Solutia would have to consent to personal jurisdiction in New Jersey, and Plaintiffs would have to assert a counterclaim.  This Court should not exercise its discretion to dismiss or stay this case—where all parties are subject to personal jurisdiction and where all claims and defenses can be adjudicated together—in favor of a case that is going to be dismissed.

Plaintiffs—the natural plaintiffs in this dispute—also should not be deprived of their right to litigate Magnetek's liability under the SUA in the forum of their choosing simply because

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Magnetek filed a preemptive declaratory judgment lawsuit first in New Jersey. *See, e.g., BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) ("It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue."); *Clockwork Home Servs., Inc. v. Robinson*, 423 F.Supp.2d 984, 992-93 (E.D. Mo. 2006) (dismissing declaratory judgment suit where defendant preemptively filed in a race to the courthouse); *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) ("Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit."); *Digitrax Entm't, LLC v. Universal Music Corp.*, 21 F.Supp.3d 917, 923 (E.D. Tenn. 2014) (dismissing first-filed declaratory judgment suit where the parties were engaged in pre-litigation settlement discussions on the basis that the filing party "engaged in forum shopping and procedural fencing, if not bad faith" in an effort to "secure its preferred forum"); *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 909 (N.D. Ill. 1998) (dismissing first-filed declaratory judgment lawsuit that was filed after accusation of trademark infringement "in hopes of securing a favorable forum"). This is especially true given that Missouri case law—which applies to the SUA regardless of where this case is litigated—supports the enforceability of the SUA and rejects some of the very same arguments Magnetek advances in the New Jersey Action. *See, e.g., Gould Electrs., Inc.*, 965 S.W.2d at 314-18.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

The decisions cited and relied on by Magnetek are easily distinguishable.  In *Hale*, the respondent had already obtained judgment—an award for past due child support—in Oklahoma when the appellant filed his motion to modify in Missouri requesting, in part, that the Missouri court extinguish any and all past due child support.  *See Hale v. Hale*, 781 S.W. 2d 815, 817 (Mo. Ct. App. 1989).  The appellant's claims in the Missouri action were also defenses to the issue pending in Oklahoma, which is the opposite to the situation in this case.  *See id*. at 820.  In *Grey,* the court found no error in the Missouri court refusing to recognize the judgment of the Canadian court under rules of comity because, unlike here, the issues were "exactly the same" and there was no reason alleged why "full and complete justice could not be secured in the Missouri court."  *See Grey v. Independent Orders of Foresters*, 196 S.W. 779, 784 (Mo. Ct. App. 1917).  Finally, the *Jewell* decision is distinguishable because there, unlike here, the same party filed both divorce suits and only sought to avoid the first-filed Missouri action and the jurisdiction of Missouri courts after the Missouri Court rendered judgment against him and in favor of the defendant.  *See Jewell v. Jewell*, 484 S.W. 2d 668,  674 (Mo. Ct. App. 1972).[6]

Magnetek's contention that the New Jersey Action should take precedence over this action because "it is also at a more advanced stage" (at p. 8) is also unavailing.  The two cases are at essentially the same "stage" of litigation—i.e., determination of whether the courts have jurisdiction to proceed.  Indeed, although the New Jersey Court denied Plaintiffs' motions to dismiss, it did so without prejudice, so that a more "robust record" regarding New Monsanto and Solutia's contacts with New Jersey could be developed in order for the Court to determine

---

[6] Defendant also cites *Cutten* and *Jones* in a string cite. *See* MTD, p. 8.  The *Cutten* case is distinguishable in that it involved two identical actions, which, as explained above, is not the case here. *See Cutten v. Latshaw*, 344 S.W. 2d 257, 258 (Mo. Ct. App. 1961).  The *Jones* case states the rule discussed above—that a second action should be stayed only where the plaintiff can obtain complete and full relief in the first filed jurisdiction—and allows a second filed divorce action to proceed.  *See State ex rel Miller v. Jones*, 349 S.W.2d 534, 539-40 (Mo. Ct. App. 1961).

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

whether New Monsanto and Solutia are subject to personal jurisdiction in New Jersey.  *See* Lema Aff., Exs. C-D.  Because jurisdiction in this Court is clear, this Court is likely to be at a more advanced stage of proceedings as soon as it resolves the instant motion.  General discovery is not—as Magnetek suggests—"underway" in the New Jersey Action; only jurisdictional discovery is underway.

### C.    Plaintiffs' Negligent Misrepresentation Claim Is Sufficiently Pleaded.

Finally, the Court should also deny Magnetek's motion to dismiss Plaintiffs' negligent misrepresentation claim.  Magnetek argue Plaintiffs' negligent misrepresentation claim is insufficiently pleaded because the Petition "fail[s] to allege any facts to support the assertion that UMC was negligent in stating that it intended to use the PCBs for closed uses and that it would procure liability insurance to cover the Special Undertaking."  MTD, p. 20.  Not so.  Plaintiffs have adequately alleged facts supporting both of UMC's negligent misrepresentations.

The Petition specifically alleges that, contrary to UMC's express representations to Old Monsanto, PCBs purchased from Old Monsanto by UMC were released into the environment by UMC through a variety of ways, including via improper disposal and dumping of its PCB products, leaks, accidental spills, and other means—*i.e.,* the PCBs purchased by UMC were not used solely for "closed uses such that PCBs would not escape Defendant's products and enter the environment."  *See* Petition, ¶¶ 54-56 (incorporated into Count VI via Paragraph 159).  These allegations are consistent with the findings of fact made by the court in *Fruit of the Loom, Inc.*

The Petition also alleges that UMC's representation that the SUA "will be covered by a blanket liability policy with the Travelers Insurance Company having limits of 10 million dollars" is false because that coverage either does not exist or has been released.  *See* Pet., ¶ 163. Magnetek misunderstands Plaintiffs' claim when it argues it "did not negligently make a false

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

statement with respect to its *procurement* of insurance coverage." MTD, pp. 20-21 (emphasis added). Magnetek's representation to Monsanto was not merely that it would "procure" insurance coverage, but rather that Magnetek's defense and indemnity obligations under the SUA "***will be covered***" by that policy. *See* Pet., Ex. 2 (emphasis added); *see also* Pet., ¶ 161. The mere fact that Magnetek obtained an insurance policy does not mean the policy actually covers Magnetek's obligations under the SUA. This much is clear from the ongoing litigation between Magnetek and Travelers wherein Travelers alleges that the alleged insurance policy either does not cover the SUA or has been released by Magnetek. *See* Pet., ¶ 163; *see also Magnetek, Inc. v. The Travelers Indemnity Co., et al.*, Case No. 1:17-CV-3173-RWG-SEC, ECF No. 32 (N.D. Ill. Jan. 5, 2018) ("There is no coverage under the Travelers Policies for the Underlying Claims because Magnetek never obtained, or it waived, any insurance rights under the Travelers Policies.").

Magnetek's final attack—that Plaintiffs' negligent misrepresentation claim fails because Plaintiffs "do not allege that UMC made these alleged misrepresentations with a present intent not to perform"—is flat wrong. Plaintiffs have not asserted a claim for intentional or fraudulent misrepresentation. And, the Supreme Court of Missouri has made clear that "[a] claim for negligent misrepresentation, unlike one for fraud, ***does not involve a question of intent***." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010) (emphasis added). "Rather, such a claim is premised on the theory that the speaker believed the information supplied was correct but was negligent in so believing." *Id.* That is precisely what Plaintiffs allege happened here in support of their claim for negligent misrepresentation. *See* Pet., ¶ 162 (alleging the "information supplied by Defendant to [Old Monsanto] was false due to Defendant's ***failure to exercise reasonable care***.") (emphasis added).

27

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. respectfully request that the Court deny Defendant Magnetek, Inc.'s  Motion to Dismiss or Stay.  Alternatively, Plaintiffs request that the Court grant leave to serve limited jurisdictional discovery regarding Defendant's extensive contacts with Missouri.

Respectfully Submitted,

THOMPSON COBURN LLP

By:  /s/ Christopher M. Hohn
     John R. Musgrave #20358
     Christopher M. Hohn #44124
     A. Elizabeth Blackwell #50270
     Susan L. Werstak, #55689
     David M. Mangian #61728
     One U.S. Bank Plaza
     St. Louis, Missouri 63101
     (314) 552-6000 (telephone)
     (314) 552-7000 (facsimile)
     Email:  jmusgrave@thompsoncoburn.com
     Email:  chohn@thompsoncoburn.com
     Email:  eblackwell@thompsoncoburn.com
     Email:  swerstak@thompsoncoburn.com
     Email:  dmangian@thompsoncoburn.com

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ Christopher M. Hohn

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

MONSANTO COMPANY,            )
PHARMACIA, LLC, and          )
SOLUTIA, INC.                )
                             )
            Plaintiffs,      )        Cause No.  17SL-CC03368
                             )
v.                           )
                             )
MAGNETEK, INC.               )
                             )
            Defendant.       )

**Affidavit of Robert G. Kaley, II**

I, Robert G. Kaley, II Ph.D., am of sound mind and do hereby declare:

1.      I hold a Ph.D. in analytical chemistry from the University of Illinois. I was employed by the former Monsanto Company, n/k/a Pharmacia LLC (hereafter "Old Monsanto") from 1973 until September 1997.  For approximately 15 years, I served as Director of Environmental Affairs for Old Monsanto focusing on product stewardship, regulatory affairs, and technical litigation support for legacy chemicals, including for polychlorinated biphenyls (PCBs).  Prior to that, I spent approximately ten years with Old Monsanto working on the analysis of environmental chemicals by gas chromatography/mass spectrometry.

2.      From the time of the "spin-off" of certain past and present chemical businesses of Old Monsanto effective September 1, 1997, I was employed by Solutia, Inc. until the time of my retirement from Solutia in August 2003.  Since my retirement from Solutia, I have consulted on behalf of Old Monsanto and Solutia, including at the request of the current Monsanto Company.

3.      During my employment with Old Monsanto and thereafter, I became familiar with Old Monsanto's business records relating to PCBs: (a) made and created by Old Monsanto in the ordinary course of its business; and (b) obtained from related parties and third parties as those records are kept by the current Monsanto Company in its files in the ordinary course of its business in relation to PCBs.

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

4.      The attached Exhibits A through N are true and accurate copies made or received at or near the date the documents bear, have been kept in the course of Old Monsanto's regularly conducted activity, and were made or received as a regular practice in the course of Old Monsanto's regularly conducted activity.  Moreover, Exhibits A through N were made by, or from information transmitted by, a person with knowledge of the matters contained therein.

a.  Attached as Exhibit A is a true and accurate copy of a Monsanto document titled "Special Undertaking by Purchasers of Polychlorinated Biphenyls" accompanied by a letter dated February 7, 1972 from H. S. Bergen, Jr. of Old Monsanto to P. H. Einhorn of Universal Manufacturing Corporation ("UMC").

b.  Attached as Exhibit B are true and accurate copies of Old Monsanto sales reports showing sales of Aroclor products to UMC from 1972 to 1977.

c.  Attached as Exhibit C are true and accurate copies of three Purchase Orders from the Capacitor Division of UMC dated November 26, 1975, July 15, 1976, and April 29, 1977, for the purchase of Aroclor products that were sent to Old Monsanto in St. Louis, Missouri.

d.  Attached as Exhibit D are true and accurate copies of 28 Old Monsanto Invoices to UMC for the purchase of Aroclor products between January 7, 1972 to April 20, 1973.

e.  Attached as Exhibit E are true and accurate copies of a group of correspondence, purchase orders, and an invoice dating from February 9, 1970 to October 6, 1975, regarding UMC's shipments of capacitors impregnated with PCBs to Old Monsanto in St. Louis, Missouri.

f.  Attached as Exhibit F is a true and accurate copy of a January 7, 1972 letter from UMC's Paul H. Einhorn to Old Monsanto's H.S. Bergen regarding a blanket liability policy taken out by UMC through Travelers Insurance Company ("Travelers") to cover the SUA.

g.  Attached as Exhibit G are true and accurate copies of Six Certificates of Insurance dated January 17, 1972 to September 15, 1977 issued to Old Monsanto by Travelers.

SLC-8488276-1

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

h.  Attached as Exhibit H are true and accurate copies of three letters from UMC to Old Monsanto dated September 26, 1974, September 23, 1976, and May 31, 1977 regarding UMC's Certificates of Insurance.

i.  Attached as Exhibit I are true and accurate copies of four letters from Northwest Industries, Inc. to Old Monsanto dated January 17, 1972, September 22, 1972, September 2, 1977, and September 12, 1977 regarding UMC's Certificates of Insurance.

j.  Attached as Exhibit J are true and accurate copies of three letters from Monsanto to UMC's President Paul H. Einhorn requesting updated Certificates of Insurance for Monsanto's records dated September 1, 1976, March 24, 1977, and August 2, 1977.

k.  Attached as Exhibit K, is a true and accurate copy of a letter dated September 16, 1970 from Old Monsanto to Glen Rayno at UMC regarding a September 1970 visit to Old Monsanto by Glen Rayno of UMC to discuss PCBs.

l.  Attached as Exhibit L is a true and accurate copy of a February 25, 1974 letter from Old Monsanto to UMC's Vice President, N. Ray Clark confirming Mr. Clark's attendance at a February 28, 1974 meeting at Old Monsanto's Missouri headquarters regarding PCBs; a March 7, 1974 letter from Old Monsanto to UMC's Vice President, N. Ray Clark thanking Mr. Clark for attending a meeting regarding PCBs at Old Monsanto's Missouri headquarters on February 28, 1974; and the Minutes of Meeting on Proposed PCB Effluent Standards dated February 28, 1974.

m. Attached as Exhibit M is a true and accurate copy of UMC's Vice President, N. Ray Clark's confirmation that he would attend the Dielectrics Symposium put on by Old Monsanto in St. Louis, Missouri on September 23, 1974, regarding PCBs.

n.  Attached as Exhibit N is a true and accurate copy of a letter dated December 17, 1971 from UMC's Vice President, N. Ray Clark to Old Monsanto in Missouri regarding a November 11, 1971 meeting in St. Louis, Missouri related to Old Monsanto's purchase of certain capacitors from UMC, which Old Monsanto used to test its PCBs.

SLC-8488276-1

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

o.  Attached as Exhibit O is a true and accurate copy of three letters dated June 22, 1976, August 24, 1976, and September 16, 1976, from UMC to Old Monsanto in St. Louis, Missouri regarding PCBs.

p.  Attached as Exhibit P is a true and accurate copy of four letters dated October 4, 1976 from Old Monsanto to various UMC employees regarding Old Monsanto's decision to cease manufacture of PCBs effective August 31, 1977.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on January 18, 2018.

Robert G. Kaley, II Ph.D.

STATE OF MISSOURI          )
                           ) SS
CITY OF SAINT LOUIS        )

On the 18th day of January, 2018, before me personally appeared Robert G. Kaley, II Ph.D. to me known to be the person described in and who executed the foregoing Affidavit and who did state that the averments contained therein are true and correct to the best of his knowledge and that he executed the Affidavit of his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed by official seal in the County and State aforesaid, the day and year first above written.

My term expires: March 30, 2019

PATRICIA C. WHITE
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: March 30, 2019
Commission Number: 15497880

Notary Public

- 4 -

SLC-8488276-1

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

February 7, 1972

Mr. Paul H. Einhorn, President
Universal Manufacturing Corp. *(Electronic Components)*
29-51 East Sixth Street    *Sunil Northwest Industries .*
Paterson, New Jersey 07509

Dear Mr. Einhorn:

Thank you for signing and returning the "Special
Undertaking By Purchasers of Polychlorinated
Biphenyls" document.  It has now been signed by
Monsanto and we are enclosing a copy for your
files.

Everything appears to be in order and we look
forward to the opportunity to continue the supply
of material to Universal Manufacturing.

Thank you for your cooperation in this matter.

                        Very truly yours,


                        Howard S. Bergen, Jr.
                        Director
                        Specialty Products

/jf
Enclosure


                                    0422914


EXHIBIT A

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# MONSANTO

## Special Undertaking by Purchasers of Polychlorinated Biphenyls

Monsanto Company (Monsanto) manufacturers certain polychlorinated biphenyls products (PCB's) which Universal Manufacturing Corporation (Buyer) desires to purchase. While buyer desires to purchase PCB's because of certain desirable flame resistant and insulator properties, Buyer acknowledges that it is aware and has been advised by Monsanto that PCB's tend to persist in the environment; that care is required in the handling, possession, use and disposition; that tolerance limits have been or are being established for PCB's in various food products.

Monsanto has therefore adopted certain restrictive policies with respect to its further production, sale and delivery of PCB's, including the receipt of undertakings from its customers as set forth below, and Buyer is willing to agree to such undertakings with respect to sales and/or delivery of PCB's by Monsanto to Buyer.

Accordingly, Buyer hereby covenants and agrees that, with respect to any and all PCB's sold or delivered by or on behalf of Monsanto to Buyer on or after the date hereof and in consideration of any such sale or delivery, buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses (except to the extent arising from failure of PCB to conform with specifications) arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under Buyer, whether alone or in combination with any other substance, including without implied limitation, any contamination of or adverse effect on humans, marine and wildlife, food, animal feed or the environment by reason of such PCB's.

All existing contracts for the sale of PCB's by Monsanto to Buyer are hereby amended to contain the provision set forth above.

Nothing herein shall create or imply, any duty or obligation of Monsanto to sell or deliver any PCB's to Buyer. No conditions, undertakings or agreements purporting to modify the terms hereof shall be binding unless hereafter made in writing specifically referring to this agreement and signed by the party to be bound and no modification or variance of the above undertaking shall be effective by the acknowledgement or acceptance of any sale document, purchase order, shipping instructions or other forms containing terms or conditions at variance herewith.

Universal Manufacturing Corporation
(Buyer)

BY: _____

TITLE: President

DATE: January 7, 1972

MONSANTO COMPANY

BY: _____

0422913

EXHIBIT A

B1131-A  DIRECT #2
01/09/73

NICC SPECIALT PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

FOR  DL  1972

PAGE 171

— IN THOUSANDS OF POUNDS AND DOLLARS —

| MG SIS REP | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | SALES COMM FOR CURR YEAR | CURR CONR YTD | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | CUST.I.D. MAX-ORD-CAP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | L6 DIELECTRICS  DR-C-PATON | | | | | | | | | | | | | | | | | |
| | ADDCISM: 125 | | | | | | | | | | | | | | | | | |
| 1237 | AEROVOX CORP NEW BEDFORD MA | | 90.6 | | | | | | | | | | | | | | | 10001013 |
| 1134 | WESTERN ELEC CICERO ILL | | 3.60 | | | 1.20 | | | | | | | | | | | | 10088755 |
| 1237 | AXEL ELECTRONICS JAMAICA NY | | 7.80 | | 1.20 | 1.20 | 1.20 | | | | | | 2.40 | 1.20 | | | | 10007739 |
| 1933 | BRUNSWICK CORP LINCOLN NB | | .060 | | 4.80 | | | | | | | | | | | | | 00252581 |
| 1237 | TOBE DEUTSCHMANN CANTON MA | | 3.00 | | | | | | | | | | | | | | | 10021995 |
| 1237 | EDWARDS HIGH VACUUM GRAND-I NY | | .600 | | | | | | | | | | | | | | | 00117412 |
| 1237 | UNIV MFG CORP BRIDGEPORT CT | | 26.4 | | | | | | | | | | | | | | | 10025796 |
| 1237 | CORNELL DUB ELEC N BEDFORD MAS | 50.0 | 50.0 | 50.0 | | | | | | | | | | | | | | 00086746 |
| 1237 | FILTRON CO INC FLUSHING NY | | | | | | | | | | | | | | | | | 10027861 |
| 1922 | GEN ELEC ROME GA | 207 | 393 | 207 | 200 | | | | | 100 | | 100 | | | | | | 10031281 |
| 1237 | GEN ELEC PITTSFIELD MA | | 1.20 | | .522 | | 100 | | 102 | 102 | | 106 | | 106 | 101 | 7 | | 10031761 |
| 1237 | GEN ELEC HUDSON FALLS NY | | 68.0 | | | | | | | | | | | | 101 | | | 10031931 |
| 1237 | GEN ELEC SCHENECTADY NY | | | | .120 | | | | | | | .120 | | | | | | 10031850 |
| 1237 | PARENT CUST. TOT—GEN ELEC SCHENE | 207 | 327 | 207 | 722 | 100 | 100 | | 102 | 102 | | 206 | 100 | 106 | 101 | 7 | | 10031850 |
| 1134 | GUDEMAN CO CHICAGO ILL | | 19.2 | | | | | | | | | | | | | | | 10035937 |
| 1935 | GNIN ENGINEERING BELHAVEN NC | .600 | .600 | .600 | .600 | | | | | | | | | | | | | 00212709 |
| 1237 | HIGH ENERGY MALVERN PA | | 2.40 | | 6.00 | | | | | | | | | 6.00 | | | | 10037964 |
| 1134 | HIGH STRENGTH PLAST CHGO-ILL | | .600 | | 3.00 | .600 | 3.00 | | | | | | | | | | | 10037980 |
| 1935 | MCGRAW EDISON SOUTH MI WI | | 5.40 | | .600 | | | | | | | | | | | | | 00128910 |
| 1935 | MYTRONICS DARLINGTON SC | | .600 | | .600 | | | | | | | | | | | | | 00131962 |
| 1925 | PUTTER CO WESSON MS | 3.00 | 3.00 | 3.00 | 3.00 | | 3.00 | | | | | | | | | | | 10064287 |
| 1935 | QUINN ENGINEER BELLHAVEN NC | | .600 | | | | | | | | | | | | | | | 00253296 |
| 1237 | K P INTERONICS BAYSHORE L I NY | | 1.20 | | 10.2 | 5.4 | 5.4 | 5.4 | 10.8 | 3.00 | 5.4 | 13.2 | 14.4 | 1.20 | 6.00 | 7.2 | | 00270849 |
| 1935 | SANGAMO ELEC PICKENS SC | | 30.6 | | 94.2 | | | | | 5.4 | | | | 7.2 | 7.2 | | 7.2 | 10070783 |
| 1237 | SPRAGUE ELEC N RUARNS MA | 40.0 | 1.20 | 40.0 | | | | | | | | | | | | | | 10074470 |
| | TOTAL-PRODUCT  @ @ @ @ @-@ @  LB | 301 | 537 | 301 | 842 | 7 | 7 | 5 | 21 | 110 | 5 | 219 | 114 | 125 | 115 | 15 | 7 | 1040-280-16 |
| | @ @ @ @ @ @ @ @ @ @  $$ | 60.3 | 103 | 60.3 | 169 | 1.6 | 20.3 | 1.2 | 2.7 | 22.0 | 1.4 | 43.5 | 23.1 | 24.9 | 23.2 | 3.1 | 1.9 | |
| | 00361C | | | | | | | | | | | | | | | | 00361C | 1040-280-16 |
| | INTEREEN: TD=30 | | | | | | | | | | | | | | | | | 1050-210-16 |
| 1138 | AKRON CONTROLLER AKRON OHIO | | 6.74 | | | .360 | | | | | | | | | | | | 00259462 |
| 1237 | ALLIED CHEM HOPEWELL VA | | 1.35 | | .360 | .360 | | | | | | | | | | | | 10002451 |
| 1237 | ALLIS—CHALMERS CARLSBAD NM | | 1.08 | | | | | | | | | | | | | | | 00246045 |
| 1886 | ALLIS CHALMERS LOS ALMOS N M | | .497 | | | | | | | | | | | | | | | 00164119 |
| 1131 | ALLIS CHALMERS PITTS PA | 800 | 800 | 800 | 547 | 97 | | 98 | 98 | | | 99 | | 105 | | 49 | | 10002664 |
| | PARENT CUST. TOT-ALLIS CHALMERS | 800 | 499 | 800 | 547 | 97 | | 98 | 98 | | | 99 | | 105 | | 49 | | 00045055 |
| 1932 | AMERICAN CYANAMID SAVANNAH GA | .500 | .674 | .500 | | | | | | | | | | | | 49 | | 00150398 |

EXHIBIT B

B1131-A  DIRECT #2
01/09/73

MICC SPECIAL PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

FOR DEC 1972

PAGE 189

—IN THOUSANDS OF POUNDS AND DOLLARS—

| M/G REF | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | SALES CURR FOR CURR YEAR | SALES CURR Y-T-D | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | CUST I.D./MAR.-CRED. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1933 | TRANSFORMER PYRANOL A1383B-2 | | | | | | | | | | | | | | | | 024 2A | 1050-301-16 |
| | WESTINGHOUSE KANSAS CITY MO | | | | .915 | | | | | | | .915 | | | | | | 00285129 |
| | PARENT CUST. TOT-WESTINGHOUSE EL | | | | 22.7 | | | | | 7.62 | 3.30 | 9.74 | 2.03 | | | | 63 | 00047740 |
| | TOTAL PRODUCT * * * * * LB | 14418 | 15112 | 14408 | 13838 | 1497 | 806 | 1817 | 661 | 1318 | 138 | 130 | 141 | 1237 | 1082 | 324 | | 1050-301-16 |
| | 024 02A      * * * * $$ | 2654 | 2792 | 2651 | 2052 | 274 | 154 | 329 | 142 | 289 | 36.2 | 35.0 | 39.8 | 264 | 229 | 73.4 | 16.4 | |
| | TO TOT CLASS TRANSFORMER FLUI LB$$ | 14418 | 15112 | 14408 | 13838 | 1497 | 806 | 1817 | 661 | 1318 | 138 | 130 | 1078 | 1237 | 1332 | 898 | | |
| | | 2654 | 2792 | 2651 | 2052 | 274 | 154 | 329 | 142 | 289 | 253 | 209 | 236 | 264 | 286 | 187 | | |
| X | AROCLOR 1016 | | | | | | | | | | | | | | | | 0225 0A | 1040-016-16 |
| 1287 | •AEROVOX CORP NEW BEDFORD MA | 1069 | 284 | 1069 | 1663 | 175 | 93 | 264 | 92 | 93 | 84 | 92 | 184 | 91 | 204 | 105 | 186 | 10001013 |
| 1287 | •ALBANY FELT CO ALBANY NY | | .165 | | .18.6 | | | | | | | | | | 6.60 | 8.90 | 3.60 | 10001811 |
| 1856 | •CAPACITOR SPECLST ESCOMDIDO.CA | | .100 | | .600 | | | | | | | | .600 | | | | | 00181374 |
| 1124 | •E 1 DU PONT DE NEW CLINTON IA | | | | | | | | | | | | | | | | | 10023688 |
| 1856 | •ELECTRO MAGNET FI PALO ALTO.CA | | | | | | | | | | | | | | | | | 00287040 |
| 1287 | •ELECTRICAL UTILITI LA SALLE IL | 1000 | 87.2 | 1000 | 600 | 43 | 44 | 128 | 86 | 43 | 42 | | 43 | 88 | 43 | 86 | 43 | 10025745 |
| 1287 | •UNIV MFG CORP BRIDGEPORT CT | 1500 | 362 | 1500 | 1093 | 179 | 182 | 181 | 181 | 181 | 90 | | 93 | 88 | 93 | 94 | 95 | 10025796 |
| 1287 | •UNIV MFG CORP JUTOBA NJ | | 187 | | 825 | 97 | | 87 | | | 91 | | 90 | 94 | | 93 | 93 | 00165018 |
| | PARENT CUST. TOT-ELECTRON IC CUR | 1500 | 549 | 1500 | 1918 | 275 | 182 | 268 | | 181 | 181 | | 183 | 182 | 93 | 187 | 187 | 10025796 |
| 1287 | •CORNELL DUB ELEC N BEDFORD MAS | 2000 | 371 | 2000 | 1612 | 177 | 173 | 166 | 92 | 174 | 91 | 184 | 94 | 91 | 92 | 184 | 93 | 00086746 |
| 1287 | •FILTRON CO INC FLUSHING NY | | | | 9.00 | | | | | | | | 6.00 | | | | 3.00 | 10027861 |
| 1287 | •GEN ELEC PITTSFIELD MA | | | | 1.20 | | | 1.20 | | | | | | | | | | 10031761 |
| 1287 | •GEN ELEC FORT EDWARDS NY | 6000 | 1324 | 6000 | 5790 | 560 | 378 | 663 | 663 | 573 | 286 | 285 | 571 | 285 | 473 | 478 | 576 | 00249467 |
| 1287 | •GEN ELEC HUDSON FALLS NJ | | | | 2091 | 377 | 190 | 284 | 189 | 96 | 287 | | 191 | 97 | 96 | 193 | 93 | 10031931 |
| | PARENT CUST. TOT-GEN ELEC SCHENE | 6000 | 1324 | 6000 | 7882 | 937 | 567 | 949 | 851 | 668 | 573 | 285 | 762 | 381 | 569 | 671 | 669 | 10031830 |
| 1184 | •GUDEMAN CO CHICAGO ILL | 15.0 | 4.80 | 15.0 | 2.40 | 2.40 | | | | | | | | | | | | 10035937 |
| 1287 | •HERCULES WILMINGTON DE | | .600 | | | | | | | | | | | | | | | 10031557 |
| 1933 | •HERCULES INC TERRE HAUTE IN | | .800 | | | | | | | | | | | | | | | 00153998 |
| | PARENT CUST. TOT-HERCULES WILMIN | | 1.20 | | | | | | | | | | | | | | | 10037557 |
| 1856 | •HIGH ENERGY INC ESCONDIDO.CA | | 15.2 | | 13.2 | | | 6.00 | | | | 7.20 | | | | | | 00277450 |
| 1287 | •HIGH ENERGY WESTFIELD MASS | | 142 | | .600 | 1.7 | 86.2 | 39.6 | | 91.7 | | | 92.7 | | .600 | 45.0 | 92.2 | 00288616 |
| 1287 | •HIGH ENERGY MALVERN PA | | | | 141 | 80.9 | | 90.8 | | | | 91.0 | | | 3.0 | | | 10037964 |
| 1287 | •JARD COMPANY INC BENNINGTON VT | 400 | 15.2 | 400 | 632 | | | | 88 | | 94 | | | | 92.7 | | | 00183830 |
| 1287 | •P J SCHWEITZER LEE MASS | | .220 | | .165 | .165 | | | | | | | | | | | | 10071429 |
| 1932 | •MALLORY CAPACITOR WAYNESBOR TN | 1000 | 379 | 1000 | 1398 | 91 | 92 | 182 | 88 | 185 | 94 | 94 | 190 | 94 | 96 | 95 | 97 | 00216143 |
| 1184 | •MCGRAW EDISON SOUTH MI MI | 1200 | 181 | 1200 | 933 | 88.7 | 89.5 | 95.7 | 88.5 | 95.3 | | 94.1 | 95.7 | 94.8 | | 96.4 | 94.9 | 00128910 |

EXHIBIT B

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

81131-A  DIRECT #2
01/09/73

**MICC SPECIAL /PRODUCTS PRODUCT/CUSTOMER SALES REPORT**

FOR Dec 1972

PAGE 190

— IN THOUSANDS OF POUNDS AND DOLLARS —

| SLS REF | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | THIS YEAR FOR CURR. YEAR | CURR. YTD | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | CUST.I.D./ MAJ.GRD.GP. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **AROCLOR 1016** | | | | | | | | | | | | | | | | | 1040-016-16 |
| 7674 | NO CHG SHIPMENTS SPECIALTY PRD | | .055 | 7.00 | | | | | | | | | | | | 022.0A | | 00271020 |
| 1124 | PLASTIC CAPACITORS CHICAGO ILL | | | | | | | | | | | | | | | | | 00208410 |
| 1355 | SANGAMO ELEC PICKENS SC | 7.00 | 290 | 800 | 729 | 264 | 96.5 | 92.9 | 186 | 86.1 | 96.7 | 88.9 | 89.9 | 94.1 | 190 | 84.1 | | 10070783 |
| 1237 | SPRAGUE ELEC N ADAMS MA | 800 | 187 | 1500 | 1092 | | | 179 | | | | | 94 | 185 | | 92 | 92 | 10074770 |
| 1237 | STEVENS PAPER S HADLEY FALL MA | 1500 | .600 | | .600 | .600 | | | | | | | | | | | | 00139238 |
| 1237 | STEVENS PA MILLS WESTFIELD MA | | .600 | | .600 | .600 | | | | | | | | | | | | 10076137 |
| 1237 | PARENT CUST. TOT-STEVENS. PAP MIL | | 1.20 | | .600 | .600 | | | | | | | | | | | | .00139246 |
| 1178 | WESTINGHOUSE BLOOMINGTON IND | | 286 | | 1717 | 189 | 287 | 95 | 95 | 95 | | 96 | 96 | 285 | 190 | 193 | 96 | 10089786 |
| 1937 | WESTINGHOUSE TERRE HAUTE IN | | .165 | | 1.280 | | .165 | | | | | 1.20 | | | | .60 | | 00283096 |
| 1353 | WESTINGHOUSE DETROIT MICHIGAN | | .165 | | .165 | | .165 | | | | | | | | | | | 00189484 |
| 1188 | WESTINGHOUSE CLEVELAND OHIO | 82.0 | 8.40 | 82.0 | 49.8 | | 5.40 | | 3.00 | 6.00 | 3.00 | 3.60 | 3.60 | 5.40 | 5.40 | 7.20 | 7.20 | 00189441 |
| 1181 | WESTINGHOUSE PITTSBURGH PA | | 1.119 | | | | | | | | | | | | | | | 10089743 |
| 1237 | PARENT CUST. TOT-WESTINGHOUSE EL | 82.0 | 296 | 82.0 | 1769 | 189 | 293 | 95 | 98 | 101 | 3 | 101 | 99 | 291 | 196 | 201 | 103 | 00047740 |
| 1237 | YORK CAPACITOR CORP BRKLYN.NY | 100 | 26.4 | .100 | 103 | 25.2 | | 25.2 | 26.4 | 101 | 26.4 | | | | | | 103 | 10092590 |
| | TOTAL PRODUCT * * * * * * * LB. | 16673 | 4138 | 16673 | 20517 | 2356 | 1676 | 2580 | 1608 | 1718 | 1191 | 1037 | 1933 | 1504 | 1394 | 1855 | 1666 | 1040-016-16 |
| | 022.50A * * * * * * * $$ | 2801 | 747 | 2801 | 3997 | 425 | 303 | 466 | 307 | 333 | 233 | 211 | 197 | 309 | 288 | 383 | 342 | |
| | **AROCLOR DIST.1232** | | | | | | | | | | | | | | | | | 1040-230-16 |
| 1178 | WESTINGHOUSE BLOOMINGTON IND | 300 | | 300 | 300 | | | | | | | | | | | 003.50D | | 10089786 |
| | TOTAL PRODUCT * * * * * * LB | 300 | | 300 | 300 | | | | | | | | | | | 003.50D | | 1040-230-16 |
| | 003.50D * * * * * * * $$ | 62.1 | | 62.1 | 62.1 | | | | | | | | | | | | | |
| | **AROCLOR 1242** | | | | | | | | | | | | | | | | | 1040-240-16 |
| 1237 | AEROVOX CORP NEW BEDFORD MA | | 568 | | | | | | | | | | | | | 003.9C | | 10001013 |
| 1237 | ALBANY FELT CO ALBANY NY | | .165 | | | | | | | | | | | | | | | 10001811 |
| 1932 | ANDERSON ELECTRIC LEEDS AL | 2.00 | 1.20 | 2.00 | | | | | | | | | | | | | | 10005655 |
| 1000 | CAPACITOR SPECLST ESCONDIDO CA | | 36.5 | | 8.40 | 8.40 | | | | | | | | | | | | 00181374 |
| 1926 | CONDENSER PROD BROOKSVILLE FL | | .600 | | .600 | .600 | | | | | | | | | | | | 00257036 |
| 1856 | ELECTRO MAG MOUNT VIEW CA | | 1.20 | | | | | | | | | | | | | | | 00250899 |
| 1154 | ELECTRICAL UTILITI LA SALLE IL | | 702 | | | | | | | | | | | | | | | 10025745 |
| 1237 | UNIV MFG CORP BRIDGEPORT CT | | 384 | | | | | | | | | | | | | | | 10025796 |
| 1237 | UNIV MFG CORP TOTOWA NJ | | 288 | | | | | | | | | | | | | | | 00165018 |
| 1237 | PARENT CUST. TOT-ELECTRON IC COM | | 671 | | | | | | | | | | | | | | | 10025796 |
| 1237 | ESSEX CHEM SAYREVILLE NJ | | 12.0 | | | | | | | | | | | | | | | 10026687 |
| 1237 | CORNELL DUB ELEC N BEDFORD MAS | | .845 | | | | | | | | | | | | | | | 000836746 |
| 1257 | GARLOCK PALMYRA NY | | .055 | | | | | | | | | | | | | | | 10030498 |

EXHIBIT B

81131-A   DIRECT #2
01/09/73

MICC SPECIAL PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

FOR DEC 1972

PAGE 192

-IN THOUSANDS OF POUNDS AND DOLLARS-

| SLS REP | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | SALES CUM FOR CURR. YEAR | SALES CUM. YSD | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | CUST.I.D./ MAJ.GRO-GR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | DISC DIELECTRICS | | | | | | | | | | | | | | | | | 9998-000-16 |
| 178 | •CHAMPION INTL HAMILTON OH | 29.4 | | | | | | | | | | | | | | | 0244-2D | 10015308 |
| 134 | •E I DU PONT DE NEM CLINTON IA | | | •880 | •880 | •880 | | | | •144 | •144 | | | | | | | 10023688 |
| 237 | •UNIV MFG CORP BRIDGEPORT CT | •600 | | | | | | | | | | | | | | | | 10025796 |
| 192 | •GEN ELEC ROME GA | 95.7 | | | | | | | | | | | | | | | | 10031281 |
| 237 | •GEN ELEC PITTSFIELD MA | •826 | | •112 | •112 | •112 | | •112 | | | | | | | | | | 10031761 |
| 237 | •GEN ELEC HUDSON FALLS NY | •248 | | | | | | | | | | | | | | | | 10031931 |
| | PARENT CUST. TOT-GEN ELEC SCHENE | 922 | | 112 | 112 | 112 | | 112 | | | | | | | | | | 10031850 |
| 193 | •HERCULES INC TERRE HAUTE IN | 1•22 | | 1•20 | 1•20 | 1•20 | | | | | | | | | | | | 00153958 |
| 178 | •WESTINGHOUSE BLOOMINGTON IND | 2•40 | | | | | | | | | | | | | | | | 10089786 |
| 237 | •WOODMONT PRO HUNTINGDON VAL PA | 6•00 | | | | | | | | | | | | | | | | 10092116 |
| | TOTAL PRODUCT * * * * * * * * LB | 962 | | 114 | 2 | 2 | | 112 | | | | | | | | | | 9998-000-16 |
| | 0244-2D    * * * * * * * * $$ | 172 | | 22.3 | 2.1 | 2.1 | | 20.2 | | •1 | •1 | | | | | | 0228 | 0228 |
| 178 | •WESTINGHOUSE BLOOMINGTON IND | 8.25 | | 16.5 | 8•25 | 8•25 | 8.25 | | | | | | | | | 02283A | 02283A | 1050-218-16 |
| | TOTAL PRODUCT * * * * * * * * LB | 8•25 | | 16.5 | 8•25 | 8•25 | 8.25 | | | | | | | | | | | 1050-218-16 |
| | 02283A    * * * * * * * * $$ | 1•98 | | 3•96 | 1•98 | 1•98 | 1•98 | | | | | | | | | | |
| 30 | TOT CLASS CAPACITOR FLUIDS: LB: | 17275 | 15925 | 20677 | 2375 | 1689 | 2693 | 1608 | 1218 | 1191 | 1042 | 1933 | 1504 | 1394 | 1859 | 1671 | |
| | $$ | 2926 | 2837 | 4029 | 431 | 306 | 486 | 306 | 333 | 233 | 213 | 397 | 309 | 288 | 384 | 344 | |
| 16 | TOT PG DIELECTRICS  DR-C-P LB | 31037 | 31683 | 34514 | 3872 | 2495 | 4510 | 2269 | 3036 | 2342 | 2004 | 3011 | 2741 | 2477 | 3191 | 2569 | |
| | $$ | 5630 | 5577 | 6881 | 705 | 460 | 816 | 448 | 622 | 486 | 421 | 633 | 573 | 517 | 670 | 531 | |
| | | 5579 | | | | | | | | | | | | | | | | |

EXHIBIT B

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

81131-A  DIRECT #2
01/09/73

**MICC SPECIAL PRODUCTS**
**PRODUCT/CUSTOMER SALES REPORT**

FOR D..) 1972          PAGE 254

—IN THOUSANDS OF POUNDS AND DOLLARS—

| SIS RBP | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | SALES-COUNT FOR CURR YEAR | SALES CURR Y-T-D | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | CUST. I.D./MARK-CARD-GR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | DISC PCB PCT | | | | | | | | | | | | | | | | 024.2B | 9998-000-17 |
| 1938 | E I DUPONT NEMOURS STRANG TX | | 3.00 | | | | | | | | | | | | | | | 10026072 |
| | PARENT CUST. TOT-E I DUPONT WILM | | 26.7 | | .590 | .590 | | | | | | | | | | | | | 10023564 |
| 5200 | .DURA COMMODITIES HARRISON NY | | .050 | | | | | | | | | | | | | | | 00266167 |
| 1178 | .DURIRON COMPANY DAYTON OHIO | | .360 | | | | | | | | | | | | | | | 10024307 |
| 5200 | .DURKEE ATWOOD MPLS MN | | 2.08 | | | | | | | | | | | | | | | 10024315 |
| 1866 | .DURRUM INSTRUMENTS PALOALTO CA | | .177 | | | | | | | | | | | | | | | 00254878 |
| 1855 | .DUVAL SIERRITA SAHUARITA AZ | | 6.00 | | | | | | | | | | | | | | | 00186965 |
| 1933 | .DYNAMIC FORGE CORP OXFORD MB | | 3.00 | | | | | | | | | | | | | | | 00198714 |
| 5200 | .DYNASURF CHEM BALTIMORE MD | | .150 | | | | | | | | | | | | | | | 10024439 |
| 5200 | .EASTMAN KODAK CO ROCHESTER NY | | .100 | | .600 | | | .600 | | | | | | | | | | 10025125 |
| 5200 | TENN EASTMAN KINGSPORT TENN | | .200 | | | | | | | | | | | | | | | 10018547 |
| 5200 | TEXAS EASTMAN CO LONGVIEW TX | | .116 | | | | | | | | | | | | | | | 10079292 |
| | PARENT CUST. TOT-EASTMAN KODAK C | | .116 | | .600 | | | .600 | | | | | | | | | | 10025125 |
| 5200 | .EATON ALLEN CORP BKLYN NY | | 5.44 | | | | | | | | | | | | | | | 10025141 |
| 1153 | .EATON YALE — TOWNE BIL CRK MI | .500 | .645 | .500 | | | | | | | | | | | | | | 10025163 |
| 5200 | .EDA CORP HICKORY NC | | .520 | | | | | | | | | | | | | | | 00264865 |
| 1131 | .EDWARDS HIGH VACUUM GRAND I NY | | .500 | | | | | | | | | | | | | | | 00117412 |
| 1178 | .ELANO CORP XENIA OH | | | | | | | | | | | | | | | | | 00117463 |
| 5200 | .ELECTROLUX OLD GREENWICH CT | | 1.90 | | | | | | | | | | | | | | | 10025818 |
| 5200 | .UNIV MFG CORP BRIDGEPORT CT | | 27.0 | | | | | | | | | | | | | | | 10025796 |
| 1856 | .EL MONTE EMERG PASADENA CA | | 1.50 | | | | | | | | | | | | | | | 10025818 |
| 1938 | .ELLISON INDUSTS ELLISBURGH AL | | 1.54 | | | | | | | | | | | | | | | 10008670 |
| 1936 | .ELWELL PARKER ELEC CLEVE OH | | 2.50 | | | | | | | | | | | | | | | 10026660 |
| 1252 | .EMBOSSOGRAPH PROCESS BRKLYN NY | | .600 | | | | | | | | | | | | | | | 10026099 |
| 5200 | .EMERSON-CUMING INC CANTON MA | | 1.80 | | 2.40 | 2.40 | | | | | | | | | | | | | 00067171 |
| 1134 | .EMERSON ELECTRIC RACINE WISC | | 2.00 | | | | | | | | | | | | | | | 00216801 |
| 1138 | .EMPIRE DIE CASTING CLEVE OH | | 8.00 | | | | | | | | | | | | | | | 10026156 |
| 5200 | .ENDICOTT JOHNSON ENDICOTT NY | | 6.00 | | | | | | | | | | | | | | | 10026202 |
| 1222 | .ENGELHARD INDUSTRIES NEWARK NJ | | .600 | | 1.00 | 1.00 | | | | | | | | | | | | | 00117706 |
| 5200 | .ENGINEERED YARNS COVENTRY RI | | 3.00 | | 1.00 | 1.00 | | | | | | | | | | | | | 10026318 |
| 5200 | .ENMAR INC LITTLE R AR | | .250 | | 1.25 | 1.25 | | | | | | | | | | | | | 10011900 |
| 5200 | .ENTERPRIZE PAINT S PLAINFLD NJ | | .500 | | .250 | .250 | .250 | .25 | | | | | | | | | | | 00261173 |
| 5200 | .ENVIRODENICS PARAMOUNT CA | | .050 | | | | | | | | | | | | | | | 00249845 |
| 5200 | .EONAIR INC BAKERSFIELD CA | | .050 | | .050 | .050 | .050 | | | | | | | | | | | | 00240483 |
| 5200 | .EPOXY LTD EL MONTE | | .050 | | | | | | | | | | | | | | | 00250127 |
| 1836 | .ESCO CORP PORTLAND OR | | .500 | | | | | | | | | | | | | | | 00248509 |
| 5200 | .ESSEX CHEM LA MIRADA CA | | 20.2 | | 5.60 | 5.60 | | | | | | | | | | | | | 10026709 |
| 5200 | ESSEX CHEM SAYREVILLE NJ | | 39.5 | | 25.2 | 25.2 | 25.2 | | | | | | | | | | | | 10026687 |
| | PARENT CUST. TOT-ESSEX CHEM BALT | | 59.7 | | 30.8 | 5.6 | 25.2 | | | | | | | | | | | | 10026679 |
| 5200 | .EVANS ADHESIVES COLUMBUS OH | | 4.00 | | 2.20 | 2.20 | | | | | | | | | | | | | 00211788 |

EXHIBIT B

MICC DIV-02 SPECIALTY PRODUCTS
NO.4 CUSTOMER/PRODUCT SALES REPORT FOR DEC 1972
-IN ACTUAL POUNDS AND DOLLARS-

| | TOTAL MONTH SALES POUNDS | DOLLARS | Y-T-D POUNDS | SALES DOLLARS | TOTAL LAST YEAR SALES POUNDS | DOLLARS | TOTAL YEAR GOAL LBS | CUST-ID MAJR-GRD-GP |
|---|---|---|---|---|---|---|---|---|
| ELECTRIC MFG REPAIR BETHEL P P | | | | | | | | |
| 1131 INERTEEN 70-30 | | | | | 5,078 | 1,144 | AR 233770 | 00253138 / 1050-210-16 |
| ELEC MOTOR & SUPPLY FRESNO CA | | | | | | | | |
| 1866 TRANSFORM PYRANOL A13838 | | | | | 5,600 | 1,685 | AR 233830 | 00233781 / 1050-300-16 |
| ELECTRIC SERV NEW BEDFORD MA | | | | | | | | |
| 1270 INERTEEN 100-42 | | | | | 770 | 246 | AR 999999 | 00251542 / 1050-215-16 |
| ELECTRIC SERV MANTNNE NJ | | | | | | | | |
| 1237 TRANSFORM PYRANOL A13838 | | | 675 | 152 | | | AR | 10025737 / 1050-300-16 |
| ELECTRIC SERVICE CINCINNATI DH | | | | | | | | |
| 1178 TRANSFORM PYRANOL A13838 | | | | | 6,750 | 1,519 | AR 233975 | 00196576 / 1050-300-16 |
| ELECTRIC SERV CO ALCOA TENN | | | | | | | | |
| 1932 TRANSFORM PYRANOL A13838 | | | | | 675 | 152 | AR 233925 | 00270784 / 1050-300-16 |
| ELECTRO MAG MOUNT VIEW CA | | | | | | | | |
| 1865 AROCLOR 1242 | | | | | 1,200 | 290 | AR 234258 | 00250899 / 1040-260-16 |
| ELECTRO MAGNET FI PALO ALTO CA | | | | | | | | |
| 1866 AROCLOR 1016 | | | 600 | 156 | | | AR 234258 | 00287040 / 1040-016-16 |
| ELECTRIC UTILIT LA SALLE IL | | | | | | | | |
| ELECTRICAL UTILIT LA SALLE IL | | | | | | | | |
| 1134 AROCLOR 1016 | 43,320 | 8,881 | 599,960 | 117,409 | 87,160 | 15,166 | AR 236158 | 10025765 / 1040-016-16 |
| 1134 AROCLOR 1242 | | | | | 702,450 | 122,150 | 1,000,000 | 00250745 / 1040-240-16 |
| TOTAL CUSTOMER | 43,320 | 8,881 | 599,960 | 117,409 | 789,620 | 137,316 | 1,000,000 | 100025745 / 1040-300-16 |
| ELECTRO ENG MKS SAN LEANDRO CA | | | | | | | | |
| 1866 TRANSFORM PYRANOL A13838 | | | | | 8,100 | 2,229 | AR 234239 | 10025753 / 1050-300-16 |
| | | | | | | | 5,000 | |
| ELECTRIC IC COM BRIDGEPORT CT | | | | | | | | |
| UNIVAC MFG CORP BRIDGEPORT CT | | | | | | | | |
| 1237 AROCLOR 1016 | 99,700 | 19,414 | 1,093,300 | 216,132 | 362,200 | 64,099 | AR 797742 | 10025796 / 1040-016-16 |
| 1237 AROCLOR 1242 | | | | | 383,600 | 69,048 | 1,500,000 | 00250745 / 1040-240-16 |
| 1237 AROCLOR 1254 | | | | | 266,400 | 5,465 | | 10025753 / 1040-280-16 |

EXHIBIT B

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

REPORT B1476-A
01/09/73

MICC DIV-02
NO.4 CUSTOMER/PRODUCT SPECIALTY PRODUCTS SALES REPORT FOR   DEC 1972
—IN ACTUAL POUNDS AND DOLLARS—

| | TOTAL MONTH POUNDS | SALES DOLLARS | Y-T-D POUNDS | SALES DOLLARS | TOTAL LAST YEAR POUNDS | DOLLARS | TOTAL YEAR GOAL LBS | CUST ID MAJR-GRD-GP |
|---|---|---|---|---|---|---|---|---|
| ELECTRON IC COM BRIDGEPORT CT | | | | | | | | 10025796 |
| UNIV MFG CORP BRIDGEPORT CT | | | | | | | | 9999B-000-16 |
| 1237 DISC DIELECTRICS  TOTAL CUSTOMER | | | | | 600 | 125 | AR 757762 | 10025796 |
| | 94,700 | 19,414 | 1,093,300 | 215,132 | 772,800 | 130,726 | 1,500,000 | 10025796 |
| UNIV MFG CORP TOTOWA NJ | | | | | | | | 0016501B |
| 1237 AROCLOR 1016 | 92,600 | 18,983 | 824,600 | 159,982 | 186,000 | 33,424 | | 1040-014-16 |
| 1237 AROCLOR 1242    TOTAL CUSTOMER | 92,600 | 18,983 | 824,600 | 159,232 | 287,500 | 51,750 | | 1040-240-16 |
| | | | | | 676,300 | 85,174 | | 0016501B |
| TOT PAR ELECTRON IC COM BRIDGEPORT | 187,300 | 38,397 | 1,917,900 | 375,064 | 1,247,100 | 224,100 | AR 757762 / 1,500,000 | 10025796 |
| ELENCO NORWOOD MASS | | | | | | | | 00256021 |
| 1237 TRANSFORM PYRANOL A13B3B | | | | | 675 | 152 | AR 234,487 | 1050-300-16 |
| ENERGY SYSTEMS PALO ALTO CA | | | | | | | | 10026253 |
| 1866 INERTEEN 70-30 | | | 3,370 | 1,041 | 7,614 | 1,668 | AR 239,288 | 1050-210-16 |
| ENGLISH ELECTRIC CHICAGO IL | | | | | | | | 00180475 |
| ENGLISH ELECTRIC CAMBRIDGE MA | | | | | | | | |
| 1237 INERTEEN PPO | | | | | 4,718 | 1,062 | AR 239,921 | 1050-200-16 |
| ENGLISH ELECTRIC MANHATTAN NY | | | | | | | | 00252336 |
| 1273 INERTEEN 70-30 | | | | | 6,740 | 1,517 | AR 239,921 | 1050-210-16 |
| TOT PAR ENGLISH ELECTRIC CHICAGO IL | | | | | 11,458 | 2,579 | | 00180475 |
| ERIE MANUFACTURING CO ERIE PA | | | | | | | | 00157112 |
| 1237 TRANSFORM PYRANOL A13B3B | | | | | 625 | 152 | AR | 1050-300-16 |
| ERIEZ MFG CO ERIE PA | | | | | | | | 00162957 |
| 1131 TRANSFORM PYRANOL A13B3B | | | 2,700 | 608 | 26,300 | 5,468 | AR 243,500 / 20,000 | 1050-300-16 |
| ESCO MFG GREENVILLE TX | | | | | | | | 10026636 |
| ESCO MFG GREENVILLE TX | | | | | | | | |
| 1974 INERTEEN 70-30 | | | 7,414 | 1,668 | 29,656 | 6,376 | AR 242,068 / 40,000 | 1050-210-16 |
| ESPEY MFG ELECTR SARATOGA NY | | | | | | | | 00158852 |
| 1237 INERTEEN 70-30 | 20,220 | 4,550 | 20,220 | 4,550 | 140,954 | 31,291 | AR 242,230 | 1050-210-16 |
| 1237 TRANSFORM PYRANOL A13B3B   TOTAL CUSTOMER | | | | | 360 | 83 | 100,000 | 1050-210-16 |
| | 20,220 | 4,550 | 20,220 | 4,550 | 149,314 | 31,474 | 100,000 | 00158852 |

EXHIBIT B

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

MICC SPECIAL PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

— IN THOUSANDS OF POUNDS AND DOLLARS —

FOR DL 1973    PAGE 185

B1131-A DIRECT #2
01/09/74

EXHIBIT B

| MKG REF | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR XACT | SALES/QUOTA FOR CURR YEAR | SALES CURR YTD | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | GUEI (a) MARK-SEG-GP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TRANSFORMER PYRANOL A13636-3 | | | | | | | | | | | | | | | | | 1050-302-16 |
| | -O TGT CLASS TRANSFORMER FLUI LB | 11812 | 13838 | 13188 | 13413 | 1478 | 1096 | 1013 | 1431 | 1023 | 900 | 1174 | 1144 | 646 | 1248 | 1532 | 726 | |
| | $$ | 2470 | 2852 | 2470 | 2763 | 310 | 235 | 217 | 291 | 194 | 192 | 233 | 230 | 144 | 263 | 311 | 143 | |
| | AROCLOR 1016 | | | | | | | | | | | | | | | | | 1040-016-16 |
| 1237 | -AEROVUX-BELLVIL NEW BEDFORD MA | 1400 | 1643 | 1400 | 1840 | 93 | 181 | 83 | 200 | 203 | 92 | 175 | 183 | 181 | 91 | 268 | 91 | 00294438 |
| 1237 | -AEROVIX CORP NEW BEDFORD MA | | | | -.055 | | | | | | | | | | | | | 10001013 |
| 1250 | -WESTERN ELECTRIC ALLENTOWN PA | | | | .055 | | | | | | | | | | | | | 00269638 |
| 1985 | -BALDOR ELEC RIDGEVILLE SC | | | | 1.80 | | | | 1.80 | | | | | | | | | 00298581 |
| 1866 | -CAPACITOR SPECLST. ESCONDIDO CA | 30.0 | 18.6 | 30.0 | 81.6 | 3.6 | 8.4 | 4.2 | 12.6 | 2.4 | 3.6 | 6.0 | 10.8 | 7.2 | 12.0 | 3.6 | 7.2 | 00181374 |
| 1194 | -ELECTRICAL UTILIT LA SALLE IL | 800 | 600 | 800 | 1250 | 87 | 124 | 174 | 131 | 86 | 131 | 93 | 86 | 82 | 126 | 41 | 139 | 10025745 |
| 1237 | -UNIV MFG CORP BRIDGEPORT CT | 900 | 1053 | 900 | 1453 | 93 | 91 | 185 | 93 | 264 | 92 | 91 | 91 | 91 | 181 | 90 | 182 | 10025796 |
| 1237 | UNIV MFG CORP TOTOWA NJ | 1000 | 825 | 1000 | 913 | 91 | 91 | 131 | 93 | 92 | 92 | 93 | 91 | 91 | 91 | 92 | 93 | 00163018 |
| | PARENT CUST - TOT-ELECTRON IC LUM | 1900 | 1918 | 1900 | 2366 | 184 | 91 | 365 | 93 | 355 | 92 | 93 | 182 | 182 | 272 | 182 | 275 | 11025796 |
| 680 | -ELECTRO MAGNET. FT PALO ALTO CA | 1.00 | -.600 | 1.00 | 1.20 | | | -.600 | | 91 | | -.600 | | | | | | 00288040 |
| 1237 | -CORNELL DUB ELEC N BEDFORD MAS | 1500 | 1612 | 1500 | 1423 | 93 | 92 | 85 | 177 | 91 | 91 | 173 | 91 | 83 | 181 | 175 | 93 | 00086746 |
| 1257 | -FILTRON CO INC FLUSHING NY | 50.0 | 9.200 | 50.0 | | | | | | | | | | | | | | 10027861 |
| 1237 | -GEN ELEC PITTSFIELD MA | | 5.00 | | 5165 | 765 | 475 | 761 | 385 | 667 | 667 | 477 | 411 | 375 | 411 | 852 | 397 | 00243467 |
| 1237 | -GEN ELEC FORT EDWARDS NY | | 5700 | 8500 | 2471 | 286 | 192 | 191 | 94 | 288 | 190 | 189 | 94 | 187 | 96 | 377 | 286 | 10031931 |
| 1237 | GEN ELEC HUDSON FALLS NY | 8500 | 2051 | 8500 | | | | | | | | | | | | | | |
| | PARENT CUST. TOT-GEN ELEC SCHNEC | 8500 | 7882 | 8500 | 9234 | 1053 | 667 | 952 | 479 | 955 | 857 | 666 | 565 | 563 | 566 | 1229 | 683 | 10599474 |
| 1194 | -GUDEMAN CO CHICAGO ILL | | 2.40 | | 2.40 | 2.40 | | | | | | | | | | | | 10035937 |
| 1866 | -HIGH ENERGY INC ESCONDIDO CA | | 13.2 | | | | | | | | | | | | | | | 00255490 |
| 1866 | -HIGH ENERGY INC SAN DIEGO CA | | | | 6.00 | | 6.00 | | | | | | | | | | | 00255492 |
| 1237 | -HIGH ENERGY WESTFIELD MASS | | -.600 | | | | | | | | | | | | | | | 00288616 |
| 1237 | -HIGH ENERGY MALVERN PA | 100 | 141 | 100 | 175 | 94 | 93 | 88 | 81.0 | 176 | 84 | 173 | 88 | 6.0 | 451.6 | 42.2 | | 10037964 |
| 1237 | -JARD COMPANY INC BENNINGTON VT | 450 | 632 | 450 | 963 | 94 | 93 | 84 | 84 | 184 | 96 | | | | 84 | 93 | 83 | 10071429 |
| 1237 | -J J SCHWEITZER LEE MASS | | -.165 | | | | | | | | 10.8 | | | | | | | 00163030 |
| 1952 | -KALLORY CAPACITOR WAYNESBOR IN | 1100 | 1358 | 1100 | 1548 | 90 | 192 | 84 | 186 | | | | 176 | 96 | 88 | 176 | 92 | 00251243 |
| 1183 | -MCGRAW EDISON PWR FERNDALE MI | | | | 10.8 | | | | | | | | | | | | | 00328279 |
| 1754 | MCGRAW EDISON SOUTH MT WI | 800 | 523 | 250 | | | | | | | | | | | | | | 00123910 |
| | PARENT CUST. TOT-MCGRAW EDISON L | 800 | 933 | 250 | 10.8 | | 95.6 | | | | 10.8 | | | | | | | 00048067 |
| 1957 | -MCGRAW EDISON GREENWOOD SC | 400 | | 400 | 467 | 94.4 | | 86.8 | 95.6 | | 89.5 | 94.5 | 86.5 | 93.4 | 94.4 | 91.5 | 91.7 | 00290696 |
| 1252 | -SANDERS ASSOC NASHUA NH | | | | -.600 | | | 93 | | | | -.600 | | | | | | 00046701 |
| 1957 | -SANGAMO ELEC PICKENS SC | 800 | 729 | 800 | 1239 | 92 | 92 | 93 | 95 | 176 | 91 | 90 | 89 | 87.8 | 274 | 92 | 92 | 10071423 |
| 1237 | -SPRAGUE ELEC N ADAMS MASS | 1400 | 1052 | 1400 | 1275 | | | | | | | | | | | | | 10074770 |
| 1237 | -STEPHENS F MFG S WESTFIELD MA | | -.600 | | | | | | | | | | | | | | | 10076137 |
| 1178 | -WESTINGHOUSE BLOOMINGTON IND | 1400 | 1717 | 1400 | 2143 | 98 | 228 | 192 | 382 | 191 | 288 | 97 | | 191 | 191 | 96 | 192 | 10089786 |
| 1953 | WESTINGHOUSE TERRE HAUTE IN | | 1.80 | | 2.40 | | -.600 | | | | | -.600 | | -.600 | .600 | | | 00283096 |

EXHIBIT B

```
REPORT B1476-A                    MICC                                                              PAGE  393
12/31/74              NO.4 CUSTOMER/PRODUCT SALES REPORT FOR  DEC 1974
                              -IN ACTUAL POUNDS AND DOLLARS-
```

| Description | TOTAL MONTH POUNDS | SALES DOLLARS | Y-T-D POUNDS | SALES DOLLARS | TOTAL LAST YEAR SALES POUNDS | DOLLARS | TOTAL YEAR GOAL LBS | CUST ID MAJR-6RO-GP |
|---|---|---|---|---|---|---|---|---|
| CATERPILLAR TRACTOR PEORIA ILL | | | | | | | | 10014549 |
| CATERPILLAR TRACT E PEORIA IL | | | | | | | | 10014530 |
| 1134 INERTEEN 70-30 | | | | 25 | | | AR 127905 | 1050-210-16 |
| TOT PAR CATERPILLAR TRACTOR PEORIA | | | | 305 | | | | 10014549 |
| TORE DEUTSCHMAN LABS CANTON MA | | | | | | | | 00335568 |
| 1270 ARDCLUR 1016 | | | 1,800 | 783 | | | AR 205855 | 00335568 / 1040-016-16 |
| DYRGS COMPANY MILWAUKEE WI | | | | | | | | 10022460 |
| 1134 TRANSFORMER PYRAMOL A1383B-2 | | | 12,150 | 4,313 | 12,150 | 3,220 | | 10022460 / 1050-301-16 |
| 1134 TRANSFORMER PYRAMOL A1383B-3 | | | | | 6,075 | 1,610 | | 1050-302-16 |
| TOTAL CUSTOMER | | | 12,150 | 4,313 | 18,225 | 4,830 | AR 209223 | 10022460 |
| ELECTRICAL UTILIT LA SALLE IL | | | | | | | | 10025745 |
| 1134 ARDCLUR 1016 | | | 965,835 | 287,451 | 1,249,970 | 256,225 | AR 234158 | 10025745 / 1040-016-16 |
| 1252 CAPACITOR ARDCLUR 1489 | | | 8,950 | 4,043 | | | 1,000,000 | 1040-017-16 |
| TOTAL CUSTOMER | | | 974,385 | 291,494 | 1,249,970 | 256,225 | 1,000,000 | 10025745 |
| ELECTRON IC COM BRIDGEPORT CT | | | | | | | | 10025796 |
| UNIV MFG CORP BRIDGEPORT CT | | | | | | | | |
| 1252 ARDCLUR 1016 | 91,800 | 33,691 | 1,080,100 | 323,374 | 1,360,900 | 277,686 | AR 757742 | 1040-016-16 |
| 1252 CAPACITOR FLUID 1588 | | | 470 | 334 | | | 1,600,000 | 1040-019-16 |
| TOTAL CUSTOMER | 91,800 | 33,691 | 1,080,570 | 323,708 | 1,360,900 | 277,686 | | 10025796 |
| UNIV MFG CORP TOTOWA NJ | | | | | | | | 00165016 |
| 1237 ARDCLUR 1016 | | | 869,700 | 271,524 | 913,000 | 187,168 | AR 757762 | 1040-016-16 |
| TOT PAR ELECTRON IC COM BRIDGEPORT | 91,800 | 33,691 | 1,950,270 | 595,232 | 2,273,900 | 464,854 | 2,500,000 | 10025796 |
| ELECTRO ENG MKS SAN LEANDRO CA | | | | | | | | 10025753 |
| 1866 TRANSFORMER PYRAMOL A1383B-3 | | | 5,400 | 2,377 | | | AR 234239 | 10025753 / 1050-025-16 |
| ELECTRO MAGNET FI PALO ALTO CA | | | | | | | | 00287040 |
| 1866 ARDCLUR 1016 | | | 1,200 | 513 | 1,200 | 372 | AR 234258 | 00287040 / 1040-016-16 |
| ATOIN ENERGY SYS PALO ALTO CA | | | | | | | 1,200 | 10026253 |
| 1866 INERTEEN 70-30 | | | 109,862 | 45,527 | 13,480 | 4,266 | AR 050176 | 10026253 / 1050-210-16 |
| ESSEX ELEC ENG BENSENVILLE IL | | | | | | | 1,300 | 00299987 |
| 1134 INERTEEN 70-30 | | | | | 14,828 | 3,929 | AR 242378 | 00299987 / 1050-210-16 |

A1131-A  DIRECT #2   )   DOMESTIC SALES
12/31/75

MICC FUNCTION / PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

FOR DL /1975    PAGE 151

—IN THOUSANDS OF POUNDS AND DOLLARS—

EXHIBIT B

| SLS REP | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | SALES CURR FOR CURR YEAR | SALES CURR YTD | JAN. | FEB. | MAR. | APR. | MAY | JUNE | JULY | AUG. | SEPT. | OCT. | NOV. | DEC. | CUST-ID / MAJ-GRP-DT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 16 DIELECTRICS G-PATON | | | | | | | | | | | | | | | | | |
| X | ARGCLOR 1016 | | | | | | | | | | | | | | | | | 1040-016-12 |
| 6-2 | -AEROVOX-BELLVIL NEW BEDFORD MA | | 1915 | 1800 | 999 | | 91 | 90 | 91 | 91 | | 90 | 89 | 91 | 91 | 022⁰⁰A | 92 | 00299438 |
| 6-2 | -WESTERN ELECTRIC ALLENTOWN PA | | 101 | 120 | -110 | | -110 | | | | | | | | | 183 | | 00269638 |
| 6-1 | -CAPACITOR SPECLST ESCONDIDO CA | 120 | 101 | 120 | 37.8 | 1.80 | 1.80 | 5.40 | 3.60 | 3.60 | 1.80 | 3.60 | 1.80 | 1.80 | 7.20 | 5.40 | | 00181374 |
| 6-3 | -CAROLINA CAPACITR RIDGEVILL SC | 100 | | 50.0 | 1.80 | | | | | 1.80 | | | | | | | | -00309026 |
| 6-2 | -TOBE DEUTSCHMAN LABS CANTON MA | | 1.80 | | -600 | | | | 84.6 | | 78.5 | 42.8 | | 39.2 | 42.2 | | 42.3 | 00335568 |
| 6-3 | -ELEC. UTIL LA SALLE IL | 1250 | 966 | 800 | -414 | | 42.4 | -600 | | | | | | | | | 92.10 | 10025745 |
| 6-2 | -JARD CORP LIGHT DAMBURY CT | | 1087 | 800 | 54.3 | | 92.1 | 42.3 | 90.9 | 89.0 | 87.7 | | 91.3 | 90.9 | 91.0 | | | 10025796 |
| 6-2 | UNIV MFG CORP TOTOWA NJ | | 870 | 900 | 543 | 94.0 | 89.2 | | | 89.1 | 89.2 | | | | | | | 00165018 |
| | PARENT CUST. TOT-ELECTRON IC COM | | 1950 | 1700 | 1086 | 94 | 161 | | 91 | 178 | 177 | | | 91 | 91 | | 92 | 10025796 |
| 6-1 | -ELECTRO MAGNET FI PALO ALTO CA | 1.00 | 1-20 | 1.00 | -110 | 81.7 | 92.0 | 85.0 | 90.4 | 89.25 | | 89.3 | | 91.0 | | -110 | .110 | 002810⁰⁰ |
| 6-3 | -CORNELL DUB ELEC W BEDFORD MAS | | 1538 | 1000 | 800 | | | | | | | | | | | 91.6 | 90.9 | 00085745 |
| 6-2 | -GEN ELEC ROME GA | | -600 | | | | | | | | | | | | | | | 00031281 |
| 6-3 | GEN ELEC FORT EDWARDS NY | | 6438 | 4000 | 3397 | 383 | 287 | 282 | 191 | 186 | 280 | 185 | 281 | 282 | 471 | 285 | 186 | 10001262 |
| 6-2 | GEN ELEC HUDSIN FALLS NY | | 2280 | 1872 | 2072 | 285 | 96 | 282 | 188 | 282 | 1. | 186 | 187 | 188 | 188 | 96 | 95 | 10031931 |
| | PARENT CUST. TOT-GEN. ELEC SCHNEC | | 8699 | 5472 | 5469 | 668 | 383 | 661 | 379 | 469 | 279 | 371 | 468 | 470 | 659 | 361 | 283 | 10599474 |
| 6-2 | -HIGH ENERGY MALVERN PA | | 129 | 100 | | | | | | | | | | | | | | 10037964 |
| 6-2 | -SANGO CORPRAT INC BENNINGTON VT | | 677 | 600 | 271 | | 90.25 | | 45 | 95 | | 90.7 | 45 | 96 | 161 | 90.2 | 96 | 10018930 |
| 6-3 | -MALLORY CAPACITOR WAYNESBOR IN | 1200 | 1003 | 750 | 608 | | 45 | 46 | | | | | | | | | | 00360833 |
| 6-3 | -MCGRAW EDISON PRR FERNDALE MI | | 7-20 | | | | | | | | | | | | | | | 00302279 |
| 6-3 | MCGRAW EDISON GREENWOOD SC | 800 | 791 | 600 | 781 | 90 | 87 | | 88 | 169 | 84 | 84 | 86 | 86 | 89 | 89 | 89 | 00290696 |
| | PARENT CUST. TOT-MCGRAW EDISON C | 800 | 799 | 600 | 781 | 90 | 87 | | 88 | 169 | 84 | 84 | 86 | 86 | 89 | 89 | 89 | 000440⁰⁷ |
| | -MONSANTO LOS ANGELES CA | | | | | | | | | | | | | | | | | 00148822 |
| | MONSANTO-SPEC—LOS ANGELES LA | | | | | | | | | | | | | | | | | 00309362 |
| | PARENT CUST. TOT-MONSANTO CORP S | | | | | | | | | | | | | | | | | 000⁴¹⁴¹ |
| 6-2 | -NO CHG SHIPMENTS SPECIALTY PRD | | 717 | | -220 | 96.1 | 94.29 | 96.3 | 90.4 | 93.23 | 94.3 | | 94.8 | -220 | 94.8 | | | 00271020 |
| 6-2 | -R INTRONICS BAYSHORE LI NY | 700 | | 700 | -220 | | | 91.6 | | | | | 89.1 | 94.0 | | | | 00335673 |
| 6-2 | -SPRAGUE ELEC N ADAMS MA | | 902 | 700 | 362 | | | | | | | | | | | 90.4 | 93.7 | 10070763 |
| 6-1 | -WESTINGHOUSE ELEC BENICIA CA | | -600 | | | | | | | | | | | | | | | 100704⁷⁰ |
| 6-1 | -WESTINGHOUSE BLOOMINGTON IND | 2200 | 2420 | 2100 | 1031 | 94 | 187 | 95 | | 92 | 92 | 93 | | 94 | 94 | 94 | 96 | 10089786 |
| 6-3 | WESTINGHUSE TERRE HAUTE IN | | 1-20 | | 3.00 | 1.20 | | | | | | 1.20 | | | | .650 | | 00283095 |
| 6-2 | WESTINGHOUSE-LIGHT-DIV CLEV OH | | 12-0- | | | | | | | | | | | | | | | 10089441 |
| 6-2 | WESTINGHOUSE RESEARCH PITTS PA | | -600 | | | | | | | | | | | | | | | 00252633 |

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**EXHIBIT B**

8131-A  DIRECT =2          DOMESTIC SALES
12/31/76

MICC FUNCTIONAL PRODUCTS
PRODUCT/CUSTOMER SALES REPORT

FOR D '1976

-- IN THOUSANDS OF POUNDS AND DOLLARS --

| SIS PROD | NAME OF PRODUCT/CUSTOMER | POTENTIAL | LAST YEAR SALES | PRIOR YEAR CURR YTD | CURR YTD | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | CUST LOC/MAJ GRP/CO. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **MOULD COAT** | | | | | | | | | | | | | | | | | |
| 1143 | *KENNECOTT REF CORP SALT NU | 90.0 | 90.0 | | | | | | | | | | | | | | | 10043891 |
| 1552 | *LARNER CO OAKLAND LA | .400 | .400 | | | | | | | | | | | | | | | 10552249 |
| 1143 | *NORTH AMER SMELT ALLINGTON DE | .600 | .600 | .200 | | | | | .200 | | | | | | | | | 10535416 |
| 1141 | *PHELPS DODGE MASPETH NY | 32.0 | 32.0 | 32.0 | | | | | | 16.0 | | | | | | | 16.0 | 10062662 |
| 1554 | PHELPS DODGE EL PASO TX | 24.4 | .400 | .400 | | | | | .400 | | | | | | | | | 10062270 |
| | PARENT CUST- TOT-PHELPS DODGE CO | 56.4 | 125 | 32.4 | | | | | .4 | 16.0 | | | | | | | 16.0 | 00044989 |
| 1504 | *RUCKER CALIF HOLSTON IX | 2.00 | 125 | .200 | | | | | | .200 | | | | | | | | 00136824 |
| 1145 | *WHITE PINE COPPER-WHITE PIN MI | | | | | | | | | | | | | | | | | 10562317 |
| | NONMATCHED FREIGHT | | | | | | | | | | | | | | | | | 99999999 |
| | TOTAL PRODUCT * * * * * * * LB | 338 | 465 | 104 | | 4.0 | 5.2 | 3.0 | .6 | 3.6 | 15.4 | 3.4 | | 6.2 | 40.0 | 5.2 | 13.0 | 1341-100=55 |
| | 031571 * * * * * * * * $$ | 144 | 226 | 51.7 | | 2.0 | 2.6 | 1.5 | .3 | 11.6 | 5.8 | 1.7 | | 3.1 | 19.7 | 2.6 | 6.6 | |
| | 19 TOT MAJOR MOULD COAT LB | 338 | 465 | 104 | | 4.0 | 5.2 | 3.0 | .6 | 3.6 | 15.4 | 3.4 | | 6.2 | 40.0 | 5.2 | 13.0 | |
| | $$ | 144 | 226 | 51.7 | | 2.0 | 2.6 | 1.5 | .3 | 1.8 | 5.8 | 1.7 | | 3.1 | 19.7 | 2.6 | 6.6 | |
| | 18 TOT CLASS BUNE ASH & MOLLO LB | 839 | 1039 | 869 | | 27 | 124 | 14 | 71 | 50 | 100 | 8 | 104 | 131 | 62 | 108 | 70 | |
| | $$ | 357 | 504 | 430 | | 13.7 | 61.4 | 7.0 | 35.0 | 24.7 | 45.3 | 3.8 | 51.6 | 64.6 | 30.9 | 53.5 | 34.9 | |
| | 02 TOT SUPV 2.RICHARDSON LB | 6939 | 7316 | 8196 | | 614 | 765 | 839 | 658 | 837 | 736 | 567 | 547 | 822 | 481 | 529 | 899 | |
| | $$ | 5212 | 5982 | 6992 | | 614 | 608 | 541 | 673 | 711 | 666 | 441 | 450 | 803 | 340 | 375 | 720 | |
| ✱ | **ARDCLOR 1016** | 1821 | | | | | | | | | | | | | | | | 1040-016-14 |
| 1691 | *AEROVOX-BELLVIL-NEW BEDFORD MA | 1490 | 999 | 1958 | | 90 | 181 | 179 | 179 | 178 | 180 | 90 | 168 | 175 | 269 | | 270 | 00294438 |
| 1691 | *WESTERN ELECTRIC ALLENTOWN PA | .110 | .110 | | | | | | | | | | | | | | | 00063738 |
| 1691 | *TELE ELECTRONICS JAMAICA NY | | | | | | | | | | | | | | | | | 10007230 |
| 1691 | *CAPACITOR SPECLST E SCONDLDO CA | 12.0 | 12.0 | 28.8 | | 3.60 | 1.80 | | 3.60 | 1.80 | 1.80 | 1.60 | 3.60 | 1.80 | 3.60 | 3.60 | 1.80 | 00181374 |
| 1691 | *CAROLINA CAPACITR RIDGEVILL SC | 50.0 | 50.0 | 1.80 | | | | | | | | | 1.80 | | | | | 00309826 |
| 1691 | *CINE-CHRMCMC-EL OV=PALO ALTG CA | 30.0 | 1.80 | 1.20 | | | | | | | | 1.20 | | | | | | 00287040 |
| 1691 | *TOBE DEUTSCHMAN LAWS CANTON MA | 1.00 | .110 | | | | | | | | | | | | | | | 00355568 |
| 1691 | *ELECTRICAL UTILITI LA SALLE IL | .600 | .600 | 798 | | 40 | 84 | 127 | 43 | 86 | 84 | 83 | 899 | 43 | 42 | 41 | 126 | 10025745 |
| 1691 | *UNIV MFG CORP BRIDGEPORT CT | 800 | 414 | 1080 | | 908 | 91.9 | 91.3 | 91.2 | 92.5 | 8.93 | 89.5 | 899.2 | 1149 | 901.9 | 901.9 | 91.9 | 00164596 |
| 1691 | UNIV MFG CORP TOTOWA NJ | 830 | 543 | 1080 | | 182 | 911 | 92 | 88 | 90 | 90 | 85 | 85 | 86 | 89 | 90 | 91 | 00165016 |
| | PARENT CUST- TOT-ELECTRON IC CCM | 1660 | 1086 | 2166 | | 273 | 182 | 184 | 175 | 182 | 180 | 65 | 175 | 177 | 179 | 181 | 182 | 10025796 |
| 1691 | *CORNELL DUB ELEC N BEDFORU MAS | 1210 | 800 | 1056 | | 92 | 92 | 86 | 90 | 88 | 90 | 85 | 87 | 86 | 89 | 90 | 173 | 00086746 |
| 1691 | GEN ELEC FORT EDWARDS NY | 5000 | 3397 | 5866 | | 574 | 477 | 565 | 571 | 472 | 558 | 478 | 471 | 375 | 473 | 426 | 426 | 00249747 |
| 1691 | GEN ELEC HUDSON FALLS NY | 3100 | 2072 | 1704 | | 189 | 94 | 285 | 190 | 96 | 280 | 190 | 94 | 375 | 95 | 95 | 96 | 10031931 |
| | PARENT CUST- TOT-GEN ELEC SCHNEC | 8100 | 5669 | 7570 | | 762 | 571 | 854 | 761 | 568 | 836 | 568 | 565 | 375 | 568 | 571 | 512 | 10599474 |
| 1691 | *HIGH ENERGY MALVERN PA | 126 | 126 | 44.9 | | 44.9 | | | | | | | | | | | | 10037964 |

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

EXHIBIT B

'81|31-A  DIRECT =2    DOMESTIC SALES    12/31/77

MICC SPECIAL CHEMICALS
PRODUCT/CUSTOMER SALES REPORT

FBR DT 1977    PAGE 35

— IN THOUSANDS OF POUNDS AND DOLLARS —

**PHOSPHOROUS ACID SOLN 50%/L**

| NAME OF PRODUCT/CUSTOMER | POTENTIAL | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | CUST ID/MANUF GRP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1147 -PETROLITE CORP ST LOUIS MO ... LB 91856A | | | | | | | | | | | | 918.56A | | 00044970 |
| -MISCELLANEOUS ADJUSTMENTS ... $$ | | | | | | | | | | | | | | 00197777 |
| TOTAL PRODUCT ******** LB 91856A | | | | | | | | | | | | | | 7212-000-05 |
| ******** $$ | | | | | | | | | | | | | | |
| B5 TOT MAJOR PHOSPHOROUS ACID LB | | | | | | | | | | | | | | |
| $$ | | | | | | | | | | | | | | |
| 41 TOT CLASS DISC SPEC CHEM LB | 2839 256 | 66.3 | 51.6 | 17.9 | 16.2 | 2.0 | 10.3 | 12.0 | 6.0 | 5.2 | 9.5 | 11.6 | 47.8 | |
| $$ | 4457 428 | 91.6 | 82.8 | 39.9 | 33.3 | 4.3 | 38.9 | 23.5 | 14.1 | 11.1 | 15.9 | 24.1 | 48.4 | |
| D2 TOT SUPV R.RICHARDSON LB | 7205 11035 7462 | 691 | 543 | 477 | 878 | 746 | 664 | 575 | 409 | 832 | 780 | 113 | 785 | |
| $$ | 6848 11452 7029 | 775 | 448 | 468 | 710 | 612 | 718 | 397 | 475 | 824 | 459 | 490 | 651 | |

** AROCLOR 1016**

| NAME OF PRODUCT/CUSTOMER | POTENTIAL | JAN | FEB | MAR | APR | MAY | JUNE | JULY | AUG | SEPT | OCT | NOV | DEC | CUST ID/MANUF GRP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16P1 -AEROVOX-BELLVIL NEW BEDFORD MA | 1540 1958 2756 | 90 | 89 | 273 | 180 | 180 | 179 | 178 | 273 | 277 | 1038 | | | 00294438 |
| 16P2 -BALDOR ELECTRIC RIDGEVILLE SC | 60.6 | | | | | 20.4 | | | | 40.2 | | | | 00309826 |
| 16P1 -CAPACITOR SPELLST ESCONDIDO CA | 20.0 28.8 30.0 13.8 | 1.80 | 3.60 | 5.40 | 3.00 | | | | | | | 02:30A | 00181374 |
| 16P1 -CINE-CHROME-EL DV-PALO ALTO CA | 1.20 | | | | | | | | | | | | | 00227040 |
| 16P1 -ELECTRICAL UTILIT LA SALLE IL | 600 798 673 | 80 | 80 | 85 | 41 | 41 | 36 | 86 | 119 | 118 | 187 | | | 10025765 |
| 16P1 -UNIV MFG CORP BRIDGEPORT CT | 131 1080 1461 | 89 | 91 | 91 | 91 | 181 | 89 | 89 | 89 | 150 | 90 | | | 10025796 |
| 16P1 -UNIV MFG CORP TOTOWA NJ | 545 1080 1444 | 90 | 90 | 90 | 90 | 92 | 90 | 92 | | 356 | 367 | | | 10165018 |
| PARENT CUST- TOT-ELECTRON IC COM | 1460 2166 2524 | 178 | 178 | 161 | 181 | 273 | 180 | 181 | 209 | 506 | 458 | | | 100257 96 |
| 16P1 -CORNELL DUB ELEC N BEDFORD MAS | 910 1056 896 | 90 | 89 | 90 | 91 | 92 | 91 | 90 | | 177 | | 88 | | 00086746 |
| 16P2 -GEN ELEC EDWARDS NY | 3864 5866 1667 | 285 | 191 | 189 | 567 | 369 | 66 | 1 | | | | | | 00249467 |
| 16P1 -GEN ELEC HUDSON FALLS NY | 1912 1704 300 | 94.1 | | | | | 66 | 1 | | | | | | 10031931 |
| PARENT CUST- TOT-GEN ELEC SCHNEC | 5336 7570 1761 | 379 | 191 | 189 | 567 | 369 | 66 | 1 | | | | | | 10599474 |
| 16P1 -HIGH ENERGY MALVERN PA | 90.0 44.9 45.5 | 89.1 | 90.4 | 45.5 | 91.7 | 90.6 | 88.7 | | | 89.1 | | | | 10037964 |
| 16P1 -ILLINOIS COMPANY INC BENNINGTON VT | 450 901 540 | 96 | 94 | 95 | 90 | 96 | 91 | 180 | | 457 | | | | 00183830 |
| 16P1 -MALLORY CAPACITOR NO BOR TN | 270 1200 1304 | | | | | | | | | | | | | 00190543 |
| 16P1 -MCGRAW EDISON GREENWOOD SC | 270 180 | | | | | | | | | | | | | 00290696 |
| 16P1 -SANGAMO WESTON PICKENS SC | 360 645 | 13.2 | 68.9 | 13.2 | | | 73.9 | | 48.0 | | | | | 00303362 |
| 16P1 -SPRAGUE ELEC N ADAMS MA | 270 450 106 | 90.8 | | | | | | | | | | | | 10070783 |
| 16P1 -WESTINGHOUSE BLOOMINGTON IND | 600 1188 227 | 89.9 | | | | | 1.20 | | | | | | | 10074770 |
| 16P1 -WESTINGHOUSE TERRE HAUTE IN | 1.80 1.80 | | .60 | | | | | | | | | | | 00889786 |
| 16P1 -WESTINGHOUSE RESEARCH PITTS PA | .600 | | | | | | | | | | | | | 00283096 |
| PARENT CUST- TOT-WESTINGHOUSE EL | 600 1190 229 | 89.9 | 89.1 | .6 | | | | 1.2 | 48.0 | | | | | 00252433 |
| 16P1 -YORK CAPACITOR WINOOSKI VT | 104 85.2 158 | | 26.4 | | | 26.4 | | 26.4 | | 26.4 | 52.8 | | | 10092590 |

1040-016-16

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# *Capacitor Division*

**UNIVERSAL MANUFACTURING CORP.**

November 26, 1975

902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  336-0161

**PURCHASE ORDER**

**Monsanto**
**800 N  Lindbergh Blvd**
**St. Louis, Mo.**

**9034**

**THIS NUMBER MUST APPEAR ON**
**ALL BILLS AND PACKAGES.**

**PLEASE ENTER OUR ORDER AS FOLLOWS, OBSERVING SHIPPING AND BILLING INSTRUCTIONS EXACTLY AS GIVEN BELOW**

| DATE REQUIRED | F.O.B. Sauget | SHIP VIA | TERMS Net 30 | |
|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | UNIT |
|---|---|---|---|
| 25 drums | AROCLOR 1254  (600 lb drums) | $ .475 | lb |
| | Confirming Order<br>Mary Ann Wilson/EJ Wickson | | |

PLEASE SEND ALL INVOICES TO:
UNIVERSAL MANUFACTURING CORP.
29 EAST 6th STREET
PATERSON, NEW JERSEY 07509

ACKNOWLEDGE RECEIPT OF THIS ORDER STATING WHEN YOU WILL SHIP.
THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN LAST CHARGED OR QUOTED.
ALL SHIPMENTS MUST BE ACCOMPANIED BY A PACKING SLIP.

*Capacitor Division*
UNIVERSAL MANUFACTURING CORP.

*E.J. Wickson*

E.J. Wickson

0439926

EXHIBIT C

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# *Capacitor Division*

**UNIVERSAL MANUFACTURING CORP.**

July 15, 1976

902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  338-0161

**PURCHASE ORDER**

**9265**

Monsanto
800 N Lindbergh Blvd
St. Louis, Mo.   63155

THIS NUMBER MUST APPEAR ON
ALL BILLS AND PACKAGES.

PLEASE ENTER OUR ORDER AS FOLLOWS, OBSERVING SHIPPING AND BILLING INSTRUCTIONS EXACTLY AS GIVEN BELOW

| DATE REQUIRED | F.O.B. Sauget | SHIP VIA | TERMS Net 30 |
|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | UNIT |
|---|---|---|---|
| | AROCLOR 1016<br><br>This is a blanket order<br>covering August - December 1976<br><br>We will be releasing approximately one tank car<br>per month to be shipped to Bridgeport, Conn.<br>per Jim Alley/EJ Wickson | | |

EQUAL EMPLOYMENT OPPORTUNITY: The
Equal Employment Opportunity clause in Sec-
tion 202, Paragraphs 1 through 7 of Executive
Order 11246, as amended, relative to equal
employment opportunity and the implementing
Rules and Regulations of the Office of Federal
Contracts Compliance are incorporated herein
by specific reference.

PLEASE SEND ALL INVOICES TO:
UNIVERSAL MANUFACTURING CORP.
29 EAST 6th STREET
PATERSON, NEW JERSEY 07509

ACKNOWLEDGE RECEIPT OF THIS ORDER STATING WHEN YOU WILL SHIP.
THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN LAST CHARGED OR QUOTED.
ALL SHIPMENTS MUST BE ACCOMPANIED BY A PACKING SLIP.

*Capacitor Division*
UNIVERSAL MANUFACTURING CORP

0439904

EXHIBIT C   E.J. Wickson

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## *Capacitor Division*

### UNIVERSAL MANUFACTURING CORP.



April 29, 1977

902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  336-0161

PURCHASE ORDER

**Monsanto**
**800 N Lindbergh Blvd**
**St. Louis, Missouri 63155**

MAY 0 9 1977

Nọ  9571

THIS NUMBER MUST APPEAR ON,
ALL BILLS AND PACKAGES.

PLEASE ENTER OUR ORDER AS FOLLOWS, OBSERVING SHIPPING AND BILLING INSTRUCTIONS EXACTLY AS GIVEN BELOW

| DATE REQUIRED | F.O.B. | SHIP VIA | TERMS |
|---|---|---|---|
| see below | Sauget | Best Way | Net 30 |

| QUANTITY | DESCRIPTION | PRICE | UNIT |
|---|---|---|---|
| 17 tank cars | AROCLOR 1016, approximately 90,000 lbs. ea. | $.66 | lb |

This is in addition to the three tank cars already on order for Bridgeport on PO 9526, which are scheduled for shipment between now and June 1.

Ship one car to Totowa in May; then beginning in June 1977, through October 1977 ship one car each month to Totowa, N.J. and one car each month to Bridgeport, CT.  In October, prior to terminal date of October 31, 1977, ship one additional car to Bridgeport and six additional cars to Totowa.

These last seven cars will be used for additional storage, and will be returned as emptied.  Details of shipping dates, and any changes in destination which may become necessary, will be arranged with appropriate advance notice.  Drum packaging of some portion of the last increment may be necessary if tank cars are not available.

Confirming April 29 conversation
N Ray Clark - James A. Alley

PLEASE SEND ALL INVOICES TO:
UNIVERSAL MANUFACTURING CORP.
P. O. BOX 3028
29 EAST 6th STREET
PATERSON, NEW JERSEY 07509

0021084

ACKNOWLEDGE RECEIPT OF THIS ORDER STATING WHEN YOU WILL SHIP,
THIS ORDER MUST NOT BE FILLED AT HIGHER PRICES THAN LAST CHARGED OR QUOTED.
ALL SHIPMENTS MUST BE ACCOMPANIED BY A PACKING SLIP.

cc: PH Einhorn
    C Hughes
    NR Clark

EQUAL EMPLOYMENT OPPORTUNITY: The Equal Employment Opportunity clause in Section 202, Paragraphs 1 through 7 of Executive Order 11246, as amended, relative to equal employment opportunity and the implementing Rules and Regulations of the Office of Federal Contracts Compliance are incorporated herein by specific reference.

*Capacitor Division*
UNIVERSAL MANUFACTURING CORP

E.J. Wickson

EXHIBIT C

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



| Monsanto | MONSANTO COMPANY ST. LOUIS, MISSOURI 63166 | INVOICE | DUPLICATE |

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7880 | 01-06-72 | 01-07-72 | 01-07-72 | 14-01-25341 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| PPD | AS INDICATED BELOW | NET 30 DAYS | | 4725172 |
| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE | |
| SAUGET IL | | MONX008614 | C JORDAN | |

| ITEM | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1 8000 GL TANK CAR | 96,500.00 LB | 17,370.00 |
| | AROCLOR 1016 AT | .1800 | |
| | 1040-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-47-16-S-02250A | | |
| | FOB SAUGET IL | 96,500.00 LB | |
| | MINIMUM FREIGHT ALLOWED | | |

| | PAGE 1 | 17,370.00 |

MR. ARMAND DEMAURO   SND CPY INV ADD ON LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD                    0392255
TOTOWA, NEW JERSEY 07501

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT—TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or government charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for product to be made up specially for Buyer:
(1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
(2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392256

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

INVOICE | DUPLICATE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7881 | 01-06-72 | 01-10-72 | 01-10-72 | 14-01-25857 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Customer Service Center—St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| PPD | AS INDICATED BELOW | NET 30 DAYS | | 4723271 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008606 | C JORDAN , |

| ITEM | DESCRIPTION; PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | 89,700.00 LB | 16,146.00 |
| | AROCLOR 1016 | AT  .1800 | |
| | 1040-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-47-16-S-02250A | | |
| | FOB SAUGET  IL | 89,700.00 LB | |
| | MINIMUM FREIGHT ALLOWED | | |

| | PAGE 1 | | 16,146.00 |
|---|---|---|---|

MR. N.R.CLARK          SND CPY INV ADD ON LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607

0392252

TERMS AND CONDITIONS. NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER, SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

## TERMS AND CONDITIONS

1. FORCE MAJEURE : Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT   TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
   (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
   (2) In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by  .... .....

0392253

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, unlawful opposition, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the specific Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in some hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have no claim of same made on express bill of lading, paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392275

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

| MONSANTO COMPANY ST. LOUIS, MISSOURI 63166 | | INVOICE | DUPLICATE |
|---|---|---|---|

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7929 | 02-23-72 | 02-28-72 | 02-28-72 | 14-02-33553 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

2

PAYMENT
PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

INQUIRIES

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| PPD | AS INDICATED BELOW | NET 30 DAYS | | 4813564 |
| SHIPPED FROM | | CAR NO./ST CARRIER | CUSTOMER SERVICE REPRESENTATIVE | |
| SAUGET IL | | MONXGC8610 | C JORDAN | |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1 8000 GL TANK CAR | | 92,000.00 LB | |
| | AROCLOR 1016 | AT | .1800 | 16,560.00 |
| | 1C4U-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-47-06-5-02250A | | | |
| | FOB SAUGET IL | | 92,000.00 LB | |
| | MINIMUM FREIGHT ALLOWED | | | |

PAGE 1    16,560.00

MR. ARMAND DEMAURO    SND CPY INV ADD CR LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY 07501    0392250

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to render delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT - TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392251

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

| MONSANTO COMPANY ST. LOUIS, MISSOURI 63166 | | INVOICE | DUPLICATE |
|---|---|---|---|

CUSTOMER'S ORDER NO. **7943**

| DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|
| 03-01-72 | 03-06-72 | 03-06-72 | 14-03-14600 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 6695
CHURCH ST STATION
NEW YORK N Y 10049

INQUIRIES

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT **PPD** | DELIVERY F.O.B. AS INDICATED BELOW | TERMS OF PAYMENT **NET 30 DAYS** | | SHIPPER NO. **4828307** |
|---|---|---|---|---|
| SHIPPED FROM **SAUGET** | **IL** | CAR NO./IT CARRIER **MONXGC8627** | CUSTOMER SERVICE REPRESENTATIVE **C JORDAN** | |

| ITEM | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1 8000 GL TANK CAR | 90,300.00 LB | 16,254.00 |
| | AROCLOR 1016 | AT .1800 | |
| | 1040-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-47-66-5-02250A | | |
| | FOB SAUGET IL | 90,300.00 LB | |
| | MINIMUM FREIGHT ALLOWED | | |

| | PAGE 1 | 16,254.00 |
|---|---|---|

FR. N.R.CLARK            SND CPY INV ADD CH LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607                    0392246

TERMS AND CONDITIONS: NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER, SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order; but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392247

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

INVOICE    DUPLICATE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7960 | 03-16-72 | 03-24-72 | 03-24-72 | 14-03-38734 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY G7524

PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Consumer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| PPD | AS INDICATED BELOW | NET 30 DAYS | | 4857421 |

| SHIPPED FROM | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET    IL | MONXCO8619 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | | 90,800.00 LB | |
|  | AROCLOR 1016 | AT | .1800 | 16,344.00 |
|  | 1040-C16-16-G003-47-G6-S-02290A | | | |
|  | FOB SAUGET    IL | | 9C,80C.00 LB | |
|  | PLUS FREIGHT FROM SAUGET | , IL | | 1,572.93 |
|  | AT   91920 RATE   1.7323 C   90800 | | | |

| | PAGE  1 | | | 17,916.93 |

MR. N.R.CLARK          SND CPY INV ADD CR LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  04607          0392241

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as same are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392242

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**INVOICE**   DUPLICATE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7961 | 03-14-72 | 03-27-72 | 03-27-72 | 14-03-38735 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

INQUIRIES  Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PRD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| PPD | AS INDICATED BELOW. | NET 30 DAYS | | 4857587 |

| SHIPPED FROM | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET  IL | MCNX000610 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| 1 | 1  8000 GL TANK CAR          92,800.00 LB | |
| | AROCLOR 1016                AT      .1800 | 16,704.00 |
| | 1040-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-47-04-5-02250A | |
| | FOB SAUGET        IL        92,800.00 LB | |
| | PLUS FREIGHT FROM SAUGET    , IL | 1,540.94 |
| | AT    92800 RATE   1.6605 C   92800 | |

| PAGE 1 | 18,244.94 |
|---|---|

MR. ARMAND DEMAURO            SND CPY INV ADD CN LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD               0392243
TOTOWA, NEW JERSEY  07501

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, the refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as one made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in some hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in some payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order
    (2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392244

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

CREDIT    DUPLICATE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7980 | – – | 03-24-72 | 04-21-72 | 14-04-94251 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

2

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Company Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

DUPLICATE

| PPD OR COLLECT | DELIVERY F.O.B. AS INDICATED BELOW | TERMS OF PAYMENT | | SHIPPER NO. 485742 |
|---|---|---|---|---|
| SHIPPED FROM SAUGET    IL | CAR NO./TT CARRIER | | CUSTOMER SERVICE REPRESENTATIVE JORDAN | |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| | CREDIT TO DEDUCT FRT ON INV 140338734 DTD 3-24-72 SHOULD HAVE BEEN MIN FRT PPD | |
| 1 | 1    GL TANK CAR AROCLOR 1016            AT 1040-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-47-04- -02250A FOB SAUGET      IL | |
| | FOR  FRT FRM SAUGET TO BRIDGEPORT CT | 1,572.93 |
| | PAGE 1 | 1,572.93 |

0392237

0392237

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to render delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392238

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**CREDIT**   **DUPLICATE**

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 7961 | – – | 03-27-72 | 04-21-72 | 14-04-96252 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. AS INDICATED BELOW | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| | | | | 485758 |

| SHIPPED FROM | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET   IL | | JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| | CREDIT TO DEDUCT FRT ON INV 140338735 DTD 3-27-72 SHOULD HAVE BEEN MIN FRT PPD | |
| 1    1 | GL TANK CAR AROCLOR 1016                    AT 1040-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-42-06- -02250A FOB SAUGET      IL | |
| | FOR FRT FROM SAUGET TO TOTOWA NEW JERSEY | 1,540.94 |

| | PAGE  1 | 1,540.94 |
|---|---|---|

0392239

TERMS AND CONDITIONS NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, insurrection, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either; (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive, remedy shall be, for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT — TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or government charge or increase in same hereafter becoming effective, increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on express bill before accepting freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where no order calls for a product to be made up specially for Buyer:
   (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
   (2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392240

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto** | MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166 | DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| d023 | 05-03-72 | 05-09-72 | 05-09-72 | 14-05-45751 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524



PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 4946588 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008626 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| | 1- 8000 GL TANK CAR | 91,300.00 LB | |
| | AROCLOR 1016 | AT .2050 | 18,716.50 |
| | 1040-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-47-06-5-02250A | | |
| | FOB SAUGET IL | 91,300.00 LB | |

| | PAGE 1 | 18,716.50 |

MR. N.A.CLARK
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607

SND CPY INV ADD ON LEFT

0392235

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. Acceptance of such goods, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are used for such containers. Such deposit shall be kept on deposit, and must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within ninety (90) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elects, permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the sale of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding of agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392236

EXHIBIT D



EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

MONSANTO COMPANY

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain in effect.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it at the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of cartons, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition and may not be used for any material other than that shipped therein and must, for return within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. BASIS OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Buyer within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than ninety (90) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to the party's agreement that in no event and in no case or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the replacement of goods claimed to be defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. The specific changes for the return of goods or in case the goods are to be returned to Buyer.

7. DELIVERIES. If any claim or dispute any goods sold hereunder as to condition, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notifies Seller of any claim or suit asserting Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such alleged or of infringement. Seller does not warrant that the goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe any patent.

8. WEIGHT, TAXES. Any increase in freight rates paid by Seller on shipment covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller by reason of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. RISK IN TRANSIT. In case of breakage or loss in transit, Buyer shall have addition of same made on expense bill before shipment.

10. RAW MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a specified material made up specially for Buyer:
    (1) A quantity of not less than 90% of the order will be considered a complete fulfillment of the order;
    (2) In case of excess, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the entire contract of the parties, and no term, condition, understanding, or agreement purporting to modify or vary any term of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392233

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

INVOICE    DUPLICATE

| CUSTOMER'S ORDER NO. | | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|
| 8070 | | 06-07-72 | 06-08-72 | 06-08-72 | 14-06-50840 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD. OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5006911 |
| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE | |
| SAUGET    IL | | MONXC08610 | C JORDAN | |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | | 90,900.00 LB | |
| | AROCLOR 1016 | AT | .2050 | 18,634.50 |
| | 1040-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-47-06-S-02250A | | | |
| | FOB SAUGET    IL | | 90,900.00 LB | |

| PAGE 1 | 18,634.50 |
|---|---|

MR. ARMAND DEMAURO            SND CPY INV ADD ON LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP                          0392228
11 JACKSON ROAD
TOTOWA, NEW JERSEY  07501

TERMS AND CONDITIONS: NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER, SUBJECT ONLY TO THE TERMS OF THE CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

**TERMS AND CONDITIONS**

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent, if, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payment or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's proof that the loss and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods. Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller (a) any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use or any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe patents.

8. FREIGHT, TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or transporting the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the purchaser or user of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the prices herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before accepting delivery.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In the case of an item run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392229

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto** MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8090 | 06-23-72 | 06-26-72 | 06-26-72 | 14-06-53632 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07924

2

PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| FREIGHT COLLECT | DELIVERY F.O.B. AS INDICATED BELOW | TERMS OF PAYMENT NET 30 DAYS | | SHIPPER NO 5030402 |
|---|---|---|---|---|
| LCL | | | | |

| SHIPPED FROM | CAR NO/1ST CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET     IL | MGRX008601 | G JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1   8000 GL TANK CAR AROCLOR 1016    AT 1040-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-47-06-S-02250A FOB SAUGET    IL | 89,700.00 LB   .2050 89,700.00 LB | 18,388.50 |

| | PAGE 1 | 18,388.50 |
|---|---|---|

MR. H A CLARK
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN,  06607

SND CPY INV ADD ON LEFT

0392226

EXHIBIT D

**1. FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor trouble, strike, lockout or injunction be within the control of both party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent ...

**2. BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due ...

**3. WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck of barge shipments, Shipper's weights shall govern unless proved to be in error ...

**4. SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period ...

**5. LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants that all of goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6. LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall reexamine such goods for any damage, defects or shortage ...

**7. PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent ...

**8. FREIGHT TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods ...

**9. LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

**10. FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**11. MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392227

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto** MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE
INVOICE

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 6117 | 07-28-72 | 08-02-72 | 08-02-72 | 14-08-58975 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY   07524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

INQUIRIES ▶

| TERM OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5090063 |

| SHIPPED FROM | CAR NO/TI CARRIER | | CUSTOMER SERVICE REPRESENTATIVE | |
|---|---|---|---|---|
| SAUGET   IL | MONX008607 | | C JORDAN | |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1 8000 GL TANK CAR | | 89,600.00 LB | |
| | AROCLOR 1016 | AT | .2050 | 18,368.00 |
| | 1040-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-47-06-S-02250A | | | |
| | FOB SAUGET   IL | | 89,600.00 LB | |

| | | PAGE  1 | 18,368.00 |
|---|---|---|---|

MR. ARMAND DERAURO
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY   07501

SND CPY INV ADD ON LEFT

0392222

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national emergency, requirements, or any other event beyond the reasonable control of such party, or in the event of labor trouble, slowdown or strike affecting the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the goods depend, or if for any such reason Seller is unable to supply the total demand for the goods. Seller may, during or following a period of inability, supply of goods, without obligation to purchase similar goods from other sources. If the shipment and sale of any customers, including those not under contract, on such basis as it determines to be equitable. Shipments suspended under this section shall be cancelled without liability, but this contract shall otherwise continue.

**BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

**WEIGHTS AND CONTAINERS.** In the case of bulk, carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller. A deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

**SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defect or performance not reasonably discoverable within said sixty (60) day period including that discoverable only within one hundred and eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the time stated shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods less than been taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all claims or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elects, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles manufactured therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective, increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same applicable to the goods, shall be added to the price herein specified as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, or other. Taxes now payable by Seller on this transaction.

**LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

**FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement of or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392223

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| #CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| #175 | 10-10-72 | 10-10-72 | 10-10-72 | 14-10-70089 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

PLEASE MAKE CHECKS PAYABLE TO
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5213020 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008617 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1   8000 GL TANK CAR | 92,500.00 LB | 18,962.50 |
| | AROCLOR 1016          AT | .2050 | |
| | 1040-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-47-06-S-02250A | | |
| | FOB SAUGET       IL | 92,500.00 LB | |

| | PAGE 1 | 18,962.50 |
|---|---|---|

MR. M.R. CLARK          SND CPY INV ADD ON LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607          0392218

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event involves the reasonable conduct of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among any of all of its customers, including those not under contract, in such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, that no such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for physical damage, defects or shortage. All claims, including for alleged damage or defective goods, shortage, nonarrival or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within three (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in combination with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this contract if any loss with respect to any undelivered goods, is being agreed that in the event of such termination and/or Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding and of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement made or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of the other party or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.



0392219

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be reasonable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it as may enable Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than the shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any latent loss or performance not reasonably discoverable within said sixty (60) day period (including that discoverable only after a further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period shall constitute an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be, for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elects, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in connection with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this section if any time with respect to any uninfringed goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or assessment or charge or any excise or similar hereafter becoming effective increasing the cost to Seller of producing or selling or transporting said goods or of producing said materials used therein and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have limitation of same made on expense of Seller.

10. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and is a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions in variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default on of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0464709

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8162 | 09-27-72 | 09-29-72 | 09-29-72 | 14-09-68297 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10049

INQUIRIES

MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis Missouri 63166

| | | | | |
|---|---|---|---|---|
| C/L | AS INDICATED BELOW | NET 30 DAYS | | 5192034 |
| SAUGET | IL | MONX008621 | C JORDAN | |

| ITEM | | | DESCRIPTION PRICE & UNIT | | AMOUNT |
|---|---|---|---|---|---|
| 1 | 1 | 8000 GL TANK CAR | 93,900.00 LB | | |
| | | AROCLOR 1016 | | .2050 | 19,249.50 |
| | | 1040-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-47-06-S-02250A | AT | | |
| | | FOB SAUGET   IL | | 93,900.00 L.B | |

PAGE 1                19,249.50

MR. ARMAND DEHAURO
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY  07501

SND CPY INV ADD ON LEFT

0464704

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

MONSANTO COMPANY

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this Section shall be canceled without liability, but this Contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by the contract less the number of months in the contract period. Seller shall not be bound to tender delivery of any goods which are not in Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS, FOR PARTICULAR PURPOSE OR OTHERWISE, AND IN NO EVENT WITH RESPECT TO THE GOODS, whether obtained alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, non-delivery or any other cause whatsoever (whether performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defect or performance not reasonably discoverable within said sixty (60) day period (including that discoverable only by conditioning or further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then been made. Buyer's exclusive remedy shall be, for damages and Seller's liability for any claim which arises resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the option of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges to the account of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller agrees that any goods sold pursuant to this contract, except as made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim of such involving Buyer in which such infringement is alleged, and, if Seller so elects, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligation under this Section 7 at any time with respect to any unenforced goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any decrease in freight rates paid by Seller on shipments covered by this contract and any increase of manufacture same hereafter becoming effective increasing the cost to Seller of producing, selling or distributing the goods or of procuring materials used therein, and any tax now in effect or increase in same thereunder by reason of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, if Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill, by carrier's agent.

10. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and is complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0464705

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO | | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|---|
| 8220 | | 11-10-72 | 11-13-72 | 11-13-72 | 14-11-75534 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

INQUIRIES

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| CCL | AS INDICATED BELOW | **NET 30 DAYS** | | 5209824 |
| SHIPPED FROM | CAR NO./ST CARRIER | CUSTOMER SERVICE REPRESENTATIVE | | |
| SAUGET      IL | PGNXOC8807 | C JORDAN | | |

| ITEM | DESCRIPTION PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR       94,200.00 LB | | | |
| | AROCLOR 1016          AT      .2050 | | | 19,311.00 |
| | 1040-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-47-06-5-62250A | | | |
| | FOB SAUGET       IL       94,200.00 LB | | | |

PAGE 1                                            19,311.00

MR. H.F.CLARK            SND CPY INV ADD CM LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06407                          0392215

EXHIBIT D

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental acts, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party) which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this Section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, misdescription or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only on processing or further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred ninety (190) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be, for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage consequent to the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for consequential or incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so directs, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in combination with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or government charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understandings or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392216

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. FORCE MAJEURE. Deliveries may be suspended by either party in case of Act of God, war, riots, fire, explosion, flood, strike, lockout, injunction, inability to obtain fuel, power, raw materials, labor, containers, or transportation facilities, accident, breakage of machinery or apparatus, national defense requirements, or any cause beyond the control of such party, preventing the manufacture, shipment, acceptance, or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such circumstance, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply among itself and all of its customers, including those not under contract, in an equitable manner. Such deliveries so suspended shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, or tank truck shipments, shipper's weights shall govern. Where shipment requires use by Seller of carboys, drums, barrels or other returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such container must be kept in good condition and may not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either: (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. WARRANTY. Unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession or use of the goods by Buyer.

6. LIMIT OF LIABILITY. All claims for alleged defective goods, shortage or other cause shall be deemed waived unless made in writing and received by Seller within fifteen (15) days after Buyer learns of the alleged defect, but in no event later than sixty (60) days after Buyer's receipt of the goods. Buyer's exclusive remedy shall be for damages, subject, however, to Buyer's agreement that for any and all losses or damages resulting from any cause whatsoever including alleged defective or damaged goods, Seller's liability shall in no event exceed the purchase price thereof, or at the election of Seller, the repair or replacement of such defective or damaged goods. In no event shall Seller be liable for incidental or consequential damages. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent.

8. FREIGHT - TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in income taxes hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in some payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. PLASTIC MATERIALS. Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. MISCELLANEOUS. This contract is to be construed according to the laws of the State of Missouri. This document constitutes the full understanding of the parties, and no terms, conditions, understanding or agreement purporting to modify or vary the terms of this document shall be binding unless hereafter made in writing and signed by the party to be bound.

0392221

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



## Monsanto

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**DUPLICATE**

**INVOICE**

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 8225 | 11-15-72 | 11-16-72 | 11-16-72 | 14-11-75990 |

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

**PLEASE MAKE CHECKS PAYABLE TO:**
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5275664 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008624 | C JORDAN |

| ITEM | DESCRIPTION PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | 93,100.00 LB | 19,085.50 |
| | AROCLOR 1016 | AT   .2050 | |
| | 1040-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-47-06-5-02250A | | |
| | FOB SAUGET    IL | 93,100.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

**PAGE 1**

MR. ARMAND DEHAURD
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY 07501

SND CPY INV ADD ON LEFT

0392210

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

7

1  **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party) which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2  **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3  **WEIGHTS AND CONTAINERS.** In the case of bulk, carload, tank car, tank truck, or barge shipments, Shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4  **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5  **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6  **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only at processing or in further manufacturing) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7  **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8  **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9  **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have handon of same made on expense, full before paying freight.

10  **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11  **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of or any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

FORM 14   REV. 3-7

0392211

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto**

| MONSANTO COMPANY | DUPLICATE |
|---|---|
| ST. LOUIS, MISSOURI 63166 | INVOICE |

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 4225 | 11-15-72 | 11-16-72 | 11-16-72 | 14-11-75993 |

PAYMENT—  PLEASE MAKE CHECKS PAYABLE TO **MONSANTO COMPANY** MAIL TO P O BOX LISTED BELOW

MONSANTO COMPANY

INQUIRIES ►  Customer Service Center - St Louis MONSANTO INDUSTRIAL CHEMICALS CO St. Louis, Missouri 63166

| FTE OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5275664 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008624 | C JORDAN |

| ITEM | DESCRIPTION PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON-MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN-NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |
| | PAGE  2 | 19,085.5 |

0392212

0392212

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

1. FORCE MAJEURE. Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national emergency, requirement or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, walkout or injunction whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources among its purchasers and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. BUYER'S CREDIT. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. WEIGHTS AND CONTAINERS. In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the containers are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. SHIPMENTS. The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to render delivery of any quantities for which Buyer has not given shipping instructions.

5. LIMITED WARRANTY. Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. LIMITATION OF LIABILITY. Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, short-up negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to claims for defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only on processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. PATENTS. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elects, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, in articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under Section 7 of any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. FREIGHT-TAXES. Any increase in freight rates paid by Seller on shipments covered by this contract and any other governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same due to any law Seller has given of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. LOSS IN TRANSIT. In case of breakage or loss in transit, Buyer shall have recourse of same made on freight carrier for the paying freight.

10. FAIR LABOR STANDARDS ACT. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

11. MISCELLANEOUS. The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understandings or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement of or application of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default on of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392213

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**DUPLICATE**

**INVOICE**

| CUSTOMER'S ORDER NO. | | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|
| 8250 | | 12-12-72 | 12-14-72 | 12-14-72 | 14-12-8JC25 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES ▶

Customer Service Corps - St Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| | | TERMS OF PAYMENT | | |
|---|---|---|---|---|
| CCL | AS INDICATED BELOW   NET 30 DAYS | | | 5317839 |
| SALCET | IL   MCNAGC8615 | W MADDOX | | |

| ITEM | | | DESCRIPTION PRICE & UNIT | | AMOUNT |
|---|---|---|---|---|---|
| 1 | 1 | 8000 GL TANK CAR | | 94,700.00 LB | |
| | | ARCCLOR 1016 | AT | .2650 | 19,413.50 |
| | | 1040-C16-16-0003-47-C6-5-02250A | | | |
| | | FOB SALGET   IL | | 94,700.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCB) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

**PAGE  1**

MR. N.R.CLARK
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607

SND CPY INV ADD ON LEFT

0392205

TERMS AND CONDITIONS. NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

**1. FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, requirements, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction whether or not such labor event is within the reasonable control of such party, which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allot its available supply of goods, without obligation to purchase similar goods from other sources, among its own requirements and its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be canceled without liability, but this contract shall otherwise remain unaffected.

**2. BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods involved in deliveries.

**3. WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title in such containers shall remain in Seller and is deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being returned in good condition, a refund of the deposit will be made.

**4. SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5. LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to this and the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6. LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within such sixty (60) day period including that discoverable only in processing or in further manufacture of all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall later have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7. PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller likewise warrants that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time as with respect to any undelivered goods, if being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8. FREIGHT, TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

**9. LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before moving freight.

**10. PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
(1) A delivery of not less than 90% of the order shall be considered a complete fulfillment of the order;
(2) In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

**11. FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and all amendments thereto.

**12. MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392206

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

INVOICE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8250 | 12-12-72 | 12-14-72 | 12-14-72 | 14-12-80045 |

PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

**MONSANTO COMPANY**

INQUIRIES
Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| F.O.B. OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5317839 |

| SHIPPED FROM | | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONXOC8615 | H MADDOX |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|

WHICH CAN BE CONTROLLED SO
THAT ENTRY INTO THE ENVIRON-
MENT DOES NOT OCCUR AND TO
APPLICATIONS IN WHICH IT CAN-
NOT COME INTO CONTACT WITH
FOOD ANIMAL FEEDSTUFFS OR
PHARMACEUTICALS.

PAGE 2                    19,413.50

0392207

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be canceled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payment or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND EXPRESS OR IMPLIED AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the injury giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT–TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    (2) In case of an over-run, Seller may deliver and Buyer will accept such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default by or any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392208



EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**INVOICE**            **DUPLICATE**

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8254 | 12-12-72 | 12-15-72 | 12-15-72 | 14-12-80426 |

BILL TO:
ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

2

PAYMENT
PLEASE MAKE CHECKS PAYABLE TO
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

SHIPPED TO:
ELECTRONIC COMPONENTS DIV
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES
Customer Service Center - St Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| | INVOICE FOB | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5316577 |

| SHIPPED FROM | | CAR NO/VIA CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MGNAQ08026 | W MADDOX |

| ITEM | DESCRIPTION, PRICE & UNIT | | | | AMOUNT |
|---|---|---|---|---|---|
| 1 | 1 #000 GL TANK CAR | | 92,600.00 LB | | |
| | ARCCLOR 1016 | AT | .2050 | | 18,983.00 |
| | 1040-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-47-G4-S-02250A | | | | |
| | FOB SAUGET    IL | | 92,600.00 LB | | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OF OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE 1

MR. ARMAND DEMAURO          SND CPY INV ADD ON LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY 07501          0392201

TERMS AND CONDITIONS: NOTWITHSTANDING ANY PROVISIONS OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITIONS THAT YOU AGREE TO ALL THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE** ...

2. **BUYER'S CREDIT** ...

3. **WEIGHTS AND CONTAINERS** ...

4. **SHIPMENTS** ...

5. **LIMITED WARRANTY** ...

6. **LIMITATION OF LIABILITY** ...

7. **PATENTS** ...

8. **FREIGHT-TAXES** ...

9. **LOSS IN TRANSIT** ...

10. **PLASTIC MATERIALS** ...

11. **FAIR LABOR STANDARDS ACT** ...

12. **MISCELLANEOUS** ...

0392202

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8254 | 12-12-72 | 12-15-72 | 12-15-72 | 14-12-80426 |

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

**PAYMENT**

MONSANTO COMPANY

**INQUIRIES** ➤ Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| F.O.B. OR PROJECT | DELIVERY F.O.B. | TERMS OF PAYMENT | SHIPPER NO |
|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | 5318977 |

| SHIPPED FROM | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET IL | MONX008626 | W MADDOX |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON- MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN- NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |
| | PAGE 2 | 18,945.00 |

0392203

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or, in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, nonappearance of any other cause whatsoever [ ] defective performance [ ], shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of shipment or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur provided however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (excluding that discoverable only in processing) or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all kinds of damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or in the section of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permits Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any underivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any underivered goods.

8. **FREIGHT, TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge of increase in same hereafter becoming effective, increasing the cost to Seller of producing, selling or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **PLASTIC MATERIALS.** In case of conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer
   - (1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
   - (2) In case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0392204

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

INVOICE

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8307 | 01-12-73 | 01-15-73 | 01-19-73 | 14-01-84527 |

ELECTRONIC COMPONENTS DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

ELECTRONIC COMPONENTS INC
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES ▶  Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| FED ORIG PROJECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| LCL | AS INDICATED BELOW | NET 30 DAYS | | 5365903 |

| SHIPPED FROM | | CAR NO./CAR CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008604 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | | 93,000.00 LB | |
| | AROCLOR 1016 | AT | .2050 | 19,065.00 |
| | 1040-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-47-06-5-02250A | | | |
| | FOB SAUGET    IL | | 93,000.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE  1

MR. N.R.CLARK          SND CPY INV ADD ON LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607

0399412

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE**. Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or, in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be canceled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT**. Seller reserves the right, among other remedies, either to terminate this contract or to suspend further delivery under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries despite therefore delivered.

3. **WEIGHTS AND CONTAINERS**. In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS**. The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY**. Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY**. Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. Assclaims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or discoverable, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all claims of damages hereunder from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or misuse of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS**. Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit, involving Buyer in which such infringement is alleged, and, if Seller so elected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not extend this warranty to the use of any goods sold hereunder, or articles made therefrom, either alone or in combination with other materials, and will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES**. Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same, plus any Tax, Seller because of the sale of the goods, such as Sales Tax, Use Tax, Seller's Occupational Tax, or its Receipts Tax, may, at Seller's option, be added to the price here in specified.

9. **LOSS IN TRANSIT**. In case of loss or damage to loss in transit, Buyer shall have received all same at its own expense before paying freight.

10. **PLASTIC MATERIALS**. Because of the conditions involved in the manufacture of plastic materials, where an order is subject to a product to be made an specially for Buyer:
   1. A delivery of not more than 90% of the order will be considered a complete fulfillment of the order;
   2. In case of an overrun Buyer may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT**. The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with amendments thereto.

12. **MISCELLANEOUS**. The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default on the part of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399413

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8307 | 01-12-73 | 01-15-73 | 01-15-73 | 14-01-84527 |

PAYMENT    PLEASE MAKE CHECKS PAYABLE TO **MONSANTO COMPANY** MAIL TO P.O. BOX LISTED BELOW

**MONSANTO COMPANY**

INQUIRIES    Customer Service Center - St. Louis MONSANTO INDUSTRIAL CHEMICALS CO. St. Louis, Missouri 63166

| USE OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | SHIPPER NO. |
|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | 5365903 |

| SHIPPED FROM | CAR NO./2ⁿᵈ CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET    IL | MGNX008604 | E JORDAN |

| ITEM | DESCRIPTION PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON-MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN-NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |
| | PAGE  2 | 19,065.00 |

0399414

TERMS AND CONDITIONS. NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

**1. FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage; inability to obtain fuel, power, raw materials, labor, containers or transportation facilities; governmental laws, regulations, orders or actions; breakage or failure of machinery or apparatus, national defense requirements, or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction, whether or not such labor event is within the reasonable control of such party, which event prevents the manufacture, shipment, acceptance or use of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods without obligation to purchase similar goods from other sources among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this Section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

**2. BUYER'S CREDIT.** Seller reserves the right, without other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

**3. WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

**4. SHIPMENTS.** The quantity specified in a contract running may be limited by Seller to either (a) the average of its monthly quantities proposed by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5. LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants the goods that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6. LIMITATION OF LIABILITY.** In the event any claim is made, within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only in integrating or in further manufacture) in claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim that have then been discovered or of whether processing, use or resale of the goods shall have then been had. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes liability for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7. PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller in affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8. FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax may, at Seller's option, be added to the price herein specified.

**9. LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill when paying freight.

**10. PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, when an order calls for a product to be made up specially for Buyer.
  1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
  2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

**11. FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**12. MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of the agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be affected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399415

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Delivery may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities; governmental laws, regulations or requirements or any cause beyond the reasonable control of a party; or by reason of any strike, lockout or other labor trouble...

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due...

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments...

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months...

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications... SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND EXPRESS OR IMPLIED AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage...

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract except if are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent...

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein...

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
   1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
   2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but no more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement...

0399409

EXHIBIT D



Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS.

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction whether arising out of such labor event is justifiable control of such party, which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among each and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim hereunder shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit charging such infringement is alleged, and, if Seller is notified, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination, Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of raw materials used therein, and any tax now in effect or increase in same paid due to the Seller because of the sale of the goods such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense before placing freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an allowance for a product to be made as specified for Buyer
   (1) delivery of not less than 90% of the order will be considered a complete fulfillment of the order
   (2) in case of an over run, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No condition, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of or any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399411

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**DUPLICATE**

**INVOICE**

| DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|
| 02-17-73 | 02-15-73 | 02-15-73 | 14-02-69377 |

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

**PAYMENT**

PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

**INQUIRIES**

| TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|
| AS INDICATED BELOW  **NET 30 DAYS** | | 5410003 |

| SHIPPED FROM | CAR NO./TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET    IL | MONX008620 | C JORDAN |

| ITEM | DESCRIPTION/PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1   8000 GL TANK CAR | 91,300.00 LB | | 18,716.50 |
| AROCLOR 1016 | AT    .2050 | | |
| 1040-C16-16-0003-47-06-S-0225CA | | | |
| FOB SAUGET      IL | 91,300.00 LB | | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
CF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

**PAGE 1**

MR. N.F.CLARK          SND CPY INV ADD ON LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607          0451264

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence of any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said time, such claim (including the discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages, and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the limit to Seller of producing, selling or delivering the goods or of procuring materials used therein and any tax now in effect or increase in same may add to by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense to the face freight, freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
   (a) a delivery of not less than 90% of the order will be considered a complete fulfillment of the order;
   (b) in case of an overrun Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451265

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsan***    **MONSANTO COMPANY**
ST. LOUIS, MISSOURI 63166

**DUPLICATE**

**INVOICE**

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 8333 | 02-07-73 | 02-15-73 | 02-15-73 | 14-02-89377 |

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

**MONSANTO COMPANY**

INQUIRIES    Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| SHIP VIA / COLLECT | DELIVERY / F.O.B. | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5416663 |

| SHIPPED FROM | CAR ROUTE CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|
| SAUGET    IL | MONXOG8620 | C JORDAN |

| ITEM | DESCRIPTION. PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON-MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN-NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |

| | PAGE 2 | 18,716.50 |

0451266

TERMS AND CONDITIONS: NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNLESS WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXIST, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers taxing so returned in good condition a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within such sixty (60) day period (including that discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged and, if Seller is affected, that Buyer permits Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may at Seller's option be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451267

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsan**    **MONSANTO COMPANY**    ST. LOUIS, MISSOURI 63166

**DUPLICATE**

**INVOICE**

CUSTOMER'S ORDER NO. 6356    DATE ENTERED 02-12-73    DATE SHIPPED 03-06-73    INVOICE DATE 03-06-73    INVOICE NO. 14-03-2 69

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

2

PAYMENT   PLEASE MAKE CHECKS PAYABLE TO:
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES   Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

F.O.B. LUL   DELIVERY F.O.B. AS INDICATED BELOW   TERMS OF PAYMENT **NET 30 DAYS**   SHIPPER NO. 5416726

SHIPPED FROM SAUGET   IL   CAR NO./IT CARRIER MJNX008622   CUSTOMER SERVICE REPRESENTATIVE C JORDAN

| ITEM | | DESCRIPTION, PRICE & UNIT | | AMOUNT |
|---|---|---|---|---|
| 1 | 1 8000 GL TANK CAR | | | |
| | AROCLOR 1016 | AT | .2090 | 18,839.5 |
| | 1040-916-16-00-3-47-06-S-02250A | | | |
| | FOB SAUGET    IL | 91,900.00 LB | | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

**PAGE 1**    18,839.5

MR. N.R.CLARK    SND CPY INV ADD ON LEFT
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607    0451268

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

**1  FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or acts, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such aggrievement is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

**2  BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

**3  WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipments requires use by Seller of returnable containers the return of such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being returned in good condition, a refund of the deposit will be made.

**4  SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5  LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6  LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance) shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7  PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elects, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods if it is/may agreed that in the event of such termination for Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8  FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any actual governmental repair or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, etc., or Seller's capital, be added to the price herein specified.

**9  LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense claim papers made.

**10  PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an item is for a product to be made up specially for Buyer.
  1  Seller reserves the right to ship 90% of the order and be considered a complete fulfillment of the order.
  2  In case of an overrun Seller may deliver and Buyer will accept any such excess up to 10% of the order but not more than 1,000 pounds.

**11  FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**12  MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract includes the full understanding of the parties, and is a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or any right or remedy and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451269

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



| | | | | | |
|---|---|---|---|---|---|
| **Monsa** | MONSANTO COMPANY<br>ST. LOUIS, MISSOURI 63166 | | | DUPLICATE<br>**INVOICE** | |

| CUSTOMER'S ORDER NO | | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|---|
| 8354 | | 03-02-73 | 03-14-73 | 03-19-73 | 14-03-84574 |

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

2

PLEASE MAKE CHECKS PAYABLE TO
PAYMENT       MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

MONSANTO COMPANY
BOX 6455
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES ▶ MONSANTO INDUSTRIAL CHEMICALS CO

| TIED OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5452308 |

| SHIPPED FROM | | ROAD ROUTE CARRIER | CUSTOMER SERVICE REPRESENTATIVE | |
|---|---|---|---|---|
| SAUGET | IL | MGNXCC8610 | C JORDAN | |

| ITEM | | DESCRIPTION - PRICE & UNIT | | AMOUNT |
|---|---|---|---|---|
| 1 | 1 BOOY GL TANK CAR | | 92,900.00 LB | |
| | AROCLOR 1016 | AT | .2050 | 19,044.5 |
| | 1:49-16-16-0003-47-C6-S-02290A | | | |
| | FOB SAUGET     IL | | 92,900.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
&PCBS& WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE, PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OF OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE 1

PP: ARMAND DEMAURO          SND CPY INV ACC CN LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD                         0399193
TOTOWA, NEW JERSEY 07501

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

**1. FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction whether or not such labor event is within the reasonable control of such party, which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources among its own and all of its customers, including those purchasing under the contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

**2. BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods already delivered.

**3. WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any other than the product first shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

**4. SHIPMENTS.** The quantity shipped in any one month may be limited by Seller to either its average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (to the maximum quantity covered by the contract divided by the number of months in the contract period). Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5. LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6. LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall promptly such goods for any damage, defects or shortage. All claims, (including for alleged damaged or defective goods, shortage, non-performance or any other cause whatsoever) defective performance), shall be deemed waived unless made in writing and received by Seller within ninety (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur; provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture of claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above as shall be deemed an absolute and unconditional waiver of such claim irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall at no event exceed the purchase price of the specific goods in respect to which the claim is made, or at the option of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7. PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim of suit involving Buyer in which such infringement is alleged, and, if Seller is offered and that Buyer permit Seller to control (complete(ly) the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8. FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Reseller's Occupational Tax, Gross Receipts Tax, may at Seller's option, be added to the price herein specified.

**9. LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

**10. PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer
- 1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order
- 2) In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds

**11. FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**12. MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be affected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399194

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsa** , MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

**INVOICE**

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8359 | 03-02-73 | 03-19-73 | 03-19-73 | 14-03-04574 |

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

MONSANTO COMPANY

INQUIRIES

Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| PPD OR COLLECT | DELIVERY F.O.B. | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5452388 |

| SHIPPED FROM | | CAR NO/TT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | 1L | PCNXCC8610 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON- MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN- NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |

PAGE 2                              19,044.5

0399195

TERMS AND CONDITIONS, NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER. WE ACCEPT YOUR ORDER, SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU AGREE TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

**1 FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction which in the sole judgment of such party prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those served under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

**2 BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

**3 WEIGHTS AND CONTAINERS.** In the time of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proven to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being returned in good condition, a refund of the deposit will be made.

**4 SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5 LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6 LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period shall constitute a waiver by Buyer of all claims in respect of whatever the facts giving rise to the claim and have then been discovered or whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect of which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7 PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permits Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination, the Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8 FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental change or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same during the term of this contract because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

**9 LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on express receipt before paying freight.

**10 PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
(1) A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
(2) In case of an over-run, Seller may deliver and Buyer will accept any bulk excess up to 10% of the order, but not more than 1,000 pounds.

**11 FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**12 MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the parties to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399196

**EXHIBIT D**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsar**    **MONSANTO COMPANY**    **DUPLICATE**
ST. LOUIS, MISSOURI 63166    **INVOICE**

| | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8179 | 03-22-73 | 03-28-73 | 03-28-73 | 14-03-614 |

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
29 EAST SIXTH STREET
PATERSON, NEW JERSEY  07524

2

PLEASE MAKE CHECKS PAYABLE TO
**MONSANTO COMPANY**
MAIL TO P.O. BOX LISTED BELOW

**PAYMENT**

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY

**MONSANTO COMPANY**
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

**INQUIRIES** ▶  Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| | DELIVER F.O.B. | TERMS OF PAYMENT | | | SHIPPER NO. |
|---|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | | 5487792 |

SHIPPED FROM | CAR NO/FT CARRIER | CUSTOMER SERVICE REPRESENTATIVE
SAUGET   IL   MONX08025 | | C JORDAN

| ITEM | DESCRIPTION PRICE & UNIT | | AMOUNT |
|---|---|---|---|
| 1    1 | 8000 GL TANK CAR | 87,700.00 LB | |
| | AROCLOR 1016        AT | .2050 | 17,978.5 |
| | 1040-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-47-06-S-02250A | | |
| | FOB SAUGET    IL | 87,700.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE 1

MR. ARMAND DEMAURO         SND CPY INV ADD CN LEFT
ELECTRONIC COMPONENTS DIV
UNIVERSAL MFG CORP
11 JACKSON ROAD
TOTOWA, NEW JERSEY  07501                 0451270

TERMS AND CONDITIONS. NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXISTS, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to deliver of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods of within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or, at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, in being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of procuring materials used therein, and any tax now in effect of increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax may, at Seller's option be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit Buyer shall have notation of same made on expense before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer.
    - A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    - In case of an over-run, Seller may deliver and Buyer will accept any such excess up to 10% of the order but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be affected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451271

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



MONSANTO COMPANY
ST. LOUIS MISSOURI 63166

DUPLICATE

INVOICE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 8379 | 03-22-73 | 03-28-73 | 03-28-73 | 14-03-.814 |

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

MONSANTO COMPANY

INQUIRIES
Customer Service Center - St. Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| NO. P. O. KEY | DELIVERY F.O.B. | TERMS OF PAYMENT | SHIPPER NO. |
|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | 5487796 |
| SHIPPED FROM | | CAR NO./IT CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
| SAUGET | IL | MONX008625 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SC THAT ENTRY INTO THE ENVIRON-MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN-NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |

| | PAGE 2 | 17,978.50 |
|---|---|---|

0451272

TERMS AND CONDITIONS. NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS THAT MAY BE CONTAINED IN YOUR PURCHASE ORDER, WE ACCEPT YOUR ORDER SUBJECT ONLY TO THE TERMS OF THE WRITTEN CONTRACT BETWEEN US UNDER WHICH YOUR ORDER IS PLACED. IF NO SUCH CONTRACT EXIST, WE ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU AGREE TO THE TERMS CONTAINED ABOVE AND ON THE REVERSE SIDE HEREOF, AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS.

EXHIBIT D

## TERMS AND CONDITIONS

**1. FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

**2. BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

**3. WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers or to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

**4. SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

**5. LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

**6. LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever (defective performance), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, (defective performance), that as to only defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only upon consumption or further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within nine hundred eighty (980) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the time under the period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made; or at the election of Seller the repair or replacement thereof, Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

**7. PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in combination with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, if being agreed that in the event of such termination, Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

**8. FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

**9. LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense before accepting shipment.

**10. PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an variation is unavoidable it is made up in liability for Buyer.
1. An under shipment not in excess of 10% of the order will be considered a complete fulfillment of the order.
2. In case of an over shipment, the Seller may deliver and Buyer will accept any such excess up to 10% of the order, such excess more than 10% being paid for.

**11. FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

**12. MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451273

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

INVOICE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 8384 | 03-23-73 | 03-30-73 | 03-30-73 | 14-03-6884 |

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 07524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8495
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES
MONSANTO INDUSTRIAL CHEMICALS CO.
St. Louis, Missouri 63166

| | DELIVERY FROM | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5490008 |

| SHIPPED FROM | | CAR NO./VIA CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONX008601 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | | 92,800.00 LB | |
| | AROCLOR 1016 | AT | .2050 | 19,024.00 |
| | 1040-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-47-06-S-02250A | | | |
| | FOB SAUGET        IL | | 92,800.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE  1

MR. N.R.CLARK
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607

SND CPY INV ACC OR LEFT

0451274

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements, or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material portion which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein, and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within said sixty (60) day period (including that discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for and Buyer assumes responsibility for, all purchase, injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer in no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permits Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling, or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on expense bill before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer
   1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
   2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451275

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



WHICH CAN BE CONTROLLED SO
THAT ENTRY INTO THE ENVIRON-
MENT DOES NOT OCCUR AND TO
APPLICATIONS IN WHICH IT CAN-
NOT COME INTO CONTACT WITH
FOOD ANIMAL FEEDSTUFFS OR
PHARMACEUTICALS.

PAGE  2                    19,024.0.

0451276

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or action, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor event is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If, because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such bases as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but this contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever ("defective performance"), shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur, provided, however, that as to any defective performance not reasonably discoverable within sixty (60) days, the period (including that discoverable only in processing or in further manufacture) all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever shall first occur. Failure to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever, including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of, or any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, if by so agreeing that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of procuring materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may at Seller's option be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notation of same made on receipt before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer:
    1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order.
    2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the order, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default or of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0451277

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**Monsant~**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE
INVOICE

| CUSTOMER'S ORDER NO | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO |
|---|---|---|---|---|
| 8463 | 04-06-73 | 04-20-73 | 04-20-73 | 14-04-10037 |

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORPORATION
29 EAST SIXTH STREET
PATERSON, NEW JERSEY 47524

2

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO:
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

CAPACITOR DIVISION
UNIVERSAL MANUFACTURING CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONNECTICUT

MONSANTO COMPANY
BOX 8499
CHURCH ST STATION
NEW YORK N Y 10249

INQUIRIES

Customer Service Center - St Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| | | TERMS OF PAYMENT | | SHIPPER NO |
|---|---|---|---|---|
| COL | AS INDICATED BELOW | NET 30 DAYS | | 5521752 |

| SHIPPED FROM | | CAR NO/VIA CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MONXUC8623 | C JORDAN |

| ITEM | DESCRIPTION, PRICE & UNIT | | | AMOUNT |
|---|---|---|---|---|
| 1 | 1  8000 GL TANK CAR | | 92,700.00 LB | |
| | AROCLOR 1016 | AT | .2090 | 19,603.50 |
| | 1040-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-47-06-5-02250A | | | |
| | FOB SAUGET    IL | | 92,700.00 LB | |

THIS PRODUCT CONTAINS
POLYCHLORINATED BIPHENYLS
(PCBS) WHICH SOME STUDIES
HAVE SHOWN MAY BE PERSISTANT
AN ENVIRONMENTAL CONTAMINANT
AND POSSIBLY INJURIOUS TO
CERTAIN FORMS OF BIRD AQUATIC
AND ANIMAL LIFE. PREVENT ANY

ENTRY INTO THE ENVIRONMENT
THROUGH SPILLS LEAKAGE DIS-
POSAL VAPOURISATION RE-USE
OF CONTAINERS OR OTHERWISE.
SPILLS LEAKAGES AND WASTE
PRODUCT MUST BE COLLECTED.
USE OF THIS PRODUCT MUST BE
RESTRICTED TO APPLICATIONS

PAGE 1

SND CPY INV ADD ON LEFT

MR. N.P.CLARK
UNIVERSAL MFG. CORP
902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607

0399172

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

MONSANTO COMPANY

**TERMS AND CONDITIONS**

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or actions, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction ...

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due ...

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error ...

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract ...

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants to and title of goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other matter whatsoever ... Buyer's remedies hereunder, and Seller's liability, shall in no event shall Seller be liable for incidental or consequential damages ... Transportation charges for the return of such shall not be paid unless authorized in advance by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically for Buyer assuming no Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller so elected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates and by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective ... shall be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or loss in transit, Buyer shall have notification of same made on expiration bill before paying freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specially for Buyer
   1. A delivery of not less than 90% of the order will be considered a complete fulfillment of the order
   2. In case of an overrun, Seller may deliver and Buyer will accept any such excess up to 10% of the amount, but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreements purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgment or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of or any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399173

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto**

MONSANTO COMPANY
ST. LOUIS, MISSOURI 63166

DUPLICATE

INVOICE

| CUSTOMER'S ORDER NO. | DATE ENTERED | DATE SHIPPED | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 8463 | 04-06-73 | 04-20-73 | 04-26-73 | 14-04-10037 |

PAYMENT

PLEASE MAKE CHECKS PAYABLE TO
MONSANTO COMPANY
MAIL TO P.O. BOX LISTED BELOW

MONSANTO COMPANY

INQUIRIES ▶

Customer Service Center - St Louis
MONSANTO INDUSTRIAL CHEMICALS CO
St. Louis, Missouri 63166

| | TERMS OF PAYMENT | | SHIPPER NO. |
|---|---|---|---|
| CCL | AS INDICATED BELOW | NET 30 DAYS | 5521752 |

| SHIPPED FROM | | CAR ROUTE CARRIER | CUSTOMER SERVICE REPRESENTATIVE |
|---|---|---|---|
| SAUGET | IL | MCRXUC8025 | C JORDAN |

| ITEM | DESCRIPTION PRICE & UNIT | AMOUNT |
|---|---|---|
| | WHICH CAN BE CONTROLLED SO THAT ENTRY INTO THE ENVIRON- MENT DOES NOT OCCUR AND TO APPLICATIONS IN WHICH IT CAN- NOT COME INTO CONTACT WITH FOOD ANIMAL FEEDSTUFFS OR PHARMACEUTICALS. | |
| | PAGE 2 | 19,003.5. |

0399174

EXHIBIT D

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

MONSANTO COMPANY

TERMS AND CONDITIONS

1. **FORCE MAJEURE.** Deliveries may be suspended by either party in the event of Act of God, war, riot, fire, explosion, accident, flood, sabotage, inability to obtain fuel, power, raw materials, labor, containers or transportation facilities, governmental laws, regulations, orders or actions, breakage or failure of machinery or apparatus, national defense requirements or any other event beyond the reasonable control of such party or in the event of labor trouble, strike, lockout or injunction (whether or not such labor trouble, strike, lockout or injunction is within the reasonable control of such party), which event prevents the manufacture, shipment, acceptance or consumption of a shipment of the goods or of a material upon which the manufacture of the goods is dependent. If because of any such event, Seller is unable to supply the total demand for the goods, Seller may allocate its available supply of goods, without obligation to purchase similar goods from other sources, among itself and all of its customers, including those not under contract, on such basis as it determines to be equitable. Deliveries suspended under this section shall be cancelled without liability, but the contract shall otherwise remain unaffected.

2. **BUYER'S CREDIT.** Seller reserves the right, among other remedies, either to terminate this contract or to suspend further deliveries under it in the event Buyer fails to pay for any one shipment when same becomes due. Should Buyer's financial responsibility become unsatisfactory to Seller, cash payments or satisfactory security may be required by Seller for future deliveries and for goods theretofore delivered.

3. **WEIGHTS AND CONTAINERS.** In the case of bulk carload, tank car, tank truck or barge shipments, shipper's weights shall govern unless proved to be in error. Where shipment requires use by Seller of returnable containers, title to such containers shall remain in Seller and a deposit in the amount required by Seller must be made at the time the goods are paid for. Such containers must be kept in good condition, must not be used for any material other than that shipped therein and must be returned within sixty (60) days from date of shipment. On such containers being so returned in good condition, a refund of the deposit will be made.

4. **SHIPMENTS.** The quantity shipped in any contract month may be limited by Seller to either (a) the average of the monthly quantities ordered by Buyer hereunder for the preceding contract months, or (b) the maximum quantity covered by this contract divided by the number of months in the contract period. Seller shall not be bound to tender delivery of any quantities for which Buyer has not given shipping instructions.

5. **LIMITED WARRANTY.** Subject to the limitations of Section 6 and unless otherwise provided herein, Seller warrants title and that all goods sold hereunder shall conform to Seller's standard specifications. Subject to the preceding sentence and except as otherwise expressly provided herein, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances.

6. **LIMITATION OF LIABILITY.** Within thirty (30) days after receipt of each shipment of goods sold hereunder, Buyer shall examine such goods for any damage, defects or shortage. All claims, including for alleged damaged or defective goods, shortage, negligence or any other cause whatsoever - defective performance -, shall be deemed waived unless made in writing and received by Seller within sixty (60) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever is later, provided, however, that as to any defective performance not reasonably discoverable within such sixty (60) day period including that discoverable only in processing or in further manufacture, all claims shall be deemed waived unless made in writing and received by Seller within one hundred eighty (180) days after Buyer's receipt of the goods or within thirty (30) days after Buyer learns of the facts giving rise to the claim, whichever is later. ... Failure of Buyer to give notice of any claim within the applicable time period specified above shall be deemed an absolute and unconditional waiver of such claim, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, use or resale of the goods shall have then taken place. Buyer's exclusive remedy shall be for damages and Seller's liability for any and all losses or damages resulting from any cause whatsoever - including alleged negligence, shall in no event exceed the purchase price of the goods in respect to which the claim is made, or at the election of Seller, the repair or replacement of such goods. Seller shall not be liable for, and Buyer expressly assumes responsibility for, all personal injury and property damage resulting from the handling, possession, use or resale of the goods by Buyer. In no event shall Seller be liable for incidental or consequential damages, whether Buyer's claim is in contract, negligence or otherwise. Transportation charges for the return of goods shall not be paid unless authorized - shipment by Seller.

7. **PATENTS.** Seller warrants that any goods sold pursuant to this contract, except as are made specifically to Buyer according to Buyer's specifications, do not infringe any valid U.S. patent. This warranty is given upon condition that Buyer promptly notify Seller of any claim or suit involving Buyer in which such infringement is alleged, and, if Seller is affected, that Buyer permit Seller to control completely the defense or compromise of any such allegation of infringement. Seller does not warrant that the use of any goods sold hereunder, or articles made therefrom, either alone or in conjunction with other materials, will not infringe a patent. Seller reserves the right to terminate Seller's obligations under this Section 7 at any time with respect to any undelivered goods, it being agreed that in the event of such termination Buyer may, without penalty, thereafter refuse acceptance of any undelivered goods.

8. **FREIGHT-TAXES.** Any increase in freight rates paid by Seller on shipments covered by this contract and any tax or governmental charge or increase in same hereafter becoming effective increasing the cost to Seller of producing, selling or delivering the goods or of producing materials used therein, and any tax now in effect or increase in same payable by the Seller because of the sale of the goods, such as Sales Tax, Use Tax, Retailer's Occupational Tax, Gross Receipts Tax, may, at Seller's option, be added to the price herein specified.

9. **LOSS IN TRANSIT.** In case of breakage or ... Seller shall have no obligation of same made on express sale before delivery to freight.

10. **PLASTIC MATERIALS.** Because of the conditions involved in the manufacture of plastic materials, where an order calls for a product to be made up specifically for Buyer ... is considered a complete fulfillment of the order:
   1. a delivery of not less than 90% of the order ...
   2. in the event Seller may deliver a shortage but not exceed any such excess up to 10% of the order but not more than 1,000 pounds.

11. **FAIR LABOR STANDARDS ACT.** The material covered hereunder is warranted to have been produced in compliance with the requirements of the Fair Labor Standards Act of 1938, and with all amendments thereto.

12. **MISCELLANEOUS.** The validity, interpretation and performance of this contract shall be governed and construed in accordance with the laws of the State of Missouri. This contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement. No conditions, understanding or agreement purporting to modify or vary the terms of this contract shall be binding unless hereafter made in writing and signed by the party to be bound, and no modification shall be effected by the acknowledgement or acceptance of purchase order or shipping instruction forms containing terms or conditions at variance with or in addition to those set forth herein. No waiver by either Seller or Buyer with respect to any breach or default of any right or remedy, and no course of dealing, shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

0399175

EXHIBIT D

*Electronic Components Division*

UNIVERSAL MANUFACTURING CORP.

902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607
(203)  336-0161

February 19, 1970

Monsanto Company
1700 South Second Street
St. Louis, Missouri 63177

Attention: Dr. R. Munch

Dear Ralph:

In connection with our recent telephone conversation and your subsequent Purchase Order No. L-56870 dated February 10, we will be shipping the material on Monday, February 23. In order to insure that these parts would be as representative and as uniform as possible, I waited until a regular production run was in process, and took them from the middle of the run.

The paper used was from Peter J. Schweitzer Division, Kimberly Clark Corporation, .00066" x 1 3/4", nominal 0.90 density, Lot #9943-5. Foil was R.V. Neher Co. N 4032, .00022" x 1 9/16", taken from 1969 release #12.

I hope this material arrives in good order, and proves to be suitable for your purposes.

Best regards,

ELECTRONIC COMPONENTS DIVISION
Universal Manufacturing Corp.

N. Kay Clark, Vice President

NRC/h

EXHIBIT E

0079420

Case 4:23-cv-00204-HEA    Doc.      Filed 09/20/23    Page: 182 of 268 PageID

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronic Components Division
Universal Mfg. Co. Inc.
902 Crescent Ave, Bridgeport, Conn.

Attention: Mr. Ray Clark
Zip Code 06608

## Monsanto
COMPANY

**PURCHASING DEPARTMENT**
1700 South Second St.
St. Louis, Missouri 63177

| DATE | PURCHASE ORDER NUMBER |
|---|---|
| | **L** 56870 |

REQUISITION
PURCHASE
ORDER

DATE MATERIAL REQUIRED AT PLANT SITE.

←— NOTE —→

PLEASE SHOW THIS ORDER NUMBER ON EACH INVOICE, PACKAGE, BILL OF OF LADING, AND SHIPPING NOTICE.

— BILLING INSTRUCTIONS —
— FORWARD TO ADDRESS AT TOP OF THIS FORM

1. ACKNOWLEDGMENT OF ORDER GIVING SHIPPING DATE
2. BILL OF LADING IN TRIPLICATE
3. INVOICE IN TRIPLICATE PRICING EACH ITEM SEPARATELY
4. MAIL INVOICES C/O ACCOUNTING DEPT.

— SHIPPING INSTRUCTIONS —
1. DELIVER BETWEEN 8 A.M. AND 3 P.M. MONDAY THROUGH FRIDAY
2. SHIP CHEAPEST ROUTING UNLESS OTHERWISE SPECIFIED
3. ON LOCAL DELIVERIES SURRENDER DELIVERY TICKET

**MONSANTO COMPANY**
Research Receiving Dept.
1700 So. 2nd St. (Rear)
St. Louis, Mo. 63177

| F.O.B. | VIA | TERMS |
|---|---|---|

| ITEM | QUANTITY | UNIT | DESCRIPTION | PRICE |
|---|---|---|---|---|
| | 500 | | 2 mfd. unimpregnated test capacitors. | |
| | | | Wind with two layers 0.00066" paper, | |
| | | | all from one lot of paper and foil. | |
| | | | Identify manufacturer and lot number | |
| | | | of paper and manufacturer and release | |
| | | | number of foil. Ship in trays sealed in | |
| | | | polyethylene bags. | |
| | 120 | | Capacitors identical to above but | |
| | | | impregnated in standard manner with Avoclor | |
| | 1242 | | | |

MISSOURI SALES/USE TAX EXEMPTION CERTIFICATE NO. 115-2789

☐ IF MARKED HERE, THE EQUAL EMPLOYMENT OPPORTUNITY CLAUSE PRESCRIBED BY EXECUTIVE ORDER 11246 (AND ANY AMENDMENTS THERETO) IS INCORPORATED HEREIN BY REFERENCE, UNLESS THIS TRANSACTION IS EXEMPT.

BY SHIPPING THE ABOVE GOODS OR BY ACKNOWLEDGING RECEIPT OF THIS ORDER, HEREAFTER CALLED "CONTRACT", YOU AGREE TO THE TERMS AND CONDITIONS SET FORTH ON THE FACE SIDE AND THE REVERSE SIDE HEREOF. ANY DIFFERENT OR ADDITIONAL TERMS IN YOUR ACCEPTANCE OF THIS OFFER ARE HEREBY OBJECTED TO.

**MONSANTO COMPANY**
BY

| DATE 2/9/70 | INQUIRY NO. | BUYER | SAFETY JOB? ☐ YES ☐ NO |
|---|---|---|---|

| DATE MATERIAL RECEIVED | COMP. SHIPMENT | PART SHIPMENT | UNLOAD AT | DELIVER TO (LOCATION) Res. Lab. 210 |
|---|---|---|---|---|

| STANDARD APPROVAL | | JOB NO. | DEPT. | ESTIMATE NO. | REQUISITIONER (NAME TO BE PRINTED CLEARLY) |
|---|---|---|---|---|---|

| D V | ACCOUNT PLT. MAIN SUB | C E | MATERIAL | T A N | AMOUNT | VENDOR NO. | QUANTITY | UNIT COST | RECEIVING REPORT OR JOB NO. |
|---|---|---|---|---|---|---|---|---|---|
| 13-14 15-16 | 17-19 20-21 | 22-24 | 25-29 | 30 | 31-39 | 40-45 | 46-53 | 54-61 | |
| | | | | | | | EXHIBIT E | | 1630528 |

0079421

*Electronic Components Division*

UNIVERSAL MANUFACTURING CORP.

902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607
(203) 336-0161

March 11, 1971

Dr. Ralph H. Munch
Monsanto Company
1700 South Second Street
St. Louis, Mo. 63177

Dear Ralph:

Thank you very much for the time and effort represented by the data contained in your letters of February 25, 1971 and March 4 to Mike Gianotti. We have had no serious doubts about ability of the Japanese askarel manufacturer to produce a good quality, stable material, but it is good to have confirmation from the most knowledgeable source. The question still remains, of course, as to whether he maintains sufficient control of his materials and processes to insure that he does so at all times, without exception.

You remarked on the somewhat higher dissipation factor of the Matsushita capacitors, compared with those made by us. You also point out that the dissipation factor of Matsushita capacitors decreases more with increasing voltage than is the case with ours. It is interesting that the minimum dissipation factor with our capacitors is at about 165 volts, whereas with Matsushita capacitors the minimum occurs at about 275 volts. I believe practically all these differences can reasonably be attributed to the difference in density of the paper, perhaps with any differences in the treatment of the pulp from which the paper is made exerting a minor effect.

The change in dissipation factor between the two sets of measurements is interesting. The change is rather small in absolute magnitude, but is undoubtedly real. I would not expect corona at the stresses involved (825 volts per mil, maximum), but as you suggest, the stress must have produced some irreversible effect.

The instability you noted on some of the Matsushita capacitors very likely results from the marginal quality of the contact between the tap and the foil. I recall similar results on measurements made several years ago on capacitors

EXHIBIT E    0079383

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Dr. R.H. Munch          -2-                    3/11/71
Monsanto

with plain (not flagged) taps, and note that the contact
problem is accentuated at the higher voltages. We consider
that plain tap construction is rather marginal at best, and
suitable only for the lower voltages.

                        Best regards,

                        ELECTRONIC COMPONENTS DIVISION
                        Universal Manufacturing Corp.

                        N. Ray Clark, Vice President

NRC/h

cc: Paul Benignus, Monsanto
    MF Gianotti
    GD Rayno

                        EXHIBIT E

                                        0079384

Electronically Filed - St. Louis County - January 19, 2018 - 04:37 PM

Ele tronic Components Division
Universal Mfg.
902 Crescent Ave, Bridgeport, Conn.

Attention: Mr. Kay Clark

ESTIMATED COST $850

→ 06607

# Monsanto
## COMPANY

**PURCHASING DEPARTMENT**
1700 South Second St.
St. Louis, Missouri 63177

| | | PURCHASE ORDER NUMBER |
|---|---|---|
| DATE | | L-59061 |

**REQUISITION**
**PURCHASE ORDER**

DATE MATERIAL REQUIRED AT PLANT SITE:
**8/20/71**
OR SOONER

← NOTE →

PLEASE SHOW THIS ORDER NUMBER ON EACH INVOICE, PACKAGE, BILL OF LADING, AND SHIPPING NOTICE.

— BILLING INSTRUCTIONS —
FORWARD TO ADDRESS AT TOP OF THIS FORM
1. ACKNOWLEDGEMENT OF ORDER GIVING SHIPPING DATE
2. BILL OF LADING IN DUPLICATE.
3. INVOICE IN DUPLICATE PRICING EACH ITEM SEPARATELY
4. MAIL INVOICES C/O ACCOUNTING DEPT.

— SHIPPING INSTRUCTIONS —
1. DELIVER BETWEEN 8 A.M. AND 3 P.M. MONDAY THROUGH FRIDAY.
2. SHIP CHEAPEST ROUTING UNLESS OTHERWISE SPECIFIED
3. ON LOCAL DELIVERIES SURRENDER DELIVERY TICKET

| F.O.B. | VIA | TERMS |
|---|---|---|
| | | |

SHIP TO
MONSANTO COMPANY
100 LAFAYETTE
BLDG U-RESEARCH-
ST. LOUIS MO. 63177

| ITEM | QUANTITY | UNIT | DESCRIPTION | PRICE |
|---|---|---|---|---|
| | 2,000 | | 2 mfd. unimpregnated test capacitors. Wind with two layers 0.00066" paper, all from one lot of paper and foil. Identify manufacturer and lot number of paper and manufacturer and release number of foil. Ship in trays sealed in polyethylene bags. | |
| | 120 | | Capacitors identical to above but impregnated in standard manner with Aroclor 1242 | |
| | | | Above items to duplicate as nearly as possible those supplied on our order No. L-56870 of 2/9/70 | |

| SALES TAX APPLIES: ADD TO INVOICE ☐ | USE TAX APPLIES: ADD TO INVOICE ☐ | PURCHASE EXEMPT FROM SALES/USE TAX ☐ |
|---|---|---|

BY SHIPPING THE ABOVE GOODS OR BY ACKNOWLEDGING RECEIPT OF THIS ORDER, HEREAFTER CALLED "CONTRACT," YOU AGREE TO THE TERMS AND CONDITIONS SET FORTH ON THE FACE SIDE AND THE REVERSE SIDE HEREOF. ANY DIFFERENT OR ADDITIONAL TERMS IN YOUR ACCEPTANCE OF THIS OFFER ARE HEREBY OBJECTED TO.

**MONSANTO COMPANY**

6/17/71

| | INQUIRY NO. | APPROVAL | BUYER | SAFETY JOB? ☐ YES ☐ NO |
|---|---|---|---|---|
| LAST MATERIAL RECEIVED | COMPL. SHIPMENT | PART. SHIPMENT | UNLOAD AT | POLLUTION CONTROL? ☐ YES ☐ NO |
| | | | | DELIVER TO (LOCATION) |
| STANDARD APPROVAL | | DEPT. | ESTIMATE NO. | Res. Lab, 210 |
| | | | | REQUISITIONER R. H. Munch |

| S3 DIV. | ACCOUNT LOC. | MAIN | SUB | CLASS | AMOUNT | C R | TAX CODE | N Y | MATERIAL | QUANTITY | | TYPE | OTHER DETAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 21 | 760 | 01 | 225 | | | | | | | | | 1630522 |

EXHIBIT E

0079382

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Electronic Components Division*

UNIVERSAL MANUFACTURING CORP.

902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  336-0161

July 23, 1971

Monsanto Company
100 Lafayette
Bldg. U - Research
St. Louis, Mo. 63177

Attention: Dr. Ralph H. Munch

Dear Ralph:

We are shipping today the capacitors under your purchase order L-59061 dated June 18, 1971. The paper used in winding these capacitors was made by the Peter J. Schweitzer Division of Kimberly Clark Corporation, their Lot # 9117-2, and was .00066" x 1 3/4", 0.90 density. The foil was made by Robert Victor Neher Ltd. and was from Case #27, release #3 (1971); it was .00023" x 1 9/16".

It was a pleasure talking with you by telephone, and I hope to send you some information on ballast circuits shortly.

Best regards,

ELECTRONIC COMPONENTS DIVISION
Universal Manufacturing Corp.

N. Ray Clark, Vice President

NRC/h

EXHIBIT E        0079380

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

bcc: P. G. Benignus
W. R. Richard

June 17, 1971

Electronic Component Division
Universal Manufacturing Corporation
902 Crescent Avenue
Bridgeport, Connecticut 06607

Attention: Mr. N. Ray Clark, Vice President

Dear Ray:

You will recall that about a year and a half ago we bought 500 2 mfd unimpregnated test capacitors and 120 impregnated capacitors from the same lot for comparison purposes. These capacitors have enabled us to test our fluids by running life tests on capacitors impregnated with the fluids instead of just measuring fluid properties. We have gained a great deal of insight into the performance of new fluids from this kind of testing.

Since we have used most of the first lot of test capacitors, we would like to secure a new lot as nearly identical to the first as is possible. You will find a copy of our order for 2,000 of the unimpregnated test capacitors and 120 of the impregnated comparison capacitors attached to this letter. The original will be sent to you by our Purchasing Department.

We have found your capacitors to be of uniformly high quality very suitable for the kind of test work we are doing. We greatly appreciate your cooperation in supplying them to us.

Sincerely,

Ralph H. Munch

js
attachment

EXHIBIT E

0079381

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



ORIGINAL INVOICE

## UNIVERSAL MANUFACTURING CORPORATION

29-51 East Sixth Street, Paterson, New Jersey 07509

UNIVERSAL MANUFACTURING CORPORATION

PLEASE RETURN DUPLICATE INVOICE WITH YOUR REMITTANCE TO

PLANT LOCATIONS:
PATERSON, N.J.
TOTOWA, N.J.
MENDENHALL, MISS.
BRIDGEPORT, CONN.

TELEPHONES: N.J. AREA CODE (201) 271-3100
N.Y. AREA CODE (212) 279-3478

SOLD TO:

· MONSANTO COMPANY
· 100 LAFAYETTE BLDG U RESEARCH
· ST. LOUIS, MO,
· ATTN, DR RALPH MUNCH

SHIP TO:

CUSTOMER NO.                    CUSTOMER NO.          TERMS:

INVOICE NUMBER
21548

| INVOICE DATE | QUANTITY | | SAMPLES | | VIA UPS | | | INVOICE NUMBER |
| 12/17/71 | | | | SLMS | | | | |
| ITEM NO. | ORDERED | SHIPPED | CATALOG NUMBER | CUSTOMER ORDER NO. & DATE | DESCRIPTION | UNIT PRICE | CALCULATOR BACK ORDER FROM | AMOUNT |
| | 35 | 35 | PCS YELLOW 2.0 580 VAC 510701 (12 1) | | | | | NO CHARGE |
| | 5 | 5 | " " | " | | | | " " |
| | 40 | 40 | " " | " NOT IMPREGNATED | | | | " " |

ALL SALES ARE SUBJECT TO TERMS ON REVERSE SIDE

PLEASE PAY THIS AMOUNT

NO CHARGE

EXHIBIT E                0079465

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**UNIVERSAL MANUFACTURING CORPORATION** warrants [illegible]

If it appears within [illegible]

THE FOREGOING SHALL CONSTITUTE THE SOLE AND EX CLUSIVE REMEDY OF THE PURCHASER AND THE SOLE LIABILITY OF UNIVERSAL AND IS EXCLUSIVE OF ALL OTHER WARRANTIES, WHETHER WRITTEN, ORAL OR IMPLIED, INCLUD ING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS OR OF ANY OTHER OBLIGATION ON THE PART OF THE SELLER.

**EXHIBIT E**

0079466

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# Monsanto

**PURCHASE ORDER**

PURCHASE ORDER NO

Research Center Purchasing Department
800 North Lindbergh Blvd.,
Saint Louis, Missouri 63166

RECEIVED
SEP 29 1975
UNIVERSAL MFG. CORP.

**IMPORTANT INSTRUCTIONS**

1. SHIP TO: MONSANTO COMPANY
RESEARCH CENTER - BLDG. S
800 NORTH LINDBERGH BLVD.
ST. LOUIS, MISSOURI 63166
ATT DR. RALPH MUNCH

2. SHIPPING INST.: PLEASE SHOW ORDER NUMBER ON EACH INVOICE, PACKAGE, BILL OF LADING & SHIPPING NOTICE. DELIVER BETWEEN 8:00 A.M. TO 3:00 P.M. MONDAY THRU FRIDAY. SHIP CHEAPEST ROUTING UNLESS OTHERWISE SPECIFIED. ON LOCAL DELIVERIES BURDEN DER DELIVERY TICKET.

3. BILLING INST.: MAIL TO: MONSANTO COMPANY
800 NO. LINDBERGH
ST. LOUIS, MO. 63166
ATTN: ACCTS. PAYABLE-BLDG. G-3-N
SEND BILL OF LADING IN DUPLICATE. INVOICE IN DUPLICATE. PRICING EACH ITEM SEPARATELY.

| DATE | FOB & FREIGHT | ROUTE | TERMS | DELIVERY DATE |
|------|---------------|-------|-------|---------------|
| | | | | |

| ITEM NO. | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE |
|----------|----------|------|-------------|------------|
| 1 | 5,000 | | 2 mil'd unimpregnated capacitor | NOTE: THESE ARE |
| | | | Wind with two layers .00005" paper | FOR FOR USE AS TEST |
| cc | GDR | | | VEHICLES IN MONSANTO |
| | Erwin | | | DEVELOPMENT WORK |
| | Man | | | ON NEW CAPACITOR |
| | JMP | | | IMPREGNANTS. |
| | C.Hughes | | | |
| | V Sigona | | | |
| | M Mathewson | | | |
| | M Blair | | | |
| 2 | | | | |
| | | | | |
| | | | | LOT | |

**CONFIRMATION** (DO NOT DUPLICATE)

SALES TAX APPLIES:    USE TAX APPLIES:    TAX EXEMPT

BY SHIPPING THE ABOVE GOODS OR BY ACKNOWLEDGING RECEIPT OF THIS ORDER, HEREAFTER CALLED "CONTRACT," YOU AGREE TO THE TERMS AND CONDITIONS SET FORTH ON THE FACE SIDE AND THE REVERSE SIDE HEREOF. ANY DIFFERENT OR ADDITIONAL TERMS IN YOUR ACCEPTANCE OF THIS OFFER ARE HEREBY OBJECTED TO.

SHIP ASAP
TARGET : OCT 6

9/29/75

**MONSANTO COMPANY**

BY

314-694-1000

**ORIGINAL PURCHASE ORDER**

EXHIBIT E   0079377

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Capacitor Division*

UNIVERSAL MANUFACTURING CORP.



902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607
(203) 336-0161

October 6, 1975

Dr. Ralph Munch
Monsanto Company
Research Center
800 North Lindbergh Blvd.
St. Louis, Mo. 63166

Dear Ralph:

    The capacitors being supplied to your attention, on Monsanto purchase order RC 92661 are wound with foil from Robert Victor Neher, Release #11, 1974, and with .0005" paper from Peter J. Schweitzer Lot 15533-2, Set A4489-F.

    I hope they will be satisfactory for your purposes.

                Best regards,

                CAPACITOR DIVISION
                Universal Manufacturing Corp.

                N. Ray Clark, Vice President

NRC/h

EXHIBIT E   0079379

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



## UNIVERSAL MANUFACTURING CORPORATION

29-51 EAST SIXTH STREET, PATERSON, NEW JERSEY 07509 • PHONE: (201) 271-3100 • TWX NO. 710 988-5934

January 7, 1972

Mr. H.S. Bergen
Monsanto Company
P.O. Box 14617
St. Louis, Missouri  63178

Dear Mr. Bergen:

Enclosed is the undertaking you requested in connection
with our purchase of PCB.  As previously discussed, we
are executing the undertaking in our own name and are
excepting any liability arising from failure of the
product to conform to specifications.

This undertaking will be covered by a blanket liability
policy with the Travelers Insurance Company having limits
of 10 million dollars.  As of December 31, 1970, Universal's
consolidated net worth was 16.8 million and its current
ratio was 1.7 to 1.

Very truly yours,

UNIVERSAL MANUFACTURING CORPORATION

Paul H. Einhorn
President

PHE/paz

0422916

EXHIBIT F

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# THE TRAVELERS
## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

1. Name and address of party to whom this certificate is issued

Mr. H. S. Bergen
Director-Special E Products Group
Monsanto Industrial Chemical Co.
Post Office Box 14617
St. Louis, Missouri 63178

2. Name and address of insured

Universal Manufacturing Corp.
c/o Northwest Industries, Inc.
400 West Madison Street
Chicago, Illinois 60606

3. Location of operations to which this certificate applies
Anywhere in the U.S.A.

4. Coverages For Which Insurance is Afforded

| Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation—Statutory | | |
| Bodily Injury Liability —except automobile | $ * | TRNSL-909307-71 | 10/1/71 to 10/1/72 |
| | $ ,000 each person | | |
| | $ ,000 each occurrence | | |
| | $ ,000 aggregate† | | |
| cluding Protective | †Completed Operations and Products only | | |
| Property Damage Liability —except automobile | $ * | | |
| | $ ,000 each occurrence | | |
| cluding Protective | $ ,000 aggregate | | |
| Bodily Injury Liability —automobile | $ ,000 each person | *$10,000,000 Combined Single Limit | |
| | $ ,000 each accident | | |
| | $ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident | | |
| | $ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence | | |
| | $ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence | | |
| | $ ,000 each aggregate | | |
| | $ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Blanket Contractual Liability Coverage

0422922

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

Producer  Marsh & McLennan, Inc.
Office  Chicago        Date 1/17/72
C-5918  REV. 7-68  PRINTED IN U.S.A. 1268

By _____
Authorized Representative

**EXHIBIT G**

**THE TRAVELERS**

## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Mr. H. S. Bergen<br>Monsanto Industries<br>800 North Linbergh Boulevard<br>St. Louis, Missouri 63166 | Universal Manufacturing Corp.<br>c/o Northwest Industries, Inc.<br>400 West Madison Street<br>Chicago, IL 60606 |

3. Location of operations to which this certificate applies
    Anywhere in the U.S.A.

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in item 3 hereof | Compensation- Statutory | | |
| Bodily Injury Liability —except automobile | $ * ,000 each person<br>$ ,000 each occurrence<br>$ ,000 aggregate†<br>†Completed Operations and Products only | TRNSL-909307-72 | 10/1/72 to 10/1/73 |
| ...cluding Protective | | | |
| Property Damage Liability —except automobile | $ * ,000 each occurrence<br>$ ,000 aggregate | | |
| ...cluding Protective | | | |
| Bodily Injury Liability —automobile | $ ,000 each person<br>$ ,000 each accident<br>$ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident<br>$ ,000 each occurrence | *$10,000,000 Combined Single Limit | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence<br>$ ,000 each aggregate<br>$ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

    Blanket Contractual Liability Coverage        0422911

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.
Producer Marsh & McLennan, Inc.      Office Chicago      Date 9/15/72
EQUITABLE FIRE AND MARINE INSURANCE COMPANY

By _Anderson_
Secretary, Casualty-Property Department
C-3018 Rev. 7-68 PRINTED IN U.S.A. 371

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Lammann_
Secretary, Casualty-Property Department

**EXHIBIT G**

# THE TRAVELERS
## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

**1. Name and address of party to whom this certificate is issued**

Mr. H. S. Bergen
Monsanto Industries
800 North Linbergh Boylevard
St. Louis, Missouri 63166

**2. Name and address of insured**

Universal Manufacturing Corp.
c/o Northwest Industries, Inc.
400 West Madison Street
Chicago, IL 60606

*approved for $10 million*
*R B Chapman*
*9/27/73.*

**3. Location of operations to which this certificate applies**

Anywhere in the U.S.A.

**4. Coverages For Which Insurance is Afforded**

| Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation Statutory | | |
| Bodily Injury Liability —except automobile | $ * ,000 each person | TRNSL106T220-9-73 | 10/1/73 to 10/1/74 |
| | $ ,000 each occurrence | | |
| | $ ,000 aggregate† | | |
| cluding Protective | {Completed Operations and Products only | | |
| Property Damage Liability —except automobile | $ * ,000 each occurrence | | |
| cluding Protective | $ ' ,000 aggregate | | |
| Bodily Injury Liability —automobile | $ ,000 each person | | |
| | $ ,000 each accident | | |
| | $ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident | *$10,000,000 Combined Single Limit | |
| | $ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence | | |
| | $ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence | | |
| | $ ,000 each aggregate | | |
| | $ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Blanket Contractual Liability Coverage

0422903

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

Producer Marsh & McLennan, Inc.      Office Chicago      Date 9/24/73
EQUITABLE FIRE AND MARINE INSURANCE COMPANY

By _Anderson_

Secretary, Casualty-Property Department
C-5919 Rev. 7-68 PRINTED IN U.S.A. 321

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Kemmann_

Secretary, Casualty-Property Department

**EXHIBIT G**

# THE TRAVELERS
## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Mr. H. S. Bergen<br>Monsanto Industries<br>800 North Linbergh Boulevard<br>St. Louis, Missouri 63116 | Universal Manufacturing Corp.<br>c/o Northwest Industries, Inc.<br>6300 Sears Tower<br>Chicago, Il. 60606 |

3. Location of operations to which this certificate applies

Anywhere in the U.S.A.

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in item 3 hereof | Compensation--Statutory | | |
| Bodily Injury Liability —except automobile<br>...cluding Protective | $ * ,000 each person<br>$ ,000 each occurrence<br>$ ,000 aggregate†<br>†Completed Operations and Products only | TRNSL106T220-9-73 | 10/1/74 to 10/1/75 |
| Property Damage Liability —except automobile<br>...cluding Protective | $ * ,000 each occurrence<br>$ ,000 aggregate | | |
| Bodily Injury Liability —automobile | $ ,000 each person<br>$ ,000 each accident<br>$ ,000 each occurrence | *$10,000,000 Combined | Single Limit |
| Property Damage Liability —automobile | $ ,000 each accident<br>$ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence<br>$ ,000 each aggregate<br>$ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.

Description of Operations, or Automobiles to which the policy applies:

Blanket Contractual Liability Coverage

0047245

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

Producer  Marsh & McLennan, Inc.          Office  Chicago          Date  9/15/74

EQUITABLE FIRE AND MARINE INSURANCE COMPANY

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Anderson_
Secretary, Casualty-Property Department

EXHIBIT G

By _Kennann_
Secretary, Casualty-Property Department

C-5918  Rev. 7-68  PRINTED IN U.S.A.  321

# THE TRAVELERS

## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Mr. H. S. Bergen<br>Monsanto Industries<br>800 North Linberg Boulevard<br>St. Louis, Missouri   63116 | Universal Manufacturing Corp.<br>c/o Northwest Industries, Inc.<br>6300 Sears Tower<br>Chicago, Illinois   60606 |

3. Location of operations to which this certificate applies

Anywhere in the U.S.A.

| 4. Coverages For Which Insurance Is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation—Statutory | | |
| Bodily Injury Liability —except automobile | $ (,000 each person<br>$ (,000 each occurrence<br>$ (,000 aggregate† | TRNSL106T220-9-73 | 10/1/75 to 10/1/76 |
| cluding Protective | $10,000,000 ( †Completed Operations and Products only<br>Combined | | |
| Property Damage Liability —except automobile | $ingle (,000 each occurrence<br>Limit (,000 aggregate | | |
| cluding Protective | | | |
| Bodily Injury Liability —automobile | $ ,000 each person<br>$ ,000 each accident<br>$ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident<br>$ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence<br>$ ,000 each aggregate<br>$ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Blanket Contractual Liability Coverage

0422896

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

Producer   Marsh & McLennan, Inc.        Office   Chicago        Date 9/15/75
EQUITABLE FIRE AND MARINE INSURANCE COMPANY        THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _____
Secretary, Casualty-Property Department        **EXHIBIT G**        By _____
Secretary, Casualty-Property Department

C-5018  Rev. 7-68  PRINTED IN U.S.A   371

# THE TRAVELERS

## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Monsanto Industrial Chemicals Co.<br>800 N. Lindbergh Boulevard<br>St. Louis, Missouri 63166<br><br>Attn: Mr. James A. Alley | Universal Manufacturing Corp.<br>c/o Northwest Industries, Inc.<br>6300 Sears Tower<br>Chicago, IL 60606 |

3. Location of operations to which this certificate applies

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation Statutory | | |
| Bodily Injury Liability —except automobile | $ ,000 each person<br>$ ,000 each occurrence<br>$ ,000 aggregate†<br>$10,000,000 Combined Single Limit (†Completed Operations and Products only | TRNSL-106T220-9-76 | 10-1-77 to 10-1-78 |
| Property Damage Liability —except automobile<br>Including Protective | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Bodily Injury Liability —automobile | $ ,000 each person<br>$ ,000 each accident<br>$ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident<br>$ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence<br>$ ,000 each aggregate<br>$ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Includes blanket contractual liability.

0422876

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.
Producer Marsh & McLennan, Inc.    Office CHI 033    Date 9-15-77
EQUITABLE FIRE AND MARINE INSURANCE COMPANY

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Anderson_
Secretary, Casualty-Property Department

**EXHIBIT G**

By _Lammann_
Secretary, Casualty-Property Department

C-5919  Rev. 7-66  PRINTED IN U.S.A.  371

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**UNIVERSAL MANUFACTURING CORPORATION**

29-51 EAST SIXTH STREET, PATERSON, NEW JERSEY 07509 • PHONE: (201) 271-3100 • TWX NO. 710 988-5934

September 26, 1974

Mr. H.S. Bergen
Monsanto Industries
800 N. Linbergh Boulevard
St. Louis, Missouri 63116

Dear Mr. Bergen:

Enclosed please find the current Certificate of Insurance

indicating coverage from 10/1/74 to 10/1/75.

Sincerely yours,

UNIVERSAL MANUFACTURING CORP.

Jules Schwartz
Eastern Regional Sales Manager

JS/paz

Enclosure

0047244

EXHIBIT H

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



# UNIVERSAL MANUFACTURING CORPORATION

29-51 EAST SIXTH STREET, PATERSON, NEW JERSEY 07509 • PHONE: (201) 271-3100 • TWX NO. 710 988-5934

September 23, 1976

Mr. R. G. Potter
Monsanto Industrial Chemicals Co.
800 N. Lindbergh Boulevard
St. Louis, Missouri  63166

Dear Mr. Potter:

Enclosed please find a Certificate of Insurance for
the period 10/01/76 to 10/01/77.

Very truly yours,

UNIVERSAL MFG. CORPORATION

*Thomas A. Basilo*

Thomas A. Basilo
Controller

TAB/pjh
Enc.

0422892

# THE TRAVELERS
## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

1. Name and address of party to whom this certificate is issued

Monsanto Industrial Chemicals Co.
800 N. Lindbergh Boulevard
St. Louis, Missouri  63166

Atten:  Mr. R. G. Potter

2. Name and address of insured

Universal Manufacturing Corp.
c/o Northwest Industries, Inc.
6300 Sears Tower
Chicago, Illinois  60606

3. Location of operations to which this certificate applies

Anywhere in the U.S.A.

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation  Statutory | | |
| Bodily Injury Liability —except automobile | $ .           ( 000 each person<br>$ .           ( 000 each occurrence<br>$ .           ( 000 aggregate‡<br>(‡Completed Operations and Products only | TRNSL106T220-9-76 | 10/1/76 to 10/1/77 |
| $10,000,000 cluding Protective  Combined | | | |
| Property Damage Liability —except automobile  Single Limit | ( .<br>$ .           ( 000 each occurrence | | |
| cluding Protective | $ .           ( 000 aggregate | | |
| Bodily Injury Liability —automobile | $ .           , 000 each person<br>$ .           , 000 each accident<br>$ .           , 000 each occurrence | | |
| Property Damage Liability —automobile | $ .           , 000 each accident<br>$ .           , 000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ .           , 000 each occurrence<br>$ .           , 000 aggregate | | |
| Catastrophe or Excess | $ .           , 000 each occurrence<br>$ .           , 000 each aggregate<br>$ .           , 000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.

Description of Operations, or Automobiles to which the policy applies:

Includes blanket contractual liability and pollution coverage in case of sudden and accidental spill.

0422893

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

REVISED

Producer  Marsh & McLennan, Inc.        Office  Chicago        Date 9/17/76

EQUITABLE FIRE AND MARINE INSURANCE COMPANY

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _A. Anderson_

Secretary, Casualty-Property Department

By _W. Kammann_

Secretary, Casualty-Property Department

EXHIBIT H

C-3018  Rev. 7-65  PRINTED IN U.S.A.  371

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## UNIVERSAL MANUFACTURING CORPORATION

29-51 EAST SIXTH STREET, PATERSON, NEW JERSEY 07509 • PHONE: (201) 271-3100 • TWX NO. 710 988-5934

May 31, 1977

Mr. J.A. Alley
Monsanto Industrial Chemicals Co.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166

Dear Mr. Alley:

We have your letter of March 24, 1977 with respect to the expiration of our liability coverage on October 1, 1977.

Our insurance company has just informed us that a renewal certificate will be mailed to us by September 1, 1977 and we expect to have it delivered to you no later than September 10th.

Thank you for calling this renewal to our attention.

Very truly yours,

UNIVERSAL MANUFACTURING CORPORATION

Paul H. Einhorn
President

PHE:gk

0422882

EXHIBIT H

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**TRAVELERS**

## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Monsanto Industrial Chemicals Co. 800 N. Lindbergh Boulevard St. Louis, Missouri 63166 Attn: Mr. James A. Alley | Universal Manufacturing Corp. c/o Northwest Industries, Inc. 6300 Sears Tower Chicago, IL 60606 |

3. Location of operations to which this certificate applies

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation Statutory | | |
| Bodily Injury Liability —except automobile | $ ( ,000 each person $ ( ,000 each occurrence ( ,000 aggregate† (Completed Operations and Products only | TRNSL-106T220-9-76 | 10-1-77 to 10-1-78 |
| **$10,000'000** In cluding Protective | **Combined Single Limit** | | |
| Property Damage Liability —except automobile | ( ,000 each occurrence ( ,000 aggregate | | |
| In cluding Protective | | | |
| Bodily Injury Liability —automobile | $ ,000 each person $ ,000 each accident $ ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident $ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence $ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence $ ,000 each aggregate $ ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Includes blanket contractual liability.

0422881

The insurance afforded is subject to all of the terms of the policy, including endorsement's, applicable thereto.
Producer Marsh & McLennan, Inc.    Office CHI 033    Date 9-15-77
EQUITABLE FIRE AND MARINE INSURANCE COMPANY

By _____
Secretary, Casualty-Property Department
CM-18 Rev. 7-66

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _____
Secretary, Casualty-Property Department

**EXHIBIT H**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**NORTHWEST INDUSTRIES,** INC.

*400 West Madison Street, Chicago, Illinois 60606*
*Telephone 312  263-4200*

January 17, 1972

AIR MAIL

Mr. H. S. Bergen
Director-Special E
    Products Group
Monsanto Industrial Chemical Co.
Post Office Box 14617
St. Louis, Missouri  63178

Dear Mr. Bergen:

  In furtherance of the undertaking
between your company and our Universal Manufac-
turing Corporation, I am enclosing Certificate
of Insurance as indicated in Mr. Einhorn's
letter of January 7.

  If we can be of further assistance,
please do not hesitate to ask.

    Yours very truly,

    Robert R. Smith
    Insurance Manager

RRS/rl
Enclosure
cc:  Mr. Paul Einhorn
  Mr. Clyde Schoenneman

0422918

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Certificate of Insurance**

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

| 1. Name and address of party to whom this certificate is issued | 2. Name and address of insured |
|---|---|
| Mr. H. S. Bergen<br>Director-Special E Products Group<br>Monsanto Industrial Chemical Co.<br>Post Office Box 14617<br>St. Louis, Missouri 63178 | Universal Manufacturing Corp.<br>c/o Northwest Industries, Inc.<br>400 West Madison Street<br>Chicago, Illinois 60606 |

3. Location of operations to which this certificate applies

Anywhere in the U.S.A.

| 4. Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation- Statutory | | |
| Bodily Injury Liability —except automobile | $ ,000 each person<br>$ ,000 each occurrence<br>$ ,000 aggregate‡<br>‡Completed Operations and Products only | TRNSL-909307-71 | 10/1/71 to 10/1/72 |
| cluding Protective | | | |
| Property Damage Liability —except automobile | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| cluding Protective | | | |
| Bodily Injury Liability —automobile | $ ,000 each person<br>$ ,000 each accident<br>$ ,000 each occurrence | *$10,000,000 Combined Single Limit | |
| Property Damage Liability —automobile | $ ,000 each accident<br>$ ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence<br>$ ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence<br>$ ,000 each aggregate<br>$ ,000 deductible amt. | 0422919 | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M. standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Blanket Contractual Liability Coverage  1/25/72 - Talked with
*mr. Smith, N.W. Industries has coverage*
*for accidental pollution. Except endorsement*
*excluding emissions, seepage.*

The Insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

Producer. Marsh & McLennan, Inc.
Office  Chicago        Date 1/17/72

By  _____
Authorized Representative

C-3919  REV. 7-65  PRINTED IN U.S.A. 1268

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# NORTHWEST INDUSTRIES, INC.

400 West Madison Street, Chicago, Illinois 60606
Telephone 312 263-4200

September 22, 1972

Mr. H. S. Bergen
Monsanto Industries
800 North Linbergh Boulevard
St. Louis, Missouri  63166

Dear Mr. Bergen:

Enclosed is the Certificate of Insurance which you
requested from Universal Manufacturing Corporation
earlier this month.

Yours very truly,

Robert H. Smith
Insurance Manager

RHS:dh

Enclosure

0422912

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# Northwest Industries, Inc

6300 Sears Tower Chicago, Illinois 60606
312/876-7000

September 2, 1977

RE: Certificate of Insurance
    Universal Manufacturing Corporation

Dear Mr. Alley:

In accordance with your request of Mr. Einhorn of
Universal, I am enclosing herewith Travelers
Certificate of Insurance evidencing coverage
effective October 1, 1977.

Very truly yours,

Robert H. Smith
Mgr. Cas./Prop. Ins.


Mr. James A. Alley
Monsanto Industrial Chemicals Co.
800 N. Lindbergh Boulevard
St. Louis, Missouri  63166

RHS:gaj

Enclosure

cc:  Mr. Paul Einhorn
     Ms. Chestina Hughes

0422875

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# THE TRAVELERS

## Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

1. Name and address of party to whom this certificate is issued

┌ Monsanto Industrial Chemicals Co.
─ 800 N. Lindbergh Boulevard
  St. Louis, Missouri  63166

  Attn: Mr. James A. Alley

└

2. Name and address of insured

Universal Manufacturing Corp.
c/o Northwest Industries, Inc.
6300 Sears Tower
Chicago, IL  60606

3. Location of operations to which this certificate applies

4.

| Coverages For Which Insurance is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation Statutory | | |
| Bodily Injury Liability —except automobile | $ ,000 each person / ,000 each occurrence / ,000 aggregate† | TRNSL-106T220-9-76 | 10-1-77 to 10-1-78 |
| Including Protective $10,000 ,000 Combined Single Limit | †Completed Operations and Products only | | |
| Property Damage Liability —except automobile | ( | | |
| Including Protective | $ ,000 each occurrence / ,000 aggregate | | |
| Bodily Injury Liability —automobile | $ ,000 each person / ,000 each accident / ,000 each occurrence | | |
| Property Damage Liability —automobile | $ ,000 each accident / ,000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ ,000 each occurrence / ,000 aggregate | | |
| Catastrophe or Excess | $ ,000 each occurrence / ,000 each aggregate / ,000 deductible amt. | | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.
Description of Operations, or Automobiles to which the policy applies:

Includes blanket contractual liability.

0422876

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

Producer Marsh & McLennan, Inc.    Office CHI 033    Date 9-15-77
EQUITABLE FIRE AND MARINE INSURANCE COMPANY

By _A. M. Pearson_
        Secretary, Casualty-Property Department

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Zimmermann_
        Secretary, Casualty-Property Department

C-5048  Rev. 1-68  printed in u.s.a.  371

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# Northwest Industries, Inc.
6300 Sears Tower Chicago, Illinois 60606
312/876-7000

September 12, 1977

RE: Certificate of Insurance
    Universal Manufacturing Corporation

Dear Mr. Alley:

Enclosed is the above certificate revised in line with our telephone conversation Friday.

We trust this is satisfactory.

Very truly yours,

Robert H. Smith
Mgr. Cas./Prop. Ins.


Mr. James A. Alley
Monsanto Industrial Chemicals Co.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166

Attn: Ms. Terry Carter


cc: Mr. Paul Einhorn
    Ms. Chestina Hughes

RHS:gaj

Enclosure

0422868

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# THE TRAVELERS
### Certificate of Insurance

This is to certify that policies of insurance as described below have been issued to the insured named below and are in force at this time. If such policies are canceled or changed during the periods of coverage as stated herein, in such a manner as to affect this certificate, written notice will be mailed to the party designated below for whom this certificate is issued.

1. Name and address of party to whom this certificate is issued

    Monsanto Industrial Chemicals Co.
    800 N. Lindbergh Boulevard
    St. Louis, Missouri  63166

    Attn: Mr. James A. Alley

2. Name and address of insured

Universal Manufacturing Corp.
c/o Northwest Industries, Inc.
6300 Sears Tower
Chicago, Illinois 60606

3. Location of operations to which this certificate applies

| 4. Coverages For Which Insurance Is Afforded | Limits of Liability | Policy Number | Policy Period** |
|---|---|---|---|
| Workmen's Compensation and Employers' Liability in the state named in Item 3 hereof | Compensation—Statutory | | |
| Bodily Injury Liability —except automobile | $ * <br> $ ( 000 each person <br> $ ( 000 each occurrence <br> $ ( 000 aggregate | TRNSL-106T220-9-76 | 10/1/77 to 10/1/78 |
| Including Protective **$10,000,000 Combined** | (Completed Operations ( and Products only | | |
| Property Damage Liability —except automobile **Single Limit** | ( <br> $ ( 000 each occurrence | | |
| Including Protective | $ ( 000 aggregate | | |
| Bodily Injury Liability —automobile | $ * <br> $ , 000 each person <br> $ , 000 each accident <br> , 000 each occurrence | | |
| Property Damage Liability —automobile | $ * <br> $ , 000 each accident <br> $ , 000 each occurrence | | |
| Liability (Bodily Injury and Property Damage) | $ , 000 each occurrence <br> $ , 000 aggregate | | |
| Catastrophe or Excess | $ , 000 each occurrence <br> $ , 000 each aggregate <br> $ , 000 deductible amt. | 0422869 | |

*Absence of an entry in these spaces means that insurance is not afforded with respect to the coverages opposite thereto.
**Policy is effective and expires at 12:01 A.M., standard time at the address of the named insured as stated herein.

Description of Operations, or Automobiles to which the policy applies:

    Includes blanket contractual liability and pollution coverage
    in case of sudden and accidental spill (as per attached).

The insurance afforded is subject to all of the terms of the policy, including endorsements, applicable thereto.

REVISED

Producer   Marsh & McLennan, Inc.    Office  Chi 033    Date 9/15/77

EQUITABLE FIRE AND MARINE INSURANCE COMPANY

By _A. nf. ceason_

    Secretary, Casualty-Property Department

C-3918  Rev. 2-68  PRINTED IN U.S.A.  571

THE TRAVELERS INSURANCE COMPANY
THE TRAVELERS INDEMNITY COMPANY
THE CHARTER OAK FIRE INSURANCE COMPANY

By _Kammann_

    Secretary, Casualty-Property Department

EXHIBIT I

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

THE TRAVELERS INSURANCE COMPANIES

This endorsement is issued by that member of The Travelers Insurance Companies which issued the policy of which this endorsement forms a part.

If any additional premium is noted below, this endorsement is issued in consideration thereof. If any return premium is noted below, the receipt thereof is acknowledged upon acceptance of this endorsement.

Effective from... OCT 1 1974 ..... at the time of day the policy becomes effective. Amending Policy No... TJ-SPL-106T222-2-74
    (Month, Day, Year)

Issued to . NORTHWEST INDUSTRIES INC AS DEFINED HEREIN

Date of Issue:    7-2-75 CFH/BK    Additional Premium $    Return Premium $

(The information provided for above, except the policy number, is required to be stated only when this endorsement is issued for attachment to the policy subsequent to its effective date.)

It is agreed that as of the effective date hereof the policy is amended in the following particulars:

EXCLUSION (i) IS AMENDED TO READ:

(1) TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF ANY EMISSION, DISCHARGE, SEEPAGE, RELEASE OR ESCAPE OF ANY LIQUID, SOLID, GASEOUS OR THERMAL WASTE OR POLLUTANT

    (i) IF SUCH EMISSION, DISCHARGE, SEEPAGE, RELEASE, OR ESCAPE IS EITHER EXPECTED OR INTENDED FROM THE STANDPOINT OF ANY INSURED OR ANY PERSON OR ORGANIZATION FOR WHOSE ACTS OR OMISSIONS ANY INSURED IS LIABLE, OR

    (ii) RESULTING FROM OR CONTRIBUTED TO BY ANY CONDITION IN VIOLATION OF OR NON-COMPLIANCE WITH ANY GOVERNMENTAL RULE, REGULATION OR LAW APPLICABLE THERETO;

(2) TO PROPERTY DAMAGE ARISING OUT OF ANY EMISSION, DISCHARGE, SEEPAGE, RELEASE OR ESCAPE OF PETROLEUM OR PETROLEUM DERIVATIVES FROM ANY STORAGE TANK, BARGE OR OTHER VESSEL INTO ANY BODY OF WATER, BUT THIS EXCLUSION (2) DOES NOT APPLY TO PROPERTY DAMAGE RESULTING FROM FIRE OR EXPLOSION ARISING OUT OF ANY EMISSION, DISCHARGE, SEEPAGE, RELEASE OR ESCAPE WHICH NEITHER

    (i) IS EXPECTED OR INTENDED FROM THE STANDPOINT OF ANY INSURED OR ANY PERSON OR ORGANIZATION FOR WHOSE ACTS OR OMISSIONS ANY INSURED IS LIABLE, NOR

    (ii) RESULTING FROM OR IS CONTRIBUTED TO BY ANY CONDITION IN VIOLATION OF OR NON-COMPLIANCE WITH ANY GOVERNMENTAL RULE, REGULATION OR LAW APPLICABLE THERETO.

0422870

Serial No.
B000

G-15929. New 6-74 (10x)(12-w) w.l.a.    Countersigned By

EXHIBIT I

bcc: J. Alley
C. Jordan
G. Swallow-B2NK
C. Paton
D. Wood
E. M. Potter-B2NK
Redbook

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## Monsanto

SPECIALTY CHEMICALS DIVISION

**MONSANTO INDUSTRIAL CHEMICALS CO.**
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

September 1, 1976

Mr. Paul H. Einhorn, President
Universal Mfg. Corporation
29-51 East Sixth Street
Paterson, N. J. 07509

Dear Mr. Einhorn:

Special Undertaking By Purchasers of
Polychlorinated Biphenyls (PCBs)

You will recall that our ability to supply polychlorinated
biphenyls to your company and/or subsidiaries under the
Special Undertaking was contingent on your having specified
product liability insurance coverage.

According to our records, the insurance certificate on file
with our Company will expire on October 1, 1976. In order
for us to continue shipment of PCB dielectric fluids, it
will be necessary for us to receive a renewal certificate
prior to the above date.

We would also like to remind you that the insurance we require
in support of your Special Undertaking is $10,000,000 if your
annual purchases are 200,000 pounds or over and $5,000,000 if
your annual purchases are under 200,000 pounds. All insurance
certificates must also contain the clause, "Includes blanket
contractual liability and pollution coverage in case of sudden
and accidental spill".

Please send the insurance certificate addressed to my attention.

Very truly yours,

R. G. Potter
Business Director
Functional Products

/dcb

0422894

a unit of Monsanto Company.

EXHIBIT J

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Monsanto

—————————————————————— *SPECIALTY CHEMICALS DIVISION*

**MONSANTO INDUSTRIAL CHEMICALS CO.**
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

March 24, 1977

Mr. Paul H. Einhorn, President
Universal Manufacturing Corporation
29-51 E. Sixth Street
Paterson, N.J. 07509

Dear Mr. Einhorn:

This letter is being sent to you well ahead of the expiration date
for the liability coverage which Monsanto requires in order for
your company to purchase PCB's. Our records indicate that the
insurance certificate on file with Monsanto will expire on October
1, 1977.

As you know, Monsanto has announced it will withdraw as a supplier
of PCB's by October 31, 1977. In order for us to continue shipment of
PCB dielectric fluids up to our phase-out date, it will be necessary
for Monsanto to receive an insurance renewal certificate prior to
the above date.

In the past we have experienced difficulties with customers and their
insurance companies in getting the correct insurance documentation.
As the phase-out deadline of October 31st approaches, you as a user
of the dielectric fluid probably cannot afford any inordinate delays
in obtaining coverage. Therefore, I want to offer the suggestion
that you take early action to obtain the appropriate renewal.

Attached is the letter we send to you several weeks before the
expiration of your insurance. This letter outlines the requirements
as to the amount of coverage and the clause which must be on the
certificate.

Your early attention to this matter is appreciated.

Sincerely,

J. A. Alley
Industry Specialist
Dielectrics

tmc
cc: Mr. Ed Wickson, P. A.                                      0422883

a unit of Monsanto Company

EXHIBIT J

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Monsanto

SPECIALTY CHEMICALS DIVISION

MONSANTO INDUSTRIAL CHEMICALS CO.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

August 2, 1977

Mr. Paul H. Einhorn, President
Universal Manufacturing Company
29-51 East Sixth Street
Paterson, New Jersey 07509

Dear Mr. Einhorn:

Re:  Special Undertaking by Purchasers of Polychlorinated Biphenyls (PCB's)

You will recall that our ability to supply polychlorinated biphenyls to your
company and/or subsidiaries under the Special Undertaking was contingent
on your having specified product liability insurance coverage.

According to our records, the insurance certificate on file with our Company
will expire on 10/01/77.  In order for us to continue shipment of PCB
dielectric fluids, it will be necessary for us to receive a renewal certifi-
cate prior to the above date.

We would also like to remind you that the insurance we require in support
of your Special Undertaking is $10,000,000 if your annual purchases are
200,000 pounds or over and $5,000,000 if your annual purchases are under
200,000 pounds.  All insurance certificates must also contain the clause,
"Includes blanket contractual liability and pollution coverage in case of
sudden and accidental spill."

Please send the insurance certificate addressed to my attention.

Yours very truly,

James A. Alley
Industry Specialist
Dielectrics

imc
cc:  Mr. R. Ray Clark, Vice President

0422878

a unit of Monsanto Company

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

PGB
G. R. Graham – New York


September 16, 1970


Mr. Glen Rayno
Electronic Components Division
Universal Manufacturing Corporation
902 Crescent Avenue
Bridgeport, Connecticut 06602

Dear Glen:

It was certainly our pleasure to have you and Mike visit with us
here in St. Louis last Tuesday and Wednesday.  As a follow-up
to your request, I have attached several copies of February 9
and 18 letters by D. A. Olson on PCB pollution.

If we can be of further assistance, please feel free to call
upon us.

Regards,


J. G. (Jim) Bryant

lb

Attach.


EXHIBIT K    0457609

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

February 25, 1974

Mr. N. R. Clark
Universal Manufacturing Company
902 Crescent Avenue
Bridgeport, Connecticut 06607

Dear Mr. Clark:

This is to confirm that a meeting will be held in St. Louis for the discussion of the proposed EPA polychlorinated biphenyl effluent standards as published in the Federal Register, December 27, 1973.

The meeting will be held at Monsanto's General Offices site at 800 North Lindbergh Boulevard in the "N" Building, Room 118, on Thursday, February 28, at 9:00 a.m. This meeting will probably require a full day, therefore, travel arrangements should be made accordingly.

Sincerely,

W. B. Papageorge
Manager
Product Acceptability

WBP/bt

0004312

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# Monsanto

MONSANTO INDUSTRIAL CHEMICALS CO.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

March 7, 1974

Mr. N. R. Clark
Universal Manufacturing Co.
902 Crescent Avenue
Bridgeport, Connecticut

Dear Mr. Clark:

We thank you for taking the time to attend the PCB
Effluent Standards meeting on February 28. We enclose
the Minutes of our meeting and hope they accurately
reflect the discussions and proposed actions. Should
you have any questions regarding the forthcoming EPA
Hearing on the Effluent Standards as they affect PCBs
please do not hesitate to get in touch with our
Mr. W. B. Papageorge. His telephone number is (314)
694-4051.

Very truly yours,

C. Paton
Product Manager
Fluids

/pep

cc: W. B. Papageorge
bcc: P. G. Benignus
     T. L. Gossage
     P. L. Slayton
     J. G. Bryant

0070441

a unit of Monsanto Company        EXHIBIT L

MINUTES OF MEETING

ON

PROPOSED PCB EFFLUENT STANDARDS

February 28, 1974

Monsanto Company
St. Louis, Mo.

0070444

**EXHIBIT L**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

<u>Chairman</u>:  Mr. W. B. Papageorge
              Manager, Product Acceptability
              Monsanto Industrial Chemicals Co.

<u>Objective</u>:

The purpose of the meeting was to share
information, experiences and impressions to
help each of the participating companies in
taking appropriate actions which are mutually
supportive and effective in persuading the
Administration of EPA to modify the proposed PCB
Effluent Standard.

0070445

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

PARTICIPANTS

PCB STANDARDS MEETING

February 28, 1974

CERTIFIED BALLAST MANUFACTURERS

    Mr. N. R. Clark              Universal Manufacturing Co.

E.I.A.

    Mr. Arnold S. Doty        P. R. Mallory & Co., Inc.
    Dr. E. M. Moore           Electrical Utilities Co.
    Mr. Rudy Carlson         Electrical Utilities Co.

GENERAL ELECTRIC COMPANY

    Mr. James S. Nelson
    Mr. Stuart Richel
    Dr. Edward L. Simons

JARD COMPANY, INC.

    Mr. Richard Rollins

NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION (NEMA)

    Mr. A. M. Salazar

WESTINGHOUSE CORPORATION

    Mr. H. Sheppard
    Mr. N. H. Smith

0070446

EXHIBIT L

MONSANTO COMPANY

| | |
|---|---|
| P. G. Benignus | Market Manager |
| H. S. Bergen | Business Director |
| D. B. Hosmer | Utilities and Environmental Protection Director |
| R. H. Munch | Senior Science Fellow |
| W. B. Papageorge | Manager, Product Acceptability |
| W. W. Withers | Attorney |
| C. Paton | Product Manager |
| W. R. Richard | Manager, Research and Development |
| J. R. Savage | Manager, Manufacturing |
| E. S. Tucker | Research Group Leader |
| P. L. Wright | Manager, Toxicology |

0070447

EXHIBIT L

## AGENDA

### PCB EFFLUENT STANDARDS MEETING

#### February 28, 1974

| 9:00 AM | 1. Welcome – H. S. Bergen |
| 9:10 AM | 2. Introductory Remarks – W. B. Papageorge |
| | a. Brief Review of Proposed Standard |
| | b. Critical Action Dates |
| | c. Objectives of Meeting |
| | 3. Discussion Topics |
| 9:15 AM | a. PCB Characteristics – Realistic Definition chemical, physical, biodegradation |
| 9:45 AM | b. Sampling and Analytical Methodology |
| 10:15 AM | Break |
| 10:30 AM | c. Toxicity Acute Chronic |
| 11:30 AM | d. Bioaccumulation – Biomagnification |
| 12:00 Noon | e. Dilution – Stream Size |
| 12:30 PM | Lunch |
| 1:15 PM | f. Proposed Effluent Standard |
| 2:00 PM | g. Control at Manufacturing and Use Sites Current losses Background |
| 2:45 PM | Break |
| 3:00 PM | h. Economic Considerations |
| 3:30 PM | i. Action Plans |
| 4:00 PM | Adjourn |

0070448

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## MINUTES OF PCB EFFLUENT STANDARDS MEETING

1. Mr. Howard S. Bergen, Jr., Director, Specialty Products Business Group of Monsanto Industrial Chemicals Company, welcomed the participants.

2. <u>Introduction</u> - W. B. Papageorge

   Mr. Papageorge summarized the timetable past and future on toxic pollutants:

   | | | |
   |---|---|---|
   | July 6, 1973 | - | Toxic Pollutants list published |
   | September 7, 1973 | - | Final toxic pollutants list published including PCBs and 8 other chemical classes (e.g. cyanide, mercury, DDT, cadmium, etc.) |
   | December 27, 1973 | - | Proposed Effluent Standards published |
   | January 18, 1974 | - | Filing date for status as participant at proposed EPA Hearing on Standards |
   | January 25, 1974 | - (i) | Prehearing Conference with EPA |
   | | (ii) | NEMA, Monsanto, G.E. and Westinghouse recognized as participants. |
   | | (iii) | A total of 38 objectors expressed an interest. They represented industry or trade associations with the exception of the Michigan Water Research Commission and two powerful environmental groups (Environmental Defense Fund and National Resources Defense Council). |
   | | (iv) | <u>Presiding officer made it clear that Hearings will be strictly for cross-examination of participants' testimonies in affidavit form only.</u> |

0070449

EXHIBIT L

March 15, 1974   -   <u>Written testimony by 38 objectors to be submitted in affidavit form.</u>

April 8, 1974   -   Hearings open for cross-examination and rebuttal evidence.  CN⁻/Cd/Hg - first three.  PCBs are 7th (third from last).

Mid-May, 1974   -   Hearings completed.  (Evenings/week-ends may be used.)

June 25, 1974   -   <u>Final standards published - effective in one year.</u>

<u>It should be noted that others who are affected by these standards can still comment by March 25</u> to:

        Dr. C. Hugh Thompson,
        Chairman-Hazardous and Toxic Substances
        Regulation Task Force
        Office of Water Protection Agency,
        Environmental Protection Agency
        Washington D. C.  20460

Industry representatives still wishing to comment and who need more background information can contact any of the industry participants (see attached list) or Mr. W. B. Papageorge of Monsanto (314-694-4051).

<u>Mr. Richel (G.E.)</u>:

(i)  Made a plea for greater industry participation.  Comments can still be made up to March 25 with sound excuse for tardiness.

(ii)  EPA at January 25 prehearing Conference were reluctant to expose themselves to cross-examination.  Dr. Hugh Thompson to be available for cross-examination at Hearings.

(iii)  Many objectors had common interest (e.g. environmentalists).  EPA suggested a common counsel for this group.

(iv)  On each of first 3 pollutants, EPA would offer 2 witnesses.

<u>Mr. Doty (P.R. Mallory)</u> asked about bearing of economic factors on standards.

<u>Mr. Richel (G.E.)</u> stated:

(i)  Law is clear-economic factors are <u>not</u> relevant in establishing standards.

(ii)  EPA is somewhat of a split personality on this.  The

0070450

EXHIBIT L

Presiding Officer at the Prehearing Conference ruled that economics are relevant. NRDC (National Resources Defense Council) objected and was over-ruled.

(111) Industry can and should therefore introduce relevant economic data. EPA would be wise not to expressly refer to such data in the published standard otherwise NRDC could go to court and EPA over-ruled.

Department of Commerce

It was pointed out that Sidney R. Gallier, Deputy Assistant Secretary for Environmental Affairs at the Department of Commerce wrote Monsanto on January 15 asking their views on the proposed effluent standards. Copies of Dr. Gallier's letter and Monsanto's response were circulated at the meeting. Industry should contact the Dept. of Commerce. Their legal counsel (Mr. Morland) has been active on the side of industry in other environmental hearings.

Mr. Salazar (NEMA) pointed out that the PCB Task Force had recommended a standard for PCBs of 0.01 ppb in the main body of water. (EPA was a member of that task force). ANSI C-119 proposes to use this Task Force recommendation and print this as a standard of 0.01 ppb in main body of water.

Mr. Sheppard (Westinghouse) queried if plant effluent standards could be set to meet 0.01 ppb.

Dr. Simons (G.E.) said this implied an acceptance of ANSI C-119 by industry.

There seemed to be some doubt on this.

PCB Characteristics

Dr. Tucker (Monsanto) presented hand-outs on:

(a) Monsanto's proposed definition of PCBs

(b) Comments on EPA's proposed analytical methodology

(c) Monsanto's pre-publication paper on biodegradation of PCBs.

    (a) Definition of PCBs

        1-4 chlorobiphenyls do not have long residence time. PCBs up to tetrachlorobiphenyl are not of concern on environmental persistence or biomagnification. Dr. Tucker proposed the following definition:

0070451

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

> "Polychlorinated biphenyls (PCBs) means materials containing the biphenyl group which is chlorinated and which have been shown to persist and rapidly bioaccumulate in the aquatic environment. These chlorinated biphenyls are identified as those components having gas chromatographic retention times greater than 54, relative to p, p-DDE = 100, under the standard conditions recommended in the EPA PCB test method."

Mr. Sheppard (Westinghouse) said Monsanto's proposed definition was relevant to persistence but was it relevant for standards directed toward toxic materials? Are persistent materials non-toxic?

Mr. Wright (Monsanto) stated the proposed effluent standard had two parts:

> (i) acute limits directed to toxicity of materials and specifically limits PCB concentrations on that basis.
>
> (ii) daily load in effluent - based solely on bio-magnification (relevant to persistence).

Dr. Simons (G.E.) pointed out that section 307-A of the proposed standard refers to persistence as being a critical factor to be considered.

Dr. Tucker (Monsanto) stated we were badly hurt if all PCBs are regarded as persistent and if biomagnification factors of 200,000 are used. Researchers other than Monsanto have found bacterial degradation of PCBs and that PCBs have been found to undergo metabolism in both aviarian and mammalian animals.

Mr. Nelson (G.E.) asked if proposed PCB definition would exclude Aroclor 1016.

Dr. Tucker (Monsanto) Aroclor 1016 would be excluded for the most part (98.9% is lower than pentachlorobiphenyl). Aroclor 1242 would be excluded to 65% or better. Aroclor 1254 however would not be excluded.

Mr. Papageorge (Monsanto) pointed out that of the factors listed as being critical in determining which pollutants made the EPA list of 9/7/73 only biomagnification appeared relevant to PCBs.

Dr. Simons (G.E.) agreed.

0070452

EXHIBIT L

Mr. Wright (Monsanto) stated that an acute toxicological level is defined in the EPA Basis & Purpose document as ≤ 10 ppm (96 hour LC-50). He also believes that differences in toxicity among PCBs are minor until chlorinated as high as Aroclor 1260.

Mr. Nelson (G.E.) stated that words should be used in a discourse on definition to properly screen us on acute toxicity.

In reference to a comment that Aroclor 1254 would not be excluded by the proposed definition, Dr. Tucker (Monsanto) offered the opinion that transformer fluids were easier to recover than capacitors.

   (b)  Analytical Methodology

Dr. Tucker (Monsanto) stated the EPA's proposed method for PCB analysis was being submitted to ASTM. He thought the method was well written and capable of detection to ppt (parts per trillion) but it was untried and the quantitative accuracy is in question. The method was not submitted for round-robin testing before EPA adopted it. Monsanto has found that by spiking distilled water with 500,000 ppt or 500 ppb of PCBs we get values for PCB that vary by ± 55%. The EPA, however, claims a capability of detecting absolute values at 50 ppt. The EPA method ignores interfering substances.

Mr. Clark (Universal Manufacturing) said that with a proposed upper limit for PCB discharge of 0.0648 lb./day the sensitivity of the analytical method would vary "all over the lot" depending on the size of the water "reservoir" into which the PCBs discharge.

Mr. Sheppard (Westinghouse) commented that if the analytical techniques on determining PCB levels are so difficult, how valid are the determination of toxic values for PCBs.

Mr. Clark (Universal Manufacturing) asked if analytical techniques differentiate between different chlorine levels. Dr. Tucker (Monsanto) said it would depend on the PCB mixture. Aroclor 1242 could probably be identified quantitatively in a mixture with Aroclor 1260 but addition of Aroclor 1254 to the mixture would prevent identification because Aroclor 1254 contains PCB homologs that overlap both Aroclor 1242 and 1260.

Dr. Munch (Monsanto) said that the proposed EPA method does not use high resolution and hence handicaps identification of individual peaks.

Dr. Simons (G.E.) mentioned that after EPA set automotive emission standards (NIOX) the analytical methodology was found faulty and the standards were delayed. In this case, EPA is not setting the effluent standard on analytical methodology but

EXHIBIT L  0070453

on factors such as toxicity and persistence. The methodology is relevant in enforcement and monitoring. This then leads to the possible argument that the effluent standard is correct and justified on the basis of toxicology et al, but is not enforceable due to lack of an accurate method for absolute value determination of PCB discharge.

Mr. Richel (G.E.) pointed out that EPA won't buy an answer to that argument which seeks to raise the effluent standard to a level that can be accurately measured. Mr. Savage (Monsanto) felt strongly, however, that this dilemma needed to be in the record. Others agreed.

Dr. Tucker (Monsanto) said ASTM would hold a round-robin on the EPA method and that Monsanto would participate. He will send the name of the ASTM contact to the participants so that they can decide if they want to join the round-robin test.

Mr. Sheppard (Westinghouse) said he was not prepared to accept that the proposed EPA method for determining quantities and types of PCB in samples and animals was accurate enough so that toxic limits could be defined on the basis of PCB levels of questionable accuracy.

Toxicity

Mr. Hosmer (Monsanto) stated that the original EPA publication on Water Quality Criteria came from a publication by McKee and Wolfe for the State of California. The McKee/Wolfe volume was well done and EPA did not change much of it. There is now a new 2-volume EPA edition extracted from the work of 10 committees of the National Academy of Sciences.

The toxicity of PCBs is related to salmon egg studies and Monsanto doubts the validity of this. Monsanto has made their feelings known to Dr. Thompson of EPA but he thought the criteria were sound. Since then Russell Train has been sued by NRDC and other groups on the grounds that the toxic pollutants list is not long enough and the proposed standards are too lenient.

Mr. Wright (Monsanto) went through the rationale used by EPA in arriving at a PCB discharge maximum of 0.0648 lb./day. He also showed how the standard could be changed and yet be consistent with published data on PCBs. Details follow.

(a) FDA set arbitrary proposed tolerances:

    5 ppm in fish for human consumption
    5 ppm in components for animal feed
    0.5 ppm in complete animal feed

0070454

EXHIBIT L

(b) Monsanto would not disagree with these tolerances.

(c) FDA has presented - acute toxicity limits (point sources)
                       - chronic toxicity limits (daily load)

Acute toxicity limits:

96 hour LC-50 studies for PCBs show:

~280 ppb in fresh water (bluegill)
~10 ppb in coastal or seawater (pink shrimp/oysters)

Published data based on materials leaving an outlet and going into a body of water. Acute limits have no direct relation to chronic limits.

Chronic toxicity limits:

The EPA equation is:

Chronic limit X water flow rate X safety factor = gm/day discharge

In Marine organisms the chronic limit is set as

$$\frac{0.5 \text{ ppm}}{30,000} = 0.0167 \text{ ppb}$$

In fresh water the chronic limit has been determined by using 0.5 ppm as toxic limit for salmon eggs and a 200,000 bio-magnification factor. This gives a chronic limit of

$$\frac{0.5}{200,000} = \underline{0.0025 \text{ ppb}}$$

The biomagnification level of 200,000 is based on unpublished data from Stalling & Meyer (Fish Pesticide Lab, U. S. Dept. of Interior, Columbia, Mo.). Dr. Simons said that in response to repeated requests by G.E. to the Columbia Lab the only reference they have been given is a Stalling & Meyer paper presented in Carolina in 1971 and which contains no mention of a 200,000 factor. Mr. Wright (Monsanto) stated he has seen only one literature reference to an accumulation factor of ~200,000 and that was in the hepato pancreas of a pink shrimp. If the PCB level was calculated on the basis of the total shrimp then the accumulation factor was only 22,000. Other references give accumulation factors of 1000-75,000 for whole tissues of various fresh water organisms. Accordingly, Mr. Wright proposes that a biomagnification factor of 30,000 and not 200,000 be used. He also proposes that we retain the chronic limit of 0.5 ppm without debating the salmon egg issue.

0070455

EXHIBIT L

This would lead to a discharge level for PCBs:

$$\frac{0.5}{30,000} \times 10,000 \underset{\text{(flow rate)}}{} \times 0.5 \underset{\text{(safety factor)}}{} \times 5.4 \underset{\substack{\text{(conversion} \\ \text{into lb./} \\ \text{day)}}}{} = 0.459 \text{ lb./day}$$

<u>This compares to the proposed standard of 0.0648 lb./day.</u>

The safety factor comes from the EPA's Basis and Purpose document supporting the proposed effluent standards. It is supposed to take account of non-point sources of PCBs and is the same as 6 of the 9 toxic pollutants proposed for EPA standards. Monsanto's Medical Department feels this safety factor is arbitrary and confers no real toxicological benefit. If deleted, the revised Wright PCB discharge level would be 0.918 lb./day.

<u>One of the most critical parts of the discharge equation is the water flow rate.</u> A significant number of dielectric PCB manufacturers have plants on rivers where the flow rate is under 100 cfs or 1% of the EPA cut-off flow of 10,000 cfs. Several plants discharge into sewage plants which in turn have treated liquid flowing into rivers or streams with very low flow rates. <u>For a river with 100 cfs flow the EPA maximum discharge would drop to 0.000648 lb./day or 0.162 lb. in a 250 work-day year.</u> Even a revised standard of 0.918 lb./day at 10,000 cfs would only be 0.00918 lb./day at 100 cfs or <u>~ 2.3 lb. per 250 work-day year.</u> Clearly this is a staggering target to have to meet.

<u>Mr. Doty (Mallory)</u> pointed out that in the present language of the EPA standards municipal sewage systems are not considered point sources.

<u>Mr. Richel (G.E.)</u> was of the opinion that where a plant discharged into a sewage system without treatment and hence into navigable waters the plant could have to comply with effluent standards on toxic pollutants. <u>Mr. Papageorge (Monsanto)</u> felt we should not be complacent and regard discharge to sewage plants being the answer to problems. <u>Mr. Hosmer (Monsanto)</u> stated that 10,000 cfs represents the largest flow the EPA will consider on the grounds that all industry would move to the largest river. The opposite of that argument is that it encourages small plants on every stream in the country.

<u>Mr. Sheppard (Westinghouse)</u> raised the issue of sedimentation. Since it appears that all the experiments to establish toxic values were run <u>without</u> sediment effects being considered, the real-life values were questioned. PCBs attach themselves to sediment. Furthermore the sediment moves down river and so PCB would be dispersed from the point source. It was pointed out by <u>Dr. Richard (Monsanto)</u> that Aroclor 1254 is soluble in water up to 50 ppb and that in time partitioning between sediment and

EXHIBIT L

0070456

water could take place. Mr. Wright (Monsanto) agreed that the discharge limits were extreme cases in the absence of sediment considerations and this was worth study and incorporation into arguments against the proposed levels.

Dr. Simons (G.E.) queried whether we were correct in concentrating our attacks on the criterion of toxic effects of mammals eating fish and ignoring the possible argument that fish per se must be protected. Mr. Wright (Monsanto) said the proposed standard says both. In salt water, standards are proposed that would protect the species that eat organisms containing PCB. In fresh water, if 0.5 ppm in salmon eggs correlates with <5 ppm in salmon then we are protecting salmon. He also said that the chronic limits and biomagnification limits he was proposing would protect the species themselves. We should, however, beware of arguing for higher levels in fish because we could draw EPA and FDA into conflict. The FDA levels in food, fish etc., are temporary tolerances and any arguments against their validity could lead to a reduction in these tolerances.

Mr. Savage (Monsanto) queried whether raising the level in organisms could cause possible danger to predators.

Dr. Simons (G.E.) quoted from page 39 of the Basis & Purposes document which states that the body burdens of birds and mammals should not increase over present levels. Page 51 of the same document cites a Nat. Acad. Sci. report which gives 2.0 ppm PCB as tolerable level in flesh of whole fish. $\frac{2.0}{200,000} = 0.1$ ppm PCB is given as tolerable level in water divided by a safety factor of 5 to give a maximum PCB concentration in water of 0.002 ppm. Thus EPA accepted 2 ppm PCB level in fish but got to water concentration of 0.002 ppm by using a high level of 200,000 for biomagnification and an arbitrary factor of 5.

If we were to revise the proposed EPA standard by:

    (i)   using 2.0 ppm as chronic limit in fresh water species instead of 0.5 ppm;

   (ii)   substituting 30,000 instead of 200,000 for biomagnification factor;

         and

  (iii)  ignoring safety factor of 0.5

then the maximum permissible discharge in lb. PCB per day would be:

$$\frac{2.0}{30,000} \times 10,000 \times 5.4 \simeq 3.6 \text{ lb.}$$

0070457

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

For the plant situation on a river with a flow of only 100 cfs the discharge would be 0.036 lb/day or 9.0 lb. per 250 work-day year. These levels are still far below the 5 lb./day given in ANSI C-107.

It is therefore apparent that other aspects of PCBs must be highlighted in order to get away from PCB discharge levels as low as even our "revised" proposals.

Aspects to concentrate on are:

(1) Definition of PCBs that excludes biodegradable homologs.

This could exclude 90% or better of Aroclor 1016 and 65% or better of Aroclor 1242. On that basis, discharge levels would be as follows:

| PCB Type | Stream Flow (cfs) | Discharge (lb.PCB equivalent/day) | | |
|---|---|---|---|---|
| | | EPA | Wright | Simons/Wright |
| Any PCB | 10,000 | 0.0648 | 0.918 | 3.6 |
| Any PCB | 100 | 0.000648 | 0.00918 | 0.036 |
| Aroclor 1016 | 10,000 | 0.648 | 9.18 | 36.0 |
| Aroclor 1016 | 100 | 0.00648 | 0.0918 | 0.36 |
| Aroclor 1242 | 10,000 | 0.194 | 2.75 | 10.8 |
| Aroclor 1242 | 100 | 0.0019 | 0.027 | 0.10 |

(2) Try to change stream flows from the present value of the flow rate in cubic feet per second (cfs) expressed as the probable low rate occurring during a 7 consecutive day period once in 10 years at the effluent point.

If the average flow rate over a period of time (to be agreed on) was used, the lowest flow rate in the equation could conceivably be raised by a factor of 10 from 100 to 1000. In the Simons/Wright version for a standard the Aroclor 1016 discharge could be raised to 3.6 lb./day at 1000 cfs flow and Aroclor 1242 to 1.0 lb./day at 1000 cfs flow.

(3) Magnitude of PCB Point-Sources

It is possible that EPA and environmentalists are totally misinformed on the number of plants still using PCBs. In the U.S. today there are:

0070458

EXHIBIT L

1 PCB manufacturing plant

~18 capacitor plants using PCB

~27 transformer manufacturing plants using PCB

In the past there were probably 1500-2500* plants using PCBs. Only 2-3% of these plants continue to use PCB today.

* (Subject to closer checking if necessary)

In the past ~97% of plants using PCBs purchased ~40 million pounds of PCB per year. Monsanto's PCB sales policy has therefore

- reduced number of using plants to ~2-3% of previous total.

- eliminated ~40M lbs. PCB sales per year.

The EPA standard would limit PCB discharge per plant to 0.0648 lb./day or ~3.2 lb./day across the U.S. (~50 plants). This equates to ~800 pounds in a 250 work-day year. Since fish have survived throughout the 40+ years that PCBs have been produced and widely used, the standard proposed by EPA seems far too drastic.

Turning again to the Simons/Wright proposal we can estimate the effect in terms of annual PCB discharge into water across the U.S. at 1000 cfs:

| Discharge As | Discharge (lb./day) | No. Plants | US Total per 250 days (pounds) | As Persistent PCBs Discharge (lb./day) | No. Plants | US Total |
|---|---|---|---|---|---|---|
| Any PCB | 3.6 | *1 | 900 | 1.2 | 1 | 300 |
| Aroclor 1016 | 3.6 | 18 | 16200 | 0.36 | 18 | 1620 |
| Aroclor 1242 | 1.08 | 4 | 1080 | 0.36 | 4 | 360 |
| Aroclor 1254 | 0.36 | 23 | 2070 | 0.36 | 23 | 2070 |
| | | | 20,250 | | | 4350 |

* Plant is on river in excess of 10,000 cfs.

Using this technique an argument can be made in favor of the ANSI C-107 proposal of 5.0 lb./day.

0070459

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Proposed Effluent Standards

Dr. Simons (G.E.) summarized the points he felt had to be dealt with in trying to change the proposed standard:

1. Higher persistence of higher PCBs versus alleged lower acute toxicity

2. Background levels of PCBs

3. Written testimony of participants and correlation

Toxicity

EPA Basis & Purpose document (page 50) states that 96 hour LC-50 to fish cannot adequately measure toxicity of PCB. Where is time demarcation between acute and chronic. Chronic effects can be either lethal or non-lethal.

Why are PCBs on the list on toxic grounds?

LD-50 for PCB is such that it is not considered toxic to humans.

For protection of aquatic life the Nat. Aca. Sci. set a 96 hour LC-50 of 10 ppm or less.

In proposing a definition for PCBs, Dr. Simons (G.E.) felt we should stress:

(a) lack of persistence of homologs below tetra-chlorobiphenyl.

(b) chronic toxicity does not arise for the lower homologs because they are non-persistent.

(c) ignore acute toxicity - no real differences between Aroclor 1016, 1242 and 1254.

Participants need to consider: Do we have the best definition?

In the tentative EPA analytical method we should take note that in the table on p.3-22, the percentage of PCB was not controlled.

Mr. Carlson (E.U.C.) pointed out that in its present form the standard could saddle present PCB users with all other discontinued uses. Dr. Richard (Monsanto) pointed out that FDA and Boxboard Manufacturer's Association had agreed on a protocol that protected recycle paper users from just such a situation. Mr. Bergen (Monsanto) asked that copies be circulated to participants.

0070460

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

We need to word our definitions to exclude residuals. Participants should exchange proposed drafts on wording regarding residuals by March 7.

G. E. stated we should not approach the hearing on the basis that things can't be done. Rather take the proposed standard and point out what it means in real life. In G.E.'s case they use X M lb./year and yet can't lost 0.5 drops per day. Stream flow rates make the matter worse. This is a point on which Dr. Thompson should be cross-examined.

Of the participants present, 5 plants discharge into sewers with outlets into rivers (very small except in 2 cases). Three plants discharge into small rivers.

No one at the meeting could cope with the EPA standard as it is proposed. Only Jard expressed an opinion on what level they could live with. (Jard stated 27 lb. Aroclor 1016 per day. This would be 2.7 lb. PCB by our proposed definition.)

0070461

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

## Participation at EPA Hearing

| | |
|---|---|
| **Definite participation:** | Monsanto |
| | G. E. |
| | Westinghouse |
| **Undecided:** | Electrical Utilities |
| | Jard |
| | NEMA |
| **No participation:** | Electronic Components |
| | Mallory |

Objectors of record could adopt non-responding company as witness.

G.E.'s testimony will fall into the following areas:

- Explanation of why PCBs are used
- Consequences of ban on customers
- Inadequacy of EPA/Nat. Acad. Sci. statements
- How standards would apply to G.E.
- Inadequacies of the Standard

   - definition
   - methodology
   - logic behind the standard

Other contributory actions:

- Involve Federal Energy Office (e.g. Aerovox letter on motor-run capacitor contribution to ease energy crisis.)

- Involve F.E.O./other agencies along lines of petrochemical producers' PEG report.

- Power Systems Group of IEEE will circulate a position paper on PCBs (technical aspects) in the dielectric industry to Congress, EPA, FEO and Dept. of Commerce (target date: April).

0070462

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Action Plans

1. (W. B. Papageorge)   Circulate to participants copies of FDA/Boxboard Manufacturers protocol on PCBs in recycle paper.

2. (Participants)   Exchange drafts on testimony regarding PCB residuals/background levels with each other by March 7.
(Monsanto contact should be W. B. Papageorge.)

3. (Participants)   Submit to W. B. Papageorge their thoughts on proposed PCB definition (to exclude 1-4 chlorine homologs).

4. (Participants)   Communicate with each other on how best to handle sedimentation phenomenon (as raised by Mr. Sheppard of Westinghouse).

5. (E. S. Tucker)   Send out name of ASTM contact for participation in round-robin on proposed EPA analytical method.

6. (Participants)   Write to Dr. Galler of Commerce Dept. opposing EPA standards.
(See Galler letter to Monsanto and Monsanto response.)

7. (Participants)   Those who have not responded to EPA can still write Dr. Thompson by March 25.

8. (A. Salazar, NEMA)   (a) Get feedback from Sangamo/McGraw Edison on the proposed standards.

   (b) Determine role NEMA will take on affidavits/testimony at EPA hearing.

9. (W. B. Papageorge)   Obtain PEG report and send to Mr. Nelson (G.E.).

10. (Participants)   Involve P.E.O. in EPA Hearing along lines of Aerovox letter to Secretary Simon.

0070463

EXHIBIT L

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# INTERNATIONAL DIELECTRICS SYMPOSIUM

X I will attend the Dielectrics Symposium on September 23.

I regret I will not be able to attend the Symposium.

X Please include me among the friends and associates who will attend the dinner for Paul Benignus.

I will not be able to attend the dinner.

I will not be able to attend the dinner, but I wish to contribute towards the gift. Enclosed is my check for $ _____ ($4 maximum).

Enclosed is my check in the amount of $ **20** ⁰⁰ for the gift and dinner for ____/____ persons at $20 per person.

Please make the following room reservations for me at the Sheraton West Port Inn.

| Number of Rooms | One Person Per Room | Two Persons Per Room |
|---|---|---|
| ____/____ Single Room — 1 Queen bed | ($22/night) | ($27/night) |
| ____ Double Room — 2 double beds | ($24/night) | ($29/night) |

Confirmation Requested  Yes X  No

Date arriving _SUNDAY SEPT 22_  6 PM   Date departure _TUESDAY SEPT 24 '74_  Guaranteed X

Name _N. RAY CLARK_

Address _UNIVERSAL MFG CORP_ Tel. _336 - 0161_

City _BRIDGEPORT_  State _CONN_  Zip. _06607_

Reply to: Dr. Cumming Paton
Monsanto Company
Dept. B2SC
800 N. Lindbergh Blvd.
St. Louis, Missouri 63166
U.S.A.

Additional information and detailed agenda will be sent to you shortly after receipt of your reply.

**Monsanto**

0156377

EXHIBIT M

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

# Transformer and Capacitor Dielectrics Symposium

### A Review and Discussion of
### Current Factors & Future Trends

### September 23, 1974

Sheraton West Port Inn
191 West Port Plaza
St. Louis, Missouri U.S.A.

Moderator: Paul G. Benignus

0155670

EXHIBIT M

# TRANSFORMER AND CAPACITOR DIELECTRICS SYMPOSIUM

*Monsanto Symposium Breakfast*

- Review of environmental issues affecting polychlorinated biphenyl dielectrics usage internationally

- Review of the effects of polychlorinated biphenyls on the environment

- Detection and possible methods for control of polychlorinated biphenyls in industrial effluent streams

- Safe handling of polychlorinated biphenyl fluids and methods for disposal of waste fluids

*Monsanto Symposium Luncheon*
Host: Howard S. Bergen, Business Director — Specialty Products Group, Monsanto Company

- An overview of potential new dielectric fluids

- Industry benefits of polychlorinated biphenyl fluids

- Consumer attitudes toward polychlorinated biphenyl fluids

*Monsanto Symposium Cocktail Party*

0155671

EXHIBIT M

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Electronic Components Division*

UNIVERSAL MANUFACTURING CORP.



902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  336-0161

December 17, 1971

Monsanto Company
100 Lafayette
Building U – Research
St. Louis, Mo.

Attention: Dr. Ralph H. Munch

Dear Ralph:

As a follow-up to our conversation of November 11 in St. Louis, concerning performance of capacitors under highly accelerated life test conditions, we are sending you under separate cover, no charge, samples as follows:

40 pcs. rated 2.0 uf – 580 VAC, identified as UMC 510701.  The dielectric paper is 2 x .00066" thick x 1 3/4" wide, 9.0 density between foils, for a total of 1.32 mils.  The paper used was Schweitzer Lot #15141.5.  Foil was made by Robert Victor Neher, Ltd., and was from Case #22 Release #10, and was .00023" thick x 1 9/16" wide.  They were processed through our normal impregnation cycle in Bridgeport.

40 pcs. same as above, except unimpregnated.

These are nominally identical to the capacitors sent to you last July under your purchase order L-59061, but made with different lots of paper and foil.

Best regards,

ELECTRONIC COMPONENTS DIVISION
Universal Manufacturing Corp.

N. Ray Clapp, Vice President

NRC/h

**EXHIBIT N**    0079467

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Capacitor Division*

UNIVERSAL MANUFACTURING CORP.



902 CRESCENT AVENUE
BRIDGEPORT, CONN.  06607
(203)  336-0161

file EPA (307)

August 24, 1976

Mr. David Wood
Monsanto
800 N Lindbergh Blvd.
St. Louis, Mo.  63155

Dear David:

This is a reminder that in preparation for
testimony concerning the EPA proposed PCB effluent
standards, I need from you the total pounds of
Aroclor 1016 shipped to the various capacitor
manufacturers, for comparison with the total pounds
in effluent water which Roger Wills will send to me.
I believe we agreed that the first six months of
this year would be representative, since it included
the period when EPA gathered and tested water effluent
samples from the various plants.  The use of a fairly
long period such as six months should minimize the
effect of inventory fluctuations, and allow us to
assume that your sales figures are substantially
equal to the industry usage for the period.

Best regards,

CAPACITOR DIVISION
Universal Manufacturing Corp.

N. Ray Clark, Vice President

NRC/h

9930 M/bs

EXHIBIT O        0268252

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

*Capacitor Division*

UNIVERSAL MANUFACTURING CORP.

902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607
(203) 336-0161

June 22, 1976

Mr. David Wood
Monsanto
800 N. Lindbergh Blvd.
St. Louis, Missouri 63155

Dear Dave:

The attached copy of a Connecticut "Act Concerning the Use of PCBs" was signed into law on June 9; I had thought the legislature had adjourned without getting around to passing it, but such was not the case.

The point of concern to Monsanto is, of course, Section 2(a). I talked to a representative of the State Department of Environmental Protection (which drafted the revised version of the bill, which ultimately passed), and pointed out that we purchase the material from you in tank cars at approximately monthly intervals, but cannot normally give you precise delivery requirements as much as 30 days in advance. I am sure the DPE will be reasonable in the matter, and we will of course cooperate with you in complying with whatever requirements they impose.

I don't know who within DEP will be handling the matter, but my contact has been George Trubiano, tel. (203) 566-7166; he is familiar with our operation and can no doubt refer you to the appropriate person.

Best regards,

CAPACITOR DIVISION
Universal Manufacturing Corp.

N. Ray Clark, Vice President

NRC/h
Enc:

cc: Mike Petrilli, Monsanto
    EJ Wickson
    LR Patterson

EXHIBIT O        0419816

*Capacitor Division*

**UNIVERSAL MANUFACTURING CORP.**



902 CRESCENT AVENUE
BRIDGEPORT, CONN. 06607
(203) 336-0161

September 16, 1976

Mr. J. Coleman Weber
Manager, Product Acceptability
Monsanto Industrial Chemicals Company
800 N. Lindbergh Boulevard
St. Louis, Mo. 63166

Dear Cole:

As a PCB user who has been among the most critical of the Monsanto posture over the past few months, I am delighted to take the opportunity to congratulate Monsanto for the strong stand in connection with the September 13 BUSINESS WEEK article. I applaud Mr. Harbison and Dr. Roush for their September 10 letter to the BUSINESS WEEK Editor-in-Chief. The exceptions they so rightly take to the sloppy and sensational journalism exhibited by the BUSINESS WEEK article are a sufficiently specific and precise rebuttal to give pause to even the most biased reporter.

Best regards,

CAPACITOR DIVISION
Universal Manufacturing Corp.

N. Ray Clark, Vice President

NRC/h

X Scott
D Bishop
E H Harbison
G Roush
R G Potter
D Wood.

0430998

EXHIBIT O

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto**

——————————————— SPECIALTY CHEMICALS DIVISION

MONSANTO INDUSTRIAL CHEMICALS CO.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

October 4, 1976

Mr. Paul H. Einhorn, President
Universal Manufacturing Corporation
29-51 East Sixth Street
Paterson, N. J. 07509

Dear Sir:

We are writing to advise you that Monsanto will
cease manufacture at Sauget, Illinois, of all poly-
chlorinated biphenyl (PCBs) products used as dielectrics,
effective August 31, 1977. We will cease sales and
delivery of these products, effective October 31, 1977.

This decision is consistent with our commitment to
exit this business while responsibly taking into
account your need to establish replacement products.

Our Marketing Department will be contacting your
company shortly to discuss our decision in detail
and to answer your questions. We will work with you
to accommodate your specific plans and needs within
our phase out program.

Very truly yours,

R. G. Potter
Business Director
Functional Products

/deb

0422888

a unit of Monsanto Company

EXHIBIT P

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Monsanto

———————————————————————— SPECIALTY CHEMICALS DIVISION

MONSANTO INDUSTRIAL CHEMICALS CO.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 894-1000

October 4, 1976

Mr. N. Ray Clark, V. P.
Universal Manufacturing Corporation
902 Crescent Avenue
Bridgeport, Conn. 06607

Dear Sir:

We are writing to advise you that Monsanto will
cease manufacture at Sauget, Illinois, of all poly-
chlorinated biphenyl (PCBs) products used as dielectrics,
effective August 31, 1977. We will cease sales and
delivery of these products, effective October 31, 1977.

This decision is consistent with our commitment to
exit this business while responsibly taking into
account your need to establish replacement products.

Our Marketing Department will be contacting your
company shortly to discuss our decision in detail
and to answer your questions. We will work with you
to accommodate your specific plans and needs within
our phase out program.

Very truly yours,

R. G. Potter
Business Director
Functional Products

/deb

0422887

a unit of Monsanto Company

EXHIBIT P

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Monsanto**

SPECIALTY CHEMICALS DIVISION

MONSANTO INDUSTRIAL CHEMICALS CO.
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

October 4, 1976

Mr. Ed Wickson, P. A.
Universal Manufacturing Corporation
902 Crescent Avenue
Bridgeport, Conn. 06607

Dear Sir:

We are writing to advise you that Monsanto will
cease manufacture at Sauget, Illinois, of all poly-
chlorinated biphenyl (PCBs) products used as dielectrics,
effective August 31, 1977. We will cease sales and
delivery of these products, effective October 31, 1977.

This decision is consistent with our commitment to
exit this business while responsibly taking into
account your need to establish replacement products.

Our Marketing Department will be contacting your
company shortly to discuss our decision in detail
and to answer your questions. We will work with you
to accommodate your specific plans and needs within
our phase out program.

Very truly yours,

R. G. Potter
Business Director
Functional Products

/deb

0422886

a unit of Monsanto Company

EXHIBIT P

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Monsanto

———————————————————— SPECIALTY CHEMICALS DIVISION

**MONSANTO INDUSTRIAL CHEMICALS CO.**
800 N. Lindbergh Boulevard
St. Louis, Missouri 63166
Phone: (314) 694-1000

October 4, 1976

Mr. Armand A. DeMauro, Plt. Mgr.
Universal Manufacturing Corporation
11 Jackson Road
Totowa, N. J. 07512

Dear Sir:

We are writing to advise you that Monsanto will
cease manufacture at Sauget, Illinois, of all poly-
chlorinated biphenyl (PCBs) products used as dielectrics,
effective August 31, 1977. We will cease sales and
delivery of these products, effective October 31, 1977.

This decision is consistent with our commitment to
exit this business while responsibly taking into
account your need to establish replacement products.

Our Marketing Department will be contacting your
company shortly to discuss our decision in detail
and to answer your questions. We will work with you
to accommodate your specific plans and needs within
our phase out program.

Very truly yours,

R. G. Potter
Business Director
Functional Products

/deb

0422885

a unit of Monsanto Company

EXHIBIT P

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

MONSANTO COMPANY,                )
PHARMACIA, LLC, and              )
SOLUTIA, INC.                    )
                                 )
            Plaintiffs,          )          Cause No.  17SL-CC03368
                                 )
v.                               )
                                 )
MAGNETEK, INC.                   )
                                 )
            Defendant.           )

**Affidavit of Christopher M. Hohn**

I, Christopher M. Hohn, being of sound mind and do hereby declare:

1.      My name is Christopher M. Hohn.  I am a partner at Thompson Coburn LLP ("Thompson Coburn") and counsel for Monsanto Company, Pharmacia LLC f/k/a Monsanto ("Pharmacia"), and Solutia, Inc. (collectively "Monsanto Defendants").  The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief.  The statements contained herein are based on my personal knowledge and my review of Thompson Coburn records, except where based upon information provided by other employees of Thompson Coburn, or persons working under their direction and supervision.

2.      I make this affidavit in support of Plaintiffs' Memorandum in Opposition to Defendant Magnetek, Inc.'s Motion to Dismiss or Stay.

3.      The Monsanto Defendants recently have been sued in approximately 46 lawsuits ("the PCB lawsuits").  On August 29, 2016, I sent a letter to Mr. Scott S. Cramer, Magnetek, Inc., requesting that Plaintiff Magnetek Inc. ("Magnetek") defend and indemnify Pharmacia in those PCB lawsuits, as required by a Special Undertaking Agreement entered into in 1972 between Magnetek's predecessor, Universal Manufacturing Corporation ("UMC"), and

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Pharmacia LLC. Attached hereto as **Exhibit Q** is a true and correct copy of the August 29, 2016 letter from me to Scott S. Cramer of Magnetek.

4.      On September 13, 2016, counsel for Magnetek, Mr. Craig A. Leslie, responded to me by sending me a letter in Missouri, rejecting the Monsanto Defendants' tender of the defense and demand for indemnification in the PCB lawsuits. Attached hereto as **Exhibit R** is a true and correct copy of the September 13, 2016 letter that I received from Craig A. Leslie of Phillips Lytle LLP, counsel for Magnetek.

5.      I responded to Mr. Leslie's September 13, 2016 letter on December 23, 2016. Attached hereto as **Exhibit S** is a true and correct copy of the December 23, 2016 letter from me to Mr. Leslie.

6.      On April 7, 2017, counsel for the Monsanto Defendants invited Magnetek to attend a meeting on May 16, 2017, at the offices of Thompson Coburn in St. Louis, Missouri, to discuss the parties' positions regarding Magnetek's obligations under the Special Undertaking Agreement. The purpose of the meeting was to provide information to Magnetek and assess whether the parties could structure a dispute resolution process to try to resolve the Monsanto Defendants' claims outside the context of formal litigation. In addition to Magnetek, other companies that had signed Special Undertaking Agreements with Pharmacia (and that also were obligated to defend and indemnify Pharmacia in the PCB lawsuits) were also invited to the meeting. Attached hereto as **Exhibit T** is a true and correct copy of the April 7, 2017 letter from me to Mr. Leslie.

7.      On May 1, 2017, Mr. Leslie responded that he would attend the meeting, along with two other individuals for Magnetek. Attached hereto as **Exhibit U** is a true and correct

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

copy of the May 1, 2017 letter that I received from Craig A. Leslie of Phillips Lytle LLP, counsel for Magnetek.

8.    The following week, Mr. Leslie responded to me again, confirming that he would attend the meeting.  Attached hereto as **Exhibit V** is a true and correct copy of a May 9, 2017 letter that I received from Craig A. Leslie of Phillips Lytle LLP, counsel for Magnetek.

9.    On Friday May 12, 2017, four days before the parties' scheduled meeting, Magnetek preemptively filed an eight count declaratory judgment lawsuit against Plaintiffs in the Superior Court of Bergen County, New Jersey, without informing Monsanto or its counsel. *See Magnetek, Inc. v. Monsanto Co., et al.*, No. BER-L-3362-17 (N.J. Super. Ct. May 12, 2017) (the "New Jersey Action")

10.    On May 16, 2017, counsel for Magnetek arrived at Thompson Coburn's offices in St. Louis to attend the scheduled meeting, without informing counsel for the Monsanto Defendants that Magnetek already had filed the New Jersey Action four days earlier. Approximately one hour before the meeting was scheduled to begin, counsel for the Monsanto Defendants learned that Magnetek had filed the New Jersey Action, through a docket alert email. Counsel for the Monsanto Defendants met with Magnetek's counsel, Mr. Joe Schmit, privately before the start of the planned meeting and raised Magnetek's filing of the New Jersey Action. Mr. Schmit confirmed that the lawsuit had been filed, but noted that it had not been served, and stated that the lawsuit was a "placeholder."

11.    Since Monsanto was preparing to meet with representatives from other companies that had not filed suit, counsel for the Monsanto Defendants excused Magnetek's counsel from the meeting, but requested that Magnetek agree to dismiss the New Jersey Action and enter into a standstill and tolling agreement to permit the parties to continue their negotiation outside the

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

context of formal litigation. After considering that proposal, Magnetek ultimately declined and served the New Jersey Action on the Monsanto Defendants on June 21, 2017.

12.    On September 1, 2017, the Monsanto Defendants filed the instant suit.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on January 19, 2018.

Christopher M. Hohn
Thompson Coburn LLP

STATE OF MISSOURI            )
                             ) SS
CITY OF SAINT LOUIS          )

On the 19th day of  January, 2018, before me personally appeared Christopher M. Hohn to me known to be the person described in and who executed the foregoing Affidavit and who did state that the averments contained therein are true and correct to the best of his knowledge and that he executed the Affidavit of his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed by official seal in the County and State aforesaid, the day and year first above written.

My term expires:

RHONDA EGGEMEYER
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis City
My Commission Expires: Feb. 1, 2021
Commission # 13547042

Notary Public

-4-


THOMPSON
COBURN LLP

Christopher M. Hohn
P 314.552.6159
F 314.552.7000
chohn@thompsoncoburn.com

August 29, 2016

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Scott S. Cramer
Magnetek, Inc.
N49 W13650 Campbell Dr
Menomonee Falls, WI 53051
Scramer@magnetek.com

*Re:* ***Tender of Defense & Demand for Indemnification Under Special Undertaking by Purchasers of Polychlorinated Biphyenls contract dated January 7, 1972***

        ***Protected Communication: Indemnitee-Indemnitor Privilege; Common Interest Doctrine***

Dear Mr. Cramer:

We understand that you are authorized to receive this demand on behalf of Magnetek, Inc. If that understanding is incorrect, please advise immediately and we will redirect this correspondence as necessary.

We write on behalf of our clients Monsanto Company ("New Monsanto"), Pharmacia LLC, f/k/a Monsanto ("Old Monsanto"), and Solutia Inc. (collectively the "Monsanto Defendants"). The Monsanto Defendants have been sued in certain lawsuits by a number of individuals, cities, municipal agencies, and school districts seeking to recover for claimed personal injuries, environmental clean-up and permit costs, property damage, and other damages allegedly caused by exposure to or contamination by Polychlorinated Biphenyls ("PCBs") manufactured and sold by Old Monsanto.

It is the Monsanto Defendants' understanding that Magnetek, Inc. is the successor in interest to Universal Manufacturing Corporation's obligations under the Special Undertaking By Purchasers of Polychlorinated Biphenyls contract Universal Manufacturing Corporation entered into with Old Monsanto on January 7, 1972 (the "Special Undertaking Contract"), a copy of which is enclosed for your reference.

The Special Undertaking Contract states in pertinent part that Magnetek, Inc. will:

      defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any and all liabilities,

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

EXHIBIT Q

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

claims, damages, penalties, actions, suits, losses, costs and expenses (except to the extent arising from failure of PCB to conform to specifications) arising out of or in connection with the receipt, purchase, possession, handling, use, sale, or disposition of such PCB's by, through or under Buyer, whether alone or in combination with other substances, including, without implied limitation, any contamination of or adverse effect on humans, marine and wildlife, food, animal feed or the environment by reason of such PCB's.

Special Undertaking Contract at 1.

By copy of this letter, demand is made for Magnetek, Inc. to defend, indemnify and hold harmless Old Monsanto (and related entities as specified in the Special Undertaking Contract), in connection with all current and future PCB-related litigation wherein Old Monsanto is, or will be, named as a defendant, and for the amount of any resulting judgments (if any) and settlements, to the full extent required by the Special Undertaking Contract. You are hereby formally tendered the defense of the Food Chain Cases, the Water Cases, the School Cases, the Occupational Case, and any other lawsuits on the enclosed list of PCB-related litigation. Copies of the complaints in each case will be provided upon request. Pending the establishment of a reasonable and acceptable arrangement regarding this tender, the cases will continue to be defended and/or settled and Magnetek, Inc. will be held liable for the amount of the resulting settlements or judgments (if any) as well as the incurred costs, expert witness fees, attorney's fees, and all other reasonable expense incurred in defending these actions. You are expressly notified that settlement negotiations relating to certain of the listed cases are currently underway.

The Monsanto Defendants expressly reserve all of their rights of any sort, at law or in equity, including but not limited to those under the Special Undertaking Contract, whether or not identified herein. The Monsanto Defendants also expressly reserve the right to engage in settlement discussions and/or to settle some or all of the above cases, while holding Magnetek, Inc. responsible for those settlements.

The current breakdown of the PCB-related litigation involving the Monsanto Defendants is as follows:

53. The Monsanto Defendants are defending a series of personal injury cases in which plaintiffs are contending that they suffer from various types of cancer (primarily non-Hodgkin lymphoma) as a result of their environmental, non-employment exposure to PCBs (the "Food Chain Cases"). The Food Chain Cases currently are pending in state court in Los Angeles County, California and in state and federal courts in St. Louis, Missouri. At present, the Food Chain Cases include approximately 700 plaintiffs. On May 26, 2016, a Judgment was entered against Monsanto in one such case in the total amount of $46,500,000.00 for alleged personal injuries and punitive damages arising out of the exposure to PCBs in a case captioned *Benito Walker et al. v. Monsanto Co., et al.,* Case No. 1122-CC09621-01 (Cir. Court City of St. Louis May 26, 2016).

54. The Monsanto Defendants also face a group of lawsuits (currently eight suits have been filed) on the West Coast in which cities and various municipal agencies are

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

alleging that the Monsanto Defendants should bear some cost of water clean up and wastewater permit costs due to PCB contamination (the "Water Cases").

55. The Monsanto Defendants also are defending four cases in which certain school districts allege that they should bear some cost of clean-up and/or rebuilding of schools due to alleged PCB contamination (the "School Cases").

56. The Monsanto Defendants also were recently named along with several other defendants in an occupational exposure case filed in state court in Massachusetts (the "Occupational Case").

A current list of all PCB-related litigation wherein the Monsanto Defendants are named as defendants (including court, case caption, and civil docket number) is enclosed. Please note that the next Food Chain Case is currently set for trial on September 12, 2016.

We request acknowledgement that Magnetek, Inc. received this communication and confirmation that Magnetek, Inc. intends to honor its contractual obligations of defense and indemnification under the Special Undertaking Contract within **ten (10) days** from the date of this communication. We also request that you immediately notify your primary and excess insurer(s) of the demand for defense and indemnity set forth above.

Our Client would welcome the opportunity to discuss the PCB-related litigation referenced above (and on the enclosed list) and the scope of Magnetek, Inc.'s obligations under the Special Undertaking Contract with you. New Monsanto expects to put a process in place for the resolution of this obligation, and those obligations of other similarly situated parties. Please, at your earliest convenience, contact Monsanto's Assistant General Counsel, Litigation, Molly Jones at (314) 694-5425 to discuss this matter.

Thank you for your attention to this matter. We look forward to hearing from you.

Sincerely,

Thompson Coburn LLP

By

Christopher M. Hohn

Enclosures

cc: Magnetek, Inc.
c/o CSC-Lawyers Incorporating Service Company
221 Bolivar Street
Jefferson City, MO 65101
*(via Federal Express)*

EXHIBIT Q

| Matter Name | Group Reference | Jurisdiction Type | Court | Docket Number | File Date |
|---|---|---|---|---|---|
| Grant Parish School Board v. Monsanto Company (PCB) | PCB - Building | Federal | LA - Western District | 1:15-cv-01719-DDD-JDK | 5/19/2015 |
| City of Hartford and Hartford Board of Education v. Monsanto (SOI)(PCBO | PCB - Building | Federal | CT - U.S. District | 2015-004301 | 10/23/2015 |
| Town of Princeton, MA v. Monsanto Company (SOI) (PCB) | PCB - Building | Federal | MA - U.S. District | 4:15-cv-40096-DJC | 7/1/2015 |
| Town of Westport and Westport Community Schools v. Monsanto (SOI) (PCB) | PCB - Building | Federal | MA - U.S. District | 1:14-CV-12041-DJC | 5/7/2014 |
| Alston, Bertha v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 12SL-CC01495 | 4/23/2012 |
| Aiken, Ronald v. Monsanto Company (SOI) (PCB Food chain case) | PCB - Food Chain | State | MO - St. Louis City | 1422-CC09436 | 8/15/2014 |
| Ashley, Jerry v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 12SL-CC01499 | 4/23/2012 |
| Bailey, Roger v. Monsanto Company (PCB Food Chain case) | PCB - Food Chain | State | MO - Eastern District | 15SL-CC01768 | 5/22/2015 |
| Blum, Robert J., Jr. v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 10SL-CC02866 | 6/28/2010 |
| Brownlee, Paul v. Monsanto Company (SOI) (PCB Food Chain) | PCB - Food Chain | State | CA - LA County | BC497582 | 12/14/2012 |
| Brown, Paulette v. Monsanto (SOI) (PCB Food Chain) | PCB - Food Chain | State | MO - St. Louis County | 12SL-CC01498 | 4/23/2012 |
| Burford, Kent N, et al. v. Monsanto, et al. (SOI) (PCB Food Chain case) | PCB - Food Chain | State | MO - St. Louis County | 16SL-CC00928 | 3/10/2016 |
| Burke, Angela v. Monsanto Co. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis City | 1222-CC10374 | |
| Carter, Kevin v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | CA - LA County | BC484608 | 5/11/2012 |
| Clair, Sanford v. Monsanto Company (SOI) (PCB) | PCB - Food Chain | State | MO-St. Louis County | 09SL-CC01964 | |
| Craig, Gary v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 12SL-CC01496 | 4/23/2012 |
| Dauber, Roslyn v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | CA - LA County | BC483342 | 4/23/2012 |
| Dublin, Sydell v. Monsanto (SOI) (PCB Food Chain) | PCB - Food Chain | State | MO - St. Louis County | 10SL-CC03822 | 9/22/2010 |
| Ferrell, Marinda v. Monsanto (SOI) (PCB Food Chain case) | PCB - Food Chain | State | MO - St. Louis City | 1322-CC08915 | 7/22/2013 |
| Gibson, Dennis L. v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - Eastern District | 11SL-CC04951 | |
| Goodman, Betty v. Monsanto (SOI) (PCB Food chain case) | PCB - Food Chain | State | MO - St. Louis City | 1322-CC09213 | 8/26/2013 |
| Granger, Jacqueline v. Monsanto Co. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | CA - LA County | BC459770 | 4/19/2011 |
| Guenther, Valerie Anna v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | CA - LA County | BC480068 | 3/5/2012 |
| Hearon, Leslie v. Monsanto (SOI) (PCB Food Chain) | PCB - Food Chain | State | MO - St. Louis County | 12S.-CC01497 | 4/23/2012 |
| Kelly, Thomas v. Monsanto Company (SOI) (PCB Food Chain case) | PCB - Food Chain | State | MO - St. Louis County | 15SL-CC03845 | 11/9/2015 |

EXHIBIT Q

EXHIBIT Q

| Case | Category | State/Federal | Jurisdiction | Case No. | Date |
|---|---|---|---|---|---|
| LaBarge, Dale L. v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO – St. Louis County | 12SL-CC01263 | 4/5/2012 |
| Mosby, Keith v. Monsanto Co. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 1122-CC02206 | 7/6/2012 |
| Murphy, Deborah D. v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO– St. Louis City | 1222-CLO9174 | 6/5/2012 |
| Naihe, Edward v. Monsanto (SOI) (PCB Food Chain) | PCB - Food Chain | State | MO - St. Louis County | 12SL-CC02117 | 5/1/2009 |
| Nishida Nicolas White, Ruth v. Monsanto and Solutia (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 09SL-CC01964 |  |
| Nunn, Mary vs. Monsanto Co. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis City | 1122-CC01207 | 3/10/2016 |
| Olson Kathleen R. v. Monsanto Company, et al. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 16SL-CC00919 |  |
| Rodriguez, Guillermo v. Monsanto Co. (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO - St. Louis County | 10SLCC03408 |  |
| Stapleton, Bernadette v. Monsanto (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO-St. Louis City | 1122CC09622 | 9/9/2011 |
| Varela, Jesse v. Monsanto (SOI) (PCB Food Chain) | PCB - Food Chain | State | MO-St. Louis City | BC509170 | 5/16/2013 |
| Walker, Benito v. Monsanto Company (SOI) (PCB Food Chain Case) | PCB - Food Chain | State | MO-St. Louis City | 1122CC09621 |  |
| Lamkin, Craig, et ux. v. Monsanto Company, et al. (SOI) (PCB) | PCB - Personal Injury | State | MA – Suffolk County | 16-0563 | 2/19/2016 |
| City of Berkeley v. Monsanto Company (SOI) (PCB) | PCB - Water Contamination | Federal | CA – Northern District | 5:16-cv-00071 | 1/6/2016 |
| City of Oakland v. Monsanto Company (SOI)(PCB) | PCB – Water Contamination | Federal | CA – Northern District | 4:15-cv-05152 | 11/10/2020 |
| City of San Jose v. Monsanto Company (SOI) (PCB) | PCB – Water Contamination | Federal | CA – Northern District | 5:15-cv-03178-NC | 7/10/2015 |
| City of Seattle v. Monsanto, et al. (SOI) (PCB) | PCB – Water Contamination | Federal | WA – Western District | 2:16-cv-00107 | 1/25/2016 |
| City of Spokane v. Monsanto Company (SOI) (PCB) | PCB – Water Contamination | Federal | WA – Eastern District | 2:15-cv-00201-SMJ | 7/31/2015 |
| Monsanto PCB Water Contamination Litigation (SOI) (PCB) | PCB – Water Contamination | Federal | Judicial Panel /Multidistrict | MDL No. 2697 | 1/28/2016 |
| San Diego Unified Port and City of San Diego v. Monsanto Co., et al. | PCB – Water Contamination | Federal | CA – Southern District | 3:15-cv-00578-WQH-JLB | 8/3/15 |
| City of Long Beach v. Monsanto Co., et al. | PCB-Water Contamination | Federal | CA – Central District | 2:16-cv-03493-FMO-AS | 5/19/16 |
| City of Portland v. Monsanto Co., et al. | PCB – Water Contamination | Federal | OR – Dist. of Oregon, Portland Division | 3:16-cv-1418-PK | 7/12/16 |

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**UNIVERSAL MANUFACTURING CORPORATION**

29-51 EAST SIXTH STREET, PATERSON, NEW JERSEY 07509 • PHONE: (201) 271-3100 • TWX NO. 710 988-5934

January 7, 1972

Mr. H.S. Bergen
Monsanto Company
P.O. Box 14617
St. Louis, Missouri  63178

Dear Mr. Bergen:

Enclosed is the undertaking you requested in connection with our purchase of PCB. As previously discussed, we are executing the undertaking in our own name and are excepting any liability arising from failure of the product to conform to specifications.

This undertaking will be covered by a blanket liability policy with the Travelers Insurance Company having limits of 10 million dollars. As of December 31, 1970, Universal's consolidated net worth was 16.8 million and its current ratio was 1.7 to 1.

Very truly yours,

UNIVERSAL MANUFACTURING CORPORATION

Paul H. Einhorn
President

PHE/paz

0167252

EXHIBIT Q

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Special Undertaking by Purchasers of Polychlorinated Biphenyls

Monsanto Company (Monsanto) manufacturers certain polychlorinated biphenyls products (PCB's) which Universal Manufacturing Corporation (Buyer) desires to purchase. While buyer desires to purchase PCB's because of certain desirable flame resistant and insulator properties, Buyer acknowledges that it is aware and has been advised by Monsanto that PCB's tend to persist in the environment; that care is required in the handling, possession, use and disposition; that tolerance limits have been or are being established for PCB's in various food products.

Monsanto has therefore adopted certain restrictive policies with respect to its further production, sale and delivery of PCB's, including the receipt of undertakings from its customers as set forth below, and Buyer is willing to agree to such undertakings with respect to sales and/or delivery of PCB's by Monsanto to Buyer.

Accordingly, Buyer hereby covenants and agrees that, with respect to any and all PCB's sold or delivered by or on behalf of Monsanto to Buyer on or after the date hereof and in consideration of any such sale or delivery, buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses (except to the extent arising from failure of PCB to conform with specifications) arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under Buyer, whether alone or in combination with any other substance, including without implied limitation, any contamination of or adverse effect on humans, marine and wildlife, food, animal feed or the environment by reason of such PCB's.

All existing contracts for the sale of PCB's by Monsanto to Buyer are hereby amended to contain the provision set forth above.

Nothing herein shall create or imply, any duty or obligation of Monsanto to sell or deliver any PCB's to Buyer. No conditions, undertakings or agreements purporting to modify the terms hereof shall be binding unless hereafter made in writing specifically referring to this agreement and signed by the party to be bound and no modification or variance of the above undertaking shall be effective by the acknowledgment or acceptance of any sale document, purchase order, shipping instructions or other forms containing terms or conditions at variance herewith.

Universal Manufacturing Corporation
                     (Buyer)

BY: _____

TITLE: President

DATE: January 7, 1972

MONSANTO COMPANY

BY: _____

0167253

EXHIBIT Q



**Phillips Lytle LLP**

<u>**VIA E-MAIL & U.S. MAIL**</u>                                          September 13, 2016

Christopher M. Hohn
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
chohn@thompsoncoburn.com


Re:  Monsanto's Purported Tender of Defense & Demand for Indemnification
     Under Special Undertaking dated January 7, 1972


Dear Mr. Hohn:

Please be advised that our firm has been retained to assist MagneTek in regards to your
correspondence dated August 29, 2016, addressed to Mr. Scott S. Cramer, purporting to:
(a) tender to MagneTek the defense of Monsanto Company ("New Monsanto"),
Pharmacia LLC f/k/a Monsanto ("Old Monsanto"), and Solutia Inc. (collectively,
"Monsanto") in the 46 cases identified in the accompanying attachment to your
correspondence; and (b) demanding that MagneTek indemnify Monsanto with respect
to any damages that might be awarded against Monsanto in those cases, pursuant to the
accompanying "Special Undertaking," dated January 7, 1972.

Initially, please note that Mr. Cramer is no longer with MagneTek and that any future
correspondence regarding this matter should, therefore, be directed to the undersigned.

Your correspondence is the first notice to MagneTek of the 46 cases identified in the
accompanying attachment, in spite of the fact that many of those cases have been
pending for years, at least one has already gone to trial and verdict, and another is
apparently set for trial this week.  Based upon the scant information that Monsanto has
provided, MagneTek presently has no reason to believe that it is required to either
defend or indemnify Monsanto and, therefore, rejects Monsanto's tender or demand.

ATTORNEYS AT LAW

CRAIG A. LESLIE, PARTNER  DIRECT 716 847 7012  CLESLIE@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | WASHINGTON, DC | CANADA: WATERLOO REGION | PHILLIPSLYTLE.COM

EXHIBIT R

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

Christopher M. Hohn                                        September 13, 2016
Page 2

MagneTek also reserves all of its rights with respect to Monsanto's tender and demand including, specifically, but without limitation, its right to specify further and additional grounds for rejecting the same as MagneTek's investigation of Monsanto's tender and demand continues.


Very truly yours,

Phillips Lytle LLP

By

Craig A. Leslie

CALram

EXHIBIT R

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM



**THOMPSON COBURN** LLP

One US Bank Plaza
St. Louis, MO 63101

314 552 6000 main
314 552 7000 fax
thompsoncoburn.com

**Christopher M. Hohn**

314 552 6159 direct
chohn@thompsoncoburn.com

December 23, 2016

**VIA FEDERAL EXPRESS**

Scott S. Cramer
N49 W13650 Campbell Drive
Menomonee Falls, Wisconsin 53051

Scramer@magnetek.com

***Protected Communication: Indemnitee-Indemnitor Privilege; Common Interest Doctrine***

Re:    Magnetek, Inc.'s obligations under Special Undertaking Agreement

Dear Mr. Cramer:

This letter is a follow-up to my August 29, 2016 correspondence to you regarding Magnetek, Inc.'s ("Magnetek") contractual obligation to defend and indemnify Monsanto in the pending PCB lawsuits referenced in my letter. Specifically, I write to suggest that we schedule a meeting to discuss our clients' respective positions regarding those obligations.

The information Monsanto previously provided demonstrates Magnetek's duty to defend Monsanto in the pending PCB litigation. The duty to defend is determined by comparing the allegations of the complaints to the language of the parties' agreement. Where the allegations give rise to a claim potentially within the scope of the agreement, the duty to defend arises. Monsanto has provided Magnetek with a copy of the Special Undertaking Agreement its predecessor in interest, Universal Manufacturing Corporation ("Universal"), entered into with Monsanto, and docket information to facilitate Magnetek's review of each individual complaint.[1] These materials are sufficient to demonstrate Magnetek's obligation to defend Monsanto in the pending litigation.

Magnetek has a duty to defend Monsanto in the pending litigation because the plaintiffs' allegations fall squarely within the scope of the Special Undertaking Agreement. Magnetek through its predecessor in interest, Universal, agreed to defend and indemnify Monsanto against

---

[1] As a courtesy, copies of the complaints are available for your review at the following link: https://thompsoncoburn.box.com/s/j00ik2j3ofpvm69xojoa3im88ic8afa1. We will provide the password needed to access these documents via separate correspondence.

**EXHIBIT S**

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

any and all liabilities, claims, and actions arising out of or in connection with Universal's "receipt, purchase, possession, handling, use, sale or disposition" of PCBs after January 7, 1972. The pending claims and actions fall within the scope of the agreement for several reasons. For example:

- The claims and actions "aris[e] out of or in connection with" Universal's post-January 1972. PCB *purchases*, because the plaintiffs seek to impose liability on Monsanto for its manufacture and sale of all PCBs, including those purchased by Universal after January 7, 1972.

- The claims and actions also arise out of or in connection with Universal's *possession, handling, use, sale, and/or disposition* of PCBs purchased after January 7, 1972, because plaintiffs assert injuries allegedly caused by general environmental and food chain exposure to PCBs, and Universal's possession, handling, use, sale and disposition of PCBs purchased after January 7, 1972 contributed to the amount of PCBs in the environment and food chain.

- Magnetek cannot credibly deny that Universal's possession, handling, use, sale and/or disposition of PCBs purchased after January 7, 1972 contributed to the amount of PCBs in the environment and food chain. Universal purchased almost 12 million pounds of PCBs after January 7, 1972, which led to the presence of PCBs in various locations across the country including the areas in and around Bridgeport, Connecticut and Totowa, New Jersey. In addition, in 1981, an EPA inspection report cited Universal for several violations including improper disposal and storage of PCBs.

- The claims and actions also arise out of or in connection with Universal's *possession, handling, use, sale, and/or disposition* of PCBs purchased after January 7, 1972, because the plaintiffs specifically allege that their injuries were caused by the improper dumping of PCBs into the environment by Monsanto's customers, which include Universal.[2]

Furthermore, Monsanto was recently served with a new Water Case: State of Washington v. Monsanto Company et al., Superior Court of King County, Washington. A copy of the complaint filed in this case is included in the link referenced in Footnote 1 above. In this action, the State of Washington asserts claims for public nuisance, product liability, negligence, equitable indemnity, and statutory trespass, seeking to recover for alleged injury to state natural

---

[2] These descriptions are only examples of the manner in which the allegations and claims made in the PCB litigation fall within the scope of the Special Undertaking Agreement; they should not be construed as an exhaustive list of the grounds on which Monsanto may seek defense costs and indemnity from Magnetek.

EXHIBIT S

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

resources, including waterways, clean-up costs, and other alleged damages. Magnetek has a duty to defend Monsanto in this case, as it does in the other Water Cases.

The claims asserted in the pending litigation arise out of or in connection with the PCBs Universal purchased after January 7, 1972 that have been released into the environment (whether by Universal or those to whom Universal sold them) in combination with all other PCBs in the environment. The Special Undertaking Agreement, by its express terms, includes liabilities arising out of "*or in connection with*" PCBs purchased after January 7, 1972 "*alone or in combination with other substances*." Thus, Magnetek has a duty to defend Monsanto in the litigation.

Since putting Magnetek on notice, Monsanto has incurred approximately $4.2 million in attorneys' fees defending the PCB litigation, and those fees continue to accrue. Monsanto also recently agreed to pay up to $280 million dollars to settle all of the pending PCB Food Chain Cases. Under the terms of the Special Undertaking Agreement and the governing law, each indemnitor, including Magnetek, is jointly and severally liable to Monsanto for its cost of defending the PCB litigation, as well as amounts paid to resolve the Food Chain Cases. Prejudgment interest is currently accruing on amounts Magnetek owes to Monsanto.

According to our sales records, Magnetek's predecessor in interest, Universal, purchased at least 11,918,600 pounds of PCBs from Monsanto after signing the Special Undertaking Agreement. That represents 8.34% of all PCBs purchased after January 1972 by domestic indemnitors who remain viable companies.

Monsanto would prefer to resolve the parties' disagreement over the scope of Magnetek's obligations under the Special Undertaking Agreement without resorting to formal litigation. Informal resolution of the dispute will be more cost-effective for both sides, and allow greater flexibility in crafting a solution. Please let us know by January 20, 2017, if we can schedule a meeting to discuss our respective clients' positions in the near term.

Please note that Monsanto expressly reserves all of its rights of any sort, at law or in equity, including but not limited to common law contribution and indemnity, in addition to those under the Special Undertaking Agreement, whether or not identified herein.

We would appreciate your prompt attention to this matter, and look forward to hearing from you.

Sincerely,

Thompson Coburn LLP

By Christopher M. Hohn
Partner

- 3 -

**EXHIBIT S**



Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

One US Bank Plaza
St. Louis, MO 63101

314 552 6000 main
314 552 7000 fax
thompsoncoburn.com

Christopher M. Hohn
314 552 6159 direct
chohn@thompsoncoburn.com

April 7, 2017

VIA ELECTRONIC & FIRST CLASS MAIL

Mr. Craig A. Leslie
Phillips Lytle LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
CLeslie@phillipslytle.com

> Re:    Informational Meeting to Discuss PCB Liabilities for Companies that Signed a
> Special Undertaking Agreement with Monsanto

Dear Mr. Leslie:

A number of companies signed a Special Undertaking Agreement with Monsanto in the early 1970s relating to their purchase of PCBs. Pursuant to those agreements, Monsanto has tendered the defense of certain PCB litigation to 26 companies, including Magnetek, Inc., and demanded indemnification from them for amounts paid by Monsanto in connection with such litigation.

Monsanto's discussions with those 26 companies are at various stages, but several companies have requested additional information regarding the litigation and their potential liability for defense costs and indemnification. For that reason, Monsanto will hold an informational meeting for all companies who wish to attend on May 16, 2017 at 10 a.m. The meeting will take place in St. Louis, Missouri at the offices of Thompson Coburn LLP. Additional details will be provided for those who plan to attend.

At the meeting, we will provide information regarding the indemnitors' shares of post-January 1972 PCB sales, the status of Monsanto's settlement of the Food Chain Cases, past and ongoing defense costs incurred in the PCB litigation, and options for resolving each company's liabilities outside the context of formal litigation. We also will allow time for a question and answer session. Please let us know by May 2, 2017 if you would like to attend the meeting, and who would be present at the meeting on behalf of Magnetek. If you have specific questions that you would like addressed at the meeting, please submit those questions in writing at least one week in advance of the meeting. Also, prior to attending the meeting, we will send you a Confidentiality Agreement for your review and execution.

According to our current assessment of Monsanto's sales records, Magnetek, Inc. and/or its predecessors purchased 11,918,600 pounds of PCBs from Monsanto after signing the Special Undertaking Agreement. That represents 8.16% of all PCBs purchased after January 1972 by

EXHIBIT T

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

April 7, 2017
Page 2

domestic indemnitors who remain viable companies.   While Magnetek is jointly and severally liable for the full amount of the $280 million Food Chain Cases settlement, a 8.16% share of that amount would equal $22,848,000.  Prejudgment interest is currently accruing on amounts Magnetek owes to Monsanto.

We hope you are able to attend the informational meeting next month, and that we can begin working toward an agreement regarding the amount Magnetek owes to Monsanto under the Special Undertaking Agreement.  We look forward to hearing from you.

Sincerely,

Thompson Coburn LLP

By
    Christopher M. Hohn
    Partner

CMH/rds

EXHIBIT T

Electronically Filed - St Louis County - January 19, 2018 - 04:37 PM

**Phillips Lytle** LLP

<u>**VIA EMAIL & U.S. MAIL**</u>                                                              May 1, 2017

Christopher M. Hohn, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MD  63101
(chohn@thompsoncoburn.com)


Re:    Monsanto v. Magnetek Inc., et al.


Dear Mr. Hohn:

As you know, our firm represents Magnetek Inc. ("Magnetek") in connection with Monsanto's demand for indemnification relative to PCB liabilities.  Please be advised that Magnetek plans to attend the May 16, 2017 informational meeting.  Magnetek's attendees will include Alan Korman, myself and my partner Joseph Schmit.

Very truly yours,

Phillips Lytle LLP

By

Craig A. Leslie

CALram
Doc #01-3036812.1


ATTORNEYS AT LAW

CRAIG A. LESLIE, PARTNER   DIRECT **716 847 7012**   CLESLIE@PHILLIPSLYTLE.COM

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE **716 847 8400**  FAX **716 852 6100**

NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER  |  WASHINGTON, DC  |  CANADA: WATERLOO REGION  |  PHILLIPSLYTLE.COM

**EXHIBIT U**

Electronically Filed - St. Louis County - January 19, 2018 - 04:37 PM



**Phillips Lytle** LLP

<u>**VIA EMAIL & U.S. MAIL**</u>                                                    May 9, 2017

Christopher M. Hohn, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO  63101
(chohn@thompsoncoburn.com)

Re:    Monsanto v. Magnetek Inc., et al.

Dear Mr. Hohn:

As indicated in my letter of May 1, 2017, Magnetek plans to attend the May 16, 2017 informational meeting.  Your previous correspondence indicated that additional details would be provided for those who plan to attend.  Please advise of those details.

Very truly yours,

Phillips Lytle LLP

By

Craig A. Leslie

CALbe
Doc #01-3038666.1

ATTORNEYS AT LAW

CRAIG A. LESLIE, PARTNER  DIRECT 716 847 7012  CLESLIE@PHILLIPSLYTLE.COM

**EXHIBIT V**

ONE CANALSIDE  125 MAIN STREET  BUFFALO, NY 14203-2887  PHONE 716 847 8400  FAX 716 852 6100
NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER  |  WASHINGTON, DC  |  CANADA: WATERLOO REGION  |  PHILLIPSLYTLE.COM