# Exhibit E4

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

———————————————————————

MONSANTO COMPANY, PHARMACIA, LLC,
and SOLUTIA, INC.,

                    Plaintiffs,                 Case No. 17SL-CC03368

          v.                       Hon. Dean Paul Waldemer

MAGNETEK, INC.,

                    Defendant.        **ORAL ARGUMENT**
                                        **REQUESTED**

———————————————————————

**MAGNETEK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS OR STAY THIS ACTION**

                    Respectfully submitted,

                    LEWIS RICE LLC
                    John M. Hessel, #26408
                    Scott. A. Wissel, #49085
                    600 Washington Avenue
                    Suite 2500
                    St. Louis, Missouri
                    Telephone No. (314) 444-7600

                    PHILLIPS LYTLE LLP
                    Craig A. Leslie (admitted *pro hac vice*)
                    Ryan A. Lema (admitted *pro hac vice*)
                    One Canalside
                    125 Main Street
                    Buffalo, New York 14203
                    Telephone No. (716) 847-8400

                    Attorneys for Defendant
                    *Magnetek, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................II

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT ..................................................................................................... 2

POINT I     MONSANTO PROVIDES NO REASON TO DISREGARD THE
            EARLIER-FILED ACTION PENDING IN NEW JERSEY...................... 2

            A.     The New Jersey Action is not "due to be dismissed," as
                   New Monsanto and Solutia are unquestionably subject
                   to jurisdiction there ............................................................... 2

            B.     This action is duplicative of the New Jersey Action, which
                   is at a more advanced stage................................................... 6

            C.     Monsanto was not deprived of its preferred forum by a
                   "race" to the courthouse ....................................................... 7

POINT II    MAGNETEK IS NOT SUBJECT  TO PERSONAL
            JURISDICTION IN MISSOURI ...................................................10

            A.     Magnetek is not subject to jurisdiction under Missouri's
                   Long Arm Statute...............................................................11

                   1.     The Special Undertaking was made in New Jersey ...............11

                   2.     UMC did not transact business in Missouri ...........................13

                   3.     UMC did not "insure" Monsanto..........................................15

                   4.     Magnetek did not commit tortious acts directed
                          at Missouri .........................................................................16

            B.     Magnetek lacks sufficient contacts with Missouri for the
                   Court to exercise personal jurisdiction within the limits
                   of Due Process ...................................................................17

POINT III   PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT
            MISREPRESENTATION ..........................................................20

CONCLUSION .........................................................................................21

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## TABLE OF AUTHORITIES

Page

**Cases**

*Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*,
   558 F.2d 450 (8th Cir. 1977) ......................................................................14

*Alfano v. AAIM Mgmt. Ass'n*,
   770 S.W.2d 743 (Mo. App. 1989) ..............................................................10

*Am. Estates Wines, Inc. v. Kreglinger Wine Estates PTY, LTD.*,
   No. 07-2474, 2008 WL 819993 (D.N.J. Mar. 25, 2008) .............................. 4

*Avaya Inc. v. Telecom Labs, Inc.*,
   No. 06-2490, 2014 WL 97335 (D.N.J. Jan. 7, 2014) ................................... 4

*BASF Corp. v. Symington*,
   50 F.3d 555 (8th Cir. 1995) ......................................................................8, 9

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*,
   53 F.3d 920 (8th Cir. 1995) .........................................................................17

*BHA Grp. Holding, Inc. v. Pendergast*,
   173 S.W.3d 373 (Mo. App. 2005) ...............................................................15

*Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.*,
   770 S.W.2d 416 (Mo. App. 1989) ...............................................................13

*Bruder v. Hillman*,
   No. A-3112-13T4, 2015 WL 3632122 (N.J. Super. Ct. App. Div. June 12,
   2015) .............................................................................................................. 3

*Bryant v. Smith Interior Design Grp., Inc.*,
   310 S.W.3d 227 (Mo. banc 2010) ...............................................................17

*Cepia, LLC v. Universal Pictures Visual Programming Ltd.*,
   177 F. Supp. 3d 1129 (E.D. Mo. 2016) ................................................. 17, 19

*Chromalloy Am. Corp. v. Elyria Foundry Co.*,
   955 S.W.2d 1 (Mo. banc 1997) .............................................................. 14, 15

*Clockwork Home Servs., Inc. v. Robinson*,
   423 F. Supp. 2d 984 (E.D. Mo. 2006) .......................................................... 8

*Conway v. Royalite Plastics, Ltd.*,
   12 S.W.3d 314 (Mo. banc 2000) .................................................................10

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

*CPC–Rexcell, Inc. v. La Corona Foods, Inc.*,
    912 F.2d 241 (8th Cir. 1990) ................................................................18

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
    702 F.3d 472 (8th Cir. 2012) ...............................................................11

*Electro-Craft Corp. v. Maxwell Electronics Corp.*,
    417 F.2d 365 (8th Cir.1969) ...............................................................14

*Eureka Pipe, Inc. v. Cretcher-Lynch & Co.*,
    754 S.W.2d 897 (Mo. App. 1988) ........................................................20

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014) ...............................................................10

*Hanson v. Denckla*,
    357 U.S. 235 (1958) .............................................................................17

*Hyams v. Halifax PLC*,
    No. A-1078-04T3, 2005 WL 3441230 (N.J. Super. Ct. App. Div.
    Dec. 16, 2005) ........................................................................................3

*Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*,
    587 F. Supp. 1105 (E.D. Mo. 1983), *aff'd*, 747 F.2d 448 (8th Cir. 1984) ........................16

*Jewell v. Jewell*,
    484 S.W.2d 668 (Mo. App. 1972) ..........................................................8

*Johnson Heater Corp. v. Deppe*,
    86 S.W.3d 114 (Mo. App. 2002) ....................................................12, 14

*Koch Materials Co. v. Shore Slurry Seal, Inc.*,
    205 F. Supp. 2d 324 (D.N.J. 2002) ........................................................4

*Lefever v. K.P. Hovnanian Enterprises, Inc.*,
    160 N.J. 307 (1999) ...............................................................................4

*Moog World Trade Corp. v. Bancomer*,
    90 F.3d 1382 (8th Cir. 1996) ...............................................................13

*Moore v. Christian Fidelity Life Ins. Co.*,
    687 S.W.2d 210 (Mo. App. 1984) ........................................................15

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
    406 F.3d 1052 (8th Cir. 2005) .............................................................20

*Mountaire Feeds, Inc. v. Agro Impex, S. A.*,
    677 F.2d 651 (8th Cir. 1982) ...............................................................14

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

*Nelson v. R. Greenspan & Co.*,
    613 F. Supp. 342 (E.D. Mo. 1985) ..................................................16

*New Dawn Nat. Foods, Inc. v. Nat. Nectar Corp.*,
    670 F. Supp. 869 (E.D. Mo. 1987) ..................................................14

*Polius v. Clark Equip. Co.*,
    802 F.2d 75 (3d Cir. 1986) .............................................................. 4

*Primus Corp. v. Centreformat Ltd.*,
    221 F. App'x 492 (8th Cir. 2007) ....................................................19

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) .......................................................... 3

*Romak USA, Inc. v. Rich*,
    384 F.3d 979 (8th Cir. 2004) ..........................................................19

*Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*,
    676 F.2d 309 (8th Cir. 1982) ................................................... 17, 18

*State ex rel. Barnes v. Gerhard*,
    834 S.W.2d 902 (Mo. App. 1992) ..................................................14

*State ex rel. Career Aviation Sales, Inc. v. Cohen*,
    952 S.W.2d 324 (Mo. App. 1997) ..................................................12

*State ex rel. Nixon v. Beer Nuts, Ltd.*,
    29 S.W.3d 828 (Mo. App. 2000) ....................................................14

*Sun World Lines, Ltd. v. Mar. Shipping Corp.*,
    585 F. Supp. 580 (E.D. Mo. 1984), *aff'd*, 801 F.2d 1066 (8th Cir. 1986)........................16

*T.S.E. Supply Co. v. Cumberland Natural Gas Co.*,
    648 S.W.2d 169 (Mo. App. 1983) ..................................................18

*Warner vs. Gen. Ins. Co. of Am.*, 690 F.Supp. 830, 836 (E.D. Mo. 1988) ...............................13

*Wellcraft Marine v. Lyell*,
    960 S.W.2d 542 (Mo. App. 1998) ..................................................20

*Wilson Tool & Die, Inc. v. TBDN-Tennessee Co.*,
    237 S.W.3d 611 (Mo. App. 2007) ..................................................12

*World-Wide Volkswagen Corp. v Woodson*,
    444 U.S. 286 (1980) .......................................................................17

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

*Wortham v. Karstadtquelle AG*,
   153 F. App'x 819 (3d Cir. 2005) (per curiam) ..............................................3, 4

**Statutes**

28 U.S.C. § 2201 ........................................................................................ 8

Mo. Rev. Stat. § 506.500.1 ................................................................ 13, 15, 16

**Other Authorities**

12 *Mo. Prac. Series, Jurisdiction Venue Limitations*, § 2:35 (3d ed. & Supp. 2017) ..................15

Restatement (Second) of Conflicts of Law § 188 .............................................10

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## PRELIMINARY STATEMENT

Defendant Magnetek, Inc. ("Magnetek") submits this reply memorandum in further support of its motion to dismiss the petition brought by Pharmacia, LLC ("Old Monsanto"), Monsanto Company ("New Monsanto") and Solutia, Inc. ("Solutia") (collectively, "Monsanto" or "Plaintiffs").

Although this action was commenced well after the earlier-filed New Jersey Action, Monsanto asserts (without support) that this action should proceed because the New Jersey Action will be dismissed (it will not), and because Magnetek engaged in an improper race to the courthouse (it did not). Monsanto is wrong all points, and this action should be dismissed or stayed in light of the already-pending New Jersey Action.

As to Magnetek's alternative argument on personal jurisdiction, Monsanto labors to connect Magnetek's predecessor, UMC, to Missouri – but Monsanto's own exhibits demonstrate that UMC lacked sufficient contacts with Missouri in connection with the Special Undertaking to permit an exercise of jurisdiction. The Special Undertaking itself was made in New Jersey, when UMC executed the document and accepted the terms offered by Monsanto. UMC's only other alleged contact with Missouri with respect to the Special Undertaking was to transmit order forms to Monsanto through the mail. The PCBs being ordered had no connection to Missouri, as they were manufactured by Monsanto in Sauget, Illinois, and were shipped from there to UMC's facilities in Totowa, New Jersey and Bridgeport, Connecticut. UMC was billed for its purchases in Paterson, New Jersey, and was instructed by Monsanto to remit payment to Monsanto in New York City. All of which demonstrates that Missouri's long-arm statute is not satisfied, and that UMC lacked sufficient contacts with Missouri for an exercise of jurisdiction to comport with due process.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Based on the foregoing, Magnetek respectfully requests that the Court enter an order dismissing or staying this action in favor of the earlier-filed New Jersey Action, or, alternatively, dismissing this action for lack of personal jurisdiction.

## ARGUMENT

## POINT I

**MONSANTO PROVIDES NO REASON TO DISREGARD THE EARLIER-FILED ACTION PENDING IN NEW JERSEY**

In opposition to Magnetek's motion to dismiss or stay this case in light of the earlier-filed New Jersey Action, Monsanto baldly asserts that the New Jersey Action is "due to be dismissed," notwithstanding that the New Jersey Court previously denied both of Monsanto's motions to dismiss. Monsanto also asserts that they are the "rightful" plaintiffs, and that Magnetek's commencement of an action in New Jersey was somehow improper. Both of these contentions are without merit, and this action should be dismissed or stayed in the interests of equity and comity.

**A.     The New Jersey Action is not "due to be dismissed," as New Monsanto and Solutia are unquestionably subject to jurisdiction there**

Although the New Jersey court previously denied their motions to dismiss, Plaintiffs continue to argue that New Monsanto and Solutia are not subject to jurisdiction in New Jersey, that the New Jersey action cannot proceed in their absence, and that the New Jersey action is therefore "due to be dismissed." Contrary to Monsanto's argument, Solutia and New Monsanto are subject to jurisdiction in New Jersey – based on Old Monsanto's extensive jurisdictional contacts in New Jersey, which are imputed to Solutia and New

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Monsanto as Old Monsanto's successors.[1]  Although the New Jersey court denied Monsanto's motion without prejudice to renew, a renewed motion by Monsanto will not be successful.

Like Missouri, New Jersey law recognizes the doctrine of successor jurisdiction, whereby a successor entity is deemed to have inherited the jurisdictional contacts of its predecessor.  *See, e.g., Bruder v. Hillman*, No. A-3112-13T4, 2015 WL 3632122, at *4 (N.J. Super. Ct. App. Div. June 12, 2015) (finding Virginia LLC that was successor to New Jersey partnership was subject to jurisdiction in New Jersey based on the predecessor's contacts); *Hyams v. Halifax PLC*, No. A-1078-04T3, 2005 WL 3441230, at *7 (N.J. Super. Ct. App. Div. Dec. 16, 2005) (predecessor corporation's minimum contacts with New Jersey sufficient to establish personal jurisdiction over successor); *see also Wortham v. Karstadtquelle AG*, 153 F. App'x 819, 825 (3d Cir. 2005) (per curiam) (recognizing "that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process") (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)).  Plaintiffs rely on this doctrine in support of their opposition here (Plt. Mem. at p. 8), while at the same time arguing that the doctrine does not apply in New Jersey (allegedly because Solutia and New Monsanto are not – according to them – successors of Old Monsanto).  This argument by Plaintiffs is not only internally inconsistent, it is entirely without merit and inconsistent with Plaintiffs' past representations to other courts.

---

[1]     Old Monsanto conceded that it was subject to personal jurisdiction in New Jersey by not raising a lack of jurisdiction as a defense.  *See* N.J. Ct. R. R. 4:6-7 (personal jurisdiction defense waived if omitted from a previously made motion).

Solutia and New Monsanto each took over entire lines of business from Old Monsanto, expressly assuming all associated liabilities in the process.[2] As a result, Solutia and New Monsanto are unquestionably Old Monsanto's successors as a matter of New Jersey law, and thus Old Monsanto's jurisdictional contacts are imputed to them. *See, e.g., See Wortham*, 153 F. App'x at 823; *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77-78 (3d Cir. 1986) (circumstances where successor liability applies includes the express or implied assumption of liabilities); *Lefever v. K.P. Hovnanian Enterprises, Inc.*, 160 N.J. 307, 310-12 (1999) (same); *Am. Estates Wines, Inc. v. Kreglinger Wine Estates PTY, LTD.*, No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008) (same); *see also Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F. Supp. 2d 324, 337 (D.N.J. 2002) (successor liability would exist where new company takes over an entire division of another corporation); *Avaya Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2014 WL 97335, at *1 n.5 (D.N.J. Jan. 7, 2014) (describing spun-off line of business as successor in interest to AT&T).

Indeed, when it has suited their purpose, Plaintiffs have acknowledged that Solutia and New Monsanto are Old Monsanto's successors in other litigation. For example, in *Ticona Polymers, Inc. v. Solutia, Inc.*, No. A-2266-06T1, 2008 WL 4162447 (N.J. Super. Ct. App. Div. Sept. 11, 2008), Solutia admitted in its Answer and Counterclaim that it was Old Monsanto's "corporate successor in interest." *See* Leslie Aff., Ex. B at p. 10. Even more telling, in connection with Solutia's prior Chapter 11 reorganization, Solutia wrote a

---

[2]     In support of Monsanto's motion to dismiss in New Jersey, Christopher Martin, an Assistant Secretary of New Monsanto, submitted an affidavit by which he certified certain, selected records related to the spin-off of New Monsanto and Solutia. A copy of Mr. Martin's September 1, 2017 affidavit ("Martin Aff.") is attached to the affidavit of Craig A. Leslie, sworn to February 2, 2018. Even the selective documents attached to the Martin Affidavit make clear that Old Monsanto and Solutia acquired *all* of Old Monsanto's assets related to the spun-off lines of business and expressly assumed *all* associated liabilities for each line of business. *See* Martin Aff., Ex. A, Art. 1 and § 2.01 (New Monsanto assumed "all of the Monsanto Liabilities" and "Delayed Transfer Liabilities"); Ex. G, Art. 1 and § 2.03; Ex. H, ¶¶ 1-2 (Solutia assumed, *inter alia*, all "Chemical Liabilities" from Old Monsanto).

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

memorandum to the bankruptcy court advocating approval of a Settlement Agreement wherein Solutia stated that the Separation Agreement between New Monsanto and Pharmacia imposed on New Monsanto the obligation to "assume and indemnify Pharmacia . . . for the liabilities Solutia *assumed in the spin-off* to the extent that Solutia failed to pay, perform or discharge them."[3]  Solutia also admitted that it "could remain liable for all of the legacy liabilities [which include Chemicals Liabilities, as defined above] that it *assumed at the spin-off* based on the doctrine of successor liability."  *Id.* at 35 (emphasis added).  And Solutia told the bankruptcy court that it would likely be found to be the successor to Old Monsanto's chemicals business because it expressly assumed the liabilities of that business, and that "***Solutia has not found a single case*** where a company that had assumed the liabilities of its predecessor was able to subsequently invalidate that assumption and avoid the imposition of successor liability."  *Id.* (emphasis added).

Because Solutia and New Monsanto are unquestionably successors of Old Monsanto for jurisdictional purposes, Old Monsanto's contacts with New Jersey are imputed to each of them – and they are subject to jurisdiction in New Jersey.  Any renewed motion to dismiss the New Jersey Action will be futile, and Magnetek submits that this Court should defer to that earlier-filed action by dismissing this action.  Even assuming that Plaintiffs may again move to dismiss the New Jersey Action at some point in the future, at a minimum this Court should stay this action indefinitely, to be revived only if the New Jersey Action is later dismissed.

---

[3]    *See* Memorandum of Law (Corrected) in Support of Solutia's Motion for Approval of the Monsanto Settlement and the Retiree Settlement, at 13, *In re Solutia Inc.,* 1:03-BK-17949 (Bankr. S.D.N.Y.  June 30, 2007) (ECF No. 3977) (emphasis added).

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Moreover, the fact that the disposition of this motion has already devolved into a discussion of New Jersey law and, in essence, an effort by Monsanto to re-argue jurisdictional motions that it lost in New Jersey, further highlights why Missouri recognizes the principles of equity and comity such that Missouri courts generally defer to first filed actions in other jurisdictions.

**B.    This action is duplicative of the New Jersey Action, which is at a more advanced stage**

Monsanto also asserts that this litigation is substantively different than the New Jersey Action.  Contrary to Monsanto's argument, the two lawsuits arise out of the same transactions and occurrences, and concern the same issues.  Nothing prevents Monsanto from asserting counterclaims in the New Jersey Action that mirror the claims it has asserted herein.  Thus, any alleged differences between the two actions are the result of Monsanto's own actions or inactions (and apparent legal strategy), and do not provide a basis for permitting this duplicative action to proceed.

Moreover, the New Jersey Action is at a more advanced stage than this action.  When the New Jersey court denied Monsanto's motion to dismiss, its Orders did not limit discovery to jurisdictional discovery, as Monsanto suggests.[4]  Monsanto's objections to Magnetek's discovery demands in New Jersey on that basis are entirely without merit,[5] but are indicative of what will happen if this court allows parallel litigation to proceed in two forums simultaneously – Monsanto is already engaging in delay tactics in

---

[4]    And, to the extent that Magnetek points to language in the New Jersey Court's opinion in support of its position, Magnetek disagrees with Monsanto's interpretation of that language – and expects that the New Jersey Court will be called upon in the coming weeks to clarify the scope of discovery currently permitted.

[5]    After Monsanto attempted to stonewall Magnetek's discovery demands in New Jersey, by raising a litany of objections, and producing not a single document, Magnetek sent a meet-and-confer letter to Monsanto.  A response to that meet-and-confer letter is pending, but Magnetek anticipates that a motion to compel will be required in order to obtain the discovery to which it is entitled.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

New Jersey in an effort to bolster its arguments in this forum, and would have every incentive to continue doing so in an effort to race to judgment in Missouri. Such a race to judgment, with its attendant duplication of expense and judicial resources – and risk of inconsistent outcomes – is exactly why Missouri courts generally defer to a first-filed action in another jurisdiction based on principles of equity and comity.

**C.    Monsanto was not deprived of its preferred forum by a "race" to the courthouse**

Finally, although Plaintiffs attempt to characterize Magnetek's commencement of the New Jersey action as being somehow improper or part of a "race" to the courthouse, Magnetek did not commence the New Jersey Action until almost nine (9) months after Plaintiffs initially tendered the defense and indemnity of forty-six (46) underlying lawsuits to Magnetek (which Magnetek rejected), and until over four (4) years after Monsanto first tendered a case to Magnetek pursuant to the Special Undertaking (which Magnetek also rejected). Leslie Aff. at ¶¶ 3-5. Moreover, at the time of Monsanto's 2016 demand, some of the forty-six (46) underlying cases tendered therein had been pending since 2009, with at least one of them having already gone to trial and verdict. *See* Hohn Aff.[6] at Ex. Q. Monsanto had every opportunity over the seven (7) intervening years to bring suit in Missouri, had it wished to do so. Instead, Monsanto waited to even tender forty-six (46) cases to Magnetek until it was on the verge of settling a group of such cases for $280 million dollars. *See id.* at Ex. S (December 23, 2016 letter indicating that "Monsanto also recently agreed to pay up to $280 million dollars to settle all of the pending PCB Food Chain Cases"). Thus, Magnetek did not engage in a race to the courthouse and Plaintiffs cannot claim that they were somehow unfairly deprived of the opportunity to litigate in their

---

[6]    Citations to the "Hohn Aff." are to the affidavit of Christopher M. Hohn, sworn to January 19, 2018.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

preferred forum.  Accordingly, there is no basis to depart from the general rule in favor of the first-filed action.  *See, e.g., Jewell v. Jewell*, 484 S.W.2d 668, 674 (Mo. App. 1972) ("parallel results [i.e. dismissal of the later-filed action] should normally be expected" as to cases pending in courts of different states).[7]

Given these facts, Monsanto's cited authorities (all of which are from federal courts or foreign jurisdictions) are inapposite.  For example, in *Clockwork Home Servs., Inc. v. Robinson*, 423 F. Supp. 2d 984, 993 (E.D. Mo. 2006), the Court observed that the declaratory judgment plaintiff filed its action *less than a week* after learning that its opposing party had engaged litigation counsel, evidencing a race to the courthouse.  No such race occurred here, where Monsanto had nearly a decade to commence litigation against Magnetek, had tendered cases to Magnetek as much as four (4) years earlier, and had been notified that Magnetek rejected Monsanto's tender no later than eight (8) months before Magnetek filed suit in New Jersey.

The *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995) case, cited by Monsanto, is also of no help to Monsanto – and instead supports Magnetek's position. There, the court considered under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, whether "exceptional circumstances" existed such that a federal court in North Dakota should defer to parallel state litigation.  Symington had commenced a tort claim against BASF in New Jersey and BASF then commenced *a later-filed action* in North Dakota seeking a declaration that Symington's tort claims were barred by North Dakota's statute of limitations.  *Id.* at 556.  The Eighth Circuit found that allowing the *later-filed* declaratory

---

[7]     To the extent that Monsanto also likes to call the New Jersey action merely a "placeholder," based upon an off-the-cuff remark by an attorney previously involved in this case on behalf of Magnetek, the detailed, twenty-three (23) page, multiple-count complaint filed by Magnetek in New Jersey should be more than sufficient to put to rest that threadbare – and baseless – contention once and for all.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

judgment action to proceed would deny the injured party her legitimate (and first-obtained) choice of forum, and that the federal court should therefore not have entertained the later-filed declaratory judgment action. *Id.* at 559. Thus, the decision in *BASF* lends no support to Monsanto here, where Magnetek's declaratory action was first filed. Moreover, in reaching its decision in *BASF*, the Eighth Circuit *expressly rejected* the argument that Monsanto advances here: that a party should be prohibited from raising affirmative defenses by declaratory judgment. *Id.* at 558. The Court recognized "that courts regularly consider the merits of affirmative defenses raised by declaratory plaintiffs," and that there is no blanket prohibition on such declaratory actions. *Id.*

Nor can Monsanto characterize Magnetek's filing in New Jersey as forum shopping. This dispute has a strong and compelling nexus to New Jersey. The Special Undertaking was made and entered into in New Jersey by a New Jersey corporation. (*See* Point II.A.1., *infra*). In connection with that Special Undertaking, Old Monsanto continued to sell PCBs to UMC for use in UMC's capacitor manufacturing at its Totowa, New Jersey plant (and those PCBs were sent from Illinois, with payment sent to Monsanto in New York). *See* Kaley Aff.[8], Exs. C (purchase orders) and D (invoices).

Monsanto's own allegations confirm this nexus. Monsanto's petition alleges that Magnetek is liable under the Special Undertaking because UMC released PCB's into the environment "from products manufactured by Defendant, improper disposal of PCB-containing products, leaks, accidental spills, improper dumping and disposal of industrial wastes, and through other means." *See* Petition at ¶¶ 55-56. Those allegations concern UMC's activities in New Jersey, where UMC incorporated PCBs into products at its

---

[8]    Citations to the "Kaley Aff." are to the affidavit of Robert G. Kaley, II PhD, sworn to January 18, 2018.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Totowa, New Jersey manufacturing plant.  Thus, many of the witnesses and documents

pertinent to this case are likely to be found in New Jersey, and New Jersey has a strong and

compelling interest in adjudicating this dispute.[9]  Accordingly, there is no basis to depart

from the general rule in Missouri that, in instances such as this one, the Court should defer

to the first-filed New Jersey Action under principles of equity and comity.

## POINT II

### MAGNETEK IS NOT SUBJECT
### TO PERSONAL JURISDICTION IN MISSOURI

As an alternative basis for dismissal, Magnetek is not subject to personal

jurisdiction in Missouri.  As discussed below, Monsanto has not, and cannot, meet its

burden of establishing specific jurisdiction over Magnetek in connection with the Special

Undertaking.[10]

Monsanto bears the burden of establishing that this Court has personal

jurisdiction over Magnetek.  *See Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo.

banc 2000).  In order for Magnetek to be subject to jurisdiction in this case, the suit must

satisfy Missouri's long-arm statute, and Magnetek must have sufficient **suit-related** contacts

with Missouri to satisfy due process.  *See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816,

824 (8th Cir. 2014) (finding a lack of personal jurisdiction where defendant's contacts with

Iowa in the course of contracting with Iowa corporation were insufficient for exercise of

---

[9]     Additionally, and contrary to Monsanto's conclusory assertion, New Jersey law should govern the
interpretation and enforcement of the Special Undertaking, which was made and entered by UMC in New
Jersey and contemplated UMC's performance from New Jersey.  *See Alfano v. AAIM Mgmt. Ass'n*, 770 S.W.2d
743, 746 (Mo. App. 1989) (trial court erred by finding Missouri law applied where questions of fact existed
under Restatement (Second) of Conflicts of Law § 188).  Monsanto's citation to boilerplate choice of law
provisions attached to separate purchase orders does not alter the analysis with respect to interpretation of the
Special Undertaking.

[10]    Monsanto effectively concedes that Magnetek is not subject to general jurisdiction in Missouri, as its
memorandum in opposition focuses solely on specific jurisdiction.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

long-arm jurisdiction consistent with due process); *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.,* 702 F.3d 472, 478–79 (8th Cir. 2012) (finding no personal jurisdiction over defendant in Missouri where no prior negotiations took place in Missouri and contract did not specifically contemplate coordination and processing of orders in Missouri; because contract was for a Colorado product delivered to Mexico and paid for in Illinois, plaintiff's administration of contract in Missouri was insufficient to confer personal jurisdiction in Missouri).

Although Monsanto strains to connect Magnetek or UMC to Missouri, the Special Undertaking was entered into in New Jersey. Additionally, as Monsanto's own exhibits demonstrate, the PCBs that Monsanto shipped to UMC in New Jersey and elsewhere were not shipped from Missouri, but from Monsanto's manufacturing facility in Sauget, Illinois. *See* Kaley Aff., Exs. C (purchase orders) and D (invoices). The PCB orders were shipped to UMC in Totowa, New Jersey and Bridgeport, Connecticut and billed to UMC in Paterson, New Jersey. *Id.* And Monsanto's own invoices called for payment to be made to Monsanto in New York. *Id.*

## A.   Magnetek is not subject to jurisdiction under Missouri's Long Arm Statute

### 1.   The Special Undertaking was made in New Jersey

Monsanto acknowledges the well-settled principle a contract is made where acceptance occurs, yet argues that the Special Undertaking was made in Missouri because Old Monsanto was, allegedly, the last to execute the document. Regardless of whether Monsanto's allegation concerning Old Monsanto's execution of the document is true, however, Monsanto's argument fails because the Special Undertaking only sets forth

obligations on behalf of UMC.  The contract was accepted and became binding on UMC, with its signature in New Jersey and was, therefore, "made" in New Jersey.

The act giving rise to a binding agreement occurs where, and when, one party accepts an offer.  *Wilson Tool & Die, Inc. v. TBDN-Tennessee Co.*, 237 S.W.3d 611, 615 (Mo. App. 2007) (contract made in Tennessee when defendant orally accepted plaintiff's offer from Tennessee); *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. App. 2002) (contract made in Wisconsin where offer accepted when defendant executed Purchase Acceptance form in Wisconsin and returned it to plaintiff's St. Louis office); *State ex rel. Career Aviation Sales, Inc. v. Cohen*, 952 S.W.2d 324, 326 (Mo. App. 1997) (contract made in California when agent executed agreement there, accepting the plaintiff's offer and thereby forming a contract sufficiently specific and definite in its terms so as to constitute an enforceable agreement).  Here, Monsanto's presentation of the Special Undertaking as a pre-condition to the continued sale of PCBs constituted an offer, and UMC's execution of the Special Undertaking in New Jersey constituted its acceptance of that offer and manifestation of its intent to be bound.  Indeed, the Special Undertaking sets forth only unilateral obligations on the part of UMC ("*Buyer* hereby covenants and agrees that . . .") and specifically disclaims any obligation on the part of Monsanto ("Nothing herein shall create or imply, any duty or obligation of Monsanto to sell or deliver any PCB's to Buyer").  *See* Kaley Aff., Ex. A (emphasis added).  Accordingly, the Special Undertaking did not require Monsanto's execution to be effective and was "made" in New Jersey.[11]

---

[11]    Although Monsanto's signature is irrelevant to this analysis, it is not clear that Monsanto was, as it claims, the last to execute the document.  Monsanto's own exhibits suggest that the executed copy of the Special Undertaking which UMC returned to Monsanto by letter dated January 7, 1972 already contained Monsanto's signature.  *See* Hohn Aff., Ex. Q (UMC's cover letter and the fully executed Special Undertaking produced together, as sequentially numbered documents).

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Finally, Monsanto attempts to point to purchase orders for PCBs as other contracts "made in Missouri." *See* Kaley Aff., Ex. C. Those purchase orders are entirely distinct and independent from Monsanto's claim that Magnetek breached the Special Undertaking, however, and are an insufficient basis to confer jurisdiction as to Monsanto's claims seeking to enforce the Special Undertaking. Monsanto's Petition does not assert any claims related to these old purchase orders, but instead seeks to enforce the Special Undertaking. These purchase orders therefore cannot (and do not) provide the type of suit-related contacts required to support an exercise of jurisdiction.

In any event, the purchase orders, too, were made in New Jersey – when they were issued by UMC. The purchase orders reflect Monsanto's quoted price per unit and thus constitute UMC's acceptance of Monsanto's open offer to sell PCBs at the quoted prices. *See, e.g., Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.,* 770 S.W.2d 416, 419 (Mo. App. 1989) (price quotes can amount to an offer creating the power of acceptance when detailed enough that purchaser can assent to the quote to ripen the offer into a contract).

## 2. UMC did not transact business in Missouri

UMC also did not engage in the transaction of business within Missouri. Under Missouri's long-arm statute, the cause of action must directly arise from the nonresident defendant's activities in the forum state. *Moog World Trade Corp. v. Bancomer*, 90 F.3d 1382, 1384 (8th Cir. 1996) (citing Mo. Rev. Stat. § 506.500.1). Telephone calls and written correspondence sent into Missouri do not amount to the "transaction of business" in Missouri. *See, e.g., Warner vs. Gen. Ins. Co. of Am.*, 690 F.Supp. 830, 836 (E.D. Mo. 1988) (nonresident's telephone calls and correspondence to Missouri residents regarding

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

note issued by residents did not constitute "transaction of business" in Missouri); *Johnson Heater Corp.*, 86 S.W.3d at 120; *State ex rel. Barnes v. Gerhard,* 834 S.W.2d 902 (Mo. App. 1992).

Monsanto's cited authorities are clearly distinguishable. For example, in *State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 835 (Mo. App. 2000), the defendant solicited Missouri residents and sold memberships in a beer purchasing program to them, allegedly making misrepresentations in connection with same. Thus, the defendant in *Beer Nuts* reached into Missouri to sell its goods to Missouri residents, whereas here, UMC merely ordered goods through the mail from a Missouri corporation (which goods came from outside of Missouri and payment for which was sent to New York). Missouri courts have recognized that a non-resident seller shipping goods into the forum state is much more amenable to jurisdiction than a non-resident buyer, as a seller subjects itself to amenability to suit in return for the right to compete for sales. *See New Dawn Nat. Foods, Inc. v. Nat. Nectar Corp.*, 670 F. Supp. 869, 873 (E.D. Mo. 1987) (citing *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir.1969)); *see also Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 655 (8th Cir. 1982) (seller's performance in the forum state did not create minimum contacts to support exercise of jurisdiction over non-resident buyer; "[i]t is the defendant's contacts with the forum state that are of interest in determining if *in personam* jurisdiction exists, not its contacts with a resident") (quoting *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.,* 558 F.2d 450, 455 n.6 (8th Cir. 1977)).

Monsanto's other cited authority, C*hromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1 (Mo. banc 1997), is even less applicable. *Chromalloy* involved claims arising out of the defendant's in-person negotiations in Missouri for the purchase of a foundry from

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

a Missouri business. *Id.* at 4-5. Accordingly, there is no merit to Monsanto's argument that UMC transacted business within Missouri.

**3.    UMC did not "insure" Monsanto**

Mo. Rev. Stat. § 506.500.1(5) extends Missouri's long-arm jurisdiction over any person who contracts to insure a person, property, or risk located within Missouri. Monsanto argues that a private indemnity agreement such as the Special Undertaking amounts to a contract of insurance for purposes of Section 506.500.1(5). Monsanto cites no authority in support of this contention, and Magnetek has not found any.

As previously discussed, Missouri commentators have explained that subsection (5) of the long-arm statute works to confer jurisdiction over non-resident insurance companies. 12 *Mo. Prac. Series, Jurisdiction Venue Limitations*, § 2:35 (3d ed. & Supp. 2017) (citing *Moore v. Christian Fidelity Life Ins. Co.*, 687 S.W.2d 210, 213 (Mo. App. 1984)). Based on the statute's plain language, it applies only to contracts "to insure," a specific term implicating a heavily regulated industry.[12] *See BHA Grp. Holding, Inc. v. Pendergast*, 173 S.W.3d 373, 378-79 (Mo. App. 2005) (plain and ordinary meaning of statutory terms should be applied). Had the legislature intended to include any contract providing for defense and indemnity, it could have done so. To hold otherwise would make a whole host of contracts made outside of Missouri containing boilerplate indemnity terms a sufficient basis to confer long-arm jurisdiction – an absurd result that is without any legal support.

---

[12]     Black's Law Dictionary (10th ed. 2014) defines "insure" as "1. To secure, by payment of a premium, the payment of a sum of money in the event of a loss. 2. To issue or procure an insurance policy on or for (someone or something)." Neither definition implicates a private defense and indemnity agreement.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**4.    Magnetek did not commit tortious acts directed at Missouri**

Finally, Magnetek did not commit tortious acts producing consequences in Missouri under Section 506.500.1(3).  Monsanto alleges two causes of action sounding in tort, but limits its argument under subsection (3) to its negligent misrepresentation cause of action.

In the first instance, as discussed below, Monsanto's negligent misrepresentation cause of action is subject to dismissal, and it necessarily follows that conduct specific to that cause of action cannot form the basis for an exercise of jurisdiction as to Plaintiffs' other claims.  Jurisdiction must be determined on a claim-by-claim basis, and the analysis of jurisdiction for a contract claim will necessarily differ from a tort claim. *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 587 F. Supp. 1105, 1110 (E.D. Mo. 1983), *aff'd,* 747 F.2d 448 (8th Cir. 1984) (separately analyzing declaratory judgment contract claim and tortious interference claim and finding a lack of sufficient contacts as to both); *Sun World Lines, Ltd. v. Mar. Shipping Corp.*, 585 F. Supp. 580, 585 (E.D. Mo. 1984), *aff'd,* 801 F.2d 1066 (8th Cir. 1986) ("[t]hose causes of action which do not provide a sufficient basis for *in personam* jurisdiction must be dismissed even if other claims have such a basis").

Even if Monsanto's negligent misrepresentation claim was sufficiently pleaded (which it is not), for extraterritorial acts to create jurisdiction in Missouri, those acts must set in motion a course of action that is *intentionally* designed to have consequences in Missouri.  *See Nelson v. R. Greenspan & Co.*, 613 F. Supp. 342, 345 (E.D. Mo. 1985) (*citing Sun World Lines, Ltd.*, 585 F. Supp. at 584).  Monsanto's lone authority does not hold otherwise, and Monsanto does not allege that any of UMC's conduct was intentionally

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

directed to produce consequences in Missouri. Indeed, *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010), that sole authority cited by Monsanto, concerned claims for fraudulent misrepresentation and fraudulent concealment – which were *intentional* misrepresentations directed to a Missouri resident. Accordingly, even if Monsanto's negligent misrepresentation claim was to survive this motion (which it should not), Monsanto's allegations here fail to satisfy the long-arm statute.

**B.    Magnetek lacks sufficient contacts with Missouri for the Court to exercise personal jurisdiction within the limits of Due Process**

Finally, the nature and quality of UMC's suit-related contacts with Missouri are negligible and do not amount to UMC having purposefully availed itself of Missouri law such that it could have reasonably anticipated being haled into Missouri's courts. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v Woodson*, 444 U.S. 286, 297 (1980).

As discussed above, the Special Undertaking itself was made in New Jersey, when UMC accepted the terms offered by Monsanto and manifested its intent to be bound by executing the instrument. And, even if the Special Undertaking could be deemed "made" in Missouri (which it cannot), an agreement by parties of different states is not itself sufficient to establish minimum contacts unless the defendant conducted activity giving rise to the cause of action that was directed toward the forum state. *See Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922–23 (8th Cir. 1995); *Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1139, 1143 (E.D. Mo. 2016) (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982)).

All of UMC's activities to enter into the Special Undertaking (and Magnetek's later alleged breach of the same) took place ***outside*** of Missouri. And although Monsanto

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

attempts to characterize UMC's purchase of PCBs as sufficient contacts with Missouri, those PCB purchases (1) are not directly connected to Monsanto's claims concerning the Special Undertaking and (2) UMC did not engage in meaningful contact with Missouri to acquire those PCBs. The entirety of UMC's contacts with Missouri in connection with its PCB orders consisted of mailing purchase orders. *See* Kaley Aff., Ex. C. It is well settled that communications by mail and telephone are insufficient contacts to support an exercise of jurisdiction and to satisfy the minimum contacts that the Constitution requires for the same. *Scullin Steel Co.*, 676 F.2d at 313 (holding that phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts); *T.S.E. Supply Co. v. Cumberland Natural Gas Co.*, 648 S.W.2d 169, 170 (Mo. App. 1983) (defendant's interstate mail and telephone calls to order and pay for goods from Missouri insufficient to satisfy due process as a matter of law); *see also CPC–Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241 (8th Cir. 1990).

All of the other activities in connection with UMC's PCB purchases took place outside of Missouri: Monsanto manufactured the PCBs in Sauget, Illinois, shipped them from Illinois to UMC in New Jersey and Connecticut, billed UMC in New Jersey, and requested that UMC pay Monsanto in New York. *See* Kaley Aff., Ex. D. Accordingly, UMC's activities related to the Special Undertaking itself, or to the purchase of PCBs, lack a sufficient nexus to Missouri to satisfy due process requirements.

Monsanto also attempts to highlight several instances where UMC representatives were physically present in Missouri. However, these visits to Missouri were unrelated to the Special Undertaking or Plaintiffs' claims here. Monsanto's first exhibit is a

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

letter referring to a meeting, apparently held sometime in 1970 – two years before the Special Undertaking was ever executed.  Kaley Aff., Ex. K.  The referenced meeting obviously had no connection to the Special Undertaking or related claims.

Monsanto also identifies UMC's attendance at a 1974 International Dielectrics Symposium in Missouri (seemingly a trade group meeting) (*see* Kaley Aff., Ex. M), and its attendance at a 1974 meeting to discuss EPA effluent standards (*see* Kaley Aff., Ex. L).  Neither meeting has any connection to the Special Undertaking, or to Monsanto's claims thereunder.

Finally, Monsanto identifies correspondence indicating that a UMC representative met with Monsanto in Missouri concerning *Monsanto's purchase* of capacitors from UMC.  Kaley Aff., Ex. N.  With respect to all four identified instances, UMC's physical presence in Missouri was unrelated to the Special Undertaking or to Plaintiffs' claims in this litigation.  Moreover, none of the identified visits to Missouri gave rise to the causes of action Monsanto asserts in this case.  *Cepia, LLC*, 177 F. Supp. 3d at 1139, 1143; *Primus Corp. v. Centreformat Ltd.*, 221 F. App'x 492, 494 (8th Cir. 2007) (three visits by defendant's employees to Missouri for training were attenuated contacts with the forum and the claims in the complaint did not arise out of those contacts), *citing Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) ("The cause of action must arise out of or relate to a defendant's activities within a state").

In sum, Monsanto's own documents reflect that the quantity and quality of UMC's contacts with Missouri were minimal, consisting primarily of written purchase orders sent from out of state.  In light of the foregoing, Monsanto has failed to demonstrate sufficient, purposeful contacts by UMC with Missouri to support an exercise of jurisdiction

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

consistent with traditional notions of fair play and substantial justice, and this action should be dismissed in its entirety.

**POINT III**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION**

Finally, if any part of this action survives this motion, the Court should still dismiss Monsanto's claim for negligent misrepresentation. Monsanto argues that if UMC was not negligent in representing that it had procured insurance coverage (Monsanto acknowledges that UMC did so, and attaches certificates of insurance to its motion papers), UMC was negligent by representing that its obligations (if any) under the Special Undertaking "will be covered" by the procured policy. But it is black letter law that a party cannot premise a negligent misrepresentation claim upon a promise that a third party will perform an act. *See Wellcraft Marine v. Lyell*, 960 S.W.2d 542, 547 (Mo. App. 1998) ("a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events," unless the statement is a representation of the speaker's present intention or concerns matters within the speaker's control) (citing *Eureka Pipe, Inc. v. Cretcher-Lynch & Co.*, 754 S.W.2d 897 (Mo. App. 1988)). A representation is not actionable if it concerns the future actions of an independent third party not under the control of the speaker. *Id.*; *see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). Here, the statement that the obligations "will be covered" concerns a third-party insurance carrier's decision to accept or deny coverage, and thus is non-actionable as an allegedly negligent misrepresentation. UMC expected Travelers to honor its policy when it procured it, but had no control as to whether Travelers would assert

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

defenses and disclaim coverage when a claim was made **over 40 years later**.  Accordingly, Monsanto's negligent misrepresentation claim should be dismissed.

## CONCLUSION

Based on the foregoing, Magnetek respectfully requests that the Court enter an Order dismissing Plaintiffs' petition in its entirety or, in the alternative, dismissing Plaintiffs' petition in part and otherwise staying this action pending the outcome of the first-filed action brought by Magnetek in New Jersey, together with such other and further relief as the Court deems just and proper.

LEWIS RICE LLC


By: _/s/ John M. Hessel_____
        John M. Hessel, #26408
        Scott. A. Wissel, #49085
600 Washington Avenue
Suite 2500
St. Louis, Missouri
Telephone No. (314) 444-7600
jhessel@lewisrice.com
sawissel@lewisricekc.com

PHILLIPS LYTLE LLP
Craig A. Leslie (admitted *pro hac vice*)
Ryan A. Lema (admitted *pro hac vice*)
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
cleslie@phillipslytle.com
rlema@phillipslytle.com

Attorneys for Defendant
*Magnetek, Inc.*

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to interested parties.


  /s/ Scott A. Wissel           


Doc #01-3097024

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

_____

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.,

                    Plaintiffs,

        v.

MAGNETEK, INC.,

                    Defendant.

_____

Case No. 17SL-CC03368

Hon. Dean Paul Waldemer

**REPLY AFFIDAVIT
OF CRAIG A. LESLIE**

STATE OF NEW YORK     )
                        ) ss:
COUNTY OF ERIE        )

        CRAIG A. LESLIE, being duly sworn, deposes and says:

        1.        I am a partner with Phillips Lytle LLP, counsel to defendant, Magnetek, Inc. ("Magnetek"). I am admitted to practice before the courts of the State of New York and have been admitted *pro hac vice* by this Court in connection with this matter. I am also admitted *pro hac vice* in Bergen County, New Jersey in connection with an existing action by Magnetek against these same plaintiffs.

        2.        I submit this affidavit in further support of Magnetek's motion to dismiss, and it is made based on my own personal knowledge.

        3.        The genesis of this dispute goes back to 2013, when plaintiff Pharmacia, LLC ("Old Monsanto") first tendered a PCB-related claim against it to Magnetek, allegedly pursuant to the Special Undertaking. Magnetek rejected that tender.

        4.        Plaintiffs Old Monsanto, Monsanto Company ("New Monsanto") and Solutia, Inc. ("Solutia") (collectively, "Monsanto" or "Plaintiffs") then waited until August 29, 2016 to tender forty-six (46) additional cases to Magnetek, allegedly pursuant to the

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Special Undertaking, some of which had been pending since 2009 (and at least one of which had already gone to trial and verdict).  Magnetek also rejected that tender.

5.    On May 12, 2017, Magnetek commenced a declaratory judgment action in New Jersey Superior Court, Law Division, Docket No. L-003362, seeking a declaration that the Special Undertaking is unenforceable, in whole or in part (the "New Jersey Action").

6.    Plaintiffs Pharmacia, LLC ("Old Monsanto"), Monsanto Company ("New Monsanto") and Solutia, Inc. ("Solutia") (collectively, "Monsanto" or "Plaintiffs") filed two separate motions to dismiss the New Jersey Action, which motions were denied. Copies of the orders denying the motions are attached as exhibits to the affidavit of Ryan A. Lema, sworn to December 8, 2017.

7.    In support of Monsanto's motion to dismiss on jurisdictional grounds, Christopher Martin, an Assistant Secretary of New Monsanto, submitted an affidavit wherein he certified certain records by which New Monsanto and Solutia were spun off from Old Monsanto.  A true and correct copy of Mr. Martin's September 1, 2017 affidavit, with exhibits, is attached hereto as Exhibit A.

8.    The corporate reorganization documents attached to Mr. Martin's affidavit make clear that New Monsanto and Solutia were created as wholly-owned subsidiaries of Old Monsanto to carry on entire divisions of Old Monsanto's business (the agricultural and chemical businesses, respectively) before being spun off to shareholders.  In connection with the transfer of those business divisions to the new companies, both New Monsanto and Solutia expressly agreed to assume all associated assets *and* liabilities of Old Monsanto.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

9.    In light of New Monsanto and Solutia's express assumption of liabilities to carry on divisions of the former Monsanto Company, New Monsanto and Solutia are both successors to Old Monsanto.

10.    Solutia has also previously acknowledged its status as Old Monsanto's successor.  In an action in New Jersey, *Ticona Polymers, Inc. v. Solutia, Inc.*, No. A-2266-06T1, 2008 WL 4162447 (App. Div. Sept. 11, 2008), Solutia admitted in its Answer and Counterclaim that it was Old Monsanto's "corporate successor in interest."  A true and correct copy of Solutia's Answer and Counterclaim is attached hereto as Exhibit B.

_____

Craig A. Leslie

Sworn to before me this
2nd day of February, 2018.

_____

Notary Public

RHONDA A. MILLER
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 2, 20__

Doc #01-3097183

- 3 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit A

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

WHITE AND WILLIAMS, LLP
The Legal Center – One Riverfront Plaza
1037 Raymond Blvd  Suite 230
Newark, New Jersey 07102
*Attorneys for Monsanto Company, Pharmacia LLC f/k/a Monsanto, and Solutia, Inc*

---

| | |
|---|---|
| MAGNETEK, INC, | : |
| | : SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | : LAW DIVISION: BERGEN COUNTY |
| | : |
| vs. | : |
| | : Docket No. BER-L-3362-17 |
| MONSANTO COMPANY, PHARMACIA | : |
| LLC f/k/a MONSANTO, and SOLUTIA, | : Civil Action |
| INC., | : |
| | : AFFIDAVIT OF CHRISTOPHER A. |
| Defendants. | : MARTIN IN SUPPORT OF MOTION |
| | TO DISMISS FOR LACK OF |
| | PERSONAL JURISDICTION |

---

Christopher A. Martin, of full age, certifies as follows:

1.     My name is Christopher A. Martin, and I am an Assistant Secretary of Monsanto Company.  The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief.  The statements contained herein are based on my personal knowledge or review of Monsanto Company records, except where based upon information provided by other employees of Monsanto Company, or persons working under their direction and supervision.

2.     I make this certification in support of Defendants, Monsanto Company and Solutia, Inc. ("Defendants") Motion to Dismiss the Complaint For Lack of Personal Jurisdiction pursuant to R  4:6-2(b).

3.     Attached hereto as **Exhibit A** is a true and correct copy of the September 1, 2000 Separation Agreement executed by Pharmacia Corporation and Monsanto Company.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

4.    Attached hereto as **Exhibit B** is a true and correct copy of excerpts from the February 28, 2008 Amended and Restated Settlement Agreement executed by Solutia Inc., Monsanto Company and SFC LLC.

5.    Attached hereto as **Exhibit C** is a true and correct copy of the February 15, 2013 Pharmacia LLC, Amendment to Power of Attorney: Settlement Agreement.

6.    Attached hereto as **Exhibit D** is a true and correct copy of Restated Certificate of Incorporation of Monsanto Company.

7    Attached hereto as **Exhibit E** is a true and correct copy of Second Amended and Restated Certificate of Incorporation of Solutia Inc.

8.    Attached hereto as **Exhibit G** is a true and correct copy of excerpts from the September 1, 1997 Distribution Agreement executed by Monsanto Company and Solutia Inc.

9.    Attached hereto as **Exhibit H** is a true and correct copy of the September 1, 1997 Assignment and Assumption Agreement executed by Monsanto Company and Solutia Inc.

10.    Attached hereto as **Exhibit I** is a true and correct copy of the Certificate of Formation of SFC LLC.

I hereby certify that the foregoing statements made by me are true to the best of my knowledge, information, and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on the _____ day of September, 2017

-2-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Christopher A. Martin
Assistant Secretary
Monsanto Company

Subscribed and sworn to before me
this __1__ day of September, 2017.

Notary Public
My Commission Expires: Oct. 24, 2020

LINDA HALEY
Notary Public - Notary Seal
STATE OF MISSOURI
Comm. Number 12409270
St. Louis County
My Commission Expires: Oct. 24, 2020

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit A

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

EXECUTION COPY

SEPARATION AGREEMENT

BY AND BETWEEN

PHARMACIA CORPORATION

AND

MONSANTO COMPANY

DATED AS OF SEPTEMBER 1, 2000

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

TABLE OF CONTENTS

Page

ARTICLE I

DEFINITIONS ................................................................................................. 1

    1.01    General ......................................................................... 2
    1.02    References to Time .................................................... 16

ARTICLE II

THE SEPARATION ........................................................................................ 16

    2.01    Transfer of Assets and Assumption of Liabilities ............... 16
    2.02    Certificate of Incorporation; Bylaws ............................ 17
    2.03    Financing Arrangements Effective on Separation Date ......... 17
    2.04    Intercompany Accounts ............................................ 17
    2.05    Monsanto Support Agreements ................................... 17

ARTICLE III

SURVIVAL, ASSUMPTION AND INDEMNIFICATION ........................... 17

    3.01    Survival of Agreements ............................................ 18
    3.02    Taxes ..................................................................... 18
    3.03    Assumption and Indemnification; Effect of Recovery Rights Against Insurers or Other Third Parties ......................... 18
    3.04    Procedure for Assumption or Indemnification ................. 21

ARTICLE IV

CERTAIN ADDITIONAL COVENANTS ................................................... 22

    4.01    Further Assurances ................................................. 22
    4.02    Pharmacia Employee Political Action Committee ............ 25
    4.03    Receivables Collection and Other Payments .................. 26
    4.04    Limited Leases, Licenses and Benefits of Certain Assets ... 26
    4.05    Monsanto's Use of Monsanto Assets Subject to IRBS ......... 26

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

ARTICLE V

ACCESS TO INFORMATION ...............................................................................27

    5.01    Provision of Corporate Records ...................................27
    5.02    Access to Information..................................................27
    5.03    Litigation Support and Production of Witnesses.........28
    5.04    Reimbursement............................................................28
    5.05    Retention of Records ...................................................28
    5.06    Privileged Information .................................................29
    5.07    Confidentiality.............................................................30

ARTICLE VI

DISPUTE RESOLUTION ....................................................................................31

    6.01    Step Process................................................................31
    6.02    Negotiation..................................................................31
    6.03    Mediation....................................................................31
    6.04    Arbitration ..................................................................31
    6.05    Injunctive Relief .........................................................32
    6.06    Remedies.....................................................................32
    6.07    Expenses......................................................................32

ARTICLE VII

NO REPRESENTATIONS OR WARRANTIES; EXCEPTIONS ...........................32

    7.01    No Representations or Warranties; Exceptions.............32

ARTICLE VIII

INSURANCE.........................................................................................................33

    8.01    Insurance Policies and Rights......................................33
    8.02    Administration and Reserves.......................................33
    8.03    Allocation of Insurance Proceeds; Cooperation ..........34
    8.04    Reimbursement of Expenses ........................................35
    8.05    Attempt to Obtain Insurer Endorsements.....................35
    8.06    No Reduction of Coverage...........................................35

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**ARTICLE IX**

SHARED CONTINGENT GAINS AND LIABILITIES .......................................................35

    9.01      Shared Contingent Gains...............................................................35
    9.02      Shared Contingent Liabilities........................................................36
    9.03      Payments ....................................................................................36
    9.04      Procedures to Determine Status of Shared Contingent Gains
               and Liabilities.............................................................................37

**ARTICLE X**

NON-COMPETITION ............................................................................................37

    10.01     Monsanto Non-Compete...............................................................38
    10.02     Pharmacia Non-Compete..............................................................38

**ARTICLE XI**

MISCELLANEOUS .................................................................................................38

    11.01     Conditions to Obligations.............................................................38
    11.02     Complete Agreement...................................................................38
    11.03     Other Agreements.......................................................................38
    11.04     Expenses....................................................................................38
    11.05     Governing Law............................................................................39
    11.06     Notices.......................................................................................39
    11.07     Amendment and Modification.......................................................40
    11.08     Successors and Assigns; No Third Party Beneficiaries....................40
    11.09     Counterparts..............................................................................40
    11.10     Interpretation ............................................................................40
    11.11     Legal Enforceability ...................................................................40
    11.12     References; Construction..............................................................40

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## SEPARATION AGREEMENT

THIS SEPARATION AGREEMENT, dated as of September 1, 2000 (as amended and supplemented pursuant to the terms hereof, this "Agreement"), is by and between Pharmacia Corporation, a Delaware corporation ("Pharmacia"), and Monsanto Company, a Delaware corporation ("Monsanto").

### W I T N E S S E T H:

WHEREAS, the Boards of Directors of Pharmacia and Monsanto have each determined that it would be appropriate and desirable for Pharmacia to contribute and transfer to Monsanto, and for Monsanto to receive and assume, directly or indirectly, certain assets and liabilities, as hereinafter described (the "Separation");

WHEREAS, Pharmacia currently owns all of the issued and outstanding common stock of Monsanto;

WHEREAS, Pharmacia and Monsanto currently contemplate that Monsanto will make an initial public offering ("IPO") of an amount of its common stock pursuant to a registration statement on Form S-1 filed under the Securities Act of 1933, as amended (the "IPO Registration Statement"), that will reduce Pharmacia's ownership of Monsanto to not less than 80.1%;

WHEREAS, Monsanto intends to use the proceeds of the IPO (including any proceeds from any sale of shares pursuant to the exercise of the managing underwriters' over-allotment option), net of underwriting discounts and commissions, to repay a portion of the commercial paper obligations issued by Pharmacia that Monsanto will assume from Pharmacia at the closing of the IPO (the "IPO Closing Date");

WHEREAS, Pharmacia and Monsanto intend that the contribution and assumption of assets and liabilities will qualify as a tax-free reorganization under Section 368(a)(1)(D) of the Internal Revenue Code of 1986, as amended (together with the regulations promulgated thereunder, the "Code"), and that this Agreement is intended to be, and is hereby adopted as, a plan of reorganization under Section 368 of the Code; and

WHEREAS, the parties intend in this Agreement, including the Exhibits and Schedules hereto, and the Other Agreements (as defined below) to set forth the principal arrangements between them regarding the Separation.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

ARTICLE I

DEFINITIONS

1.01    General.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

Action:  any demand, action, suit, countersuit, arbitration, inquiry, proceeding or investigation by or before any Governmental Authority or any arbitration or mediation tribunal.

Affiliate:  with respect to any specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person; provided, however, that for purposes of this Agreement, no member of either Group shall be deemed to be an Affiliate of any member of the other Group.

Arbitration Act:  the United States Arbitration Act, 9 U.S.C. §§ 1-14, 201-208, as the same may be amended from time to time.

Assets:  any and all assets, properties and rights (including goodwill), wherever located (including in the possession of vendors or other third parties or elsewhere), whether real, personal or mixed, tangible, intangible or contingent, in each case whether or not recorded or reflected or required to be recorded or reflected on the books and records or financial statements of any Person, including, without limitation, the following:

(i)    all accounting and other books, records and files whether in paper, microfilm, microfiche, computer tape or disc, magnetic tape or any other form;

(ii)    all apparatus, computers and other electronic data processing equipment, fixtures, trade fixtures, machinery, equipment, capital and other spares, furniture, office equipment, automobiles, trucks, aircraft, rolling stock, vessels, motor vehicles, trailers and other transportation equipment, special and general tools, test devices, prototypes and models and any other tangible personal property;

(iii)    all inventories of materials, raw materials, catalysts, precious metals, stores inventories, supplies, work-in-process, consigned goods and finished goods and products and product samples;

(iv)    all interests in real property of whatever nature, including easements, leases and licenses, whether as owner, mortgagee or holder of a Security Interest in real property, lessor, sublessor, lessee, sublessee or otherwise;

(v)    all buildings and other improvements to real property and all leasehold improvements;

-2-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(vi)     all interests in any capital stock, bonds, notes, debentures or other securities issued by any Subsidiary or any other Person, all loans, advances or other extensions of credit or capital contributions to any Subsidiary or any other Person, all certificates of deposit, bankers' acceptances, certificates of interest or participation in profit sharing agreements, collateral trust certificates, preorganization certificates or subscriptions, transferable shares, investment contracts, voting trust certificates, fractional undivided interests in oil, gas or other mineral rights, puts, calls, straddles, options and other securities of any kind;

(vii)     all license agreements, leases of personal property and other leases, operating agreements, open purchase orders for raw materials, supplies, parts or services, unfilled orders for the manufacture or sale of products, other sales or purchase agreements, other commitments or arrangements, permits, distribution arrangements, and other contracts, agreements or commitments;

(viii)     all deposits, letters of credit and performance and surety bonds;

(ix)     all technical information, data, specifications, research and development information, engineering drawings, operating and maintenance manuals, and materials and analyses prepared by consultants and other third parties; environmental clean-up technology, safety and industrial hygiene methods and technology;

(x)     all technology, domestic and foreign patents, statutory, common law and registered copyrights, trade names, registered and unregistered trademarks, service marks, service names, trade styles, product bar codes and associated goodwill, and registrations and applications for any of the foregoing, mask works, trade secrets, inventions, formulas, processes, designs, know-how, or other data or information, confidential information, other proprietary information and licenses from third Persons granting the right to use any of the foregoing and other rights in, to and under the foregoing (it being understood that the transfer of Assets described in this clause (x) shall be made pursuant to the Intellectual Property Agreements);

(xi)     all computer applications, programs and other software and databases (including all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements, enhancements, updates and accessions thereto), all technical manuals and documentation made in connection with the foregoing, and the right to sue for past infringement thereof, and all licenses and rights with respect to the foregoing or of like nature, including operating software, network software, firmware, middleware, design software, design tools, systems documentation and instructions;

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(xii)    all cost information, sales and pricing data, customer prospect lists, supplier records, customer and supplier lists, customer and vendor data, correspondence and lists, product literature, artwork, design, development and manufacturing files, vendor and customer drawings, formulations and specifications, quality records and reports, lists of advertisers, records pertaining to advertisers and accounts, and other books, records, studies, surveys, reports, plans and document forms and any other business information;

(xiii)    all prepayments or prepaid expenses, trade accounts and other accounts and notes receivable and all other current assets;

(xiv)    the right to receive mail, payments on accounts receivable and other communications;

(xv)    all rights under contracts, agreements, warranties or guaranties, all claims or rights or judgments against any Person, all rights in connection with any bids or offers and all claims, choses in action, rights of recovery and rights of set-off or similar rights, whether accrued or contingent, refunds and deposits;

(xvi)    all rights under insurance policies and all rights in the nature of insurance, indemnification or contribution;

(xvii)    all licenses, permits, approvals and authorizations which have been issued by any Governmental Authority;

(xviii)    advertising materials and other printed or written materials;

(xix)    employee contracts, including any rights thereunder to restrict an employee or former employee from competing in certain respects, and personnel and medical files and records;

(xx)    cash, cash equivalents, bank accounts, lock boxes and other deposit arrangements; and

(xxi)    interest rate, currency, commodity or other swap, collar, cap, floor, or other hedging or similar agreements or arrangements.

Beneficiary:  as defined in Section 4.01(d) hereof.

Business Day:  any day other than a Saturday, a Sunday or a day on which banking institutions located in the States of Missouri, New Jersey or New York are authorized or obligated by law or executive order to close.

Business Transfer Agreements:  the agreements (i) which have been or will be entered into between (a) certain wholly-owned Monsanto Subsidiaries incorporated, or having a branch or presence, outside the United States and (b) certain wholly-owned Pharmacia Subsidiaries

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

incorporated, or having a branch or presence, outside the United States, providing for the separation of Monsanto Assets and Monsanto Liabilities from the Pharmacia Assets and the Pharmacia Liabilities outside the United States, including without limitation, those agreements which are required by local law or are executed in connection with or to implement such separation; and (ii) which will provide for the assignment from the Pharmacia Group to the Monsanto Group of certain Monsanto Assets and the assumption by the Monsanto Group of certain Monsanto Liabilities in accordance with Section 2.01.

Claims Administration:  the processing of claims made under the Insurance Policies, including the reporting of claims to the insurance carrier, management and defense of claims and providing for appropriate releases upon settlement of claims.

Claims Handling Agreement:  any third party administrator or claims handling agreement of any kind or nature to which any member of either Group is directly or indirectly a party, in effect as of the date hereof, related to the handling of Insured Monsanto Claims.

Code:  as defined in the recitals to this Agreement.

Contingent Gain: any claim or other right of any member of any Group, whenever asserted, against any Person other than any member of any Group if and to the extent that (i) such claim or right has accrued as of or prior to the Separation Date (as described below) and (ii) a senior vice president, treasurer or more senior officer of Pharmacia did not have actual knowledge of the existence of the claim or right against such other Person as of the Separation Date.  A claim or right meeting the foregoing definition shall be considered a Contingent Gain regardless of whether there was any Action pending, threatened or contemplated as of the Separation Date with respect thereto.  For purposes of the foregoing, a claim or right shall be deemed to have accrued as of the Separation Date if all the elements of the claim necessary for its assertion shall have occurred on or prior to the Separation Date, such that the claim or right, were it asserted in an Action on or prior to the Separation Date, would not be dismissed by a court on ripeness or similar grounds.  Notwithstanding the foregoing, none of (i) any Insurance Proceeds, (ii) any Excluded Monsanto Assets, (iii) any reversal of any litigation or other reserve or (iv) any matters relating to Taxes (which are governed by the Tax Sharing Agreement) shall be deemed to be a Contingent Gain.

Contingent Liability: any Liability of any member of any Group, whenever asserted, to any Person other than any member of any Group, if and to the extent that (i) such Liability has accrued as of or prior to the Separation Date (as described below) and (ii) a senior vice president, treasurer or more senior officer of Pharmacia did not have actual knowledge of the existence of the obligation of such member as of the Separation Date (it being understood that the existence of a litigation or other reserve with respect to any Liability shall not be deemed to have been sufficient in and of itself to have provided actual notice of the existence of such obligation).  In the case of any Liability a portion of which had accrued as of the Separation Date and a portion of which accrues after the Separation Date, only that portion that had accrued (as described below) as of the Separation Date shall be considered a Contingent Liability.  For purposes of the foregoing, a Liability shall be deemed to have accrued as of the Separation Date if all the

-5-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

elements of the claim necessary for the assertion of a claim with respect to such Liability shall have occurred on or prior to the Separation Date such that the claim, were it asserted in an Action on or prior to the Separation Date, would not be dismissed by a court on ripeness or similar grounds.  For purposes of clarification of the foregoing, the parties agree that no Liability relating to, arising out of or resulting from any obligation of any Person to perform the executory portion of any contract or agreement existing as of the Separation Date, or to satisfy any obligation accrued under any Plan (as defined in the Employee Benefits and Compensation Allocation Agreement) as of the Separation Date, shall be deemed to be a Contingent Liability. Notwithstanding the foregoing, none of (i) any retrospectively rated premiums for coverage under the Insurance Policies, (ii) any Excluded Monsanto Liabilities, (iii) any increase of any litigation or other reserve or (iv) any matters relating to Taxes (which are governed by the Tax Sharing Agreement) shall be deemed to be a Contingent Liability.

Corporate Agreement:  the agreement which has been or will be entered into on or prior to the Separation Date between Pharmacia and Monsanto substantially in the form attached hereto as Exhibit C-1 providing for corporate governance, registration and certain other shareholder rights of Pharmacia, with such changes as may be mutually agreed to by Pharmacia and Monsanto.

Credit Agreements: The U.S. $1,000,000,000 364-Day Credit Agreement, and the U.S. $500,000,000 Five Year Credit Agreement, each dated as of August 8, 2000, and each entered into among Monsanto Company and Pharmacia Corporation as Borrowers, the initial lenders named therein, Citibank, N.A. as administrative agent, and the other agents named therein.

Delayed Transfer Assets:  (i) any Monsanto Assets, not including Intercompany Items, that cannot practicably be transferred to or retained by a member of the Monsanto Group on or prior to the Separation Date or for which this Agreement or any Other Agreements expressly provide for transfer to the Monsanto Group after the Separation Date, or (ii) any Pharmacia Assets, not including Intercompany Items, that cannot practicably be transferred to or retained by a member of the Pharmacia Group on or prior to the Separation Date or for which this Agreement or any Other Agreements expressly provide for transfer to the Pharmacia Group after the Separation Date.

Delayed Transfer Liabilities:  (i) any Monsanto Liabilities, not including Intercompany Items, that cannot practicably be transferred to or retained by a member of the Monsanto Group on or prior to the Separation Date or for which this Agreement or any Other Agreements expressly provide for assumption by the Monsanto Group after the Separation Date, or (ii) any Pharmacia Liabilities, not including Intercompany Items, that cannot practicably be transferred to or retained by a member of the Pharmacia Group on or prior to the Separation Date or for which this Agreement or any Other Agreements expressly provide for assumption by the Pharmacia Group after the Separation Date.

Dispute: as defined in Section 6.01 hereof.

Employee Benefits and Compensation Allocation Agreement: an employee benefits and compensation allocation agreement to be entered into between Pharmacia and Monsanto

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

substantially in the form attached hereto as Exhibit E-1, with such changes as may be mutually agreed to by Pharmacia and Monsanto.

Excluded Monsanto Assets: those Assets listed on Schedule E-1.

Excluded Monsanto Liabilities: all Liabilities related to the IRBs and those Liabilities listed on Schedule E-2.

Ex-U.S. Debt: outstanding, non-intercompany debt for which Monsanto Subsidiaries organized under the laws of jurisdictions outside the United States or operating outside the United States are the obligors and Pharmacia is in certain cases the guarantor, and for which, from and after the Separation Date, such Monsanto Subsidiaries will continue as obligors and, if Pharmacia is the guarantor, Monsanto will indemnify Pharmacia as guarantor.

Financing Facility: the commercial paper facility, including the Issuing and Paying Agency and Assignment and Assumption Agreement, to be entered into prior to the IPO Closing Date by Pharmacia, Monsanto, and an agent or co-agents selected by Pharmacia, pursuant to which, prior to the IPO Closing Date, Pharmacia will issue assumable commercial paper equal to:

       (1)     $1.8 billion, plus

       (2)     cash held by the Monsanto Group on the Separation Date, net of overdrafts, plus

       (3)     the projected cash flow of the Monsanto Group to be available for repayment of debt principal for the period from September 1, 2000 through December 31, 2000, as reflected in an updated forecast to be agreed upon between Monsanto and Pharmacia prior to the printing of the preliminary prospectus for the IPO, plus

       (4)     the amount of any intercompany receivables from a member of the Pharmacia Group held by the Monsanto Group, less any intercompany payables owed to a member of the Pharmacia Group by the Monsanto Group, in each case arising from the asset transfers in connection with the Separation, plus

       (5)     the product of (a) (the initial public offering price per share less the underwriters' discount per share) and (b) (the number of shares of Monsanto Common Stock offered in the IPO, including 50% of the shares issuable upon exercise of the underwriters' overallotment option), less

       (6)     the amortized principal amount as of the Separation Date of the Medium Term Notes and the Ex-U.S. Debt assumed or retained by the Monsanto Group on the Separation Date.

Foreign Exchange Rate: with respect to any currency other than United States dollars as of any date, the average of the bid and asked rates at 9:00 a.m., New York City time, on such

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

date at which such currency may be exchanged for United States dollars as quoted by Citibank, N.A., except that, with respect to any Indemnifiable Loss covered by insurance, the Foreign Exchange Rate for such currency shall be determined as set forth in Section 3.03(c)(2).

Former Agriculture Business:  those businesses and operations that were formerly operated by Pharmacia as part of its agricultural or chemical subsidiaries, units or divisions and which have been sold, or otherwise disposed of, or discontinued prior to the Separation Date including but not limited to those businesses and operations set forth on Schedule F-1 but excluding, without limitation (except to the extent set forth on such Schedule), (i) businesses and operations conducted by Pharmacia & Upjohn, Inc., Searle or their Subsidiaries or predecessors, and (ii) businesses and operations conducted by any Former Pharmacia Business.

Former Pharmacia Business:  those businesses and operations that were formerly operated by Pharmacia & Upjohn, Inc., Searle or Pharmacia (other than a Former Agriculture Business) which have been sold, or otherwise disposed of, or discontinued prior to the Separation Date, including but not limited to (i) shut down or sold plant sites and businesses associated with product families that continue in the Pharmacia Group; (ii) shut down or sold plant sites and businesses previously closely integrated (supply chain) with upstream or downstream Pharmacia subsidiaries, units or divisions other than a Former Agriculture Business; and (iii) businesses or operations primarily relating to any of the following: (a) pharmaceuticals; (b) personal care products; (c) vision care (including Orcolite and Diamonex) products; (d) controls or control valves (e.g., Fisher Controls); (e) gas products (e.g., Matheson); (f) electron beam accelerator (e.g., Radiation Dynamics, Inc.); (g) hollow fibers (e.g., Permea); (h) the nutrition and consumer business (except lawn & garden and nutrition platform); (i) the Research Triangle Park site; (j) metalized fabrics; (k) alginates and biogums; (l) sorbates; (m) the North Haven site; (n) The Upjohn Company's ownership of Asgrow Seed Company LLC from 1982 to 1994, except for the matters listed on Schedule M-7; and (o) radiation services and products].

Governmental Authority:  any federal, state, local, foreign or international court, government, department, commission, board, bureau or agency, or any other regulatory, administrative or governmental authority, including the NYSE.

Group:  the Pharmacia Group or the Monsanto Group, as the context requires.

Holder:  as defined in Section 4.01(d) hereof.

Indemnifiable Losses:  all Losses which are subject to being indemnified or assumed by Pharmacia or Monsanto pursuant to Article III.

Indemnifying Party:  a Person who or which is obligated under this Agreement to provide indemnification or to otherwise assume liability for Losses.

Indemnitee:  a Person who may seek indemnification under this Agreement or otherwise enforce an Indemnifying Party's obligations hereunder to assume Losses.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**Indemnity Payment**: an amount that an Indemnifying Party is required to pay to an Indemnitee pursuant to Article III.

**Information**: all records, books, contracts, instruments, computer data and other data and information.

**Insurance Administration**: with respect to each Insurance Policy, (1) the accounting for retrospectively-rated premiums, defense costs, indemnity payments, deductibles and retentions as appropriate under the terms and conditions of each of the Insurance Policies, (2) the reporting to excess insurance carriers of any losses or claims which may cause the per-occurrence or aggregate limits of any Insurance Policy to be exceeded and (3) the distribution of Insurance Proceeds as contemplated by this Agreement.

**Insurance Policy**: insurance policies and insurance contracts of any kind that as of the effective date of this Agreement are or have been owned or maintained by, or provide a benefit in favor of, any member of either Group or any of its predecessors, including without limitation, primary, umbrella and excess comprehensive general liability policies; automobile insurance policies, aviation and aircraft insurance policies, worker's compensation insurance policies (including without limitation policies covering occupational disease), property, casualty and business interruption insurance policies, fiduciary insurance policies, fidelity insurance policies, directors and officers liability insurance policies (including any such policy for directors and officers liability which has been purchased to provide occurrence coverage for both continuing and former directors, officers and employees for claims arising from or relating to events, occurrences or other matters prior to or on the Separation Date). The term "Insurance Policy" expressly includes any insurance policies or insurance contracts issued by MonSure Ltd., a Bermuda corporation, and MonGard Ltd., a Bermuda corporation but excludes any insurance policies relating to Plans to the extent such insurance policies are addressed under the Employee Benefits and Compensation Allocation Agreement.

**Insurance Proceeds**: those monies received by or on behalf of an insured from an insurance carrier or paid by an insurance carrier on behalf of the insured.

**Insured Claims**: any claim with respect to those Losses that, individually or in the aggregate, are covered within the terms and conditions of any of the Insurance Policies, whether or not subject to deductibles, coinsurance, uncollectibility or retrospectively-rated premium adjustments, but only to the extent that such Losses are within applicable Insurance Policy limits, including aggregates.

**Insured Monsanto Claim**: any claim with respect to any Loss or expense that is or was incurred prior to the Separation Date that is against any member of the Monsanto Group or any employee of any member of the Monsanto Group; provided, that in the case of any such claim or any claims identified in (i) through (v) below, such Loss or expense (including costs of defense and reasonable attorneys' fees) are or may be insured or insurable under one or more of the Insurance Policies. Insured Monsanto Claims include, without limitation, (i) claims for property or casualty damage or any other Loss or expense with respect to Monsanto Assets; (ii) claims of Loss or expense arising from business interruption of any type of the Monsanto Business or

-9-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Former Agriculture Business; (iii) claims against any member of the Monsanto Group whether or not the Monsanto Group has or has assumed liability for such claims under this Agreement or any of the Other Agreements; (iv) claims against any member of the Pharmacia Group to the extent any member of the Monsanto Group has assumed liability for such claims under this Agreement or any of the Other Agreements; and (v) claims involving or against any director, · officer, employee, fiduciary or agent of the Monsanto Group who are entitled or would have been entitled to indemnification by Pharmacia had the Separation not occurred.

Intellectual Property Agreements: the Intellectual Property Transfer Agreement, substantially in the form attached hereto as Exhibit I-1, together with various agreements attached thereto as exhibits, with such changes as may be mutually agreed, which have been or will be entered into on or prior to the Separation Date between Pharmacia and Monsanto or members of their respective Groups with respect to transfer and licensing of intellectual property.

Intercompany Items: as defined in Section 2.04 hereof.

IPO: as defined in the recitals to this Agreement.

IPO Closing Date: as defined in the recitals to this Agreement.

IPO Registration Statement: as defined in the recitals to this Agreement.

IRB: the arrangements relating to or arising out of any one or more of the following to the extent that it relates to a Monsanto Asset: (1) Cumberland County PCRBs, Series 1990, issued on October 1, 1990 in the amount of $4,815,000; (2) Cumberland Co. PCRBs, Series 1992, issued on September 1, 1992 in the amount of $2,715,000; (3) Muscatine PCRBs, Series 1992, issued on September 1, 1992 in the amount of $15,500,000; and (4) Parish of St. Chas., LA, PCRBs 1994 Var., issued on March 30, 1994 in the amount of $11,725,000.

Issuing and Paying Agency and Assignment and Assumption Agreement: an issuing and paying agency and assignment and assumption agreement to be entered into among Pharmacia, Monsanto, and an agent or co-agents selected by Pharmacia as part of the Financing Facility.

Lease Agreements: the lease agreements which have been or will be entered into between Pharmacia and Monsanto, or the appropriate members of the Pharmacia Group and the Monsanto Group, with respect to the facilities listed on Schedule L-1.

Liabilities: all debts, liabilities, guarantees, assurances, commitments and obligations, whether fixed, absolute or contingent, asserted or unasserted, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, known or unknown, due or to become due, whenever arising, and whether or not the same would be required by generally accepted accounting principles to be reflected on a balance sheet, including costs, expenses and losses relating thereto.

Litigation Matters: as defined in Section 5.06(a) hereof.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Losses:  with respect to any Person, all losses, Liabilities, damages, claims, demands, judgments or settlements of any nature or kind, known or unknown, fixed, accrued, absolute or contingent, liquidated or unliquidated, including all costs and expenses (legal, accounting or otherwise as such costs are incurred) relating thereto, including punitive damages and criminal fines and penalties, but excluding damages in respect of actual or alleged lost profits, suffered by such Person, regardless of whether any such losses, Liabilities, damages, claims, demands, judgments, settlements, costs, expenses, fines and penalties relate to or arise out of such Person's own alleged or actual negligent, grossly negligent, reckless or intentional misconduct.

MCF:  Monsanto Citizenship Fund.

Medium-Term Notes:  certain obligations relating to the medium-term bank notes issued by MOBRAS, and related agreements listed on Schedule M-1, reflected on the Monsanto Balance Sheet in the aggregate principal amount of $502 million.

MOBRAS:  Monsanto do Brasil Ltda., a Brazil corporation.

Monsanto:  as defined in the preamble to this Agreement.

Monsanto Assets:  excluding the Excluded Monsanto Assets, (1) except as expressly provided in the Other Agreements, all Assets included on the Monsanto Balance Sheet or the accounting records supporting the Monsanto Balance Sheet as adjusted by the pro forma adjustments thereto as set forth in the IPO Registration Statement and all Assets of either Group acquired between June 30, 2000 and the Separation Date which would have been included on the Monsanto Balance Sheet had they been owned on June 30, 2000, excluding any Assets sold or otherwise disposed of on or prior to the Separation Date; (2) all Assets primarily related to the Monsanto Business or the Former Agriculture Business on the Separation Date, which in either case are owned, leased, licensed or held by any member of either Group on the Separation Date; (3) the corporate offices located at 800 North Lindbergh Boulevard in St. Louis, Missouri and other real property (including the buildings, fixtures and improvements located thereon) listed on Schedule M-2 and such other real property interests held by members of either Group primarily used in the Monsanto Business or any Former Agriculture Business; (4) all of the outstanding shares of all classes of capital stock or similar interests of the Monsanto Subsidiaries to the extent owned by any member of the Pharmacia Group; (5) the partnership, joint venture and other equity interests primarily related to the Monsanto Business or the Former Agriculture Business, including without limitation those equity interests listed on Schedule M-3; (6) the rights of Monsanto under the Insurance Policies as provided in Article VIII of this Agreement; (7) all computers, desks, furniture, equipment and other assets used primarily by employees of Pharmacia who will become employees of Monsanto pursuant to the Employee Benefits and Compensation Allocation Agreement; (8) any Contingent Gains primarily related to any Monsanto Business, any Former Agriculture Business, any Monsanto Assets described in the other clauses of this definition or any reversal of any Monsanto Liability and any Contingent Gains expressly assigned to Monsanto pursuant to this Agreement or any Other Agreement; (9) subject to the terms of Article IX, the Monsanto Share Percentage of any Shared Contingent Gains; and (10) all of the Assets listed on Schedule M-4.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Monsanto Assets shall also mean any and all other Assets owned or held on the Separation Date by members of the Pharmacia Group which the parties agree in writing would have been transferred to the Monsanto Group if the parties had given specific contemplation to such Asset as of the date hereof.

Monsanto Balance Sheet: the unaudited combined balance sheet of Monsanto as of June 30, 2000, and the notes thereto, as set forth in the IPO Registration Statement.

Monsanto Business: all businesses and operations (including related joint ventures and alliances) of the agriculture businesses of Pharmacia consisting principally of those businesses and operations set forth on Schedule M-5, and all business and operations (including related joint ventures and alliances) of any member of the Monsanto Group at any time after the Separation Date.

Monsanto Common Stock: the common stock, par value $.01 per share, of Monsanto.

Monsanto Facilities: property, plant and equipment which are Monsanto Assets.

Monsanto Group: Monsanto and the Monsanto Subsidiaries.

Monsanto Indemnified Liabilities: Monsanto Liabilities that are subject to indemnification from a Third Party.

Monsanto Liabilities: excluding the Excluded Monsanto Liabilities, (1) except as expressly provided in the Other Agreements, all Liabilities included on the Monsanto Balance Sheet or the accounting records supporting such Monsanto Balance Sheet, as adjusted by the pro forma adjustments thereto as set forth in the IPO Registration Statement and all Liabilities of either Group incurred or arising between June 30, 2000 and the Separation Date which would have been included on the Monsanto Balance Sheet had they been incurred or arisen on or prior to June 30, 2000, excluding those Liabilities (or portions thereof) which have been satisfied, paid or discharged prior to the Separation Date; (2) except as expressly provided in the Other Agreements, all Liabilities relating primarily to or arising primarily from the Monsanto Assets, the Monsanto Business or the Former Agriculture Business or the disposition of any Former Agriculture Business, whether incurred or arising prior to, on or after the Separation Date; (3) those Liabilities for worker's compensation or Third Party claims incurred prior to the Separation Date at a site transferred to the Monsanto Group as part of the Monsanto Assets; (4) all Liabilities assumed by any member of the Monsanto Group under an express provision of this Agreement or an Other Agreement; (5) all Liabilities for environmental remediation or other environmental responsibilities primarily related to the Monsanto Business, any Former Agriculture Business or real property transferred to the Monsanto Group as part of the Monsanto Assets, including those listed in Schedule M-6 and, subject to the terms of Article IX, for Monsanto's proportion of any Shared Contingent Liability for environmental remediation or other environmental responsibility as provided by Section 9.02(c); (6) all Liabilities for products of the Monsanto Business or Former Agriculture Business sold to Third Parties by any member of either Group; (7) all Liabilities relating to the Medium-Term Notes and the Ex-U.S. Debt, including Liabilities relating to any guarantees with respect to such indebtedness made by any

-12-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

member of the Pharmacia Group; (8) all Liabilities of Monsanto under the Credit Agreements; (9) all Liabilities of either Group that were assumed by Solutia or any of its Subsidiaries in connection with the spinoff of Solutia (regardless of the extent to which such Liabilities relate to any Monsanto Business or any Former Agriculture Business), to the extent that Solutia fails to pay, perform or discharge such Liabilities; (10) if the IPO is consummated, all Liabilities under the Financing Facility; (11) all Liabilities of the Monsanto Group arising under this Agreement; (12) any Contingent Liabilities relating primarily to or arising primarily from any Monsanto Business or any Former Agriculture Business, and any Contingent Liabilities expressly assigned to Monsanto pursuant to this Agreement or any Other Agreement; (13) subject to the terms of Article IX, the Monsanto Share Percentage of any Shared Contingent Liabilities; and (14) all Liabilities listed on Schedule M-7 (regardless of the extent to which such Liabilities relate to any Monsanto Business or any Former Agriculture Business).

Monsanto Liabilities shall also mean any and all other Liabilities owed on the Separation Date by members of the Pharmacia Group that are primarily related to the Monsanto Business and which the parties agree in writing would have been transferred to the Monsanto Group if the parties had given specific contemplation to such Liability as of the date hereof.

Monsanto Share Percentage: 57 percent.

Monsanto Subsidiaries: all of the corporations, limited liability companies or other entities listed on Schedule M-8, and any other Subsidiaries of Monsanto.

Monsanto Support Agreements: any obligation or agreement of the Pharmacia Group under any letter of credit or bond obtained prior to the Separation Date for the benefit of the Monsanto Business or any member of the Monsanto Group, including without limitation those obligations and agreements listed on Schedule M-9.

Non-Sale Assets: as defined in Section 4.01(d) hereof.

Notices: as defined in Section 11.06 hereof.

NYSE: the New York Stock Exchange, Inc.

Other Agreements: the Corporate Agreement, the Services Agreement, the Employee Benefits and Compensation Allocation Agreement, all Business Transfer Agreements, the Tax Sharing Agreement, the Intellectual Property Agreements, the Lease Agreements and any assignment or assumption agreements entered into in connection with the Separation.

PEPAC: Pharmacia Employee Political Action Committee.

Person: an individual, a partnership, a joint venture, a corporation, a trust, a limited liability company, an unincorporated organization, or a government or any department or agency thereof.

Pharmacia: as defined in the preamble to this Agreement.

-13-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Pharmacia Assets:  all of the Assets, other than the Monsanto Assets, held on the Separation Date by any member of either Group, including the Excluded Monsanto Assets, any Contingent Gain primarily related to any Pharmacia Business or any Former Pharmacia Business, any Contingent Gains expressly assigned to Pharmacia pursuant to this Agreement or any Other Agreement and, subject to the terms of Article IX, the Pharmacia Share Percentage of any Shared Contingent Gains.

Pharmacia Business:  all businesses and operations (including related joint ventures and alliances) conducted by Pharmacia & Upjohn, Inc., Searle or their Subsidiaries, and all business and operations (including related joint ventures and alliances) of any member of the Pharmacia Group at any time after the Separation Date.

Pharmacia Group:  Pharmacia and the Subsidiaries of Pharmacia other than members of the Monsanto Group.

Pharmacia Liabilities:  except as expressly provided in the Other Agreements, all of the Liabilities, other than the Monsanto Liabilities, of any member of either Group incurred or arising prior to or on the Separation Date, or of any member of the Pharmacia Group incurred or arising after the Separation Date, including the Excluded Monsanto Liabilities, any Contingent Liabilities relating primarily to or arising primarily from any Pharmacia Business or Former Pharmacia Business, any Contingent Liabilities expressly assigned to Pharmacia pursuant to this Agreement or any Other Agreement and, subject to the terms of Article IX, the Pharmacia Share Percentage of any Shared Contingent Liabilities and Pharmacia's proportion of any Shared Contingent Liability for environmental remediation or other environmental responsibility as provided by Section 9.02(c).

Pharmacia Share Percentage:  43 percent.

Plan:  as defined in the Employee Benefits and Compensation Allocation Agreement.

Prime Rate:  the rate which Citibank, N.A. (or any successor thereto or other major money center commercial bank agreed to by the parties hereto) announces from time to time as its prime lending rate, as in effect from time to time.

Privileged Information:  as defined in Section 5.06(a) hereof.

Representative:  with respect to any Person, any of such Person's directors, officers, employees, agents, consultants, advisors, accountants, attorneys and representatives.

Rules:  as defined in Section 6.03 hereof.

Sale Assets:  as defined in Section 4.01(d) hereof.

Searle:  G.D. Searle & Co., a Delaware corporation and a Subsidiary of Pharmacia.

SEC:  the Securities and Exchange Commission.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Security Interest: any mortgage, security interest, pledge, lien, charge, claim, option, right to acquire, voting or other restriction, right-of-way, covenant, condition, easement, encroachment, restriction on transfer, or other encumbrance of any nature whatsoever.

Separation: as defined in the recitals to this Agreement.

Separation Date: September 1, 2000. .The Separation Date for the transfer of Liabilities under the Financing Facility shall be deemed to be the IPO Closing Date.

Services Agreement: the services agreement which has been or will be entered into on or prior to the Separation Date between the Pharmacia Group and the Monsanto Group, substantially in the form attached hereto as Exhibit S-1, with such changes as may be mutually agreed to by Monsanto and Pharmacia, providing for (1) the Pharmacia Group to make available certain services to the Monsanto Group, and (2) the Monsanto Group to make available certain services to the Pharmacia Group.

Shared Contingent Claims Committee: a committee composed of one representative designated from time to time by each of Pharmacia and Monsanto that shall be established in accordance with Section 9.04.

Shared Contingent Gain: any Contingent Gain that is not primarily related to any Monsanto Business, any Former Agriculture Business, any Pharmacia Business or any Former Pharmacia Business and that is not expressly assigned to Monsanto or Pharmacia pursuant to this Agreement or any Other Agreement.

Shared Contingent Liability: any Contingent Liability that is not primarily related to any Monsanto Business, any Former Agriculture Business, any Pharmacia Business or any Former Pharmacia Business and that is not expressly assigned to Monsanto or Pharmacia pursuant to this Agreement or any Other Agreement.

Share Percentage: means the Pharmacia Share Percentage or the Monsanto Share Percentage, as the case may be.

Solutia: Solutia Inc., a Delaware corporation.

Subsidiary: with respect to any specified Person, any corporation or other legal entity of which such Person or any of its Subsidiaries controls or owns, directly or indirectly, more than 50% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body; provided, however, that for purposes of this Agreement, (1) the Monsanto Subsidiaries shall be deemed to be Subsidiaries of Monsanto and (2) no member of the Monsanto Group shall be deemed to be a Subsidiary of any member of the Pharmacia Group.

Tax: as defined in the Tax Sharing Agreement.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

<u>Tax Sharing Agreement</u>:  the tax sharing and indemnification agreement which has been or will be entered into on or prior to the Separation Date between Pharmacia and Monsanto substantially in the form attached hereto as Exhibit T-1, with such changes as may be mutually agreed to by Pharmacia and Monsanto.

<u>Third Party</u>:  a Person who is not a party hereto or a wholly-owned Subsidiary thereof.

<u>Third Party Claim</u>:  any claim, suit, arbitration, inquiry, proceeding or investigation by or before any court, any Governmental Authority or any arbitration tribunal asserted by a Third Party.

1.02    **References to Time.**  All references in this Agreement to times of the day shall be to St. Louis time, except as otherwise specifically provided herein.

## ARTICLE II

## THE SEPARATION

2.01    **Transfer of Assets and Assumption of Liabilities.**  On or prior to the Separation Date, the parties hereto shall, and shall cause their respective wholly-owned Subsidiaries to: (1) execute instruments of assignment and transfer and to take such other corporate action as is necessary to transfer to members of the Monsanto Group all of the right, title and interest of the Pharmacia Group in the Monsanto Assets; and (2) take all action necessary for members of the Monsanto Group to assume all of the Monsanto Liabilities (other than the Liabilities under the Financing Facility, which shall be assumed by Monsanto from and after the IPO Closing Date). A global assignment and assumption agreement along with Business Transfer Agreements for transfers of Monsanto Assets and assumption of Monsanto Liabilities will be executed on or prior to the Separation Date; provided, however, that in the event of a conflict between such agreements and this Agreement, this Agreement will control as to matters expressly within the scope of this Agreement.  The parties acknowledge that circumstances in some jurisdictions outside of the United States may require the timing of part of the international separation to be delayed past the Separation Date.  Each of the parties hereto agrees that the Delayed Transfer Assets will be assigned, transferred, conveyed and delivered, and the Delayed Transfer Liabilities will be assumed, as soon as reasonably practicable following the Separation Date or as otherwise provided in this Agreement, the Other Agreements or Schedule 2.01, as of and with effect from the Separation Date.  As of the Separation Date, the applicable Delayed Transfer Asset or Delayed Transfer Liability shall be treated for all purposes of this Agreement and the Other Agreements as a Monsanto Asset, a Monsanto Liability, a Pharmacia Asset or a Pharmacia Liability, as the case may be, based upon the party to or by which such asset or liability is intended to be transferred or assumed.

2.02    **Certificate of Incorporation; Bylaws.**  Pharmacia and Monsanto shall take all action necessary so that, at the Separation Date, the Restated Certificate of Incorporation and By-laws of Monsanto shall be in the forms attached hereto as Exhibits 2.02(a) and 2.02(b), respectively.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

2.03    **Financing Arrangements Effective on Separation Date.**  Each of the parties hereto agrees that it will use reasonable efforts to obtain all necessary consents, waivers or amendments to each bank credit agreement, debt security or other financing facility to which it or any of its Subsidiaries is a party or by which it or any of its Subsidiaries is bound, or to refinance such agreement, security or facility, in each case on terms satisfactory to Pharmacia and Monsanto and to the extent necessary to permit the Separation to be consummated without any material breach of the terms of such agreement, security or facility.

2.04    **Intercompany Accounts.**  Effective on the Separation Date, except as otherwise provided in Schedule 2.04 or the Business Transfer Agreements, or as incurred in connection with the Separation,

(i)  with respect to intercompany accounts arising from sales of products of the Monsanto Business: all accounts receivable will remain with or be transferred to the Monsanto Group as Monsanto Assets; and all accounts payable will remain with or be transferred to the Monsanto Group as Monsanto Liabilities;

(ii)  with respect to intercompany accounts arising from the sales of products of the Pharmacia Business: all accounts receivable and all accounts payable will remain with or be transferred to the Pharmacia Group;

(iii)  all intercompany loans or advances, and all other intercompany balances not specified in clauses (i) and (ii) above, shall not be transferred from one Group to another; and

(iv)  all intercompany accounts, loans, advances and balances specified in clauses (i), (ii) and (iii) above are collectively referred to as "Intercompany Items."

2.05    **Monsanto Support Agreements.**  Effective as of the Separation Date, and unless otherwise agreed between Pharmacia and Monsanto, Monsanto shall use its commercially reasonable efforts to cause one or more members of the Monsanto Group to be substituted in all respects for the Pharmacia Group or any member thereof with respect to all Monsanto Support Agreements.

## ARTICLE III

### SURVIVAL, ASSUMPTION AND INDEMNIFICATION

3.01    **Survival of Agreements.**  All covenants and agreements of the parties hereto contained in this Agreement and all covenants and agreements of the parties hereto and their respective wholly-owned Subsidiaries contained in the Other Agreements shall survive the Separation Date in accordance with their respective terms and shall not be merged into any deeds or other transfer or closing instruments or documents.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

3.02    Taxes.  This Article III shall not be applicable to any Indemnifiable Losses or Liabilities related to (1) Taxes which shall be governed by the Tax Sharing Agreement; or (2) which are otherwise expressly provided for in the Other Agreements (excluding the Business Transfer Agreements).

3.03    Assumption and Indemnification; Effect of Recovery Rights Against Insurers or Other Third Parties.

(a)    Subject to Sections 3.02 and 3.03(f) and except as expressly provided in the Other Agreements, effective as of the Separation Date, Pharmacia hereby retains, assumes and agrees to pay, discharge, perform and satisfy in full, and to indemnify, defend and hold harmless each member of the Monsanto Group, and each of their Representatives and Affiliates, from and against (1) all Pharmacia Liabilities, (2) all Losses of any such member of the Monsanto Group, Representative or Affiliate (i) relating to, arising out of or due to the failure to pay, perform or discharge in due course the Pharmacia Liabilities by any member of the Pharmacia Group who has an obligation with respect thereto, or (ii) to the extent arising from Pharmacia's breach of its covenants under Articles IV, V or VI and (3) all receivables from Third Parties relating to a Pharmacia Business that were assumed or retained by a member of the Monsanto Group. Monsanto will use commercially reasonable efforts not to take and to cause the members of the Monsanto Group and each of their Representatives and Affiliates not to take any action outside the ordinary course of business after the Separation Date which is reasonably likely to have the effect of increasing Pharmacia's or its wholly-owned Subsidiaries' Losses with respect to Pharmacia Liabilities or the indemnification or assumption provided by this Article III, and Monsanto will use commercially reasonable efforts to take and to cause the members of the Monsanto Group and each of their Representatives and Affiliates to take, at Pharmacia's expense, such commercially reasonable action as Pharmacia or its wholly-owned Subsidiaries may request to mitigate all such Losses as may be incurred with respect to Pharmacia Liabilities for which Pharmacia has agreed to indemnify Monsanto or with respect to any matter or Loss against which Pharmacia has agreed to indemnify Monsanto or which Pharmacia has agreed to assume.

(b)    Subject to Section 3.02 and 3.03(f) and except as expressly provided in the Other Agreements, effective as of the Separation Date, Monsanto hereby retains, assumes and agrees to pay, discharge, perform and satisfy in full, and to indemnify, defend and hold harmless each member of the Pharmacia Group and each of their Representatives and Affiliates, from and against (1) all Monsanto Liabilities (excluding Liabilities under the Financing Facility, which Monsanto shall assume from and after the IPO Closing Date and thereafter shall indemnify, defend and hold harmless each member of the Pharmacia Group and each of their Representatives and Affiliates from and against such Liabilities pursuant to an Issuing and Paying Agency and Assignment and Assumption Agreement to be entered into on or prior to the IPO Closing Date by Pharmacia, Monsanto and an agent or co-agents selected by Pharmacia), (2) any and all Losses of any such member of the Pharmacia Group, Representative or Affiliate (i) relating to, arising out of or due to the failure to pay, perform or discharge in due course the Monsanto Liabilities by any member of the Monsanto Group who has an obligation with respect thereto, or (ii) to the extent arising from Monsanto's breach of its covenants under Articles IV, V

-18-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

or VI, (3) any and all Third Party Claims arising from or related to Monsanto's use of the registration, license or permit or other rights granted to the Pharmacia Group by Governmental Authorities, (4) any uncanceled Monsanto Support Agreement for which no substitution has yet been effected pursuant to Section 2.05 and (5) all receivables from Third Parties relating to a Monsanto Business that were assumed or retained by a member of the Pharmacia Group. Pharmacia will use commercially reasonable efforts not to take and to cause the members of the Pharmacia Group and each of their Representatives and Affiliates not to take any action outside the ordinary course of business after the Separation Date which is reasonably likely to have the effect of increasing Monsanto's or its wholly-owned Subsidiaries' Losses with respect to Monsanto Liabilities or the indemnification or assumption provided by this Article III and Pharmacia will use commercially reasonable efforts to take and will cause the members of the Pharmacia Group and each of their Representatives and Affiliates to take at Monsanto's expense such commercially reasonable action as Monsanto or its wholly-owned Subsidiaries may reasonably request to mitigate all such Losses as may be incurred with respect to Monsanto Liabilities for which Monsanto has agreed to indemnify Pharmacia or with respect to any matter or Loss against which Monsanto has agreed to indemnify Pharmacia or which Monsanto has agreed to assume.

(c)    If any portion of an Indemnity Payment required to be made hereunder or under any Other Agreement is denominated in a currency other than United States dollars, the amount of such payment, at the election of the Indemnifying Party, may be reimbursed in local currency or shall be translated into United States dollars using the Foreign Exchange Rate for such currency determined in accordance with the following rules:

(1)    with respect to an Indemnifiable Loss arising from payment by a financial institution under a guarantee, comfort letter, letter of credit, foreign exchange contract or similar instrument, the Foreign Exchange Rate for such currency shall be determined as of the date on which such financial institution is reimbursed;

(2)    with respect to an Indemnifiable Loss covered by insurance, the Foreign Exchange Rate for such currency shall be the Foreign Exchange Rate employed by the insurance company providing such insurance in settling such Indemnifiable Loss with the Indemnifying Party; and

(3)    with respect to an Indemnifiable Loss not described in clause (1) or (2) of this Section 3.03(c), the Foreign Exchange Rate for such currency shall be determined as of the date of payment to a Third Party in the case of such payments or as of the date that notice of the claim with respect to such other Indemnifiable Loss is given to the Indemnitee.

(d)    On and following the Separation Date Monsanto shall assume (or shall cause one of its wholly-owned Subsidiaries to assume) (i) the prosecution of all claims which are Monsanto Assets and are pending on the Separation Date; and (ii) the defense against all Third Party Claims which are Monsanto Liabilities and are pending on the Separation Date. Pharmacia shall use commercially reasonable efforts to make available and shall cause its wholly-owned

-19-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Subsidiaries to use commercially reasonable efforts to make available to Monsanto and its wholly-owned Subsidiaries, at Monsanto's expense, (i) any personnel or any books, records or other documents within its control or which it otherwise has the ability to make available that Monsanto or such Subsidiary reasonably believes are necessary or appropriate for such prosecution or defense as provided in Article V; and (ii) such other assistance in support of the prosecution or defense of such litigation as Monsanto or its wholly-owned Subsidiaries may reasonably request; provided, however, that no member of the Pharmacia Group shall be required to take any action, refrain from taking any action or make available any assistance if doing so could reasonably have the effect of increasing Liabilities of the Pharmacia Group.

(e)    Upon assumption or indemnification of the Losses under this Agreement, the Indemnifying Party shall be subrogated to rights of the Indemnitee against insurers or other Third Parties with respect to such assumed or indemnified amount.  It is expressly agreed that no insurer or any other Third Party shall be (i) entitled to a benefit it would not be entitled to receive in the absence of this Agreement, (ii) relieved of the responsibility to pay any Insured Claims or indemnified claims (including Monsanto Indemnified Liabilities) or any other claims for which it is obligated or (iii) entitled to any subrogation rights with respect to any obligation hereunder. The Indemnitee shall, upon request, provide a formal assignment of a claim against an insurer or other third party to the Indemnifying Party with respect to the assumed or indemnified amount or shall otherwise reasonably cooperate at the Indemnifying Party's request and expense, with an attempt by the Indemnifying Party to recoup assumed or indemnified amounts from insurers or other third parties.

(f)    If an Indemnitee shall receive any amount of Insurance Proceeds or any other monies from a Third Party in connection with an Indemnifiable Loss (including without limitation any Insured Claims or any Monsanto Indemnified Liabilities), then such monies shall be promptly paid to the Indemnifying Party, less the amount of any Indemnifiable Loss incurred by the Indemnitee for which the Indemnifying Party has not yet made the Indemnitee whole. Nothing herein shall permit any Indemnifying Party to delay or refrain from making any payment to any Indemnitee because of the availability or alleged availability of any Insurance Policy or Insurance Proceeds (provided that the foregoing shall not limit the subrogation rights of an Indemnifying Party under Section 3.03).  In addition, in no event shall the availability of recovery of an assumed or indemnified amount under an Insurance Policy or other contract relieve the Indemnifying Party of its obligation to make the Indemnitee whole for any deductibles, self-insured retentions, retrospective premiums or other amounts payable by the Indemnitee under the Insurance Policy or other contract with respect to any such recovery.

3.04    Procedure for Assumption or Indemnification.

(a)    If any Indemnitee receives notice of the assertion of any Third Party Claim with respect to any matter or Loss against which, under this Article III, an Indemnifying Party has agreed to indemnify such Indemnitee or such Indemnifying Party has agreed to assume, such Indemnitee shall give such Indemnifying Party written·notice thereof within 20 calendar days after becoming aware of such Third Party Claim; provided, however, that the failure of any Indemnitee to give notice as provided in this Section 3.04 shall not relieve any Indemnifying

-20-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Party of its obligations under this Article III, except to the extent that such Indemnifying Party is actually prejudiced by such failure to give notice. Such notice shall describe such Third Party Claim in reasonable detail and, if practicable, shall indicate the estimated amount of the Indemnifiable Loss that has been or may be sustained by such Indemnitee.

(b)    Pharmacia shall assume the defense of, and may seek to settle or compromise, any Third Party Claim that is a Shared Contingent Liability, and the costs and expenses (including allocated costs of in-house counsel and other personnel) thereof shall be included in the calculation of the amount of the applicable Shared Contingent Liability in determining the reimbursement obligations of the other party with respect thereto pursuant to Section 9.02. In respect of a Shared Contingent Liability, Monsanto shall have the right to employ separate counsel and to participate (but not to control) the defense, compromise, or settlement thereof, but all fees and expenses of such counsel shall be at the sole expense of Monsanto.

(c)    Other than in the case of a Shared Contingent Liability (the procedures applicable to which are set forth in Section 3.04(b)), an Indemnifying Party, at such Indemnifying Party's own expense and through counsel chosen by such Indemnifying Party (which counsel shall be reasonably satisfactory to the Indemnitee), may elect to defend any Third Party Claim. If an Indemnifying Party elects to defend a Third Party Claim, then, within fifteen Business Days after receiving notice of such Third Party Claim or sooner if the nature of such Third Party Claim so requires, such indemnifying Party shall notify the Indemnitee of its intent to do so. Such Indemnitee shall thereupon use commercially reasonable efforts to make available to such Indemnifying Party, at such Indemnifying Party's expense, such assistance in support of the prosecution or defense of such litigation as the Indemnifying Party may reasonably request, including without limitation, the right to assert in the name of the Indemnitee such rights, claims, counterclaims or defenses that such Indemnitee would be or would have been permitted to assert in such litigation or in the prosecution of a claim or counterclaim against a Third Party or in defense against such Third Party Claim had the Separation not occurred. Such Indemnifying Party shall pay such Indemnitee's reasonable out-of-pocket expenses incurred in connection with such cooperation consistent with the provisions of Article V. Except as provided herein, after notice from an Indemnifying Party to an Indemnitee of its election to assume the defense of a Third Party Claim, such Indemnifying Party shall not be liable to such Indemnitee under this Article III for any legal or other expenses subsequently incurred by such Indemnitee in connection with the defense thereof. Other than in the case of a Shared Contingent Liability (the procedures applicable to which are set forth in Section 3.04(b)), if an Indemnifying Party elects not to defend against a Third Party Claim, or fails to notify an Indemnitee of its election as provided in this Section 3.04 within the period of fifteen Business Days described above, such Indemnitee may defend, compromise and settle such Third Party Claim at the Indemnifying Party's expense; provided, however, that no such Indemnitee may compromise or settle any such Third Party Claim without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld or delayed.

(d)    Notwithstanding the foregoing, the Indemnifying Party shall not, without the prior written consent of the Indemnitee, settle or compromise any Third Party Claim or consent to the entry of any judgment which does not include as an unconditional term thereof the delivery by

-21-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

the claimant or plaintiff to the Indemnitee of a written release of the Indemnitee from all Liability in respect of such Third Party Claim.

(e)    If an Indemnifying Party chooses to defend or to seek to compromise any Third Party Claim, the related Indemnitee shall make available to such Indemnifying Party any personnel or any books, records or other documents within its control or which it otherwise has the ability to make available that are necessary or appropriate for such defense.

(f)    Any claim on account of an Indemnifiable Loss arising out of or due to the failure to pay, perform or discharge in due course its respective obligations arising out of Section 3.03 by any member of the Indemnifying Party's Group who has an obligation with respect thereto but which does not result from a Third Party Claim shall be asserted by written notice given by the Indemnitee to the related Indemnifying Party. Such Indemnifying Party shall have a period of 30 days after the receipt of such notice within which to respond thereto. If such Indemnifying Party does not respond within such 30-day period, such Indemnifying Party shall be deemed to have refused to accept responsibility to make payment. If such Indemnifying Party does not respond within such 30-day period or rejects such claim in whole or in part, such Indemnitee shall be free to pursue such remedies as may be available to such party under Article VI of this Agreement.

## ARTICLE IV

## CERTAIN ADDITIONAL COVENANTS

### 4.01    Further Assurances.

(a)    In addition to the actions specifically provided for elsewhere in this Agreement and unless otherwise expressly provided in this Agreement or an Other Agreement, each of the parties hereto shall use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable laws, regulations and agreements to consummate and make effective the transactions contemplated by this Agreement, to novate or assign all obligations under agreements, leases, licenses and other obligations or Liabilities of any nature whatsoever that constitute the Monsanto Liabilities (or to obtain in writing the unconditional release of all parties to such arrangements other than any member of the Monsanto Group, so that, in any case, the Monsanto Group will be solely responsible for such Liabilities), to confirm Monsanto's title to all Monsanto Assets and assumption of all Monsanto Liabilities, to put Monsanto in actual possession and operating control of all Monsanto Assets and all Monsanto Liabilities, and to permit Monsanto to exercise all rights and to perform its obligations with respect to all Monsanto Assets and all Monsanto Liabilities; provided, that nothing herein shall be deemed to require the transfer of any Assets or the assumption of any Liabilities which by their terms or operation of law cannot be transferred or assumed, subject to the obligations of each party described below. Without limiting the foregoing, each party hereto shall cooperate with the other party, and execute and deliver, or use its commercially reasonable efforts to cause to be executed and delivered, all instruments, including instruments of conveyance, assignment and transfer, and to

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

make all filings with, and to obtain all consents, approvals or authorizations of, any governmental or regulatory authority or any other Person under any permit, license, agreement, indenture or other instrument, and take all such other actions as such party may reasonably be requested to take by any other party hereto from time to time, consistent with the terms of this Agreement, in order to effectuate the provisions and purposes of this Agreement and the transfers of Monsanto Assets and Monsanto Liabilities and the other transactions contemplated hereby.  If any such transfer of Monsanto Assets or Monsanto Liabilities, including but not limited to, assignments of contracts, is not consummated prior to or at the Separation Date for any reason, including but not limited to, the absence of consents to assignment of contracts or approval by Governmental Authorities for the transfer of permits, then the relevant member of the Pharmacia Group shall thereafter hold such Monsanto Asset in trust for the use and benefit of the party entitled thereto (at the expense of the party entitled thereto), or shall retain such Monsanto Liability for the account of the party by whom such Monsanto Liability is to be assumed pursuant hereto, as the case may be, and shall take such other action as may be reasonably requested by the party to whom such Monsanto Asset is to be transferred, or by whom such Monsanto Liability is to be assumed, as the case may be, in order to place such party, insofar as reasonably possible, in the same position as if such Monsanto Asset or Monsanto Liability had been transferred as contemplated hereby.  If and when any such Asset or Liability becomes transferable, such transfer shall be effected forthwith.  The parties hereto agree that, as of the Separation Date, as between the parties, Monsanto shall be deemed to have acquired complete and sole beneficial ownership of all of the Monsanto Assets, together with all rights, powers and privileges incident thereto, and shall be deemed to have assumed in accordance with the terms of this Agreement all of the Monsanto Liabilities and all duties, obligations and responsibilities incident thereto.

(b)    Without limiting the generality of Section 4.01(a), Pharmacia, as the sole stockholder of Monsanto prior to the Separation, shall ratify any actions which are reasonably necessary or desirable to be taken by Monsanto to effectuate the transactions contemplated by this Agreement or the Other Agreements in a manner consistent with the terms of this Agreement or such Other Agreements.

(c)    In the event any registration, licenses, permits or other rights granted by Governmental Authorities to the Pharmacia Group must be transferred, amended or issued in order to conduct operations of the Monsanto Business after the Separation Date, and such permit transfer, amendment or issuance has not been accomplished as of such date, Pharmacia shall permit Monsanto to use the registration, license or permit of the Pharmacia Group to continue to operate the Monsanto Facilities until such transfer, amendment or issuance is accomplished, at Monsanto's expense, if to do so would be permitted by and not violate the terms of the registration, license or permit or any law, regulation, ordinance or rule, until such permit is transferred or issued to Monsanto.  Monsanto shall use its commercially reasonable efforts to obtain such registrations, licenses, permits or other rights granted by Governmental Authorities as soon as reasonably practicable.

(d)    Schedule 4.01(d) to this Agreement sets forth certain assets which are Pharmacia Assets or Monsanto Assets, not including Intercompany Items, held by Monsanto or Pharmacia

-23-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(the "Holder"), respectively, but which, in some cases, are subject to contracts for sale to Third Parties ("Sale Assets") or which, in other cases, cannot be transferred without one party incurring a substantial economic detriment which detriment could otherwise be deferred or avoided ("Non-Sale Assets"). Pharmacia and Monsanto agree that the Holder shall retain title to such Sale Assets and Non-Sale Assets following the Separation Date and shall not transfer to the other party (the "Beneficiary") the title or assign to the Beneficiary the contract(s) for sale or any other permits, licenses or contracts with respect to such assets subject to the following terms and conditions:

(i)    The Holder from and after the Separation Date will hold the Sale Assets and the Non-Sale Assets in trust for the benefit of the Beneficiary, and operate the Sale Assets and the Non-Sale Assets on behalf of, and at the risk and expense of, the Beneficiary;

(ii)    The Holder hereby irrevocably designates the Beneficiary as its attorney-in-fact and agent for all purposes with respect to all such Sale Assets and Non-Sale Assets, including without limitation, for all operating, remediation, monitoring and other activities, with respect to such Sale Assets and Non-Sale Assets; for all filings, notices and any other negotiations, activities or discussions with any Governmental Authority and/or any branch, commission, board or other subdivision thereof; for all discussions, negotiations or agreements with Third Parties with respect to, or arising from, such Sale Assets and Non-Sale Assets; and for all purposes relating to the execution, delivery and closing of contracts, agreements, documents or instruments with respect to the ownership, operation, use, occupation, sale or lease of the Sale Assets or Non-Sale Assets;

(iii).  The Holder will take no action without the prior written consent of the Beneficiary which may have the effect of increasing the Beneficiary's liability with respect to any Sale Assets or Non-Sale Assets; and will take such action as is permitted by contract, in the absence of consent of the other party, and by law to place the Beneficiary, insofar as reasonably possible, in the same position as if such Sale Assets and Non-Sale Assets had been transferred, or conveyed to the Beneficiary on the Separation Date;

(iv)    The Holder will use commercially reasonable efforts to comply with any operating covenants of contracts relating to the sale of the Sale Assets;

(v)    In the event any Sale Assets are sold to a Third Party pursuant to a contract in existence on the Separation Date, the Holder shall convey the proceeds of such sale to the Beneficiary or the Beneficiary's designee, net of any applicable taxes or Liabilities incurred by the Holder with respect to such Sale Assets;

(vi)    In the event any Sale Assets are not sold or conveyed to a Third Party pursuant to a contract in existence on the Separation Date or, at any other time, upon the request of the Beneficiary with respect to any Sale Assets or Non-Sale Assets,

-24-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

the Holder shall transfer and convey title to the affected asset to the Beneficiary or the Beneficiary's designee, at the Beneficiary's expense; and

(vii) As between Pharmacia and Monsanto, such Sale Assets and Non-Sale Assets shall be Pharmacia Assets (if the Beneficiary is Pharmacia) or Monsanto Assets (if the Beneficiary is Monsanto), as the case may be, and Liabilities primarily related to or arising from Sale Assets or Non-Sale Assets shall be Pharmacia Liabilities (if the Beneficiary is Pharmacia) or Monsanto Liabilities (if the Beneficiary is Monsanto), as the case may be, and subject to the indemnification provisions contained in Section 3.03(b) notwithstanding the fact that such Sale Assets or Non-Sale Assets were not transferred to the Beneficiary.

(e)    If Monsanto elects to pursue any claim or right relating to the Monsanto Assets, the Monsanto Business or the Former Agriculture Business, Pharmacia, upon request and at Monsanto's expense, shall use commercially reasonable efforts to make available to Monsanto such assistance in support of the prosecution of such litigation as Monsanto may reasonably request, including without limitation (upon reasonable notice to Pharmacia and to the extent necessary to effectively pursue such claim or right) the right to assert in the name of Pharmacia or any member of the Pharmacia Group such rights and claims that Pharmacia or such member would be or would have been permitted to assert in such litigation had the Separation not occurred; provided, however, that no member of the Pharmacia Group shall be required to take any action, refrain from taking any action or make available any assistance if doing so could reasonably have the effect of increasing Liabilities of the Pharmacia Group.  Monsanto, upon request and at Pharmacia's expense, shall use commercially reasonable efforts to make available to Pharmacia such assistance in support of the prosecution of litigation relating to the Pharmacia Assets or the Pharmacia Business as Pharmacia may reasonably request.

4.02    **Pharmacia Employee Political Action Committee.**  Prior to or as soon as practicable after the Separation Date, Monsanto shall cause the MCF to transfer to the PEPAC an amount of cash equal to the payroll deduction contributions made to the MCF attributable to the employees of the Searle pharmaceutical unit of Pharmacia for the period beginning on April 3, 2000 and ending on the date of transfer, other than payroll deduction contributions attributable to employees who have made timely objection to such transfer.

4.03    **Receivables Collection and Other Payments.**  If after the Separation Date, either party receives payments belonging to the other party, the recipient shall promptly account for and remit same to the other party.

4.04    **Limited Leases, Licenses and Benefits of Certain Assets.**

(a)    With respect to sold or discontinued businesses for which Monsanto has assumed an Monsanto Liability, Pharmacia hereby grants a lease or license, and shall cause its wholly-owned Subsidiaries to grant a lease or license, to members of the Monsanto Group, without compensation and on a non-exclusive basis, with respect to such Pharmacia Assets (or the benefit of such Pharmacia Assets) relating to sold or discontinued businesses, including without limitation, those rights under contracts, leases or licenses held on the Separation Date, in each

-25-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

case to the extent the use or benefit of such Pharmacia Assets is reasonably necessary to satisfy such Monsanto Liabilities assumed by any member of the Monsanto Group pursuant to this Agreement or any Other Agreement.

(b)    With respect to a Former Agriculture Business for which Pharmacia has retained a Pharmacia Liability, including without limitation, Pharmacia Liabilities under operating agreements with Third Parties, Monsanto hereby grants a lease or license, and shall cause its wholly-owned Subsidiaries to grant a lease or license, to members of the Pharmacia Group, without compensation and on a non-exclusive basis with respect to such Monsanto Assets (or the benefit of such Monsanto Assets) relating to the Former Agriculture Business, including without limitation, those rights under contracts, leases or licenses held on the Separation Date, in each case to the extent the use or benefit of such Monsanto Assets is reasonably necessary to satisfy such  Pharmacia Liabilities.

4.05    **Monsanto's Use of Monsanto Assets Subject to IRBs.**  Pharmacia is retaining as Pharmacia Liabilities the IRBs and all obligations related to the payment of principal and interest or other amounts thereunder and is retaining as Pharmacia Assets all rights with respect to the IRBs except the right to the ownership or occupancy of the property transferred to Monsanto as Monsanto Assets.  Monsanto, however, agrees that Monsanto shall comply with all of the covenants and agreements set forth in the IRBs and any related agreements entered into in connection with the IRBs that are applicable to the owner or operator of the property or that affect the use of the property and shall not take any action which, or fail to take any action the failure of which, could increase or accelerate Pharmacia's liabilities under the IRBs or adversely affect the exclusion from gross income of interest on the IRBs.  Monsanto shall not sell or otherwise transfer any properties or assets relating to the IRBs unless the transferee agrees to assume Monsanto's obligations under this Section 4.05 pursuant to an agreement reasonably satisfactory to Pharmacia.

## ARTICLE V

## ACCESS TO INFORMATION

5.01    **Provision of Corporate Records.**  Prior to or as promptly as practicable after the Separation Date or from time to time as reasonably requested by the Monsanto Group, the Pharmacia Group shall deliver to the Monsanto Group: (i) all corporate books and records of the Monsanto Group; (ii) originals or copies of those corporate books and records of the Pharmacia Group primarily relating to the Monsanto Assets, the Monsanto Liabilities, the Monsanto Business or the Former Agriculture Business; (iii) originals or, at Pharmacia's election, copies of all other corporate records and books of the Pharmacia Group relating to the Monsanto Group, Monsanto Assets, the Monsanto Liabilities, the Monsanto Business, the Former Agriculture Business, or the Other Agreements; including without limitation in each case, all active agreements, active litigation files and government filings; and (iv) copies of any and all Insurance Policies.  From and after the Separation Date; all such books, records and copies (where copies are delivered in lieu of originals), whether or not delivered, shall be the property of

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

the Monsanto Group; provided, however, that all such Information contained in such books, records or copies relating to the Pharmacia Group, Pharmacia Assets, the Pharmacia Liabilities, the Pharmacia Business, or the Other Agreements shall be subject to the applicable confidentiality provisions and restricted use provisions, if any, contained in this Agreement or the Other Agreements and any confidentiality restrictions imposed by law. Pharmacia, if it so elects, may retain copies of any original books and records delivered to Monsanto along with those original books and records of the Pharmacia Group authorized herein to be retained (excluding books and records to the extent relating to Monsanto Technology as defined in the Intellectual Property Agreements or relating exclusively to Monsanto's use of Shared Know-How as defined in the Intellectual Property Agreements in the Monsanto Business or Former Agriculture Business); provided, however, that all such Information contained in such books, records or copies (whether or not delivered to the Monsanto Group) relating to the Monsanto Group, the Monsanto Assets, the Monsanto Liabilities, the Monsanto Business, the Former Agriculture Business, or the Other Agreements shall be subject to the applicable confidentiality provisions and restricted use provisions, if any, contained in this Agreement or the Other Agreements and any confidentiality restrictions imposed by law.

5.02    Access to Information.  In addition to the provisions set forth in Section 5.01 above, from and after the Separation Date and upon commercially reasonable notice, each of the Pharmacia Group and the Monsanto Group shall afford to the other and to the other's Representatives at the expense of the other party, commercially reasonable access and duplicating rights during normal business hours to all Information developed or obtained prior to the Separation Date within such party's possession relating to the other party or its businesses, its former businesses, its Assets, its Liabilities, or the Other Agreements, insofar as such access is reasonably requested by such other party, but subject to the applicable confidentiality provisions and restricted use provisions, if any, contained in this Agreement or the Other Agreements and any confidentiality restrictions imposed by law.  In addition, without limiting the foregoing, Information may be requested under this Section 5.02 for audit, accounting, claims, intellectual property protection, litigation and Tax purposes, as well as for purposes of fulfilling disclosure and reporting obligations. .In each case, the requesting party agrees to cooperate with the other party to minimize the risk of unreasonable interference with the other party's business.  In the event access to any Information otherwise required to be granted herein or in the Other Agreements is restricted by law or otherwise, the parties agree to take such actions as are reasonably necessary, proper or advisable to have such restrictions removed or to seek an exemption therefrom or to otherwise provide the requesting party with the benefit of the Information to the same extent such actions would have been taken on behalf of the requesting party had such a restriction existed and the Separation not occurred.

5.03    Litigation Support and Production of Witnesses.  After the Separation Date, each member of the Pharmacia Group and the Monsanto Group shall use commercially reasonable efforts to provide assistance to the other with respect to any Third Party Claim, and to make available to the other, upon written request: (i) such employees who have expertise or knowledge with respect to the other party's business or products or matters in litigation or alternative dispute resolution, for the purpose of consultation and/or as a witness; and (ii) its directors, officers, other employees and agents, as witnesses, in each case to the extent that the

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

requesting party believes any such Person may reasonably be useful or required in connection with any legal, administrative or other proceedings in which the requesting party may from time to time be involved. The employing party agrees that such consultant or witness shall be made available to the requesting party upon commercially reasonable notice to the same extent that such employing party would have made such consultant or witness available if the Separation had not occurred. The requesting party agrees to cooperate with the employing party in giving consideration to business demands of such Persons.

5.04    **Reimbursement.**  Except to the extent otherwise contemplated by this Agreement or any Other Agreement, a party providing Information, consultant, or witness services to the other party under this Article V shall be entitled to receive from the recipient, upon the presentation of invoices therefor, payments for such amounts, relating to supplies, disbursements, travel expenses, and other out-of-pocket expenses (including the direct and indirect costs of employees providing consulting and expert witness services in connection with litigation and alternative dispute resolution, but excluding direct and indirect costs of employees who provide Information or are fact witnesses) as may be reasonably incurred in providing such Information, consulting or witness services.

5.05    **Retention of Records.**  Except as otherwise required by law or agreed in writing, or as otherwise provided in any Other Agreement, each member of the Pharmacia Group and the Monsanto Group shall retain, for the periods set forth in the Pharmacia Corporation Records Retention Manual as in effect on the Separation Date or such longer period as may be required by law, this Agreement or the Other Agreements, all proprietary Information in such party's possession or under its control relating to the business, former business, Assets or Liabilities of the other party or the Other Agreements and, after the expiration of such applicable period, prior to destroying or disposing of any of such Information, (a) the party proposing to dispose of or destroy any such Information shall provide no less than 30 days' prior written notice to the other party, specifying the Information proposed to be destroyed or disposed of, and (b) if, prior to the scheduled date for such destruction or disposal, the other party requests in writing that any of the Information proposed to be destroyed or disposed of be delivered to such other party, the party proposing to dispose of or destroy such Information promptly shall arrange for the delivery of the requested Information to a location specified by, and at the expense of, the requesting party.

5.06    **Privileged Information.**  In furtherance of the rights and obligations of the parties set forth in this Article V:

(a)    Each party hereto acknowledges that (1) each of the Pharmacia Group on the one hand, and the Monsanto Group on the other hand, has or may obtain Information regarding a member of the other Group, or any of its operations, employees, Assets or Liabilities (whether in documents or stored in any other form or known to its employees or agents), as applicable, that is or may be protected from disclosure pursuant to the attorney-client privilege, the work product doctrine or other applicable privileges ("Privileged Information"); (2) there are a number of actual, threatened or future litigation, investigations, proceedings (including arbitration proceedings), claims or other legal matters that have been or may be asserted by or against, or otherwise affect, each or both of Pharmacia and Monsanto (or members of either Group)

-28-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

("Litigation Matters"); (3) Pharmacia and Monsanto have a common legal interest in Litigation Matters, in the Privileged Information, and in the preservation of the confidential status of the Privileged Information, in each case relating to the Pharmacia Business or the Monsanto Business or any former businesses, the Assets or the Liabilities of each party as it or they existed prior to the Separation Date or relating to or arising in connection with the relationship between the constituent elements of the Groups on or prior to the Separation Date; and (4) Pharmacia and Monsanto intend that the transactions contemplated by this Agreement and the Other Agreements and any transfer of Privileged Information in connection herewith or therewith shall not operate as a waiver of any potentially applicable privilege.

(b)      Each of Pharmacia and Monsanto agrees, on behalf of itself and each member of the Group of which it is a member, not to disclose or otherwise waive any privilege attaching to any Privileged Information relating to the Pharmacia Business or the Monsanto Business or any former businesses or Assets or Liabilities of either party as they or it existed prior to the Separation Date, respectively, or relating to or arising in connection with the relationship between the Groups on or prior to the Separation Date, without providing prompt written notice to and obtaining the prior written consent of the other, which consent shall not be unreasonably withheld and shall not be withheld if the other party certifies that such disclosure is to be made in response to a likely threat of suspension, debarment, criminal indictment or similar action; provided, however, that Pharmacia and Monsanto may make such disclosure or waiver with respect to Privileged Information if such Privileged Information relates, in the case of Pharmacia, solely to the Pharmacia Business, its former businesses (other than the Monsanto Business or Former Agriculture Business), the Pharmacia Assets or the Pharmacia Liabilities as each existed prior to the Separation Date or, in the case of Monsanto, solely to the Monsanto Business, the Former Agriculture Business, the Monsanto Assets or the Monsanto Liabilities, as each existed prior to the Separation Date. The parties will use commercially reasonable efforts to limit any such disclosure or waiver to the maximum extent possible and shall seek the execution of a confidentiality agreement by the party or parties to which such disclosure or waiver is made.

(c)      Upon any member of the Pharmacia Group or any member of the Monsanto Group receiving any subpoena or other compulsory disclosure notice from a court, other governmental agency or otherwise which requests disclosure of Privileged Information, in each case relating to the Pharmacia Business, its former businesses (other than the Monsanto Business or Former Agriculture Business), the Pharmacia Assets or the Pharmacia Liabilities (in the case of the Monsanto Group) or the Monsanto Business, Former Agriculture Business, the Monsanto Assets or the Monsanto Liabilities (in the case of the Pharmacia Group), as they or it existed prior to the Separation Date or relating to or arising in connection with the relationship between the constituent elements of the Groups on or prior to the Separation Date, the recipient of the notice shall promptly provide to Pharmacia, in the case of receipt by a member of the Monsanto Group, or to Monsanto, in the case of receipt by a member of the Pharmacia Group, a copy of such notice, the intended response, and all materials or information relating to the other Group that might be disclosed. In the event of a disagreement as to the intended response or disclosure, unless and until the disagreement is resolved as provided in paragraph (b) above, Pharmacia and Monsanto shall cooperate to assert all defenses to disclosure claimed by either Group, at the cost and expense of the Group claiming such defense to disclosure, and shall not disclose any

-29-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

disputed documents or information until all legal defenses and claims of privilege have been finally determined.

5.07    **Confidentiality.**  From and after the Separation Date, each of Pharmacia and Monsanto shall hold, and shall use its commercially reasonable efforts to cause its employees, Affiliates and Representatives to hold, in strict confidence all Information concerning or belonging to the other party obtained by it prior to the Separation Date or furnished to it by such other party pursuant to this Agreement or the Other Agreements and shall not release or disclose such Information to any other Person, except its Representatives, who shall be bound by the provisions of this Section 5.07; provided, however, that Pharmacia and Monsanto and their respective employees, Affiliates and Representatives may disclose such Information to the extent that (a) disclosure is compelled by judicial or administrative process or, in the opinion of Pharmacia's or Monsanto's counsel (as the case may be), by other requirements of law, or (b) such party can show that such Information was (1) available to such party after the Separation Date from Third Party sources other than employees or former employees of either party, their Affiliates, former Affiliates, Representatives or former Representatives, on a nonconfidential basis prior to its disclosure to such party after the Separation Date by the other party, (2) in the public domain through no fault of such party, (3) lawfully acquired by such party from Third Party sources other than employees or former employees of either party, their Affiliates, former Affiliates, Representatives or former Representatives, after the time that it was furnished to such party pursuant to this Agreement or the Other Agreements or (4) is independently discovered or developed after the Separation Date by employees of such party.  Notwithstanding the foregoing, each of Pharmacia and Monsanto and their respective Representatives and Affiliates shall be deemed to have satisfied its obligations under this  Section 5.07 with respect to any Information if it exercises the same care with regard to such Information as it takes to preserve confidentiality for its own similar Information.  Each party further covenants that it shall not disclose to any Third Party (or any successor by merger or otherwise) the fact that the other party uses Shared Know-How (as defined in the Intellectual Property Agreements) or if known, the particulars of such use.

## ARTICLE VI

## DISPUTE RESOLUTION

6.01    **Step Process.**  Any controversy or claim arising out of or relating to this Agreement or any Other Agreement, or the breach thereof (a "Dispute"), shall be resolved by a series of three events in the following sequence: negotiation between senior executives, mediation and then binding arbitration.  Each party agrees on behalf of itself and each member of its respective Group that the procedures set forth in this Article VI shall be the exclusive means for resolution of any Dispute.  The initiation of mediation or arbitration hereunder will toll the applicable statute of limitations for the duration of any such proceedings.

6.02    **Negotiation.**  The parties will first attempt to resolve any Dispute by direct discussions and negotiation, including if either party so elects, negotiation among senior executives of Pharmacia and Monsanto.  Any party asked to participate in such negotiations will

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

use reasonable efforts to make a designated senior executive available promptly to participate in negotiations, with authority to resolve the matter. The designated senior executives shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such a solution within a period of 30 days after a notice calling for negotiation among senior executives is given, then, upon notice by either party to the other, any Dispute shall be referred to mediation administered by the American Arbitration Association in accordance with its Commercial Mediation Rules.

6.03    **Mediation.** If a Dispute cannot be settled through negotiation as provided in Section 6.02, the parties agree to attempt to settle the Dispute in an amicable manner by mediation administered by the American Arbitration Association under its Commercial Mediation Rules, before resorting to arbitration. If the Dispute is not resolved within 60 days after initiation of mediation, either party may demand arbitration by the American Arbitration Association administered under its Commercial Arbitration Rules (the "Rules").

6.04    **Arbitration.** Any otherwise unresolved Dispute shall be resolved by final and binding arbitration administered by the American Arbitration Association in accordance with its Rules and Title 9 of the U.S. Code. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The number of arbitrators shall be one if the claims in such Dispute aggregate less than $1 million, and three if the claims in such Dispute aggregate $1 million or more. If three arbitrators are to be chosen, one shall be appointed by each of the parties and the third shall be selected by mutual agreement, if possible, within 30 days of the selection of the second arbitrator and thereafter pursuant to the Rules. The place of arbitration shall be New York, N.Y.

6.05    **Injunctive Relief.** Either party may make an application to the arbitrator(s) seeking injunctive or other provisional relief to maintain the status quo until such time as the arbitration award is rendered or the controversy is otherwise resolved. Either party also may, without waiving any remedy under this Article, apply to any court having jurisdiction for any interim or provisional relief (including without limitation injunctive relief) that is necessary to maintain the parties' relative positions until such time as the arbitration award is rendered or the controversy is otherwise resolved.

6.06    **Remedies.** The arbitrator(s) shall have no authority or power to limit, expand, alter, amend, modify, revoke or suspend any condition or provision of this Agreement or any Other Agreement, nor any right or power to award punitive or treble damages.

6.07    **Expenses.** The parties shall bear their own expenses and attorneys' fees in pursuit and resolution of any Dispute. The parties shall share equally the costs and expenses (including the fees of any neutral mediator or arbitrator) of any mediation or arbitration hereunder.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## ARTICLE VII

### NO REPRESENTATIONS OR WARRANTIES; EXCEPTIONS

7.01    No Representations or Warranties; Exceptions. Monsanto understands and agrees that no member of the Pharmacia Group is, in this Agreement or in any Other Agreement, representing or warranting to the Monsanto Group in any way as to the Monsanto Assets, the Monsanto Liabilities, the Monsanto Business, the Former Agriculture Business or the Monsanto Balance Sheet, or as to any consents or approvals required in connection with the consummation of the transactions contemplated by this Agreement, it being agreed and understood as between the Groups, the members of the Monsanto Group shall take all of the Monsanto Assets "as is, where is" and that, except as provided in this Section 7.01 or in Section 4.01, the members of the Monsanto Group shall bear the economic and legal risk that conveyances of the Monsanto Assets shall prove to be insufficient or that the title of any member of the Monsanto Group to any Monsanto Assets shall be other than good and marketable and free from encumbrances.  Real property in the United States being transferred to Monsanto will be conveyed by Special Warranty Deed, in recordable form and warranting title to be free and clear from all lawful claims of those claiming by, through or under Pharmacia, but not otherwise; provided, however, such Special Warranty Deed shall be subject to deed restrictions, easements, rights-of-way, and all other matters of record.

## ARTICLE VIII

### INSURANCE

8.01    Insurance Policies and Rights.

(a)    To the extent permitted by law, without limiting the generality of the definition of Monsanto Assets set forth in Section 1.01, the effect of Section 2.01, or the availability of subrogation rights as an Indemnifying Party under Section 3.03, the Monsanto Assets shall include any and all rights of an insured party, including rights of indemnity and the right to be defended by or at the expense of the insurer, and to receive Insurance Proceeds with respect to all Insured Monsanto Claims under any Insurance Policies.  The Monsanto Group shall be solely responsible for any and all deductibles, self-insured retentions, retrospective premiums, claims handling and other charges owed under the Insurance Policies with respect to the coverage provided for Insured Monsanto Claims.

(b)    To the extent permitted by law, without limiting the generality of the definition of Pharmacia Assets set forth in Section 1.01, the effect of Section 2.01, or the availability of subrogation rights as an Indemnifying Party under Section 3.03, the Pharmacia Assets shall include any and all rights of an insured party including rights of indemnity and the right to be defended by or at the expense of the insurer, and to receive Insurance Proceeds under any Insurance Policies other than the rights under the Insurance Policies which are included in Monsanto Assets pursuant to Section 8.01(a).  The Pharmacia Group shall be solely responsible for any and all deductibles, self-insured retentions, retrospective premiums, claims handling and

-32-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

other charges owned under the Insurance Policies with respect to the coverage provided for Insured Claims other than Insured Monsanto Claims.

(c)     Solely for purposes of this Article VIII, "Pharmacia Group" and "Monsanto Group" shall include their consolidated entities to the extent such entities were in existence on or prior to the Separation Date or are set forth on Schedule M-8.

8.02    **Administration and Reserves.**  Consistent with the provisions of Article III, from and after the Separation Date:

(a)     Pharmacia shall be responsible for (1) Insurance Administration of the Insurance Policies with respect to any Pharmacia Liabilities, any Pharmacia Assets or any claims as to which the Pharmacia Group has retained rights of reimbursement or subrogation pursuant to this Agreement or any Other Agreement; and (2) Claims Administration with respect to any Pharmacia Liabilities, any Pharmacia Assets or any claims as to which the Pharmacia Group has retained rights of reimbursement or subrogation pursuant to this Agreement or any Other Agreement.  It is understood that the retention of the Insurance Policies by Pharmacia is in no way intended to limit, inhibit or preclude any right to insurance coverage for any Insured Claim or any other rights under the Insurance Policies, including without limitation, claims of Monsanto and any of its operations, Subsidiaries and Affiliates for insurance coverage, reimbursement, subrogation or otherwise; and

(b)     Monsanto shall be responsible for (1) Insurance Administration of the Insurance Policies with respect to any Monsanto Liabilities, any Monsanto Assets, or any claims as to which the Monsanto Group has rights of reimbursement or subrogation pursuant to this Agreement or any Other Agreement, and (2) Claims Administration with respect to any Monsanto Liabilities, any Monsanto Assets, or any claims as to which the Monsanto Group has rights of reimbursement or subrogation pursuant to this Agreement or an Other Agreement. Subject to the terms of the Services Agreement, Pharmacia shall perform the Insurance Administration and provide assistance to the Monsanto Group with respect to Claims Administration for claims as to which Monsanto or the Monsanto Group has rights or obligations hereunder as part of the insurance and risk management services it will perform for the Monsanto Group after the Separation Date.

(c)     The parties hereto shall cooperate with regards to Insurance Administration, and shall share information concerning such matters so that both the Monsanto Group and the Pharmacia Group are aware on a continuing basis of remaining aggregate limits of coverage, deductible payments and other matters relevant to continued dealings with insurers providing coverage for Liabilities of both Groups.

(d)     Nothing in this Agreement shall be construed or deemed to affect in any way the right of Pharmacia to obtain and administer future insurance policies or to enter into future indemnification agreements with third parties on whatever terms it believes to be advisable, including the entry into insurance policies covering Pharmacia and its subsidiaries.

8.03    **Allocation of Insurance Proceeds; Cooperation.**

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(a)    Except as otherwise provided in Section 3.03(c), the parties shall use reasonable efforts to ensure that Insurance Proceeds received with respect to claims, costs and expenses under the Insurance Policies shall be paid to Pharmacia with respect to Pharmacia Liabilities and to Monsanto with respect to the Monsanto Liabilities.

(b)    In the case of any Shared Contingent Liability, any Insurance Proceeds or other amounts actually received, realized or recovered by any party in respect of the Shared Contingent Liability will be shared between the parties in such manner as may be necessary so that the obligations of the parties for such Shared Contingent Liability, net of such Insurance Proceeds or other amounts, will remain in proportion to their respective Share Percentages, regardless of which party or parties may actually receive, realize or recover such Insurance Proceeds or other amounts.

8.04    **Reimbursement of Expenses.** Monsanto shall reimburse the relevant insurer or the relevant third-party administrator, to the extent required under any Insurance Policy or Claims Handling Agreement for any services performed after the Separation Date with respect to any and all Insured Monsanto Claims which are not Pharmacia Liabilities which are paid, settled, adjusted, defended and/or otherwise handled by such insurer or third-party administrator pursuant to the terms and conditions of such Insurance Policy or Claims Handling Agreement.

8.05    **Attempt to Obtain Insurer Endorsements.** Pharmacia agrees to notify insurers under the Insurance Policies with policy periods that include the effective date of this Agreement of the Separation and to request an endorsement by such insurers that the coverage provided by such Insurance Policies will apply to the Pharmacia Group and the Monsanto Group with the same force and effect and subject to the same terms, conditions, and exclusions as if the Separation had not occurred.

8.06    **No Reduction of Coverage.** Except for reduction in coverage resulting from submission and payment of Insured Claims, neither party shall take any action to eliminate or reduce coverage available to the other party under any Insurance Policy or Claims Handling Agreement for any claims without the prior written consent of the other party (which shall not be unreasonably withheld or delayed); provided, however, that nothing herein shall affect a party's right to amend the terms of a Claims Handling Agreement or Insurance Policy on renewal or otherwise.

## ARTICLE IX

## SHARED CONTINGENT GAINS AND LIABILITIES

9.01    **Shared Contingent Gains.**

(a)    Any benefit that may be received from any Shared Contingent Gain shall be shared among Pharmacia and Monsanto in proportion to the Pharmacia Share Percentage and the Monsanto Share Percentage, respectively, and shall be paid in accordance with Section 9.03. Notwithstanding the foregoing, Pharmacia shall have sole and exclusive authority to commence,

-34-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

prosecute, settle, manage, control, conduct, waive, forgo, release, discharge, forgive and otherwise determine all matters whatsoever with respect to any Shared Contingent Gain. Monsanto shall not take, or permit any member of its Group to take, any action (including commencing any claim) that would interfere with such rights and powers of Pharmacia. Pharmacia shall use its commercially reasonable efforts to notify Monsanto in the event that it commences an Action with respect to a Shared Contingent Gain; provided that the failure to provide such notice shall not give rise to any rights on the part of Monsanto. Monsanto acknowledges that Pharmacia may elect not to pursue any Shared Contingent Gain for any reason whatsoever (including a different assessment of the merits of any Action, claim or right than Monsanto or any business reasons that are in the best interests of Pharmacia or any member of the Pharmacia Group, without regard to the best interests of any member of the Monsanto Group) and that no member of the Pharmacia Group shall have any liability to any Person (including any member of the Monsanto Group) as a result of any such determination.

(b)    In the event of any dispute as to whether any claim or right is a Shared Contingent Gain, Pharmacia may, but shall not be obligated to, commence prosecution or other assertion of such claim or right pending resolution of such dispute. In the event that Pharmacia commences any such prosecution or assertion and, upon resolution of the dispute, Monsanto is determined hereunder to have the exclusive right to such claim or right, Pharmacia shall, promptly upon the request of Monsanto, discontinue the prosecution or assertion of such right or claim and transfer the control thereof to Monsanto. In such event, Monsanto will reimburse Pharmacia for all costs and expenses (including allocated costs of in-house counsel and other personnel), reasonably incurred prior to resolution of such dispute in the prosecution or assertion of such claim or right.

9.02    **Shared Contingent Liabilities.**

(a)    As set forth in Section 3.04(b), Pharmacia shall assume the defense of, and may seek to settle or compromise, any Third Party Claim that is a Shared Contingent Liability, and the costs and expenses (including allocated costs of in-house counsel and other personnel) thereof shall be included in the calculation of the amount of the applicable Shared Contingent Liability in determining the reimbursement obligations of the other parties with respect thereto pursuant to this Section 9.02.

(b)    Each of Pharmacia and Monsanto shall be responsible for its Share Percentage of any Shared Contingent Liability, adjusting for Insurance Proceeds and other amounts in the manner provided by Section 3.03(d); provided that any Shared Contingent Liability for environmental remediation or other environmental responsibility shall be allocated as provided in Section 9.02(c). It shall not be a defense to any obligation by any party to pay any amount in respect of any Shared Contingent Liability that such party was not consulted in the defense thereof, that such party's views or opinions as to the conduct of such defense were not accepted or adopted, that such party does not approve of the quality or manner of the defense thereof or that such Shared Contingent Liability was incurred by reason of a settlement rather than by a judgment or other determination of liability.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(c)    Any Shared Contingent Liability for environmental remediation or other environmental responsibility shall be borne by each party in proportion to its respective contribution to the site giving rise to such Shared Contingent Liability. Any disagreement between the parties with respect to the allocation of responsibility under this Section 9.02(c) shall be resolved in accordance with the provisions of Article VI.

9.03    Payments.

(a)    The applicable percentage of any amount received in respect of any Shared Contingent Gains pursuant to Section 9.01 or the applicable percentage of any amount owed in respect of any Shared Contingent Liabilities pursuant to Section 9.02, including reimbursement for the cost or expense of defense (such as allocated costs of in-house counsel and other personnel) of any Third Party Claim that is a Shared Contingent Liability, shall be remitted promptly to the party entitled to receive such amount after such party provides an invoice (including reasonable supporting information with respect thereto) to the party owing such amount.

(b)    In the case of any Shared Contingent Gain, Pharmacia shall be entitled to retain from the amount of the Shared Contingent Gain otherwise payable to Monsanto, Monsanto's Share Percentage of the costs and expenses (including allocated costs of in-house counsel and other personnel) paid or incurred by or on behalf of any member of the Pharmacia Group in connection with such Shared Contingent Gain. In the case of any Shared Contingent Liability, Pharmacia shall be entitled to reimbursement from Monsanto in advance of a final determination of any Action for amounts paid in respect of costs and expenses (including allocated costs of in-house counsel and other personnel) related thereto, from time to time as such costs and expenses are incurred.

(c)    Any amounts billed and properly payable in accordance with this Article IX that are not paid within 30 days of such bill shall bear interest at the Prime Rate plus 2% per annum.

9.04    Procedures to Determine Status of Shared Contingent Gains and Liabilities.

(a)    Pharmacia and Monsanto will form the Shared Contingent Claim Committee for the purpose of resolving whether any claim or right is a Shared Contingent Gain and whether any Liability is a Shared Contingent Liability.

(b)    Either party may refer any potential claim, right or Liability to the Contingent Claim Committee for resolution as described in Section 9.04(a) and the Shared Contingent Claim Committee's determination (which shall be made within 30 days of such referral), if unanimous, shall be binding on both parties and their respective successors and assigns. In the event that the Shared Contingent Claim Committee cannot reach a unanimous determination as to the nature or status of any such claim, right or Liability within 30 days after such referral, the issue will be submitted for arbitration pursuant to the procedures set forth in Article VI of this Agreement. The outcome of the arbitration pursuant to Article VI shall be final and binding on both parties and their respective successors and assigns.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## ARTICLE X

### NON-COMPETITION

10.01  **Monsanto Non-Compete.**  For a two year period following the Separation Date, the Monsanto Group shall not commercialize (i.e., sell or transfer for sale or use by the end user) products in the businesses retained by Pharmacia.  This obligation shall include without limitation COX-2 inhibitors and IBAT (ASBT) inhibitors from any synthetic, plant or other origin.  Excluded from this non-compete obligation are the following: (i) any nutrition product (other than said COX-2 inhibitors and IBAT (ASBT) inhibitors) to the extent that commercialization of such product does not require approval by the Food & Drug Administration as a drug or (ii) the production of any protein or other material (other than said COX-2 inhibitors and IBAT (ASBT) inhibitors) in plants, microbes or enzymatic technology.

10.02  **Pharmacia Non-Compete.**  For a two year period following the Separation Date, the Pharmacia Group shall not commercialize (i.e., sell or transfer for sale or use by the end user) products in the businesses transferred to Monsanto.  This obligation shall include without limitation any and all non-human somatotropins.

## ARTICLE XI

### MISCELLANEOUS

11.01  **Conditions to Obligations.**

[Intentionally omitted.]

11.02  **Complete Agreement.**  This Agreement, the Exhibits and Schedules hereto, the Other Agreements and the agreements and other documents referred to herein shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede all previous negotiations, commitments and writings with respect to such subject matter.

11.03  **Other Agreements.**  Except as otherwise expressly provided herein, if there shall be a conflict or an inconsistency between the provisions of this Agreement and the provisions of an Other Agreement, the provisions of this Agreement shall control over the inconsistent provisions of the Other Agreement as to matters within the scope of this Agreement.

11.04  **Expenses.**  Pharmacia shall pay (or reimburse Monsanto for) all reasonable and customary out-of-pocket costs and expenses of any party hereto whether incurred prior to or after the Separation Date directly related to the preparation, execution and delivery of this Agreement and the Other Agreements and the consummation of the Separation and the IPO, consisting of fees and expenses of external advisors (including independent public accountants, consultants and attorneys), expenses directly related to the IPO (other than underwriting discounts and

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

commissions), transfer and other costs, registration and filing fees, printing and mailing costs, and any other costs, fees or charges imposed by a governmental entity.

11.05 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (other than the laws regarding choice of laws and conflicts of laws) as to all matters, including matters of validity, construction, effect, performance and remedies; provided, however, that the Arbitration Act shall govern the mater described in Article VI, and the Delaware Uniform Arbitration Act, Del. Code Ann. §§ 5701-5725, shall not apply to the matters set forth in this Agreement.

11.06 **Notices.** All notices, requests, claims, demands and other communications hereunder (collectively, "Notices") shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person, by cable, telegram, facsimile, electronic mail or other standard form of telecommunications (provided confirmation is delivered to the recipient the next Business Day in the case of facsimile, electronic mail or other standard form of telecommunications) or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

| | |
|---|---|
| If to Pharmacia: | Pharmacia Corporation<br>100 Route 206 North<br>Peapack, New Jersey 07977<br>Attention: Christopher J. Coughlin<br>Telephone: (908) 901-8000<br>Facsimile: (908) 901-1815 |
| with a copy to: | Pharmacia Corporation<br>100 Route 206 North<br>Peapack, New Jersey 07977<br>Attention: Richard T. Collier<br>Telephone: (908) 901-8000<br>Facsimile: (908) 901-1810 |
| If to Monsanto: | Monsanto Company<br>800 North Lindbergh Boulevard<br>St. Louis, Missouri 63167<br>Attention: Terrell K. Crews<br>Telephone: (314) 694-1000<br>Facsimile: (314) 694-8610 |
| with a copy to: | Monsanto Company<br>800 North Lindbergh Boulevard<br>St. Louis, Missouri 63167<br>Attention: R. William Ide III<br>Telephone: (314) 694-1000<br>Facsimile: (314) 694-6399 |

-38-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

or to such other address as any party hereto may have furnished to the other parties by a notice in writing in accordance with this Section 11.06.

11.07  Amendment and Modification.  This Agreement may be amended, modified or supplemented only by a written agreement signed by both of the parties hereto.

11.08  Successors and Assigns; No Third Party Beneficiaries.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns, but neither this Agreement nor any of the rights, interests and obligations hereunder shall be assigned by any party hereto without the prior written consent of the other party (which consent shall not be unreasonably withheld or delayed).  Except for the provisions of Sections 3.03 and 3.04 relating to Indemnities, which are also for the benefit of the Indemnitees, this Agreement is solely for the benefit of the parties hereto and their Subsidiaries and Affiliates and is not intended to confer upon any other Persons any rights or remedies hereunder.

11.09  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.10  Interpretation.  The Article and Section headings contained in this Agreement are solely for the purpose of reference, are not part of the agreement of the parties hereto and shall not in any way affect the meaning or interpretation of this Agreement.

11.11  Legal Enforceability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  Each party acknowledges that money damages would be an inadequate remedy for any breach of the provisions of this Agreement and agrees that the obligations of the parties hereunder shall be specifically enforceable.

11.12  References; Construction.  References to any "Appendix," "Article," "Exhibit," "Schedule" or "Section," without more, are to Appendices, Articles, Exhibits, Schedules and Sections to or of this Agreement.  Unless otherwise expressly stated, clauses beginning with the term "including" set forth examples only and in no way limit the generality of the matters thus exemplified.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN WITNESS WHEREOF, the parties hereto have caused this Separation Agreement to be duly executed as of the date first above written.

PHARMACIA CORPORATION
a Delaware corporation

By: _____
    Christopher J. Coughlin
    Executive Vice President and Chief
    Financial Officer

MONSANTO COMPANY
a Delaware corporation

By: _____
    Hendrik A. Verfaillie
    President and Chief Financial Officer

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Aug-31-2900  01:36pm  From-LAW-E2HE                    +314-694-2584      T-549  P.002/008  F-174

IN WITNESS WHEREOF, the parties hereto have caused this Separation Agreement to be duly executed as of the date first above written.

PHARMACIA CORPORATION
a Delaware corporation

By: _____
Christopher J. Coughlin
Executive Vice President and Chief
Financial Officer

MONSANTO COMPANY
a Delaware corporation

By: _____
Hendrik A. Verfaillie
President and Chief Financial Officer

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

EXHIBITS AND SCHEDULES

EXHIBITS

| | |
|---|---|
| Exhibit C-1 | Form of Corporate Agreement |
| Exhibit E-1 | Form of Employee Benefits and Compensation Allocation Agreement |
| Exhibit I-1 | Form of Intellectual Property Transfer Agreement |
| Exhibit S-1 | Form of Services Agreement |
| Exhibit T-1 | Form of Tax Sharing Agreement |
| Exhibit 2.02(a) | Form of Monsanto's Restated Certificate of Incorporation |
| Exhibit 2.02(b) | Form of Monsanto's By-Laws |

SCHEDULES

| | |
|---|---|
| Schedule E-1 | Excluded Monsanto Assets |
| Schedule E-2 | Excluded Monsanto Liabilities |
| Schedule F-1 | Former Agriculture Business |
| Schedule L-1 | Lease Agreements: Facilities |
| Schedule M-1 | Medium-Term Notes: Agreements |
| Schedule M-2 | Monsanto Assets: Real Property |
| Schedule M-3 | Monsanto Assets: Partnership, Joint Venture and Other Equity Interests |
| Schedule M-4 | Monsanto Assets: Other |
| Schedule M-5 | Monsanto Business: Principal Monsanto Businesses and Operations |
| Schedule M-6 | Monsanto Liabilities: Environmental |
| Schedule M-7 | Monsanto Liabilities: Other |
| Schedule M-8 | Monsanto Subsidiaries |
| Schedule M-9 | Monsanto Support Agreements |
| Schedule 2.01 | Delayed Transfer of Assets and Assumption of Liabilities |
| Schedule 2.04 | Intercompany Accounts: Specified Jurisdictions Exceptions |
| Schedule 4.01(d) | Sale Assets and Non-Sale Assets |

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit B

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# AMENDED AND RESTATED SETTLEMENT AGREEMENT

February 28, 2008

by and among

Solutia Inc.,

Monsanto Company,

and

SFC LLC

K&E 10339533.73

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# TABLE OF CONTENTS

Article I Definitions ........................................................................................2
    Section 1.01   General ..............................................................................2
    Section 1.02   Interpretation ......................................................................12

Article II Funding Co .......................................................................................13
    Section 2.01   Funding Co ..........................................................................13
    Section 2.02   Establishment of Accounts .....................................................13
    Section 2.03   Deposit of Funds ..................................................................14
    Section 2.04   Investment of the Funds .........................................................14

Article III Environmental Remediation ..................................................................14
    Section 3.01   Retained Sites .....................................................................14
    Section 3.02   Legacy Sites .......................................................................15
    Section 3.03   Certain Waste Sites ...............................................................15
    Section 3.04   Shared Sites .......................................................................21
    Section 3.05   Third Party Recoveries ...........................................................22
    Section 3.06   No Admission of Liability to Other Persons ...................................23
    Section 3.07   Cooperation .......................................................................23

Article IV Disbursements ...................................................................................23
    Section 4.01   Disbursements ....................................................................23

Article V Indemnification ..................................................................................24
    Section 5.01   Indemnification Obligations of Solutia ........................................24
    Section 5.02   Indemnification Obligations of Monsanto .....................................25
    Section 5.03   Manner of Payment ..............................................................25
    Section 5.04   Indemnification Claims ..........................................................26
    Section 5.05   Third Party Claims ...............................................................26
    Section 5.06   Subrogation .......................................................................27
    Section 5.07   Subsidiary Guarantees ...........................................................27

Article VI Certain Tax Matters ............................................................................28
    Section 6.01   Net Operating Loss Carryforwards ............................................28
    Section 6.02   Treatment of Funding Co ........................................................28
    Section 6.03   Treatment of Earnings of Funding Co ..........................................28
    Section 6.04   Distributions by Funding Co ....................................................28
    Section 6.05   Contribution to the Retiree Trust ..............................................28
    Section 6.06   Treatment of Environmental Remediation .....................................29
    Section 6.07   Effect of the Agreement .........................................................29
    Section 6.08   Cooperation .......................................................................29

Article VII Covenants ......................................................................................29
    Section 7.01   Further Assurances ...............................................................29
    Section 7.02   Business Combinations; Transfers of Covered Sites ...........................29
    Section 7.03   Cooperation and Access .........................................................30

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Section 7.04    Confidentiality .................................................................30
Section 7.05    Power of Attorney .............................................................31
Section 7.06    Insurance .........................................................................31
Section 7.07    Funding Co As Party Hereto .............................................32

Article VIII Representations and Warranties .....................................................32
Section 8.01    Representations and Warranties of Monsanto ......................32
Section 8.02    Representations and Warranties of Solutia ..........................32
Section 8.03    Representations and Warranties of Funding Co ...................33
Section 8.04    No Additional Representations or Warranties ......................33

Article IX Dispute Resolution ........................................................................34
Section 9.01    Agreement to Arbitrate ....................................................34
Section 9.02    Bankruptcy Court Jurisdiction ..........................................34
Section 9.03    Procedures. .....................................................................34

Article X Miscellaneous ................................................................................35
Section 10.01   Effectiveness ...................................................................35
Section 10.02   Expenses .........................................................................35
Section 10.03   Governing Law .................................................................35
Section 10.04   Notices ............................................................................36
Section 10.05   Amendment and Modification ...........................................37
Section 10.06   Successors and Assigns; No Third Party Beneficiaries .........37
Section 10.07   Counterparts ...................................................................37
Section 10.08   Legal Enforceability .........................................................37
Section 10.09   Complete Agreement .......................................................37

**Appendices:**

<u>Appendix A</u> – Retained Sites
<u>Appendix B</u> – Legacy Sites
<u>Appendix C</u> – Shared Sites

iii

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**Exhibits:**

| | | |
|---|---|---|
| <u>Exhibit A</u> | – | *Not Used* |
| <u>Exhibit B</u> | – | Anniston Consent Decree |
| <u>Exhibit C</u> | – | Anniston Settlement Agreement |
| <u>Exhibit D</u> | – | Anniston Side Letter |
| <u>Exhibit E</u> | – | Plan |
| <u>Exhibit F</u> | – | Form of Services Agreement |
| <u>Exhibit G1</u> | – | Form of Solutia Deferred Payment Note |
| <u>Exhibit G2</u> | – | Form of Solutia Deferred NRD Note |
| <u>Exhibit H</u> | – | *Not Used* |
| <u>Exhibit I</u> | – | Environmental Committee Charter |
| <u>Exhibit J</u> | – | Form of Solutia Subsidiary Guaranties |
| <u>Exhibit K</u> | – | Krummrich Restricted Properties |
| <u>Exhibit L</u> | – | *Not Used* |
| <u>Exhibit M</u> | – | Form of Power of Attorney |
| <u>Exhibit N</u> | – | Form of Pharmacia Indemnity Agreement |
| <u>Exhibit O1</u> | – | Form of SFC LLC Charter |
| <u>Exhibit O2</u> | – | Form of SFC LLC Operating Agreement |
| <u>Exhibit P</u> | – | Form of Retiree Trust Agreement |
| <u>Exhibit Q1</u> | – | Anniston Plant |
| <u>Exhibit Q2</u> | – | Krummrich Plant |
| <u>Exhibit R</u> | – | Form of Registration Rights Agreement |
| <u>Exhibit S</u> | – | Distribution Agreement |
| <u>Exhibit T</u> | – | Form of Transition Services Agreement |

v

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (this "Agreement") is made as of February 28, 2008 by and among Solutia Inc., a Delaware corporation ("Solutia") Monsanto Company ("Monsanto") and SFC LLC, a Delaware limited liability company directly and wholly owned by Solutia ("Funding Co").

## RECITALS

WHEREAS, Solutia was created as a subsidiary of Pharmacia Corporation, formerly known as Monsanto Company ("Pharmacia"), to operate Pharmacia's chemicals business and was spun off to shareholders (the "Solutia Spinoff") effective as of September 1, 1997 (the "Solutia Spinoff Date").

WHEREAS, in connection with the Solutia Spinoff, Solutia and Pharmacia entered into the Distribution Agreement, setting forth the allocation of the liabilities between Solutia and Pharmacia relating to Pharmacia's historical chemicals business.

WHEREAS, Monsanto was created as a subsidiary of Pharmacia to operate Pharmacia's agricultural business and was spun off to shareholders (the "Monsanto Spinoff") on September 1, 2000 (the "Monsanto Spinoff Date").

WHEREAS, in connection with the Monsanto Spinoff, Monsanto agreed to indemnify Pharmacia in the event and to the extent that Solutia failed to perform or discharge certain of its liabilities under the Distribution Agreement.

WHEREAS, on July 1, 2002, Pharmacia, Monsanto and Solutia entered into an amendment to the Distribution Agreement, whereby Solutia agreed to indemnify Monsanto for losses suffered by Monsanto as a result of Solutia's failure or inability to fulfill its obligations to Pharmacia under the Distribution Agreement.

WHEREAS, on December 17, 2003 (the "Petition Date"), Solutia commenced a case ("Solutia Chapter 11 Case") with the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

WHEREAS, on February 14, 2006, Solutia originally filed a plan of reorganization with the Bankruptcy Court.

WHEREAS, on May 16, 2007, Solutia filed its First Amended Joint Plan of Reorganization with the Bankruptcy Court.

WHEREAS, on July 9, 2007, Solutia filed its Second Amended Joint Plan of Reorganization with the Bankruptcy Court.

WHEREAS, on July 25, 2007, submitted its Third Amended Joint Plan of Reorganization to the Bankruptcy Court.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

"Funding Co Payment" has the meaning set forth in Section 3.04(d).

"Funds" has the meaning set forth in Section 2.02.

"Governmental Authority" means the United States of America or any other nation, any state or other political subdivision thereof, or any entity exercising executive, legislative, judicial, regulatory or administrative functions of government.

"Indemnitee" has the meaning set forth in Section 5.05.

"Indemnitor" has the meaning set forth in Section 5.05.

"Insurance Recovery" has the meaning set forth in Section 7.06(a).

"Investment Grade" means, with respect to debt, debt rated in one of the four highest debt rating categories of Moody's Investor Services, Inc. and Standard & Poor's Corporation (without regard to gradation).

"Joint Prosecution/Defense Agreement" means the Joint Prosecution/Defense Agreement among Solutia, Pharmacia and Monsanto, dated July 9, 2004.

"Krummrich Restricted Properties" means the properties described in Exhibit K hereto.

"Legacy Offsite" means any property for which Solutia or Pharmacia is or may become subject to Environmental Liability due to the migration onto such property of contamination that originated on a Legacy Site described in clauses (i) or (ii) of Section 3.02.

"Legacy Sites" has the meaning set forth in Section 3.02.

"Legacy Tort Claims" means all legal, equitable or other claims, demands, costs, causes of action and/or other liabilities arising under tort law (including demands for indemnification or contribution relating to or arising out of any such liability, whether arising under contract, tort law or otherwise), whether currently asserted or asserted in the future, whether known or unknown:

(a) which constitute Chemicals Liabilities assumed by Solutia under the Distribution Agreement;

(b) for which Solutia was required to indemnify Monsanto and Pharmacia under the Distribution Agreement; and

(c) which are for property damage, personal injury, products liability or premises liability or other damages arising out of or related to exposure to asbestos, PCB, dioxin, benzene, vinyl chloride, silica, butadiene, pentachlorophenol, styrene tars, other chemical exposure or environmental contamination,

regardless of whether:

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

i. any of the Debtors is, was or will be named as a defendant in any action commenced by or on behalf of the holder of such Legacy Tort Claim,

ii. such holder has filed a proof of claim in the Solutia Chapter 11 Case, or

iii. the alleged exposure occurred before or after the Solutia Spinoff.

"Legacy Tort Claims" also includes legal, equitable or other claims, demands, costs, causes of action and/or other liabilities arising against Solutia under tort law (including demands for indemnification or contribution relating to or arising out of any such liability, whether arising under contract, tort law or otherwise), whether currently asserted or asserted in the future, whether known or unknown, in circumstances where:

(u) the claims in question reflect the description contained in clause (c) of the first sentence of this definition;

(v) the property from which such chemical exposure or environmental contamination arose was previously owned by Pharmacia and transferred to Solutia in connection with the Spinoff;

(w) the claims arise from Solutia's conduct after the Solutia Spinoff;

(x) such conduct constituted the remediation, or non-remediation, of conditions which existed as of the Spinoff and were subject to Solutia's assumption of remediation obligations under the Distribution Agreement; and

(y) such conduct by Solutia was in accordance with federal or state environmental law or orders or was a continuation of activities conducted, or inactivity, by Pharmacia at the time of the Spinoff, provided, however, that in the case of non-remediation, such non-remediation must not have been in violation of federal or state environmental laws or orders,

regardless of whether:

i. any of the Debtors is, was or will be named as a defendant in any action commenced by or on behalf of the holder of such Legacy Tort Claim, or

ii. such holder has filed a proof of claim in the Solutia Chapter 11 Case.

"Legacy Tort Claims" shall not include, among other things: NRD Claims; claims for medical or retiree benefits, including retiree medical, disability and life insurance benefits; monitoring obligations with respect to PAB-exposed former employees; workers compensation claims brought solely pursuant to worker compensations statutes and not constituting or arising out of a claim, demand, cost, cause of action and/or other liability that would otherwise be defined as a "Legacy Tort Claim" herein; antitrust claims; commercial, business or contract claims; Environmental Liability Costs; any other remediation obligations covered by the terms of this Agreement; Legacy Claims for "response" as defined under Section 101(25) of CERCLA; claims asserted in connection with any pension or similar obligations of Solutia, including (x)

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

claims asserted in the actions entitled *Walker v. Monsanto Company Pension Plan*, No. 04-cv-436-DRH, *Scharringhausen v. Solutia Inc. Employees' Pension Plan*, No. 3:06CV00099, and the administrative charge entitled *Larry Probst v. Monsanto Company and Solutia, Inc.*, EEOC Charge Nos. 280 A 00618 through 280 A 00652, and any similar litigation and (y) claims asserted in the action entitled *Miller v. Pharmacia Corporation*, No. 4:04CV981, or any similar litigation; or (other than as may be provided in the second sentence of this definition) any claims, including claims for exposure to chemicals or other substances, arising from Solutia's conduct after the Spinoff.

"Loss" has the meaning set forth in Section 5.01.

"Master Operating Agreement" means the Master Operating Agreement, dated September 1, 1997, between Monsanto (as party thereto pursuant to the Amendment to the Distribution Agreement, dated July 1, 2002) and Solutia, as amended from time to time.

"Monsanto" has the meaning set forth in the preamble.

"Monsanto Claim" has the meaning assigned to it in the Plan.

"Monsanto Credit Limit" has the meaning set forth in Section 3.04(e).

"Monsanto ELC Review Period" has the meaning set forth in Section 3.04(d)(v).

"Monsanto Indemnified Party" has the meaning set forth in Section 5.01.

"Monsanto Payment" has the meaning set forth in the recitals.

"Monsanto Spinoff" has the meaning set forth in the recitals.

"Monsanto Spinoff Date" has the meaning set forth in the recitals.

"Monsanto Unallocated Review Period" has the meaning set forth in Section 4.01(a).

"New Common Stock" has the meaning assigned to it in the Plan.

"NRD Claims" means all claims under Section 107(a)(4)(c) of CERCLA, 42 U.S.C. § 9607(a)(4)(c), or other provision of law, for damages for injury to, destruction of or loss of natural resources with respect to Covered Sites, including the reasonable cost of assessing such damages, regardless of whether such claims were filed in the Solutia Chapter 11 Case.

"Parties" means Solutia and Monsanto.

"Payable Amount" has the meaning set forth in Section 3.04(d)(v).

"PCB" means polychlorinated biphenyls.

"PENNDOT Case" means the action originally filed against United States Mineral Products Company in 1990 by the Commonwealth of Pennsylvania, seeking damages caused by

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

period, the Unallocated Payable Amount shall be determined in accordance with Article IX hereof.

(b)    Payment Procedures.  Any and all Unallocated Expenses set forth in an Unallocated Reimbursement Statement in respect of which Monsanto (x) timely delivers an Unallocated Approval Notice (y) timely delivers an Unallocated Objection Notice and which Unallocated Expenses are not specifically identified in such Unallocated Objection Notice or (z) fails to timely deliver an Unallocated Objection Notice shall, in each case, be an "Approved Unallocated Amount."  Any and all Approved Unallocated Amounts and Unallocated Payment Amounts shall be paid as set forth in this Section 4.01(b).  Funding Co shall make or cause to be made payment from the Unallocated Account to Solutia in the amount of any Approved Unallocated Amount, as promptly as practicable but in any event within one (1) Business Day following the expiration of the Monsanto ELC Review Period, in accordance with wire transfer and account instructions either contained or confirmed in the relevant Unallocated Reimbursement Statement.  Funding Co shall make or cause to be made payment from the Unallocated Account to Solutia in the amount of any Unallocated Payment Amount as soon as practicable, but in any event within five (5) Business Days after the date upon which such amount becomes an Unallocated Payment Amount, in accordance with wire transfer and account instructions either contained or confirmed in the relevant Unallocated Reimbursement Statement.

ARTICLE V
INDEMNIFICATION

Section 5.01    Indemnification Obligations of Solutia.  After the Effective Date, Solutia shall indemnify Monsanto and its Affiliates, directors, officers, employees, employee benefit plans, successors and assigns (collectively, "Monsanto Indemnified Parties") and shall indemnify Pharmacia and its Affiliates, directors, officers, employees, successors and assigns (collectively, "Pharmacia Indemnified Parties") pursuant to the Pharmacia Indemnity Exhibit and save and hold each of them harmless against, and pay on behalf of or reimburse Monsanto Indemnified Parties and Pharmacia Indemnified Parties as and when incurred for any loss, liability, action, cause of action, cost, damage or expense, whether or not arising out of third party claims (including interest, penalties, reasonable attorneys', consultants' and experts' fees and expenses) (collectively, "Losses", and each a "Loss"), which any Monsanto Indemnified Party or Pharmacia Indemnified Party suffers, sustains or becomes subject to, as a result of or arising out of:

(a)    any Environmental Liability in connection with the Retained Sites;

(b)    any Environmental Liability in connection with the Shared Sites for which Solutia is liable pursuant to Section 3.04 above;

(c)    Solutia Tort Claims;

(d)    failure of Solutia to pay any amounts required to be paid by Solutia (i) pursuant to the Anniston Settlement Agreement as specified in the Anniston Side Letter or (ii) to the education trust fund pursuant to Section VI of the Anniston Consent Decree, or failure of Solutia to honor any other obligation of Solutia under the Anniston Settlement Agreement;

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(e)    the PENNDOT Case; provided, that in no event shall Solutia be required to indemnify Monsanto Indemnified Parties or Pharmacia Indemnified Parties in respect of any Losses suffered by Monsanto Indemnified Parties or Pharmacia Indemnified Parties described in this clause (e) to the extent the aggregate amount of all such Losses exceeds $20 million; and

(f)    the Chemicals Liabilities; provided, that in no event shall Solutia be required to indemnify Monsanto Indemnified Parties or Pharmacia Indemnified Parties in respect of any Losses suffered by Monsanto Indemnified Parties or Pharmacia Indemnified Parties described in this clause (f) to the extent that (i) Monsanto agreed to indemnify Solutia Indemnified Parties for such Losses pursuant to Section 5.02 or (ii) such Losses relate to "claims" (as defined in section 101(5) of the Bankruptcy Code) that are not satisfied in full under the Plan arising in connection with or related to Pharmacia's or Solutia's non-qualified plans or arrangements at issue in *Miller v. Pharmacia Corporation*, Case No. 4:04CV981.

If and to the extent any provision of this Section 5.01 is unenforceable for any reason, Solutia hereby agrees to make the maximum contribution to the payment and satisfaction of the Loss for which indemnification is provided for in this Section 5.01 that is permissible under applicable laws.

Section 5.02    Indemnification Obligations of Monsanto. After the Effective Date, Monsanto shall indemnify Solutia and its Affiliates, directors, officers, employees, employee benefit plans, successors and assigns (collectively, "Solutia Indemnified Parties") and save and hold each of them harmless against, and pay on behalf of or reimburse Solutia Indemnified Parties as and when incurred for any Losses which any Solutia Indemnified Party suffers, sustains or becomes subject to, as a result of or arising out of:

(a)    any Environmental Liability in connection with the Legacy Sites;

(b)    any Environmental Liability in connection with the Shared Sites for which Monsanto is liable pursuant to Section 3.04 above;

(c)    any Legacy Tort Claims; and

(d)    the Agricultural Liabilities.

If and to the extent any provision of this Section 5.02 is unenforceable for any reason, Monsanto hereby agrees to make the maximum contribution to the payment and satisfaction of the Loss for which indemnification is provided for in this Section 5.02 that is permissible under applicable laws.

Section 5.03    Manner of Payment. Any indemnification owing pursuant to this Article V shall be effected by wire transfer of immediately available funds from the Indemnitor to an account designated in writing by the Indemnitee within fifteen (15) days after the final determination of the amount thereof pursuant to this Article V. The amount of any Losses for which indemnification is provided under this Article V shall be computed net of any third-party insurance proceeds and recoveries in respect of third party indemnification obligations actually received by the Indemnitee in connection with such Losses. The Indemnitee shall use its commercially reasonable efforts to obtain recovery in respect of any Losses from any insurer or

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

other third party indemnity which is available in respect of such Losses. If an Indemnitee receives such insurance proceeds or indemnification recoveries in connection with Losses for which it has received indemnification, such party shall refund to the Indemnitor the amount of such insurance proceeds or recovery when received, up to the amount of indemnification received.

Section 5.04    Indemnification Claims. Any indemnification claim which is not a result of a third party claim shall be asserted by written notice given by the Indemnitee to the Indemnitor. The Indemnitor shall have a period of thirty (30) days after the receipt of such notice within which to respond thereto. If the Indemnitor does not respond within such 30-day period, it shall be deemed to have rejected such claim in whole. If the Indemnitor does not respond within such 30-day period or rejects such claim in whole or in part, the Indemnitee shall be free to pursue such remedies as may be available to such party under Article IX.

Section 5.05    Third Party Claims

(a)    If there occurs an event which a party asserts is an indemnifiable event pursuant to this Article V, the party or parties seeking indemnification (the "Indemnitee") shall notify the other party or parties obligated to provide indemnification (the "Indemnitor") promptly in writing specifying the facts constituting the basis for such claim and the amount, to the extent known, of the claim asserted. If such event involves (i) any third party claim or (ii) the commencement of any suit, action, proceeding, investigation or other claim (a "Proceeding") by a third Person (such third party claim and Proceeding hereinafter referred to collectively as a "Third Party Claim"), the Indemnitee will give such Indemnitor prompt written notice of such Third Party Claim or the commencement of such Proceeding; provided, that the failure to provide prompt notice as provided herein (whether with respect to a Third Party Claim or otherwise) will relieve the Indemnitor of its obligations hereunder only to the extent that such failure prejudices the Indemnitor hereunder. In case any such Third Party Claim shall be brought against any Indemnitee, it shall notify the Indemnitor of the commencement thereof promptly in writing specifying the facts constituting the basis for such claim and the amount, to the extent known, of the claim asserted.

(b)    The Indemnitor shall be entitled to participate in the defense of any Third Party Claim and to assume the defense thereof, with counsel selected by the Indemnitor; provided, that the Indemnitor notifies the Indemnitee in writing of its election to assume such defense within twenty (20) Business Days of receipt of notice from the Indemnitee of such Third Party Claim. After notice from the Indemnitor to the Indemnitee of such election so to assume the defense thereof, the Indemnitor shall not, except as provided in the next sentence, be liable to the Indemnitee for any legal expenses of other counsel or any other expenses subsequently incurred by such party or parties in connection with the defense thereof. Notwithstanding the Indemnitor's election to so assume the defense of any such Third Party Claim, the Indemnitee shall have the right to employ separate counsel (including local counsel) and participate in (but not control) such defense; provided, that the Indemnitor shall bear the reasonable fees and expenses of such separate counsel only if (x) the defendants in any such Proceeding include both the Indemnitee and the Indemnitor and the Indemnitee has legal defenses available to it which are different from or additional to those available to the Indemnitor; provided further, that, in each case, with respect to each Indemnitee in such circumstance, the Indemnitor shall not be

26

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

two arbitrators so appointed shall attempt to agree on the appointment of a third arbitrator. If they are unable to so agree within thirty (30) days after the second arbitrator is appointed, the third arbitrator shall be appointed by AAA.

(d)     The decision of the panel of arbitrators shall be final, binding and incontestable and may be used as a basis for judgment thereon in any jurisdiction. Such decision shall include a determination as to which of the parties shall bear the costs of the arbitration proceeding.

(e)     The parties hereby expressly agree to waive the right to appeal from the decision of the arbitrators. Accordingly, there shall be no appeal to any court or other authority (government or private) from the decision of the arbitrators, and the parties shall not dispute nor question the validity of such award before any regulatory or other authority in any jurisdiction where enforcement action is taken by the party or parties in whose favor the award was rendered.

(f)     Notwithstanding the foregoing, any party may at any time without regard to any notice periods required by the provisions hereof (whether before, during or after arbitration), and as often as is necessary or appropriate, seek provisional or interim relief (including, without limitation, to the extent available under applicable law, a temporary restraining order, preliminary injunction and/or pre-judgment attachment) in a court of law.

(g)     The commencement and pendency of an arbitration under this Section 9.03 shall not relieve any of the parties of their respective obligations under this Agreement.

(h)     The provisions of this Article IX shall survive the termination and/or expiration of this Agreement.

## ARTICLE X
## MISCELLANEOUS

Section 10.01 Effectiveness. This Agreement shall not be effective or binding upon the parties hereto until (a) the Exhibits hereto are in form and substance acceptable to Solutia and Monsanto, (b) the Agreement and its terms have been approved by Final Order of the Bankruptcy Court, (c) the Retiree Settlement and its terms have been approved by Final Order of the Bankruptcy Court, (d) the Plan has been confirmed by Final Order of the Bankruptcy Court, (e) the conditions precedent to the Effective Date set forth in the Plan shall have been satisfied or duly waived pursuant to the terms of the Plan and (f) Solutia's counsel has issued an opinion, in form and substance reasonably acceptable to Monsanto, regarding Funding Co.

Section 10.02 Expenses. Except as specifically provided in this Agreement, all costs and expenses of any party hereto whether incurred prior to or after the Effective Date in connection with the negotiation, preparation, execution and delivery of this Agreement and with the consummation of the transactions contemplated by this Agreement, including legal fees, shall be paid by such party.

Section 10.03 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (other than the laws regarding choice of laws

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

and conflicts of laws) as to all matters, including matters of validity, construction, effect performance and remedies.

Section 10.04 <u>Notices</u>. All notices, requests, claims demands and other communications hereunder shall be in writing and shall be given (and shall be deemed to have been duly given upon receipt) by delivery in person or by facsimile (provided confirmation is delivered to the recipient the next day in the case of facsimile), by nationally recognized overnight courier, or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Solutia:      General Counsel
                    Solutia, Inc.
                    575 Maryville Centre
                    St. Louis, MO  63141
                    Telephone: (314) 674-1000
                    Facsimile: (314) 674-8703

with a copy (which shall not constitute notice) to:

                    Jonathan S. Henes
                    Thomas W. Christopher
                    Kirkland & Ellis LLP
                    153 East 53rd Street
                    New York, NY  10022
                    Telephone: 212-446-4800
                    Facsimile: 212-446-4900

If to Monsanto:     David Snively, Esq. (General Counsel)
                    Monsanto Company
                    800 North Lindbergh Boulevard
                    St. Louis, MO 63167

with a copy (which shall not constitute notice) to:

                    John C. Longmire, Esq.
                    Willkie Farr & Gallagher LLP
                    787 Seventh Avenue
                    New York, NY 10019
                    Fax:  (212) 728-8111

                    George T. Frampton, Jr., Esq.
                    Boies, Schiller & Flexner LLP
                    570 Lexington Avenue, 16th Floor
                    New York, NY 10022
                    Fax: 212-446-2350

                    Lloyd A. Palans, Esq.
                    Bryan Cave LLP
                    One Metropolitan Square

36

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement on the day and year first above written.

SOLUTIA INC.

By: _____
Name:  Jeffry N. Quinn
Title:  Chairman, President and CEO

MONSANTO COMPANY

By: _____
Name:  David F. Snively
Title:  Sr. V.P., Secretary & General Counsel

SFC LLC

By: _____
Name:  James A. Tichenor
Title:   Authorized Manager

All notices to be provided to SFC LLC in accordance with Section 10.04 of this Agreement shall be addressed as follows:

575 Maryville Centre
St. Louis, MO  63141
_____
_____
_____

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement on the day and year first above written.

SOLUTIA INC.

By: _____
Name: Jeffry N. Quinn
Title: Chairman, President and CEO

MONSANTO COMPANY

By: _____
Name: David F. Snively
Title: Sr. V.P., Secretary & General Counsel

SFC LLC

By: _____
Name:
Title:
Dated:

All notices to be provided to SFC LLC in accordance with Section 10.04 of this Agreement shall be addressed as follows:

_____
_____
_____
_____

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement on the day and year first above written.

SOLUTIA INC.

By: _____
    Name:  Jeffry N. Quinn
    Title:  Chairman, President and CEO

MONSANTO COMPANY

By: _____
    Name:  David F. Snively
    Title:  Sr. V.P., Secretary & General Counsel

SFC LLC

By: _____
    Name:  James A. Tichenor
    Title:  Authorized Manager

All notices to be provided to SFC LLC in accordance with Section 10.04 of this Agreement shall be addressed as follows:

    575 Maryville Centre
    St. Louis, MO  63141

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit C

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

PHARMACIA LLC

AMENDMENT TO POWER OF ATTORNEY: SETTLEMENT AGREEMENT

KNOW ALL MEN BY THESE PRESENTS:

1. On January 24, 2008, Pharmacia Corporation executed the Power of Attorney attached hereto as Exhibit A (the "Power of Attorney").

2. In accordance with the laws of the State of Delaware, on or about November 30, 2012, Pharmacia Corporation  converted to a limited liability company named Pharmacia LLC.

3. Pharmacia LLC hereby amends the Power of Attorney by substituting "Pharmacia LLC, a Delaware limited liability company (Pharmacia Corporation converted to a limited liability company)" as and for "Pharmacia Corporation" in Paragraph 1.a of the Power of Attorney.

4. Pharmacia LLC hereby confirms that Monsanto Company is and continues to serve as the lawful agent and attorney of Pharmacia LLC, a Delaware limited liability company (Pharmacia Corporation converted to a limited liability company), as provided in the Power of Attorney.

5. Except as provided herein, all terms and conditions in the Power of Attorney remain in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15th day of February, 2013.

PHARMACIA LLC

By: _____
Its Authorized Officer

ATTEST:

_____

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

STATE OF _New York_

COUNTY OF _New York_                )

      On this _15th_ day of February, 2013, before me the undersigned, a Notary Pubic, in and for the County and State aforesaid, personally appeared _Monique Oburdolu_ to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he/she executed the same as his/her free act and deed.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in _February_, the day and year last above written.

_____
Notary Public in and for said County and State

My Commission expires:

_May 14th, 2015_

SHAMIKA BROWN
Notary Pubic, State of New York
No. 01BR6165613
Qualified in Kings County
Commission Expires May 14, 20_15_

8643435v.2

2

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit D

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF "MONSANTO COMPANY" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE SEVENTEENTH DAY OF APRIL, A.D. 2013, AT 6:02 O`CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE EIGHTEENTH DAY OF APRIL, A.D. 2016, AT 4:15 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE TWENTY-SEVENTH DAY OF APRIL, A.D. 2016.

Jeffrey W. Bullock, Secretary of State

3174788  8100X
SR# 20175898227

Authentication: 203122684
Date: 08-25-17

You may verify this certificate online at corp.delaware.gov/authver.shtml

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:17 PM 04/17/2013*
*FILED 06:02 PM 04/17/2013*
*SRV 130450387 - 3174788 FILE*

## RESTATED CERTIFICATE OF INCORPORATION

### OF

### MONSANTO COMPANY

Monsanto Company, a corporation organized and existing under the laws of the State of Delaware, does hereby certify:

1.    The name of the corporation is Monsanto Company.  Monsanto Company was originally incorporated under the name "Monsanto Ag Company", and the original Certificate of Incorporation was filed with the Secretary of State of the State of Delaware on February 9, 2000.

2.    This Restated Certificate of Incorporation only restates and integrates and does not further amend the provisions of Monsanto Company's Certificate of Incorporation as theretofore amended or supplemented and there is no discrepancy between the provisions of the Certificate of Incorporation as theretofore amended and supplemented and the provisions of this Restated Certificate.  This Restated Certificate of Incorporation (the "Certificate of Incorporation") was duly adopted in accordance with the provisions of Section 245 of the General Corporation Law of the State of Delaware.

3.    The text of the Certificate of Incorporation is hereby restated and integrated to read in its entirety as follows:

### ARTICLE I

The name of the corporation (which is hereinafter referred to as the "Corporation") is:  Monsanto Company

### ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, County of New Castle.  The name of the Corporation's registered agent at such address is Corporation Service Company.

### ARTICLE III

The purpose of the Corporation shall be to engage in any lawful act or activity for which corporations may be organized and incorporated under the General Corporation Law of the State of Delaware.

1

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

<u>ARTICLE IV</u>

Section 1.    The Corporation shall be authorized to issue 1,520,000,000 shares of capital stock, of which 1,500,000,000 shares shall be shares of Common Stock, $0.01 par value ("Common Stock"), and 20,000,000 shares shall be shares of Preferred Stock, $0.01 par value ("Preferred Stock").

Section 2.    Shares of Preferred Stock may be issued from time to time in one or more series.  The Board of Directors of the Corporation (the "Board") is hereby authorized to fix by resolution or resolutions the voting powers, if any, designations, powers, preferences and the relative, participating, optional or other special rights, if any, and the qualifications, limitations or restrictions thereof, of any unissued series of Preferred Stock; and to fix the number of shares constituting such series, and to increase or decrease the number of shares of any such series (but not below the number of shares thereof then outstanding).  The powers, preferences and relative, participating, optional and other special rights of each series of Preferred Stock, and the qualifications, limitations or restrictions thereof, if any, may differ from those of any and all other series at any time outstanding.

Section 3.    Except as otherwise provided by law or by this Certificate of Incorporation (including any certificate filed with the Secretary of State of the State of Delaware establishing the terms of a series of Preferred Stock in accordance with Section 2 of this Article IV), the Common Stock shall have the exclusive right to vote for the election of directors and for all other purposes.  Each share of Common Stock shall entitle the holder thereof to one vote on all matters on which stockholders are entitled generally to vote, and the holders of Common Stock shall vote together as a single class.

<u>ARTICLE V</u>

Section 1.    In anticipation of the possibility (i) that the Corporation will not be a wholly-owned subsidiary of Pharmacia Corporation and that Pharmacia Corporation may be a majority or significant stockholder of the Corporation, (ii) that the officers and/or directors of the Corporation may also serve as officers and/or directors of Pharmacia Corporation, (iii) that the Corporation and Pharmacia Corporation may engage in the same or similar activities or lines of business and have an interest in the same classes or categories of corporate opportunities, and (iv) in recognition of the benefits to be derived by the Corporation through its continued contractual, corporate and business relations with Pharmacia Corporation (including possible service of officers and/or directors of Pharmacia Corporation as officers and directors of the Corporation), the provisions of this Article are set forth to regulate and shall, to the fullest extent permitted by law, define the conduct of the Corporation with respect to certain classes or categories of business opportunities that are presented to the Corporation as they may involve Pharmacia Corporation and its officers and directors, and the powers, rights, duties and liabilities of the Corporation and its officers, directors and stockholders in connection therewith.

2

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Section 2.    Except as may be otherwise provided in a written agreement between the Corporation and Pharmacia Corporation, Pharmacia Corporation shall have no duty to refrain from engaging in a corporate opportunity in the same or similar activities or lines of business as the Corporation (and all corporations, partnerships, joint ventures, associations and other entities in which the Corporation beneficially owns directly or indirectly 50 percent or more of the outstanding voting stock, voting power, partnership interests or similar voting interests) engages in or proposes to engage in at the time of the initial public offering of the Corporation's Common Stock (and the Corporation hereby renounces any interest or expectancy, or in being offered any opportunity to participate in such business opportunities as may arise in which both the Corporation and Pharmacia Corporation may have an interest), and, to the fullest extent permitted by law, neither Pharmacia Corporation nor any officer or director thereof (except as provided in Section 3 of this Article V) shall be liable to the Corporation or its stockholders for breach of any fiduciary duty by reason of any such activities of Pharmacia Corporation.  In the event that Pharmacia Corporation acquires knowledge of a potential transaction or matter which may be a corporate opportunity for both Pharmacia Corporation and the Corporation, Pharmacia Corporation shall, to the fullest extent permitted by law, have no duty to communicate or offer such corporate opportunity to the Corporation and shall, to the fullest extent permitted by law, not be liable to the Corporation or its stockholders for breach of any fiduciary duty as a stockholder of the Corporation by reason of the fact that Pharmacia Corporation pursues or acquires such corporate opportunity for itself, directs such corporate opportunity to another person, or does not communicate information regarding such corporate opportunity to the Corporation.

Section 3.    In the event that a director or officer of the Corporation who is also a director or officer of Pharmacia Corporation acquires knowledge of a potential transaction or matter which may be a corporate opportunity (as referenced above in Section 2) for both the Corporation and Pharmacia Corporation, such director or officer of the Corporation shall, to the fullest extent permitted by law, have fully satisfied and fulfilled the fiduciary duty of such director or officer to the Corporation and its stockholders with respect to such corporate opportunity, if such director or officer acts in a manner consistent with the following policy:

(a) a corporate opportunity (as referenced above in Section 2) offered to any person who is an officer of the Corporation, and who is also a director but not an officer of Pharmacia Corporation, shall belong to the Corporation;

(b) a corporate opportunity (as referenced above in Section 2) offered to any person who is a director but not an officer of the Corporation, and who is also a director or officer of Pharmacia Corporation shall belong to the Corporation if such opportunity is expressly offered to such person in his or her capacity as a director of the Corporation, and otherwise shall belong to Pharmacia Corporation; and

(c) a corporate opportunity (as referenced above in Section 2) offered to any person who is an officer of both the Corporation and Pharmacia Corporation shall belong to the Corporation if such opportunity is expressly offered to such person in his or her capacity as an officer of the Corporation and otherwise shall belong to Pharmacia Corporation.

3

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Section 4.    Any person purchasing or otherwise acquiring any interest in shares of the capital stock of the Corporation shall be deemed to have notice of and to have consented to the provisions of this Article V.

Section 5.    For purposes of this Article V only:

(a)   A director of the Corporation who is Chairman of the Board or of a committee thereof shall not be deemed to be an officer of the Corporation by reason of holding such position (without regard to whether such position is deemed an office of the Corporation under the Amended and Restated By-Laws (the "By-Laws") of the Corporation), unless such person is a full-time employee of the Corporation; and

(b) The term "Pharmacia Corporation" shall mean Pharmacia Corporation, a Delaware corporation (and any successor thereof) and all corporations, partnerships, joint ventures, associations and other entities (other than the Corporation (and all corporations, partnerships, joint ventures, associations and other entities in which the Corporation beneficially owns directly or indirectly 50 percent or more of the outstanding voting stock, voting power, partnership interests or similar voting interests)) in which Pharmacia Corporation beneficially owns (directly or indirectly) 50 percent or more of the outstanding voting stock, voting power, partnership interests or similar voting interests.

Section 6.    Anything in this Certificate of Incorporation to the contrary notwithstanding, the foregoing provisions of this Article V shall terminate, expire and have no further force and effect on the date that (i) Pharmacia Corporation ceases to beneficially own shares of common stock representing at least 20 percent of the total voting power of all classes of outstanding capital stock of the Corporation entitled to vote in the election of directors and (ii) no person who is a director or officer of the Corporation is also a director or officer of Pharmacia Corporation.  Neither the alteration, amendment, termination, expiration or repeal of this Article V nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article V shall eliminate or reduce the effect of this Article V in respect of any matter occurring, or any cause of action, suit or claim that, but for this Article V, would accrue or arise, prior to such alteration, amendment, termination, expiration, repeal or adoption.

## ARTICLE VI

Section 1.    Subject to the rights of the holders of any outstanding series of Preferred Stock or any other series or class of stock as set forth in this Certificate of Incorporation to elect additional directors under specified circumstances, the number of directors of the Corporation shall be fixed, and may be increased or decreased from time to time, by resolution of the Board.

Section 2.    Unless and except to the extent that the By-Laws of the Corporation shall so require, the election of directors of the Corporation need not be by written ballot.

4

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Section 3.    The directors, other than those who may be elected by the holders of any outstanding series of Preferred Stock, shall, until the annual meeting of stockholders to be held in 2016, be classified with respect to the time for which they severally hold office into three classes, as nearly their equal in number as possible.  The term of office for the class of directors elected at the annual meeting of stockholders held in 2011 shall expire at the annual meeting of stockholders to be held in 2014, the term of office for the class of directors elected at the annual meeting of stockholders held in 2012 shall expire at the annual meeting of the stockholders to be held in 2015, and the term of office for the class of directors elected at the annual meeting of stockholders held in 2013 shall expire at the annual meeting of stockholders to be held in 2016, with the members of each class to hold office until their successors are elected and qualified.  Commencing at the annual meeting of stockholders to be held in 2014, directors succeeding those whose terms are then expired shall be elected to hold office for a term expiring at the annual meeting of stockholders held in the year following the year of their election and until their successors are elected and qualified.  Commencing with the annual meeting of the stockholders of the Corporation to be held in 2016, the classification of the directors shall terminate and all directors shall be of one class and shall serve until the next annual meeting of stockholders or until their earlier death, resignation, removal or disqualification.

Section 4.    Except as provided in the subsequent sentence and subject to the rights of the holders of any outstanding series of Preferred Stock or any other series or class of stock as set forth in or pursuant to this Certificate of Incorporation to elect additional directors under specified circumstances, any director or the entire Board may be removed from office at any time with or without cause, but only by the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class.  Notwithstanding the immediately preceding sentence, until the annual meeting of the stockholders of the Corporation to be held in 2016, a director may be removed from office only for cause and only by the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, subject to the rights of the holders of any outstanding series of Preferred Stock or any other series or class of stock as set forth in or pursuant to this Certificate of Incorporation to elect additional directors under specified circumstances.  Notwithstanding anything in this Certificate of Incorporation to the contrary and in addition to any other vote required by law, the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, repeal or adopt any provision inconsistent with this Article VI.

Section 5.    Subject to the rights, if any, of the holders of any outstanding series of Preferred Stock, newly created directorships resulting from any increase in the authorized

5

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

number of directors or any vacancies in the Board resulting from death, resignation, retirement, disqualification, removal from office or other cause shall be filled solely by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum of the Board. Any director so chosen shall hold office until his or her successor shall be elected and qualified and, if the Board at such time is classified, until the next election of the class for which such directors shall have been chosen. No decrease in the number of directors shall shorten the term of any incumbent director.

ARTICLE VII

In furtherance and not in limitation of the powers conferred by law, the Board is expressly authorized and empowered to adopt, amend, alter and repeal the By-Laws of the Corporation at any regular or special meeting of the Board or by written consent, subject to the power of the stockholders of the Corporation to adopt, amend, alter or repeal any By-Laws; *provided, however*, that with respect to the powers of the stockholders to adopt, amend, alter and repeal By-Laws, notwithstanding any other provision of this Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any outstanding series of Preferred Stock required by law or by this Certificate of Incorporation (including any certificate filed with the Secretary of State of the State of Delaware establishing the terms of a series of Preferred Stock in accordance with Section 2 of Article IV), the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for stockholders to adopt, amend or repeal any provision of the By-Laws. Notwithstanding anything contained in this Certificate of Incorporation to the contrary and in addition to any other vote required by law, the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, repeal or adopt any provision inconsistent with the preceding sentence.

ARTICLE VIII

The Corporation reserves the right at any time and from time to time to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, and any other provisions authorized by the laws of the State of Delaware at the time in force may be added or inserted, in the manner now or hereafter prescribed by law; and all rights, preferences and privileges of whatsoever nature conferred upon stockholders, directors or any other persons whomsoever by and pursuant to this Certificate of Incorporation in its present form or as hereafter amended are granted subject to the right reserved in this Article.

ARTICLE IX

A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Any amendment, repeal or modification of the foregoing paragraph shall not adversely affect any right or protection of a director of the Corporation existing hereunder with respect to any act or omission occurring prior to such amendment, repeal or modification.

## ARTICLE X

Any action required or permitted to be taken at any annual or special meeting of stockholders of the Corporation may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares of capital stock entitled to vote thereon were present and voted; *provided, however,* that after the first date on which Pharmacia Corporation and its affiliates cease to beneficially own the Pharmacia Required Percentage, any action required or permitted to be taken by stockholders may be effected only at a duly called annual or special meeting of stockholders and may not be effected by a written consent or consents by stockholders in lieu of such a meeting. Notwithstanding anything in this Certificate of Incorporation to the contrary and in addition to any other vote required by law, the affirmative vote of the holders of at least 70 percent of the voting power of the outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, repeal or adopt any provision inconsistent with this Article X.

## ARTICLE XI

The Corporation elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware until the first date on which Pharmacia Corporation and its affiliates cease to beneficially own 15 percent or more of the total voting power of the outstanding shares of all classes of capital stock entitled to vote generally in the election of directors, at which time Section 203 of the General Corporation Law of the State of Delaware shall apply to the Corporation.

IN WITNESS WHEREOF, Monsanto Company has caused this Restated Certificate of Incorporation to be executed by David F. Snively, its Executive Vice President, Secretary and General Counsel, this 16th day of April, 2013.

Name: David F. Snively
Title:    Executive Vice President, Secretary and General Counsel

7

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:15 PM 04/18/2016
FILED 04:15 PM 04/18/2016
SR 20162367604 - File Number 3174788

## CERTIFICATE OF MERGER

### MERGING

**BRETCO HOLDINGS (MAURITIUS) LTD., A MAURITIUS CORPORATION
D&PL MAURITIUS LIMITED, A MAURITIUS CORPORATION
EMERGENT GENETICS INDIA LIMITED, A MAURITIUS CORPORATION
MONSANTO MAURITIUS, A MAURITIUS CORPORATION**

### WITH AND INTO

### MONSANTO COMPANY, A DELAWARE CORPORATION

*Pursuant to Section 252 of the
General Corporation Law of the State of Delaware*

dated: April 18, 2016

The undersigned corporation formed and existing under the laws of the State of Delaware,

**DOES HEREBY CERTIFY:**

**FIRST:** The name of the surviving corporation is Monsanto Company, a Delaware corporation (the "Company"). The names of each of the entities, each of which is a company incorporated under the laws of Mauritius, that is being merged with and into the Company are as follows:

Bretco Holdings (Mauritius) Ltd.
D&PL Mauritius Limited
Emergent Genetics India Limited
Monsanto Mauritius

**SECOND:** The Company and each of the other constituent entities has approved, adopted, certified, executed and acknowledged an Agreement and Plan of Merger in accordance with Section 252 of the General Corporation Law of the State of Delaware, as amended (the "DGCL").

**THIRD:** Pursuant to this Certificate of Merger, each of Bretco Holdings (Mauritius) Ltd., D&PL Mauritius Limited, Emergent Genetics India Limited and Monsanto Mauritius is merging with and into the Company, with the Company surviving the merger as the surviving corporation. The name of the surviving corporation is Monsanto Company.

**FOURTH:** The certificate of incorporation of the surviving corporation shall be the certificate of incorporation of the Company.

**FIFTH:** The executed Agreement and Plan of Merger with each of the constituent entities is on file at a place of business of the surviving corporation. The address of such place of business of the surviving corporation is 800 North Lindbergh Boulevard, St. Louis, Missouri 63167, United States of America.

**SIXTH:** A copy of the Agreement and Plan of Merger will be furnished by the surviving corporation, on request and without cost, to any stockholder of the surviving corporation or to any stockholder of Bretco Holdings (Mauritius) Ltd., D&PL Mauritius Limited, Emergent Genetics India Limited and Monsanto Mauritius.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**SEVENTH**: This Certificate of Merger, and thus the merger of each of Bretco Holdings (Mauritius) Ltd., D&PL Mauritius Limited, Emergent Genetics India Limited and Monsanto Mauritius with and into the Company, shall become effective on April 27, 2016, in accordance with the provisions of Section 103(d) of the DGCL.

**IN WITNESS WHEREOF**, Monsanto Company has caused this certificate to be duly executed.

**MONSANTO COMPANY**
**a Delaware Corporation**

Name: Sonya M. Davis
Title:    Assistant Secretary

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Delaware

PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "SOLUTIA INC.", FILED IN THIS OFFICE ON THE TWENTY-EIGHTH DAY OF FEBRUARY, A.D. 2008, AT 8:30 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6412752

DATE: 02-28-08

2735025   8100

080243187

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

SECOND AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
SOLUTIA INC.

*Adopted in accordance with the provisions
of §303, §242 and §245 of the
General Corporation Law of the State of Delaware*
\* \* \* \*

The undersigned, on behalf of Solutia Inc., a corporation duly organized and existing under and by virtue of the General Corporation Law of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY as follows:

**FIRST:** The Corporation filed its original Certificate of Incorporation with the Delaware Secretary of State on April 1, 1997, under the name Queeny Chemical Company.

**SECOND:** The Corporation filed a plan of reorganization (the "Plan") which, pursuant to chapter 11 of Title 11 of the United States Code, was confirmed, as modified, by an order dated November 29, 2007 of the United States Bankruptcy Court for the Southern District of New York, a court having jurisdiction of a proceeding under the United States Bankruptcy Code (the "Order"), and that such order provides for the making and filing of this Second Amended and Restated Certificate of Incorporation.

**THIRD:** The Board of Directors of the Corporation duly adopted resolutions in accordance with Section 303, Section 242 and Section 245 of the General Corporation Law of the State of Delaware, as authorized by the Order, it being necessary to put into effect and carry out the Plan by amending, integrating and restating the Certificate of Incorporation in its entirety to read as set forth in Annex A attached hereto and made a part hereof (the "Second Amended and Restated Certificate").

State of Delaware
Secretary of State
Division of Corporations
Delivered 08:30 AM 02/28/2008
FILED 08:30 AM 02/28/2008
SRV 080243187 - 2735025 FILE

KAE 10901142.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

IN WITNESS WHEREOF, the undersigned on behalf of the Corporation for the purpose of amending and restating the Restated Certificate of Incorporation, as amended, of the Corporation pursuant to the General Corporation Law of the State of Delaware, under penalties of perjury does hereby declare and certify that this is the act and deed of the Corporation and the facts stated herein are true, and accordingly has hereunto signed this Second Amended and Restated Certificate this 28th day of February 2008.

SOLUTIA INC.

By: _____

Name: Rosemary L. Klein
Title: Senior Vice President, General Counsel and Secretary

K&E 10907142.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

<u>Annex A</u>

**SECOND AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
<u>SOLUTIA INC.</u>**

<u>ARTICLE I
NAME</u>

The name of the corporation is Solutia Inc. (hereinafter, the "<u>Corporation</u>").

<u>ARTICLE II
REGISTERED OFFICE AND AGENT</u>

The address of the Corporation's registered office in the State of Delaware is The Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, 19801. The name of its registered agent at such address is The Corporation Trust Company.

<u>ARTICLE III
PURPOSE</u>

The nature of the business or the purpose to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law, as amended (the "<u>DGCL</u>").

<u>ARTICLE IV
CAPITAL STOCK</u>

Section 1.    <u>Authorized Shares</u>.  The total number of shares of capital stock that the Corporation shall have authority to issue is 600,000,000 shares, consisting of (i) 500,000,000 shares of common stock, par value $0.01 per share ("<u>Common Stock</u>"), and (ii) 100,000,000 shares of preferred stock, par value $0.01 per share ("<u>Preferred Stock</u>").

Section 2.    <u>Common Stock</u>.  Each holder of record of Common Stock shall be entitled to one (1) vote for each share of Common Stock that is registered in such holder's name on the books of the Corporation.  The holders of record of Common Stock shall vote together as a single class on all matters on which holders of the Common Stock are entitled to vote except as otherwise required by applicable law.

Section 3.    <u>Preferred Stock</u>.  Shares of Preferred Stock may be issued from time to time in one or more series.  The Board of Directors of the Corporation is hereby authorized, subject to any limitations prescribed by law, to provide for the issuance of shares of Preferred Stock in one or more series, to establish from time to time the number of shares to be included in each such series, and to fix the designations, powers, preferences and rights of the shares of each such series and any qualifications, limitations or restrictions thereof (any certificate of

3

KAE 1090714.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

designation or resolutions adopted by the Board of Directors of the Corporation designating the designations, powers, preferences and rights of shares of Preferred Stock, a "Preferred Stock Designation"). The authority of the Board of Directors of the Corporation with respect to each series shall include, but not be limited to, determination of the following:

(i)    the designation of the series, which may be by distinguishing number, letter or title;

(ii)   the number of shares of the series, which number the Board of Directors of the Corporation may thereafter increase or decrease (but not below the number of shares thereof then outstanding);

(iii)  the amounts payable on, and the preferences, if any, of shares of the series in respect of dividends, and whether such dividends, if any, shall be cumulative or noncumulative;

(iv)   dates at which dividends, if any, shall be payable;

(v)    the redemption rights and price or prices, if any, for shares of the series;

(vi)   the terms and amount of any sinking fund providing for the purchase or redemption of shares of the series;

(vii)  the amounts payable on, and the preferences (if any) of, shares of the series in the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation;

(viii) whether the shares of the series shall be convertible into or exchangeable for shares of any other class or series, or any other security, of the Corporation or any other corporation or entity, and, if so, the specification of such other class or series or such other security, the conversion or exchange price or prices or rate or rates, any adjustments thereof, the date or dates at which such shares shall be convertible or exchangeable and all other terms and conditions upon which such conversion or exchange may be made;

(ix)   restrictions on the issuance of shares of the same series or of any other class or series; and

(x)    subject to ARTICLE IV, Section 6, the voting rights and powers of the holders of shares of the series.

Except as may be provided in this Second Amended and Restated Certificate of Incorporation or in any Preferred Stock Designation, holders of Preferred Stock shall not be entitled to receive notice of any meeting of stockholders at which they are not entitled to vote.

Section 4.    No Preemptive Rights. No holders of shares of the Corporation shall have any preemptive rights.

4

KAE 19607142.

Section 5.    Record Holders.  The Corporation shall be entitled to treat the person or entity in whose name any share of its stock is registered as the owner thereof for all purposes and shall not be bound to recognize any equitable or other claim to, or interest in, such share on the part of any other person or entity, whether or not the Corporation shall have notice thereof, except as expressly provided by applicable law.

Section 6.    Nonvoting Stock.  The Corporation shall not create, designate, authorize, or cause to be issued any class or series of nonvoting stock.  For the purposes of this ARTICLE IV, Section 6, any class or series of stock that has only such voting rights as are mandated by the DGCL shall be deemed to be nonvoting for purposes of the restrictions of this ARTICLE IV, Section 6.

## ARTICLE V
## PERPETUAL EXISTENCE

The Corporation shall have perpetual existence.

## ARTICLE VI
## BOARD OF DIRECTORS

Section 1.    General Powers.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The Board of Directors of the Corporation shall exercise all of the powers and duties conferred by law except as provided by this Second Amended and Restated Certificate of Incorporation or the bylaws of the Corporation.

Section 2.    Number of Directors.  The total number of directors constituting the entire Board of Directors of the Corporation shall be not less than three (3) nor more than twelve (12), the exact number of directors to be determined from time to time by the Board of Directors of the Corporation; provided, however, that in no case will a decrease in the number of directors have the effect of removing or shortening the term of any incumbent director.

Section 3.    Classes of Directors.  The directors, other than those who may be elected by the holders of any class or series of Preferred Stock as set forth in the Preferred Stock Designation applicable thereto, shall be divided, with respect to the time for which they hold office, into three classes, as nearly equal in number as possible and designated Class I, Class II and Class III.  Directors serving as Class I directors shall be initially elected for a term expiring at the annual meeting of stockholders of the Corporation to be held in 2009, directors serving as Class II directors shall be initially elected for a term expiring at the annual meeting of stockholders of the Corporation to be held in 2010, and directors serving as Class III directors shall be initially elected for a term expiring at the annual meeting of stockholders of the Corporation to be held in 2011.  Members of each class shall hold office until their successors are elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal from office.  At each succeeding annual meeting of the stockholders of the Corporation, the successors of the class of directors whose term expires at that meeting shall be elected for a term expiring at the annual meeting of stockholders held in the third (3rd) year following the year of such election.  In the case of any increase or decrease from

5

KAE 10707142

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

time to time in the number of directors of the Corporation, other than those who may be elected by the holders of any class or series of Preferred Stock as set forth in the Preferred Stock Designation applicable thereto, any increase or decrease shall be apportioned among the classes so as to maintain the number of directors in each class as nearly equal as possible; provided, however, that in no case will a decrease in the number of directors have the effect of removing or shortening the term of any incumbent director.

Section 4.    Removal.  Subject to the rights, if any, of the holders of shares of any class or series of Preferred Stock then outstanding to remove directors as set forth in the Preferred Stock Designation applicable thereto, any director or the entire Board of Directors of the Corporation may be removed from office at any time, but only for cause and only by the affirmative vote of the holders of at least a majority of the total voting power of all the shares of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Section 5.    Vacancies.  Subject to the rights, if any, of the holders of shares of any class or series of Preferred Stock then outstanding to elect directors as set forth in the Preferred Stock Designation applicable thereto, vacancies on the Board of Directors of the Corporation by reason of death, resignation, retirement, disqualification, removal from office, newly created directorships resulting from any increase in the authorized number of directors or otherwise shall be filled only by the Board of Directors of the Corporation, acting by a majority of the remaining directors then in office, even if less than a quorum, or by a sole remaining director, and shall not be filled by the stockholders.  A director elected to fill a vacancy shall hold office until the next election of the class for which such director shall have been chosen, subject to the election and qualification of a successor and to such director's earlier death, resignation or removal.

Section 6.    Election of Directors; No Cumulative Voting.  No stockholder shall be entitled to cumulate votes on behalf of any candidate at any election of directors of the Corporation.  Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

ARTICLE VII
INDEMNIFICATION

Section 1.    Right to Indemnity.  Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative, investigative or otherwise (a "proceeding"), by reason of the fact that such person, or a person of whom such person is the legal representative, is or was a director or officer of the Corporation, or while a director or officer of the Corporation is or was serving at the request of the Corporation as a director, officer, employee, fiduciary or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including, without limitation, service with respect to employee benefit plans maintained or sponsored by the Corporation, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee, fiduciary or agent or in any other capacity as a director, officer, employee, fiduciary or agent, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by the DGCL, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation

K&E 10997142

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment) against all cost, expense, liability and loss (including, without limitation, attorneys' fees actually and reasonably incurred by such person in connection with such proceeding), and such indemnification shall inure to the benefit of such person's heirs, executors and administrators; provided, however, that the Corporation shall indemnify any person seeking indemnification in connection with a proceeding initiated by such person only if such proceeding is authorized by the Board of Directors of the Corporation.

Section 2.    Advancement of Expenses.  To the fullest extent to which it is permitted to do so by the DGCL or other applicable law, the Corporation shall, in advance of the final disposition of the matter, pay the expenses and costs (including attorneys' fees) reasonably incurred by any person who is entitled to indemnification pursuant to ARTICLE VII, Section 1 in defending or otherwise participating in any proceeding and any appeal therefrom for which such person may be entitled to such indemnification; provided, however, that such payment of expenses and costs in advance of the final disposition of the proceeding shall be made only upon receipt by the Corporation of an undertaking by or on behalf of the person to repay all amounts advanced if it should be ultimately determined that the person is not entitled to be indemnified by the Corporation.

Section 3.    Contract Rights.  The provisions of this ARTICLE VII shall be deemed to be a contract right between the Corporation and each person who is entitled to indemnification under this ARTICLE VII and the relevant provisions of the DGCL or other applicable law are in effect.

Section 4.    Insurance.  The Corporation may purchase and maintain insurance on its own behalf and on behalf of any person who is or was a director, officer, employee, fiduciary or agent of the Corporation or was serving at the request of the Corporation as a director, officer, employee or agent of another Corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the provisions of this ARTICLE VII or applicable law.

Section 5.    Merger or Consolidation.  For purposes of this ARTICLE VII, references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including, without limitation, any constituent of a constituent) absorbed in a consolidation or merged in a merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director or officer of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee, fiduciary or agent of another corporation or of a partnership, joint venture, trust or other enterprise, shall stand in the same position under this ARTICLE VII with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

Section 6.    Non-Exclusivity of Rights.  The rights to indemnification and the advancement of expenses and costs conferred under this ARTICLE VII shall not be exclusive of

7

K&E 10407142

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

any other rights to which those seeking indemnification or advancement of expenses and costs may be entitled under any applicable law, provision of this Second Amended and Restated Certificate of Incorporation, bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office. The Corporation is specifically authorized to enter into individual contracts with any or all of its directors or officers respecting indemnification and advances, to the fullest extent not prohibited by the DGCL or by any other applicable law.

Section 7.    Extension; Adjustments.  If the DGCL is amended after the date of the filing of this Second Amended and Restated Certificate of Incorporation to authorize corporate action further eliminating or limiting the personal liability of directors or permitting indemnification to a fuller extent, then the liability of a director of the Corporation shall be eliminated or limited, and indemnification shall be extended, in each case to the fullest extent permitted by the DGCL, as so amended from time to time.

Section 8.    Amendments.  No amendment, repeal or modification of, and no adoption of any provision inconsistent with, any provision of this ARTICLE VII shall adversely affect any right or protection of a director or officer of the Corporation existing by virtue of this ARTICLE VII at the time of such amendment, repeal, modification or adoption.

Section 9.    Indemnification of Employees and Agents.  The Corporation may, to the extent authorized from time to time by the Board of Directors, provide rights to indemnification and to the advancement of expenses to employees and agents of the Corporation similar to those conferred in this ARTICLE VII to directors and officers of the Corporation.

## ARTICLE VIII
## LIMITED LIABILITY OF DIRECTORS

To the fullest extent permitted by the DGCL as the same exists or may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

## ARTICLE IX
## MEETINGS OF STOCKHOLDERS

Any action required or permitted to be taken by the stockholders of the Corporation, or any class or series thereof, must be effected at a duly called annual or special meeting of such stockholders and may not be effected by any consent in writing in lieu of a meeting of such stockholders. Meetings of stockholders may be held within or without the State of Delaware. Unless otherwise required by law, special meetings of the stockholders of the Corporation may be called at any time only by the Board of Directors of the Corporation, the Chairman of the Board of Directors of the Corporation or 35% of the total voting power of all the shares of the Corporation entitled to vote generally in the election of directors. Advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation, or any class or series of thereof, shall be given in the manner provided in the bylaws of the Corporation.

## ARTICLE X

8

K&E 16407142.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## BYLAWS

In furtherance and not in limitation of the powers conferred by law, the Board of Directors of the Corporation is expressly authorized and empowered to adopt, amend and repeal the bylaws of the Corporation at any regular or special meeting of the Board of Directors of the Corporation or by written consent, subject to the power of the stockholders of the Corporation to adopt, amend or repeal any bylaws of the Corporation. Notwithstanding any other provision of this Second Amended and Restated Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any series of Preferred Stock required by law, by this Second Amended and Restated Certificate of Incorporation or by any Preferred Stock Designation providing for any such Preferred Stock, the affirmative vote of the holders of 66⅔% of the total voting power of all the shares of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders of the Corporation to alter, amend or repeal, or adopt any provision inconsistent with, Section 2.3, Section 2.5, Section 2.8, Section 2.10, Section 2.14, Section 2.15, Section 2.16, Section 3.2, Section 3.3, Section 3.5, Section 3.11, ARTICLE VI or Section 8.1 of the bylaws of the Corporation.

## ARTICLE XI
## AMENDMENTS

The Corporation reserves the right at any time from time to time to amend, alter, change or repeal any provision contained in this Second Amended and Restated Certificate of Incorporation, and any other provisions authorized by the laws of the State of Delaware at the time in force may be added or inserted, in the manner now or hereafter prescribed herein or by applicable law. All rights, preferences and privileges of whatsoever nature conferred upon stockholders by and pursuant to this Second Amended and Restated Certificate of Incorporation in its present form or as hereafter amended are granted subject to the right reserved in this ARTICLE XI. Notwithstanding any other provision of this Second Amended and Restated Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any series of Preferred Stock required by law, by this Second Amended and Restated Certificate of Incorporation or by any Preferred Stock Designation providing for any such Preferred Stock, the affirmative vote of the holders of at least 66⅔% of the total voting power of all the shares of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter, change or repeal, or adopt any provision inconsistent with, ARTICLE IV, ARTICLE VI, ARTICLE VII, ARTICLE VIII, ARTICLE IX and ARTICLE X and this sentence of this Second Amended and Restated Certificate of Incorporation.

## ARTICLE XII
## SEVERABILITY

If any provision or provisions of this Second Amended and Restated Certificate of Incorporation shall be held to be invalid, illegal or unenforceable as applied to any circumstance for any reason whatsoever, then, to the fullest extent permitted by applicable law, the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Second Amended and Restated Certificate of Incorporation (including, without

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

limitation, each portion of any paragraph of this Second Amended and Restated Certificate of Incorporation containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby.

* * * *

10

KAE 1090714Q.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit G

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

EXECUTION VERSION

DISTRIBUTION AGREEMENT

by and between

MONSANTO COMPANY,
a Delaware corporation,

and

SOLUTIA INC.,
a Delaware corporation

As of September 1, 1997

## DISTRIBUTION AGREEMENT

DISTRIBUTION AGREEMENT, dated as of September 1, 1997 (this "Agreement"), by and between Monsanto Company, a Delaware corporation ("Monsanto"), and Solutia Inc., a newly-formed Delaware corporation ("Chemicals").

### WITNESSETH:

WHEREAS, the Board of Directors of Monsanto has determined that it is appropriate and desirable to separate Monsanto and its subsidiaries into two publicly traded organizations by: (1) consolidating into Chemicals and its newly formed subsidiaries certain of the businesses conducted by Monsanto directly and through certain of its other subsidiaries and (2) distributing to the holders of the issued and outstanding shares of common stock, par value $2.00 per share, of Monsanto all of the issued and outstanding shares of common stock, par value $.01 per share, of Chemicals in accordance with Article III hereof (the "Distribution");

WHEREAS, the Distribution is intended to qualify as a tax-free spinoff under Section 355 of the Internal Revenue Code of 1986, as amended;

WHEREAS, the parties hereto have determined that it is necessary and desirable to set forth the principal corporate transactions required to effect the Distribution and to set forth other agreements that will govern certain other matters prior to and following such Distribution;

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS

1.01 General. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

1. *Action:* any demand, action, suit, countersuit, arbitration, inquiry, proceeding or investigation by or before any federal, state, local, foreign or international Governmental Authority or any arbitration or mediation tribunal.

2. *Affiliate:* with respect to any specified Person, a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person; provided, however, that for purposes of this

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Agreement, no member of either Group shall be deemed to be an Affiliate of any member of the other Group.

3.   *Agent:* the distribution agent appointed by Monsanto to distribute the shares of Chemicals Common Stock pursuant to the Distribution.

4.   *Arbitration Act:* the United States Arbitration Act, 9 U.S.C. §§1-14, as the same may be amended from time to time.

5.   *Arbitration Demand Date:* as defined in Section 7.03(a) hereof.

6.   *Arbitration Demand Notice:* as defined in Section 7.03(a) hereof.

7.   *Assets:* any and all assets, properties and rights (including goodwill), wherever located (including in the possession of vendors or other third parties or elsewhere), whether real, personal or mixed, tangible, intangible or contingent, in each case whether or not recorded or reflected or required to be recorded or reflected on the books and records or financial statements of any Person, including, without limitation, the following:

(i)   all accounting and other books, records and files whether in paper, microfilm, microfiche, computer tape or disc, magnetic tape or any other form;

(ii)  all apparatus, computers and other electronic data processing equipment, fixtures, trade fixtures, machinery, equipment, capital and other spares, furniture, office equipment, automobiles, trucks, aircraft, rolling stock, vessels, motor vehicles, trailers and other transportation equipment, special and general tools, test devices, prototypes and models and any other tangible personal property;

(iii) all inventories of materials, raw materials, catalysts, precious metals, stores inventories, supplies, work-in-process, consigned goods and finished goods and products and product samples;

(iv)  all interests in real property of whatever nature, including easements, leases and licenses, whether as owner, mortgagee or holder of a Security Interest in real property, lessor, sublessor, lessee, sublessee or otherwise;

(v)   all buildings and other improvements to real property and all leasehold improvements;

(vi)  all bonds, notes, debentures or other securities issued by any Subsidiary or any other Person, all loans, advances or other extensions of credit or capital contributions to any Subsidiary or any other Person, all certificates of deposit, bankers' acceptances, certificates of interest or participation in profit sharing agreements, collateral trust certificates, preorganization certificates or subscriptions, transferable shares, investment contracts, voting trust certificates, fractional

-3-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

undivided interests in oil, gas or other mineral rights, puts, calls, straddles, options and other securities of any kind;

(vii) all license agreements, leases of personal property and other leases, open purchase orders for raw materials, supplies, parts or services, unfilled orders for the manufacture or sale of products, other sales or purchase agreements, other commitments or arrangements, permits, distribution arrangements, and other contracts, agreements or commitments;

(viii) all deposits, letters of credit and performance and surety bonds;

(ix) all technical information, data, specifications, research and development information, engineering drawings, operating and maintenance manuals, and materials and analyses prepared by consultants and other third parties; environmental clean-up technology, safety and industrial hygiene methods and technology;

(x) all technology, domestic and foreign patents, statutory, common law and registered copyrights, trade names, registered and unregistered trademarks, service marks, service names, trade styles, product bar codes and associated goodwill, and registrations and applications for any of the foregoing, mask works, trade secrets, inventions, formulas, processes, designs, know-how, or other data or information, confidential information, other proprietary information and licenses from third Persons granting the right to use any of the foregoing and other rights in, to and under the foregoing (it being understood that the transfer of Assets described in this clause (x) shall be made pursuant to the Intellectual Property Agreements);

(xi) all computer applications, programs and other software and databases (including all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements, enhancements, updates and accessions thereto), all technical manuals and documentation made in connection with the foregoing, and the right to sue for past infringement thereof, and all licenses and rights with respect to the foregoing or of like nature, including operating software, network software, firmware, middleware, design software, design tools, systems documentation and instructions;

(xii) all cost information, sales and pricing data, customer prospect lists, supplier records, customer and supplier lists, customer and vendor data, correspondence and lists, product literature, artwork, design, development and manufacturing files, vendor and customer drawings, formulations and specifications, quality records and reports, lists of advertisers, records pertaining to advertisers and accounts, and other books, records, studies, surveys, reports, plans and document forms and any other business information;

(xiii) all prepayments or prepaid expenses, trade accounts and other accounts and notes receivable and all other current assets;

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

(xiv) the right to receive mail, payments on accounts receivable and other communications;

(xv) all rights under contracts, agreements, warranties or guaranties, all claims or rights or judgments against any Person, all rights in connection with any bids or offers and all claims, choses in action, rights of recovery and rights of set-off or similar rights, whether accrued or contingent, refunds and deposits;

(xvi) all rights under insurance policies and all rights in the nature of insurance, indemnification or contribution;

(xvii) all licenses, permits, approvals and authorizations which have been issued by any Governmental Authority;

(xviii) advertising materials and other printed or written materials;

(xix) employee contracts, including any rights thereunder to restrict an employee or former employee from competing in certain respects, and personnel and medical files and records;

(xx) cash, cash equivalents, bank accounts, lock boxes and other deposit arrangements; and

(xxi) interest rate, currency, commodity or other swap, collar, cap, floor, or other hedging or similar agreements or arrangements.

8. *Business Transfer Agreements*: the agreements which have been or will be entered into between certain wholly-owned Chemicals Subsidiaries incorporated, or having a branch or presence outside the United States and certain wholly-owned Monsanto Subsidiaries incorporated, or having a branch or presence outside the United States, providing for the transfer of Chemicals Assets and assumption of Chemicals Liabilities outside the United States from such Monsanto Subsidiaries to such Chemicals Subsidiaries. For purposes hereof, the term Business Transfer Agreement shall also include: (i) any other agreements related to the transfer of Chemicals Assets and assumption of Chemicals Liabilities outside the United States, including without limitation, those agreements which are required by local law or are executed in connection with or to implement such transfer of Chemicals Assets and assumption of Chemicals Liabilities; and (ii) the assignment from Monsanto to Chemicals transferring the operating assets in the United States.

9. *Business Day*: any day other than a Saturday, a Sunday or a day on which banking institutions located in the States of Missouri, New York or Delaware are authorized or obligated by law or executive order to close.

10. *Chemicals*: as defined in the preamble to this Agreement.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

11.    *Chemicals Assets:* excluding the Excluded Chemicals Assets, and any Assets sold or otherwise disposed of on or prior to the Distribution Date (1) all Assets included on the Chemicals Balance Sheet or the accounting records supporting the Chemicals Balance Sheet, as adjusted by the pro forma adjustments thereto as set forth in the Proxy Statement and all Assets of either Group acquired between March 31, 1997 and the Distribution Date which would have been included on the Chemicals Balance Sheet had they been owned on March 31, 1997; (2) all Assets exclusively dedicated to the Chemicals Business and all Assets formerly used in the Former Chemicals Business which are not used in the Monsanto Business on the Distribution Date, which in either case, are owned, leased, licensed or held by any member of either Group on the Distribution Date; (3) real property (including the buildings, fixtures and improvements located thereon) listed on Schedule 1.01(11)(a) and such other real property interests held by members of either Group formerly used in any Former Chemicals Business which are not used in the Monsanto Business on the Distribution Date; (4) all of the outstanding shares of all classes of capital stock of the Chemicals Subsidiaries to the extent owned by any member of the Monsanto Group; (5) the partnership, joint venture and other equity interests listed on Schedule 1.01(11)(b), and Chemicals' rights with respect to and interests in the P4 Joint Venture as provided in the P4 Joint Venture Agreement; (6) all contracts, leases and licenses exclusively dedicated to the Chemicals Business, and such rights under other contracts, leases or licenses as the parties have otherwise agreed pursuant to this Agreement, the Other Agreements or in any other enforceable agreement executed on behalf of a member of the Chemicals Group, on the one hand, and a member of the Monsanto Group, on the other hand; (7) warranties, guarantees, claims or any other rights that members of either Group may have against any Third Party (including Governmental Authorities) to the extent relating to the disposition of any Former Chemicals Business; (8) those books and records to be delivered to the Chemicals Group and rights of access to other books and records as provided in Article VI of this Agreement; (9) the rights of Chemicals under the Insurance Policies as provided in Article IX of this Agreement; (10) any pension assets, pension funds or other Assets expressly contemplated to be transferred, licensed or otherwise made available to any member of the Chemicals Group. pursuant to this Agreement or any Other Agreements; and (11) all of the Assets listed on Schedule 1.01(11)(c).

*Chemicals Assets* shall also mean any and all other Assets owned or held on the Distribution Date by members of the Monsanto Group that are related to the Chemicals Business and which the parties agree should have been transferred to the Chemicals Group, if, had the parties given specific consideration to such Asset as of the date hereof, such Asset would have been classified as a Chemicals Asset; provided, however, that no Asset shall be deemed to be a Chemicals Asset solely as a result of this provision unless a claim with respect thereto is made by a member of the Chemicals Group on or prior to eighteen months after the Distribution Date.

12.    *Chemicals Balance Sheet:* the unaudited combined balance sheet of the Chemicals Business as of March 31, 1997 and the notes thereto as set forth in the Proxy Statement.

Electronically Filed - St. Louis County - February 02, 2018 - 12:39 PM

17. *Chemicals Facilities:* facilities which are Chemicals Assets.

18. *Chemicals Group:* Chemicals and the Chemicals Subsidiaries of which Chemicals directly or indirectly owns 100% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body.

19. *Chemicals Liabilities:* excluding the Excluded Chemicals Liabilities and excluding those Liabilities (or portions thereof) which have been satisfied, paid or discharged prior to the Distribution Date, (1) all Liabilities included on the Chemicals Balance Sheet or the accounting records supporting such Chemicals Balance Sheet as adjusted by the pro forma adjustments thereto as set forth in the Proxy Statement and all Liabilities of either Group incurred or arising between March 31, 1997 and the Distribution Date which would have been included on the Chemicals Balance Sheet had they been incurred or arisen on or prior to March 31, 1997; (2) all Liabilities relating exclusively to or arising exclusively from the Chemicals Assets, the Chemicals Business or the Former Chemicals Business or the disposition of any Former Chemicals Business, whether incurred or arising prior to or after the Distribution Date; (3) except as expressly provided in the Other Agreements, all Liabilities relating to or arising from the operation of its business or the use of its Assets by any member of the Chemicals Group at any time from and after the Distribution Date; (4) those Liabilities for worker's compensation or Third Party claims incurred prior to the Distribution Date at a site transferred to the Chemicals Group as part of the Chemicals Assets; (5) all Liabilities assumed by any member of the Chemicals Group under an express provision of this Agreement or an Other Agreement; (6) those Liabilities for environmental remediation or other environmental responsibilities as described to be assumed by Chemicals in Schedule 1.01(19)(a); (7) all Liabilities for products of the Chemicals Business or Former Chemicals Business sold to Third Parties by any member of either Group; (8) all Liabilities arising under the Financing Facility and the Third Party indebtedness listed on Schedule 1.01(19)(b); and (9) all Liabilities listed on Schedule 1.01(19)(c).

*Chemicals Liabilities* shall also mean, any and all other Liabilities owed on the Distribution Date by members of the Monsanto Group that are related to the Chemicals Business and which the parties agree should have been transferred to the Chemicals Group, if, had the parties given specific consideration to such Liability as of the date hereof, such Liability would have been classified as a Chemicals Liability; provided, however, that no Liability shall be deemed to be a Chemicals Liability solely as a result of this provision unless a claim with respect thereto is made by a member of the Monsanto Group on or prior to eighteen months after the Distribution Date.

20. *Chemicals Rights Plan:* the share purchase rights plan in the form approved by the Board of Directors of Chemicals prior to the Distribution Date.

21. *Chemicals Subsidiaries:* all of the corporations listed on Schedule 1.01(21).

22. *Chemicals Support Agreements:* any obligation or agreement of the Monsanto Group under any guarantee, letter of credit, bond, letter of comfort or working

-8-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Directors, as the record date for determining stockholders of Monsanto entitled to vote at the Special Meeting.

92.    *Subsidiary:* with respect to any specified Person, any corporation or other legal entity of which such Person or any of its Subsidiaries controls or owns, directly or indirectly, more than 50% of the stock or other equity interest entitled to vote on the election of members to the board of directors or similar governing body; provided, however, that for purposes of this Agreement, (1) the Chemicals Subsidiaries shall be deemed to be Subsidiaries of Chemicals and (2) Chemicals and the Chemicals Subsidiaries shall not be deemed to be Subsidiaries of Monsanto or any of Monsanto's Subsidiaries.

93.    *Tax:* as defined in the Tax Sharing Agreement.

94.    *Tax Sharing Agreement:* the tax sharing and indemnification agreement which has been or will be entered into on or prior to the Distribution Date between Monsanto and Chemicals substantially in the form attached hereto as Exhibit 1.01(94), with such changes as may be mutually satisfactory to Monsanto and Chemicals.

95.    *Third Party:* a Person who is not a party hereto or a wholly-owned Subsidiary thereof.

96.    *Third Party Claim:* any claim, suit, arbitration, inquiry, proceeding or investigation by or before any court, any governmental or other regulatory or administrative agency or commission or any arbitration tribunal asserted by a Third Party.

97.    *Transition Services Agreement:* the transition services agreements which have been or will be entered into on or prior to the Distribution Date between the Monsanto Group and the Chemicals Group, substantially in the form attached hereto as Exhibit 1.01(97), with such changes as may be mutually satisfactory, providing for (1) the Monsanto Group to make available certain personnel and services to the Chemicals Group and (2) the Chemicals Group to make available certain personnel and services to the Monsanto Group, in each case for a period of up to 18 months following the Distribution Date.

    1.02   References to Time.  All references in this Agreement to times of the day shall be to St. Louis time, except as otherwise specifically provided herein.

## ARTICLE II

## CERTAIN TRANSACTIONS PRIOR TO THE DISTRIBUTION DATE

    2.01  Share Purchase Rights Plan; Certificate of Incorporation; Bylaws. Prior to the Distribution Date, Chemicals shall adopt the Chemicals Rights Plan.  Monsanto and Chemicals shall take all action necessary so that, at the Distribution Date, the Restated Certificate

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

of Incorporation and Bylaws of Chemicals shall be in the forms attached hereto as Exhibits 2.01(a) and 2.01(b), respectively.

2.02    Issuance of Stock.    Prior to or as of the Distribution Date, the parties hereto shall take all steps necessary to reclassify the outstanding shares of Chemicals Common Stock so that, except as otherwise contemplated by this Agreement, immediately prior to or as of the Distribution Date the number of shares of Chemicals Common Stock outstanding and held by Monsanto shall equal the number of shares of Monsanto Common Stock outstanding on the Record Date divided by five (rounded to the next highest whole share).

2.03    Transfer of Assets and Assumption of Liabilities.    On or prior to the Distribution Date, the parties hereto shall and shall cause their respective wholly-owned Subsidiaries (1) to execute instruments of assignment and transfer and to take such other corporate action as is necessary to transfer to Chemicals and its wholly-owned Subsidiaries all of the right, title and interest of the Monsanto Group in the Chemicals Assets; (2) to execute instruments of assignment and transfer and to take such other corporate action as is necessary to transfer to Chemicals a 40% ownership interest in the P4 Joint Venture subject to the terms and conditions set forth in the P4 Joint Venture Agreement; and (3) to take all action necessary to cause Chemicals or its wholly-owned Subsidiaries to assume all of the Chemicals Liabilities. A global assignment and assumption agreement along with Business Transfer Agreements for transfers of Chemicals Assets and assumption of Chemicals Liabilities will be executed on or prior to the Distribution Date; provided, however, that in the event of a conflict between such agreements and this Agreement, this Agreement will control; and provided further that the transfer of the operating Assets of the Chemicals Business shall be substantially completed prior to the Special Meeting.

2.04    Financing Arrangements.    Each of the parties hereto agrees that it will use reasonable efforts to arrange the Financing Facility and Chemicals agrees that it will assume the obligations with respect to the commercial paper issued thereunder on the Distribution Date with Monsanto becoming a guarantor of the commercial paper obligations thereunder outstanding on the Distribution Date but otherwise having no further liability. Each of the parties hereto agrees that it will use reasonable efforts to obtain, prior to the Distribution Date, all necessary consents, waivers or amendments to each bank credit agreement, debt security or other financing facility to which it or any of its Subsidiaries is a party or by which it or any of its Subsidiaries is bound, or to refinance such agreement, security or facility, in each case on terms satisfactory to Monsanto and Chemicals and to the extent necessary to permit the Distribution to be consummated without any material breach of the terms of such agreement, security or facility.

2.05    Registration and Listing.    Prior to the Distribution Date:

1.    Monsanto and Chemicals shall prepare the Proxy Statement and the Registration Statement. Chemicals shall file the Registration Statement with the SEC. Monsanto shall file the Proxy Statement with the SEC and shall mail the Proxy Statement to the holders of Monsanto Common Stock as of the Special Meeting Record Date. Monsanto and Chemicals shall use reasonable efforts to cause the Registration Statement to become effective under the Exchange Act as promptly as reasonably practicable.

-17-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

MONSANTO COMPANY,
a Delaware corporation

By: _____
Nicholas L. Reding
Vice Chairman


SOLUTIA INC.
a Delaware corporation

By: _____
John C. Hunter III
President

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit H

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## ASSIGNMENT AND ASSUMPTION AGREEMENT

Assignment and Assumption Agreement, dated as of September 1, 1997, by and between Monsanto Company, a Delaware corporation ("Monsanto"), and Solutia Inc., a Delaware corporation ("Chemicals").

WHEREAS, the Board of Directors of Monsanto has approved the restructuring of Monsanto into two publicly held companies through the spinoff (the "Spinoff") of the chemicals business of Monsanto to the stockholders of Monsanto, which was approved by the stockholders of Monsanto at a special meeting of stockholders held on August 18, 1997;

WHEREAS, Monsanto has established Chemicals as a wholly-owned subsidiary of Monsanto that will own and operate the chemicals business;

WHEREAS, Monsanto and Chemicals have entered into a Distribution Agreement dated as of September 1, 1997 (including the exhibits and schedules attached thereto, the "Distribution Agreement") providing for the principal corporate transactions required to effectuate the Spinoff; and

WHEREAS, pursuant to the Distribution Agreement, Monsanto wishes to transfer to Chemicals all of the right, title and interest of the Monsanto Group in the Chemicals Assets, subject to the assumption by Chemicals of the Chemicals Liabilities (as such terms are defined in the Distribution Agreement);

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Assignment. Monsanto hereby sells, assigns and conveys unto Chemicals all of the right, title and interest of the Monsanto Group in and to all of the Chemicals Assets not heretofore transferred to Chemicals.

2. Assumption. Chemicals hereby assumes and agrees to pay, perform and discharge all of the Chemicals Liabilities.

3. Defined Terms; Conflicts. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Distribution Agreement. The agreements, covenants and terms contained herein are subject to the terms and provisions of, and the rights and obligations of the parties under, the Distribution Agreement. In the event of a conflict between this Agreement and the Distribution Agreement, the Distribution Agreement shall control.

4. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (other than the laws regarding choice of laws and conflicts of laws) as to all matters, including matters of validity, construction, effect, performance and remedies.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

**IN WITNESS WHEREOF**, the parties hereto have caused this Assignment and Assumption Agreement to be duly executed as of the date first above written.

MONSANTO COMPANY,
a Delaware corporation

By: _____
Nicholas L. Reding, Vice Chairman

SOLUTIA INC.,
a Delaware corporation

By: _____

-2-

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit I

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM



# Delaware

PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "SFC LLC", FILED IN THIS
OFFICE ON THE ELEVENTH DAY OF SEPTEMBER, A.D. 2007, AT 7 O'CLOCK
P.M.



*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

4401533  8100
071007193

AUTHENTICATION: 5992856

DATE: 09-12-07

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:16 PM 09/11/2007
FILED 07:00 PM 09/11/2007
SRV 071007193 – 4401533 FILE

## CERTIFICATE OF FORMATION

## OF

## SFC LLC

This Certificate of Formation of SFC LLC (the "LLC") has been duly executed and is being filed by the undersigned, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del. C. § 18-201, et. seq.).

FIRST. The name of the limited liability company formed hereby is SFC LLC.

SECOND. The address of the registered office of the LLC in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

THIRD. The name and address of the registered agent for service of process on the LLC in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Formation as of this 11th day of September, 2007.

By: /s/ Christopher Valeri
Name: Christopher Valeri
Title: Authorized Person

KAE 12047945 1

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

# Exhibit B

Case: 4:23-cv-00204-HEA    Doc. #: 1-8    Filed: 02/20/23    Page: 145 of 226 PageID #: 1480

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

SONNENSCHEIN NATH & ROSENTHAL
820 Morris Turnpike
Short Hills, New Jersey 07078
Phone: 973-564-6480
Fax: 973-564-6493
Attorneys for Defendant, Solutia, Inc.

NOV 18 2002

| | | |
|---|---|---|
| TICONA POLYMERS, INC., | | SUPERIOR COURT OF NEW JERSEY |
| | Plaintiff, | LAW DIVISION . |
| | | UNION COUNTY |
| v. | | |
| | | DOCKET NO. UNN-L-3269-02 |
| SOLUTIA, INC., | | |
| | | **ANSWER, AFFIRMATIVE DEFENSES** |
| | | **COUNTERCLAIM AND JURY** |
| | Defendant. | **DEMAND** |

Defendant, Solutia, Inc. ("Solutia"), for its Answer, Affirmative Defenses and

Counterclaim to Plaintiff's Complaint, states:

## ANSWER

1.      Solutia lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in Paragraph 1 of Ticona's Complaint and, therefore, denies the same.

2.      Solutia admits that it is a corporation duly organized and existing under the laws

of Delaware. Solutia admits that its principal place of business is at 575 Maryville Centre Drive,

St. Louis, Missouri 63166. Solutia denies the remaining allegations in Paragraph 2 of Ticona's

Complaint.

3.      Admitted.

4.      Solutia admits that nylon salt is referred to as "Salt" throughout the Nylon Salt

Sales Agreement. Solutia denies that nylon salt is defined as "salt."

5.      Solutia admits the allegations in Paragraph 5 of Ticona's Complaint. Further

answering, Solutia states that while nylon salt and nylon polymers are different commodities,

nylon salt is a necessary ingredient of nylon polymer and has little or no commercial use unless

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

converted into nylon polymer. While nylon salt and nylon polymers have different chemical properties, nylon salt and nylon polymers have very similar chemical properties. Nylon polymer is merely nylon salt in polymerized form.

6.    Solutia admits that it is both a supplier to Ticona and a competitor of Ticona. Solutia admits that it supplies Ticona with nylon salt. Solutia admits that it competes with Ticona in the sale of nylon polymer and compounds. Solutia denies the remaining allegations in Paragraph 6 of Ticona's Complaint.

7.    Solutia admits that the Nylon Salt Agreement does not specify a firm numerical minimum amount of nylon salt that Ticona is required to buy from Solutia. However, Solutia denies that the Nylon Salt Agreement does not require Ticona to purchase a minimum amount of nylon salt from Solutia.

8.    Solutia denies that the Nylon Salt Agreement is not exclusive. Solutia denies that Ticona is permitted to buy "any" of its requirements of nylon salt from others who submit bona fide bids that are not met by Solutia. Solutia admits that Paragraph 7 of the Nylon Salt Sales Agreement provides as follows:

> Should Celanese, at any time any shipment is due under this contract, be offered Salt for the same end use by a manufacturer and such Salt is manufactured in the United States, United Kingdom or West Germany, is of equal quality to the Salt sold hereunder and is offered in quantities equal to or exceeding one-half (1/2) of the maximum quantity which Monsanto is obligated to ship to Celanese during the succeeding twelve (12) months, and Celanese furnishes Monsanto satisfactory written proof that such offer will result in a lower delivered price to Celanese throughout such twelve (12) month period, Monsanto will either supply, in accordance with the price contained in such offer during such twelve (12) month period, a quantity of Salt equal to the Salt which such manufacturer has offered to supply at such price during such period or permit Celanese to purchase such quantity of Salt from the manufacturer making such offer at such lower delivered price during such twelve (12) month period. If Celanese is permitted to purchase Salt from another manufacturer pursuant to this Section 7, Monsanto shall have no obligation to sell and ship to Celanese, and Celanese shall have no obligation to purchase and receive from Monsanto. the quantity of Salt which such manufacturer has offered to supply to Celanese during such twelve (12) month period.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Solutia admits that it has other customers for nylon salt. Solutia admits that Ticona is not Solutia's only customer for nylon salt. Solutia admits that it sold nylon salt to other customers. Further answering, Solutia states that its sales of nylon salt to other customers is minimal compared to its historical sales of nylon salt to Ticona.

9. Admitted.

10. Solutia admits that on or about August 31, 1989, Solutia provided notice of termination of the Nylon Salt Agreement, the termination to be effective in 1994. Solutia denies the remaining allegations in Paragraph 10 of Ticona's Complaint.

11. Admitted.

12. Solutia admits that in or about the third quarter of 1993, prior to the effective date of termination of the Nylon Salt Agreement. the parties entered into negotiations and agreed to amend the Nylon Salt Agreement to include a fixed price increase for the base price component of the formula used to calculate the price of Nylon Salt. Solutia admits that that pricing has been in effect from that time to the present. Solutia denies the remaining allegations in Paragraph 12 of Ticona's Complaint.

13. Admitted.

14. Solutia denies the allegations in Paragraph 14 of Ticona's Complaint.

15. Solutia denies the allegations in Paragraph 15 of Ticona's Complaint.

16. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16 of Ticona's Complaint and, therefore, denies the same.

17. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17 of Ticona's Complaint and. therefore. denies the same.

18. Solutia admits that in the first quarter of 2000, Ticona advised Solutia of its intent to strategically reposition its nylon plastics and resins business. Solutia lacks sufficient

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

knowledge or information to form a belief as to the truth of the allegations about Ticona's reasons for doing so and, therefore, denies the allegation that Ticona attempted to take steps in concert with Solutia to minimize its losses and achieve profitability for its nylon plastics and resins business. Solutia admits that in 2000, Ticona asked Solutia to modify the pricing formula and/or lower the fixed base price in the formula under the Nylon Salt Agreement, and that Solutia denied those requests.

19. Solutia admits that the parties met several times during the year 2000. Solutia admits that Ticona requested "price relief" from Solutia under the Nylon Salt Agreement in the form of a reduced price for Nylon Salt in the form of supplying Ticona with nylon polymer. Solutia admits that Solutia advised that it could not agree to Ticona's requests. Solutia admits that in an effort to reduce Ticona's price for Nylon Salt, Solutia offered to forward buy raw materials used to make Nylon Salt, the costs of which were factored into the price of Nylon Salt in the formula under the Nylon Salt Agreement. Solutia admits that Ticona accepted this offer. Solutia admits that, at Ticona's request, Solutia ceased its forward buying of raw materials. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 19 of Ticona's Complaint and, therefore, denies the same.

20. Solutia admits that in or about February and March of 2001, the parties discussed "price relief" under the Nylon Salt Agreement. Solutia admits that at this time, it maintained its position that it would not modify the pricing formula in the Nylon Salt Agreement but that the parties agreed to try an interim solution. Solutia admits that the parties agreed to modify the Nylon Salt Agreement to create a minimum annual Nylon Salt requirement of 50 million pounds and provide Ticona with lower pricing if these minimums were met. Solutia admits that Ticona did not meet these minimum volume requirements. Solutia lacks sufficient knowledge or

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

information to form a belief as to the truth of the remaining allegations in paragraph 20 of Ticona's Complaint and, therefore, denies the same.

21.     Solutia admits that in or about February and March of 2001, Ticona advised Solutia that it would explore options to reposition its nylon plastics and resins business, such as a sale of the business. Solutia admits that in or about July of 2001, Ticona advised Solutia that it would explore other options for its nylon plastics and resins business, and informed Solutia that these options included (1) forming a joint venture; (2) selling or shutting down its nylon plastics and resins business; and/or (3) buying polymer in lieu of Nylon Salt. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 21 of Ticona's Complaint and, therefore, denies the same.

22.     Solutia admits that following further discussions between Ticona and Solutia in or about August of 2001, after Ticona announced that it would re-position its nylon plastics and resins business, Solutia approached Ticona concerning a joint venture in September of 2001. Solutia admits that Ticona advised Solutia that Ticona had entered into discussions with another party, that Solutia's approach was not timely, and that Ticona would contact Solutia if discussions with a third party were unsuccessful. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 22 and, therefore, denies the same.

23.     Solutia admits that polymer is a commercial product made from Nylon Salt and is used by Ticona in the manufacture of nylon plastics and resins. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 23 of Ticona's Complaint and, therefore, denies the same.

24.     Solutia currently lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 24 of Ticona's Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

25.     Solutia admits that it could not make an offer to buy Ticona's nylon plastics and resins business.  Solutia admits that after Ticona invited Solutia to make an offer to buy Ticona's nylon plastics and resins business, Ticona invited Solutia to make a bid for Solutia's sale of nylon polymer to Ticona.  Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 25 of Ticona's Complaint and, therefore, denies the same.

26.     Admitted.

27.     Solutia admits that the Nylon Salt Agreement does not expressly contain any obligation for Ticona to buy nylon polymer from Solutia.  Further answering, Solutia states that the Nylon Salt Agreement, however, prohibits Ticona from purchasing nylon polymer from any other source if the nylon polymer does not contain Nylon Salt purchased by Ticona from Solutia.  Further answering, Solutia states that the Nylon Salt Agreement requires Ticona to purchase Nylon Salt from Solutia.

28.     Solutia denies that it made a proposal for selling polymer to Ticona in March of 2002.  Solutia admits that that it offered to add a Nylon Salt conversion provision to the Nylon Salt Agreement for Ticona's nylon polymer needs.  Solutia admits that this proposal was not previously and is not currently contained in the Nylon Salt Agreement.  Solutia admits that its proposal included product, volume, and pricing information.  Solutia admits that Ticona did not agree to Solutia's proposal.  Solutia lacks sufficient knowledge to form a belief as to Ticona's rationale for denying the proposal and, therefore, denies that it was because Ticona had received a proposal from another supplier on more favorable terms.  Solutia denies all remaining allegations in Paragraph 28 of Ticona's Complaint.

29.     Solutia admits that Ticona sent a letter dated April 17, 2002 to Solutia purporting to terminate the Nylon Salt Agreement.  Solutia denies that that the April 17, 2002 letter gives

- 6 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

four years prior notice of the putative termination in accordance with the terms of the Nylon Salt Agreement. Solutia lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 29 of Ticona's Complaint and, therefore, denies the same.

30.     Solutia denies the allegations in Paragraph 30 of Ticona's Complaint as stated. Further answering, Solutia admits that it responded to Ticona's April 17, 2002 letter with an April 22, 2002 letter from Michael Berezo to Shawn Gorman stating:

> I received a facsimile copy of your April 17 letter to Ray Altenburger notifying him of your cancellation of the Nylon Salt Sales Contract with Solutia. Just to be clear, this means that Solutia will continue to supply all of Ticona's requirements under the contract with Nylon Salt for a period of 48 months beginning April 17, 2002. If you have any questions concerning this obligation, please let Ray or me know.

31.     Solutia admits that it issued a letter to Ticona on or about May 8, 2002 containing the language quoted in Paragraph 31 of Ticona's Complaint. Solutia denies the remaining allegations in Paragraph 31 of Ticona's Complaint.

32.     Solutia admits that it informed Ticona that "if Ticona should purchase Nylon Polymer from a third party other than Solutia, and Solutia Nylon Salt is not used to produce the Nylon Polymer, Solutia would find Ticona in breach of the Nylon Salt contract." Solutia denies the remaining allegations in Paragraph 32 of Ticona's Complaint.

33.     Solutia admits that Ticona entered into discussions with Solutia directed at resolving this controversy. Solutia lacks sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 33 of Ticona's Complaint and, therefore, denies the same.

34.     Solutia admits that by letter dated May 17, 2002, Ticona invited Solutia to bid for the supply of polymer to Ticona. Solutia admits that the May 17, 2002 listed ranges of certain terms for bids that Ticona would consider. Solutia denies the remaining allegations in Paragraph 34 of Ticona's Complaint.

- 7 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

35.    Solutia admits that it did not respond with a bid for polymer in response to Ticona's May 17, 2002 letter. Solutia admits that it did not submit a bid for supplying polymer in March of 2002 and that it denied having submitted any such bid. Solutia admits that it offered to renew its proposal to add a Nylon Salt conversion provision to the Nylon Salt Agreement. Solutia denies the remaining allegations in Paragraph 35 of Ticona's Complaint.

36.    Solutia denies the allegations in Paragraph 36 of Ticona's Complaint.

37.    Solutia denies the allegations in Paragraph 37 of Ticona's Complaint.

WHEREFORE, Solutia demands a trial by jury and respectfully requests that the Court dismiss Ticona's Complaint, award Solutia its costs of suit, and award such other and further relief as the Court deems appropriate.

## AFFIRMATIVE DEFENSES

For its Affirmative Defenses, Solutia states:

### FIRST AFFIRMATIVE DEFENSE

As its first affirmative defense, Solutia incorporates by reference each and every allegation of its Counterclaim contained herein.

### SECOND AFFIRMATIVE DEFENSE

Nylon polymer is simply Nylon Salt, which Ticona is required by the Nylon Salt Agreement to purchase exclusively from Solutia, in polymerized form.

### THIRD AFFIRMATIVE DEFENSE

Ticona's claim is barred by the doctrines of waiver and estoppel in that Ticona induced Solutia to make investments in its manufacturing equipment necessary to produce nylon salt and the raw materials necessary to produce nylon salt in excess of $400,000,000.00, in reliance in

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

part on Ticona's agreement to purchase Nylon Salt exclusively from Solutia and to provide four

years' notice of termination of that obligation.

## FOURTH AFFIRMATIVE DEFENSE

Ticona's claim is barred by the doctrine of unclean hands in that Ticona induced Solutia

to make investments in its manufacturing equipment necessary to produce nylon salt and the raw

materials necessary to produce nylon salt in excess of $400,000,000.00, in reliance in part on

Ticona's agreement to purchase Nylon Salt exclusively from Solutia and to provide four years'

notice of termination of that obligation.

## FIFTH AFFIRMATIVE DEFENSE

Ticona's claim is barred by the doctrine of equitable recoupment in that applicable

Missouri law allows a continuation of the Nylon Salt Agreement and Ticona's obligation

thereunder to purchase Nylon Salt exclusively from Solutia for a reasonable time for Solutia to

recoup its investments made in substantial part in support of Ticona.

## COUNTERCLAIM

### FACTS COMMON TO ALL COUNTS

#### Parties and Jurisdiction

1. Solutia is a corporation duly organized and existing under the laws of Delaware, with its
   principal place of business in St. Louis County, Missouri.

2. Ticona is a Delaware corporation, with its principal place of business in Chatham, New
   Jersey. Ticona is a business unit of Celanese AG, f/k/a Celanese Corporation.

3. Ticona is in the business, among other things, of manufacturing and/or selling
   thermoplastics, including nylon polymers.

4. Solutia is in the business, among other things, of manufacturing and/or selling chemical
   products, including the Nylon Salt that is the basic component of nylon polymers.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

5.    Solutia is the corporate successor in interest to Monsanto Company ("Monsanto"), and Ticona is the corporate successor in interest to Celanese Corporation ("Celanese"). Accordingly, Solutia and Ticona are subject to the privileges and obligations under the Contract described below. (Unless otherwise indicated, references to Solutia hereinafter shall include both Solutia and Monsanto, and references to Ticona hereinafter shall include both Ticona and Celanese, as appropriate.)

### The Products

6.    Among the products manufactured and/or sold by Ticona are "nylon 6,6" molding resins.

7.    Nylon 6,6 resins can be melted at high temperatures and molded into many useful objects.

    7.1.    In addition, during the process of making nylon 6,6 base resin, various additives can be added, resulting in resins that have different characteristics. Examples of compounded nylon resins that are modified include glass-filled, mineral-filled, and heat-stabilized resins.

8.    Nylon 6,6, as actually used in end products, is a "polymer," meaning that it is made of strands of individual molecules which, by their nature, are able to hook together end-to-end, much like rail cars are hooked together to make up a train. The chains of molecules are not necessarily of any particular length, just as a train is not necessarily of any particular length. The process of hooking the molecules into strands is called "polymerization."

9.    The individual molecules, when not connected in a polymer form, are commonly referred to as "nylon salt." The nylon molecules in salt form usually are in solution with water.

10.    Polymerization of nylon salt is a relatively simple procedure -- basically removing the water under high temperature.

- 10 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

10.1.   There is no commercially practical way to produce nylon 6,6 polymer other than from nylon salt.

11.   Conversely, the manufacture of nylon salt and its precursor chemicals is a costly process that is extremely capital intensive. In fact, the capital investment needed to produce nylon salt and its precursor raw materials is such that only two vertically integrated companies in the United States, Solutia and DuPont, manufacture nylon 6,6 salt.

11.1.   The precursor raw materials used to make nylon 6,6 in a commercial setting are adipic acid ("AA") and hexamethylene diamine ("HMD").

11.2.   While AA has some use other than as a precursor to nylon 6,6, HMD is used almost exclusively for the production of nylon. Solutia manufactures AA and HMD (along with their precursor raw materials -- cyclohexanol, cyclohexanone, adiponitrile. and acrylonitrile) in its own capital-intensive plants using proprietary technology.

12.   In 1980 Celanese elected to purchase all of its needs for nylon salt from Monsanto rather than make the very large capital investment necessary to produce AA and HMD and make its own nylon salt. choosing instead to focus on its downstream resin business. Therefore. Celanese and Monsanto entered into a long-term "requirements" contract that guaranteed Celanese its supply of nylon salt and guaranteed Monsanto a long-term customer for that product, all as more fully set out below.

### The Contract

13.   On or about October 1, 1980, Monsanto Company and Celanese Corporation entered into a Nylon Salt Sales Contract (hereinafter "the Contract"). A true and accurate copy of the Contract is attached hereto as Exhibit 1 and incorporated herein by reference.

- 11 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

14. The parties amended the Contract on four separate occasions: December 12, 1985 ("the 1985 Amendment"); August 23, 1986 ("the 1986 Amendment"); September 30, 1988 ("the 1988 Amendment"); and July 27, 1993 ("the 1993 Amendment"). True and accurate copies of these amendments are attached hereto as Exhibits 2 through 5, respectively, and are incorporated herein by reference. (Unless otherwise indicated, all references to the Contract hereinafter shall refer to the Nylon Salt Sales Contract as amended.)

15. Under the Contract, Ticona agreed to purchase from Solutia one-hundred percent (100%) of its requirements of nylon 6,6 salt for use in its nylon resins business, subject to certain maximum limits and Solutia's capacity, all as more fully set out in the Contract. (*See*, *e.g.*, § 2(c) of the 1988 Amendment.)

16. The Contract contains a formula pursuant to which the price per unit of product is calculated. (*See* § 1 of the 1993 Amendment.)

17. Ticona and its predecessors in interest have manufactured and sold nylon 6,6 resins and derivatives for decades. For all of those years, Ticona has purchased nylon salt pursuant to the Contract and polymerized the salt into nylon 6.6 polymer (either in the form of base resin or resin compounded with the additives referenced above). Ticona then has sold the nylon 6.6 resin and its derivatives in the open market.

18. Ticona is still in the same business, with no significant changes in the relevant product lines as relate to nylon.

### Solutia's Investment

19. In the late 1980's Monsanto's business planning made it likely that Monsanto would not be able to supply both its needs for nylon and those of Celanese as well. Therefore, on August 31, 1989, Monsanto gave Celanese the four year's required notice that the

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

Contract would be terminated effective in 1994 (the "1989 Notice"). At the time, Monsanto made it clear to Celanese that Monsanto would fully honor its contractual commitment during the four-year notice period.

20.    The result of the 1989 Notice was a request by Celanese that Monsanto reconsider its decision, followed by negotiations between the parties to the Contract. During those negotiations it was made quite clear to Celanese that Monsanto would be unable to continue to supply itself and Celanese under any extension of the Contract without making very substantial capital investments in plant and equipment for its raw material units through to salt to increase its capacity to produce nylon salt. Celanese specifically requested that Monsanto renew the Contract and make itself capable of delivering all of the nylon salt that was envisioned under the Contract. As a result of these requests and the surrounding negotiations, the Contract was amended in 1993, as aforesaid.

21.    Consistent with Celanese's requests and consistent with its obligations to reserve capacity for Celanese, after Amendment to the Contract in 1993, Monsanto and Solutia made more than $400,000,000.00 in capital investments related to plant and equipment for the production of the necessary raw materials and nylon salt. Such investment either would not have been made, or would not have been made at the same scale, in the absence of the 1993 Amendment to the Contract and ongoing reliance on receiving the required forty-eight (48) months' advance notice from Celanese before any termination of salt purchases by Celanese.

22.    Section 2 of the May 27, 1993 Amendment, still in force, provides that the "term of this contract shall be from January 1, 1981 to August 31, 2004 and shall continue thereafter unless and until terminated by either party upon at least forty-eight (48) months prior written notice to the other party."

- 13 -

BER-L-003362-17   10/05/2017 4:57:41 PM   Pg 14 of 22 Trans ID: LCV2017292646

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

23.    This four-year notice provision was executed so that in the event of a termination of the Contract, Solutia would have adequate time to adjust its future capital needs and to try to absorb the volumes of nylon salt and precursor raw materials reserved for Ticona, and/or for Ticona to be able to either manufacture or arrange for the third-party supply of the necessary nylon salt following termination.

24.    On April 17, 2002 Ticona provided notice under the Contract that it elected to terminate the Contract, with purchase and supply to continue during the remaining forty-eight (48) month term of the Contract.

## Ticona's Efforts to Circumvent the Contract and the Four Year Termination Provision

25.    Upon information and belief, beginning on a date currently unknown to Solutia and continuing through the present time. Ticona began purchasing nylon salt that had already been polymerized, rather than buying such nylon salt exclusively from Solutia as required by the Contract. Ticona did this despite staying in the same business and manufacturing essentially the same products.

26.    On or about August 28. 2002, Dave Vrancrich, in his capacity as Ticona's Sales Director for the Americas Region, sent a letter on behalf of Ticona to at least one of its customers stating in part as follows:

Dear Customer,

This letter is to inform you that Ticona has entered into a long-term agreement with a Nylon 6/6 producer to purchase Nylon 6/6 polymer. We will discontinue our polymer production in September 2002. The purchased polymer will meet Ticona's internal specifications for first quality prime Nylon. Ticona will continue to compound its Nylon products from this feedstock in Bishop, TX and Florence, KY. All products will be tested by Ticona to document that they meet the same values and properties you have been receiving.

Automotive OEMs, UL. NSF, and FDA have been advised of this change.

- 14 -

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

This decision will enable Ticona to remain a competitive supplier of Nylon 6/6 for our customers.

27. There is no good-faith business reason for Ticona to have outsourced the polymerization step of its manufacturing process other than in an attempt to avoid its obligations under the Contract. Instead, Ticona has artificially manipulated its business so as to appear to have reduced its need for nylon salt.

## COUNT I -- BREACH OF EXPRESS TERMS OF CONTRACT

28. Solutia incorporates into Count I the allegations in all previous paragraphs of this Counterclaim.

29. By purchasing polymerized nylon salt from third parties, rather than buying nylon salt exclusively from Solutia, Ticona has breached the express terms of the Contract, including without limitation Section § 2(c) of the 1988 Amendment thereto.

30. Solutia has been damaged by Ticona's breach of contract in this regard in an amount to be determined at the trial of this matter.

31. Solutia has complied substantially with all of its obligations under the Contract.

WHEREFORE, Solutia, Inc. prays for judgment on Count I in favor of Solutia, Inc. and against Ticona Polymers, Inc. in an amount to be determined at the trial of this matter, for pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

## COUNT II -- BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

32. Solutia incorporates into Count II the allegations in all previous paragraphs of this Counterclaim.

33. The Contract contains an implied covenant of good faith and fair dealing.

34. By purchasing polymerized nylon salt from third parties, rather than buying nylon salt exclusively from Solutia, Ticona has breached the implied covenant of good faith and fair

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

dealing in the Contract, evading the spirit of the transaction and the Contract and depriving Solutia of the essential and expected benefit of the parties' bargain.

35.   The outsourcing of the polymerization step of Ticona's manufacturing process is a sham manipulation of its business practices undertaken solely to circumvent the Contract.

36.   Solutia has been damaged by Ticona's breach of contract in this regard in an amount to be determined at the trial of this matter.

WHEREFORE, Solutia, Inc. prays for judgment on Count II in favor of Solutia, Inc. and against Ticona Polymers, Inc. in an amount to be determined at the trial of this matter, for pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

### COUNT III -- ANTICIPATORY BREACH OF EXPRESS TERMS OF CONTRACT

37.   Solutia incorporates into Count III the allegations in all previous paragraphs of this Counterclaim.

38.   On or about August 8, 2002, Ticona's senior purchasing agent, Mr. Garry Smith, notified Solutia by electronic mail as follows: "This is notice that Ticona will cease all requirements for nylon salt August 31. 2002. Taking into consideration the lead time for shipments and our current inventory, I have instructed Solutia customer service to not ship any nylon salt after today, August 8, 2002. If you have any questions, please call me at 361-584-6500."

39.   Upon information and belief, and based on the letter from Dave Vrancrich described above, Ticona intends after August 8, 2002 to purchase nylon polymer from third-party sources. Such purchases will be made despite the fact that Ticona has fully depreciated, operable polymerization units at its nylon plant. Solutia believes Ticona will close such low-cost units and lay off employees in order to purchase salt in polymer form in an

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

attempt to circumvent its Contract obligations with Solutia. Nylon polymer is simply nylon salt, which Ticona is required by the Contract to purchase exclusively from Solutia, in polymerized form.

40. Ticona is obligated to honor the Contract until April 16, 2006 pursuant to Section 2 of the 1993 Amendment.

41. By advising Solutia that Ticona is ceasing purchasing nylon salt from Solutia and by continuing to purchase polymerized nylon salt in the form of nylon polymer from third-party sources, Ticona has anticipatorily breached the explicit terms of the Contract, including without limitation § 2(c) of the 1988 Amendment thereto and § 2 of the 1993 Amendment thereto.

42. Solutia has been and will continue to be damaged by Ticona's anticipatory breach of the Contract in this regard in an amount exceeding forty million dollars ($40,000,000.00).

WHEREFORE, Solutia, Inc. prays for judgment on Count III in favor of Solutia, Inc. and against Ticona Polymers, Inc. in an amount to be determined at the trial of this matter, but in no event less than $40,000,000.00, for pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

## COUNT IV -- ANTICIPATORY BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43. Solutia incorporates into Count IV the allegations in all previous paragraphs of this Counterclaim.

44. By advising Solutia that Ticona intends to cease purchasing nylon salt from Solutia, by continuing to purchase nylon salt in the form of nylon polymer from third party sources, and by informing its customers that it will be purchasing nylon polymer from third party sources, Ticona has anticipatorily breached the implied covenant of good faith and fair

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

dealing in the Contract, evading the spirit of the transaction and the Contract and depriving Solutia of the essential and expected benefit of the parties' bargain.

45.   Solutia has been and will continue to be damaged by Ticona's anticipatory breach of the Contract in this regard in an amount exceeding forty million dollars ($40,000,000.00).

WHEREFORE, Solutia, Inc. prays for judgment on Count IV in favor of Solutia, Inc. and against Ticona Polymers, Inc. in an amount to be determined at the trial of this matter, but in no event less than $40,000,000.00, for pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

## COUNT V -- EQUITABLE RECOUPMENT

46.   Solutia incorporates into Count V the allegations in all previous paragraphs of this Counterclaim.

47.   For the partial benefit of Celanese and in reliance on its representation that Solutia would be given four years' notice of any termination of the Agreement, Solutia has made more than $400,000,000.00 in capital investments related to plant and equipment for the production of the necessary raw materials and nylon salt since 1993.

48.   These investments were made in good faith and would not have been made, or would not have been made at the same scale, in the absence of the 1993 Amendment to the Contract and ongoing reliance on receiving the required forty-eight (48) months' advance notice from Celanese before any termination of salt purchases by Celanese.

49.   Under applicable Missouri law, Solutia is entitled to a continuation of the Agreement and of Ticona's obligation thereunder to purchase nylon salt exclusively from Solutia for a reasonable period of time to enable Solutia to recoup its investment.

50.   Ticona's anticipatory breach of the Agreement as described above has impaired Solutia's ability to recoup its investment.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

WHEREFORE, Solutia, Inc. prays for judgment on Count V in favor of Solutia, Inc. and against Ticona Polymers, Inc. in an amount to be determined at the trial of this matter, for pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

## COUNT VI -- ACTION ON ACCOUNT

51. Solutia incorporates into Count VI the allegations in all previous paragraphs of this Counterclaim.

52. Paragraph 5(f) of the 1993 Amendment Contract requires Ticona to reimburse Solutia for the costs of shipping nylon salt to Ticona as follows: "All freight costs incurred in transporting Salt to the location designated by Hoechst Celanese shall be borne and paid for by Hoechst Celanese."

53. Under most circumstances, Solutia shipped nylon salt to Ticona via rail. The transit time for shipments by rail normally was approximately fourteen (14) days.

54. At Ticona's request, Solutia occasionally made shipments of nylon salt to Ticona via trucking companies. Although shipment by trucking is more expensive than shipment by rail, the transit time by truck was only approximately two (2) days.

55. In those instances in which the need to ship nylon salt to Ticona by truck resulted from delays in Solutia's production of nylon salt, the practice and procedure between the parties was for Solutia to voluntarily pay the increased shipping charges.

56. However, Paragraph 3(c) of the Contract requires Ticona to "provide [Solutia] with firm orders for Salt at least fifteen (15) days in advance of the requested delivery date for the Salt" so that, among other things, the expense of shipping by truck could be avoided.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

57.   At Ticona's request, Solutia incurred the cost of shipping nylon salt to Ticona by truck as indicated on the debit memos attached hereto as Exhibit 6. The total amount of the shipping charges was $33,159.15.

58.   Ticona accepted the nylon salt that was shipped to Ticona as reflected on the debit memos attached as Exhibit 6.

59.   Of a total due of $75,036.15 as indicated on Exhibit 6-A, Ticona paid $41,877.00. This left a balance owed of $33,159.15, which represented shipping charges.

60.   In or about April and May of 2002, Ticona paid Solutia for certain shipping charges for which Solutia thereafter issued a credit in the amount of $11,644.52, representing shipping charges that resulted from delays in Solutia's production of nylon salt. Following the issuance of this credit in the amount of $11,644.52, Ticona's unpaid balance for shipping charges was $21,514.63, as indicated on Exhibit 6-B.

61.   These shipping charges in the amount of $21,514.63 resulted from Ticona's failure to provide at least fifteen (15) days' advance notice of the requested delivery date as required by Paragraph 3(C) of the Contract.

62.   Despite Solutia's invoices to Ticona, Ticona has refused to pay the remaining balance in the amount of $21,514.63 (i.e., $33,159.15 - $11,644.52).

63.   The amount of $21,514.63 is a reasonable and customary charge for the shipping of nylon salt as requested by Ticona.

64.   Solutia has been damaged by Ticona's breach of contract in this regard in the amount of $21,514.63.

WHEREFORE, Solutia, Inc. prays for judgment on Count VI in favor of Solutia, Inc. and against Ticona Polymers, Inc. in the amount of $21,514.63, plus pre- and post-judgment interest, for its costs of suit, and for such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - February 02, 2018 - 12:39 PM

## JURY DEMAND

Defendant, Solutia, Inc. demands a trial by jury on all issues so triable herein.

## DEMAND FOR STATEMENT OF DAMAGES

Defendant, Solutia, Inc. demands that the plaintiffs furnish it with a statement of the amount of damages claimed in this matter pursuant to Rule 4:9-2.

## CERTIFIACTION PURSUANT TO R. 4:5-1(b)(2)

Defendant Solutia, Inc. certifies pursuant to R. 4:5-1(b)(1) that the within action is the subject of a lawsuit in the Circuit Court of St. Louis County, State of Missouri bearing the caption, *Solutia, Inc v. Ticona Polymers, Inc.*, Case Number: 02CC-003330. Defendant further certifies that it is not aware of any other party that should be joined pursuant to R. 4:28 and R. 4:29-1(b).

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:5-1(c), Defendant, Solutia, Inc. hereby designates Stephen H. Rovak. Esq. as its trial counsel.

Electronically Filed - St. Louis County - February 02, 2018 - 12:39 PM

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL

By: _____
    Richard J. Brightman, Esq.
    820 Morris Turnpike
    Short Hills, New Jersey 07078
    (973) 564-6484
    (973) 564-6493 (facsimile)
              and

    Stephen H. Rovak, Esq.
    Stephen J. O'Brien, Esq.
    Mark L. Brown, Esq.
    One Metropolitan Square, Suite 3000
    St. Louis, Missouri 63102
    (314) 241-1800
    (314) 250-5959 (facsimile)

Electronically Filed - St Louis County - February 12, 2018 - 10:35 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY OF APPEARANCE**

COMES NOW Nicholas J. Lamb of Thompson Coburn LLP and hereby enters his appearance on behalf of Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. in the above captioned action.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ Nicholas J. Lamb
    John R. Musgrave #20358
    Christopher M. Hohn #44124
    Nicholas J. Lamb #33486
    A. Elizabeth Blackwell #50270
    Susan L. Werstak, #55689
    David M. Mangian #61728
    One U.S. Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    Email:  jmusgrave@thompsoncoburn.com
    Email:  chohn@thompsoncoburn.com
    Email:  eblackwell@thompsoncoburn.com
    Email:  swerstak@thompsoncoburn.com
    Email:  dmangian@thompsoncoburn.com
    Email:  nlamb@thompsoncoburn.com

Electronically Filed - St Louis County - February 12, 2018 - 10:35 AM

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, February 12, 2018 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

*/s/ Nicholas J. Lamb*

2

**In the**

# CIRCUIT COURT

**of St. Louis County, Missouri**

MONSANTO, et al
_____
Plaintiff(s)

vs.

MAGNATEK
_____
Defendant(s)

Date: Feb 16, 2018

Case Number: 17SL-3368

Division: 8

**FILED**

**FEB 16 2018**

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

For File Stamp Only

By consent of the parties, Defendants motion to Dismiss is removed from the Docket of this date, and reset for hearing for March 15, 2018 at 10:00 AM.

CC: John Hessel
Attorney for Defendant

**SO ORDERED**

_____
Judge

**ENTERED:** 2/16/2018
_____
(Date)

NICHOLAS J. LAMB                33486
_____    _____
Attorney                        Bar No.
Attorney for Plaintiffs
_____
Address

_____    _____
Phone No.                       Fax No.

_____    _____
Attorney                        Bar No.

_____
Address

_____    _____
Phone No.                       Fax No.

CCOPR47-WS   Rev. 02/14

Electronically Filed - St Louis County - February 19, 2018 - 02:54 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

MONSANTO COMPANY,           )
PHARMACIA, LLC, and         )
SOLUTIA, INC.,              )
                            )
        Plaintiffs,         )
                            )       Case No. 17SL-CC03368
vs.                         )
                            )       Division 8
MAGNETEK, INC.,             )
                            )
        Defendant.          )

## NOTICE OF HEARING

By consent of the parties, oral argument of Defendant's Motion to Dismiss or Stay shall be heard on March 15, 2018 at 9:30 a.m. in Division 8.

Respectfully submitted,

**LEWIS RICE LLC**

By:/s/ John M. Hessel
    John M. Hessel, #26408
    600 Washington Avenue, Suite 2500
    St. Louis, MO 63101
    (314) 444-7735 – Phone
    (314) 612-7335 – Facsimile
    jhessel@lewisrice.com

*Co-Counsel for Defendant*
*Magnetek, Inc.*

2190772

Electronically Filed - St Louis County - February 19, 2018 - 02:54 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on plaintiff's counsel and all defense counsel of record via the Missouri Courts e-Filing System Pursuant to Missouri Rules of Civil Procedure 103.08 this 19th day of February, 2018.

In addition, the undersigned counsel certifies under Rule 55.03(a) of the Missouri Rules of Civil Procedure that he has signed the original of this certificate and the foregoing pleading.

_/s/ John M. Hessel_

Electronically Filed - St Louis County - March 05, 2018 - 03:27 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF CHANGE OF FIRM AND CONTACT
INFORMATION FOR A. ELIZABETH BLACKWELL**

COMES NOW A. Elizabeth Blackwell and informs the Court and all parties that her firm

name and contact information have changed as follows:

A. Elizabeth Blackwell, MO Bar #50270
Bryan Cave
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone: 314-259-2000
FAX: 314-259-2020
Liz.Blackwell@bryancave.com

Respectfully Submitted,

By: /s/ A. Elizabeth Blackwell

John R. Musgrave #20358
Christopher M. Hohn #44124
Nicholas J. Lamb #33486
Susan L. Werstak, #55689
David M. Mangian #61728
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000 (telephone)
(314) 552-7000 (facsimile)
Email:  jmusgrave@thompsoncoburn.com
Email:  chohn@thompsoncoburn.com

1

Electronically Filed - St Louis County - March 05, 2018 - 03:27 PM

Email:  swerstak@thompsoncoburn.com
Email:  dmangian@thompsoncoburn.com
Email:  nlamb@thompsoncoburn.com

And

A. Elizabeth Blackwell #50270
BRYAN CAVE
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Phone: 314-259-2000
FAX: 314-259-2020
Liz.Blackwell@bryancave.com

***Attorneys for Plaintiffs Monsanto Company,
Pharmacia, LLC, and Solutia, Inc.***

Electronically Filed - St Louis County - March 05, 2018 - 03:27 PM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2018 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

<u>/s/ A. Elizabeth Blackwell</u>

Electronically Filed - St Louis County - March 14, 2018 - 02:56 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

MONSANTO COMPANY,            )
PHARMACIA, LLC, and          )
SOLUTIA, INC.                )
                             )
        Plaintiffs,          )
                             )    Cause No.  17SL-CC03368
v.                           )
                             )    Division 8
MAGNETEK, INC.               )
                             )
        Defendant.           )

## ORDER

THIS MATTER having come before the Court as a result of an agreement between

Plaintiffs Monsanto Company, Pharmacia LLC, and Solutia, Inc. and Defendant Magnetek, Inc.

to stay this matter:

IT IS on this 15th day of March, 2018,

SO ORDERED that the hearing on the Motion to Dismiss is continued and this matter is

stayed for ninety (90) days from the date of this Order.


_____

Judge Dean Waldemer

Electronically Filed - St Louis County - March 14, 2018 - 02:56 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Cause No.  17SL-CC03368 |
| v. | ) | |
| | ) | Division 8 |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

THIS MATTER having come before the Court as a result of an agreement between

Plaintiffs Monsanto Company, Pharmacia LLC, and Solutia, Inc. and Defendant Magnetek, Inc.

to stay this matter:

IT IS on this 15th day of March, 2018,

SO ORDERED that the hearing on the Motion to Dismiss is continued and this matter is

stayed for ninety (90) days from the date of this Order.


_____
Judge Dean Waldemer

Electronically Filed - St Louis County - June 07, 2018 - 02:36 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI**

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 17SL-CC03368 |
| vs. | ) | |
| | ) | Division 7 |
| MAGNETEK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF HEARING**

The parties agree to schedule a hearing on a joint Motion to Stay on June 14, 2018 at 9:15 a.m. in Division 7.

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ John M. Hessel

John M. Hessel, #26408
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
(314) 444-7735 – Phone
(314) 612-7335 – Facsimile
jhessel@lewisrice.com

*Co-Counsel for Defendant
Magnetek, Inc.*

2190772.2

Electronically Filed - St Louis County - June 07, 2018 - 02:36 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on plaintiff's counsel and all defense counsel of record via the Missouri Courts e-Filing System Pursuant to Missouri Rules of Civil Procedure 103.08 this 7th day of June, 2018.

In addition, the undersigned counsel certifies under Rule 55.03(a) of the Missouri Rules of Civil Procedure that he has signed the original of this certificate and the foregoing pleading.

_/s/ John M. Hessel_

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

**FILED**

JUN 1 4 2018

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

| | | |
|---|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 17SL-CC03368 |
| | ) | Division 7 |
| MAGNETEK, INC., | ) ) | |
| Defendant. | ) | |

## ORDER STAYING PROCEEDINGS

This matter comes before the Court as the result of an agreement between Plaintiffs Monsanto Company, et al., and Defendant Magnetek, Inc. with a request that this Court stay the proceedings in this matter for 90 days from the date of this Order.

Accordingly, it is hereby ORDERED that this matter is stayed until September 12, 2018 and a case management conference is set on the 12th day of September, 2018, at 9:00 am, at which time the Court will address the status of the case and the scheduling of Defendant's Motion to Dismiss, if necessary.

_____  6/14/18

Honorable Mary E. Ott

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI**

**FILED**

SEP 1 0 2018

MONSANTO COMPANY,                    )
PHARMACIA, LLC. and                  )
SOLUTIA, INC.,                       )

**JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY**

                                     )
        Plaintiffs,                  )
                                     )      Case No. 17SL-CC03368
vs.                                  )
                                     )      Division 7
MAGNETEK, INC.,                      )
                                     )
        Defendant.                   )

## ORDER STAYING PROCEEDINGS

This matter comes before the Court as the result of an agreement between Plaintiffs Monsanto Company, et al., and Defendant Magnetek, Inc. with a request that this Court stay the proceedings in this matter for 90 days from the date of this Order.

Accordingly, it is hereby ORDERED that this matter is stayed until December 11, 2018 and a case management conference is set on the 13TH day of _December_____, 2018, at 9:00 a.m., at which time the Court will address the status of the case and the scheduling of Defendant's Motion to Dismiss, if necessary.

_____ 9-10-18

Honorable Mary B. Ott

In the

# CIRCUIT COURT
## of St. Louis County, Missouri

Monsanto et al
_____
Plaintiff(s)

vs.

Magnetek, Inc.
_____
Defendant(s)

Date: 12-13-2018

Case Number: 17SL-CC03368

Division: 7

**FILED**

DEC 13 2018

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## ORDER

Cause called for case management conference. Parties appear by counsel. Cause re-set for case management conference on January 16, 2019 at 9:15AM.

**SO ORDERED**

_____
Judge

ENTERED: 12/13/18
            (Date)

_____    61729
Attorney                             Bar No.
Counsel for Plaintiffs

_____
Address

Phone No.                            Fax No.

_____    26408
Attorney                             Bar No.
John M. Hessel for Deft.

_____
Address

Phone No.                            Fax No.

CCOPR47-WS   Rev. 02/14

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

Monsanto Company etal
_____
Plaintiff(s)

vs.

Magnetek, Inc.
_____
Defendant(s)

Date: 1-16-19

Case Number: 17SL-CC03368

Division: _____

File Stamp Only

**FILED**

JAN 1 6 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

| | |
|---|---|
| _____ | Pre-trial Conference not held |
| _____ | Pre-trial Conference held |
| _____ | State/Plaintiff appears by: David Mangian |
| _____ | Defendant(s) appear by: John Hessel |
| _____ | Cause determined to be a definite trial |
| _____ | Caused passed for settlement |
| _____ | Track Number |
| _____ | Length of time of trial |
| _____ | Offer/Demand/Recommendation: _____ |
| X | Comments: Case Management Conference Set for May 15, 2019 at 8:45 Am. |
| _____ | Settlement Conference Date: _____ |
| _____ | Trial Date: _____ |
| _____ | Defendant fails to appear, warrant and bond forfeiture ordered. |

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE;
## NO FURTHER NOTICE WILL BE MAILED.

Attorney for (P)    61728
_____    Bar No.

Address
_____

Attorney    26408
_____    Bar No.

Phone No.
_____

**SO ORDERED**

Judge/Division    1-16-19

_____    Phone No.

CCCDT178    Rev. 11/10    WHITE – File    YELLOW – Plaintiff/Attorney    PINK – Defendant/Attorney    GOLDENROD – Plaintiff/Defendant

Electronically Filed - St Louis County - February 21, 2019 - 12:45 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
|     Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
|     Defendant. | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiffs, Monsanto Company, Pharmacia, LLC and Solutia, Inc., and Defendant Magnetek, Inc., by and through their respective attorneys, will present a joint request to stay these proceedings up to and including May 31, 2019, at 9:00 a.m. on Tuesday, March 5, 2019, before the Honorable Mary Elizabeth Ott, in Division 7 of the St. Louis County Courthouse.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
    John R. Musgrave #20358
    Christopher M. Hohn #44124
    David M. Mangian #61728
    One U.S. Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    Email:  jmusgrave@thompsoncoburn.com
    Email:  chohn@thompsoncoburn.com
    Email:  dmangian@thompsoncoburn.com

Electronically Filed - St Louis County - February 21, 2019 - 12:45 PM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 21, 2019, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.


/s/ David M. Mangian

In the
# CIRCUIT COURT
### of St. Louis County, Missouri

Monsanto et al.
Plaintiff(s)

vs.

Magnetek, Inc.
Defendant(s)

Date 3-5-19

Case Number 17SL-CC03368

Division 7

File Stamp Only
# FILED
MAR 0 5 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

_____    Pre-trial Conference not held

_____    Pre-trial Conference held

_____    State/Plaintiff appears by:_____

_____    Defendant(s) appear by:_____

_____    Cause determined to be a definite trial

_____    Caused passed for settlement

_____    Track Number

_____    Length of time of trial

_____    Offer/Demand/Recommendation: _____

___X___    Comments: Case stayed until May 31, 2019

_____    Settlement Conference Date: For Mediation:

_____    Trial Date: _____

_____    Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE;
## NO FURTHER NOTICE WILL BE MAILED.

Attorney  Atty for Plaintiffs        65928    Bar No.

Address

Attorney  Atty for Defts        26408    Bar No.

(314) 444-7735    Phone No.

**SO ORDERED**

Judge/Division    3-5-19

CCCDT178    Rev. 01/2019          WHITE – File          YELLOW – Plaintiff/Attorney          PINK – Defendant/Attorney

Ⓐ

In the

# CIRCUIT COURT
## of St. Louis County, Missouri



Monsanto
_____
Plaintiff(s)

vs.

Magnetek
_____
Defendant(s)

Date  5/15/19
_____

Case Number  17SL-CC03368
_____

Division  ⑦ 7
_____



File Stamp Only

# FILED

MAY 1 5 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

_____  Pre-trial Conference not held

_____  Pre-trial Conference held

_____  State/Plaintiff appears by:_____

_____  Defendant(s) appear by:_____

_____  Cause determined to be a definite trial

_____  Caused passed for settlement

_____  Track Number

_____  Length of time of trial

_____  Offer/Demand/Recommendation:_____

_____  Comments: CAUSE STAYED UNTIL AUGUST 13, 2019

_____  Settlement STATUS Conference Date: AUGUST 13, 2019 at 8:45 am TO INFORM COURT OF RESULT OF MEDIATION

_____  Trial Date: SET ON JULY 25, 2019

_____  Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.

_____  61728
Attorney  for ⑦        Bar No.

_____
Address

_____  Phone No.

_____  26408
Attorney  for Dft.        Bar No.

_____
Phone No.

**SO ORDERED**

_____ 5/15/19
Judge/Division  7

2

**In the**

# CIRCUIT COURT
## of St. Louis County, Missouri

Monsanto Company
_____
Plaintiff(s)

vs.

Magnetek, Inc
_____
Defendant(s)

August 13, 2019
_____
Date

17SL-CC03368
_____
Case Number

7
_____
Division

File Stamp Only

# FILED

AUG 1 3 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

_____    Pre-trial Conference not held

_____    Pre-trial Conference held

_____    State/Plaintiff appears by: _____

_____    Defendant(s) appear by: _____

_____    Cause determined to be a definite trial

_____    Caused passed for settlement

_____    Track Number

_____    Length of time of trial

_____    Offer/Demand/Recommendation: _____

_____    Comments: Cause Stayed until 11/12/19 for ongoing mediation status

_____    Settlement Conference Date: 11/12/19 at 9:00 am to update court on status of mediation

_____    Trial Date: _____

_____    Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.

Attorney _____    61728
For Plaintiffs                         Bar No.
Address _____

Attorney _____    36408
for Defendant                          Bar No.
_____
                                        Phone No.

**SO ORDERED**

_____ Oct 8-13-19
Judge/Division

7

CCCDT178    Rev. 01/2019        WHITE – File        YELLOW – Plaintiff/Attorney        PINK – Defendant/Attorney

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

Plaintiff(s): Monsanto Co. et al

vs.

Defendant(s): Magnetek

Date: 11-12-19

Case Number: 19SL-CC03368

Division: 7

FILED

NOV 1 2 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

File Stamp Only

## CIVIL/CRIMINAL DOCKET MEMO

_____ Pre-trial Conference not held

_____ Pre-trial Conference held

_____ State/Plaintiff appears by:_____

_____ Defendant(s) appear by:_____

_____ Cause determined to be a definite trial

_____ Caused passed for settlement

_____ Track Number

_____ Length of time of trial

_____ Offer/Demand/Recommendation: _____

_____ Comments: _____

   ✓      ~~Settlement~~ Status Conference Date: 1/22/2020 @ 9 AM

_____ Trial Date: _____

_____ Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.

Attorney _____  For P    Bar No. 61728

Address _____

Attorney _____  Phone No. 65112  Bar No. for def

Phone No. _____

**SO ORDERED**

Judge/Division  11-21-19
7

CCCDT178    Rev. 01/2019        WHITE – File        YELLOW – Plaintiff/Attorney        PINK – Defendant/Attorney

**In the**

# CIRCUIT COURT

## of St. Louis County, Missouri

Monsanto Company et al
Plaintiff(s)

vs.

Magnetek, Inc.
Defendant(s)

Date: 1-22-2020

Case Number: 17SL-CC03368

Division: 7

File Stamp Only

# FILED

JAN 2 2 2020

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

### CIVIL/CRIMINAL DOCKET MEMO

Status Conference set for Feb 26, 2020 @ 9AM

_____ Pre-trial Conference not held

_____ Pre-trial Conference held

_____ State/Plaintiff appears by:_____

_____ Defendant(s) appear by:_____

_____ Cause determined to be a definite trial

_____ Caused passed for settlement

_____ Track Number

4 weeks  Length of time of trial

_____ Offer/Demand/Recommendation:_____

✓  Comments: Pretrial Conference August 27, 2021 2pm

_____ Settlement Conference Date:_____

✓  Trial Date: August 30, 2021 – October 1, 2021

_____ Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.

Attorney _____ 61728
Atty for Pls        Bar No.

Address _____

**SO ORDERED**

Judge/Division _____ 1-22-2020

Attorney _____ 26408
Atty for Dft        Bar No.

Phone No. _____

CCCDT178  Rev. 01/2019        WHITE – File        YELLOW – Plaintiff/Attorney        PINK – Defendant/Attorney

Electronically Filed - St Louis County - February 25, 2020 - 03:45 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| MONSANTO COMPANY, | ) |
| PHARMACIA, LLC, and | ) |
| SOLUTIA, INC., | ) |
| | ) |
| Plaintiffs, | )   Cause No. 17SL-CC03368 |
| | ) |
| v. | ) |
| | ) |
| MAGNETEK, INC., | ) |
| | ) |
| Defendant. | ) |

**ENTRY OF APPEARANCE**

COMES NOW, Herbert R. Giorgio, Jr., with the law firm of Bryan Cave Leighton

Paisner LLP, and hereby enters his appearance on behalf of Plaintiffs Monsanto Company,

Pharmacia, LLC, and Solutia, Inc., in the above-captioned action.

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By:   /s/ Herbert R. Giorgio, Jr.
       A. Elizabeth Blackwell #50270
       Herbert R. Giorgio, Jr. #58524
       One Metropolitan Square
       211 North Broadway, Suite 3600
       St. Louis, MO 63102-2750
       (314) 259-2000 (telephone)
       (314) 259-2020 (fax)
       liz.blackwell@bclplaw.com
       herb.giorgio@bclplaw.com

Attorneys for Plaintiffs Monsanto Company,
Pharmacia, LLC, and Solutia, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ Herbert R. Giorgio, Jr.

Electronically Filed - St Louis County - February 25, 2020 - 03:45 PM

In the
# CIRCUIT COURT
of St. Louis County, Missouri

Monsanto, et al.
_____
Plaintiff(s)

vs.

Magnetek, Inc.
_____
Defendant(s)

2-26-2020
_____
Date

17SL-CC03368
_____
Case Number

7
_____
Division

File Stamp Only

# FILED

FEB 2 6 2020

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

Defendant's Motion to Dismiss set for hearing April 9, 2020 at 1:30pm

_____ Pre-trial Conference not held

_____ Pre-trial Conference held

_____ State/Plaintiff appears by:_____

_____ Defendant(s) appear by:_____

_____ Cause determined to be a definite trial

_____ Caused passed for settlement

_____ Track Number

5 weeks   Length of time of trial

_____ Offer/Demand/Recommendation:_____

__✓__ Comments: Pretrial Coference April 20, 2022 @ 9am

_____ Settlement Conference Date:_____

__✓__ Trial Date: May 2, 2022 - June 3, 2022

_____ Defendant fails to appear, warrant and bond forfeiture ordered.

## A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.

Ha'Ar 58584       61728
Atty for Plaintiff    Atty for Plaintiff
_____    _____
Attorney                Bar No.

_____
Address

_____
Phone No.

**SO ORDERED**

_____ 2/26/2020
Judge/Division

7

Atty for Deft.
_____    _____
Attorney                Bar No.

John M. Hessel    26408
atty for Deft
_____    _____
Phone No.

CCCDT178   Rev. 01/2019        WHITE – File        YELLOW – Plaintiff/Attorney        PINK – Defendant/Attorney

# IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

_Monsanto Company, et al_
**PLAINTIFF/PETITIONER**

)
)
)

V.

)
)
)
)

_Magnetek, Inc._
**DEFENDANT/RESPONDENT**

)
)
)

DATE: 03·25·2020

CAUSE NO.: 17SL-CC03368

DIVISION: 7

# FILED

MAR 2 5 2020

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## ORDER

UPON THE COURT'S OWN MOTION AND PURSUANT TO THE ORDER OF THE

SUPREME COURT OF MISSOURI DATED 03/16/2020 AND ADMINISTRATIVE ORDER

NO. 13 AND 14 OF ST. LOUIS COUNTY THE ABOVE MATTER IS REMOVED FROM

THE DOCKET OF _04/09/2020_ AND HEREBY RESET ON _05/22/2020 @ 3pm_

_Mtn to Dismiss_

SO ORDERED:

**Judge Mary Elizabeth Ott**
**Division 7**

CC: ALL PARTIES BY MAIL/E-FILE

Electronically Filed - St Louis County - July 20, 2020 - 06:19 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.,

        Plaintiffs,

        v.

MAGNETEK, INC.,

        Defendant.

Cause No. 17SL-CC03368

**CERTIFICATE OF SERVICE**

        I, Ryan A. Lema, an attorney for Defendant, hereby certify that I served a true and correct copy of Magnetek's Objections and Responses to Plaintiffs' First Set of Requests for Production on July 20, 2020 by email and U.S. Mail to:

THOMPSON COBURN LLP
Christopher M. Hohn
David M. Mangian
One U.S. Bank Plaza
St. Louis, Missouri 63101
Telephone No.: (314) 552-6000
chohn@thompsoncoburn.com
dmangian@thompsoncoburn.com

BRYAN CAVE LEIGHTON PAISNER
LLP
A. Elizabeth Blackwell
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone No.: (314) 259-2000
Liz.Blackwell@bclplaw.com

*Attorneys for Plaintiffs*

_____
Ryan A. Lema

**CERTIFICATE OF SERVICE AND**
**CERTIFICATE OF COMPLIANCE WITH RULE 55.03(a)**

I hereby certify that a copy of the foregoing Certificate of Service was served by the Court's electronic filing system on this 20th day of July, 2020, on all counsel of record.  In addition, the undersigned counsel certifies under Rule 55.03(a) of the Missouri Rules of Civil Procedure that she has signed the original of this Certificate of Service.

/s/ Sarah A. Milunski

Electronically Filed - St Louis County - July 20, 2020 - 06:19 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

---

MONSANTO COMPANY, PHARMACIA,
LLC, and SOLUTIA, INC.,

              Plaintiffs,

      v.

MAGNETEK, INC.,

              Defendant.

Cause No. 17SL-CC03368

**CERTIFICATE OF SERVICE**

---

       I, Ryan A. Lema, an attorney for Defendant, certify that I served a true and correct copy of Magnetek's objections and Responses to Plaintiffs' First Set of Interrogatories on July 20, 2020 by email and U.S. Mail to:

THOMPSON COBURN LLP
Christopher M. Hohn
David M. Mangian
One U.S. Bank Plaza
St. Louis, Missouri 63101
Telephone No.: (314) 552-6000
chohn@thompsoncoburn.com
dmangian@thompsoncoburn.com

BRYAN CAVE LEIGHTON PAISNER LLP
A. Elizabeth Blackwell
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri  63102
Telephone No.: (314) 259-2000
Liz.Blackwell@bclplaw.com

*Attorneys for Plaintiffs*

_____
Ryan A. Lema

Electronically Filed - St Louis County - July 20, 2020 - 06:17 PM

Electronically Filed - St Louis County - July 20, 2020 - 06:17 PM

**CERTIFICATE OF SERVICE AND**
**CERTIFICATE OF COMPLIANCE WITH RULE 55.03(a)**

I hereby certify that a copy of the foregoing Certificate of Service was served by the Court's electronic filing system on this 20th day of July, 2020, on all counsel of record.  In addition, the undersigned counsel certifies under Rule 55.03(a) of the Missouri Rules of Civil Procedure that she has signed the original of this Certificate of Service.


/s/ Sarah A. Milunski

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION FOR ENTRY OF STIPULATED PROTECTIVE ORDER**

COME NOW Plaintiffs Monsanto Company, Pharmacia, LLC and Solutia, Inc. ("Plaintiffs") and Defendant Magnetek, Inc. ("Magnetek), through their respective counsel, and respectfully jointly move for the entry of the Stipulated Protective Order attached as **Exhibit A**. The Stipulated Protective Order is necessary for the protection of the confidential, proprietary or sensitive information produced in this action.

WHEREFORE, the parties, having shown good cause, respectfully request that the Court enter a protective order in the form attached hereto as **Exhibit A** and for all other relief it deems just and proper.

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Respectfully Submitted,

**THOMPSON COBURN LLP**

By:  */s/ David M. Mangian*
  Christopher M. Hohn #44124
  David M. Mangian #61728
  One U.S. Bank Plaza
  St. Louis, Missouri 63101
  (314) 552-6000 (telephone)
  (314) 552-7000 (facsimile)
  Email:  chohn@thompsoncoburn.com
  Email:  dmangian@thompsoncoburn.com

**BRYAN CAVE LEIGHTON PAISNER LLP**

  A. Elizabeth Blackwell, # 50270MO
  Herbert R. Giorgio, #58524MO
  One Metropolitan Square
  211 North Broadway, Suite 3600
  St. Louis, Missouri  63102
  Tel : (314) 259-2000
  Fax : (314) 259-2020
  Liz.Blackwell@bclplaw.com
  Herb.Giorgio@bclplaw.com

*Attorneys for Plaintiff Monsanto Company*

**LEWIS RICE, LLC**
John M. Hessel, #26408
Scott A. Wissel, #49085
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7600

**PHILLIPS LYTLE LLP**

By:  */s/ Ryan A. Lema (by consent)*
  Craig A. Leslie (Admitted *pro hac vice*)
  Ryan A. Lema (Admitted *pro hac vice*)
  One Canalside
  125 Main Street
  Buffalo, New York 14203
  (716)  847-8400 (telephone)

*Attorneys for Defendant Magnetek, Inc.*

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATED PROTECTIVE ORDER

Upon agreement of the parties to this action, for good cause, and in accordance with Missouri Supreme Court Rule 56.01(c), the Court enters the following Order (hereinafter "Order" or "Protective Order"), which shall govern the production, designation, use, handling, dissemination, filing, and other aspects of confidential, proprietary, or sensitive information produced in this action ("Action").

1.     **PARTIES TO THE PROTECTIVE ORDER.** This Order governs the Parties in the Action and any cases subsequently consolidated with the Action, and any person and/or third party who receives Confidential information pursuant to the terms of the Order.  All references to "Party", "Producing Party", or "Designating Party" throughout this order are intended to include non-parties.

2.     **SCOPE OF THE PROTECTIVE ORDER.** This Order governs the treatment of all documents and any other discovery produced in accordance with the Missouri Rules of Civil Procedure by a Party or Non-Party in the Action ("Discovery Material"), including the use of Confidential Discovery Material produced during discovery in the Action.

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

3.      **LIMITATION ON USE**.   Discovery Material may be used solely for the prosecution, defense, appeal, and/or settlement of the Action, and may be disclosed only under circumstances and to the persons specifically provided for in this or subsequent Court Orders, or with the prior written consent of the Producing Party with respect to specifically identified Discovery Material and may not be used for any other purpose, including but not limited to:

    a.    The prosecution or defense of other actions not subject to this Protective Order;

    b.    In any proceeding before or application to any governmental agency, except that the parties agree that Discovery Material may also be used in the prosecution, defense, appeal, and/or settlement of the Action brought by Magnetek, Inc. ("Magnetek") against Monsanto Company, Pharmacia, LLC, and Solutia, Inc. (collectively, "Monsanto") in the Superior Court of New Jersey, Law Division, Bergen County, Docket No.: BER-L-3362-17 (the "New Jersey Action") if that action is not dismissed upon Monsanto and Solutia's motions to dismiss and upon entry of a protective order in the New Jersey Action;

    c.    In client solicitation or attorney advertising materials;

    d.    Disclosure to media or competitors of parties to the Action; or

    e.    Subject to the exception set forth in (a) above, any purpose other than the prosecution or defense of this Action.

4.      **CONFIDENTIAL DESIGNATIONS.** Any Producing Party may designate as "CONFIDENTIAL" any Discovery Material that it believes in good faith contains legally protectable information in accordance with the Missouri Rules of Civil Procedure.  For purpose of this Order, the Party designating Discovery Materials as "CONFIDENTIAL" (the "Designating Party") bears the burden of establishing the confidentiality of all such Discovery Materials.  Any Party to this Action, and any third party, may designate as CONFIDENTIAL Discovery Material produced by another party or by a third party if that Discovery Material:  (i) either originated from the Designating Party or third party (or was generated on the Designating Party or third party's behalf), or (ii) contains the Designating Party's Confidential information,

2

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

in which case the Designating Party shall be deemed a Producing Party for purposes of this Order.  Failure to designate any Discovery Material as CONFIDENTIAL pursuant to this paragraph shall not constitute a waiver of any Party's right to make such designation at a later time.

a.    **Definition of "CONFIDENTIAL" Discovery Material.**  For purposes of this Order, any Producing Party may designate as "CONFIDENTIAL" any Discovery Material that it believes in good faith qualifies for protection under the  Missouri Rules of Civil Procedure, including Discovery Material (regardless of how generated, stored, or maintained) or tangible things that a Producing Party believes in good faith constitutes or embodies matter used by it in or pertaining to its business, which matter is not generally known and which the Producing Party would not normally reveal to third parties or would cause third parties to maintain in confidence, and any other information that would qualify as CONFIDENTIAL pursuant to the applicable legal standard.

All Discovery Material designated as CONFIDENTIAL shall be referred to in this Protective Order as "CONFIDENTIAL Discovery Material" and shall be handled in strict accordance with the terms of this Protective Order.   Any copies or reproductions, excerpts, summaries or other documents or media that contain CONFIDENTIAL Discovery Material as defined above shall also be treated as CONFIDENTIAL Discovery Material pursuant to this Order.   CONFIDENTIAL Discovery Material shall not include information that has been publicly disclosed by any Party prior to the date hereof, or that has been or is as of the date thereof generally available to the public, or that becomes generally available to the public after the date hereof other than as a result of disclosure by the Non-Designating Party.

5.    **MEANS    OF    DESIGNATING    CONFIDENTIAL    DISCOVERY**

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

**MATERIAL.** Discovery Material may be designated CONFIDENTIAL in the following ways:

a.     **Documents**.  A Producing Party shall, if appropriate, designate specific, hard copy and non-natively produced electronic documents as CONFIDENTIAL by marking the first page and each subsequent page of the produced copy or image of such document containing any Confidential information with the legend "CONFIDENTIAL." All documents produced or disclosed during discovery in this Action shall be identified by Bates number and, to the extent practical, the appropriate designation shall be placed near the Bates number.  The impracticality or inadvertent failure to designate each page of a document as CONFIDENTIAL pursuant to this paragraph shall not constitute a waiver of the confidential nature of the document or page(s).

b.     **Discovery Responses**.  A Producing Party shall, if appropriate, designate discovery responses, including but not limited to interrogatory answers and responses to requests for admissions, containing any Confidential information by placing the following legend on each page of the discovery responses containing Confidential information: "CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO A PROTECTIVE ORDER."

c.     **Depositions**.  In the case of depositions and the information contained in depositions (including exhibits), counsel for a Producing Party or witness shall designate portions of the transcript (including exhibits) which contain Confidential information as CONFIDENTIAL, as appropriate, by making a statement to that effect on the record at the deposition or by letter within 30 days of receipt of the final deposition transcript or copy thereof (or written notification that the transcript is available).

4

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Regardless of whether any confidentiality designations are made at or during a deposition, the entire deposition transcript (including exhibits) shall be treated as Confidential under this Order until the expiration of the 30-day period for designation. The following legend shall be placed on the front of all final versions of the original deposition transcript and each copy of the transcript containing Confidential information: "CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO A PROTECTIVE ORDER." If all or part of a videotaped deposition is designated as CONFIDENTIAL, the videocassette, other videotape container or DVD shall be labeled with the appropriate legend provided herein.

d.    **Computerized Material.** To the extent that information is produced in a form rendering it impractical to label (including electronically stored information), the Producing Party may designate such information as CONFIDENTIAL by cover letter or by affixing to the media containing the Confidential information a label containing the appropriate legend provided for in Paragraph 4 above. Whenever a Receiving Party reduces such computerized material designated as CONFIDENTIAL to hard-copy form, the Receiving Party shall mark the hard-copy form with the appropriate legend provided for herein. Whenever any Confidential computerized material is copied (into the same or into another form) the Receiving Party shall also mark those copies with the appropriate legend provided for herein.

e.    **Restricting Access.** To the extent that any Receiving Party or counsel for the Receiving Party creates, develops or otherwise establishes on any digital or analog machine-readable device, recording media, computers, discs, networks, or tapes, or maintains for review on any electronic system material that contains information

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

designated as CONFIDENTIAL, that Receiving Party and/or its counsel must take all reasonable and necessary steps to ensure that access to the electronic system and/or the media containing such information is properly restricted to those persons who, by the terms of this Order, may have access to Confidential information.

f.    **Inspections**.  Documents, materials, or other information to be inspected shall be treated as Confidential during inspection.   Such documents or other materials or information that are later duplicated by or for the Receiving Parties shall be stamped, if designated, "CONFIDENTIAL."

g.    **Expert Reports.**  In the case of reports created by an expert or consultant relying on or incorporating Confidential Discovery Material, in whole or in part, designation shall be made by the Party responsible for its creation by notation on the report.

h.    Any "CONFIDENTIAL" designation shall not in any manner cover up, overlap upon, obscure or otherwise conceal any text, picture, drawing, graph or other communication or depiction in the document.

6.    **GOOD-FAITH BELIEF.** The designation of any Discovery Material as "CONFIDENTIAL" pursuant to this Order shall constitute the verification of the Designating Party and its counsel that the material constitutes the identified level of confidential information as defined above. The Designating Party must take care to limit any such designation to specific material that constitutes the identified level of confidentiality as defined above. While blanket designation of documents as CONFIDENTIAL without regard to the specific contents of each document or piece of information should not occur, if a Party believes that a document(s) or portion thereof has been designated as CONFIDENTIAL that should not be, the Party believing it should be de-designated as described in Paragraph 9 herein shall meet and confer with the

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Producing Party regarding de-designation.

7.     If at any time prior to the trial of this Action, a Party realizes that previously undesignated Discovery Material should be designated as CONFIDENTIAL, the Party may so designate by advising all other parties in writing. The designated Discovery Material will thereafter be treated as CONFIDENTIAL, pursuant to this Order. Upon receipt of such designation in writing, the Parties and other persons subject to this Order shall take reasonable and appropriate action to notify any and all recipients of the Discovery Material about the protected status of the newly designated level of the Discovery Material and to retrieve the newly designated level of the Discovery Material from any person who is not permitted by this Order to have such CONFIDENTIAL Discovery Material.

8.     **"QUALIFIED PERSONS".**

a.     CONFIDENTIAL Discovery Material may be disclosed, summarized, described, or otherwise communicated or made available in whole or in part without written consent from the Producing Party only to the following persons:

i.     The Parties to the Litigation. In the case of Parties that are corporations or other business entities, for the purpose of qualified persons, "Party" shall mean only those employees who are reasonably necessary to participate in the prosecution or defense of this lawsuit;

ii.     Counsel of record for the Parties, including all attorneys of such counsel's law firms who are assisting in representing their respective client in the Action or New Jersey Action, as well as any other counsel and support personnel of such counsel who may be assisting counsel of record for the Parties in the action, and all clerks, employees, independent contractors, consultants, investigators, paralegals, assistants, secretaries, staff and stenographic, computer, audio-visual and clerical employees and agents thereof when operating under the supervision of such attorneys;

iii.     In-house counsel and any paralegal or support staff working for and directly reporting to such counsel for any Party;

iv.     Consulting or testifying experts, including associated personnel necessary to assist experts in the Action, provided that any such consulting or testifying experts execute the Acknowledgement and Consent Form ("Acknowledgement"), attached hereto as Exhibit A, prior to any disclosure

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

to such expert(s) or consultant(s), and that a copy of such signed Acknowledgement is retained by counsel who retained such an expert or consultant. Disclosure of CONFIDENTIAL Discovery Material to an expert or consultant shall not constitute a designation of the person as an expert whose opinions may be presented at trial. Discovery of consultants and experts will be taken, if at all, in accordance with the Missouri Rules of Civil Procedure;

v. Any potential, anticipated, or actual fact witness and his or her counsel, if separate from counsel of the parties, when such disclosure is reasonably necessary for the purpose of trial preparation, factual investigation, or discovery, provided that any such person execute the Acknowledgement prior to disclosure and a copy of such signed Acknowledgement is retained by counsel for the Party making the disclosure;

vi. The author, addressee, or recipient of the document or any other person who, from the face of the document, reviewed or had access to such document (not including a person who received the document solely in the course of litigation);

vii. The Court (including any appellate court), Court personnel, any other person designated by the Court in this Action or the New Jersey Action, and members of the jury;

viii. Stenographers or court reporters who record testimony taken at any time or place in the course of this Action or the New Jersey Action or persons operating video recording equipment of and at such testimony;

ix. Any mediator or third Party appointed by the Court or jointly selected by the parties for settlement purposes;

x. Litigation support services, including outside copying services, professional jury or trial consultants, mock jurors, or companies engaged in the business of supporting computerized or electronic discovery or trial preparation, retained by a Party or its counsel;

xi. Auditors and insurers of the Parties; and

xii. Any other person whose testimony may be aided by the review of such Confidential Information, provided that any such person execute the Acknowledgement prior to disclosure and a copy of such signed Acknowledgement is retained by counsel for the party making the disclosure, and any person as may be designated by written agreement by the producing Party or by order of the Court.

9. **CHALLENGING CONFIDENTIAL DESIGNATIONS.** No Party receiving Discovery Material designed as CONFIDENTIAL shall be under any obligation to object to the designation of any document at the time such designation is made or at any time thereafter. No Party shall, by failure to object, be found to have acquiesced or agreed to such designation or be

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

barred from objecting to such designation at any time. A Party or other person objecting to designation of any Discovery Material as CONFIDENTIAL shall give written notice to the Designating Party. Upon receipt of the written objection, counsel for the Designating Party shall, within 14 calendar days, provide a written response to the objecting Party explaining the basis for the designation; otherwise the document(s) or material(s) shall be deemed to be no longer CONFIDENTIAL without a Court order. The Parties and any other objecting person(s) shall meet and confer in good faith to attempt to resolve the dispute without resort to Court intervention. If the Objecting Party or person and the Designating Party cannot resolve their dispute through such meet and confer discussions, the Objecting Party, within 14 calendar days after the Designating Party serves its response to the objection notification, shall file and serve a motion to challenge confidentiality. The Designating Party has the burden of establishing that the Discovery Material is entitled to protection. Any Discovery Material so designated shall retain its level of confidentiality designation and shall be subject to all of the restrictions on its disclosure and use set forth in this Order until such time as the Court may determine otherwise. In the event the Court rules that the challenged Discovery Material is not CONFIDENTIAL, the Designating Party shall reproduce copies of the challenged Discovery Materials undesignated (or designation reduced) by the Court without the designated level of confidentiality label at the Designating Party's expense within 14 calendar days.

10.     **SUBPOENA FOR CONFIDENTIAL DISCOVERY MATERIAL.** If any Party has obtained CONFIDENTIAL Discovery Material under the terms of this Order and receives a request to produce such CONFIDENTIAL Discovery Material by subpoena or other compulsory process commanding the production of such CONFIDENTIAL Discovery Material, such Party shall promptly, and at least 14 calendar days before production, notify the Producing

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Party, including in such notice the date set for the production of such subpoenaed information.

11.      **FILING CONFIDENTIAL DISCOVERY MATERIAL/INFORMATION.** If a Party intends to file a document containing CONFIDENTIAL information with the Court, this Order grants leave to make such filing under seal in compliance with the Missouri Rules of Civil Procedure, the Local Rules of the Circuit Court of St. Louis County, and/or any electronic case filing procedures, instructions, or manuals.

12.      Nothing herein shall impose any restriction on the use or disclosure by a Party of its own information or of information that lawfully came into the possession of the Party independent of any disclosure of information in this Action.

13.      The inadvertent production of documents or information subject to the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity does not waive the privilege or immunity if the holder of the privilege or protection took reasonable steps to prevent the disclosure and a request for return of such documents or information is made promptly after the Producing Party learns of its inadvertent production.  Any dispute regarding whether the Producing Party has properly asserted the privilege or protection will be brought to the Court, if the Parties are not able to resolve it themselves.

14.      This Order shall be binding throughout and after final adjudication of this action, including, but not limited to, final adjudication of any appeals and petitions for extraordinary writs.  Nothing in this Order shall be construed to contradict any provision of law.

15.      **FINAL TERMINATION.** Upon final termination of this Action and the New Jersey Action, including any and all appeals, counsel for each Party shall return all CONFIDENTIAL Discovery Material to the Party that produced the information within 14 calendar days, including any copies, excerpts and summaries thereof, or shall destroy same at the

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

option of the Receiving Party, and shall purge all such information from all machine-readable media on which it resides. If the Receiving Party opts to destroy and/or purge such documents and information, a Certificate of Destruction shall be provided by the Receiving Party to the Producing Party. Notwithstanding the foregoing, counsel for each Party may retain all pleadings, briefs, memoranda, discovery responses, deposition transcripts, deposition exhibits, expert reports, motions, and other documents filed with the Court that refer to or incorporate Discovery Material designated as CONFIDENTIAL, and will continue to be bound by this Order with respect to all such retained information. Further, attorney work-product materials that contain information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work-product will continue to be bound by this Order with respect to all such retained information.

16.    **MODIFYING THIS ORDER.** Nothing in this Order shall be construed to prohibit the Parties from agreeing to modify any provision of this Order or seeking relief from the Court. Nor shall anything in this Order or any Party's compliance herewith be construed as a waiver of any Party's rights under applicable law, including but not limited to the right to contest the jurisdiction of the Court. The Court may modify the protective order in the interests of justice or for public policy reasons.

IT IS SO ORDERED, this the _____ day of _____, 2020.


_____
Hon. Mary Ott

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Dated: August __, 2020                                    Respectfully Submitted,

| THOMPSON COBURN LLP | LEWIS RICE LLC |
|---|---|
| BY: *(signature)* <br> Christopher M. Hohn, MO Bar # 44124 <br> David M. Mangian, MO Bar #61728 <br> One US Bank Plaza <br> St. Louis, Missouri 63101 <br> (314) 552-6000 <br> (314) 552-7000 (Facsimile) <br> Email: chohn@thompsoncoburn.com <br> Email: dmangian@thompsoncoburn.com <br><br> And <br><br> BRYAN CAVE LEIGHTON PAISNER LLP <br> A. Elizabeth Blackwell (MO BAR # 50270MO; *admitted pro hac vice*) <br> One Metropolitan Square <br> 211 North Broadway, Suite 3600 <br> St. Louis, Missouri 63102 <br> Tel : (314) 259-2000 <br> Fax : (314) 259-2020 <br> Liz.Blackwell@bclplaw.com <br><br> *Attorneys for Plaintiffs Monsanto Company, Pharmacia LLC f/k/a Monsanto and Solutia, Inc.* | John M. Hessel, #26408 <br> 600 Washington Avenue <br> Suite 2500 <br> St. Louis, Missouri 63101 <br> Telephone No.: (314) 444-7600 <br> Email: jhessel@lewisrice.com <br><br> And <br><br> PHILLIPS LYTLE LLP <br><br> BY: *(signature)* <br> Craig A. Leslie (admitted *pro hac vice*) <br> Ryan A. Lema (admitted *pro hac vice*) <br> 340 Madison Avenue <br> 17th Floor <br> New York, New York 10173-1922 <br> Telephone No. (2120 759-4888 <br> cleslie@phillipslytle.com <br> rlema@phillipslytle.com <br><br> *Attorneys for Defendant Magnetek, Inc.* |

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

**EXHIBIT A**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

MONSANTO COMPANY,              )
PHARMACIA, LLC, and               )
SOLUTIA, INC.                      )
                               )
      Plaintiffs,               )      Cause No.  17SL-CC03368
                               )
v.                           )
                               )
MAGNETEK, INC.                  )
                               )
      Defendant.             )

**ACKNOWLEDGEMENT AND CONSENT**

I, _____, declare under the penalty of

perjury that:

      My present address is _____.

I have received and read a copy of the Protective Order in the above-captioned litigation.  I will

hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will

use only for the purposes of this litigation any CONFIDENTIAL Discovery Material that is

disclosed to me.

      I agree to be bound by the Protective Order.  I also agree to submit to the jurisdiction of

the Circuit Court of St. Louis County, Missouri for the limited purpose of enforcement of the

Protective Order.


Date: _____      Signature: _____

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY,<br>PHARMACIA, LLC, and<br>SOLUTIA, INC. | ) ) ) | |
| Plaintiffs, | ) ) | Cause No.  17SL-CC03368 |
| v. | ) ) | |
| MAGNETEK, INC. | ) ) | |
| Defendant. | ) | |

## STIPULATED PROTECTIVE ORDER

Upon agreement of the parties to this action, for good cause, and in accordance with Missouri Supreme Court Rule 56.01(c), the Court enters the following Order (hereinafter "Order" or "Protective Order"), which shall govern the production, designation, use, handling, dissemination, filing, and other aspects of confidential, proprietary, or sensitive information produced in this action ("Action").

1.     **PARTIES TO THE PROTECTIVE ORDER.** This Order governs the Parties in the Action and any cases subsequently consolidated with the Action, and any person and/or third party who receives Confidential information pursuant to the terms of the Order.  All references to "Party", "Producing Party", or "Designating Party" throughout this order are intended to include non-parties.

2.     **SCOPE OF THE PROTECTIVE ORDER.** This Order governs the treatment of all documents and any other discovery produced in accordance with the Missouri Rules of Civil Procedure by a Party or Non-Party in the Action ("Discovery Material"), including the use of Confidential Discovery Material produced during discovery in the Action.

1

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

3.    **LIMITATION ON USE**.    Discovery Material may be used solely for the prosecution, defense, appeal, and/or settlement of the Action, and may be disclosed only under circumstances and to the persons specifically provided for in this or subsequent Court Orders, or with the prior written consent of the Producing Party with respect to specifically identified Discovery Material and may not be used for any other purpose, including but not limited to:

a.    The prosecution or defense of other actions not subject to this Protective Order;

b.    In any proceeding before or application to any governmental agency, except that the parties agree that Discovery Material may also be used in the prosecution, defense, appeal, and/or settlement of the Action brought by Magnetek, Inc. ("Magnetek") against Monsanto Company, Pharmacia, LLC, and Solutia, Inc. (collectively, "Monsanto") in the Superior Court of New Jersey, Law Division, Bergen County, Docket No.: BER-L-3362-17 (the "New Jersey Action") if that action is not dismissed upon Monsanto and Solutia's motions to dismiss and upon entry of a protective order in the New Jersey Action;

c.    In client solicitation or attorney advertising materials;

d.    Disclosure to media or competitors of parties to the Action; or

e.    Subject to the exception set forth in (a) above, any purpose other than the prosecution or defense of this Action.

4.    **CONFIDENTIAL DESIGNATIONS.** Any Producing Party may designate as "CONFIDENTIAL" any Discovery Material that it believes in good faith contains legally protectable information in accordance with the Missouri Rules of Civil Procedure. For purpose of this Order, the Party designating Discovery Materials as "CONFIDENTIAL" (the "Designating Party") bears the burden of establishing the confidentiality of all such Discovery Materials. Any Party to this Action, and any third party, may designate as CONFIDENTIAL Discovery Material produced by another party or by a third party if that Discovery Material:  (i) either originated from the Designating Party or third party (or was generated on the Designating Party or third party's behalf), or (ii) contains the Designating Party's Confidential information,

2

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

in which case the Designating Party shall be deemed a Producing Party for purposes of this Order. Failure to designate any Discovery Material as CONFIDENTIAL pursuant to this paragraph shall not constitute a waiver of any Party's right to make such designation at a later time.

a. **Definition of "CONFIDENTIAL" Discovery Material.** For purposes of this Order, any Producing Party may designate as "CONFIDENTIAL" any Discovery Material that it believes in good faith qualifies for protection under the Missouri Rules of Civil Procedure, including Discovery Material (regardless of how generated, stored, or maintained) or tangible things that a Producing Party believes in good faith constitutes or embodies matter used by it in or pertaining to its business, which matter is not generally known and which the Producing Party would not normally reveal to third parties or would cause third parties to maintain in confidence, and any other information that would qualify as CONFIDENTIAL pursuant to the applicable legal standard.

All Discovery Material designated as CONFIDENTIAL shall be referred to in this Protective Order as "CONFIDENTIAL Discovery Material" and shall be handled in strict accordance with the terms of this Protective Order. Any copies or reproductions, excerpts, summaries or other documents or media that contain CONFIDENTIAL Discovery Material as defined above shall also be treated as CONFIDENTIAL Discovery Material pursuant to this Order. CONFIDENTIAL Discovery Material shall not include information that has been publicly disclosed by any Party prior to the date hereof, or that has been or is as of the date thereof generally available to the public, or that becomes generally available to the public after the date hereof other than as a result of disclosure by the Non-Designating Party.

5. **MEANS OF DESIGNATING CONFIDENTIAL DISCOVERY**

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

**MATERIAL.** Discovery Material may be designated CONFIDENTIAL in the following ways:

a.      **Documents**.  A Producing Party shall, if appropriate, designate specific, hard copy and non-natively produced electronic documents as CONFIDENTIAL by marking the first page and each subsequent page of the produced copy or image of such document containing any Confidential information with the legend "CONFIDENTIAL." All documents produced or disclosed during discovery in this Action shall be identified by Bates number and, to the extent practical, the appropriate designation shall be placed near the Bates number.  The impracticality or inadvertent failure to designate each page of a document as CONFIDENTIAL pursuant to this paragraph shall not constitute a waiver of the confidential nature of the document or page(s).

b.      **Discovery Responses**.  A Producing Party shall, if appropriate, designate discovery responses, including but not limited to interrogatory answers and responses to requests for admissions, containing any Confidential information by placing the following legend on each page of the discovery responses containing Confidential information: "CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO A PROTECTIVE ORDER."

c.      **Depositions**.   In the case of depositions and the information contained in depositions (including exhibits), counsel for a Producing Party or witness shall designate portions of the transcript (including exhibits) which contain Confidential information as CONFIDENTIAL, as appropriate, by making a statement to that effect on the record at the deposition or by letter within 30 days of receipt of the final deposition transcript or copy thereof (or written notification that the transcript is available).

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Regardless of whether any confidentiality designations are made at or during a deposition, the entire deposition transcript (including exhibits) shall be treated as Confidential under this Order until the expiration of the 30-day period for designation. The following legend shall be placed on the front of all final versions of the original deposition transcript and each copy of the transcript containing Confidential information: "CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO A PROTECTIVE ORDER." If all or part of a videotaped deposition is designated as CONFIDENTIAL, the videocassette, other videotape container or DVD shall be labeled with the appropriate legend provided herein.

d.    **Computerized Material.**  To the extent that information is produced in a form rendering it impractical to label (including electronically stored information), the Producing Party may designate such information as CONFIDENTIAL by cover letter or by affixing to the media containing the Confidential information a label containing the appropriate legend provided for in Paragraph 4 above.  Whenever a Receiving Party reduces such computerized material designated as CONFIDENTIAL to hard-copy form, the Receiving Party shall mark the hard-copy form with the appropriate legend provided for herein.  Whenever any Confidential computerized material is copied (into the same or into another form) the Receiving Party shall also mark those copies with the appropriate legend provided for herein.

e.    **Restricting Access.**  To the extent that any Receiving Party or counsel for the Receiving Party creates, develops or otherwise establishes on any digital or analog machine-readable device, recording media, computers, discs, networks, or tapes, or maintains for review on any electronic system material that contains information

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

designated as CONFIDENTIAL, that Receiving Party and/or its counsel must take all reasonable and necessary steps to ensure that access to the electronic system and/or the media containing such information is properly restricted to those persons who, by the terms of this Order, may have access to Confidential information.

f.    **Inspections**.  Documents, materials, or other information to be inspected shall be treated as Confidential during inspection.   Such documents or other materials or information that are later duplicated by or for the Receiving Parties shall be stamped, if designated, "CONFIDENTIAL."

g.    **Expert Reports.**  In the case of reports created by an expert or consultant relying on or incorporating Confidential Discovery Material, in whole or in part, designation shall be made by the Party responsible for its creation by notation on the report.

h.    Any "CONFIDENTIAL" designation shall not in any manner cover up, overlap upon, obscure or otherwise conceal any text, picture, drawing, graph or other communication or depiction in the document.

6.    **GOOD-FAITH BELIEF.** The designation of any Discovery Material as "CONFIDENTIAL" pursuant to this Order shall constitute the verification of the Designating Party and its counsel that the material constitutes the identified level of confidential information as defined above. The Designating Party must take care to limit any such designation to specific material that constitutes the identified level of confidentiality as defined above. While blanket designation of documents as CONFIDENTIAL without regard to the specific contents of each document or piece of information should not occur, if a Party believes that a document(s) or portion thereof has been designated as CONFIDENTIAL that should not be, the Party believing it should be de-designated as described in Paragraph 9 herein shall meet and confer with the

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Producing Party regarding de-designation.

7.      If at any time prior to the trial of this Action, a Party realizes that previously undesignated Discovery Material should be designated as CONFIDENTIAL, the Party may so designate by advising all other parties in writing. The designated Discovery Material will thereafter be treated as CONFIDENTIAL, pursuant to this Order. Upon receipt of such designation in writing, the Parties and other persons subject to this Order shall take reasonable and appropriate action to notify any and all recipients of the Discovery Material about the protected status of the newly designated level of the Discovery Material and to retrieve the newly designated level of the Discovery Material from any person who is not permitted by this Order to have such CONFIDENTIAL Discovery Material.

8.      **"QUALIFIED PERSONS"**.

a.      CONFIDENTIAL Discovery Material may be disclosed, summarized, described, or otherwise communicated or made available in whole or in part without written consent from the Producing Party only to the following persons:

i.      The Parties to the Litigation. In the case of Parties that are corporations or other business entities, for the purpose of qualified persons, "Party" shall mean only those employees who are reasonably necessary to participate in the prosecution or defense of this lawsuit;

ii.     Counsel of record for the Parties, including all attorneys of such counsel's law firms who are assisting in representing their respective client in the Action or New Jersey Action, as well as any other counsel and support personnel of such counsel who may be assisting counsel of record for the Parties in the action, and all clerks, employees, independent contractors, consultants, investigators, paralegals, assistants, secretaries, staff and stenographic, computer, audio-visual and clerical employees and agents thereof when operating under the supervision of such attorneys;

iii.    In-house counsel and any paralegal or support staff working for and directly reporting to such counsel for any Party;

iv.     Consulting or testifying experts, including associated personnel necessary to assist experts in the Action, provided that any such consulting or testifying experts execute the Acknowledgement and Consent Form ("Acknowledgement"), attached hereto as Exhibit A, prior to any disclosure

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

to such expert(s) or consultant(s), and that a copy of such signed Acknowledgement is retained by counsel who retained such an expert or consultant. Disclosure of CONFIDENTIAL Discovery Material to an expert or consultant shall not constitute a designation of the person as an expert whose opinions may be presented at trial. Discovery of consultants and experts will be taken, if at all, in accordance with the Missouri Rules of Civil Procedure;

v.   Any potential, anticipated, or actual fact witness and his or her counsel, if separate from counsel of the parties, when such disclosure is reasonably necessary for the purpose of trial preparation, factual investigation, or discovery, provided that any such person execute the Acknowledgement prior to disclosure and a copy of such signed Acknowledgement is retained by counsel for the Party making the disclosure;

vi.   The author, addressee, or recipient of the document or any other person who, from the face of the document, reviewed or had access to such document (not including a person who received the document solely in the course of litigation);

vii.   The Court (including any appellate court), Court personnel, any other person designated by the Court in this Action or the New Jersey Action, and members of the jury;

viii.   Stenographers or court reporters who record testimony taken at any time or place in the course of this Action or the New Jersey Action or persons operating video recording equipment of and at such testimony;

ix.   Any mediator or third Party appointed by the Court or jointly selected by the parties for settlement purposes;

x.   Litigation support services, including outside copying services, professional jury or trial consultants, mock jurors, or companies engaged in the business of supporting computerized or electronic discovery or trial preparation, retained by a Party or its counsel;

xi.   Auditors and insurers of the Parties; and

xii.   Any other person whose testimony may be aided by the review of such Confidential Information, provided that any such person execute the Acknowledgement prior to disclosure and a copy of such signed Acknowledgement is retained by counsel for the party making the disclosure, and any person as may be designated by written agreement by the producing Party or by order of the Court.

9.   **CHALLENGING CONFIDENTIAL DESIGNATIONS.** No Party receiving

Discovery Material designed as CONFIDENTIAL shall be under any obligation to object to the

designation of any document at the time such designation is made or at any time thereafter. No

Party shall, by failure to object, be found to have acquiesced or agreed to such designation or be

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

barred from objecting to such designation at any time. A Party or other person objecting to designation of any Discovery Material as CONFIDENTIAL shall give written notice to the Designating Party. Upon receipt of the written objection, counsel for the Designating Party shall, within 14 calendar days, provide a written response to the objecting Party explaining the basis for the designation; otherwise the document(s) or material(s) shall be deemed to be no longer CONFIDENTIAL without a Court order. The Parties and any other objecting person(s) shall meet and confer in good faith to attempt to resolve the dispute without resort to Court intervention. If the Objecting Party or person and the Designating Party cannot resolve their dispute through such meet and confer discussions, the Objecting Party, within 14 calendar days after the Designating Party serves its response to the objection notification, shall file and serve a motion to challenge confidentiality. The Designating Party has the burden of establishing that the Discovery Material is entitled to protection. Any Discovery Material so designated shall retain its level of confidentiality designation and shall be subject to all of the restrictions on its disclosure and use set forth in this Order until such time as the Court may determine otherwise. In the event the Court rules that the challenged Discovery Material is not CONFIDENTIAL, the Designating Party shall reproduce copies of the challenged Discovery Materials undesignated (or designation reduced) by the Court without the designated level of confidentiality label at the Designating Party's expense within 14 calendar days.

10.    **SUBPOENA FOR CONFIDENTIAL DISCOVERY MATERIAL.** If any Party has obtained CONFIDENTIAL Discovery Material under the terms of this Order and receives a request to produce such CONFIDENTIAL Discovery Material by subpoena or other compulsory process commanding the production of such CONFIDENTIAL Discovery Material, such Party shall promptly, and at least 14 calendar days before production, notify the Producing

Exhibit A

Party, including in such notice the date set for the production of such subpoenaed information.

11.  **FILING CONFIDENTIAL DISCOVERY MATERIAL/INFORMATION.** If a Party intends to file a document containing CONFIDENTIAL information with the Court, this Order grants leave to make such filing under seal in compliance with the Missouri Rules of Civil Procedure, the Local Rules of the Circuit Court of St. Louis County, and/or any electronic case filing procedures, instructions, or manuals.

12.  Nothing herein shall impose any restriction on the use or disclosure by a Party of its own information or of information that lawfully came into the possession of the Party independent of any disclosure of information in this Action.

13.  The inadvertent production of documents or information subject to the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity does not waive the privilege or immunity if the holder of the privilege or protection took reasonable steps to prevent the disclosure and a request for return of such documents or information is made promptly after the Producing Party learns of its inadvertent production. Any dispute regarding whether the Producing Party has properly asserted the privilege or protection will be brought to the Court, if the Parties are not able to resolve it themselves.

14.  This Order shall be binding throughout and after final adjudication of this action, including, but not limited to, final adjudication of any appeals and petitions for extraordinary writs. Nothing in this Order shall be construed to contradict any provision of law.

15.  **FINAL TERMINATION.** Upon final termination of this Action and the New Jersey Action, including any and all appeals, counsel for each Party shall return all CONFIDENTIAL Discovery Material to the Party that produced the information within 14 calendar days, including any copies, excerpts and summaries thereof, or shall destroy same at the

10

Exhibit A

option of the Receiving Party, and shall purge all such information from all machine-readable media on which it resides.  If the Receiving Party opts to destroy and/or purge such documents and information, a Certificate of Destruction shall be provided by the Receiving Party to the Producing Party.  Notwithstanding the foregoing, counsel for each Party may retain all pleadings, briefs, memoranda, discovery responses, deposition transcripts, deposition exhibits, expert reports, motions, and other documents filed with the Court that refer to or incorporate Discovery Material designated as  CONFIDENTIAL, and will continue to be bound by this Order with respect to all such retained information. Further, attorney work-product materials that contain information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work-product will continue to be bound by this Order with respect to all such retained information.

16.    **MODIFYING THIS ORDER.**  Nothing in this Order shall be construed to prohibit the Parties from agreeing to modify any provision of this Order or seeking relief from the Court.  Nor shall anything in this Order or any Party's compliance herewith be construed as a waiver of any Party's rights under applicable law, including but not limited to the right to contest the jurisdiction of the Court.  The Court may modify the protective order in the interests of justice or for public policy reasons.

IT IS SO ORDERED, this the _____ day of _____, 2020.

**SO ORDERED:**

Judge                    Division 7
September 30, 2020

11

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

Dated: August __, 2020                                    Respectfully Submitted,

| THOMPSON COBURN LLP | LEWIS RICE LLC |
|---|---|
| BY: *[signature]* <br> Christopher M. Hohn, MO Bar # 44124 <br> David M. Mangian, MO Bar #61728 <br> One US Bank Plaza <br> St. Louis, Missouri 63101 <br> (314) 552-6000 <br> (314) 552-7000 (Facsimile) <br> Email:  chohn@thompsoncoburn.com <br> Email:  dmangian@thompsoncoburn.com <br><br> And <br><br> BRYAN CAVE LEIGHTON PAISNER LLP <br> A. Elizabeth Blackwell (MO BAR # 50270MO; *admitted pro hac vice*) <br> One Metropolitan Square <br> 211 North Broadway, Suite 3600 <br> St. Louis, Missouri  63102 <br> Tel : (314) 259-2000 <br> Fax : (314) 259-2020 <br> Liz.Blackwell@bclplaw.com <br><br> *Attorneys for Plaintiffs Monsanto Company, Pharmacia LLC f/k/a Monsanto and Solutia, Inc.* | John M. Hessel, #26408 <br> 600 Washington Avenue <br> Suite 2500 <br> St. Louis, Missouri 63101 <br> Telephone No.: (314) 444-7600 <br> Email:  jhessel@lewisrice.com <br><br> And <br><br> PHILLIPS LYTLE LLP <br><br> BY: *[signature]* <br> Craig A. Leslie (admitted *pro hac vice*) <br> Ryan A. Lema (admitted *pro hac vice*) <br> 340 Madison Avenue <br> 17th Floor <br> New York, New York 10173-1922 <br> Telephone No. (2120 759-4888 <br> cleslie@phillipslytle.com <br> rlema@phillipslytle.com <br><br> *Attorneys for Defendant Magnetek, Inc.* |

12

Exhibit A

Electronically Filed - St Louis County - September 22, 2020 - 10:50 AM

**EXHIBIT A**

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| PHARMACIA, LLC, and | ) | |
| SOLUTIA, INC. | ) | |
| | ) | |
|      Plaintiffs, | ) | Cause No.  17SL-CC03368 |
| | ) | |
| v. | ) | |
| | ) | |
| MAGNETEK, INC. | ) | |
| | ) | |
|      Defendant. | ) | |

**ACKNOWLEDGEMENT AND CONSENT**

I, _____, declare under the penalty of

perjury that:

     My present address is _____.

I have received and read a copy of the Protective Order in the above-captioned litigation.  I will

hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will

use only for the purposes of this litigation any CONFIDENTIAL Discovery Material that is

disclosed to me.

     I agree to be bound by the Protective Order.  I also agree to submit to the jurisdiction of

the Circuit Court of St. Louis County, Missouri for the limited purpose of enforcement of the

Protective Order.


Date: _____    Signature: _____


13

Exhibit A

JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY CIRCUIT COURT
105 SOUTH CENTRAL AVENUE
CLAYTON, MISSOURI  63105 -1766

SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

CASE NUMBER: 17SL-CC03368
 MONSANTO COMPANY
VS

COURT DATE: AUGUST 9, 2022
COURT TIME: 08:30 AM
DIVISION: RM. 382 NORTH, DIV 2

 MAGNETEK, INC.

THE ABOVE CAUSE IS SET FOR A SETTLEMENT CONFERENCE AT THE DATE, TIME AND DIVISION INDICATED ABOVE.  THE CASE MUST BE READY FOR TRIAL.  TRIAL LAWYERS AND CLIENTS MUST BE PRESENT.  FAILURE TO APPEAR AS DIRECTED MAY RESULT IN THE IMPOSITION OF SANCTIONS.

JOAN M. GILMER, CIRCUIT CLERK
June 28, 2022



17SL-CC03368      RM. 382 NORTH, DIV 2