UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:23-CV-00204-HEA |
| MAGNETEK, INC., et al., | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND**

**INTRODUCTION**

The Court should promptly remand this action because, first and foremost, Defendant General Electric Co.'s ("GE") removal was untimely. Under well-established federal law, GE was required to file its Notice of Removal within 30 days from the date it waived service of process. GE executed a written Acknowledgement and Waiver of Service of Process (the "Acknowledgement and Waiver") on January 5, 2023, which Monsanto[1] filed with the Circuit Court of St. Louis County, Missouri on January 6, 2023. Based on this written waiver, GE had until February 6, 2023 to file its Notice of Removal. GE did not file its Notice of Removal until February 20, 2023, apparently on the mistaken belief that the parties' agreement regarding the time for responsive pleadings in state court controls the timing of removal under federal law. It does not. Because GE did not file its Notice of Removal within the required 30-day window, its removal is untimely, and this case must be remanded.

---

[1] For ease of reference, Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. are sometimes collectively referred to as "Monsanto" in this brief.

Given GE's untimely removal, this Court does not need to address GE's basis for removal, the federal officer doctrine, but if it does, the Court should apply that doctrine consistently with the prior precedent within the district and remand this case. In other cases, Monsanto has attempted to establish removal jurisdiction in this Court for lawsuits involving polychlorinated biphenyls ("PCBs") pursuant to the federal officer doctrine. The three different judges in this district who reviewed those removals each found the evidence presented by Monsanto was insufficient to establish the "acted under" and "causal connection" elements of federal officer removal jurisdiction. *See Kelly v. Monsanto Co.*, Case No. 15-CV-1825, 2016 WL 3543050, at \*9-\*11 (E.D. Mo. June 29, 2016) (Bodenhausen, J.); *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 869-70 (E.D. Mo. 2016) (Fleissig, J.); *Burford v. Monsanto Co.*, Case No. 16CV536, 2017 WL 1315800, at \*5-\*6 (E.D. Mo. Apr. 10, 2017) (Cohen, J.). Despite this clear precedent, GE does not reference, discuss, or attempt to distinguish those decisions of this Court in its Notice of Removal.

Whether rightly or wrongly decided, the *Kelly*, *Bailey*, and *Burford* decisions should control the result here where GE relies on the same, or less substantial, evidence than Monsanto did to attempt to establish the "acted under" and "causal connection" elements of federal office removal. Any other result would be internally inconsistent and unjust to Monsanto, which is seeking, *inter alia*, to enforce GE's defense and indemnity obligations in multiple PCB lawsuits, including *Kelly*, *Bailey*, and *Burford*.

## BACKGROUND

This case is about holding Defendants[2] accountable under contracts they signed for their use, sale, and release of PCBs. PCBs are a group of man-made organic chemicals that Pharmacia, LLC, f/k/a Monsanto Company ("Old Monsanto") manufactured and sold in bulk to Defendants and others from 1935 to 1977 under the trade name Aroclor. FAP, (ECF #4), ¶¶ 4, 20-21, 24. Because PCBs are extremely stable, chemically inert, resistant to heat and fire, and highly electrically resistive, they were used by Defendants as a dielectric fluid in many types of electrical equipment, including capacitors and transformers. *Id.*, ¶¶ 22, 26. GE pioneered the use of PCBs in electrical equipment and was one of the largest purchasers and users of PCBs. *Id.*, ¶¶ 23, 52. Records provided to Monsanto by GE reflect that between 1956 and 1977, GE purchased more than 200 million pounds of PCBs from Old Monsanto. *See* Ex. 1 (Summary of Reported Shipments of PCB Products To General Electric 1956-1977).

By November 1971, Old Monsanto had made the decision to phase out sales for all remaining non-electrical applications of PCBs due to growing environmental concerns surrounding PCBs. FAP, (ECF #4), ¶ 49. Old Monsanto agreed to continue supplying PCBs for closed electrical applications until suitable alternatives became available, but only if its customers would agree to defend and indemnify Old Monsanto against future PCB-related claims. *Id.* In 1972, Defendants each entered into substantially similar agreements titled "Special Undertakings by Purchasers of Polychlorinated Biphenyls," which require them to "defend, indemnify and hold harmless [Old Monsanto], its present, past and future directors, officers, employees and agents, from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and

---

[2] The defendants—GE, Magnetek Inc., Paramount Global, Kyocera AVX Components Corporation, Cornell Dubilier Electronics Inc., and the Gillette Company LLC—or their predecessors-in-interest are six of the largest purchasers of PCBs from Old Monsanto between 1972-1977. First Amended Petition ("FAP"), (ECF #4), ¶ 4.

expenses arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of [] PCB's . . . whether alone or in combination with other substances" (the "Special Undertakings"). *Id.*, ¶¶ 50, 54-103; *see also* Ex. 2 to FAP, (ECF #4-2) (GE Special Undertaking Agreement). GE purchased 59.9 million pounds of PCBs between 1972 and 1977. FAP, (ECF #4), ¶ 52.

Since Defendants entered into the Special Undertakings, Monsanto has been sued hundreds of times by plaintiffs seeking to impose liability on Monsanto for injuries or damages allegedly caused by the release of PCBs into the environment or other exposures to PCBs. *Id.*, ¶ 167. These PCB lawsuits have resulted in billions of dollars of liability (defense costs, judgments, and settlements) for Monsanto. In or around 2015, Monsanto began tendering the defense of these PCB cases to GE and demanding that GE indemnify Monsanto pursuant to the Special Undertaking. *Id.*, ¶ 211. Monsanto made similar tenders and demands to the other five Defendants starting in August 2016. *Id.*, ¶¶ 205, 216, 221, 225, 229. GE and other Defendants rejected Monsanto's tenders and demands. *Id.*, ¶¶ 206, 212, 217, 222, 226. So, on August 3, 2022, Monsanto filed the First Amended Petition[3] in the Circuit Court of St. Louis County, Missouri, asserting claims against GE and the five other Defendants for breach of contract, negligence, declaratory judgment, and equitable contribution. *See generally id.*

Monsanto did not immediately serve GE with the lawsuit because of ongoing discussions between the parties regarding informal dispute resolution. Instead, Monsanto sent GE's counsel a copy of the FAP by email and worked out an agreement wherein GE agreed to waive formal service of process in exchange for Monsanto's agreement to extend the time for GE to file a response to

---

[3] The FAP is the initial pleading alleging claims against GE. Monsanto's original petition, filed on September 1, 2017, only named Magnetek as a defendant.

the FAP. *See* Ex. 2 (correspondence dated October 3, 2022). On January 5, 2023, GE's Missouri counsel, Peter Herzog, signed the Acknowledgement and Waiver on behalf of GE, which his colleague then emailed to Monsanto's counsel. *See* Ex. 3 (correspondence and executed Acknowledgement and Waiver). Monsanto's counsel filed the Acknowledgement and Waiver with the Circuit Court of St. Louis County on January 6, 2023. Ex. 4 (Notice of Waiver filed with Circuit Court of St. Louis County). GE filed its Notice of Removal with this Court 45 days later on February 20, 2023. *See* Notice of Removal, (ECF #1).

## ARGUMENT

**I.   The Court Should Remand This Case Because GE's Removal Is Untimely Under 28 U.S.C. § 1446(b)(1).**

The timing requirements for removal are well-established and cannot be modified or extended. Under 28 U.S.C. § 1446, GE was required to file its Notice of Removal "within 30 days after the receipt by [GE], through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). The 30-day time period in Section 1446(b)(1) begins to run when a defendant is properly served *or* when a defendant waives service. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999);[4] *Branch Banking & Tr. Co. v. Hunt*, No. 4:14-CV-4352-BHH, 2015 WL 2173047, at *3 (D.S.C. May 8, 2015) (collecting cases for proposition that "removal period for a defendant does not begin to run until that defendant is properly served or ***until that defendant***

---

[4] The Supreme Court's interpretation of Section 1446(b)(1) in *Murphy Bros.* was based on the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, 526 U.S. at 347. Although *Murphy Bros.* did not involve a waiver of service, the Supreme Court made clear that a waiver of service would have the same effect as formal service of process. *See id.* at 350-51 ("In the absence of service of process (***or waiver of service by the defendant***), a court ordinarily may not exercise power over a party the complaint names as defendant . . . . ***Unless a named defendant agrees to waive service***, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.") (emphasis added).

*waives service*.") (emphasis added).  GE did not file its Notice of Removal within the 30-day time period provided by Section 1446(b)(1).

The facts relating to GE's waiver of service cannot be disputed.  Plaintiffs filed the FAP on August 3, 2022 (*see* ECF #1-5 at 8) and provided a copy to GE's counsel via email on October 3, 2022.  On January 5, 2023, GE's counsel, Peter Herzog, executed the Acknowledgement and Waiver on behalf of GE.  Ex. 3 at 6.  In the Acknowledgement and Waiver, Mr. Herzog states that he (1) is "counsel for Defendant General Electric Co.;" (2) is "authorized to waive formal service of process on behalf of General Electric in this matter;" (3) hereby ***"waive[s] the necessity of personal service of process under Missouri Supreme Court Rule 54.13(c) on behalf of General Electric for this matter***;" and (4) "waive[s] any and all objections to the form, time, and sufficient of service of process as well as the defenses of insufficiency of process . . . and insufficient of service of process . . . for this matter."  Ex. 3 at 6 (emphasis added).  Monsanto filed the Acknowledgement and Waiver in state court on January 6, 2023.  Ex. 4 at 8-9.

The 30-day period for GE to remove this case thus began at the latest on January 6, 2023, when Monsanto filed the Acknowledgement and Waiver.  *Id.*  In Missouri, "a waiver of service is 'deemed as valid as service' when a 'defendant' waives service in writing."  *Tillman v. BNSF Ry. Co.*, No. 1:20 CV 00178 SNLJ, 2021 WL 842600, at *4 (E.D. Mo. Mar. 5, 2021) (quoting RSMo 506.150.2); Mo. Sup. Ct. R. 54.13(c) (acknowledgement and waiver of service "shall be deemed as valid as service in the manner provided by law."); *see also Barner v. Thompson/Ctr. Arms Co. Inc.*, 796 F.3d 897, 900 (8th Cir. 2015) (noting state law governs sufficiency of service for removal purposes).  At the latest, a written waiver of service "speaks from the time of its filing."  *Shields v. Shields*, 387 S.W.2d 242, 244 (Mo. App. 1965) (enforcing previously executed appearance and

waiver of service from date of filing); *Gardner v. Gilbirds*, 106 S.W.2d 970, 971 (Mo. App. 1937) (same); *see also* Mo. Sup. Ct. R. 54.20 (requiring proof of service).[5]

GE's removal is untimely because the Notice of Removal wasn't filed within 30 days of January 6, 2023.  Regardless of whether GE waived service on January 5 or 6, 2023, the removal deadline was February 6, 2023.  *See* 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1)(C) (when last day of time period is Saturday or Sunday, deadline extended to following business day); *Young v. Mayor of City of St. Louis*, No. 4:21-CV-776 RLW, 2021 WL 5769345, at *2 (E.D. Mo. Dec. 6, 2021) (applying Fed. R. Civ. P. 6 to 28 U.S.C. § 1446).  GE did not file its Notice of Removal until February 20, 2023—**45 days after** Monsanto filed the Acknowledgement and Waiver.  *See* Notice of Removal, (ECF #1).

This Court's decision in *Harris v. Monumental Life Ins. Co.*, No. 4:05-CV-2280 CAS, 2006 WL 1663510, at *3 (E.D. Mo. June 15, 2006) (Shaw, J.) is on point.  There, the plaintiff moved to remand arguing that the defendants' removal was untimely under Section 1446(b)(1) because it was filed more than 30-days after the defendant had agreed to waive service.  *Id.* at *1.  The plaintiff argued that counsel for the defendant had agreed with counsel for the plaintiff that "formal service of the summons and petition was unnecessary and [the defendant's counsel] would accept service by mail on behalf of [the defendant]."  *Id*.  This Court found that the statement by the defendant's counsel regarding service was sufficient to "waive[] [the defendant's] right to formal service of process, for purposes of removal," and therefore, the defendant "failed to remove this action in a timely manner under 28 U.S.C. § 1446(b)."  *Id.* at *3.  The argument for remand is

---

[5] Mr. Herzog is a licensed Missouri lawyer.  Accordingly, the Acknowledgement and Waiver, which seeks court approval of the parties' agreement to extend the responsive pleading deadline, is also an appearance by GE, which is sufficient to waive service under Missouri law.  *KNT Mgmt., LLC v. Flenoid*, 419 S.W.3d 897, 900 (Mo. App. 2014) (if a party takes any act "that recognizes the case as being in court, this amounts to a general appearance"); *see also Germanese v. Champlin,* 540 S.W.2d 109, 112 (Mo. App. 1976) (request for a delay in placing case on court's docket constitutes general appearance and waives challenges regarding proper service).

stronger here than it was in *Harris* because the defendant in *Harris* did not execute a written waiver agreement, whereas counsel for General Electric (who is licensed in Missouri) signed the Acknowledgement and Waiver on behalf of his client and the waiver agreement was filed with the state court on January 6, 2023. *See id.* at *3 (waiver of service supported by affidavit from the plaintiff's counsel and statement in the defendant's notice of removal); *see also* Exs. 3-4 (executed Acknowledgement and Waiver).

Finally, the Court should reject any argument by General Electric that its removal is timely because it filed its Notice of Removal "within 30 days after service." *See* Notice of Removal, (ECF #1), ¶ 6. The portion of the Acknowledgment and Waiver cited by General Electric to support this assertion in its Notice of Removal relates to the parties' agreement as to when service will be deemed effective for purposes of extending General Electric's time to respond to the FAP in state court. *See* Ex. 4 at 7. It is well-established that the time for removal under Section 1446(b)(1) cannot be extended by agreement of the parties or a stipulation filed in state court. *See Rampy v. Sw. Bell Tel. Co.,* 615 F. Supp. 996, 999 (W.D. Mo. 1985) ("It is clear that the time provided for removal in Section 1446(b) could not be extended by any stipulation filed in State court."); *Hinz v. Swisher Hygiene USA Operations, Inc.*, No. 4:13-CV-1183 JAR, 2014 WL 520457, at *1-*2 (E.D. Mo. Feb. 7, 2014) (holding "[t]he time limit is mandatory" and rejecting argument that parties' extension of responsive pleading deadline extended removal period) (quoting *Pender v. Bell Asbestos Mines, Ltd.*, 145 F. Supp. 2d 1107, 1110 (E.D. Mo. 2001)); *see also Vertex Energy Operating, LLC v. Penthol LLC*, No. 4:20-CV-3901, 2021 WL 4538484, at *1-*3 (S.D. Tex. Jan. 29, 2021) (rejecting argument that Rule 11 agreement to extend time to plead in state court also extended the removal deadline in federal court). In short, Monsanto's agreement

to extend General Electric's responsive pleading deadline in state court did not extend, and could not have extended, General Electric's time for removal under 28 U.S.C. § 1446(b)(1).

**II.    The Court Should Remand This Case Because It Lacks Jurisdiction Under The Federal Officer Doctrine Pursuant To This Court's Prior Decisions.**

This Court has ruled on three separate occasions—in *Kelly*, *Bailey*, and *Burford*—that Monsanto cannot establish removal jurisdiction for PCB cases under Section 1442(a). *See Kelly*, 2016 WL 3543050, at *9-*11; *Bailey*, 176 F. Supp. 3d at 869-70; *Burford*, 2017 WL 1315800, at *5-*6. Whether correctly decided or not, those three decisions are on point and should foreclose GE's attempt to remove this case, which seeks defense and indemnity for *Kelly*, *Bailey*, and *Burford* and other similar PCB lawsuits. In short, GE should not be able to remove this case under Section 1442(a) on the basis that it sold PCBs or PCB-containing equipment to the federal government, when Plaintiffs were unable to remove *Kelly*, *Bailey*, and *Burford* on the same basis and with even stronger evidence.

**A.    The Requirements For Federal Officer Removal.**

"The federal officer removal statute permits a defendant to remove to federal court a state-court action brought against the 'United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . .'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007) (quoting 28 U.S.C. § 1442(a)(1)) (italics in original). "When the removing party is not itself a federal officer or agency, as in this case, § 1442(a)(1) 'permits removal only if [GE], in carrying out the acts that are the subject of [Plaintiffs' First Amended Petition], was acting under any agency or officer of the United States.'" *Graves v. 3M Co.*, 17 F. 4th 764, 768 (8th Cir. 2021) (quoting *Watson*, 551 U.S. at 147). Thus, GE must establish that: (1) it "has acted under the direction of a federal officer, (2) there was a causal connection between

[its] actions and the official authority, (3) [GE] has a colorable federal defense to the plaintiffs' claims, and (4) [GE] is a 'person,' within the meaning of the statute" *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) *abrogated on other grounds by Buljic v. Tyson Foods, Inc.*, 22 F. 4th 730, 742 (8th Cir. 2021).

    **B.**    **This Court Should Apply *Kelly*, *Bailey*, And *Burford* To Remand This Case Because GE Relies on the Same Arguments and the Same or Lesser Evidence than Monsanto.**

GE's arguments for removal jurisdiction over this case are nearly identical to those made by Monsanto in *Kelly*, *Bailey*, and *Burford*. In those cases, Monsanto argued removal was proper under Section 1442(a) because Monsanto manufactured and sold PCBs at the express direction, supervision, and command of the federal government.[6] Here, GE argues it is entitled to remove under Section 1442(a) because it sold PCBs and PCB-containing products (capacitors and transformers) to the federal government and did so under the supervision and control of the federal government. *See* Notice of Removal, (ECF #1), ¶¶ 19-33. Similar to what Monsanto relied on, GE relies on invoices showing sales of PCBs to the federal government,[7] the Interdepartmental

---

[6] *See Kelly*, 2016 WL 3543050, at *5 ("Old Monsanto manufactured PCBs directly for use by the federal government to meet the nation's military needs and to maintain the safety of the nation's power grid, and federal OSHA regulations required their use."); *Bailey*, 176 F. Supp. 3d at 862 ("Old Monsanto manufactured PCBs directly for use by the federal government, an executive branch task force determined their use was "necessary" to maintain the safety of the nation's power grid, federal OSHA regulations required their use, and Congress passed legislation expressly permitting their manufacture through 1979"); *Id.* at 864 ("[I]n 1972, the federal government directed Old Monsanto, pursuant to the Defense Production Act of 1950, to sell 3,000 pounds of PCBs to one military contractor, and in 1974 to sell three 55 gallon drums to another military contractor."); *Burford*, 2017 WL 1315800, at *2 (Monsanto argued "(1) Pharmacia produced PCBs for direct sale to the federal government; and (2) the federal government exercised control over Pharmacia's production of PCBs for military use").

[7] Notably, GE has not attached any invoices showing that GE sold PCBs or PCBs containing equipment to the federal government. The invoices General Electric relies on are *Monsanto* records and invoices demonstrating that *Monsanto*, not General Electric, sold and shipped PCB formulations to government entities. *See* Ex. M to Notice of Removal, (ECF #1-21) (Monsanto sales records to government); Ex. N to Notice of Removal, (ECF #1-22) (invoice on Monsanto letterhead demonstrating Old Monsanto directly shipped and billed the Navy for a PCB formulation); Ex. O to Notice of Removal, (ECF #1-23) (invoice identifying Monsanto as the government "contractor"). Other records GE attaches to its Notice of Removal fail to demonstrate that it directly sold PCB-containing equipment to the federal government. *See, e.g.*, Ex. G to Notice of Removal, (ECF #1-15) (Database of Transformers Containing Polychlorinated Biphenyls which lists government-owned transformers, but fails to identify the manufacturer or party who sold the transformers

Task Force Report on PCBs, and other regulations and procurement specifications requiring the use of PCBs (e.g., the National Electric Code). *Compare Kelly*, 2016 WL 3543050, at *3, *5; *Bailey*, 176 F. Supp. 3d at 859, 862; *Burford*, 2017 WL 1315800, at *1, *with* Ex. B to Notice of Removal (ECF #1-2), (Polychlorinated Biphenyls and the Environment, Interdepartmental Task Force Report on PCBs); Ex. T to Notice of Removal, (ECF #1-28) (National Electrical Code 1971). And like Monsanto, GE also relies on the government contractor defense and federal preemption to satisfy the colorable federal defense element. *Compare Kelly*, 2016 WL 3543050, at *11; *Bailey*, 176 F. Supp. 3d at 870; *Burford*, 2017 WL 1315800, at *1, *with* Notice of Removal, (ECF #1), ¶¶ 40 – 46.

In *Bailey*, *Kelly*, and *Burford*, the court found the evidence and arguments made by Monsanto to be insufficient to support removal under Section 1442(a). In *Bailey*, the court found that Monsanto's evidence satisfied the "acting under" requirement "with respect to the PCBs that Old Monsanto sold directly to the government, or to others at the direction of the government," but did not meet the "causal connection requirement" because the amount of PCBs Monsanto sold to the government "is simply too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiff's claims." *Bailey*, 176 F. Supp. 3d at 870. The court also found that Monsanto had "not maintained that the [PCB] manufacturing process itself was in any way supervised or controlled by the government." *Id.* The result in *Kelly* is very similar to *Bailey*. *See Kelly*, 2016 WL 3543050, at *9-*11. In *Burford*, the court found that Monsanto's evidence was insufficient to meet either the "acting under" or "causal connection" elements for federal officer removal. *See Burford*, 2017 WL 1315800, at *3-*6.

---

to the federal government); Ex. I to Notice of Removal, (ECF #1-17) (August 1994 Government Accounting Office Report, which fails to identify GE as manufacturer of PCB-containing transformers).

The Court should apply the same standard for federal officer removal to GE that it did to Monsanto in *Bailey*, *Kelly*, and *Burford*. For example, like Monsanto, GE relies on the Interdepartmental Task Force Report (Notice of Removal (ECF #1), ¶ 29), various codes, standards, and regulations (e.g., the National Electric Code) that required or encouraged use of PCBs and PCB-containing equipment in many applications (*id.*, ¶¶ 30-31), and generic government procurement specifications concerning the purchase of PCBs and materials containing PCBs (*id.*, ¶ 32) to try to satisfy the "acted under" element. The court in *Burford* found such evidence fails to demonstrate "that the government supervised or controlled the [PCB] manufacturing process," "that Pharmacia [Old Monsanto] produced the PCBs to the government's detailed specifications," or "that the government compelled Pharmacia [Old Monsanto] to produce PCBs under threat of criminal sanction." *Burford*, 2017 WL 1315800, at *4.[8] If the evidence cited by GE is insufficient for this Court to find sufficient government control over the manufacture and sale of PCBs by Monsanto, it should not be deemed sufficient to establish that GE "acted under" a federal officer when it sold PCBs manufactured by Monsanto or PCB-containing equipment (especially when GE has failed to provide any proof of direct government sales).

Furthermore, the "causal connection" element should be dispositive as to GE's position on removal jurisdiction, as it was to Monsanto's. The *Kelly*, *Bailey*, and *Burford* decisions hold that Monsanto's sales to the federal government were *de minimis* and therefore "simply too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiffs' claims." *Bailey*, 176 F. Supp. 3d at 870; *see also Kelly*, 2016 WL

---

[8] *See also Kelly*, 2016 WL 3543050, at *9 ("Furthermore, the evidence does not show that the manufacturing process was supervised or controlled by the government. . . . Likewise, Defendants have failed to show that the PCBs were produced to the detailed specifications of the government or that Old Monsanto was compelled to produce the PCBs under threat of criminal sanction."); *Bailey*, 176 F. Supp. 3d at 870 ("Defendants have not maintained that the manufacturing process itself was in any way supervised or controlled by the government.").

3543050, at *9; *Burford*, 2017 WL 1315800, at *6.  The "illustrative examples" of GE's purported sales of PCBs to the federal government in the Notice of Removal are far fewer by both amount and percentage of total PCB volume than those found to be *de minimis* and insufficient to support removal jurisdiction in *Kelly*, *Bailey*, and *Burford*.  *Compare* Notice of Removal, (ECF #1), ¶¶ 22, 27 (asserting GE sold approximately 15,000 pounds of PCBs to government over three-year period), *with Kelly*, 2016 WL 3543050, at *9 n.15 (finding 282,000 pounds of PCBs (or 0.024 percent of all PCBs Monsanto ever manufactured) to the Government insufficient); *Bailey*, 176 F. Supp. 3d at 870; *Burford*, 2017 WL 1315800, at *5-*6.  Indeed, even if the Court were to assume that all of GE's "illustrative examples" actually represent direct sales to the government by GE (as opposed to sales by Monsanto (*see* n.7, *supra*)), those purported sales represent only 0.0074% of the total PCBs GE purchased from Monsanto between 1956 and 1977.  *See* Ex. 1 (showing General Electric purchased at least 204,600,000 pounds of PCBs from Monsanto between 1956 and 1977).  GE cannot satisfy the "causal connection" element based on its "illustrative examples" in light of *Kelly*, *Bailey*, and *Burford*.

To conclude, although Monsanto respectfully disagrees with the findings and holdings in *Kelly*, *Bailey*, and *Burford*, those decisions represent a unified view of the law in this district and should be applied to GE's removal in this case.  GE relies on less evidence than Monsanto did to meet the "acted under" and "causal connection" elements for federal officer removal.  Accordingly, to the extent the Court finds GE's removal timely (it is not), the Court should apply the same reasoning and analysis used in *Kelly*, *Bailey*, and *Burford* and remand this case back to the Circuit Court of St. Louis County.  Any other result would be unjust to Monsanto, especially

in light of the fact that *Kelly*, *Bailey*, and *Burford* are cases for which Monsanto is seeking defense and indemnity from GE in this case.[9]

## CONCLUSION

For the foregoing reasons, Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. respectfully request that the Court grant their Motion to Remand and remand this case back to the Circuit Court of St. Louis County, Missouri.

Respectfully Submitted,

THOMPSON COBURN LLP

By: */s/ Christopher M. Hohn*
    Christopher M. Hohn #44124
    Nicholas J. Lamb #33486
    David M. Mangian #61728
    Nicholas Schnell #73932
    Brittney K. Mollman #65745
    One U.S. Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000 (Telephone)
    (314) 552-7000 (Facsimile)
    chohn@thompsoncoburn.com
    nlamb@thompsoncoburn.com
    dmangian@thompsoncoburn.com
    nschnell@thompsoncoburn.com
    bmollman@thompsoncoburn.com

---

[9] The *Kelly*, *Bailey*, and *Burford* decisions did not reach the colorable federal defense element for federal officer removal, and it is not necessary for the Court to do so here either. That said, Monsanto acknowledges that preemption is an affirmative defense, but not one that provides a basis for removal.

- 15 -

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing has been filed with the Court for service on all counsel of record via the Court's CM/ECF system on March 21, 2023.

<em>/s/ Christopher M. Hohn</em>