# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, <br> PHARMACIA, LLC, AND SOLUTIA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MAGNETEK, INC., <br> GENERAL ELECTRIC CO., <br> PARAMOUNT GLOBAL, <br> KYOCERA AVX COMPONENTS, <br> CORNELL DUBILIER ELECTRONICS, INC., <br> and THE GILLETTE COMPANY, LLC, <br><br> Defendants. | CASE NO. 4:23-cv-00204-HEA |

**DEFENDANT GENERAL ELECTRIC COMPANY'S COMBINED OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CONDUCT JURISDICTIONAL DISCOVERY**

# **INTRODUCTION**

The Court should deny Plaintiffs' remand motion because it is based on two erroneous arguments, both of which contradict their earlier statements and positions. First, Plaintiffs' untimeliness argument contradicts the plain language of the Acknowledgement of service that they drafted. More specifically, Plaintiffs agreed that the effective service date of their Petition was January 31, 2023, but now argue that somehow the removal clock was ticking ***before*** service. Second, Plaintiffs ***admit*** that federal jurisdiction exists, and that this case is removable, but then argue that permitting removal here would be "unjust" because Plaintiffs lost superficially similar arguments in the past.

Plaintiffs are wrong on both counts. GE's Notice of Removal, filed February 20, 2023, was timely because it was filed within 30 days of the agreed service date. Plaintiffs' timing argument belies the plain language of the parties' agreement, the relevant law, and common sense. And GE meets the requirements for federal officer removal because the relationship between GE's sale of PCB-containing products and federal government oversight was direct and significant. Earlier cases against Plaintiffs have been remanded because the relationship between ***their*** sale of PCBs and federal government oversight was different, and far less substantial. Consequently, Plaintiffs' attempted reliance on their own unsuccessful removals in *Bailey*, *Kelly*, and *Burford* is misplaced. The Court should deny Plaintiffs' remand motion. If, however, the Court is inclined to allow remand, at minimum the Court should allow GE to conduct limited jurisdictional discovery of Plaintiffs and the federal government, to further show additional evidence in support of the Court's federal officer jurisdiction.

1

**LEGAL STANDARD**

Unlike the general removal statute, the federal officer removal statute is "liberally construed" in favor of a federal forum. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n*, 790 F.3d 457, 466-67 (3d Cir. 2015). Thus, although the presumption under the general removal statute favors remand, the federal officer removal statute favors removal. *See In re Asbestos Prods. Liab. Litig.*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011).

GE must establish four elements to remove under § 1442(a)(l): (1) GE "acted under the direction of a federal officer"; (2) "there was a causal connection between [GE's] actions and the official authority"; (3) GE "has a colorable federal defense" to Plaintiffs' claims; and (4) GE is a "person" within the meaning of the statute. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021).

Because there is a presumption in favor of a federal forum, *Buljic*, 22 F.4th at 738, a defendant's burden to meet these elements is "low." *See, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014). Courts need "only ensure the existence of some competent evidence." *Id.* Factual disputes about the validity of a potential defense, if raised in a motion to remand, "should be submitted to the judgment of a federal court." *Id.* at 116. (reversing remand even though plaintiff submitted affidavits and other evidence disputing the facts alleged in the removal notice). In other words, "a defendant need not win his case before he can have it removed." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 815 (3d Cir. 2016) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

Plaintiffs' remand motion challenges only the second element, on an improperly narrow, outdated reading of what constitutes a "causal connection." Remand Br. at 12–13, ECF. No. 53. Actions satisfy the element of "causal connection" if they are "for *or relating to*" actions performed under the color of federal office. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (emphasis added). Thus, to meet the causal connection element, actions need not be directly connected to, or "*for*," acts under color of such office. *See id.* It is enough that the conduct is "connected or associated" with such acts. *See id.*; *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("relating to" ordinarily has a "broad" meaning—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"). This is a lenient standard. Courts should avoid "narrow, grudging interpretation[s] of § 1442(a)(l)" that stray from its plain meaning. *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

## ARGUMENT

### I.     GE TIMELY REMOVED THE CASE.

#### A.     GE Removed the Petition Within 30 Days of Service.

Plaintiffs concentrate their remand argument on an illusory "timeliness" objection. But Plaintiffs are wrong on both procedure and substance. GE removed this action within 30 days of the parties' agreed-upon service date: "January 31, 2023." Acknowledgment, Ex. A. It would make no sense, and would be contrary to Supreme Court precedent, to have the clock against GE for removal commence ***before service.***

GE has a right to require formal service or to waive it. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351 (1999). Here, at Plaintiffs' request, GE elected to do the latter. As part of the parties' negotiations, counsel for Plaintiffs, Mr. Mangian, sent GE's counsel a draft waiver form. In the transmittal email, he explained that he had drafted "the waiver [to] set

3

the date of service as January 31, 2023." GE's agreement with Plaintiffs' proposed effective service date was memorialized in language reviewed by both parties:

> I hereby (1) waive the necessity of personal service of process under Missouri Supreme Court Rule 54.1(c) on behalf of General Electric for this matter, and (2) acknowledge the date of service of the First Amended Petition on General Electric as <u>January 31, 2023.</u>

Acknowledgment, Ex. A. Thus, both parties agreed in writing that GE's waiver and the effective service date of the First Amended Petition would be January 31, 2023. In keeping with the parties' agreement, GE executed a form acknowledging conditional waiver of service, effective "January 31, 2023."

Now—after benefiting from GE's waiver of service—Plaintiffs claim that the removal clock began ticking before service, on January 6, 2023, when Plaintiffs unilaterally filed the Acknowledgment. To justify this reversal, Plaintiffs posit that GE "mistaken[ly] belie[ved] that the parties' agreement regarding the time for responsive pleadings in state court controls the timing of removal under the law." Remand Br. at 1, ECF. No. 53.

But on its face, the provision of the Acknowledgment upon which Plaintiffs rely says nothing about responsive pleadings; it merely sets the agreed upon, prospective, date of service:

| **What Monsanto Claims** | **What the Acknowledgement Says** |
|---|---|
| GE waived service on "January 6, 2023." Remand Br. at 6, ECF. No. 53. The parties' agreement regarding effective service was only "for purposes of extending [GE's] time to respond to the [First Amended Petition] in state court." *Id.* at 8. | "[T]he date of service of the First Amended Petition on General Electric [i]s <u>January 31, 2023.</u>" Acknowledgment, Ex. A. |

This juxtaposition makes clear that GE didn't "mistaken[ly] belie[ve]" that the parties had agreed to an extension of the removal window. Remand Br. at 1, ECF. No. 53. GE believed only that it had waived service ***as of*** "January 31, 2023," as the Acknowledgment plainly states. GE does not dispute that the thirty-day removal clock is fixed by statute, but Plaintiffs ignore

4

that when GE waives formal service as a courtesy, it *can* decide when that clock *starts*. Just as GE can choose between requiring formal service and waiving it, so too can GE choose the date the waiver takes effect.[1] Here, that date was January 31, 2023.

Plaintiffs' chosen filing date of the Acknowledgment does not trump GE's effective, explicit, and negotiated-for service date. Plaintiffs cite no cases that contemplate a waiver effected *before* a referenced service date. The operative service date was January 31, 2023. It is undisputed that GE filed its Notice of Removal within 30 days of that date. *See Michetti Pipe Stringing, Inc.*, 526 U.S. at 35 (holding removal clock did not run upon defendant's receipt of a copy of a complaint from plaintiff; removal clock began only upon proper service); *Alicea v. Outback Steakhouse*, No. CIV.A. 10-4702 JLL, 2011 WL 1675036, at *2 (D.N.J. May 3, 2011) ("[T]he thirty-day removal period began to run on . . . the date Defendants waived formal service of the Summons and Complaint."). GE's removal was, therefore, timely.

### B. Even if GE's Removal Were Not Timely, Monsanto Is Estopped from Objecting on Timeliness Grounds.

Even if GE inadvertently started the removal clock on January 6, 2023, prior to service—which it did not—Plaintiffs cannot fairly object to timeliness. Conduct that "offends fundamental principles of fairness," like Plaintiffs' conduct here, "precludes a plaintiff from later objecting to the untimeliness of [] removal." *Luchetti v. Hershey Co.*, No. C 08-1629 SI, 2008 WL 2331965 at *5 (N.D. Cal. June 4, 2008) (estopping a plaintiff from raising a timeliness objection where defendant calculated a removal deadline based on plaintiff's representation). GE and Plaintiffs bargained for an effective service date and conditional waiver of service. Plaintiffs drafted GE's

---

[1] *See Brown v. Bristol-Myers Squibb Co.*, No. CIV A 4:02-CV-301-LN, 2002 WL 34213425, at *2 (S.D. Miss. Nov. 2, 2002) (observing that under *Murphy Brothers*, "the relevant date for gauging timeliness of removal is the date on which proper service was effected" or "the date on which objections . . . are waived").

5

waiver and represented several times that January 31, 2023, was the effective date of service. *See* Remand Br. Exhibits 3, 4, ECF. Nos. 53-3, 53-4. The plain language of the Acknowledgement confirms GE's reliance on Plaintiffs' representations. Plaintiffs cannot now claim otherwise.[2]

## II. REMOVAL UNDER 28 U.S.C. § 1442(a)(1) IS PROPER.

### A. Plaintiffs' Own Prior Removals Concede the Existence of Federal Jurisdiction.

In contrast to their Motion to Remand here, Plaintiffs have for years advocated ***in favor*** of federal officer removal in PCB cases. *See, e.g.*, *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853 (E.D. Mo. 2016); *Kelly v. Monsanto Co.*, No. 4:15-CV-1825-JMB, 2016 WL 3543050 (E.D. Mo. June 29, 2016); *Burford v. Monsanto Co.*, No. 4:16-CV-536, 2017 WL 1315800 (E.D. Mo. Apr. 10, 2017); *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1054 (S.D. Ill. 2009); *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132 (D.N.M. 2020).

Only now that the Monsanto entities are ***plaintiffs*** do they challenge removal and urge the Court to remand, ostensibly because it previously remanded cases brought ***against*** the Monsanto entities. *See* Remand Br. at 10, 13, ECF. No. 53. This about-face is unconvincing. And in any event, GE meets the requirements for federal officer removal because its relationship with the federal government was more direct and significant than Plaintiffs'.

---

[2] Plaintiffs wrongly contend, in the alternative, that the Acknowledgment constituted a general appearance. *See* Remand Br. at 7 n.5, ECF. No. 53. The Acknowledgment was an agreement for waiver of service with an effective date of January 31, 2023. Plaintiffs' later, unilateral filing of the Acknowledgment does not transform it into an appearance. GE did not file it or ask the Court to take any action. And Plaintiffs are estopped from raising it for the same reasons discussed above.

6

**B.     GE Meets the Requirements for Federal Officer Removal.**

1.     GE's Removal Shows Ample Evidence of Federal Officer Jurisdiction

Plaintiffs wrongly claim that GE's removal arguments should meet the same fate as their own arguments in *Bailey*, *Kelly*, and *Burford* because they are weaker and rely on "less[] evidence." *See* Remand Br. at 13, ECF. No. 53. The opposite is true. GE's relationship with the federal government was both ***more significant*** and ***more direct*** than Plaintiffs' in prior cases: the federal government not only regularly purchased GE's PCB-containing products, but also ***required*** that GE include PCBs in those products. *See* GE Notice at 7–13, ECF No. 1. Moreover, PCB-containing products that GE sold to the federal government are connected to specific claims for which Plaintiffs now seek indemnification. *See id.* at 14, 16.³ GE has shown that numerous PCB-containing products sold to federal government facilities in Los Angeles, Oakland, and San Francisco are related to claims in at least four cases for which Plaintiffs seek indemnity. *See id.* at 14, 16. This is ample evidence to show the causal connection necessary for federal officer removal, particularly given that the default here favors removal. *See Buljic*, 22 F.4th at 738.

Moreover, federal regulations requiring PCBs in certain transformers (e.g., OSHA's nationwide adoption of the National Electrical Code with requirements for askarel-containing transformers) applied equally to thousands of transformers sold to non-governmental customers. *See* GE Notice at 11-13, ECF No. 1. GE's federal preemption defense thus extends far beyond transformers sold to the federal government, and potentially applies to ***all*** of Plaintiffs' negligence claims that relate to purported PCB releases from transformers sold after 1971. The

---

³ Footnote 7 to Plaintiffs' brief, claiming that some of the exhibits to GE's Notice are not evidence of GE sales to the federal government, is disingenuous. The exhibits show sales of large quantities of Pyranol (a GE-specific PCB-containing insulation fluid for transformers) to the government. There is no dispute that this Pyranol was for use in numerous GE transformers at federal facilities. *See* GE Notice at 9, ECF No. 1.

7

"causal connection" between GE's conduct "acting under" federal control is not limited to PCB-containing products sold to the federal government; it extends to the thousands of products required to include PCBs under federal regulations. *See, e.g.*, *Latiolais*, 951 F.3d at 296 (removal appropriate because the underlying claims were "connected with" installation of products pursuant to governmental direction, and reversing lower court's contrary decision).

    2.  GE Continues to Locate Additional Evidence in Support of Removal

Further, since GE filed its Notice, GE located additional evidence supporting removal. First, in May 1941, Monsanto wrote to the Secretary of War requesting funding for additional facilities to support a 66% increase in production of diphenyl (an core component of PCBs). *See* Letter to U.S. Secretary of War (May 21, 1941), Ex. B. Monsanto explains its intended increase—roughly 480,000 additional pounds of diphenyl per month—was driven in large part by GE's need to produce massive quantities of additional Pyranol-containing transformers ***to fulfill the Federal Government's orders***. *See id.* at 8 (appending a March 26, 1941 letter from GE to Monsanto urging increased production for defense-related demands). In other words, during World War II, both Monsanto and GE had to drastically increase their production of PCB-containing products for the express purpose of filling the government's orders for the war effort.

Second, GE's alleged liability for the underlying PCB cases stems, at least in part, from the government's mishandling of GE's PCB-containing products. A 1994 General Accounting Office Report ("GAO Report") found that the Department of Defense ("DoD") failed to comply with EPA regulations for "monitoring, storing, and disposing" of "significant amounts of PCBs in equipment[]." GAO Report, Ex. C. The GAO concluded that the DoD had:

- failed to properly store PCB-related equipment;
- failed to detect leaks in PCB-containing transformers;
- failed to replace and repair equipment leaking PCBs;

8

- failed to adequately monitor PCB-related equipment;
- failed to respond quickly to PCB spills for which it was responsible; and
- failed to document its PCB disposal practices.

*See id.* at 4. The GAO also reported specific PCB leaks or spills at various DoD sites, including the Eglin Air Force Base in Florida, the Charleston Naval Weapons Station in South Carolina, and Fort Shafter in Hawaii. *See id.* at 14–15. These three locations alone are tied to many of the underlying cases for which Monsanto seeks indemnity.[4]

Third, these additional historical documents continue to show that the government was a significant source of GE's PCB-related demand. The same GAO report discussed above disclosed that in 1993—nearly two decades after the end of domestic PCB production—the Navy *still* had 4,600 PCB-containing transformers and 1,861 other PCB-related items. *See id.* at 8. The Air Force still had 4,904 PCB-containing transformers and 2,599 other PCB-related items in 1990. *See id.* And that says nothing of the Army, which purchased similar equipment from GE, but never collected comparable inventory data. *See id.*; *see also* GE Notice at 7–8, ECF No. 1. These numbers alone show that the federal government was an important PCB-containing transformer customer for GE, especially since the GAO Report underestimates the number of PCB-containing equipment under the DoD's control because the Army did not keep PCB-related inventory. *Cf.* GAO Report, Ex. C, at 8. Further, when the GAO Report was published, the DoD had been phasing out PCBs for "more than fifteen years." *Id.* at 1. The GAO Report therefore captures only a fraction of the PCB-containing transformers and capacitors the DoD purchased from the 1940s through the 1970s. Even so, just the old PCB-containing transformers still in existence in the early 1990s accounted for a meaningful portion of GE's transformer business. In

---

[4] At least several dozen of Plaintiffs' underlying indemnity claims are based on alleged releases of PCBs in Florida, South Carolina, or Hawaii.

9

1972, GE made roughly 5,000 PCB-containing transformers. *See* GE Memorandum on PCB Transformer Production Capacity Estimates (Mar. 29, 1972), Ex. D. Accordingly, even considering only the old, accounted-for PCB-containing transformers at Navy and Air Force facilities in 1994, these federally owned transformers nearly double GE's total annual production of PCB-containing transformers in the 1970s.

These numbers suggest far more than a *de minimis* relationship between GE's production and sale of PCB-containing equipment and control by the Federal Government. Taken together with: (1) GAO findings that DoD mishandled PCBs, (2) GAO findings that DoD spilled or leaked PCBs in areas connected to PCB litigation against Plaintiffs, and (3) Plaintiffs' indemnity demand from GE for PCB cases brought nationwide, even the limited data available at this early stage shows a significant connection between actions taken under color of federal office—and indeed, *by* federal office—and the claims and defenses at issue here.

> C. *Kelly*, *Bailey*, and *Burford* Do Not Foreclose This Court's Jurisdiction.

Plaintiffs next argue that GE did not account for the negative implications of *Bailey*, *Kelly*, or *Burford* in its Notice of Removal, claiming that those cases mandate remand. *See* Remand Br. at 2, ECF. No. 53. Those cases illustrate that the opposite is true. Because GE's relationship with the government was more robust than Monsanto's, many of the same factors that worked against Plaintiffs' arguments in those cases actually support federal jurisdiction here.

First, as discussed, GE's relationship with the federal government was more direct than Plaintiffs' in past cases. This Court declined to accept jurisdiction in *Bailey*, *Kelly*, and *Burford* because Monsanto had not taken sufficient direct action under color of federal office: "[Monsanto] sold the PCBs, by and large, to government contractors and not to the government itself." *See, e.g.*, *Bailey*, 176 F. Supp. 3d at 870; *Kelly*, 2016 WL 3543050, at *8; *Burford*, 2017

10

WL 1315800, at *5.[5] While this point cut against removal in those cases, it supports jurisdiction here. Unlike Monsanto, GE *was* a "government contractor" engaged in significant direct sales to the federal government. Such direct sales meet the "acting under" prong of the federal-officer removal test.[6] *See Bailey*, 176 F. Supp. 3d at 869 (Monsanto met the "acting under" requirement for "PCBs that [it] sold directly to the government, or to others at the direction of the government"); *Kelly*, 2016 WL 3543050, at *8 (same).

Second, GE's products were manufactured using PCBs in compliance with government specifications. *See* Hearing on Toxic Substances Control Act (1976), Ex. H, at 80 (the "Department of Defense, the General Services Administration, and other agencies" had "procurement specifications" for the purchase of PCBs and "materials containing PCBs"). In *Bailey*, *Kelly*, and *Burford*, Monsanto did not allege that the government supervised or controlled the "manufacturing process itself" or that Monsanto's PCBs were produced to government specifications. *See, e.g.*, *Bailey*, 176 F. Supp. 3d at 869; *Kelly*, 2016 WL 3543050, at *8; *Burford*, 2017 WL 1315800, at *4. Here, in contrast, the Federal Government required GE to use

---

[5] *Bailey* and *Kelly* were decided as companion cases and—unlike most orders to remand—were appealable. *See* 28 U.S.C. § 1447(d). While Monsanto initially appealed, it settled for strategic reasons before the Eighth Circuit could rule. *See, e.g.*, Docket for *Kelly v. Monsanto Co.*, No. 16-3247, Ex. E; Docket for *Bailey v. Monsanto Co.*, No. 16-2096, Ex. F. The outcome in *Burford*—which Monsanto also settled shortly after remand—was thus without the benefit of Eighth Circuit guidance. Docket for *Burford v. Monsanto Co.*, No. 16SL-CC00928, Ex. G. As a result, *Bailey*, *Kelly*, and *Burford* are neither binding nor especially relevant.

[6] Although *Bailey* and *Kelly* found that Monsanto satisfied the "acting under" prong for "PCBs that Old Monsanto sold directly to the government, or to others at the direction of the government," *Burford* did not. *Compare Bailey*, 176 F. Supp. 3d at 869, *and Kelly*, 2016 WL 3543050, at *8, *with Burford*, 2017 WL 1315800, at *4. GE submits that portion of *Burford* is inconsistent and may have been premised on a misreading of those two cases.

11

PCBs in its products (like many transformers sold to the military and others). Such control is unnecessary to satisfy the "acting under" element, but further supports jurisdiction here.[7]

Third, the causal connection between GE's actions and federal authority is far greater than in *Bailey*, *Kelly*, or *Burford*. Evaluating the "causal connection requirement for federal officer removal," this Court found that Monsanto's actions under color of federal office were *de minimis* compared to the total volume of PCBs in the environment, ***all*** of which Monsanto produced. In particular, the Court noted that:

> [T]he amount of PCBs manufactured by Old Monsanto pursuant to direct contracts with the government, together with the amounts sold to federal contractors at the direction of the government, and even together with the amounts manufactured to meet the needs of defense contractors during the years of the Second World War, relative to the total amount of PCBs allegedly persisting in the environment and food chain, is simply too small to satisfy the requirement that there be a causal connection between the conduct that was taken under federal authority and Plaintiffs' claims.

*Bailey*, 176 F. Supp. 3d at 870; *Kelly*, 2016 WL 3543050, at *9. Here, the comparison is different. Unlike Plaintiffs, GE did not manufacture PCBs and is not responsible for the "total amount of PCBs . . . in the environment and food chain." *Id.* Thus, GE's denominator—the total amount of PCBs in the environment for which it might be responsible—is much smaller. And, as discussed above, GE's federal-officer numerator—the number of PCB-containing transformers and capacitors it sold to the federal government—is far larger, and even larger still if the Court considers, as it should, the total volume of GE's products (sold to the federal government or otherwise) that were required to include PCBs. *See generally* GE Notice, ECF No. 1.

---

[7] In *Bailey* and *Kelly*, this Court found that Monsanto satisfied the "acting under prong" for PCBs it sold directly to the government despite its failure to show that the government was otherwise involved in manufacturing PCBs or producing PCB-related specifications. *See Bailey*, 176 F. Supp. 3d at 869; *Kelly*, 2016 WL 3543050, at *8.

And given the nature of this case due to Plaintiffs' sweeping claims, the "causal connection" inquiry is much broader than any inquiry undertaken in *Bailey*, *Kelly*, or *Burford*. In each of those cases, the Court found that actions Monsanto took under color of federal office were not "causal[ly] connect[ed]" to the specific claims brought by the specific plaintiffs in those cases. *See, e.g.*, *Bailey*, 176 F. Supp. 3d at 870; *Kelly*, 2016 WL 3543050, at *8; *Burford*, 2017 WL 1315800, at *6. Here, Plaintiffs seek indemnity for claims in numerous underlying cases. GE need only show a causal connection between the exercise of federal authority and *any* of those underlying claims to establish federal-officer jurisdiction. This GE has done.

Accordingly, each of the considerations that undercut removal in *Bailey*, *Kelly*, and *Burford* support jurisdiction here. The relationship between (a) GE's conduct, and (b) federal government authority was direct, significant, and indisputably connected to at least several (and likely many) of the claims in the underlying PCB cases for which Plaintiffs seek indemnity.[8]

---

[8] If the Court still believes that *Bailey*, *Kelly*, and *Burford* call for remand—which, as explained, they do not—those decisions should be reconsidered. In those cases, this Court required a "causal connection" between "conduct that [Monsanto took] under federal authority" and "Plaintiffs' claims." *See, e.g.*, *Bailey*, 176 F. Supp. 3d at 870; *Kelly*, 2016 WL 3543050, at *8; *Burford*, 2017 WL 1315800, at *6. This deviates from the majority view, which requires only a broader "connection" or "association" between conduct under federal authority and Plaintiffs' claims. *Latiolais*, 951 F.3d at 292 (trial court erred in too strictly interpreting the requisite "causal connection"); *accord Sawyer v. Foster Wheeler, L.L.C.*, 860 F.3d 249, 258 (4th Cir. 2017); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d at 470–71; *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1145 (11th Cir. 2017). Legislative history underscores the point. Prior to the 2011 Removal Clarification Act, removal under 28 U.S.C. § 1442(a)(1) required that claims be "for" actions taken under federal authority. After the 2011 Removal Clarification Act, removal was warranted if claims were "for *or relating to*" actions taken under federal authority, thus "broaden[ing] the universe of acts" warranting removal. *Bailey*, 176 F. Supp. 3d at 869. The application of a "causal connection" test in *Bailey*, *Kelly*, and *Burford* tracks the pre-2011 statutory language and should be revisited. To accept jurisdiction, this Court need only find a "connection" or "association." *See Latiolais*, 951 F.3d at 292. Certainly, GE has met that lower bar. *Cf. Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999) ("courts cannot "[demand] an airtight case on the merits in order to show the required causal connection").

13

### III. IF THE COURT IS INCLINED TO REMAND, IT SHOULD ALLOW JURISDICTIONAL DISCOVERY FIRST

If this Court is not persuaded that GE has met the "low threshold" required under the federal officer removal statute, it should grant GE's request for jurisdictional discovery. *See, e.g.*, *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (finding district court abused its discretion in denying motion for jurisdictional discovery to respond to remand motion); *O'Bryan v. Chandler*, 496 F.2d 403, 411 n.7 (10th Cir. 1974) ("If plaintiff contests . . . defendant's assertions that defendant was acting under color of office, the district court ***must*** hold a hearing to determine the jurisdictional issues.") (emphasis added).

As explained in the Affidavit of Erik Nadolink, attached as Ex. I, limited jurisdictional discovery will enable GE to better address how Plaintiffs' claims relate to GE's actions under color of federal office. *Id.* at ¶ 15. GE repeatedly asked Plaintiffs to provide evidence of GE's alleged connection to the underlying cases, but they refused. *Id.* at ¶ 3–8. Without that information, GE is limited in its ability to connect the actions it allegedly took under color of federal office and the allegations in the underlying cases. *Id.* at ¶ 10–11. GE would use limited jurisdictional discovery from Monsanto to provide the Court further evidence on how GE is allegedly connected to each of the underlying actions and from the federal government to show the extent of its involvement in the underlying cases and GE's PCB Business. *Id.* at ¶ 13–14.

### CONCLUSION

For the reasons explained, this Court should deny the motion to remand. If the existing record is insufficient to do so, the Court should allow GE to conduct limited jurisdictional discovery of Monsanto and the federal government to further connect the causal dots between its

14

own alleged conduct, the exercise of federal government authority, and the underlying cases for which Plaintiffs now seek indemnity.

Dated:  April 4, 2023.                                   Respectfully submitted,


                                                            */s/ Erik D. Nadolink*
Michael L. O'Donnell (*admitted pro hac vice*)
Marissa S. Ronk (*admitted pro hac vice*)
Erik D. Nadolink (*admitted pro hac vice*)
Attorneys for Defendant General Electric Co.
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email:    odonnell@wtotrial.com
          ronk@wtotrial.com
          nadolink@wtotrial.com

Peter W. Herzog III
Attorney for Defendant General Electric Co.
Wheeler Trigg O'Donnell LLP
One Metropolitan Square
211 N. Broadway, Suite 2825
St. Louis, MO  63102-2723
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: pherzog@wtotrial.com

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on April 4, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

- **John M. Allen**
  jallen@goldbergsegalla.com, bbuhmann@goldbergsegalla.com, dcarpenter@goldbergsegalla.com

- **Cameron Bonk**
  cameron.bonk@weil.com, mco.ecf@weil.com, cameron-bonk-5928@ecf.pacerpro.com

- **Yehudah L. Buchweitz**
  yehudah.buchweitz@weil.com, mco.ecf@weil.com, special.indemnity.ccl@weil.com, yehuda-buchweitz-8298@ecf.pacerpro.com, patrick.mills@weil.com, nymao@ecf.pacerpro.com

- **Nicholas Anthony Butto**
  nabutto@mintz.com

- **Gerard T. Carmody**
  gtc@carmodymacdonald.com, mrd@carmodymacdonald.com, ajc@carmodymacdonald.com, aep@carmodymacdonald.com, tls@carmodymacdonald.com

- **LisaMarie Collins**
  lfcollins@mintz.com

- **Christopher G. Conley**
  cgconley@ewhlaw.com

- **Kaitlyn Crowe**
  kacrowe@mintz.com

- **Jonathan M. Ettinger**
  jettinger@foleyhoag.com, nwilbur@foleyhoag.com, kchen@foleyhoag.com

- **C. Michael Evert**
  cmevert@ewhlaw.com

- **David M. Fedder**
  dmf@carmodymacdonald.com

- **David B. Helms**
  davidh@gmlawpc.com, reneel@gmlawpc.com, davidhelms555@gmail.com

- **Peter W. Herzog , III**
  pherzog@wtotrial.com, blanchard@wtotrial.com, LiCausi@wtotrial.com

- **John M. Hessel**
  jhessel@lewisrice.com, john-hessel-2908@ecf.pacerpro.com, lobrien@lewisrice.com

- **Christopher M. Hohn**
  chohn@thompsoncoburn.com, psachtleben@thompsoncoburn.com

- **Paul L. Knobbe**
  pknobbe@goldbergsegalla.com, dcarpenter@goldbegsegalla.com, bbuhmann@goldbergsegalla.com

- **Nicholas J. Lamb**
  nlamb@thompsoncoburn.com, ccampbell@thompsoncoburn.com, kforney@thompsoncoburn.com

- **Aaron Frederick Lang**
  alang@foleyhoag.com

- **Sarah Beth Mangelsdorf**
  smangelsdorf@goldbergsegalla.com, mguest@goldbergsegalla.com, bbuhmann@goldbergsegalla.com

- **David M. Mangian**
  dmangian@thompsoncoburn.com, vpyatt@thompsoncoburn.com

- **Sarah Anne Milunski**
  smilunski@lewisrice.com, ecf-a2f8fcb93a92@ecf.pacerpro.com, cmurphy@lewisrice.com

- **Brittney K. Mollman**
  bmollman@thompsoncoburn.com

- **Benjamin D. Mooneyham**
  benm@gmlawpc.com

- **Erik David Nadolink**
  nadolink@wtotrial.com

- **Michael L. O'Donnell**
  odonnell@wtotrial.com, pointer@wtotrial.com, sun@wtotrial.com

- **Marissa Ronk**
  ronk@wtotrial.com

3

- **Tyler C Schaeffer**
  tcs@carmodymacdonald.com, mrd@carmodymacdonald.com, ajc@carmodymacdonald.com, jik@carmodymacdonald.com

- **Nicholas Thomas Schnell**
  nschnell@thompsoncoburn.com

- **Benjamin John Wilson**
  bjwilson@smsm.com, hbasb@heplerbroom.com

- **Scott A. Wissel**
  sawissel@lewisricekc.com

*s/ Erik D. Nadolink*