IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) CASE NO: 4:23-cv-00204-HEA ) |
| MAGNATEK, INC., GENERAL ELECTRIC CO., PARAMOUNT GLOBAL, KYOCERA AVX COMPONENTS CORPORATION, CORNELL-DUBILIER ELECTRONICS, INC., and THE GILLETTE COMPANY, LLC, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**PARAMOUNT GLOBAL'S OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Paramount Global ("Paramount") opposes Plaintiffs' remand motion (*Doc. #52*) as one or more of Plaintiffs' claims fall within the jurisdictional scope of 28 U.S.C. § 1442(a)(1), the "federal officer removal statute." More specifically, Plaintiffs' claims relate, at least in part, to PCB-containing equipment sold by Paramount's predecessor, Westinghouse Electric Corporation ("Westinghouse"), to the United States government. As set out in General Electric Company's notice of removal[1] (and left uncontested by Plaintiffs' remand motion): 1) the use of PCBs in such equipment was mandated by the government's own specifications and regulations; and 2) the government required the use of PCBs despite its knowledge of PCB-related hazards.

---

[1] In the interests of efficiency, the notice of removal (*Doc. #1*) filed by General Electric Company ("GE") is incorporated as if restated herein. Further, Paramount hereby adopts and incorporates those arguments made by GE in its own opposition to Plaintiffs' remand motion and joins in GE's motion, in the alternative, for jurisdictional discovery.

1

In seeking remand, Plaintiffs do not dispute that Defendants, including Paramount, sold PCB-containing equipment to the government, nor do they dispute that the circumstances of such sales fall within the scope of § 1442(a)(1). Rather, and despite these undisputed facts, Plaintiffs simply cite to three prior decisions of this Court[2] to urge that sales of PCB-containing equipment to the government were relatively *de minimis* compared to Defendants' total sales of such products, thereby precluding any showing of a causal connection between these government sales and Plaintiffs' claims.

As to Paramount, at least, that argument falls flat, and the decisions relied on by Plaintiffs are plainly distinguishable. Plaintiffs' own amended petition expressly tethers their claims against Paramount, in part, to a specific spill of PCBs from a Westinghouse transformer that was sold to the United States Air Force, stressing that certain damages allegedly flowing from this ***particular PCB spill*** are directly at issue here. The so-called "causal nexus" required by § 1442(a)(1) is thus established as a matter of law in this case.

Finally, to the extent Plaintiffs contest the timeliness of removal in this case, it is undisputed that the removal was initiated by GE within thirty days of the effective date of Paramount's waiver of service. As such, the removal was timely for purposes of 28 U.S.C. § 1446.

### Paramount's Standing to Oppose Remand

When a defendant removes a case based on § 1442(a)(1), "there is no requirement that other defendants who might have been able to exercise the same right 'join' in the removal in order to reap the benefit of the federal forum." *Frawley v. General Elec. Co.*, 2007 WL 656857 at *6 (S.D.N.Y. Mar. 1, 2007). See also *Keating v. Air & Liquid Sys. Corp.*, 2019 WL 3423235 at *4

---

[2] *Burford v. Monsanto Co.*, 2017 WL 1315800 (E.D. Mo. [Mag. Div.] Apr. 10, 2017) (Cohen, M.J.); *Kelly v. Monsanto Co.*, 2016 WL 3543050 (E.D. Mo. [Mag. Div.] June 29, 2016) (Bodenhausen, M.J.); *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853 (E.D. Mo. 2016) (Fleissig, J.).

(S.D.N.Y. July 30, 2019). Rather, the district court "has 'original jurisdiction' . . . over all claims against **all** government contractors who can assert federal actor status – not just the removing defendant." *Frawley*, *supra* (emphasis in original). Thus, if a remand is sought, a non-removing federal officer has the right to contest that motion. See, *e.g.*, *Pitre v. Huntington Ingalls, Inc.*, 2017 WL 6033032 at *7 (E.D. La. Dec. 6, 2017); *Wright v. A.W. Chesterton Co.*, 2008 WL 512728 at *1, n.1 (N.D. Cal. Feb. 25, 2008).

### Removal-Related Facts Specific to Paramount

As exemplified by the documents attached as "Exhibit A," Westinghouse sold PCB-containing equipment to the government.[3] Of import here, Plaintiffs' amended petition references a specific PCB spill involving a Westinghouse transformer sold to the government, grounding Plaintiffs' claims against Westinghouse in part upon that incident. More specifically, ¶ 136 of Plaintiffs' First Amended Petition asserts that "[i]n September 1974, 265 gallons of PCBs were directly released into the Duwamish Waterway in Washington when a transformer manufactured by Westinghouse was dropped while being loaded into a commercial barge." Plaintiffs then stress that this specific release of PCBs was at issue in one or more of the so-called "Water Cases" for which Plaintiffs now seek indemnity from Paramount, placing this PCB spill directly at issue in this case. (*First Amended Petition*, ¶ 186). As revealed in an October 8, 1975 article from the *Walla Walla Union-Bulletin* (attached as "Exhibit B"), the Westinghouse transformer involved in the September 13, 1974 PCB spill referenced in ¶¶ 136 and 186 of Plaintiffs' First Amended Petition was manufactured for, and sold to, the government for use at an Air Force base in Alaska and was damaged while being loaded onto a barge.

---

[3] The correspondence between the United States Army and Westinghouse attached as "Exhibit A" provides a single example of the scope of Westinghouse's sales of PCB-containing equipment to the government, memorializing that – as of 1981 – 206 Westinghouse transformers were in use at a single Army facility (*i.e.*, Fort Carson in Colorado) and that at least 103 of those transformers were PCB-containing.

**Argument**

**I.     This Court has § 1442(a)(1)-based subject matter jurisdiction over this case.**

The jurisdictional requirements of § 1442(a)(1) are set out in GE's response to Plaintiffs' remand motion. Paramount simply stresses that under, § 1442(a)(1), "the entire case is removable if even one claim falls within the scope of the statute." *Hovespian v. Crane Co.*, 2016 WL 4158891 at *6 (E.D. Mo. Aug. 5, 2016) (Jackson, J.). In keeping with that principle, where (as here) a plaintiff asserts a claim for damages involving toxic exposures some of which would fall within the scope of § 1442(a)(1), the entire case is removable even if the bulk of the exposures would not fall within the scope of that statute. See, *e.g.*, *Bondurant v. 3M Co.*, 2019 WL 3214288 at *5 (E.D. La. July 17, 2019); *Smith v. Union Carbide Corp.*, 2015 WL 4068833 at *5 (D. Md. July 2, 2015); *Commardelle v. Pennsylvania General Ins. Co.*, 2014 WL 1117969 at *2, n.18 (E.D. La. Mar. 28, 2014); *Morgan v. Bill Vann Co.*, 2011 WL 6056083 at *7, n.8 (S.D. Ala. Dec. 6, 2011); *Epperson v. Northrop Grumman Sys. Corp.*, 2006 WL 90070 at *3 (E.D. Va. Jan. 11, 2006); *In re Welding Rod Prods. Liab. Litig.*, 2005 WL 147081 at *5 (N.D. Ohio Jan. 13, 2005).

As a corporation is a "person" for § 1442(a)(1) purposes, Paramount satisfies this standard. *Hovespian*, 2016 WL 4158891 at *6. Plaintiffs' remand motion also does not contest Defendants' ability to state a colorable government immunity defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) as to any claim arising in whole or part from sales of PCB-containing equipment to the government. Their silence in this regard is understandable, as Defendants' showing that the government's own regulations and specifications required the use of PCBs in certain equipment that it purchased from Defendants (*Doc. #1*, ¶¶ 30-32 and 44) satisfies the first two prongs of *Boyle*'s immunity test[4] and as the last prong of that test is met by Defendants' showing that the

---

[4] Compare, *e.g.*, *Sequira v. 3M Co.*, 621 Fed. Appx 458, 459 (9th Cir. 2015); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1184-85 (7th Cir. 2012); *In re Brooklyn Navy Yard Asb. Litig.*, 971 F.2d 831, 839 (2d Cir. 1992).

government required the use of PCBs despite its knowledge of PCB-related hazards (*id.*, ¶43).[5] Paramount thus focuses on the two jurisdictional objections raised by Plaintiffs – *i.e.*, whether Defendants were "acting under" the government in their sale of PCB-containing equipment to the government and whether a "causal nexus" exists between such sales and Plaintiffs' claims.

      **A.    Westinghouse was "acting under" the government in its sale of PCB-containing equipment to the government.**

The "acting under" prong of § 1442(a)(1)'s jurisdictional test is met whenever the defendant was not simply functioning within a regulated industry but was, instead, actually assisting the government in carrying out its functions thus giving rise to a "special relationship" between the defendant and the government. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-37 (2d Cir. 2008) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 and 157 (2007)).  See also, *e.g.*, *Jacks v. Meridian Resource Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).  Such a "special relationship" is plainly shown where the defendant contracted directly with the government to supply a product that was needed by the government to carry out is functions and which "in the absence of [the defendant], the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137; *Hovespian*, 2016 WL 4158891 at *5.

Accordingly, where, as here, a defendant's alleged liability is grounded in whole or part in its having supplied PCB-containing equipment to the government – and where the government's own specifications and regulations required the use of PCBs in that equipment – there can be no dispute that the defendant was "acting under" the government in its supply of that equipment. Cf. *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 465-66 (5th Cir.), *cert. denied*, 137 S. Ct. 339 (2016); *Hovespian*, 2016 WL 4158891 at *7.[6]  Judge Jackson's opinion in *Hovespian* is illustrative.

---

[5] Compare, *e.g.*, *Getz v. Boeing Co.*, 654 F.3d 852, 865-66 (9th Cir. 2011), *cert. denied*, 565 U.S. 1202 (2012).
[6] Where, as here, a *Boyle*-based immunity defense is asserted as the defendant's colorable federal law-based defense, the "acting under" analysis is thus largely subsumed within the first two prongs of the *Boyle* test – *i.e.*, whether

5

The *Hovespian* defendant ("Crane") supplied valves for use on Navy ships and the government's own specifications required the use of asbestos in those valves.  In denying a motion for remand, Judge Jackson observed in relevant part that:

> The Navy's directive to Crane to produce the asbestos-containing valves it needed for ships of war is the archetypal example of a contractor "acting under" government discretion.  Crediting Crane's theory of the case, its evidence demonstrates it included asbestos in and on the valves because it conformed the valves to the [government's design specifications], which it had no choice but to follow, and which mandated the valves include asbestos.  Crane has thus cleared the low hurdle to show a causal connection between its decision to include asbestos on and in the valves and the Navy's directive to do so.

*Hovespian*, 2016 WL 4158891 at *7.  See also, *e.g.*, *Mannix v. CBS Corp.*, 2019 WL 145547 at *4 (D.R.I. Jan. 9, 2019).  Paramount submits that an identical conclusion is called for here as to products Westinghouse sold to the government as it is undisputed that the government's own specifications and regulations required the use of PCBs in those products.

Plaintiffs' reliance on *Burford*, *Kelly*, and *Bailey* to urge a different conclusion is misplaced.  In fact, both *Kelly* and *Bailey* held, contrary to Plaintiffs' position here, that proof that a defendant supplied products to the government and that those products were required by the government to contain PCBs is sufficient to show the defendant was "acting under" the government in its supply of those products.  *Kelly*, 2016 WL 3543050 at *8-9; *Bailey*, 176 F. Supp. 3d at 870.[7]

---

the government created or approved reasonably precise specifications for the defendant's product and whether the defendant's product, in fact, complied with those specifications.  *In re Welding Rod Prods. Liab. Litig.*, 2004 WL 1179454 at *10 (N.D. Ohio May 21, 2004).

[7] Paramount respectfully submits that the holding in *Burford,* that a defendant who supplies PCB-containing products ***directly to the government for its own use pursuant to government specifications mandating the use of PCBs*** can only satisfy the "acting under" prong of § 1442(a)(1) by further showing detailed government control over the manufacturing process, is directly at odds with, and cannot be reconciled with, the great weight of authority as discussed above; the "special relationship" needed to meet the "acting under" test is met upon mere proof that the defendant supplied a product to the government for the government's own use, particularly where (as here) the government's own specifications dictated the use of the component or material now claimed to have caused harm. See, *e.g.*, *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812-13 (3d Cir. 2016).  Upon proof of such a "special relationship," a defendant asserting § 1442(a)(1)-based jurisdiction "need not show that its alleged conduct

**B.     A sufficient "causal nexus" has been shown between Westinghouse's conduct while "acting under" the government and Plaintiffs' claims.**

The so-called "causal nexus" prong of § 1442(a)(1) simply requires the defendant to show that the harm for which it has been sued resulted from or relates to actions that it took while "acting under" the government.  See generally *Sawyer*, 860 F.3d at 257-58; *Isaacson,* 517 F.3d at 137.  Thus, and particularly given § 1442(a)(1)'s amendment via the Removal Clarification Act of 2011 (which extended its reach to all claims "relating to" a defendant's "acting under" work rather than restricting jurisdiction to claims made "for" that work), it is now sufficient to simply show "a 'connection' or 'association' between the act in question and the federal office;" a strict causal relationship is no longer required.  *In re Commonwealth's Motion to Appoint Counsel against or Directed to Defender Assn of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015), *cert. denied*, 577 U.S. 1119 (2016).

This test is plainly met where a plaintiff's claim arises from a defect in a product that the defendant supplied upon the government's request, particularly where (as here) the government contracted for the supply of that product despite knowledge of its potential hazard. See, *e.g.*, *Isaacson*, 517 F.3d at 137-38; *Gordon v. Air & Liquid Sys. Corp*., 990 F. Supp. 2d 311, 317-18 (E.D.N.Y. 2014); *Perez v. Air & Liquid Sys. Corp.*, 223 F. Supp. 3d 756, 763 (S.D. Ill. 2016).  Stated somewhat differently, "when a government contractor builds a product pursuant to [government] specifications and is later sued because compliance with those specifications

---

was precisely dictated by a federal officer's directive." *St. Charles Surgical Hosp. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454-55 (5th Cir. 2021). To the extent that the *Burford* Court relied upon *Kelly* and *Bailey* in ruling to the contrary, such reliance, respectfully submitted, was misplaced. More specifically, in that regard, both *Kelly* and *Bailey* held – after finding that Monsanto Company ("Monsanto") had "acted under" the government in supplying PCB-containing products to the government – that the government had not exercised sufficient control over Monsanto's manufacturing plants that Monsanto could further be viewed as having "acted under" the government a*s to its sales of PCB-containing products to its commercial customers*. *Kelly*, 2016 WL at 3543050 at *8; *Bailey*, 176 F. Supp. 3d at 870.

7

allegedly causes [harm], the nexus requirement is satisfied." *Akin v. Big Three Indus.*, 851 F. Supp. 819, 823-24 (E.D. Tex. 1994). Thus, where, as here, a plaintiff claims harm arising from the defendant's supply of PCB-containing equipment and the evidence shows that the use of PCBs was mandated by the government's own specifications and regulations, a "causal nexus" has not simply been shown – it is "axiomatic." *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 701-02 (S.D. Tex. 2002). See also, *e.g.*, *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020); *Hovespian*, 2016 WL 4158891 at *7.

Again, Plaintiffs' reliance on *Burford*, *Kelly*, and *Bailey* to urge a contrary conclusion is misplaced. In those cases, Monsanto faced claims arising from PCB environmental contamination but, unlike here, the plaintiffs' claims as pled in their complaints did not tie Monsanto's liability to a particular spill of PCBs from a Monsanto product sold to the government; instead, the "rather novel theory of liability" presented in each case was that Monsanto was liable for the cumulative impact of "PCBs that over decades accumulated and persisted in the environment." *Bailey*, 176 F. Supp. 3d at 870; *Burford*, 2017 WL 1315800 at *5; *Kelly*, 2016 WL 3543050 at *9. Each of these cases then found that the relative proportion of Monsanto's PCB-containing products that had been sold to the government rather than Monsanto's numerous commercial customers was so *de minimis* that it could not reasonably be held that a "causal nexus" existed between the plaintiffs' non-particularized claims of global PCP contamination and Monsanto's specific sales of PCP-containing products to the government. *Id*.

Even assuming *arguendo* that this novel "*de minimis*" exception to § 1442(a)(1)-based jurisdiction was properly applied to the specific complaints at issue in those cases, such a holding has no application here where ***Plaintiffs' complaint specifically ties Paramount's liability at least in part to a specific PCB spill involving a Westinghouse transformer supplied to the government***

8

and where ***Plaintiffs have further specifically alleged that this particular PCB spill is directly at issue in this case***. (*First Amended Petition*, ¶¶ 136 and 186).  Rather – especially as those specific allegations distinguish this case from *Burford*, *Kelly*, and *Bailey* – this case remains subject to the general rule that, where a plaintiff claims injury arising in whole or part from the defendant's supply of a product to the government pursuant to the government's own specifications, the existence of a "causal nexus" is "axiomatic."  *Madden*, 205 F. Supp. 2d at 701-02.  See also *Hovespian*, 2016 WL 4158891 at *7.

**II.     The removal in this case was not untimely as removal was had within thirty days of the effective date of Paramount's waiver of service of process.**

In the interests of efficiency (and given that the conditional waiver of service effective January 31, 2023, which Paramount executed (attached as "Exhibit C") is substantially similar to the one executed by GE), Paramount largely adopts the discussion of the timeliness of the removal in this case set forth in GE's opposition to Plaintiffs' remand motion.  Rather, Paramount would simply note that, after expressly stating that Paramount's conditional waiver of service would not be effective until January 31, 2023, that waiver then proceeded to stress that, under the parties' agreement:

> [Paramount] further acknowledge[s] that under Missouri Supreme Court Rule 55.25, Paramount's response to the First Amended Petition would be due within 30 days of January 31, 2023.  Plaintiffs and Paramount have agreed, subject to Court approval, to extend that time such that Paramount's deadline to respond to the First Amended Petition will be due on or before March 31, 2023.

(*Id.*).

While Plaintiffs now urge that the invocation of January 31, 2023, as the effective service date in the waivers of service signed by GE and Westinghouse was simply intended as a stipulation extending the time for Defendants to file their answers to the First Amended Petition as the parties, such a *post hac* interpretation is nonsensical.  Just as § 1446 would not allow the parties to stipulate

9

to an extension of the thirty-day removal period once service had been affected, the parties were equally unable to stipulate to any extension of time for the filing of Defendants' answers absent Court approval based on the plain language of Mo. Sup. Ct. Rule 44.01(b).  Rather, consistent with the plain language of these documents, the parties bargained to agreement on the one point which was within their control – *i.e.*, the date on which service would be deemed affected, thus triggering the running of the thirty-day removal period.  Or, to borrow from *Brown v. Macon-Bibb Cty. Planning & Zoning Comm'n*, 2007 WL 2212659 at *2 (M.D. Ga. July 30, 2007), while Paramount had received a copy of Plaintiffs' First Amended Petition and had agreed to waive service subject to certain conditions as of January 5, 2023, that waiver – by its own express terms – did not become effective until January 31, 2023, and it was not until then that Paramount's conditional waiver "figuratively dressed [Plaintiffs'] naked complaint," bringing Paramount (subject to any available defenses based on lack of personal jurisdiction or improper venue) before the court and triggering the thirty-day removal period.

In short, and as detailed more fully in GE's opposition to Plaintiffs' remand motion, the only possible rational reading of either of the conditional waivers of service in this case is the one reflected on its face – *i.e.*, a reading under which no waiver of service by either Paramount or GE was effective until January 31, 2023.  Put differently, while the parties would have had no ability to slow extend the removal period *once the running of that period was triggered*, they could – and did – by agreement determine the date on which that period would begin to run, setting that date as January 31, 2023, and rendering the removal in this case timely as a matter of law.

Dated: April 4, 2023

**CARMODY MACDONALD P.C.**

*/s/ Gerard T. Carmody*
Gerard T. Carmody, #24769MO
David M. Fedder, #38823MO
Tyler C. Schaeffer, #60847MO
120 South Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone (314) 854-8600
Facsimile (314) 854-8660
gtc@carmodymacdonald.com
dmf@carmodymacdonald.com
tcs@carmodymacdonald.com

**WEIL, GOTSHAL & MANGES LLP**

Yehudah Lev Buchweitz (*Pro Hac Vice*)
Cameron Mae Bonk (*Pro Hac Vice*)
767 Fifth Avenue
New York, NY 10153
Telephone (212) 310-8256
Facsimile (212) 310-8007
yehudah.buchweitz@weil.com
cameron.bonk@weil.com

**EVERT WEATHERSBY HOUFF**

C. Michael Evert, Jr. (*Pro Hac Vice*)
3455 Peachtree Road NE, Suite 1550
Atlanta, GA 30326
Telephone (678) 651-1200
Facsimile (678)651-1201
CMEvert@ewhlaw.com

Christopher G. Conley (*Pro Hac Vice*)
200 Cleveland Road, Suite 6
Bogart, GA 30622
Telephone (706) 389-7311
Facsimile (706) 389-7301
CGConley@ewhlaw.com

*Attorneys for Defendant Paramount Global*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 4, 2023, the foregoing was served on all counsel of record via this Court's electronic filing system.

                                         */s/ Gerard T. Carmody*_____

Case: 4:23-cv-00204-HEA  Doc. #: 69  Filed: 04/04/23  Page: 12 of 12 PageID #: 4177