UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:23-CV-00204-HEA |
| MAGNETEK, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND IN RESPONSE TO PARAMOUNT'S OPPOSITION AND CDE'S JOINDER TO GE'S OPPOSITION**

**INTRODUCTION**

The Court should disregard Paramount and CDE's tardy attempts to assert federal officer jurisdiction, but even if it does not, it should still grant Monsanto's Motion to Remand because GE's removal was untimely, and the evidence Paramount and CDE rely on to support their new independent bases for federal officer jurisdiction is insufficient under *Kelly*, *Bailey*, and *Burford*. GE removed this case under 28 U.S.C. § 1442(a) based on its purported sales of PCB-containing electrical equipment to the federal government. Paramount and CDE did not join in or consent to GE's removal or separately file their own notices of removal asserting independent grounds for federal officer jurisdiction. As a result, this Court's determination of whether it has jurisdiction over this case is confined to the (insufficient and untimely) jurisdictional allegations in GE's Notice of Removal.[1] It should not consider the independent grounds for federal officer jurisdiction and evidence presented by Paramount or CDE. Doing so would be contrary to Supreme Court

---

[1] Monsanto's arguments with regard to GE's untimely removal are set forth in its Monsanto's Memorandum of Law In Support of Plaintiffs' Motion To Remand ("Monsanto Mem." or "Monsanto's Memorandum") (ECF #53) and separately filed Reply in Support of Plaintiffs' Motion to Remand in Response to GE's Opposition.

precedent, violate the statutory 30-day removal deadline in 28 U.S.C. § 1446(b)(1), and prejudice Monsanto.

The Court should also reject Paramount and CDE's attempt to independently establish federal officer jurisdiction. As an initial matter, this Court must remand because GE's removal was untimely. As explained in Monsanto's Memorandum (ECF #53) and separately filed Reply in Response to GE's Opposition, GE's removal is untimely because GE filed its Notice of Removal more than 30 days after it waived service in state court. Monsanto's timing argument applies with equal force to Paramount and CDE who did not take *any* action with regard to removal of this lawsuit within their respective 30-day removal deadlines. It was only after GE's untimely removal and after Monsanto filed its Motion to Remand that Paramount and CDE filed their briefs attempting to assert new and independent grounds for federal officer removal. Simply put, the Court cannot exercise jurisdiction over this case based on the evidence presented by Paramount and CDE because this case was not timely removed by *any* defendant in accordance with Section 1446(b)(1).

Finally, even if the Court were to consider Paramount and CDE's evidence, it should still remand based on *Kelly*, *Bailey*, and *Burford*. CDE's claim that it is entitled to federal officer status because it sold PCB-containing capacitors to "government contractors" was expressly rejected as insufficient to establish federal officer jurisdiction in *Kelly*, *Bailey*, and *Burford*. So too was the evidence Paramount relies on to support its assertion that it manufactured a specific PCB-containing transformer referenced in the First Amended Petition pursuant to government specifications and regulations. Whether rightly or wrongly decided, this Court should follow *Kelly*, *Bailey*, and *Burford* because they provide a unified view of the evidence and arguments presented, and because to do otherwise would be internally inconsistent and unjust to Monsanto

which is seeking, *inter alia*, to enforce Paramount's and CDE's defense and indemnity obligations in multiple PCB Lawsuits, including *Kelly*, *Bailey*, and *Burford*.

## ARGUMENT

**I.   The Court Should Disregard Paramount's Opposition To Plaintiffs' Motion To Remand And CDE's Joinder In Support Of GE's Opposition To Plaintiffs' Motion To Remand.**

GE removed this action pursuant to 28 U.S.C. § 1442(a) based on its purported sales of PCB-containing equipment to the federal government. *See* Notice of Removal (ECF #1). CDE and Paramount did not join in GE's removal or file their own timely notices of removal asserting additional jurisdictional facts or grounds for removal. Instead, after Monsanto filed its Motion to Remand directed at the jurisdictional facts alleged in GE's Notice of Removal, they filed separate briefs attempting to support federal officer jurisdiction based on their own purported sales of PCB-containing equipment to the federal government. The Court should disregard these belated attempts to inject new facts and bases for removal, which have no bearing on the jurisdictional allegations raised in GE's Notice of Removal.

**A.   The Court's Assessment Of Federal Officer Jurisdiction Is Confined To The Jurisdictional Facts Alleged In GE's Notice Of Removal.**

GE's Notice of Removal is the key pleading for purposes of assessing whether this Court can exercise jurisdiction over this case. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, [courts must] look only to the jurisdictional facts alleged in the Notices of Removal."); *see also* 28 U.S.C. § 1446(a) (stating that a notice of removal must "contain[] a short and plain statement of the grounds for removal."). The Court should disregard Paramount and CDE's filings (ECF #69 and 70) because they assert grounds for federal officer jurisdiction that do not appear in GE's Notice of Removal.

Paramount and CDE attempt to support federal officer jurisdiction with new and independent grounds relating to their manufacture and sale of PCB-containing products. In its Opposition, Paramount argues that Monsanto's "claims fall within the jurisdictional scope of 28 U.S.C. § 1442(a)(1)" because they "relate, at least in part, to PCB-containing equipment sold by Paramount's predecessor, Westinghouse Electric Corporation." Paramount Opposition to Plaintiffs' Motion For Remand ("Paramount Opp.") (ECF #69) at 1. Likewise, although framed as a "joinder in support" of GE's Opposition To Plaintiffs' Motion To Remand, CDE's brief focuses entirely on supporting federal officer jurisdiction through its own purported sales of capacitors to the federal government during WWII. *See* CDE's Joinder In Support Of Defendant GE's Opposition To Plaintiffs' Motion To Remand ("CDE Joinder") (ECF #70) at 2-4. Neither Paramount nor CDE substantively address GE's purported sales of PCB-containing transformer and capacitors.

The new and independent grounds for federal officer jurisdiction urged by Paramount and CDE do not appear anywhere in GE's Notice of Removal. *See generally* Notice of Removal (ECF #1).[2] Nor do they appear in a timely filed joinder in GE's Notice of Removal or a separately filed notice of removal. As such, they should not be considered by the Court in assessing whether to grant Monsanto's Motion to Remand. *See Morgan v. Great S. Dredging Inc.*, No. CIV.A. 11-2461, 2013 WL 1881051 at *2 (E.D. La. May 3, 2013) (remanding to state court and refusing to conduct

---

[2] The sole ground for jurisdiction raised in GE's Notice of Removal is federal officer removal under 28 U.S.C. § 1442(a) based on GE's purported sales of PCB-containing equipment to the federal government. *See, e.g.*, Notice of Removal (ECF #1) at 1 ("PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1446, Defendant General Electric Co. ('GE') removes this action . . . on the ground that there is jurisdiction under 28 U.S.C. § 1442(a)(1). Namely, removal is appropriate because this action involves a dispute over Polychlorinated Biphenyls ('PCBs'), a chemical compound in electrical products that GE sold in large quantities to the Federal Government . . . .").

a "separate and distinct analysis" of a non-removing co-defendant's "entitlement to removal under th[e federal officer] statute" because the co-defendant failed to file a timely notice of removal).[3]

The Court should reject Paramount and CDE's argument that they have standing to assert independent grounds for removal because the federal officer removal statute does not require defendants to consent to removal. First, the issue here is not whether the case was properly removable by GE,[4] but whether Paramount and CDE can assert their own independent grounds for federal officer jurisdiction. Allowing Paramount and CDE to do so without a timely filed joinder or separate notice of removal[5] would be contrary to the rule that removing parties must state their grounds for jurisdiction in their notice of removal, and would violate the statutory 30-day removal deadline in 28 U.S.C. § 1446(b)(1). *See Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) ("A defendant is generally barred from asserting any ground for removal not attempted within that thirty day period."); *see also Bachman v. A.G. Edwards, Inc.*, No. 4:09CV00057 ERW, 2009 WL 2182345 at *3 (E.D. Mo. July 22, 2009) ("The time limits [for removal] are mandatory and are strictly construed in favor of state court jurisdiction."). Paramount and CDE should not get a second bite at the removal apple simply because GE filed an untimely

---

[3] Here, both Paramount and CDE were served prior to GE's notice of removal, and thus, *Morgan* is instructive. *See Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) (rejecting Morgan "to the extent it can be read to disagree with [Humphries] limited holding" but noting, unlike *Humphries*, *Morgan* did not involve a defendant served after the case had been removed).

[4] For reasons stated in Monsanto's Memorandum (ECF #53) and separately filed Reply to GE's Opposition, this case is not removable.

[5] Paramount has the same timing issues as GE because it executed its Acknowledgement and Waiver on January 5, 2023. *See* State Court Docket, Ex. E to Notice of Removal (ECF #1-5) at 4. Moreover, Paramount did not file its Opposition to Monsanto's Motion to Remand until April 4, 2023, which is more than 30 days from January 31, 2023. *See* Paramount Opp. (ECF #69). CDE was formally served in state court on November 16, 2022, and therefore, filed its Joinder well-after its time to remove had expired. *See* State Court Docket, Ex. E to Notice of Removal (ECF #1-5) at 5-6; CDE Joinder (ECF #70).

Notice of Removal.[6] *See Bachman*, 2009 WL 2182345 at *3 (noting Section 1446(b) "'promote[s] expedited identification of the proper tribunal.'" (quoting *McHugh v. Physicians Health Plan of Greater St. Louis, Inc.*, 953 F. Supp. 296, 299 (E.D. Mo. 1997)).

Second, it would be highly prejudicial to Monsanto if the Court were to allow Paramount and CDE to assert new independent grounds for jurisdiction after their time period for removal has expired. The purpose of the statutory requirement that a removing defendant set out the grounds for removal in its notice of removal is to allow the plaintiff an opportunity to assess whether defendants' grounds for removal are proper and to prepare a comprehensive motion to remand. *See, e.g.*, *Hemphill v. Transfresh Corp.*, No. C-98-0899-VRW, 1998 WL 320840 at *4 (N.D. Cal. June 11, 1998) (noting that allowing parties to assert new grounds for jurisdiction after a motion to remand would "undermine the various notice interests served by the removal petition" by "topedo[ing] their opponents . . . with previously undisclosed and stronger bases for jurisdiction."); *Isom v. Marg*, No. 2:14-CV-4355-SVW, 2014 WL 3546532 at *3 (C.D. Cal. July 17, 2014) (noting plaintiffs should not be forced to "suddenly respond to a jurisdictional argument to which the notice of removal did not in fact put them on notice"). Simply put, Monsanto should not be required to respond to jurisdictional facts that were not alleged in a timely filed notice of removal.

---

[6] Paramount was well-aware that it must file a timely a notice of removal or joinder to assert an independent basis for federal officer jurisdiction. In similar situations, Paramount's predecessor entities — CBS Corp. and Westinghouse — have filed timely supplemental notices of removal or joined in a co-defendant's notice of removal. *See, e.g.*, *Ross v. Airbus S.A.S.*, No. CIV. WDQ-13-1053, 2013 WL 5887521 at *1 (D. Md. Oct. 30, 2013) (CBS joined in GE's Notice of Removal based on federal officer removal and asserted its own independent basis for federal officer removal); *Mims v. 84 Lumber Co.*, No. CV 13-298-SLR-CJB, 2013 WL 4775306 at *1 (D. Del. Sept. 6, 2013) (Westinghouse joined co-defendant's notice of removal to assert independent grounds for federal officer removal); *Pianko v. Gen. Elec. Co.*, No. 309-CV-1053WWE, 2010 WL 717897 at *1 (D. Conn. Feb. 23, 2010) (CBS and GE joined another defendant's Notice of Removal and argued they were independently entitled to federal officer removal). Paramount also had a case remanded when the defendants who timely removed under the federal officer statute were dismissed from the case and Paramount's notice of removal was "clearly untimely." *See Rozumek v. Air & Liquid Sys., Inc.*, No. 15-CV-441-SMY-SCW, 2015 WL 6152924 at *1 n.1 (S.D. Ill. Oct. 20, 2015).

Third, Paramount and CDE's cited authority is inapposite. The cases CDE relies on to assert standing do not address the relevant issue here. Rather, they stand for the general proposition that a typical federal officer removal does not require co-defendants' consent. *See* CDE Joinder (ECF #70) at 4 (collecting cases). Likewise, Paramount's cases concern the discretionary exercise of supplemental jurisdiction over non-removing defendants' claims after a court has already determined federal jurisdiction exists and distinct procedural issues that are not relevant here. *See Frawley v. Gen. Elec. Co.*, No. 06 CIV. 15395 (CM), 2007 WL 656857 at *3 (S.D.N.Y. Mar. 1, 2007) (acknowledging that decisions to exercise supplemental jurisdiction are "an entirely different issue than whether removal was proper in the first place—an issue that is decided in accordance with entirely different principles."); *Pitre v. Huntington Ingalls, Inc.*, No. CV 17-7029, 2017 WL 6033032 at *7 (E.D. La. Dec. 6, 2017) ("The inquiry at this time is not whether the case was properly removed, but rather whether the Court can and should relinquish jurisdiction."); *Wright v. A.W. Chesterton Co. Inc.*, No. C07-05403 MJJ, 2008 WL 512728 at *1 n.1 (N.D. Cal. Feb. 25, 2008) (noting, in dicta in a footnote, that a non-removing defendant's opposition to a motion to remand was timely served via mail but only considering whether actions of removing defendant established federal officer jurisdiction); *Keating v. Air & Liquid Sys. Corp.*, No. 18-CV-12258 (JPO), 2019 WL 3423235 at *4-5 (S.D.N.Y. July 30, 2019) (holding, based "[o]n the idiosyncratic facts of this case," a non-removing defendant could file notice of removal after administrative closure of a case initiated by a co-defendant's attempted removal).

## II. Alternatively, The Arguments Made By Paramount And CDE Do Not Support GE's Removal Or The Exercise Of Federal Officer Jurisdiction Over This Case.

The Court should not consider Paramount or CDE's filings for the reasons stated above. But in the event the Court does consider Paramount and CDE's filings, it should nonetheless remand this case because GE's removal was untimely, and Paramount and CDE do not

independently satisfy the requirements for federal officer jurisdiction under *Kelly*, *Bailey*, and *Burford*.

      A.      **GE's Removal Was Untimely.**

Monsanto's arguments regarding GE's untimely filing of its Notice of Removal are extensively briefed in the Monsanto's Memorandum (ECF #53) and Monsanto's Reply in Response to GE's Opposition filed contemporaneously herewith. Those arguments are expressly adopted and incorporated herein by reference in response to Paramount's Opposition and CDE's Joinder, and apply with equal force to Paramount and CDE's improper attempts to assert new and independent bases for federal officer jurisdiction in response to Monsanto's Motion to Remand. Simply put, the Court cannot exercise federal officer jurisdiction over this case under any theory because none of the Defendants filed a timely notice of removal as required by 28 U.S.C. § 1446(b)(1).

      B.      **The Court Should Follow *Kelly*, *Bailey*, And *Burford* And Reject Paramount And CDE's Arguments Regarding Federal Officer Jurisdiction.**

Paramount argues that it satisfies the "acting under" and "causal connection" elements of federal officer jurisdiction because Monsanto's claims against it are based, at least in part, on a PCB-containing transformer that Paramount sold to the Air Force. Paramount Opp. (ECF #69) at 3. CDE argues similarly that it is entitled to federal officer jurisdiction because it "produced significant quantities of PCB-containing capacitors under the direct supervision of the government that CDE sold to federal government contractors." CDE Joinder (ECF #70) at 1. The Court should reject Paramount and CDE's arguments with regard to the "acting under" and "causal connection" elements based on the findings and holdings in *Kelly*, *Bailey*, and *Burford*.

> *i.*     *CDE's Evidence is Insufficient.*

CDE relies on findings by the United States District Court for the District of New Jersey in *United States v. Cornell-Dubilier Elecs. Inc.*, Case No. 12-5407 (JLL), 2014 WL 4978635 (D.N.J. Oct. 3, 2014). *See* CDE Joinder (ECF #70) at 2. The problem with these findings for CDE is that they only establish CDE sold capacitors to "government contractors" during WWII. *See Cornell-Dubilier Elecs. Inc.*, 2014 WL 4978635 at *2 ("During the Second World War, most of the capacitors produced by CDE at the Facility were purchased by **government contractors** for production . . . .") (emphasis added). The *Kelly*, *Bailey*, and *Burford* decisions distinguish between sales Monsanto made "directly to the government, or to others at the direction of the government" and those it made to "government contractors." *See Kelly v. Monsanto Co.*, No. 4:15 CV 1825 JMB, 2016 WL 3543050 at *9 (E.D. Mo. June 29, 2016); *Bailey v. Monsanto*, 176 F. Supp. 3d 853, 870 (E.D. Mo. 2016); *Burford v. Monsanto*, Co., No. 4:16CV536, 2017 WL 1315800 at *4 (E.D. Mo. Apr. 10, 2017). In all three cases, the court found that Monsanto's sales to "government contractors" were insufficient to satisfy the "acting under" prong of federal officer jurisdiction. *See id.*; *Kelly*, 2016 WL 3543050 at *9; *Bailey*, 176 F. Supp. 3d at 870. Whether right or wrongly decided, the Court should rule consistently with *Kelly*, *Bailey*, and *Burford* that CDE's alleged sales to "government contractors" are not sufficient for CDE to establish federal officer jurisdiction.[7]

> *ii.*     *Paramount's Evidence is Insufficient.*

Monsanto does not dispute that Paramount sold the transformer referenced in paragraphs 136 and 186 of the First Amended Petition to the Air Force. The dispositive issue for Paramount

---

[7] CDE also cites an October 1942 letter from its then Plant Manager regarding "output" from CDE being dedicated to materials for the "War Program." *See* CDE Joinder (ECF #70) at 3; Exhibit 2 to CDE Joinder (ECF #70-2). Nothing in this letter—which CDE represents was part of the record in the New Jersey CERCLA case discussed above— suggests that CDE sold capacitors directly to the federal government as opposed to "federal contractors." *See id.*

is that the evidence Paramount relies on to support its assertion that the federal government directed and controlled its production of PCB-containing products (i.e., this particular transformer) has already been found to be insufficient in *Kelly*, *Bailey*, and *Burford*. Without sufficient evidence establishing that it manufactured the transformer at issue specifically for the Air Force subject to specifications requiring the use of PCBs, Paramount cannot establish federal officer jurisdiction in this case based on *Kelly*, *Bailey*, and *Burford*.

Paramount relies exclusively on the evidence provided by GE in its Notice of Removal to support its assertion that the federal government directed and controlled Paramount's production of the transformer at issue. *See* Paramount Opp. (ECF #69) at 1. As detailed below, the evidence in the Notice of Removal is the same evidence that was presented by Monsanto in *Kelly*, *Bailey*, and *Burford*:

- The 1972 Report of the Interdepartmental Task Force. *See* Notice of Removal (ECF #1) at ¶ 29; *Kelly*, 2016 WL 3543050 at *3-*4 ("Pharmacia bases its federal officer removal on the following facts set forth in its Notice of Removal. . . . The Task Force concluded that continued use of PCBs in certain applications remained necessary . . . . In relevant part, the Task Force found that 'PCBs continued use for transformers and capacitors in the near future is considered necessary because of the significantly increased risk of fire and explosion and the disruption of electrical service which would result from a ban on PCB use.'" (quoting Report of the Interdepartmental Task Force at 7)); *see also Bailey*, 176 F. Supp. 3d at 859-60 (same).

- The federal government mandated the use of PCBs. *See* Notice of Removal (ECF #1) at ¶ 30; *Kelly*, 2016 WL 3543050 at *4 ("According to Pharmacia, the United States government directed Old Monsanto to continue to sell PCBs during this time period to fulfill military defense needs despite Old Monsanto's warnings about potential hazards associated with PCBs.").

- The Occupational Safety & Health Administration regulations from February 1972 adopted portions of the National Electric Code "that required GE to use PCBs in a number of applications." Notice of Removal (ECF #1) at ¶ 31; *Kelly*, 2016 WL 3543050 at *4 ("In February 1972, the United States Department of Labor, Occupational Safety & Health Administration ('OSHA') adopted electrical standards that required the use of PCBs in a number of applications."); *Bailey*, 176 F. Supp. 3d at 860 (same); *Burford*, 2017 WL 1315800 at *1 (same).

- Federal government procurement specifications for PCB-containing products.  *See* Notice of Removal (ECF #1) at ¶ 32; *Kelly*, 2016 WL 3543050 at *4 ("Pharmacia also asserts that in the 1970s, the Department of Defense and other federal agencies had procurement specifications for the purchase of PCBs and materials containing PCBs."); *Burford*, 2017 WL 1315800 at *1 (same).

- The Toxic Substances Control Act of 1976 ("TSCA") regulated the manufacture, sale, and use of PCBs.  *See* Notice of Removal (ECF #1) at ¶ 33; *Kelly*, 2016 WL 3543050 at *4 ("In 1976, Congress passed the Toxic Substance Control Act ('TSCA'), and delegated to the Environmental Protection Agency ('EPA') the power to promulgate a comprehensive regulatory scheme governing the manufacture, use, distribution, disposal, and remediation of a wide range of chemicals in the United States, including PCBs. Congress specifically authorized the continued manufacture of PCBs until January 1, 1979, in recognition that the continued use of PCBs remained necessary in certain applications including electrical applications in closed systems." (citations omitted)); *Bailey*, 176 F. Supp. 3d at 860 (similar); *Burford*, 2017 WL 1315800 at *1 (similar).

The foregoing evidence (and additional proof Monsanto presented) was found to be insufficient to establish the federal government directed and controlled Old Monsanto's manufacturing process in *Kelly*, *Bailey*, and *Burford*.  *See Burford*, 2017 WL 1315800 at *4 ("However, Defendants demonstrated neither that the government supervised or controlled the manufacturing process, nor that Pharmacia produced the PCBs to the government's detailed specifications, nor that the government compelled Pharmacia to produce PCBs under threat of criminal sanction."); *Bailey*, 176 F. Supp. 3d at 870 ("Defendants have not maintained that the manufacturing process itself was in any way supervised or controlled by the government."); *Kelly*, 2016 WL 3543050 at *9 ("Furthermore, the evidence does not show that the manufacturing process was supervised or controlled by the government.  Likewise, Defendants have failed to show that the PCBs were produced to the detailed specifications of the government or that Old Monsanto was compelled to produce the PCBs under threat of criminal sanction." (citations omitted)).  In each case, the Court contrasted Monsanto's evidence with that found to be sufficient in Agent Orange cases.  *See Bailey*, 176 F. Supp. 3d at 870 ("This is in contrast to, for example, Agent Orange cases, in which courts have routinely held that the manufacturers of Agent Orange were

entitled to federal officer removal in cases asserting negligence and products liability claims, because the companies directly contracted with the government for the production of Agent Orange and the chemical was produced to the detailed specifications of the government."); *see also Kelly*, 2016 WL 3543050 at *9; *Burford*, 2017 WL 1315800 at *4.

The court's holdings in *Kelly*, *Bailey*, and *Burford* are premised on guidance from the Supreme Court in *Watson v. Phillips Morris Companies, Inc.*, 551 U.S. 142 (2007). *See Kelly*, 2016 WL 3543050 at *7 (quoting *Watson*); *Bailey*, 176 F. Supp. 3d at 869-70 (same); *Burford*, 2017 WL 1315800 at *4 (same). In *Watson*, the Supreme Court made the following statements:

> In our view, the help or assistance necessary to bring a private person within the scope of the [federal officer removal] statute does *not* include simply *complying* with the law.
>
> \*   \*   \*
>
> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.
>
> \*   \*   \*
>
> The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks.

*Watson*, 551 U.S. at 152-53 (italics in original). This Court is required to follow *Watson* in assessing whether Paramount has met the requirements for federal officer jurisdiction. *See Graves v. 3M Company*, 17 F. 4th 764, 769 (8th Cir. 2021) ("We must apply the Court's guidance in

*Watson* to 3M's relationship with the military regarding its sale of commercial earplugs to private parties such as Graves.").

This Court should follow *Kelly*, *Bailey*, and *Burford* and find that the evidence relied on by Paramount is insufficient to establish the federal government directed and controlled its manufacture of the specific transformer at issue. Whether rightly or wrongly decided, *Kelly*, *Bailey*, and *Burford* provide a unified view of the evidence presented that should control here where Monsanto is seeking, *inter alia*, to enforce Paramount's defense and indemnity obligations in multiple PCB Lawsuits, including *Kelly*, *Bailey*, and *Burford*. But even if that were not the case, it is readily apparent that none of the evidence in the record establishes Paramount manufactured the specific transformer at issue (or any other PCB-containing equipment for that matter) specifically for the federal government pursuant to a contract or directive requiring the use of PCBs. That clearly distinguishes this case from *Hovespian v. Crane Co.* where the defendant presented evidence that it manufactured asbestos-containing valves for the Navy to use in ships pursuant contracts that required strict adherence to detailed and exacting military specifications (i.e., MILSPECs). *See* 4:16-CV-414-CEJ, 2016 WL 4158891 at *6-*7 (E.D. Mo. Aug. 5, 2016).

## CONCLUSION

For the foregoing reasons, and those set forth in Monsanto's Memorandum (ECF #53), the Court should grant Monsanto's Motion to Remand and promptly remand this case back to the Circuit Court of St. Louis County, Missouri.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
 Christopher M. Hohn #44124
 Nicholas J. Lamb #33486
 David M. Mangian #61728
 Nicholas Schnell #73932
 Brittney K. Mollman #65745
 One U.S. Bank Plaza
 St. Louis, Missouri 63101
 (314) 552-6000 (Telephone)
 (314) 552-7000 (Facsimile)
 chohn@thompsoncoburn.com
 nlamb@thompsoncoburn.com
 dmangian@thompsoncoburn.com
 nschnell@thompsoncoburn.com
 bmollman@thompsoncoburn.com

 *Attorneys for Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc.*

- 15 -

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing has been filed with the Court for service on all counsel of record via the Court's CM/ECF system on April 14, 2023.

/s/ David M. Mangian