UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:23-CV-00204-HEA |
| | ) |
| MAGNETEK, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
IN RESPONSE TO GE'S OPPOSITION**

**INTRODUCTION**

General Electric ("GE") cannot re-write history or the Acknowledgement And Waiver to salvage its untimely removal.[1] As GE concedes, the statutory 30-day removal period began when it waived formal service — or more particularly on "the date on which objections [to service] are waived" — and cannot be extended by the parties or the Court. GE Opp. at 4-5 & n.1. This concession dooms GE's removal because GE unequivocally waived formal service and all objections to service on January 5, 2023, when its Missouri counsel executed the Acknowledgement and Waiver and sent it to Monsanto. GE's attempt to frame its waiver as "conditional," and therefore not effective until January 31, 2023, is belied by the present tense waiver language in the Acknowledgement And Waiver, and the unrefuted Missouri law cited by Monsanto that says a written waiver of service becomes effective upon execution or, at the latest, when the waiver is filed with the court. Simply put, GE's 30-day removal clock began on January

---

[1] All terms are used as defined in Monsanto's Memorandum of Law In Support of Plaintiffs' Motion To Remand ("Monsanto Mem." or "Monsanto's Memorandum") (ECF #53) and GE's Combined Opposition To Plaintiff's Motion To Remand And Memorandum Of Law In Support Of Its Motion To Conduct Jurisdictional Discovery (ECF #68) is referred to as "GE Opp."

5, 2023, when GE executed the Acknowledgement And Waiver and expired on February 6, 2023 — two weeks before it attempted to remove this suit.

GE's attempt to distance itself from *Bailey, Burford*, and *Kelly* on the basis that those decisions are not "especially relevant" is also unavailing. The *Bailey*, *Burford*, and *Kelly* decisions are directly on point because they (1) involve PCB claims that Monsanto tendered to GE pursuant to the Special Undertaking and (2) unanimously remand federal officer removals supported by more substantial evidence than GE has presented here. Although GE claims throughout its Opposition that it had a stronger and more direct relationship with the federal government than Monsanto, it fails to meet its burden to provide competent proof to substantiate those claims. For example, GE argues that information in a 1994 GAO report establishes "that the federal government was an important PCB-containing transformer customer for GE," but fails to tell the Court that the cited GAO report *does not even mention GE*. Likewise, GE relies on the same evidence to attempt to establish government control of its manufacturing process that was rejected in *Bailey*, *Burford*, and *Kelly*. In short, GE has still not provided the Court with proof that it actually manufactured and sold sufficient amounts of PCB-containing equipment to the federal government pursuant to government specifications to establish federal officer jurisdiction under *Bailey*, *Burford*, and *Kelly*.[2]

## ARGUMENT

**I.      GE's Removal Was Untimely.**

GE does not dispute that it executed the Acknowledgement And Waiver on January 5, 2023. It argues instead that its waiver was "conditional" and its removal timely because it filed its Notice of Removal within 30 days of January 31, 2023. The Court should reject GE's argument

---

[2] Monsanto will respond to GE's Motion To Conduct Jurisdictional Discovery (ECF #64) in a separate brief.

because it is inconsistent with Supreme Court precedent, Missouri law, and the language of the Acknowledgement And Waiver.

### A. Monsanto's Position Is Consistent With Unrefuted Missouri And Federal Law.

GE's attempt to save its untimely removal begins with the misplaced claim that it "would be contrary to Supreme Court precedent, to have the clock against GE for removal commence before service." GE Opp. at 3 (emphasis removed). Section 1446 governs the time for removal and states that the 30-day period for a defendant to remove begins after a defendant receives the initial pleading "through service *or otherwise*." 28 U.C.S. § 1446(b)(1) (emphasis added). The Supreme Court has interpreted Section 1446(b)(1) to mean that a defendant's 30-day removal period begins at service or upon a waiver of service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999); *see* Monsanto Mem. at 5 & n.4. The key to the Supreme Court's holding in *Murphy Bros.* was the "bedrock principle" that a defendant is not "obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, 526 U.S. at 347.

This is not a case where Monsanto is arguing (as the respondents did in *Murphy Bros.*) that GE's removal clock began upon "mere receipt of the complaint unattended by any formal service." *Id.* at 348. Although it is undisputed that Monsanto sent a copy of the FAP (including all exhibits) to GE in October 2022, Monsanto contends that the 30-day removal clock under Section 1446(b)(1) did not begin to run until January 5, 2023, when GE executed the Acknowledgement And Waiver and sent it to Monsanto. Monsanto's position is based on Missouri law establishing that a waiver of service is effective "'when a defendant waives service in writing,'" (Monsanto Mem. at 6 (quoting *Tillman v. BNSF Ry. Co.*, No. 1:20 CV 00178 SNLJ, 2021 WL 842600 at *4 (E.D. Mo. Mar. 5, 2021) (internal quotation marks omitted))), or, at the latest, when a written

waiver is filed on the Court's docket. Monsanto Mem. at 6 (citing *Shields v. Shields*, 387 S.W.2d 242, 244 (Mo. App. 1965); *Gardner v. Gilbirds*, 106 S.W.2d 970, 971 (Mo. App. 1937)). It is also based on Judge Shaw's decision in *Harris v. Monumental Life Ins. Co.*, which held Section 1446(b)(1) barred removal more than 30 days after counsel for defendant waived formal service. No. 4:05-CV-2280 CAS, 2006 WL 1663510 at *3 (E.D. Mo. June 15, 2006).

GE does not contest Monsanto's interpretation of *Murphy Bros.*, refute the Missouri law cited by Monsanto regarding the effective date of a waiver, or attempt to distinguish *Harris*. To the contrary, GE agrees that "under *Murphy Brothers*, 'the relevant date for gauging timeliness of removal is the date on which proper service was effected' ***or 'the date on which objections [to service] . . . are waived***.'" GE Opp. at 5 n.1 (quoting *Brown v. Bristol-Myers Squibb Co.*, No. CIV A 4:02-CV-301-LW, 2002 WL 34213425 at *2 (S.D. Miss. Nov. 2, 2002) (emphasis added)); *see also* GE Opp. at 5 (citing *Alicea v. Outback Steakhouse*, No. CIV A 10-4702 JLL, 2011 WL 1675036 at *2 (D.N.J. May 3, 2011)). The date GE waived service and objections to service under Missouri law is January 5, 2023. Thus, the date that GE was "notified of the action, and brought under [the] court's authority, by formal process" for purposes of the removal clock is January 5, 2023. *Murphy Bros.*, 526 U.S. at 347.

### B.     The Acknowledgement And Waiver Is Not "Conditional."

GE next attempts to frame its waiver as "conditional" and not taking effect until January 31, 2023. That argument is belied by the plain language of the Acknowledgement And Waiver. In the Acknowledgement And Waiver, counsel for GE confirmed he was "authorized to waive formal service of process on behalf of GE" and proceeded to waive service and objections to service on GE's behalf as follows:

> I hereby (1) waive the necessity of personal service of process under Missouri Supreme Court Rule 54.13(c) on behalf of GE for this matter. . . . On behalf of GE,

- 4 -

> I further waive any and all objections to the form, time, and sufficiency of service of process as well as the defenses of insufficiency of process (Mo. Sup. Ct. R. 55.27(a)(4)) and insufficiency of service of process (Mo. Sup. Ct. R. 55.27(1)(5)) for this matter.

Acknowledgement And Waiver, Ex. 3 to Monsanto Mem. (ECF #53-3) at 6.  The use of the present tense and prefatory language (i.e., "hereby") makes clear that GE's waiver of service and objections was effective "by this document [or] by these very words." *See Hereby*, Black's Law Dictionary (11th ed. 2019); *see also Kansas City S. Ry. Co. v. St. Louis-San Francisco Ry. Co.*, 509 S.W.2d 457, 460 (Mo. 1974) ("[T]he law does not favor conditions precedent and courts will not construe contract provisions to be such unless required to do so by plain, unambiguous language.").

GE's after-the-fact and previously unstated "belie[f] . . . that it had waived service as of 'January 31, 2023,'" (GE Opp. at 4) has no import because Missouri courts construe agreements based on what they "actually say[] and not what [a party] intended secretly or without stating." *Kerrick v. Schoenberg*, 328 S.W.2d 595, 599 (Mo. 1959).  Contrary to GE's claim, (GE Opp. at 1), drafting of the Acknowledgement And Waiver was a joint effort between the parties. *See* Ex. 3 (ECF #53-3).  Accordingly, if GE intended to "conditionally" waive service or objections to service so as to delay the start of the removal clock, it could have added language saying so in the Acknowledgement And Waiver.[3]  For example, GE could have added language to the Acknowledgement And Waiver that clarified its waiver of service and objections was not effective until January 31, 2023.  GE could also have expressly conditioned the waivers on the passage of time or another condition precedent.  Better yet, if GE truly did not want its waiver to become effective until January 31, 2023, it could have simply waited until January 31, 2023 to execute the

---

[3] Notably, GE added language to the initial draft of the Acknowledgement And Waiver sent by Monsanto's counsel clarifying the scope of its waiver of defenses.  *See* Ex. 3 (ECF #53-3) at 3 ("We have a few additions/changes to the waiver, none of which I expect will be controversial.  They are attached in redline.")

Acknowledgement And Waiver as Monsanto had no authority to force GE to waive its right to service. *See* GE Opp. at 5 (characterizing the waiver as a "courtesy"). GE did none of these things, and therefore, cannot be heard to complain that the removal clock started earlier than it apparently wanted, expected, or believed.

GE's heavy reliance on language in the Acknowledgement And Waiver "acknowledg[ing] the date of service of the First Amended Petition on GE as January 31, 2023" is also unavailing. First, GE does not cite *any* Missouri law to support its claim that it can "choose the date the waiver takes effect." That's because Missouri law (again, unrefuted by GE) says that a waiver is effective when signed, or at the latest, when filed with the Court. *See Tillman*, 2021 WL 842600 at *4; *Shields*, 387 S.W.2d at 244; *Gardner*, 106 S.W.2d at 971. Second, the parties' agreement on "date of service" — as opposed to the date of waiver — was clearly for the benefit of responsive pleading deadlines in state court. *See* Acknowledgement And Waiver, Ex. 3 to Monsanto Mem. (ECF #53-3) at 6 ("I further acknowledge that under Missouri Supreme Court Rule 55.25 GE's responsive pleading to the First Amended Petition would be due within 30 days of January 31, 2023."); *id.* at 5 (email from Mr. Mangian discussing the parties negotiations over the responsive pleading deadline). GE concedes that such an agreement has no effect on the time for removal under federal law. Third, the "date of service" is not controlling for purposes of Section 1446(b)(1). Section 1446(b)(1) says "service **or otherwise**" and here GE was clearly "notified of the action, and brought under [the] court's authority, by formal process" on January 5, 2023. *Murphy Bros.*, 526 U.S. at 347.

## C. GE's "Inadvertent" Waiver Does Not Warrant Estoppel.

The Court should also reject GE's terse estoppel argument, which relies on one highly distinguishable case. *See* GE Opp. (ECF #68) at 5-6 (citing *Luchetti v. Hershey Co.* No. C 08-

1629 SI, 2008 WL 2331965 (N.D. Cal. June 4, 2008)). In *Luchetti,* the plaintiff duped the defendant with a bait-and-switch. Initially, the plaintiff mailed its verified complaint and summons to the defendant and requested that the defendant waive service under Section 415.30 of the California Code of Civil Procedure by signing an acknowledgement form that provided "service would be deemed complete on the day defendant executed" the form. *Id.* at *3. Defendant executed the acknowledgement form and returned it to the plaintiff and then removed. *Id.* at *1. In contesting the timeliness of the notice of removal, the plaintiff argued that he actually effected service before the defendant executed the acknowledgement pursuant to a different section of the California Code of Civil Procedure. *Id.* at *4. The Court estopped the plaintiff from raising this timeliness argument because it was contrary to his express representations regarding when service was effective.

Monsanto's conduct in negotiating and drafting the Acknowledgement And Waiver is not in any way comparable to what occurred in *Luchetti*. Monsanto provided the FAP to GE months before the Acknowledgement And Waiver, and it had no idea that GE was contemplating removal when it negotiated GE's waiver of service. When GE requested that the Acknowledgement And Waiver agreement designate a service date, counsel for Monsanto included it and reasonably concluded that this service date pertained to ongoing discussions between the parties regarding GE's responsive pleading deadline in state court. Further, Monsanto made clear to GE that it believed the waiver was effective immediately by filing a "Notice of Filing Waivers Of Service Of Process" on the state court docket on January 6, 2023. Ex. 4 to Monsanto Mem. (ECF #53-4). Nothing Monsanto did with regard to the negotiation, drafting, and execution of the Acknowledgement And Waiver offends principles of fundamental fairness. It was GE's choice not to include more specific language regarding the effective date of the waiver and/or to file its

Notice of Removal within 30 days of January 5, 2023. Thus, there are no grounds to estop Monsanto from enforcing the mandatory procedural requirements set forth in 28 U.S.C. § 1446(b)(1).

\* \* \*

The bottom line here is that GE executed the Acknowledgement And Waiver on January 5, 2023 but did not file its Notice of Removal until February 20, 2023. The 30-day time limit for removal in Section 1446(b)(1) is mandatory and is "strictly construed in favor of state court jurisdiction." *See Bachman v. A.G. Edwards, Inc.*, No. 4:09CV00057 ERW, 2009 WL 2182345 at \*3 (E.D. Mo. July 22, 2009); *see also Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 n. 5 (8th Cir. 2007) (remanding an untimely removal and declining the defendant's invitation to construe the time limits in Section 1446 broadly or "extend the 'liberal interpretation' to the time limits in § 1446."). GE had every opportunity to either clarify the effective date of its waiver of service or protect itself by filing its Notice of Removal within 30 days of January 5, 2023. It did neither of those things, relying instead on the parties' agreement regarding the responsive pleading deadline in state court. As a result, GE's removal is untimely and this case should be promptly remanded back to the Circuit Court of St. Louis County, Missouri.

## II. GE Has Failed To Meet Its Burden To Provide Sufficient Proof That Federal Officer Jurisdiction Exists.

This district has rigorously enforced "the removing party['s] burden of proving the grounds supporting federal officer removal" in Monsanto's prior attempts to remove PCB cases. *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 869 (E.D. Mo. 2016); *see also Kelly v. Monsanto Co.*, No. 4:15 CV 1825 JMB, 2016 WL 3543050 at \*3 (E.D. Mo. June 29, 2016) ("A defendant seeking removal under § 1442(a) must provide 'candid, specific and positive' facts in his notice of removal showing that a plaintiff's claims are based on its conduct as a federal officer." (quoting *Willingham*

*v. Morgan*, 395 U.S. 402, 408 (1969)). GE has failed to meet this burden. There is no cogent reason for this Court to depart from prior decisions remanding similar cases in *Bailey*, *Burford*, and *Kelly* because GE has failed to come forward with evidence materially distinguishing its alleged federal officer status from Monsanto's proof in those cases.

      **A.    GE Has Not Provided Proof That It Sold Substantial Amounts Of PCBs Or PCB-Containing Products To The Federal Government.**

The Court cannot simply presume facts about GE's purported sales of PCB-containing products to the federal government, especially when GE has failed to provide contracts or other meaningful evidence that it directly sold transformers to the government. *Kelly*, 2016 WL 3543050 at *3 ("A notice of removal should provide the jurisdictional facts supporting removal under § 1442(a)."). Even after Monsanto established that, at best, GE had provided proof of direct sales of PCBs to the federal government that accounted for a fractional portion — just 0.0074% — of GE's overall PCB purchases, GE declined to supply any additional evidence establishing that it had direct federal government contracts or PCB sales to the federal government. *See* Monsanto Mem. at 12-13.[4] Because GE's purported PCB sales[5] are far less than the proportion of direct government sales rejected in *Kelly, Bailey*, and *Burford* as *de minimis*, remand is appropriate. *Bailey*, 176 F. Supp. 3d at 870; *see also Kelly*, 2016 WL 3543050 at *9; *Burford v.*

---

[4] The calculation in Monsanto's Memorandum regarding the *de minimis* amount of GE's alleged PCB sales to the federal government is correct and uses the appropriate numerator (i.e., the total PCBs that GE alleges it sold to the government in its Notice of Removal) and best denominator based on available data (i.e., the PCBs that GE purchased from Old Monsanto from 1956-77). The Court cannot perform GE's proposed calculation (to the extent it is even a valid calculation) because GE has failed to provide competent evidence of either the amount of PCBs it has released into the environment or the amount of PCB-containing transformers and capacitors that it sold to the federal government.

[5] Monsanto maintains that GE has failed to establish that the "illustrative examples" in GE's Notice of Removal and the supporting exhibits — Exhibits M–O to the Notice of Removal (ECF #1-21–23) — demonstrate GE sold and shipped PCBs to federal government entities. Although GE suggests that the Monsanto documents it attaches showing shipments of Pyranol indicate that the federal government had previously purchased transformers manufactured by GE, it fails to provide any contracts or other proof establishing that the government actually purchased transformers directly from GE and, if so, whether the number of transformers the government purportedly purchased represented an appreciable proportion of GE's total transformer sales. GE Opp. at 7 n.3.

*Monsanto*, Co., No. 4:16CV536, 2017 WL 1315800 at *6 (E.D. Mo. Apr. 10, 2017).

GE cannot overcome this evidentiary deficiency by relying on what it creatively characterizes as "additional evidence supporting removal." GE Opp. at 8. To begin, the 1994 GAO report GE attaches to its Opposition as Exhibit C is not "additional" or new evidence. GE attached a substantially similar version of the same report to its notice of removal. *Compare* Ex. I to Notice of Removal (ECF #1-17), *with* Ex. C to GE Opp. (ECF #68-3). But more importantly, GE fails to tell the Court that this "additional" GAO report *does not even mention GE*. *See generally id.*; *see also* Monsanto Mem. at 10-11 n.7. This begs the question: How can a GAO report that does not mention GE establish that federal government sales "accounted for a meaningful portion of GE's transformer business?" GE Opp. at 9. It cannot. The same GAO report standing alone cannot reasonably be considered proof that GE had substantial direct contracts to supply the federal government with transformers or capacitors for purposes of federal officer jurisdiction. *See generally* Ex. C to GE Opp. (ECF #68-3).[6]

**B.     GE Has Not Provided Proof That The PCB-Containing Products It Sold To The Federal Government Were Manufactured Pursuant To Government Specifications.**

Even if GE had provided proof that it manufactured and sold a substantial amount of PCB-containing transformers to the federal government (it has not), it has still not substantiated its claim that it did so "in compliance with government specifications." GE Opp. at 11 (quoting Ex. H to

---

[6] The remaining "additional evidence" GE "located" is a World War II era Monsanto letter to the government requesting additional funding that would allow Monsanto to increase its diphenyl production. Ex B. to GE Opp. (ECF #68-2). Monsanto relied upon the exact same document in *Bailey*, *Kelly*, and *Burford*. *See Bailey v. Monsanto Co.*, Case No. 4:15-cv-844 (ECF #75-1) at 16-21; *Kelly v. Monsanto Co.*, Case No. 4:15-cv-1825 (ECF #23-4) at 9-14; *Burford v. Monsanto Co.*, Case No 16-cv-536 (ECF #1-4). Although this letter notes that GE was one of four electrical manufacturers that used diphenyls manufactured by Monsanto to support the government's defense efforts, it does not specify what portion of GE's sales were directly to the government or made through licensees. Ex. B to GE Opp. (ECF #68-2) at 9. Further, the *Bailey* court accounted for "amounts manufactured to meet the needs of defense contractors during the years of the Second World War," among other things, when concluding Monsanto had not established federal officer jurisdiction. *Bailey*, 176 F. Supp. 3d at 870.

GE Opp. (ECF # 68-8) at 6 n.10). The evidence GE relies on for this requirement is the same evidence Monsanto relied on in *Bailey*, *Burford*, and *Kelly*:

- The 1972 Report of the Interdepartmental Task Force. *See* Notice of Removal (ECF #1) at ¶ 29; *Kelly,* 2016 WL 3543050 at *3-*4 ("Pharmacia bases its federal officer removal on the following facts set forth in its Notice of Removal. . . . The Task Force concluded that continued use of PCBs in certain applications remained necessary . . . .  In relevant part, the Task Force found that 'PCBs continued use for transformers and capacitors in the near future is considered necessary because of the significantly increased risk of fire and explosion and the disruption of electrical service which would result from a ban on PCB use.'" (quoting Report of the Interdepartmental Task Force at 7)); *see also Bailey*, 176 F. Supp. 3d at 859-60 (same).

- The federal government mandated the use of PCBs. *See* Notice of Removal (ECF #1) at ¶ 30; *Kelly*, 2016 WL 3543050 at *4 ("According to Pharmacia, the United States government directed Old Monsanto to continue to sell PCBs during this time period to fulfill military defense needs despite Old Monsanto's warnings about potential hazards associated with PCBs.").

- The Occupational Safety & Health Administration regulations from February 1972 adopted portions of the National Electric Code "that required GE to use PCBs in a number of applications." Notice of Removal (ECF #1) at ¶ 31; *Kelly*, 2016 WL 3543050 at *4 ("In February 1972, the United States Department of Labor, Occupational Safety & Health Administration ('OSHA') adopted electrical standards that required the use of PCBs in a number of applications."); *Bailey*, 176 F. Supp. 3d at 860 (same); *Burford*, 2017 WL 1315800 at *1 (same).

- Federal government procurement specifications for PCB-containing products. *See* Notice of Removal (ECF #1) at ¶ 32; *Kelly*, 2016 WL 3543050 at *4 ("Pharmacia also asserts that in the 1970s, the Department of Defense and other federal agencies had procurement specifications for the purchase of PCBs and materials containing PCBs."); *Burford*, 2017 WL 1315800 at *1 (same).

- The Toxic Substances Control Act of 1976 ("TSCA") regulated the manufacture, sale, and use of PCBs. *See* Notice of Removal (ECF #1) at ¶ 33; *Kelly*, 2016 WL 3543050 at *4 ("In 1976, Congress passed the Toxic Substance Control Act ('TSCA'), and delegated to the Environmental Protection Agency ('EPA') the power to promulgate a comprehensive regulatory scheme governing the manufacture, use, distribution, disposal, and remediation of a wide range of chemicals in the United States, including PCBs. Congress specifically authorized the continued manufacture of PCBs until January 1, 1979, in recognition that the continued use of PCBs remained necessary in certain applications including electrical applications in closed systems." (citations omitted)); *Bailey*, 176 F. Supp. 3d at 860 (similar); *Burford*, 2017 WL 1315800 at *1 (similar).

The foregoing evidence was found to be insufficient to establish the federal government directed and controlled Old Monsanto's manufacturing process in *Kelly*, *Bailey*, and *Burford*. *See Burford*, 2017 WL 1315800 at *4 ("However, Defendants demonstrated neither that the government supervised or controlled the manufacturing process, nor that Pharmacia produced the PCBs to the government's detailed specifications, nor that the government compelled Pharmacia to produce PCBs under threat of criminal sanction."); *Bailey*, 176 F. Supp. 3d at 870 ("Defendants have not maintained that the manufacturing process itself was in any way supervised or controlled by the government."); *Kelly*, 2016 WL 3543050 at *9 ("Furthermore, the evidence does not show that the manufacturing process was supervised or controlled by the government.  Likewise, Defendants have failed to show that the PCBs were produced to the detailed specifications of the government or that Old Monsanto was compelled to produce the PCBs under threat of criminal sanction." (citations omitted)).  In each case, the court contrasted Monsanto's evidence with that found to be sufficient in Agent Orange cases.  *See Bailey*, 176 F. Supp. 3d at 870 ("This is in contrast to, for example, Agent Orange cases, in which courts have routinely held that the manufacturers of Agent Orange were entitled to federal officer removal in cases asserting negligence and products liability claims, because the companies directly contracted with the government for the production of Agent Orange and the chemical was produced to the detailed specifications of the government."); *see also Kelly*, 2016 WL 3543050 at *9; *Burford*, 2017 WL 1315800 at *4.

GE's attempt to distinguish *Bailey*, *Burford*, and *Kelly* on this issue falls flat for three reasons.  First, GE provides no support for its claim that "[h]ere, in contrast [to Monsanto in *Bailey*, *Burford*, and *Kelly*], the Federal Government required GE to use PCBs in its products (like many transformers sold to the military and others)."  GE Opp. (ECF #68) at 12.  Second, the limited

evidence GE cites in this section of its Opposition (GE Opp. at 11) — a footnote from congressional testimony on the TCSA stating that the Department of Defense, the General Services Administration, and other agencies had "procurement specifications . . . [for] materials containing PCBs" — does not reference GE or otherwise imply that GE manufactured and sold transformers to the federal government pursuant to these procurement specifications. Ex. H to GE Opp. (ECF #68-8) at 6 n.10.

Third, Monsanto raised compliance with the same government regulations in *Burford*, *Bailey*, and *Kelly*, and the Court found that evidence insufficient based on the Supreme Court's decision in *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007).[7] *See Burford*, 2017 WL 1315800 at *4 ("'The fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail does not bring that company within the scope of' the statute 'and thereby permit removal.'" (quoting *Watson*, 551 U.S. at 145 (ellipses omitted)); *see*

---

[7] The Supreme Court provided the following relevant guidance in *Watson*:

> In our view, the help or assistance necessary to bring a private person within the scope of the [federal officer removal] statute does *not* include simply *complying* with the law.
>
> \* \* \*
>
> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.
>
> \* \* \*
>
> The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks.

*Watson*, 551 U.S. at 152-53 (italics in original). This Court is required to follow *Watson* in assessing whether GE has met the requirements for federal officer jurisdiction. *See Graves v. 3M Company*, 17 F. 4th 764, 769 (8th Cir. 2021) ("We must apply the Court's guidance in *Watson* to 3M's relationship with the military regarding its sale of commercial earplugs to private parties such as Graves.").

*also Bailey*, 176 F. Supp. 3d at 869 (noting Supreme Court has rejected "a cigarette manufacturer's argument that it acted under the federal government because it was subjected to heavy regulation" (citing *Watson*, 551 U.S. at 152); *see also Kelly*, 2016 WL 3543050 at *8 (adopting relevant analysis from *Bailey*).

\* \* \*

GE has failed to meet its burden to establish federal officer jurisdiction in this Court. Whether rightly or wrongly decided, *Kelly*, *Bailey*, and *Burford* are on point and should control the result here because GE relies on the same, or less substantial, evidence than Monsanto did in those cases to attempt to establish federal officer jurisdiction. The *Kelly*, *Bailey*, and *Burford* decisions present a unified view of the law in this district on federal officer removal in PCB cases, and therefore not following them in this case where the evidence and the arguments are essentially the same would be internally inconsistent. It would also be unjust to Monsanto for the Court to deviate from *Kelly*, *Bailey*, and *Burford* because Monsanto is seeking, *inter alia*, to enforce GE's defense and indemnity obligations in multiple PCB lawsuits, including *Kelly*, *Bailey*, and *Burford*.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. respectfully request that the Court grant their Motion to Remand and remand this case back to the Circuit Court of St. Louis County, Missouri.

---

[8] The fact that Monsanto has advocated in favor of federal officer removal in PCB cases is not relevant here. It also ignores the fact that this district has repeatedly refused to exercise jurisdiction in those cases, which are cases that Monsanto has tendered to GE pursuant to the Special Undertaking. GE has failed to materially distinguish *Bailey, Burford,* and *Kelly*, and thus, those decisions should control here. Indeed, it would be internally inconsistent and unjust to Monsanto if this Court were to allow GE to remove this case when Monsanto was unable to remove *Bailey*, *Burford*, and *Kelly*.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ David M. Mangian
    Christopher M. Hohn #44124
    Nicholas J. Lamb #33486
    David M. Mangian #61728
    Nicholas Schnell #73932
    Brittney K. Mollman #65745
    One U.S. Bank Plaza
    St. Louis, Missouri 63101
    (314) 552-6000 (Telephone)
    (314) 552-7000 (Facsimile)
    chohn@thompsoncoburn.com
    nlamb@thompsoncoburn.com
    dmangian@thompsoncoburn.com
    nschnell@thompsoncoburn.com
    bmollman@thompsoncoburn.com

    *Attorneys for Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing has been filed with the Court for service on all counsel of record via the Court's CM/ECF system on April 14, 2023.

/s/ David M. Mangian