**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MONSANTO COMPANY, <br> PHARMACIA, LLC, AND SOLUTIA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MAGNETEK, INC., <br> GENERAL ELECTRIC CO., <br> PARAMOUNT GLOBAL, <br> KYOCERA AVX COMPONENTS, <br> CORNELL DUBILIER ELECTRONICS, INC., <br> and THE GILLETTE COMPANY, LLC, <br><br> Defendants. | CASE NO: 4:23-cv-00204-HEA |

**DEFENDANTS GENERAL ELECTRIC CO., PARAMOUNT GLOBAL, KYOCERA AVX COMPONENTS CORP., CORNELL-DUBILIER ELECTRONICS, INC., AND THE GILLETTE COMPANY, LLC'S BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS COUNTS I-IV AND VII OF PLAINTIFFS' FIRST AMENDED PETITION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT OF RELEVANT ALLEGATIONS ..................................................... 3

I.     ALLEGATIONS REGARDING THE SPECIAL UNDERTAKINGS ............................ 3

II.    ALLEGATIONS REGARDING PCB CONTAMINATION ............................................ 4

III.   ALLEGATIONS REGARDING THE UNDERLYING PCB LITIGATIONS ................. 5

IV.    ALLEGATIONS REGARDING OLD MONSANTO'S AND NEW
       MONSANTO'S STANDING TO ENFORCE THE SUS ................................................. 6

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.     THE COURT SHOULD DISMISS PLAINTIFFS' BREACH OF CONTRACT
       AND DECLARATORY JUDGMENT CLAIMS (COUNTS I-IV) ................................. 8

       A.    Counts I Through IV Should Be Dismissed Because Plaintiffs Do Not
             Allege That The PCB Lawsuit Liabilities Fall Within The Scope Of
             Defendants' SUs ......................................................................................... 8

             1.    The Petition Does Not Connect Any PCB Lawsuit Liabilities to
                   PCBs Sold To Specific Defendants ............................................. 8

             2.    Plaintiffs' Theory Of Collective Liability Fails As A Matter Of
                   Law ............................................................................................ 12

       B.    Plaintiffs' Claims For Declaratory Judgments As To Any Future Lawsuits
             Should Be Dismissed As Unripe (Counts III and IV) .......................... 13

       C.    Plaintiffs' Claim For A Declaratory Judgment Of Defendants' Duty To
             Indemnify Ongoing Lawsuits Also Should Be Dismissed As Unripe ................ 15

       D.    Counts I Through IV Should Be Dismissed As To Old And New
             Monsanto Because They Do Not Plausibly Allege Standing To Enforce
             The SUs ...................................................................................................... 16

             1.    Plaintiffs Do Not Plausibly Allege That Either Old Monsanto Or
                   New Monsanto Has Standing As Parties To The SUs .............. 17

             2.    Plaintiffs Do Not Plausibly Allege That Either Old Monsanto Or
                   New Monsanto Are Intended Third-Party Beneficiaries Of The
                   SUs ............................................................................................ 18

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE
CONTRIBUTION ................................................................................. 20

     A.     Plaintiffs Fail To Allege Joint Liability ................................................ 21

     B.     Plaintiffs Improperly Lump Together All Defendants And Fail To
Adequately Allege Specific Facts Against Each Defendant ................................. 22

     C.     Plaintiffs Fail To State A Claim As To PCB Lawsuits Resolved By
Settlement ..................................................................................... 23

CONCLUSION ........................................................................................ 23

# **TABLE OF AUTHORITIES**

## **CASES**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
No. 20-CV-4041-ALC, 2021 WL 4460753
(S.D.N.Y. Sept. 29, 2021)
*aff'd inrelevant part and remanded* 57 F.4th 85 (2d Cir. 2023) ...................................... 4, 10, 14

*Alltru Federal Credit Union v. Starnet Ins. Co.*,
No. 4:21-CV-01334-JAR, 2022 WL 4482405
(E.D. Mo. Sept. 27, 2022) ................................................................................................. 11

*Amerisure Mut. Ins. Co. v. Paric Corp.*,
No. 4:04CV430-DJS, 2005 WL 2708873
(E.D. Mo. Oct. 21, 2005) ................................................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 7, 8, 10, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 8

*Boggs v. Am. Optical Co.*,
No. 4:14-CV-1434-CEJ, 2015 WL 300509
(E.D. Mo. Jan. 22, 2015) .................................................................................................... 22

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ............................................................................................... 8

*City of St. Joseph v. Southwestern Bell Tel., L.P.*,
No. 03-CV-6150-SOW, 2005 WL 6125133
(W.D. Mo. Jan. 7, 2005) ..................................................................................................... 23

*Cohn v. Dwyer*,
959 S.W.2d 839 (Mo. Ct. App. 1997) ................................................................................. 12

*Cole v. Homier Distrib. Co.*,
599 F.3d 856 (8th Cir. 2010) ............................................................................................... 8

*Daniele v. Missouri Dep't of Conservation*,
282 S.W.3d 876 (Mo. Ct. App. 2009) ................................................................................. 17

*Davis v. Eisai, Inc.*,
No. 4:20-00762-CV-DGK, 2021 WL 4810704
(W.D. Mo. Oct. 14, 2021) ................................................................................................... 10

*Denny's Inc. v. Avesta Enterprises, Ltd.*,
    884 S.W.2d 281 (Mo. Ct. App. 1994)........................................................ 9

*Doe v. Washington Univ.*,
    434 F. Supp. 3d 735 (E.D. Mo. 2020) ...................................................... 3

*Drury Co. v. Missouri United Sch. Ins. Counsel*,
    455 S.W.3d 30 (Mo. Ct. App. 2014)......................................................... 18

*Ferrell v. Mercantile Trust Co., N.A.*,
    490 S.W.2d 397 (Mo. Ct. App. 1973)....................................................... 14

*Former Vacuum & Janitor Supply Co., Inc. v. Renard Paper Co., Inc.*,
    No. 4:06CV00905 RWS, 2007 WL 9805665
    (E.D. Mo. July 2, 2007) ...................................................................... 21, 22

*Gramex Corp. v. Green Supply, Inc.*,
    89 S.W.3d 432 (Mo. banc 2002)............................................................... 23

*Hartford Accident Indem. v. DOE Run Res.*,
    663 F. Supp. 2d 771 (E.D. Mo. 2009) ................................................... 13, 14

*Harvey v. Great Circle*,
    No. 4:19-CV-00902 NAB, 2021 WL 4552135
    (E.D. Mo. Oct. 5, 2021) .......................................................................... 22

*Hensley v. Dormeyer*,
    102 S.W.2d 761 (Mo. Ct. App. 1937)....................................................... 12

*Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*,
    No. 4:17-CV-00764 JAR, 2017 WL 5885669
    (E.D. Mo. Nov. 29, 2017) ...................................................................... 15

*Klenc v. John Beal, Inc.*,
    484 S.W.3d 351 (Mo. Ct. App. 2015)................................................... 18, 20

*Little v. Kirkstall Road Enterprises, Inc.*,
    No. 4:19CV1786 (RLW), 2020 WL 435747
    (E.D. Mo. Jan. 28, 2020)........................................................................ 16

*Lobo Painting, Inc. v. Lamb Const. Co.*,
    231 S.W.3d 256 (Mo. Ct. App. 2007)......................................................... 8

*Martinez v. Lankster*,
    595 S.W.2d 316 (Mo. Ct. App. 1980)....................................................... 21

*McMullin v. Borgers*,
    806 S.W.2d 724 (Mo. Ct. App. 1991)....................................................... 17

*McNeill Trucking, Co. Inc. v. Missouri State Hwy. & Transp. Comm'n,*
   35 S.W.3d 846 (Mo. banc 2001) .................................................................... 21

*Missouri Soybean Ass'n v. Missouri Clean Water Comm'n,*
   102 S.W.3d 10 (Mo. 2003) ......................................................................... 13

*OFW Corp. v. City of Columbia,*
   893 S.W.2d 876 (Mo. Ct. App. 1995) ....................................................... 19

*Ponchik v. King,*
   957 F.2d 608 (8th Cir. 1992) .................................................................... 16

*Rehkemper & Sons, Inc. v. Mid-Rivers Dev. and Const. LLC,*
   No. 4:21-CV-00380-SEP, 2021 WL 6072496
   (E.D. Mo. Dec. 23, 2021) ......................................................................... 13

*Rice v. Interfood, Inc.,*
   No. 4:13CV1171 HEA, 2014 WL 916951
   (E.D. Mo. Mar. 10, 2014)
   *aff'd,* 709 F. App'x 415 (8th Cir. 2018) ................................................... 6

*Schaaf v. Residential Funding Corp.,*
   517 F.3d 544 (8th Cir. 2008) .................................................................... 11

*Schubert v. Trailmobile Trailer, L.L.C.,*
   111 S.W.3d 897 (Mo. Ct. App. 2003) ....................................................... 12

*Shapiro Sales Co. v. Alcoa, Inc.,*
   No. 4:06-CV-638 CDP, 2006 WL 2228987
   (E.D. Mo. Aug. 3, 2006) ........................................................................... 15

*Simply Thick, LLC v. Thermo Pac, LLC,*
   No. 4:13-CV-1036 CAS, 2015 WL 5734920
   (E.D. Mo. Sept. 29, 2015) ......................................................................... 21

*State ex. rel. Vincent v. Schneider,*
   194 S.W. 3d 853 (Mo. 2006) ...................................................................... 9

*Stiriling v. Ramsey,*
   No. 4:17-CV-1206 RLW, 2018 WL 3489592
   (E.D. Mo. July 19, 2018) ........................................................................... 13

*Tatone v. SunTrust Mortg., Inc.,*
   857 F. Supp. 2d 821 (D. Minn. 2012) ....................................................... 22

*Teter v. Morris,*
   650 S.W.2d 277 (Mo. Ct. App. 1982) ............................................. 18, 19, 20

*Thompson v. Davis*,
  No. 4:18-CV-267 RWS, 2018 WL 2238193
  (E.D. Mo. May 16, 2018) ................................................................................................ 23

*Tuttle v. Muenks*,
  21 S.W.3d 6 (Mo. Ct. App. 2000) ................................................................................... 19

*Urdan v. WR Capital Partners, LLC*,
  No. 2018-0343-JTL, 2019 WL 3891720
  (Del. Ch. Aug. 19, 2019) ................................................................................................. 17

*Verni v. Cleveland Chiropractic College*,
  212 S.W.3d 150 (Mo. 2007) ........................................................................................... 16

*Wax'n Works v. City of St. Paul*,
  213 F.3d 1016 (8th Cir. 2000) ........................................................................................ 13

## RULES

Fed. R. Civ. P. 8 ........................................................................................................................ 7

Fed. R. Civ. P. 12 ........................................................................................................... 3, 7, 13

## OTHER AUTHORITIES

18 Am. Jur. 2d Contribution § 2 .............................................................................................. 21

In 1972, Defendants and a predecessor Monsanto entity entered into separate agreements whereby each Defendant agreed to defend and indemnify that singular Monsanto entity for liabilities in connection with polychlorinated biphenyls ("PCBs") sold to that Defendant (the "Special Undertakings" or "SUs"). (*See* Pet. Exs., 1-6 (emphasis added).)[1] This case, however, is not brought by that singular Monsanto entity. It is instead brought by three different independent companies with historical ties to Monsanto ("Plaintiffs"). Moreover, Plaintiffs improperly treat the separate Defendants—each of whom has its own SU and history with Monsanto—as one collective entity, ignoring the important Defendant-specific and other limitations on liability each Defendant's SU contains. Plaintiffs allege they are entitled to defense and indemnity concerning thousands[2] of distinct underlying PCB liabilities, yet fail to plead a connection between any liability and PCBs sold to any particular Defendant. With Paramount, for example, not once do Plaintiffs allege that PCBs sold to Westinghouse (Paramount's predecessor in interest) were at issue in any of the underlying claims. The same is true for the other Defendants.

Plaintiffs instead appear to pin their hopes on a misguided theory of collective liability. The First Amended Petition ("Petition") asserts that Defendants have a collective contractual duty to Plaintiffs under their various SUs; that KAVX, for example, can somehow be held responsible for the other Defendants' liabilities under their separate SUs, and vice versa. This theory fails as a matter of law. The plain language of the SUs shows that each requires a

---

[1] Defendants accept the Petition's allegations as true for purposes of this Motion only. Defendants do not admit those allegations, including those alleging the contractual validity of the SUs.

[2] There are 85 actions identified in Plaintiffs' Petition Exhibit 8 list of tendered PCB Lawsuits. The Court can consider that one of the Water Cases in Exhibit 8, *City of Long Beach v. Monsanto Co., et al.*, U.S. District Court for the Northern District of California Case No. 2:16-cv-03493-FMO-AS, is a collective action involving thousands of municipalities' separate claims. The as-filed version of the class settlement agreement, which lists the municipality class members, is available at: https://pcbclassaction.com/important-documents.php.

connection between the underlying liability and <u>PCBs sold to that particular Defendant</u>. In other words, no Defendant agreed to defend or indemnify Plaintiffs on a liability wholly unrelated to PCBs sold to that Defendant.

Further, Plaintiffs' claims for declaratory judgment as to Defendants' duty to defend or indemnify future lawsuits and to indemnify ongoing lawsuits must be dismissed. Those claims are premature and not ripe because they seek declarations of rights regarding events that have not occurred and may never occur.

Still further, Plaintiffs fail to sufficiently allege that two of the Plaintiffs, Old Monsanto and New Monsanto, have standing to enforce any SU. Plaintiffs plead that Old Monsanto assigned <u>all</u> of its rights in the SUs to Solutia in 1997—long before any of the underlying PCB litigation began—which as a matter of law deprived Old Monsanto of any further contractual standing. With respect to New Monsanto, Plaintiffs do not sufficiently allege it has ever had rights under any SU, including Plaintiffs' attempts to assert that New Monsanto is an intended third-party beneficiary. The Court should dismiss Old and New Monsanto's breach of contract and declaratory judgment claims.

Finally, Plaintiffs fail to state a claim for equitable contribution. First, Plaintiffs don't allege that Plaintiffs and Defendants are joint tortfeasors liable to the PCB Lawsuit plaintiffs for the same injury. Second, the Petition improperly lumps together all Defendants with impermissible group pleading and fails to adequately allege specific facts against each Defendant. Third, for those PCB Lawsuits resolved by settlement, Plaintiffs fail to overcome Missouri law's "additional obstacles" to pleading equitable contribution.[3]

For all of these reasons, the Court should dismiss Counts I-IV and VII.

---

[3] Defendants apply Missouri law for purposes of this Motion only.

## STATEMENT OF RELEVANT ALLEGATIONS

### I.    ALLEGATIONS REGARDING THE SPECIAL UNDERTAKINGS

PCBs are a class of unique, chemically inert and heat-resistant chemicals that were manufactured and sold by Old Monsanto between approximately 1935 and 1977. (First Am. Pet., ECF No. 1-3, hereafter "Pet.," ¶ 2.) Through 1975, Old Monsanto sold an estimated 1.25 billion pounds of PCBs to numerous industrial customers, including (but not limited to) Defendants or their predecessors-in-interest, who incorporated those PCBs into a variety of finished products. (*Id.*; *see also* EPA, PCBs in the United States Industrial Use and Environmental Distribution at 25 (Feb. 25, 1976) (the "EPA PCB Report").)[4] Of the 440 million pounds of PCBs that the EPA estimated to be in the environment, only 43% came from capacitor and transformer production wastes and obsolete electrical equipment in landfills and dumps. (Pet. ¶ 108.) Defendants or their predecessors-in-interest were members of the electrical industry—which again, accounted for some, but not <u>all</u>, PCB use, and Defendants are not all purchasers even for electrical uses. (*Id.* ¶¶ 2, 3, 28.)

In early 1972, each Defendant entered into an agreement with Old Monsanto titled "Special Undertaking by Purchasers of Polychlorinated Biphenyls." (*Id.*) Those SUs are Exhibits 1 through 6 to the Petition.

From 1972 to 1977, Old Monsanto sold approximately 133 million pounds of PCBs to Defendants. (*Id.* ¶ 51.) Old Monsanto alleges that Defendants or their predecessors are the six largest purchasers of PCBs who signed SUs that remain viable today. (*Id.* ¶¶ 52-53.) Plaintiffs do

---

[4] Plaintiffs reference the EPA PCB Report in multiple paragraphs of their Petition and thus the Court can consider it on a Rule 12 motion to dismiss. (*See, e.g.*, Pet. ¶ 28.) *See Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 745-746 (E.D. Mo. 2020). An excerpted copy of the EPA PCB Report is attached as **Exhibit A**.

not, and cannot, allege Defendants were the only purchasers of PCBs from Old Monsanto during that time. (*See id.*) In fact, at least 26 different entities signed SUs. *See, e.g.*, *Admiral Ins. Co. v. Niagara Transformer Corp.*, No. 20-CV-4041-ALC, 2021 WL 4460753, at *3 (S.D.N.Y. Sept. 29, 2021) (explaining that in April 2017, Monsanto sent a letter to 26 companies that had entered into an SU, including Niagara Transformer Corporation who, Monsanto alleged, had purchased over 2.3 million pounds of PCBs after January 1, 1972).

## II.   ALLEGATIONS REGARDING PCB CONTAMINATION

Plaintiffs allege GE caused PCB contamination in: Oakland, California; the Hudson River in New York; the Housatonic River in Massachusetts; Spokane, Washington; Portland, Oregon; the Willamette River in Oregon; Eugene, Oregon; Milford, New Hampshire; East Flat Rock, North Carolina; Schenectady, New York; Shepherdsville, Kentucky; Moreau, New York; Rome, Georgia; Brandon, Florida; Anaheim, California; and West Virginia. (Pet. ¶¶ 122-134.)

Plaintiffs allege Paramount caused PCB contamination in: the Duwamish Waterway in Washington; the Willamette River in Oregon; Portland, Oregon; Los Angeles, Sunnyvale, and Emeryville, California; Bloomington, Indiana; Minneapolis, Minnesota; Muncie, Indiana; Sharon, Pennsylvania; Washington, D.C.; Cleveland, Ohio; Union City, Indiana; Utica, New York; Yorkville, New York; and Needham, Massachusetts. (*Id.* ¶¶ 135-147.)

Plaintiffs allege KAVX caused PCB contamination in: New Bedford, Massachusetts; New Bedford Harbor; the Acushnet River; Buzzards Bay; Hamilton, Ontario; and the Hamilton Harbor. (*Id.* ¶¶ 148-154.)

Plaintiffs alleged CDE caused PCB contamination in the Rhode Island Sound and specific locations in Massachusetts: New Bedford; the Acushnet River Estuary; New Bedford Harbor; Buzzards Bay; the Vineyard Sound; and Fairhaven. (*Id.* ¶¶ 155-160.)

Plaintiffs allege Gillette caused PCB contamination in: Waynesboro and the Green River in Tennessee; Glasgow, Kentucky; Greencastle and Indianapolis, Indiana; and Louisiana. (*Id.* ¶¶ 161-166.)

Old Monsanto itself caused PCB contamination. (*See e.g.,* Pet. Ex. 9, ¶ 26 (alleging that Monsanto, in addition to its customers and end users, dumped PCBs into the environment for decades).)

## III.   ALLEGATIONS REGARDING THE UNDERLYING PCB LITIGATIONS

Plaintiffs alleged they incurred liabilities in four types of underlying PCB litigations (collectively, the "PCB Lawsuits"). First, Plaintiffs were sued in a series of "Food Chain" cases, in which approximately 700 different plaintiffs alleged they suffered from various types of Non-Hodgkin's lymphoma as a result of environmental and food chain PCB exposure. (Pet. ¶¶ 169, 174.) The Food Chain plaintiffs alleged that it is impossible to disaggregate the PCBs to which they were exposed or to determine their particular source. (*Id.* ¶ 171.)

Next, Plaintiffs allege they were sued in "Water Cases" involving hundreds of different municipalities. (*Id.* ¶ 178.) The Water Case plaintiffs allege that PCBs have entered into the subject bodies of water through various sources, including improper disposal by Old Monsanto's customers, PCB releases from products manufactured by Old Monsanto's customers, and leaching from landfills. (*Id.* ¶ 179.) The Water Case plaintiffs allege that PCBs escaped from electrical equipment cause environmental contamination, but do not identify more specifically the sources of the PCBs found in the water. (*Id.* ¶ 181.)

Third, Plaintiffs allege they were named as defendants in numerous "School Cases." (*Id.* ¶ 189.) The School Case plaintiffs allege that PCBs were used in school building products, and that Plaintiffs should bear the cost of cleaning or rebuilding schools due to PCB contamination.

(*Id.* ¶¶ 189-190.) Further, the "Sky Valley School Cases" involve hundreds of plaintiffs claiming injuries resulting from PCBs at the Sky Valley Education Center in Washington. (*Id.* ¶ 193.)

Finally, Plaintiffs allege they were sued in several "Occupational Cases" in which the underlying plaintiffs allege they were exposed to PCBs manufactured by Plaintiffs, including through leaks from lighting ballasts. (*Id.* ¶¶ 197-198.)

Plaintiffs do not allege specific Defendant releases, much less post-1972 releases, are at issue in <u>any</u> of the PCB Lawsuits for which they seek defense and indemnity. (*See generally* Pet.) Nevertheless, Plaintiffs bring breach of contract claims against Defendants based on Defendants' failure to defend and indemnify Plaintiffs for the PCB Lawsuits. (*Id.* at Counts I & II.) Plaintiffs also bring claims for, among other things, declaratory judgments that Defendants owe duties of defense and indemnity for the PCB Lawsuits and other, unidentified, future litigations. (*Id.* at Counts III & IV.)

## IV.   ALLEGATIONS REGARDING OLD MONSANTO'S AND NEW MONSANTO'S STANDING TO ENFORCE THE SUS

Plaintiffs are three distinct business entities: (1) Pharmacia, LLC, (2) Solutia, Inc., and (3) Monsanto Company. (*Id.* ¶¶ 7-9.)

Pharmacia, LLC is "Old Monsanto" in the Petition, i.e., the entity that executed the SUs with Defendants in 1972. (*Id.* ¶¶ 1, 7.)

Solutia, Inc. is a company created in 1997, two decades after Old Monsanto ceased selling or manufacturing PCBs.[5] Solutia never manufactured or sold PCBs. (*Id.* ¶ 8.) Solutia was

---

[5] *See* Missouri Secretary of State Gen. Business details for Solutia Inc., attached as **Exhibit B**, available at https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=530749. The Court may take judicial notice and consider on a motion to dismiss that the Exhibit A public record shows that Solutia was not created until 1997. *See Rice v. Interfood, Inc.*, No.

formed as part of a 1997 Old Monsanto spin-off transaction. (*Id.*) In connection with that spin-off, Old Monsanto assigned to Solutia its "right, title, and interest . . . in and to all of the Chemical Assets" of Old Monsanto, including "all rights in the nature of insurance, indemnification or contribution." (*Id.*) Thus, in 1997, Old Monsanto assigned to Solutia "the rights to enforce the Special Undertaking Agreements." (*Id.*)

Monsanto Company is pleaded as "New Monsanto," an entity created in 2000[6] as part of another Old Monsanto spin-off. (*Id.* ¶ 9.) Like Solutia, New Monsanto never manufactured or sold PCBs. (*Id.*)

In 2008, New Monsanto and Solutia entered into an Amended and Restated Settlement Agreement in connection with Solutia's Chapter 11 reorganization. (*Id.*) Old Monsanto executed a Power of Attorney that grants New Monsanto authority to take "all actions" over certain claims, including the PCB Lawsuits, and provides that New Monsanto is Old Monsanto's "true and lawful agent and attorney." (*Id.*) Pursuant to those agreements, New Monsanto is and has been paying all three Plaintiffs' costs to defend the PCB Lawsuits, and also paid or agreed to pay to settle some of the Food Chain cases and Water Cases. (*Id.*)

## <u>LEGAL STANDARD</u>

To meet the pleading standard of Rule 8, and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The requirement of facial plausibility means the factual content of a complaint's allegations must "allow[] the

---

4:13CV1171 HEA, 2014 WL 916951, at *3 (E.D. Mo. Mar. 10, 2014), *aff'd*, 709 F. App'x 415 (8th Cir. 2018).

[6] *See* Missouri Secretary of State Gen. Business details for Monsanto, attached as **Exhibit C**, available at https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=540968.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## ARGUMENT

### I.   THE COURT SHOULD DISMISS PLAINTIFFS' BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS (COUNTS I-IV)

#### A.   Counts I Through IV Should Be Dismissed Because Plaintiffs Do Not Allege That The PCB Lawsuit Liabilities Fall Within The Scope Of Defendants' SUs

##### 1.   The Petition Does Not Connect Any PCB Lawsuit Liabilities to PCBs Sold To Specific Defendants

To trigger its defense and indemnity obligations, each SU's plain language requires a connection between a PCB Lawsuit and, at a minimum, PCBs sold to the signatory Defendant.[7] The Petition fails to plead that required connection.

In interpreting a contract, courts applying Missouri law "are charged with ascertaining the parties' intent and giving effect to that intention." *Lobo Painting, Inc. v. Lamb Const. Co.*,

---

[7] This is true despite the SU's "alone or in combination with other substances" clause. There is no reasonable reading of that clause allowing for the conclusion that a Defendant can be liable under its particular SU <u>without regard</u> to whether PCBs sold to that Defendant are connected to the underlying liability.

231 S.W.3d 256, 258 (Mo. Ct. App. 2007). If the contract terms are unambiguous, the parties' intent is gathered from the contract's plain meaning. *State ex. rel. Vincent v. Schneider*, 194 S.W. 3d 853, 859-60 (Mo. 2006). Those rules are no different for contracts of indemnity. *See, e.g., Denny's Inc. v. Avesta Enterprises, Ltd.*, 884 S.W.2d 281, 290 (Mo. Ct. App. 1994) ("The rules applicable to the construction of contracts apply generally to indemnity agreements.").

The SUs are not agreements of unlimited scope. They do not apply to any and every PCB-related liability to which Plaintiffs are ever exposed. Rather, the SUs limit the scope of any defense and indemnity obligations in numerous ways. By their plain language, the SUs apply only to: (1) PCBs sold or delivered to the particular Defendant who signed the SU; (2) on or after their effective date;[8] and with respect to (3) liabilities arising out of or in connection with the receipt, purchase, possession, handling, use, sale, or disposition of such PCBs by, through, or under that Defendant, whether alone or in combination with other substances. (Pet. Exs. 1-6.)

The Petition fails, however, to connect PCB Lawsuits to PCBs sold to particular Defendants. The PCB Lawsuits concern a wide variety of locations throughout the United States. Petition Exhibit 8 identifies cases involving Delaware; Maryland; New Hampshire; New Mexico; Pennsylvania; Portland, Oregon; San Mateo, California; Los Angeles, California; the District of Columbia; Chula Vista, California; Ohio; Washington; Louisiana; Hartford, Connecticut; Princeton, Massachusetts; and Westport, Massachusetts. (Pet. Ex. 8.) Plaintiffs further allege a series of cases involving a facility in Monroe, Washington. (Pet. ¶ 193.) The

---

[8] Each SU limits defense and indemnity obligations to PCBs sold to Defendants on or after the effective date of the respective SUs (generally, early 1972). Plaintiffs fail to plead that the PCB Lawsuits meet this requirement—i.e., that they concern, even in part, contamination from PCBs sold to Defendants after the SU effective dates rather than contamination from PCBs sold to any party including the Defendants or from Old Monsanto itself during the forty-plus years preceding the SUs that Old Monsanto manufactured PCBs.

Occupational Cases are also location specific. (*Id.* ¶¶ 197-202.) But with only a few exceptions, the Petition does not allege <u>any</u> Defendant PCB pollution in those areas. And the Petition never once alleges that any particular Defendant's alleged pollution is connected to, either in whole or in part, the liability arising out of the tendered cases.[9]

Had there been only one purchaser of PCBs, Plaintiffs' pleading and proof problem would not exist. But Plaintiffs admit Old Monsanto had numerous customers, including but not limited to (a) entities that signed SUs but Plaintiffs chose to not sue here, and (b) entities that did not sign SUs at all. (*Id.* ¶ 2 (Old Monsanto sold PCBs to numerous customers, including Defendants, between 1935 and 1977, and those customers incorporated PCBs into a wide variety of products sold throughout the U.S.); *id.* ¶¶ 28, 32 (approximately 25% of PCBs were used in non-electrical applications between 1935 and 1977); *id.* ¶¶ 51-53 (GE and the other Defendants weren't the only purchasers of PCBs from 1972 to 1977); *Admiral Ins. Co.*, 2021 WL 4460753, at *3 (at least 26 entities signed SUs).) The Petition therefore does not show, as it must, that any Defendant's liability under its particular SU with respect to any particular PCB Lawsuit is anything more than a "mere possibility." *Iqbal*, 556 U.S. at 679.

A few examples prove the point. Plaintiffs attempt to hold each Defendant responsible under its respective SU for liabilities resulting from the Sky Valley School Cases. (*See* Pet. ¶¶ 193-196.) But the only Defendant with a pleaded connection to the Sky Valley School Cases

---

[9] Plaintiffs allege that a single light ballast manufactured by Magnetek, or its predecessor UMC, was found in the educational facility at issue in the Sky Valley School Cases. (*Id.* ¶ 120.) And the few other instances of Plaintiffs attempting to tie Defendants' PCBs to PCB Lawsuits (*see, e.g., id.* ¶¶ 182, 192) are classic examples of impermissible group pleading. *See Davis v. Eisai, Inc.*, No. 4:20-00762-CV-DGK, 2021 WL 4810704, at *1-2 (W.D. Mo. Oct. 14, 2021) (dismissing design defect claim alleged against multiple defendants "on the grounds that it improperly relied on group pleading; that is, the Complaint asserted a meaningless series of general allegations as to all defendants collectively.").

(which concern a single facility in Monroe, Washington) is Magnetek (*id.* ¶ 120), who is allegedly responsible for a single light ballast. Despite several trials of Sky Valley School Cases having already occurred (*id.* ¶ 194), Plaintiffs do not plead that PCBs sold to any other Defendant were found in the facility at issue. Plaintiffs' pleading is therefore deficient. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (to survive a motion to dismiss plaintiffs "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level.").

Similarly, Plaintiffs allege Defendants have indemnity obligations for a Water Case arising out of New Mexico. (*See* Pet. Ex. 8 at 1.) But Plaintiffs' right to relief is again nothing more than speculative because Plaintiffs don't plead that any Defendant caused pollution in New Mexico or any body of water in or running through it. (*See generally* Pet.)

Finally, Plaintiffs seek defense and indemnity in a Food Case called *Stapleton et. al v. Monsanto Co. et al.*, No. 1122-CC09622-01 (Cir. Ct. Mo. Jan. 6, 2016). (*See* Pet. Ex. 8 at 3.) The allegations there[10] are that the plaintiffs were injured as a result of PCB exposure from "open and non-controllable applications" (Ex. D at ¶ 104), rather than electrical equipment "closed applications" (*id.* ¶ 102). Yet Plaintiffs allege here that Defendants manufactured closed-application electrical equipment. (*See* Pet. ¶ 3 (Defendants "were members of the U.S. electrical industry"); *id.* ¶ 4 (Defendants "incorporated the PCBs they purchased from Old Monsanto into

---

[10] The Fifth Amended Petition in *Stapleton* is properly considered on a motion to dismiss. Plaintiffs attached complaints for some but not all of the PCB Lawsuits identified in the Petition due only to practical considerations. (*See* Pet. ¶ 177.) In fact, Missouri courts look to the allegations of the underlying complaint when determining one party's obligation to indemnify another. *Alltru Federal Credit Union v. Starnet Ins. Co.*, No. 4:21-CV-01334-JAR, 2022 WL 4482405, at *2 (E.D. Mo. Sept. 27, 2022). A copy of the *Stapleton* Fifth Amended Petition is attached as **Exhibit D**.

electrical products").) *Stapleton* therefore cannot concern liabilities resulting from PCBs sold to any Defendant.

In summary, the Petition fails to plead that the underlying PCB Lawsuits seek recovery related to PCBs sold to the moving Defendants and is therefore deficient as a matter of law.

### 2.    Plaintiffs' Theory Of Collective Liability Fails As A Matter Of Law

Plaintiffs may argue their contract claims are saved by the Petition's assertion of collective liability. (*See* Pet. ¶ 235.) Not so, under the SUs' plain language.

"[W]hether . . . several contracting parties have undertaken to bind themselves and each of them both jointly and severally, or whether they have merely undertaken to make the liability of each promisor individual and separate, is to be determined from the intention of the parties." *Hensley v. Dormeyer*, 102 S.W.2d 761, 763 (Mo. Ct. App. 1937). "Copromisors are liable 'jointly' if all of them have promised the entire performance which is the subject of the contract." *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 902 (Mo. Ct. App. 2003). Only where two or more parties are bound under the same contract should a court presume that the contract gives rise to joint and several liability. *Cohn v. Dwyer*, 959 S.W.2d 839, 843 (Mo. Ct. App. 1997).

Here, Plaintiffs can point to no SU for which each of the Defendants promised the entire performance of any or every other Defendant. While Plaintiffs allege that Defendants "agreed to insure the same risk and/or same liability" (Pet. ¶ 235), that allegation is belied by the SUs (attached as exhibits to the Petition). Each Defendant executed a separate SU with Old Monsanto. And those separate SUs are Defendant-specific, applying only if PCBs sold to specific Defendants are connected to a PCB Lawsuit liability, among other material differences. For Plaintiffs' collective liability theory to have any validity as to GE, for example, GE would have had to have agreed to be responsible for every other Defendant's SU liabilities, regardless

12

of any connection to a PCB sold to GE. The plain language of GE's SU unambiguously shows

GE made no such promise. The same is true for every other Defendant under every other SU.

### B. Plaintiffs' Claims For Declaratory Judgments As To Any Future Lawsuits Should Be Dismissed As Unripe (Counts III and IV)

Separate and apart from the above arguments, Plaintiffs' claims for declaratory

judgments as to Defendants' duty to defend and duty to indemnify regarding any <u>future</u> lawsuits

must be dismissed because Plaintiffs have failed to allege a ripe controversy.[11]

To state a plausible claim for a declaratory judgment a plaintiff must show: "(1) a

justiciable controversy that presents a real, substantial, presently-existing controversy admitting

of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation;

(2) a plaintiff with a legally protectable interest that is at stake . . . ; (3) a controversy ripe for

judicial determination; and (4) an inadequate remedy at law." *Stirling v. Ramsey*, No. 4:17-CV-

1206 RLW, 2018 WL 3489592, at *4 (E.D. Mo. July 19, 2018) (quoting *Missouri Soybean Ass'n*

*v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. 2003)). A plaintiff "may not seek a

declaration to determine future rights or controversies in anticipation of events that have not

occurred, or merely because petitioner fears that another person may assert a claim against him."

---

[11] Plaintiffs' claims as to future lawsuits are also subject to dismissal under Rule 12(b)(1) because this Court lacks subject matter jurisdiction over cases that are not ripe for adjudication. While Missouri law governs the underlying substantive law, the Declaratory Judgment Act is procedural, therefore governing whether this Court "may properly render a declaratory judgment." *Rehkemper & Sons, Inc. v. Mid-Rivers Dev. and Const. LLC*, No. 4:21-CV-00380-SEP, 2021 WL 6072496, at *2 (E.D. Mo. Dec. 23, 2021). Because the Declaratory Judgment Act authorizes federal courts to issue declaratory judgments only when there is a case of actual controversy, Plaintiffs' claims as to future lawsuits are not ripe for adjudication and should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Wax'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000) (whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction); *Hartford Accident Indem. v. DOE Run Res.*, 663 F. Supp. 2d 771, 775 (E.D. Mo. 2009) (granting motion to dismiss a declaratory judgment action regarding insurance provider's obligations based on a future lawsuit because the claim was not ripe).

*Ferrell v. Mercantile Trust Co., N.A.*, 490 S.W.2d 397, 400 (Mo. Ct. App. 1973); *see also Hartford Accident Indem.*, 663 F. Supp. 2d at 775 (dismissing a declaratory judgment action regarding an insurance provider's obligations based on potential litigation because "its claimed injury [was] contingent on future possibilities and [was] speculative"); *see also Admiral Ins. Co.*, 2021 WL 4460753 at *7 (dismissing declaratory judgment action where insured sought declaration as to insurer's obligations when the insured had not yet been sued by Monsanto to enforce a SU for PCB lawsuits, though Monsanto had made tenders to the insured), *aff'd in relevant part and remanded* 57 F.4th 85 (2d Cir. 2023).

Here, Plaintiffs seek declaratory judgments that Defendants must defend and indemnify them from any "future PCB lawsuits filed against Old Monsanto." (Pet. ¶¶ 265; 276; Prayers for Relief, B, C, D, and F, Pet. at 69-70.) These claims are not ripe because they seek declarations "to determine future rights or controversies in anticipation of events that have not occurred." *Ferrell*, 490 S.W.2d at 400. Entering declaratory judgments as to future lawsuits would require this Court to issue impermissible speculative decisions regarding Defendants' defense and indemnity obligations without sufficient knowledge regarding the (hypothetical) underlying PCB cases. The SUs do not obligate Defendants to indemnify Old Monsanto for any and all lawsuits having to do with PCBs—each is unique to specific company sales and contains temporal and other limitations as well. (*See* Pet. Exs. 1-6.) Without a filed case or specific demand, the Court cannot determine whether the PCBs alleged to have caused an injury were sold to any Defendant, or whether they were sold after 1972, and thus whether any SU is triggered. As noted above, the purportedly tendered PCB Lawsuits are not subject to all SUs or in some instances any SU.

14

Therefore, Plaintiffs' Counts III and IV (and Prayers for Relief B, C, D and F) are not ripe and should be dismissed to the extent they relate to future PCB lawsuits.[12]

> **C.** **Plaintiffs' Claim For A Declaratory Judgment Of Defendants' Duty To Indemnify Ongoing Lawsuits Also Should Be Dismissed As Unripe**

Where the underlying lawsuit for which a party seeks indemnification is still ongoing, it likewise is premature for a court to issue declarations regarding a party's duty to indemnify. *Shapiro Sales Co. v. Alcoa, Inc.*, No. 4:06-CV-638 CDP, 2006 WL 2228987, at *3 (E.D. Mo. Aug. 3, 2006); *cf. Amerisure Mut. Ins. Co. v. Paric Corp.*, No. 4:04CV430-DJS, 2005 WL 2708873, at *9 (E.D. Mo. Oct. 21, 2005) ("A finding in the underlying actions that defendant [] is not liable would make this Court's determinations as to the duty to indemnify merely advisory opinions.").

Here, Plaintiffs seek declaratory judgments that Defendants have a duty to indemnify Plaintiffs for ongoing PCB lawsuits where there has been no determination as to liability. Plaintiffs acknowledge that many of the PCB lawsuits at issue remain pending. (Pet. ¶ 234.) Without final judgments or settlements in those lawsuits, the scope of Defendants' potential indemnification obligations, if any, is not yet determinable. Because liability against the Plaintiffs has not yet been resolved, Plaintiffs' claim for a declaratory judgment as to pending lawsuits is not ripe for adjudication. *See Shapiro*, 2006 WL 2228987, at *3 (holding that the declaratory judgment claim was not ripe because the underlying suit "has yet to be fully resolved . . . nor has it had its liability determined."). Accordingly, Count IV should be dismissed as to any pending lawsuits.

---

[12] Courts applying Missouri law routinely dismiss claims in part. *See e.g.*, *Jacobson Warehouse Co., Inc. v. Schnuck Markets, Inc.*, No. 4:17-CV-00764 JAR, 2017 WL 5885669, at *4 (E.D. Mo. Nov. 29, 2017) (granting motion to dismiss negligence claim in part "to the extent it [sought] damages barred" by a limitation of liability provision).

**D.      Counts I Through IV Should Be Dismissed As To Old And New Monsanto Because They Do Not Plausibly Allege Standing To Enforce The SUs**

Further, in addition to the deficiencies identified above, Plaintiffs fail to allege that either Old or New Monsanto has standing to sue under the SUs. "[O]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Verni v. Cleveland Chiropractic College*, 212 S.W.3d 150, 153 (Mo. 2007); *see also Ponchik v. King*, 957 F.2d 608, 609 (8th Cir. 1992) (plaintiffs lacked standing to sue because they were not parties to the contract or third-party beneficiaries); *Little v. Kirkstall Road Enterprises, Inc.*, No. 4:19CV1786 (RLW), 2020 WL 435747, at *3 (E.D. Mo. Jan. 28, 2020) (same). Old and New Monsanto satisfy neither requirement, as summarized in the chart and explained further below.

| **Plaintiff** | **Pleaded Name** | **Date Formed** | **Manufactured or Sold PCBs** | **Original Party to SUs** | **Reason For No Contractual Standing** |
|---|---|---|---|---|---|
| Pharmacia, LLC | Old Monsanto | Pre-1972 (as pleaded) | Yes (as pleaded) | Yes (as pleaded) | - Pleaded assignment of all interest in SUs to Solutia in 1997 |
| Monsanto Company | New Monsanto | 2000 | No | No | - No allegations of any assignment or other transaction that would have granted it SU rights<br><br>- Received any "Monsanto"-related interests from Old Monsanto in 2000, <u>after</u> Old Monsanto assigned all SU rights to Solutia<br><br>- Not intended third-party beneficiary |
| Solutia, Inc. | Solutia | 1997 | No | No | N/A |

### 1. Plaintiffs Do Not Plausibly Allege That Either Old Monsanto Or New Monsanto Has Standing As Parties To The SUs

<u>First</u>, Old Monsanto alleges it divested itself of party status under the SUs in the 1997 Solutia spin-off. An original party to a contract may divest itself of party status, and thus standing to enforce the contract, by assigning its rights under the contract to a third party. *See McMullin v. Borgers*, 806 S.W.2d 724, 731 (Mo. Ct. App. 1991) ("The general rule is that an absolute assignment of an entire right or interest works as a divestiture of all right or interest of the assignor; and, for the purpose of maintaining a civil action, the assignee becomes the real party in interest."); *Daniele v. Missouri Dep't of Conservation*, 282 S.W.3d 876, 880 (Mo. Ct. App. 2009) (same); *Urdan v. WR Capital Partners, LLC*, No. 2018-0343-JTL, 2019 WL 3891720, at *12, n. 11 (Del. Ch. Aug. 19, 2019) ("[O]nce a party assigns its rights under a contract, it no longer is in privity with the other parties and cannot enforce the contractual rights against them.").

While Plaintiffs allege that Old Monsanto was the original party to the SUs, they also allege that in 1997 Old Monsanto assigned[13] to Solutia "the rights to enforce the Special Undertaking Agreements" as part of its broader assignment to Solutia of "all rights in the nature of . . . indemnification . . . ." (Pet. ¶ 8.) That is not a partial or limited assignment. It is a pleaded assignment of "all" indemnity rights, including "the rights to enforce the Special Undertaking Agreements." Thus, as pleaded, Old Monsanto has had no standing to enforce any SU since 1997. *See McMullin*, 806 S.W.2d at 731 (the assignment of "an entire right or interest works as a divestiture of all right or interest of the assignor").

---

[13] For purposes of this Motion, Defendants accept as true Plaintiffs' allegation that Old Monsanto validly assigned the SU to Solutia. Defendants reserve all rights.

Second, the Petition contains no allegations establishing New Monsanto's party status. New Monsanto was formed in 2000 (*see* Ex. B), in connection with the Old Monsanto-New Monsanto spin-off. By that time, Old Monsanto had already divested itself of any interest in the SUs. Having no rights of its own under the SUs, as a matter of law and logic Old Monsanto could not have granted any rights or interest in the SUs to New Monsanto. Plaintiffs thus do not plead that New Monsanto acquired SU rights from Old Monsanto.[14]

### 2. Plaintiffs Do Not Plausibly Allege That Either Old Monsanto Or New Monsanto Are Intended Third-Party Beneficiaries Of The SUs

Plaintiffs likewise do not allege Old or New Monsanto have third-party beneficiary standing to enforce the SUs. Third-party beneficiary rights "depend on, and are measured by, the terms of the contract between the promisor and the promisee." *Drury Co. v. Missouri United Sch. Ins. Counsel*, 455 S.W.3d 30, 34 (Mo. Ct. App. 2014). A court "must not speculate as to whether the contracting parties intended to benefit the third party." *Klenc v. John Beal, Inc.*, 484 S.W.3d 351, 355 (Mo. Ct. App. 2015). Rather, the claimed third-party beneficiary "must show that the particular contract was intended by the parties for the direct benefit of the third party beneficiary." *Teter v. Morris*, 650 S.W.2d 277, 282-283 (Mo. Ct. App. 1982). "The intent which must be proven is not that the promisor/promisee to the contract merely had a purpose of granting the third party some benefit, but rather that this intent must be an intent that the promisor assumed a direct obligation to (the third party beneficiary)." *Id.* (internal quotations

---

[14] Nor does New Monsanto plead that it acquired SU rights by other means. The Petition contains several allegations about a 2008 transaction between Solutia and New Monsanto. (*See* Pet. ¶ 9.) If those allegations are intended to show New Monsanto's standing, they come nowhere close. They have nothing to do with New Monsanto acquiring any interest in the SUs such that it could enforce the SUs. Indeed, the allegations concede that Solutia retained its interest in the SUs.

omitted). There is a "strong presumption" that parties to a contract intend to contract "for themselves and not for the benefit of others," that can be overcome only by an "express declaration" of an intent to benefit a third party. *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo. Ct. App. 1995).

Plaintiffs allege New Monsanto is a third-party beneficiary of the SUs because it is a "future . . . agent" of Old Monsanto. (Pet. ¶ 243.) They further allege that Old Monsanto executed a Power of Attorney that granted New Monsanto "authority to take 'all actions' over certain claims, including the PCB Lawsuits, and provides that New Monsanto is Old Monsanto's 'true and lawful agent and attorney.'" (*Id.* ¶ 9.) Those allegations do not suffice.

Plaintiffs may argue that Defendants agreed to indemnify "Monsanto, its present, past and future directors, officers, employees and agents," (Pet. Exs. 1-6) but that is not the only relevant SU language. *See Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. Ct. App. 2000) (to determine contracting parties' intent, courts "review the terms of a contract as a whole, not in isolation"). Any obligation to indemnify those persons is only "with respect to any and all PCB's sold or delivered by or on behalf of Monsanto . . . ." (Pet. Exs. 1-6.) Thus an Old Monsanto future agent for purposes <u>unrelated</u> to the sale or delivery of PCBs is not within the persons or class of persons for "whose primary benefit the contracting parties intended to make the contract." *Teter*, 650 S.W.2d at 282-283.

New Monsanto is such an unrelated future agent. <u>First</u>, New Monsanto <u>did not exist</u> while Old Monsanto was selling and delivering PCBs to Defendants. Plaintiffs allege that PCB manufacturing and sales ceased in 1977. (Pet. ¶ 2.) New Monsanto was formed in 2000. New Monsanto could thus not have been Old Monsanto's agent with respect to the manufacture, sale,

or delivery of PCBs, as that work had ceased decades prior. Indeed, Plaintiffs admit that New Monsanto "did not manufacture or sell PCBs." (*Id.* ¶ 9.)

Similarly, after its 1997 spin-off to Solutia of all of its chemical assets, including all rights and obligations under the SUs, Old Monsanto did not own the same business it did when Defendants and Old Monsanto executed the SUs. It is not plausible to conclude that Defendants and Old Monsanto made the SUs "for the direct benefit," *Teter*, 650 S.W.2d at 282-283, of an agent Old Monsanto created at a time in the future when it was operating a different business.

Further, it is irrelevant to the third-party beneficiary analysis that New Monsanto apparently agreed to pay Old Monsanto's PCB Lawsuit liabilities. (*See, e.g.*, Pet. ¶ 9.) There is, again, no plausible reading that Defendants and Old Monsanto "clearly and directly," *Klenc*, 484 S.W.3d at 355, made the SUs "for the direct benefit," *Teter*, 650 S.W.2d at 282-283, of any person who in the future agreed to be responsible for Old Monsanto PCB Lawsuit liabilities.

Second, Plaintiffs make no effort to allege that Old Monsanto is an SU third-party beneficiary. (*See generally* Pet.) Nor would that make sense. At the time of contracting, Old Monsanto was an actual party to the SUs (at least as pleaded by Plaintiffs). The SUs do not in any respect, much less "clearly and directly," express the intent that Old Monsanto would become a third-party beneficiary should it ever in the future divest itself of direct party status (as Plaintiffs plead Old Monsanto did). *Klenc*, 484 S.W.3d at 355.

The Court should dismiss Counts I-IV as to Old and New Monsanto for lack of standing.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE CONTRIBUTION

Plaintiffs assert a claim for equitable contribution (Count VII) as alternative relief to the extent Defendants are not contractually obligated to indemnify Plaintiffs. (Pet. ¶ 304.) In support of this claim, Plaintiffs plead only that "Defendants" "purchased PCBs from Old Monsanto and incorporated these PCBs purchased from Old Monsanto into products . . . that were sold to

customers throughout the United States," *(id.* ¶ 308) and that "Defendants are liable to Plaintiffs for their equitable share of the amounts paid and/or agreed to be paid by Plaintiffs to settle and/or resolve the PCB Lawsuits" (*id*. at ¶ 313). The claim for equitable contribution must be dismissed because (a) Plaintiffs fail to allege, as required, that Plaintiffs and Defendants are joint tortfeasors liable to the PCB Lawsuit plaintiffs for the same injury; (b) the Petition improperly lumps together all Defendants and fails to adequately allege specific facts against each Defendant; and (c) for those PCB Lawsuits resolved by settlement, Plaintiffs fail to overcome Missouri law's "additional obstacles" to pleading equitable contribution.

### A.        Plaintiffs Fail To Allege Joint Liability

To state a claim for equitable contribution, plaintiffs must allege that defendants are "liable to the same person for the same injury." *Former Vacuum & Janitor Supply Co., Inc. v. Renard Paper Co., Inc.*, No. 4:06CV00905 RWS, 2007 WL 9805665, at *3 (E.D. Mo. July 2, 2007) (quoting *McNeill Trucking, Co. Inc. v. Missouri State Hwy. & Transp. Comm'n,* 35 S.W.3d 846, 847 (Mo. banc 2001)). Unlike indemnification, which "shift[s] responsibility from the shoulders of one [entity] to another," contribution is proper only when "two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." *Simply Thick, LLC v. Thermo Pac, LLC*, No. 4:13-CV-1036 CAS, 2015 WL 5734920, at *3 (E.D. Mo. Sept. 29, 2015) (quoting 18 Am. Jur. 2d Contribution § 2). "Where there is no common liability, as here, no contribution can be obtained." *Martinez v. Lankster*, 595 S.W.2d 316, 318 (Mo. Ct. App. 1980).

Here, the Petition does not allege that Defendants (or any of them) and Plaintiffs are joint tortfeasors or that Defendants are chargeable with actual negligence with respect to the PCB Lawsuit plaintiffs. Nowhere in the Petition do Plaintiffs allege or even suggest that Defendants

owed or breached any duty, or caused any injury to any or all PCB Lawsuit plaintiffs.[15] The Petition does not allege that PCBs any Defendant allegedly purchased are connected to tort claims the PCB Lawsuit plaintiffs assert against Plaintiffs. Plaintiffs make no mention of any factual predicate to establish that the Defendants here are liable in tort to any of the PCB Lawsuit plaintiffs. These omissions doom Plaintiffs' contribution claim. *See Former Vacuum*, 2007 9805665, at *3 (dismissing contribution claim because third-party plaintiff failed to allege that third-party defendant was joint tortfeasor or participated in underlying tortious conduct).

### B. Plaintiffs Improperly Lump Together All Defendants And Fail To Adequately Allege Specific Facts Against Each Defendant

Plaintiffs' equitable contribution claim also fails because the Petition "lumps all defendants together and does not sufficiently allege who did what to whom" and, as such, "fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Boggs v. Am. Optical Co.*, No. 4:14-CV-1434-CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) (granting motion to dismiss) (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012)). As discussed above, the Petition doesn't plead any specific facts against any particular Defendant such that any Defendant is on notice of the specific damages for which Plaintiffs seek contribution. Each Defendant is left to guess the grounds for Plaintiffs' contribution claim against it and the factual basis for its liability. This impermissible group pleading is an independent ground for dismissal of the claim. *See Harvey v. Great Circle*, No. 4:19-CV-00902 NAB, 2021 WL 4552135, at *4

---

[15] To the contrary, the Petition alleges only Plaintiffs' liability as a tortfeasor to the PCB Lawsuit plaintiffs. *See, e.g.*, Pet. ¶¶ 176, 187, 200, 232 (alleging that the Food Chain Cases include approximately 700 plaintiffs and that Plaintiffs agreed to pay "significant amounts" to settle the Food Chain Cases, the Water Cases, and one of the Occupational Cases). Plaintiffs' liability as a tortfeasor, without more, is insufficient to invoke a claim for contribution.

(E.D. Mo. Oct. 5, 2021) (dismissing claim because the complaint "[did] not provide the Court with any basis for distinguishing between Plaintiff's claims against [multiple defendants], and [did] not give the Court a factual basis for liability of the Defendants named in this Count").

### C.    Plaintiffs Fail To State A Claim As To PCB Lawsuits Resolved By Settlement

When a plaintiff has "entered into a settlement with the original plaintiffs," the plaintiff seeking contribution must "overcome additional obstacles" in order to properly state a claim. *City of St. Joseph v. Southwestern Bell Tel., L.P.*, No. 03-CV-6150-SOW, 2005 WL 6125133, at *17 (W.D. Mo. Jan. 7, 2005). Specifically, for settled cases, contribution is available "only (1) if the liability of the [party] against whom contribution is sought has been extinguished; and (2) to the extent that the amount paid in settlement was reasonable." *Id.* (quoting *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 443 (Mo. banc 2002)).

Plaintiffs plead that their "settlement of some of the Food Chain Cases and some of the Water Cases extinguished Defendants' liabilities for those alleged injuries," (Pet. ¶ 311) and that "[t]he amount Monsanto paid and/or has agreed to pay in settlement of some of the Food Chain Cases and some of the Water Cases was reasonable" (*id.* ¶ 312). These are, however, "threadbare recitals of the elements of a cause of action . . . supported by mere conclusory statements," and are insufficient to sustain a claim. *Thompson v. Davis*, No. 4:18-CV-267 RWS, 2018 WL 2238193, at *1 (E.D. Mo. May 16, 2018) (quoting *Iqbal*, 556 U.S. at 678). Indeed, nowhere in their Petition do Plaintiffs identify all cases resolved through settlement, let alone identify facts to support the conclusion that those settlements extinguished Defendants' liability or were reasonable. As such, Plaintiffs' equitable contribution claim must be dismissed as to any PCB Lawsuits resolved by settlement.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss Petition Counts I-IV and VII.

Dated:  May 1, 2023                          Respectfully submitted,


                                             /s/ Peter W. Herzog III
                                             Peter W. Herzog III, #36429 (MO)
                                             Wheeler Trigg O'Donnell LLP
                                             One Metropolitan Square
                                             211 N. Broadway, Suite 2825
                                             St. Louis, MO  63102-2723
                                             Telephone: 303.244.1800
                                             Facsimile: 303.244.1879
                                             Email: pherzog@wtotrial.com

                                             Michael L. O'Donnell (*admitted pro hac vice*)
                                             Marissa S. Ronk (*admitted pro hac vice*)
                                             Erik D. Nadolink (*admitted pro hac vice*)
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO  80202-5647
                                             Telephone: 303.244.1800
                                             Facsimile: 303.244.1879
                                             Email:    odonnell@wtotrial.com
                                                       ronk@wtotrial.com
                                                       nadolink@wtotrial.com

                                             Attorney for Defendant General Electric Co.

24

Dated:  May 1, 2023                           Respectfully submitted,


                                              /s/ David B. Helms
                                              David B. Helms, #48941 (MO)
                                              GM Law PC
                                              8000 Maryland Ave., Suite 1060
                                              St. Louis, MO 63105
                                              Telephone: (314) 504-4166
                                              Facsimile: (816) 471-2221
                                              davidh@gmlawpc.com

                                              Benjamin D. Mooneyham, #65341 (MO)
                                              GM Law PC
                                              1201 Walnut Street, Suite 2000
                                              Kansas City, MO 64106
                                              Telephone: (816) 471-7700
                                              Facsimile: (816) 471-2221
                                              benm@gmlawpc.com

                                              Nicholas A. Butto (admitted pro hac vice)
                                              Kaitlyn Crowe (admitted pro hac vice)
                                              LisaMarie Collins (admitted pro hac vice)
                                              Mintz Levin PC
                                              919 Third Avenue, 38th Floor
                                              NY, NY 10022
                                              Telephone: (212) 935-3000
                                              nabutto@mintz.com
                                              kacrowe@mintz.com
                                              lfcollins@mintz.com

                                              Attorney for Defendant Kyocera AVX Components
                                              Corporation

Dated:  May 1, 2023                          Respectfully submitted,


                                             /s/ Gerard T. Carmody
                                             Gerard T. Carmody, #24769 (MO)
                                             David M. Fedder, #38823 (MO)
                                             Tyler C. Schaeffer, #60847 (MO)
                                             Carmody MacDonald PC
                                             120 S. Central Avenue, Suite 1800
                                             St. Louis, MO 63105
                                             Telephone: (314) 854-8600
                                             Facsimile: (314) 854-8660
                                             gtc@carmodymacdonald.com
                                             dmf@carmodymacdonald.com
                                             tcs@carmodymacdonald.com

                                             Yehudah Lev Buchweitz (Pro Hac Vice)
                                             Cameron Mae Bonk (Pro Hac Vice)
                                             Weil, Gotshal & Manges LLP
                                             767 Fifth Avenue
                                             New York, NY 10153
                                             Telephone: (212) 310-8256
                                             Facsimile: (212) 310-8007
                                             yehudah.buchweitz@weil.com
                                             cameron.bonk@weil.com

                                             C. Michael Evert (Pro Hac Vice)
                                             Evert Weathersby Houff
                                             3455 Peachtree Road NE, Suite 1550
                                             Athens, GA 30326
                                             Telephone: (678) 651-1200
                                             Facsimile: (678) 651-1201
                                             cmevert@ewhlaw.com

                                             Christopher G. Conley (Pro Hac Vice)
                                             Evert Weathersby Houff
                                             200 Cleveland Road, Suite 6
                                             Bogart, GA 30622
                                             Telephone: (706) 389-7300
                                             Facsimile: (706) 389-7301
                                             cgconley@ewhlaw.com

                                             Attorneys for Defendant Paramount Global

26

Dated:  May 1, 2023                          Respectfully submitted,


                                             /s/ Benjamin J. Wilson
                                             Benjamin J. Wilson, #63329 (MO)
                                             Segal McCambridge
                                             8112 Maryland Avenue, Suite 400
                                             St. Louis, MO 63105
                                             Telephone: (314) 413-7085
                                             bjwilson@smsm.com

                                             Jonathan M. Ettinger *(admitted pro hac vice)*
                                             Aaron F. Lang *(admitted pro hac vice)*
                                             Foley Hoag LLP
                                             155 Seaport Blvd., Suite 1600
                                             Boston, MA 02210
                                             Telephone: (616) 832-3064
                                             jettinger@foleyhoag.com
                                             alang@foleyhoag.com

                                             Attorneys for Defendant Cornell-Dubilier Electronics,
                                             Inc.

Dated:  May 1, 2023                    Respectfully submitted,


*/s/ Robert P. Berry*
Robert P. Berry, #46236 (MO)
Andrew D. Lamb, #59600 (MO)
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5881
Facsimile: (314) 480-5884
Email:  rberry@berrysilberberg.com
           alamb@berrysilberberg.com

John M. Allen, #49642 (MO)
Sarah B. Mangelsdorf, #59918 (MO)
Goldberg Segalla LLP
8000 Maryland Avenue, Suite 640
St. Louis, MO 63105
Telephone: (314) 446-3370
jallen@goldbergsegalla.com
smangelsdorf@goldbergsegalla.com

Attorneys for Defendant The Gillette Company, LLC

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel and parties of record who have appeared.


*/s/ Peter W. Herzog III*