UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONSANTO COMPANY,
PHARMACIA, LLC, and
SOLUTIA, INC.,

               *Plaintiffs,*

v.

MAGNETEK, INC., *et al.*,

               *Defendants.*

Cause No. 4:23-cv-00204-HEA

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM IN SUPPORT OF CORNELL-DUBILIER ELECTRONICS, INC.'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 3

     I.      CDE IS NOT SUBJECT TO PERSONAL JURISDICTION IN MISSOURI. ...... 3

           A.     CDE is Not Subject to General Jurisdiction in Missouri. ........................... 4

           B.     CDE is Not Subject to Specific Jurisdiction in Missouri............................ 4

                1.     CDE is Not Subject to Jurisdiction under Missouri's Long-Arm Statute. ........................................................................... 4

                        a.     This case did not arise from any contract CDE made in Missouri.................................................................. 5

                        b.     This case did not arise from any business CDE transacted in Missouri. ...................................................... 7

                        c.     This case did not arise from any tort CDE committed in Missouri. ...................................................... 8

                2.     CDE Lacks Sufficient Suit-Related Contacts with Missouri for the Court to Exercise Personal Jurisdiction over CDE within the Limits of Due Process.................................. 9

     II.     MONSANTO'S CLAIMS AGAINST CDE ARE TIME-BARRED. ................. 11

     III.    COUNT V FAILS TO STATE A CLAIM OF NEGLIGENCE........................... 12

CONCLUSION................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Cases**

*Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*,
558 F.2d 450 (8th Cir. 1977) ............................................................. 10

*Babb v. Bartlett*,
638 S.W.3d 97 (Mo. Ct. App. 2021) ................................................. 5, 8

*State, ex rel. Barnes v. Gerhard*,
834 S.W.2d 902 (Mo. Ct. App. 1992) ................................................... 7

*Bell Paper Box v. Trans W. Polymers*,
53 F.3d 920 (8th Cir. 1995) ............................................................. 10

*Burns v. Black & Veatch Architects, Inc.*,
854 S.W.2d 450 (Mo. Ct. App. 1993) ................................................ 12

*Captiva Lake Invs., Ltd. Liab. Co. v. Ameristructure, Inc.*,
436 S.W.3d 619 (Mo. Ct. App. 2014) ........................................... 12, 13

*State ex rel. Career Aviation Sales, Inc. v. Cohen*,
952 S.W.2d 324 (Mo. Ct. App. 1997) ................................................... 6

*City of N. Kan. City v. Archer Daniels Midland Co.*,
575 S.W.3d 270 (Mo. Ct. App. 2019) ................................................ 12

*Conway v. Royalite Plastics*,
12 S.W.3d 314 (Mo. 2000) ........................................................... 3, 4, 8

*Cook v. Coldwell Banker/ Frank Laiben Realty Co.*,
967 S.W.2d 654 (Mo. Ct. App. 1998) ............................................... 5, 6

*Crowder v. Vandendeale*,
564 S.W.2d 879 (Mo. 1978) ............................................................. 13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................... 4

*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
702 F.3d 472 (8th Cir. 2012) ........................................................ 9, 10

*Fastpath, Inc. v. Arbela Techs. Corp.*,
760 F.3d 816 (8th Cir. 2014) .................................................... 3, 9, 10

*Garrity v. A.I. Processors*,
850 S.W.2d 413 (Mo. Ct. App. 1993) ................................................... 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................................ 4

*Gray v. Hudson*,
    No. 14CV1183 HEA, 2015 U.S. Dist. LEXIS 95969 (E.D. Mo. July 23, 2015)..................... 9

*J.H. Berra Paving Co. v. Legendary Motorcar Co.*,
    No. 4:18-CV-02148-NCC, 2019 U.S. Dist. LEXIS 92248 (E.D. Mo. June 3, 2019) ................................................................................................................ 8

*Jennings v. SSM Health Care St. Louis*,
    355 S.W.3d 526 (Mo. Ct. App. 2011)...................................................................... 5

*Johnson Heater Corp. v. Deppe*,
    86 S.W.3d 114 (Mo. Ct. App. 2002)................................................................ 5, 6, 7

*Loeffler v. City of O'Fallon*,
    71 S.W.3d 638 (Mo. Ct. App. 2002).................................................................... 11

*Mountaire Feeds, Inc. v. Agro Impex, S.A.*,
    677 F.2d 651 (8th Cir. 1982) ............................................................................. 9

*Port Indus. v. Shimp*,
    No. 2:21CV33 HEA, 2021 U.S. Dist. LEXIS 241308 (E.D. Mo. Dec. 17, 2021) ..................................................................................................................... 4

*Restoration St. Louis, Inc. v. 3rd St. IA LLC*,
    No. 4:13CV669 HEA, 2014 U.S. Dist. LEXIS 23955 (E.D. Mo. Feb. 24, 2014) ............................................................................................................... 11

*Rockport Pharmacy v. Dig. Simplistics*,
    53 F.3d 195 (8th Cir. 1995) ............................................................................. 12

*Sybaritic, Inc. v. Interport Int'l, Inc.*,
    957 F.2d 522 (8th Cir. 1992) ...................................................................... 10, 12

*True Fitness Tech., Inc. v. Samsara Fitness, LLC*,
    No. 4:14CV1930 HEA, 2015 U.S. Dist. LEXIS 78993 (E.D. Mo. June 18, 2015) ................................................................................................................. 9

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) ............................................................................. 4

*Warner vs. Gen. Ins. Co. of Am.*,
    690 F. Supp. 830 (E.D. Mo. 1988)...................................................................... 7

*Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*,
    668 S.W.2d 601 (Mo. Ct. App. 1984).................................................................. 13

*Wilson Tool & Die, Inc. v. TBDN - Tennessee Co.*,
    237 S.W.3d 611 (Mo. Ct. App. 2007)................................................................. 5, 6

**Statutes**

Mo. Rev. Stat. § 506.500 ................................................................................... 4, 5

Mo. Rev. Stat. § 506.500.1(1)................................................................................ 7

Mo. Rev. Stat. § 506.500.1(2)................................................................................ 6

Mo. Rev. Stat. § 506.500.1(5)................................................................................ 5

Mo. Rev. Stat. § 516.120(1) ................................................................................. 11

Mo. Rev. Stat. § 516.120(4) ................................................................................. 11

**Rules**

Fed. R. Civ. P. 12(b)(2)......................................................................................... 1

Fed. R. Civ. P. 12(b)(6).................................................................................... 1, 11

**Other Authorities**

Restatement (Third) of Torts: Liab. for Econ. Harm § 3 (Am. L. Inst. 2020).............................13

## INTRODUCTION

The First Amended Petition ("FAP") against Cornell-Dubilier Electronics, Inc. ("CDE")[1] should be dismissed both for the reasons detailed in Defendants' Brief in Support of Joint Motion to Dismiss Counts I–IV and VII of Plaintiffs' First Amended Petition ("Joint Brief") and because this Court lacks personal jurisdiction over CDE, *see* Fed. R. Civ. P. 12(b)(2). Monsanto's claims against CDE are also barred by the statute of limitations. *Id.* 12(b)(6). And Count V, asserting negligence, should be dismissed because it fails to state a claim.[2] *Id.*

CDE is not subject to the jurisdiction of the courts of Missouri in this case. CDE is incorporated in Delaware and headquartered in South Carolina. CDE's suit-related contacts with Missouri are minimal. CDE signed the two-page document at the heart of this case—the so-called "Special Undertaking" ("SU")[3]—over half a century ago, likely in New Jersey, where CDE was headquartered at the time, not Missouri. The SU is not a Missouri contract. If anything, it is a unilateral contract relating to Old Monsanto's[4] future sales of polychlorinated biphenyls ("PCBs") to CDE. It did not become a contract, if ever, until Old Monsanto performed—that is, by shipping PCBs from its *Illinois* factory to CDE's facility in *Massachusetts*, for which CDE paid Old Monsanto in *New York*.

---

[1] CDE was incorrectly named as "Cornell Dubilier Electronics, Inc." in the First Amended Petition. The correct name contains a hyphen.

[2] Before removal, the state court denied Defendant Magnetek, Inc.'s motion to dismiss for lack of personal jurisdiction. That court's ruling, which lacked a written explanation, does not bind this Court. In any event, CDE's motion concerns different circumstances and arguments.

[3] For the Court's convenience, CDE has attached the SU, FAP Ex. 5, as Exhibit 1 hereto.

[4] For simplicity, CDE refers to Plaintiffs and their predecessors collectively as "Monsanto," as did the Plaintiffs, without suggesting all have standing. *See* Joint Brief at 16–20. For CDE's jurisdictional arguments, the only relevant entity is Old Monsanto, which signed the SU and was based in Missouri during the relevant period. *See* FAP ¶ 17.

Monsanto's claims are also timed-barred. Assuming Missouri's five-year statute of limitations applies, it began to run on May 18, 2017, when, as Monsanto alleges, CDE refused to defend and indemnify Monsanto and allegedly breached the SU. Yet Monsanto did not add CDE to its lawsuit until August 3, 2022, more than five years after the alleged breach.

Even if the Court were to find jurisdiction, Monsanto's tort claims should be dismissed for failure to state a colorable claim. Its equitable contribution count should be dismissed for the reasons stated in the Joint Brief. And its negligence count is barred by the economic loss doctrine: Monsanto cannot maintain a negligence action when it alleges only litigation expenses for the underlying PCB cases as damages. This is a contractual indemnity case, not a tort case. Monsanto cannot tack on plainly deficient tort claims to keep the case in Missouri when jurisdiction is otherwise lacking.

## BACKGROUND

CDE manufactures capacitors for electrical applications. *See* FAP ¶¶ 14, 156; Affidavit of Victor Whitworth ("Whitworth Aff.") ¶ 3. It is incorporated in Delaware and headquartered in South Carolina. Whitworth Aff. ¶ 5. It has manufacturing facilities and/or offices in Massachusetts, South Carolina, North Carolina, and Mexico. *Id.* ¶ 6. It has no assets or employees in Missouri. *Id.* ¶¶ 7–8.

As alleged in the FAP, CDE[5] bought PCBs from Old Monsanto—the sole domestic manufacturer of PCBs—to use as dielectric (insulating) fluid in its capacitors. FAP ¶¶ 2, 156. Monsanto alleges that Old Monsanto stopped selling PCBs in 1977. *Id.* ¶¶ 2, 20. CDE's sales records show that following the SU, CDE received shipments of PCBs from Old Monsanto's

---

[5] This Memorandum refers to CDE and its predecessors collectively as "CDE."

plant in Sauget, Illinois and sent payments to Old Monsanto's offices in New York, New York.[6] *See* Affidavit of Jonathan Ettinger ("Ettinger Aff."), Ex. A.

Monsanto alleges that in late 1971 or early 1972, it advised CDE and others that it would not ship any more PCBs unless the customers signed the SU. *See* FAP ¶¶ 49–50, 91. The SU purports to impose obligations on the signatories to defend and indemnify Monsanto for liabilities relating to PCBs sold and delivered to the signatories after the date they signed. *See* FAP Ex. 5. Yet the SU disclaims any obligation by Old Monsanto to sell any PCBs to CDE. *See id.* ("Nothing herein shall create or imply any duty or obligation of Monsanto to sell or deliver any PCB's [sic] to Buyer."). In fact, the SU imposes no obligations on Monsanto at all and does not state that Monsanto is providing any consideration for the SU.

CDE's then-Executive Vice President, Wayne Peterson, allegedly signed CDE's SU on January 26, 1972. *See id.* at 2; FAP ¶ 91. At the time, CDE was headquartered in Newark, New Jersey, where all its officers and directors, including Mr. Peterson, were located. Ettinger Aff. Ex. B. Mr. Peterson likely signed the SU at that office.

## ARGUMENT

## I.    CDE IS NOT SUBJECT TO PERSONAL JURISDICTION IN MISSOURI.

Monsanto bears the burden of establishing personal jurisdiction. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *Conway v. Royalite Plastics*, 12 S.W.3d 314, 318 (Mo. 2000). Personal jurisdiction can be general or specific. General jurisdiction refers to a state's power to adjudicate any cause of action involving a particular defendant, whereas specific jurisdiction refers to the state's power to adjudicate a particular cause of action when a defendant

---

[6] The FAP alleges in conclusory fashion that CDE "used PCBs at its New Bedford facility until 1977." FAP ¶ 156.

has sufficient contacts with the state relating to that cause of action.  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).  Monsanto cannot meet its burden as to either general or specific personal jurisdiction over CDE.

**A.  CDE is Not Subject to General Jurisdiction in Missouri.**

General jurisdiction is plainly lacking.  It exists when a corporation's place of incorporation or its principal place of business is in the forum state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Neither is true here.  CDE is incorporated in Delaware and headquartered in South Carolina.  Whitworth Aff. ¶ 5.

General jurisdiction may also exist in "an exceptional case" when "a corporation's operations" in a state are "so substantial and of such a nature as to render the corporation at home in that State."  *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).  This is not such a case.  CDE's operations are in other states or countries.  Whitworth Aff. ¶ 6.  It has no offices or employees in Missouri.  *Id.* ¶¶ 7–8.  Monsanto has alleged nothing to the contrary.  CDE is not "at home" in Missouri, so there is no general jurisdiction over CDE.  *See Goodyear*, 564 U.S. at 924; *see Port Indus. v. Shimp*, No. 2:21CV33 HEA, 2021 U.S. Dist. LEXIS 241308, at *12 (E.D. Mo. Dec. 17, 2021) (Even "[a] corporation's continuous activity of some sort within a state . . . is not enough to support . . . suits unrelated to that activity.") (quotations omitted)).

**B.  CDE is Not Subject to Specific Jurisdiction in Missouri.**

Specific jurisdiction is also lacking.  Monsanto must show "(1) that the action arose out of an activity covered by the long-arm statute, [Mo. Rev. Stat. §] 506.500 and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process requirements."  *Conway*, 12 S.W.3d at 318 (footnote omitted).  Monsanto cannot make either showing.

1.  <u>CDE is Not Subject to Jurisdiction under Missouri's Long-Arm Statute.</u>

Missouri's long-arm statute is limited to "cause[s] of action arising from" five specific

4

circumstances: "(1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a tortious act within this state; (4) The ownership, use, or possession of any real estate situated in this state; [and] (5) The contracting to insure any person, property or risk located within [Missouri]."  Mo. Rev. Stat. § 506.500.

None of these provisions confers specific jurisdiction over CDE.  Because the fourth and fifth circumstances plainly do not apply, CDE focuses its discussion on the first three.[7]

### a.  This case did not arise from any contract CDE made in Missouri.

The SU is not a Missouri contract.  "For purposes of long-arm jurisdiction, a contract is made where acceptance occurs."  *Wilson Tool & Die, Inc. v. TBDN - Tennessee Co.*, 237 S.W.3d 611, 615 (Mo. Ct. App. 2007) (citing *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002)).  Acceptance of the terms of the SU, if it occurred at all, did not happen in Missouri.  It happened in either Illinois when Old Monsanto shipped PCBs to CDE, or New Jersey where CDE likely signed the SU.

The SU is a unilateral contract, meaning that an enforceable agreement formed, if ever, when Old Monsanto *performed* by selling or delivering PCBs to CDE.  "A unilateral contract lacks consideration for want of mutuality, but when the promisee performs, consideration is supplied, and the contract is enforceable to the extent performed."  *Cook v. Coldwell Banker/ Frank Laiben Realty Co.*, 967 S.W.2d 654, 657 (Mo. Ct. App. 1998) (noting that acceptance occurs "when the requested performance is rendered"); *see Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 533 (Mo. Ct. App. 2011) (stating that "when the promisee performs,

---

[7] CDE owns no property in Missouri.  Whitworth Aff. ¶ 7.  Nor does it insure anyone or anything in Missouri.  *Id.* ¶ 9; *see Babb v. Bartlett*, 638 S.W.3d 97, 112 (Mo. Ct. App. 2021) (noting no authority for the "proposition that an indemnification clause contained within a larger . . . agreement . . . constitutes a 'contract to insure' within the meaning of § 506.500.1(5)").

consideration is supplied, and the contract is enforceable to the extent performed").

The SU purports to contain only unilateral promises related to defense and indemnity. *See* FAP ¶ 93 (stating that "Buyer hereby covenants and agrees" to certain terms); *id.* Ex. 5.  Old Monsanto made no reciprocal promises.  In fact, Old Monsanto specifically disclaimed any obligations: "Nothing herein shall create or imply any duty or obligation of Monsanto to sell or deliver any PCB's [sic] to Buyer."  FAP Ex. 5 at 2.  Thus, the one-sided SU could not have resulted in a contract until Old Monsanto shipped PCBs to CDE.  *See Cook*, 967 S.W.2d at 657. And because, after the SU was signed, Old Monsanto shipped PCBs to CDE from its plant in Illinois, Ettinger Aff. Ex. A, any contract would have formed in Illinois—not Missouri.  *See Garrity v. A.I. Processors*, 850 S.W.2d 413, 417 (Mo. Ct. App. 1993) (holding that Mo. Rev. Stat. § 506.500.1(2) did not confer long-arm jurisdiction where contract was "a unilateral contract made in Utah when [defendant] deposited $30,000 in the designated bank account"). Accordingly, either the SU was a unilateral contract formed, if at all, in Illinois, or it fails for lack of consideration.

Even if the SU is not a unilateral contract, it still is not a contract made in Missouri. Whether a contract is a Missouri contract depends on whether it was *accepted* in Missouri.  *See, e.g.*, *Wilson*, 237 S.W.3d at 615 (contract accepted in Tennessee when defendant orally accepted plaintiff's representative's offer from Tennessee); *Johnson Heater*, 86 S.W.3d at 119 (contract made in Wisconsin where offer accepted when defendant executed unaltered purchase acceptance form in Wisconsin); *State ex rel. Career Aviation Sales, Inc. v. Cohen*, 952 S.W.2d 324, 326 (Mo. Ct. App. 1997) (contract made in California when defendant's agent executed agreement in California, accepting plaintiff's offer).

Here, the SU was a form document provided to multiple customers.  *See* FAP ¶¶ 3, 50 &

6

Exs. 2, 4, 5.  If the SU is not a unilateral contract, presenting that form to CDE as a precondition to continue selling PCBs to CDE amounted to an *offer* by Old Monsanto that CDE *accepted* by signing without altering the proposed terms.  *See id.* ¶ 91 & Ex. 5.  CDE's SU was signed by its then-Executive Vice President, Wayne Peterson.  *Id.* Ex. 5.  Because Mr. Peterson's office was in CDE's then-headquarters in New Jersey, he likely signed the SU in that state, not in Missouri.  *See* Ettinger Aff. Ex. B.  This case is thus akin to the myriad other Missouri cases finding no jurisdiction under the long-arm statute when a contract was accepted in a different state.  Accordingly, whether the SU was a unilateral contract or acceptance occurred in the state where CDE likely signed, the SU is not a Missouri contract, and this Court lacks jurisdiction under the long-arm statute.

> ### b.  *This case did not arise from any business CDE transacted in Missouri.*

Monsanto also cannot show that this suit arose from any business that CDE transacted in Missouri under the long-arm statute.  *See* Mo. Rev. Stat. § 506.500.1(1).  The business transactions from which this case allegedly arose are Old Monsanto's shipments of PCBs to CDE and the signing of the SU.  As explained above, neither occurred in Missouri.  That CDE and Old Monsanto may have had a longstanding business relationship before PCBs were banned is not determinative.  The transactions that matter are those from which the case arose.  Missouri law is clear that communicating with a Missouri resident, such as Old Monsanto, by mail or phone is not enough to satisfy the long-arm statute regarding transacting business in Missouri.  *Johnson Heater*, 86 S.W.3d at 120 (concluding that defendant did not transact business in Missouri where its only alleged contacts with Missouri were by telephone, fax, and mail); *see Warner vs. Gen. Ins. Co. of Am.*, 690 F. Supp. 830, 835 (E.D. Mo. 1988) (holding that defendant's "contacts with Missouri, consisting solely of telephone calls and written correspondence to plaintiffs, [were] insufficient to permit this Court to exercise jurisdiction"); *State, ex rel. Barnes v. Gerhard,* 834

S.W.2d 902, 903–04 (Mo. Ct. App. 1992) (holding that single trip to Missouri and telephone calls with persons in Missouri were insufficient to establish jurisdiction).

       *c.   This case did not arise from any tort CDE committed in Missouri.*

This is a contract case, not a tort case. It arises from CDE's alleged refusal to defend and indemnify Monsanto under the SU. The torts Monsanto has alleged are plainly an afterthought. Monsanto does not even mention tort liability when introducing its petition, asserting only breaches of the SU. *See* FAP ¶ 6. Likewise, Monsanto did not mention potential tort liability when it demanded that CDE defend and indemnify it. *See id.* Ex. 25. The tort claims Monsanto asserts—negligence (Count V) and "equitable contribution" (Count VII, pleaded "in the alternative")—are facially deficient and, thus, cannot serve as a pretext to keep this case in a Missouri court when personal jurisdiction over Monsanto's contract claim is lacking. *See Conway*, 12 S.W.3d at 318 ("To demonstrate that the action arose out of an activity covered by [the long-arm] statute, a plaintiff must make a prima facie showing of the validity of its claim."); *Babb*, 638 S.W.3d at 105 (same). The only jurisdictional basis for the tort claims is that Monsanto suffered financial harm in Missouri from the underlying PCB cases—litigation expenses are the only damages Monsanto alleges it suffered, *see, e.g.*, FAP ¶¶ 6, 291, 312–13. But that is not enough. Were it otherwise, a Missouri resident could always sue in Missouri by alleging financial harm; that is not the law. Monsanto also alleges that CDE and others breached their duty of care by allowing PCBs to be released into the environment; however, Monsanto's allegations about CDE concern releases that occurred only in Massachusetts and Rhode Island Sound—nowhere near Missouri. *Id.* ¶¶ 155–60, 288. The long-arm statute does not confer personal jurisdiction over CDE in these circumstances. *See J.H. Berra Paving Co. v. Legendary Motorcar Co.*, No. 4:18-CV-02148-NCC, 2019 U.S. Dist. LEXIS 92248, at *7 (E.D. Mo. June 3, 2019) (extraterritorial acts must have set in motion a course of action "deliberately designed" to

have consequences in Missouri).

> 2. CDE Lacks Sufficient Suit-Related Contacts with Missouri for the Court to Exercise Personal Jurisdiction over CDE within the Limits of Due Process.

Even assuming *arguendo* that the suit meets long-arm statute requirements, Monsanto cannot show that CDE had sufficient contacts with Missouri to satisfy CDE's due process rights.[8]  Due process requires "contacts with the forum state [to] be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath*, 760 F.3d at 820–21.  This requires at least "some act" by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State." *Id.* at 821 (citation and internal quotation marks omitted).  The contacts the Court must evaluate are CDE's "*suit-related conduct*" that created "a substantial connection with the forum State." *Id.* (emphasis added).  It is not enough that CDE interacted with a Missouri corporation.  *See Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (The court considers "defendant's contacts with the forum state," not just "with a resident.").

To determine the sufficiency of a defendant's contacts, the Court considers (1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties.  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012).  The Court gives "significant weight to the

---

[8] If the Court determines that Monsanto has failed to show that exercising personal jurisdiction over CDE in this case would satisfy due process, the Court can dismiss solely on that basis.  *See Gray v. Hudson*, No. 14CV1183 HEA, 2015 U.S. Dist. LEXIS 95969, at *24 (E.D. Mo. July 23, 2015) ("a finding that a plaintiff has failed to establish that personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases" (emphasis omitted)); *True Fitness Tech., Inc. v. Samsara Fitness, LLC*, No. 4:14CV1930 HEA, 2015 U.S. Dist. LEXIS 78993, at *19 (E.D. Mo. June 18, 2015) (same).

first three factors." *Fastpath*, 760 F.3d at 821.

In contract cases such as this one, the Court "consider[s] the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Id.* When a contract was not negotiated or executed in the forum state, was not performed in the forum state, and did not involve goods that originated in the forum state or were destined there, there is no sufficiently "substantial connection" with the state to support personal jurisdiction. *See Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 454–56 (8th Cir. 1977); *Dairy Farmers*, 702 F.3d at 478–79; *see also Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524-25 (8th Cir. 1992) (no jurisdiction when a contract was not executed or negotiated in the forum state, even though the defendant had visited the forum state and communicated with the plaintiff by phone and mail); *Bell Paper Box v. Trans W. Polymers*, 53 F.3d 920, 922 (8th Cir. 1995) ("[E]ntering into a contract with a forum resident" is insufficient, particularly "when the nonresident defendant is a buyer, rather than a seller").

This case is apiece with those precedents. As discussed above, the SU likely was neither negotiated nor signed by CDE in Missouri. It did not obligate Old Monsanto to engage in any further PCB sales, or sales of any kind, with CDE. Monsanto alleges it did sell PCBs to CDE after the SU was signed, but it shipped them from its Illinois plant to CDE in Massachusetts, and CDE paid Old Monsanto in New York.[9] Monsanto has not alleged that in the nearly half century between the 1979 PCB ban and the date CDE was added to the case, CDE has had any significant, suit-related contacts with Missouri or Monsanto, apart from the handful of letters it exchanged with Monsanto's counsel after receiving the demand. Those facts, taken together,

---

[9] The alleged SU, moreover, contains no Missouri choice-of-law provision, nor does it contain a Missouri forum selection clause. *See* FAP Ex. 5.

cannot confer jurisdiction consistent with due process. This Court has found similar facts to be dispositive even when, unlike here, the contract was "technically" made in Missouri. *See Restoration St. Louis, Inc. v. 3rd St. IA LLC*, No. 4:13CV669 HEA, 2014 U.S. Dist. LEXIS 23955, at *10 (E.D. Mo. Feb. 24, 2014) (finding no jurisdiction where defendant's principal place of business was in New York; none of its members was a Missouri citizen; it had no office, property, or employees in Missouri; and the contract was negotiated outside Missouri).

Monsanto fares no better when considering the other factors in the due process analysis. Missouri's interest in keeping this case is minimal and does not outweigh the lack of sufficient contacts. Missouri has no greater interest than any of the other states involved in the relevant PCB transactions between Old Monsanto and CDE. There is also no reason to believe that litigating in Missouri will be more convenient than in any other forum that may have personal jurisdiction over CDE. Monsanto is a major multinational corporation with a nationwide presence. It is allegedly litigating the underlying PCB cases in Washington, Delaware, Maryland, New Hampshire, Pennsylvania, Oregon, California, Washington D.C., New Mexico, Ohio, Louisiana, Connecticut, and even Massachusetts. All the factors the Court considers for due process support dismissing this case against CDE for lack of personal jurisdiction.

## II.    MONSANTO'S CLAIMS AGAINST CDE ARE TIME-BARRED.

The Court should dismiss Monsanto's case against CDE in whole or in part for failure to state a claim because it is time-barred. *See* Fed. R. Civ. P. 12(b)(6). Assuming Missouri law applies, the statute of limitations is five years for breach of contract and tort actions. Mo. Rev. Stat. § 516.120(1), (4). Monsanto alleges that CDE rejected Monsanto's demand for defense and indemnity on May 18, 2017, and thereby breached the SU. FAP ¶¶ 225–26 & Exs. 25, 26. Yet Monsanto added CDE to its lawsuit on August 3, 2022, more than five years after any contract claim accrued. *See* FAP at 71; *see Loeffler v. City of O'Fallon*, 71 S.W.3d 638, 642–43 (Mo. Ct.

App. 2002) (contract claim accrued, and statute of limitations began to run, when defendant declined request for payment). Monsanto's tort claims also accrued for most, if not all, of the underlying lawsuits more than five years before Monsanto added CDE. Those claims are time-barred as well.[10]

## III.    COUNT V FAILS TO STATE A CLAIM OF NEGLIGENCE.

Monsanto's contract claims are "at the heart of this dispute." *See Sybaritic*, 957 F.2d at 525. The tort claims (equitable contribution and negligence) are an afterthought, not mentioned until the end of the FAP after hundreds of allegations about the SU. The tort claims fail to state a viable claim and should neither control the jurisdiction question nor survive a motion to dismiss. The Joint Brief addresses equitable contribution. CDE moves separately to dismiss Count V (negligence) for failure to state a claim because it is barred by the economic loss doctrine.

"[I]n any negligence action, the plaintiff must first establish that a duty exists by the defendant to protect the plaintiff from the injury suffered." *Rockport Pharmacy v. Dig. Simplistics*, 53 F.3d 195, 198 (8th Cir. 1995) (quoting *Burns v. Black & Veatch Architects, Inc.*, 854 S.W.2d 450, 452–53 (Mo. Ct. App. 1993)). But, as a matter of law, there is "no duty to exercise reasonable care to protect against a loss that is *purely economic in nature*." *Id.* (emphasis added) (noting that "[t]he mere existence of a contract does not give rise to a duty in tort"). This "economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Captiva Lake Invs., Ltd. Liab. Co. v.*

---

[10] For negligence, the limitations period started running when Monsanto first learned of the underlying lawsuits. *See City of N. Kan. City v. Archer Daniels Midland Co.*, 575 S.W.3d 270, 277 (Mo. Ct. App. 2019). For further discussion of negligence and the statute of limitations, see Defendant The Gillette Company, LLC's Mem. of Law in Supp. of Mot. to Dismiss at 10–12. Regarding equitable contribution, CDE joins the arguments of Defendant Kyocera AVX Components Corporation's Mem. of Law in Supp. of Mot. to Dismiss at 13–14.

*Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014) (collecting cases).  It limits recovery in tort to "cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence."  *Id.*; *see, e.g.*, *Crowder v. Vandendeale*, 564 S.W.2d 879, 881–84 (Mo. 1978) (en banc) (holding that plaintiff could not recover economic damages under negligence theory because contractual theory provided adequate and appropriate remedy); *Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co.*, 668 S.W.2d 601, 602–03 (Mo. Ct. App. 1984) (affirming defendants' motion for judgment on the pleadings where plaintiff alleged product defect caused only economic losses).[11]

Here, Monsanto has not alleged any personal injury or property damage to Monsanto.  Its count for negligence alleges purely economic losses:

> the costs of defending the PCB Lawsuits (attorneys' fees, expert witness fees, and other costs and expenses), the amounts paid to settle some of the Food Chain Cases, the amounts paid and/or agreed to be paid to settle some of the Water Cases, the judgments entered in the Sky Valley School Cases, and all other amounts Plaintiffs have reasonably paid and/or agreed to pay to resolve claims (whether through settlement, verdict, judgment, or otherwise) *covered by the Special Undertaking Agreements* prior to the date of this filing.

FAP ¶ 290 (emphasis added).  All those litigation expenses are economic losses.  They are also losses that are "contractual in nature."  *Captiva Lake*, 436 S.W.3d at 628.  Monsanto even refers to them explicitly in its negligence count as costs "covered by" the SU.  FAP ¶ 290.  Missouri law is clear: Monsanto cannot allege contractual damages under the guise of a negligence claim.  *See Captiva Lake*, 436 S.W.3d at 628.  Monsanto's Count V is a quintessential violation of the

---

[11] The Court's analysis is the same regardless of which state's law applies.  *See, e.g.*, Restatement (Third) of Torts: Liab. for Econ. Harm § 3 (Am. L. Inst. 2020) ("[T]here is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties.").

economic loss doctrine and must be dismissed.[12]

## **CONCLUSION**

For the foregoing reasons, this Court should (1) dismiss Monsanto's First Amended Petition in its entirety as to CDE for lack of personal jurisdiction; (2) dismiss Monsanto's First Amended Petition as to CDE to the extent it is barred by the statute of limitations; or (3) dismiss Count V (negligence) for failure to state a claim upon which relief can be granted.

## **REQUEST FOR ORAL ARGUMENT**

CDE respectfully requests oral argument on its Motion.  CDE believes the Court would benefit from an oral presentation given the complexity of the issues in this case.

---

[12] If Monsanto argues that it has adequately pleaded personal injury or property damages because those damages were alleged by third parties in the underlying PCB lawsuits, that argument must fail.  Monsanto cannot stand in the shoes of the third parties it injured to assert a negligence claim against CDE as if Monsanto had suffered those injuries itself.  Nor does Monsanto allege that any of the releases it attributes to CDE injured Monsanto directly or damaged any Monsanto property.  FAP ¶¶ 155–60.

Respectfully submitted,

CORNELL-DUBILIER ELECTRONICS, INC.

By its attorneys,

*/s/ Benjamin J. Wilson*
Benjamin J. Wilson (63329MO)
SEGAL MCCAMBRIDGE SINGER & MAHONEY
8112 Maryland Avenue, Suite 400
St. Louis, MO 63105
(314) 300-5780
(312) 645-7711 (fax)
bjwilson@smsm.com

Jonathan M. Ettinger (Admitted *Pro Hac Vice*)
Aaron F. Lang (Admitted *Pro Hac Vice*)
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (fax)
jettinger@foleyhoag.com
alang@foleyhoag.com

Dated: May 1, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel and parties of record who have appeared.

*/s/ Benjamin J. Wilson*