# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC.,

                 Plaintiffs,

    v.

MAGNETEK, INC.,
GENERAL ELECTRIC CO.,
PARAMOUNT GLOBAL,
KYOCERA AVX COMPONENTS CORPORATION,
CORNELL-DUBILIER ELECTRONICS, INC.
And THE GILLETTE COMPANY LLC,

                 Defendants.

Case No.  4:23-cv-00204-HEA

Jury Trial Demanded

## DEFENDANT THE GILLETTE COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED PETITION

Plaintiffs' lawsuit against The Gillette Company LLC ("Gillette") is a misplaced and belated attempt to shift liability for alleged injuries arising out of the use of polychlorinated biphenyls ("PCBs") manufactured and supplied by Plaintiffs through the late 1970s.  They broadly allege that under Special Undertakings ("SUs"), the Defendants are generally liable to defend, indemnify, and hold harmless Plaintiffs in third-party litigation for PCB-related injuries allegedly sustained at various points in time across the country as a result of largely unspecified PCB releases (the "PCB Lawsuits").  They further claim that Defendants' alleged negligence resulted in the PCB Lawsuits and that Plaintiffs have suffered damages as a result.  Plaintiffs' claims fail for the following reasons.

*First*, Plaintiffs' claims against Gillette should be dismissed for lack of personal

jurisdiction.  Plaintiffs fail to establish personal jurisdiction under Missouri's long-arm statute because Plaintiffs do not allege that Gillette's purported predecessor-in-interest, P.R. Mallory, contracted with Plaintiffs in Missouri or conducted business within Missouri, nor do Plaintiffs allege that P.R. Mallory contracted to insure a person or risk within Missouri.  Further, Plaintiffs have not alleged any facts to support general jurisdiction, and fail to allege sufficient contacts by Gillette with Missouri to establish specific jurisdiction under the Due Process Clause.

*Second*, even if the Court does have personal jurisdiction over Gillette, certain of Plaintiffs' claims should still be dismissed.  Count I, Breach of Contract for Refusal to Defend, should be dismissed due to Plaintiffs' failure to demand defense from Gillette until years after Plaintiffs had already undertaken and substantially completed their defense of the PCB Lawsuits.  Count V, Negligence, is barred on its face by the statute of limitations.  Indeed, Plaintiffs admit that they began incurring the harm allegedly caused by the PCB Lawsuits more than seven years ago, but did not invoke their putative right to indemnification by Gillette under the SU until May 13, 2022—well after the five-year statute of limitations expired.  Count V is also barred by the economic loss doctrine because Plaintiffs are seeking to recover in tort for economic losses that are contractual in nature.  Finally, Plaintiffs cannot recover under Counts I and II attorney's fees, costs, and expenses that were incurred prior to May 13, 2022, when Plaintiffs finally did inform Gillette of their claim for indemnification.[1]

**I.     THE COURT LACKS PERSONAL JURISDICTION OVER GILLETTE**

Plaintiffs bear the burden of establishing personal jurisdiction.  *See Babb v. Bartlett*, 638 S.W.3d 97, 105 (Mo. Ct. App. 2021).[2]  They must plead and prove "that the suit arose from any of

---

[1] Gillette further joins, adopts in whole, and incorporates by reference, Defendants' Joint Motion to Dismiss Counts I-IV and VII of Plaintiffs' First Amended Petition. (Dkt. Nos. 90, 91).
[2] Gillette applies Missouri law for purposes of this Motion only.

2

the activities enumerated in . . . the Missouri long[-]arm statute;" and "that the defendant has sufficient minimum contacts with Missouri to satisfy due process requirements." *Id.* As relevant here, Missouri's long-arm statute authorizes personal jurisdiction when the "cause of action aris[es] from . . . '(1) The transaction of any business within this state; (2) The making of any contract within this state; . . . [or] (5) The contracting to insure any person, property or risk located within this state at the time of contracting." Mo. Rev. Stat. § 506.500(1). The Due Process Clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954). Due process is satisfied when the court has either general or specific jurisdiction as the basis for its personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction exists when the lawsuit "[arises] out of or related to defendant's contacts with the forum." *Id.* at 414 n.8.

      **A.**      **The Court Lacks Personal Jurisdiction Under Missouri's Long-Arm Statute**

The First Amended Petition fails to allege facts sufficient to find that Gillette—or P. R. Mallory, Gillette's alleged predecessor-in-interest for purposes of Plaintiffs' claims—committed any required acts under Missouri's long-arm statute sufficient to establish personal jurisdiction.

Plaintiffs first allege that the "Defendants"—independent, unrelated companies—somehow collectively satisfy the long-arm statute because "Defendants . . . made contracts within Missouri." Pet. ¶ 17. Plaintiffs assert that "[t]he final act creating" the SU with P.R. Mallory—"Old Monsanto's execution of the agreement—occurred in Missouri." *Id.* ¶ 97. But "the final act" constituting a contract is not the relevant inquiry. "[F]or purposes of long-arm jurisdiction, a contract is made where *acceptance* occurs." *Wilson Tool & Die, Inc. v. TBDN-Tennessee Co.*, 237 S.W.3d 611, 615 (Mo. Ct. App. 2007) (emphasis added). Plaintiffs do not allege that the SU was *accepted* by P.R. Mallory in Missouri, and so Plaintiffs' claim to long-arm jurisdiction fails on its

3

face. *See id.* (acceptance occurred in Tennessee when defendant's representative orally accepted plaintiff's offer of services and this did not establish jurisdiction under long-arm statute); *State ex rel. Career Aviation Sales, Inc. v. Cohen*, 952 S.W.2d 324, 326 (Mo. Ct. App. 1997) (finding contract was formed in California when the accepting party signed the contract in California, even though the offeror later confirmed and signed the contract in Missouri as the final act).[3]

In support of jurisdiction, Plaintiffs also allege that Defendants "transacted business within Missouri." Pet. ¶ 17. But while Plaintiffs claim that P.R. Mallory conducted operations in several states *other* than Missouri—Tennessee, Kentucky, and Indiana—they do not identify any business transacted by P.R. Mallory *in Missouri*, and describe no business transacted by Gillette at all. *Id.* ¶¶ 162, 165. Plaintiffs' generalized assertions as to "Defendants" cannot save their deficient allegations as to specific defendants for purposes of personal jurisdiction.

To the extent Plaintiffs rely on allegations regarding Defendants' "suit-related contacts with Missouri," *see id.* ¶ 17, such generalized assertions are unavailing. Plaintiffs do not allege that *Gillette or P.R. Mallory* "visit[ed] Old Monsanto in Missouri regarding PCBs," *id.*; rather, Plaintiffs concede that it was *Old Monsanto* that visited P.R. Mallory, *id.* ¶ 37. Plaintiffs do not allege that *Gillette or P.R. Mallory* registered to do business in Missouri. *Id.* ¶ 17; *cf.* ¶ 11 (alleging Defendant GE registered to do business in Missouri). Plaintiffs similarly do not allege that *Gillette or P.R. Mallory* "communicat[ed] with Old Monsanto in Missouri" or "contact[ed] Old Monsanto in Missouri by telephone," *id.* ¶ 17, and such contacts are insufficient to confer personal jurisdiction in any event. *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002) ("[U]se of the mail or telephone communications, without more, does not constitute the transaction

---

[3] Further, as discussed in Section I.B.1.a of the Memorandum in Support of Cornell-Dubilier Electronics, Inc.'s Motion to Dismiss and incorporated here by reference, the SU is a unilateral contract agreed to via Plaintiffs' performance. (Dkt. No. 86).

of business for purposes of long-arm jurisdiction in Missouri.").

Plaintiffs also rely on vague claims regarding "contracts to purchase PCBs . . . that were executed in Missouri and contained Missouri choice-of-law provisions." Pet. ¶ 17. But the P.R. Mallory SU does not contain a Missouri choice-of-law provision and Plaintiffs do not allege that other P.R. Mallory contracts do. *See id.* Ex. 6. And even assuming Plaintiffs sufficiently demonstrated that purchase contracts were executed in Missouri, which they have not, Plaintiffs' claims largely "arise from" the SU, not from PCB purchase contracts. *See* Pet. ¶¶ 236–91, 303–13; Mo. Rev. Stat. § 506.500(1). Such allegations thus fail to establish long-arm jurisdiction. *Cf. State ex rel. Metal Serv. Ctr. of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) ("The business may consist of a single transaction, *if that is the transaction sued upon*." (emphasis added)); *Nat'l Indem. Co. v. Pierce Waste Oil Serv., Inc.*, 740 F. Supp. 721, 724 (E.D. Mo. 1990).[4]

In an apparent last-ditch effort, Plaintiffs allege that Defendants "contracted to insure a person, property, or risk located within Missouri." Pet. ¶ 17. But the SU is plainly not an insurance contract and is therefore not sufficient to establish jurisdiction under the long-arm statute. *See Babb*, 638 S.W.3d at 111 (finding plaintiff's argument that defendant was "subject to personal jurisdiction by virtue of agreeing to indemnify" defendant to be "without merit").

**B.     The Court Lacks Personal Jurisdiction Under The Due Process Clause**

Irrespective of the requirements of a state-long arm statute, a court may assert general ju-

---

[4]  Even if the Court takes into account other non-SU-related allegations, they are insufficient to establish that Gillette or P.R. Mallory transacted business in Missouri for the same reasons as stated in footnote 5, *infra*. *See Restoration St. Louis, Inc. v. 3RD St. IA LLC*, No. 4:13-cv-669, 2014 WL 722409, at *2 (E.D. Mo. Feb. 24, 2014) (explaining that the Missouri long-arm statute "will be interpreted to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause.").

5

risdiction over a foreign corporation if its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Plaintiffs have not alleged that general jurisdiction is appropriate. *See* Pet. ¶ 15 (conceding Gillette is at home in Massachusetts and Delaware), ¶ 17 (alleging only "suit-related contacts").

Under the doctrine of specific jurisdiction, if the lawsuit "[arises] out of or related to defendant's contacts with the forum," *Helicopteros*, 466 U.S. at 414 n.8, then the defendant must "have certain minimum contacts with" the forum state such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up). The Eighth Circuit evaluates five factors when determining whether these purposeful, minimum contacts are present: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 455 (8th Cir. 1984). Plaintiffs bear the burden of proving that specific jurisdiction exists. *Norman v. Fischer Chevrolet Oldsmobile, Inc.*, 50 S.W.3d 313, 317 (Mo. Ct. App. 2001).

Here, Plaintiffs have failed to establish minimum contacts in Missouri. As a preliminary matter, Plaintiffs plead no facts establishing specific jurisdiction over Gillette for Count V, Negligence, or Count VII, Equitable Contribution. There is no allegation that Gillette or P.R. Mallory allowed PCBs to be released *in Missouri*. *Contra, e.g.*, Pet. ¶ 162 (regarding alleged PCB releases in Tennessee). The other claims against Gillette (Counts I–IV) all arise from the SU; Plaintiffs cannot establish specific jurisdiction over these claims by relying upon unrelated contacts with Missouri (which are themselves flawed as a basis for jurisdiction, as explained in Section I.A,

6

*supra*). *See* Pet. ¶ 17; *Goodyear*, 564 U.S. at 927 ("A corporation's 'continuous activity of some sorts within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("[T]he defendant's *suit-related conduct* must create a substantial connection with the forum State." (emphasis added)).[5]

And Plaintiffs' meager allegations that do relate to the SU are insufficient. There is no allegation that the SU was entered in Missouri, *see* Section I.A, and even if it had been, "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979) (citations omitted); *see also Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) (finding no minimum contacts in relation to cause of action arising out of contract because one trip to the forum state and subsequent telephone and mail communications were "too few in number and too attenuated from the cause of action to support jurisdiction"; the contract was negotiated, drafted, presented, and executed outside the forum; and other forum-based activities, including the manufacture of products in the forum, "were more appropriately treated as unilateral acts not related to the cause of action"). Gillette's "contacts with Missouri are merely fortuitous, and bear[] no resemblance to [Gillette] purposely availing itself of the benefits of doing business in Missouri to satisfy due process." *Restoration St. Louis, Inc. v. 3RD*

---

[5] Even if these unrelated allegations were considered, they are insufficient to establish minimum contacts. *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (where the defendant—who was not authorized to do business in Missouri, had no office or personnel in Missouri, owned no property in Missouri, and had no agents in Missouri—entered into agreements to purchase goods from a seller in Missouri and sent payment to the seller, no minimum contacts existed because the seller was attempting to rely on *its* performance of the contract instead of the defendant's contacts); *CPC-Rexcell, Inc. v. La Corona Foods, Inc.*, 912 F.2d 241, 242–43 (8th Cir. 1990) (finding no minimum contacts in Missouri where nonresident defendant made telephone calls, orders, and payments by mail to Missouri seller).

7

*St. IA LLC*, No. 4:13-cv-669, 2014 WL 722409, at *4 (E.D. Mo. Feb. 24, 2014) (Autrey, J.) (finding no minimum contacts even where the contract was executed in Missouri because the defendant had no other contacts with the state).

Finally, defending this suit in Missouri is burdensome for Gillette. Plaintiffs do not allege that P.R. Mallory manufactured products containing PCBs in Missouri, and the SU that underpins Plaintiffs' claims lacks the necessary connection to Missouri. Exercising personal jurisdiction over Gillette in Missouri does not further Plaintiffs' interest in convenient and effective relief, since much of the evidence related to the SU is likely located outside of Missouri. And Plaintiffs'—who operate in and are incorporated under the laws of other states—status as residents of Missouri is not enough to give Missouri a strong interest in adjudicating the dispute. *See Mountaire Feeds, Inc. v. Agro Impex, S. A.*, 677 F.2d 651, 651 (8th Cir. 1982).

Plaintiffs' claim to personal jurisdiction over Gillette hangs upon the 1972 execution by P.R. Mallory of an agreement with a Missouri resident. "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (emphasis in original).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF IN COUNTS I AND V, AND FOR ANY FEES AND COSTS PRIOR TO MAY 13, 2022

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. There must be more than "a sheer possibility that a defendant has acted unlawfully" and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

8

and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Conclusory allegations are "disentitle[d] . . . to the presumption of truth." *Id.* at 681.

### A.     Plaintiffs Fail to State a Claim for Breach of Contract for Refusal to Defend

Plaintiffs fail to state a claim upon which relief can be granted with respect to Count I—Breach of Contract for Refusal to Defend—against Gillette. The duty to defend is independent of the duty to indemnify. *Travelers Indem. Co. v. S.M. Wilson & Co.*, No. 4:04-cv-1365, 2005 WL 3143779, at *3 (E.D. Mo. Nov. 23, 2005). The duty to defend is breached "when the indemnitor rejects an indemnitee's tender of defense." *Shapiro Sales Co. v. Alcoa, Inc.*, No. 4:06-cv-638, 2006 WL 2228987, at *2 (E.D. Mo. Aug. 3, 2006).

Plaintiffs allege that Gillette is obligated to defend and indemnify Plaintiffs in the PCB Lawsuits, including for "attorneys' fees, expert fees, and all other costs and expenses" arising therefrom, and that as a result of Gillette's breach of this obligation, Plaintiffs have incurred damages in defending the PCB Lawsuits in the form of fees and other expenses. Pet. ¶¶ 236–49. This claim rests on the allegation that "Plaintiffs notified Defendants of the PCB Lawsuits, tendered the defense of the PCB Lawsuits to Defendants, and demanded that Defendants defend Old Monsanto in the PCB Lawsuits." *Id.* ¶ 245. However, Plaintiffs concede that they did not tender defense of the PCB Lawsuits to Gillette until May 13, 2022. *Id.* ¶ 229.[6] This tender occurred months—and in several circumstances, years—after Plaintiffs had already undertaken and largely completed their defense of the PCB Lawsuits, settling Food Chain cases in September 2016, *id.* ¶ 176; settling Water Cases in June 2020, *id.* ¶ 187; facing jury verdicts in School Cases in June 2021 and November 2021, *id.* ¶ 194; and settling at least one Occupational Case in December 2021, *id.* ¶ 200.

Gillette can hardly be said to have breached its duty to defend the PCB Lawsuits when

---

[6]   In contrast, Plaintiffs tendered defense of the PCB Lawsuits to other Defendants—each of which allegedly signed SUs—by August 2016. *See* Pet. ¶¶ 205, 211, 216, 221, 225.

9

Plaintiffs failed to tender the cases to Gillette until *after* they had been defended and, in many cases, resolved.  *Cf. Travelers Indem. Co.*, 2005 WL 3143779, at *3 (finding breach of duty to defend when indemnitee notified indemnitor of the lawsuit at issue and indemnitor "was afforded a full opportunity to defend [the indemnitee] . . . but chose not to").  Count I should therefore be dismissed against Gillette.  At a minimum, Gillette should not be liable for any damages incurred prior to May 13, 2022, the date of Plaintiffs' tender.

### B. Count V is Barred By the Statute of Limitations Because Plaintiffs Sustained and Were Capable of Ascertaining Damages Prior to August 3, 2017

Count V, Negligence, alleges that Gillette breached its duty of care by allowing PCBs to be released into the environment, causing the PCB Lawsuits to be filed against Plaintiffs and leading Plaintiffs to suffer damages as a result.  Pet. ¶¶ 285–91.  But the First Amended Petition establishes on its face that the statute of limitations on this claim has run.  *See Cush-El v. Synchrony Bank*, No. 4:19-cv-2771, 2020 WL 122926, at *2 (E.D. Mo. Jan. 10, 2020) (granting Rule 12(b)(6) dismissal on statute of limitations grounds where defense was established on the face of the complaint).

Negligence is subject to a five-year statute of limitations.  Mo. Rev. Stat. § 516.120.  Such claims must be commenced within five years after the cause of action accrues, which is "not . . . when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."  Mo. Rev. Stat. § 516.100.  This is an objective test: "an injury is capable of ascertainment when the 'evidence was such to place a reasonably prudent person on notice of a potentially actionable injury.'"  *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 765 (8th Cir. 2020).  The damage sustained need not be precise; rather, "[t]he most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount."  *Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. 1983).

10

Plaintiffs named Gillette as a defendant on August 3, 2022, seeking damages incurred in defending and resolving the PCB Lawsuits. *See* Pet. ¶ 290. But as demonstrated from the face of Plaintiffs' own pleadings, Plaintiffs were on notice of these alleged injuries earlier than August 3, 2017—five years prior to the filing of the First Amended Petition. For example, the First Amended Petition acknowledges that Plaintiffs were named as defendants in PCB Lawsuits more than five years ago. *See, e.g.*, Pet. Ex. 11 (complaint filed on August 3, 2015 in *City of San Diego v. Monsanto Co., et al.*, No. 3:15-cv-578 (S.D. Cal)).[7] And Plaintiffs began incurring the costs of defending these PCB Lawsuits at this time. *Id.* ¶¶ 169, 178, 189, 197 (stating that Plaintiffs were named as defendants in the PCB Lawsuits). In fact, Plaintiffs also began incurring the costs of *resolving* these Lawsuits before August 3, 2017—for example, entering into a settlement and paying "a significant amount" to resolve certain of the PCB Lawsuits in September 2016. *Id.* ¶ 176.

Plaintiffs thus suffered at least "some" ascertainable damages before August 3, 2017, which they themselves characterize as "significant." Under Missouri law, this triggered accrual of the statute of limitations. *See Dixon*, 649 S.W.2d at 438 (finding appellants had suffered "some damage" when they hired counsel that would have otherwise been unnecessary); *Bormaster v. Baldridge*, 723 S.W.2d 533, 540 (Mo. Ct. App. 1987) (negligence claim accrued when appellant paid an initial $500 fee to an attorney to represent him in litigation that had not yet settled).[8]

---

[7] *See also* Pet. Ex. 12 (complaint filed on January 25, 2016 in *City of Seattle v. Monsanto Co., et al.*, No. 2:16-cv-107 (W.D. Wash.)); *id.* Ex. 13 (complaint filed on May 19, 2016 in *City of Long Beach v. Monsanto Co., et al.*, No. 2:16-cv-3493 (C.D. Cal.)); *id.* Ex. 14 (complaint filed on July 12, 2016 in *City of Portland v. Monsanto Co., et al.*, No. 3:16-cv-1418 (D. Or.)); *id.* Ex. 15 (complaint filed on November 10, 2015 in *City of Oakland v. Monsanto Co., et al.*, No. 3:15-cv-5152 (N.D. Cal.)); *id.* Ex. 17 (complaint filed in February 2016 in *Lamkin v. Monsanto Co., et al.*, No. 16-0563E (Mass. Sup. Ct.)).

[8] "[A] cause of action may accrue even though the full extent of the plaintiff's injuries is not yet determinable." *Duvall v. Yungwirth*, 613 S.W.3d 71, 80 (Mo. Ct. App. 2020). Here, additional
*(Cont'd on next page)*

That Plaintiffs may incur additional damages by continuing to defend and resolve the PCB Lawsuits does not alter the result:

> [t]he fact of damage may be ascertainable even if the exact amount of damage cannot be verified or if some additional damage may arise at a future time. All possible damages do not have to be known, or even knowable, before the statute accrues. That additional damage may yet occur does not matter.

*Duvall v. Yungwirth*, 613 S.W.3d 71, 77 (Mo. Ct. App. 2020) (internal quotation marks and citations omitted). Because at least some of Plaintiffs' damages allegedly incurred as a result of Gillette's negligence were ascertainable before August 3, 2017, additional damages incurred after that time do not surmount the time bar. Count V is thus barred on its face by the statute of limitations. At a minimum, Plaintiffs' negligence claims premised upon PCB Lawsuits for which they sustained "some damages" prior to August 2017 are time-barred. *See Dixon*, 649 S.W.2d at 439.

### C. Count V Should Be Dismissed Based on the Economic Loss Doctrine

Count V should be dismissed for the independent reason that it is prohibited under the economic loss doctrine. "The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. . . . Recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014).

Here, under the guise of a negligence claim, Plaintiffs are attempting to recover precisely

---

defense costs, settlement payments, and/or jury verdicts that occurred after August 3, 2017 are merely additional developments of the original injury—the costs of defending and resolving the PCB Lawsuits. Missouri courts have often had the occasion to consider accrual of negligence claims prior to the resolution of collateral litigation (like the PCB Lawsuits) and have "repeatedly" held that the "the statute of limitations commenced to run before resolution of the underlying dispute upon which those claims were based." *Id.* at 78 (internal quotation marks omitted) (rejecting argument that an underlying settlement—in which the plaintiffs incurred damages by making a settlement payment—was a distinct "last item of damage" and instead finding it was the development of a much older injury suffered due to negligence).

12

the types of losses prohibited by the economic loss doctrine—the costs of defending and resolving the PCB Lawsuits allegedly resulting from breach of the SU.  Missouri courts have routinely dismissed for failure to state a claim such attempts to recover contractual damages pursuant to a tort claim.  *See Dubinsky v. Mermart LLC*, No. 4:08-cv-1806, 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), *aff'd*, 595 F.3d 812 (8th Cir. 2010) ("Plaintiffs' negligence claim, in essence, states that defendant breached this contractual duty.  Because this breach resulted in only pecuniary losses, plaintiffs cannot bring a negligence claim."); *Wells Fargo Bank, N.A. v. Derrick Thomas Acad. Charter Sch., Inc.*, No. 13-cv-767, 2014 WL 835891, at *3 (W.D. Mo. Mar. 4, 2014) ("[T]he essence of Plaintiff's claim is contractual in nature, stemming from a contractual obligation allegedly breached by Defendants.  As such, Missouri law prohibits Plaintiff from seeking to recover in tort for pure economic damages . . . [and] Plaintiff fails to state a claim for negligence.").[9]

### D.    Plaintiffs Cannot Recover Attorney's Fees Prior to May 13, 2022

In Counts I and II, Plaintiffs seek reimbursement for attorney's fees and associated costs for their defense of the PCB Lawsuits.  Pet. ¶ 248, 261.  An indemnitee can recover attorney's fees it reasonably incurs in defending an action, but only if "the indemnitor has notice of the law suit and an opportunity to defend" it.  *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198 (8th Cir. 1974); *Hales v. Green Colonial, Inc.*, 402 F. Supp. 738, 743 (W.D. Mo. 1975), *aff'd in part, remanded in part sub nom. Hales v. Monroe*, 544 F.2d 331 (8th Cir. 1976).

Here, Plaintiffs began defending the PCB Lawsuits and incurring attorney's fees, costs and

---

[9]  On this point, Gillette also incorporates by reference and joins in Section II of Defendant Kyocera AVX Components Corporations' Memorandum of Law in Support of Motion to Dismiss. (Dkt. No. 83). Just as Plaintiffs only reference KAVX's alleged breach of duty with a claim that KAVX released PCBs in Massachusetts and Ontario, *see id.*, Plaintiffs also only reference Gillette's alleged breach of duty with a claim that P.R. Mallory released PCBs into the environment in Tennessee, Kentucky, and Indiana.  *See* Pet. ¶¶ 161–65.

13

expenses in 2015. *See, e.g.*, Pet. Ex. 15 (complaint filed on November 10, 2015 in *City of Oakland v. Monsanto Co., et al.*, No. 3:15-cv-5152 (N.D. Cal.)). But Plaintiffs did not notify Gillette of the PCB Lawsuits for which they are seeking indemnification, nor did they provide an opportunity for Gillette to defend itself in these cases, at that time. *Id.* ¶ 229. Instead, Plaintiffs continued incurring defense costs for years, ultimately resolving many of the PCB Lawsuits long before they tendered this matter to Gillette on May 13, 2022: the Food Chain cases settled in September 2016, *id.* ¶ 176; some of the Water Cases settled in June 2020, *id.* ¶ 187; some of the School Cases resolved in June 2021, November 2021, *id.* ¶ 194; and some of the Occupational Cases settled in December 2021, *id.* ¶ 200. As a result, Plaintiffs cannot recover attorney's fees, costs, and expenses incurred prior to demand for indemnification on May 13, 2022. *See, e.g.*, *Ward v. City Nat. Bank & Tr. Co. of Kansas City*, 379 S.W.2d 614, 621 (Mo. 1964) (finding that refusal to allow the recovery of attorneys' fees was justified where "[third-party plaintiff] admitted it gave no notice nor did it request [third-party defendants] to defend [plaintiff's] suit").

### III.  CONCLUSION

For the foregoing reasons, Gillette respectfully requests that this Court dismiss Plaintiffs' First Amended Petition against Gillette in its entirety for lack of personal jurisdiction, or, in the alternative, dismiss Count I for failure to state a claim upon which relief may be granted, dismiss Count V as barred by the statute of limitations and by the economic loss doctrine, and dismiss claims under Counts I and II for attorney's fees, costs, and expenses incurred prior to May 13, 2022.

Dated: May 1, 2023

        Respectfully submitted,
        BERRY SILBERBERG STOKES PC

        */s/ Robert P. Berry*
        Robert P. Berry, #46236 (MO)
        Andrew D. Lamb, #59600 (MO)
        16150 Main Circle Drive, Suite 120
        St. Louis, Missouri 63017
        Telephone: (314) 480-5881
        Facsimile: (314) 480-5884
        Email: rberry@berrysilberberg.com
              alamb@berrysilberberg.com

        *Attorneys for Defendant The Gillette Company LLC*

## CERTIFICATE OF SERVICE

I certify that on May 1, 2023, a true and accurate copy of the foregoing was filed with the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

        */s/ Robert P. Berry*