IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, AND SOLUTIA, INC., <br><br>Plaintiffs, <br><br>vs. <br><br>MAGNETEK, INC., GENERAL ELECTRIC CO., PARAMOUNT GLOBAL, KYOCERA AVX COMPONENTS, CORNELL DUBILIER ELECTRONICS, INC., and THE GILLETTE COMPANY, LLC, <br><br>Defendants. | CASE NO: 4:23-cv-00204-HEA |

**DEFENDANT GENERAL ELECTRIC CO.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD IN SUPPORT OF REMOVAL**

Just five days ago, Defendant General Electric ("GE") discovered a letter the Department of the Navy sent to GE in March 1974 ("Navy Letter") that refutes each of the arguments Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc. make in their Motion for Remand. The Navy Letter (i) establishes that the federal government purchased "a substantial number" of PCB-containing transformers directly from GE, (ii) states that the federal government continued to purchase PCBs from GE "for the refilling or topping off" of its transformers, and (iii) confirms the government's position that GE's continued supply of PCB-containing fluids was "essential." (Navy Letter, Ex. A.) Because the Navy Letter further demonstrates this Court's jurisdiction under the federal officer removal statute, GE requests that this Court consider it when ruling on Monsanto's Motion to Remand.

**BACKGROUND**

On February 21, 2023, GE removed this case under the federal officer removal statute—28 U.S.C. § 1442(a)(1). (Notice of Removal, ECF No. 1.) GE's Notice of Removal attached over a dozen documents establishing that GE sold PCBs in large quantities to the federal government and that the federal government required GE to use PCBs in certain applications due to their fire-retardant properties. (*Id.*)

Nevertheless, on March 21, 2023, Plaintiffs moved to remand the case to state court, arguing GE did not sufficiently establish that this case involves GE's conduct while acting under the direction of the federal government. (Mot. to Remand, ECF No. 52; Mem. of Law 1-2, ECF No. 53.) More specifically, Plaintiffs claimed (i) that GE failed to attach documents showing "it directly sold PCB-containing equipment to the federal government" (Mem. of Law 10 n.7), (ii) GE failed to show "sufficient government control" over its PCB sales, (*id.* at 12), and (iii) GE's PCB sales to the federal government were "de minimis" when compared to the total number of PCBs GE purchased from Monsanto. (*Id.* at 12-13.) GE opposed Plaintiffs' motion and attached to its opposition brief even more documentation supporting federal officer removal. (GE's Opp'n to Mot. to Remand, ECF No. 68.)

Since the parties finished briefing Plaintiffs' Motion to Remand, GE has continued its search of government archives and its own historical files to locate information relevant to federal officer removal. On May 25, 2023, while reviewing hard copy files of a retired GE employee, GE located the March 1974 Navy Letter. The Navy Letter confirms the significant relationship between GE and the federal government related to PCB-containing products.

In the Navy Letter, the Acting Director of the Contracts Division for the Department of the Navy responded to GE's request that the federal government indemnify GE for PCBs the government purchased from GE. (Ex. A.) The letter states that "The Navy Department, and other

agencies of the Department of Defense as well, have a ***substantial number*** of transformers and electrical devices in which the use of askarel [i.e., generic name for PCBs] rather than ordinary transformer oil is essential. ***Many of these are products of the General Electric Company***. . . ." (*Id.* at 1 (emphasis added).) The letter further confirms the federal government's position that "it is *essential* that askarel be procured for use by Government personnel in servicing these devices." (*Id.* (emphasis added).) And the Department of the Navy made clear that it "look[s] to General Electric for the supplies necessary to keep [the PCB-containing transformers] operational." (*Id.*)

## ARGUMENT

The Court should consider the Navy Letter when ruling on Plaintiffs' Motion to Remand, as the letter is highly relevant to all of Plaintiffs' arguments in support of remand:

| **Plaintiffs' Argument** | **Navy Letter** |
|---|---|
| GE failed to attach documents showing "it directly sold PCB-containing equipment to the federal government." (Mem. of Law 10 n.7.) | "Many of these [PCB-containing transformers] are products of the General Electric Company and of course we look to General Electric for the supplies necessary to keep them operational." (Ex. A at 1.) |
| GE failed to show that the federal government exercised control and set specifications over GE's sale of PCBs. (*Id.* at 2; Reply in Supp. of Mot. to Remand 10-13.) | "[I]t is essential that askarel be procured for use by Government personnel in servicing these devices." (*Id.*) |
| GE's PCB sales to the federal government were "de minimis." (Mem. of Law 12-13.) | "The Navy Department, and other agencies of the Department of Defense as well, have a substantial number of transformers and electrical devices in which the use of askarel rather than ordinary transformer oil is essential. Many of these are products of the General Electric Company. . . ." (*Id.*) |

Indeed, Plaintiffs' most vociferous attempt to refute the case for removal was their criticism of GE's use of the 1994 GAO Report demonstrating that the Navy and Air Force, alone, still possessed nearly 10,000 PCB-containing transformers in the early 1990s. (GE's Opp'n to Mot. to

Remand 8-9, Ex. C, ECF No. 68.) Plaintiffs harshly criticized use of the GAO Report as a basis for jurisdiction because it failed specifically to identify GE as a manufacturer of these thousands of government transformers. (Reply in Support 10, ECF No. 73.) The Navy Letter plainly clarifies this point of ambiguity by definitively establishing GE as a major supplier of the Navy's PCB-containing transformers. (Ex. A at 1.)

Moreover, the date of the Navy Letter—March 26, 1974—falls squarely within the relevant period of this case. In the GE Special Undertaking, GE agreed to indemnify Monsanto only for PCB sales occurring after January 21, 1972. (GE Special Undertaking, Ex. 2 to Pet., ECF No. 4-2.) Considering the Navy Letter will therefore provide the Court with a more complete factual record on which to resolve the important jurisdictional issue currently before it.[1]

In fact, courts have granted Plaintiffs leave to supplement in similar circumstances. In *Bailey v. Monsanto Co.*—a case Plaintiffs' rely on throughout its Motion to Remand—Monsanto located various documents relevant to federal officer removal while continuing its "own search of [its] historical records and files." 176 F. Supp. 3d 853, 864 (E.D. Mo. 2016). In seeking to supplement the record *six months* after briefing concluded on the plaintiffs' motion to remand, Monsanto argued that "a notice of removal may be supplemented at any time to 'state the

---

[1] Moreover, if the Court were to accept Plaintiffs' argument that the information GE *previously* submitted was insufficient to establish jurisdiction, the Navy Letter would also be relevant to Plaintiffs' argument that removal was untimely. Under Plaintiffs' argument that this case was not removable based on the prior record, the earliest GE could have ascertained that this case was removable was when it discovered the Navy Letter on May 25, 2023. Because GE would have removed this case within 30 days of receiving a "paper from which it may first be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3), removal was timely. *See Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573, at *3-4 (6th Cir. 1991) (Table) ("The defendant may have the papers in its possession as of the filing of the suit, but it does not receive notice of the facts contained therein until it reviews those papers in connection with the suit.").

previously articulated grounds more fully.'" Reply in Supp. of Mot. to Supplement 2-3, Case No. 4:15-cv-0844-AGF, ECF No. 81 (E.D. Mo. Feb. 29, 2016) (quoting 14C Charles A. Wright, et al., Fed. Prac. & Proc. § 3733 (3d ed. 1998)). And Monsanto requested that the court consider the additional documents because they "are relevant to the Court's jurisdiction." (*Id.*) The court agreed and considered the documents in ruling on the plaintiffs' motion to remand.[2] *Bailey*, 176 F. Supp. 3d at 865. This Court should do the same.

Supplementing the record to include the Navy Letter is also appropriate because GE has been diligent in searching for documents relevant to federal officer jurisdiction. *See generally Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("[C]ourts should 'apply the same liberal rules [to removal allegations as] to other matters of pleading.'" (alteration in original) (quoting H.R.Rep. No. 100–889, p. 71 (1988))). Before filing its Notice of Removal, GE located 18 separate exhibits that bear directly on federal officer jurisdiction. (Notice of Removal Exs. A, B, D, G-U, ECF No. 1.) GE then continued its search for relevant documents and submitted four additional exhibits with its Opposition to Monsanto's Motion to Remand. (GE's Opp'n to Mot. to Remand Exs. B-D, H, ECF No. 68.) That GE had not located the Navy Letter during its previous searches for relevant documents should not prevent this Court from considering the document.[3]

---

[2] The documents Monsanto located in *Bailey* did not ultimately change the court's determination that Monsanto failed to establish federal officer jurisdiction in part because they specifically stated that Monsanto "has not entered into any supply contract with the United States for the product." *Bailey*, 176 F. Supp. 3d at 864. Here, in contrast, the Navy Letter shows that the Navy found it "essential" to continue purchasing PCBs directly from GE. (Ex. A at 1.)

[3] GE's identification of the Navy Letter also supports GE's request for jurisdictional discovery, as it reveals the type of additional evidence GE will likely locate if the Court were to grant jurisdictional discovery.

Neither would Plaintiffs suffer any prejudice from consideration of this single, two-page letter. GE does not oppose Plaintiffs filing a brief sur-reply discussing the relevance of the Navy Letter to their arguments for remand. Thus, the only potential prejudice here is to GE, if the Court denies this motion and does not consider a document that bears directly on the remand issue at hand. To ensure a complete and accurate assessment of the Court's jurisdiction under the federal officer removal statute, the Court should consider the Navy Letter when ruling on Plaintiffs' Motion to Remand.

## **CONCLUSION**

For all of these reasons, GE respectfully requests that the Court grant this motion.

Dated:  May 31, 2023	Respectfully submitted,


	*/s/ Erik D. Nadolink*
	Michael L. O'Donnell (*admitted pro hac vice*)
	Marissa S. Ronk (*admitted pro hac vice*)
	Erik D. Nadolink (*admitted pro hac vice*)
	370 Seventeenth Street, Suite 4500
	Denver, CO  80202-5647
	Telephone: 303.244.1800
	Facsimile: 303.244.1879
	Email:    odonnell@wtotrial.com
	                ronk@wtotrial.com
	                nadolink@wtotrial.com

	Peter W. Herzog III, #36429 (MO)
	Wheeler Trigg O'Donnell LLP
	One Metropolitan Square
	211 N. Broadway, Suite 2825
	St. Louis, MO  63102-2723
	Telephone: 303.244.1800
	Facsimile: 303.244.1879
	Email: pherzog@wtotrial.com


	Attorneys for Defendant General Electric Co.



**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on May 31, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel and parties of record who have appeared.


	 */s/ Erik D. Nadolink*