# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|   |   |
|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAGNETEK, INC., <br> GENERAL ELECTRIC CO., <br> PARAMOUNT GLOBAL, <br> KYOCERA AVX COMPONENTS CORPORATION, <br> CORNELL-DUBILIER ELECTRONICS, INC. <br> And THE GILLETTE COMPANY LLC, <br><br> Defendants. | Case No.  4:23-cv-00204-HEA <br><br> Jury Trial Demanded |

**DEFENDANT THE GILLETTE COMPANY LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED PETITION**

Plaintiffs' Opposition to Defendant The Gillette Company LLC's ("Gillette's") separate arguments in support of its Motion to Dismiss raises more questions and concerns than it purports to answer.[1] First, Plaintiffs' attempt to rely upon out-of-state letters, phone calls, and just one supposed meeting in the State of Missouri by a predecessor of Gillette ***almost 50 years ago*** does nothing to satisfy the requirements of either the long-arm statute or due process. There is no personal jurisdiction here. Second, Plaintiffs now fully concede that huge swaths of their duty to defend and indemnity claims are compromised by their ***extremely late tender to Gillette*** and by the passing of ***more than five years*** between incurring actual loss and filing this lawsuit. Plaintiffs concede this failure greatly impacts their damages, but importantly it is also a pleading problem because Plaintiffs' vague and imprecise First Amended Petition ("complaint") does nothing to allege which specific underlying PCB-Lawsuit liability, if any, could or would actually survive against Gillette. This fails under *Iqbal* and *Twombly.* Third, Plaintiffs now also fully concede they cannot recover from Gillette under Counts I and II for any attorneys' fees, costs, or expenses that were incurred prior to May 13, 2022, when they first tendered certain lawsuits to Gillette, and even later for underlying PCB Lawsuits tendered after that time. Once again, this not only impacts the scope of potential damages but further demonstrates the pleadings are deficient because Plaintiffs' vague and imprecise complaint does nothing to allege which specific underlying PCB-Lawsuit liability, if any, could or would actually survive.[2]

---

[1] Plaintiffs filed a combined response in opposition to Defendants Kyocera AVX Components Corporation, Cornell-Dubilier Electronics, Inc., and The Gillette Company LLC's Motions to Dismiss. (Dkt. No. 105). The combined opposition is referred to herein as the "KCG Opposition."

[2] In its initial motion, Gillette also joined, adopted in whole, and incorporated by reference, Defendants' Joint Motion to Dismiss Counts I-IV and VII of Plaintiffs' First Amended Petition. Gillette likewise joins, adopts in whole, and incorporates by reference Defendants' Joint Reply Brief as well as the Reply Briefs of Defendants Kyocera AVX and CDE. Gillette does not wish to burden the Court with unnecessary repetition of argument and case law here and, therefore, limits this specific Reply Brief to issues not addressed elsewhere.

## I.     THE COURT LACKS PERSONAL JURISDICTION OVER GILLETTE

Plaintiffs concede this Court lacks *general* jurisdiction over Gillette. And Plaintiffs have not met and cannot meet their burden of establishing this Court has *specific* jurisdiction over Gillette with respect to the Special Undertaking ("SU"). To demonstrate specific personal jurisdiction, Plaintiffs were required to show that: (i) the Missouri long-arm statute applies; and (2) Gillette has "sufficient minimum contacts with the State of Missouri to satisfy procedural due process." *See, e.g., LaLiberte v. Nickrenz*, 2016 WL 7535361, at *2 (W.D. Mo. Apr. 15, 2016).

The following principles are also necessary to establish specific jurisdiction: (1) P.R. Mallory "purposefully directed [its] activities at residents of the forum" and the cause of action at issue "arise[s] out of or relate[s] to those activities," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); (2) P.R. Mallory took actions establishing a "substantial connection" with Missouri and such "relationship must arise out of contacts that the 'defendant himself' creates with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014); (3) the acts or relationship between Plaintiffs and the forum cannot create specific jurisdiction over P.R. Mallory, *id.* at 285 ("Put simply, however significant the plaintiff's contact with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.") (quotations omitted); and (4) specific jurisdiction depends on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285. Plaintiffs made no showing as to any of these requirements.

### A.     Missouri's Long-Arm Statute Does Not Subject Gillette to Jurisdiction

First, Plaintiffs do not dispute that a contract is made where acceptance occurs, but then allege the Gillette SU was made in Missouri because Old Monsanto was the last to execute it. But such allegation (even if true) does not result in personal jurisdiction.

2

Plaintiffs attach a February 4, 1972 letter sent to Old Monsanto from P.R. Mallory's office *in Indiana* enclosing two copies of the SU, which was mailed by P.R. Mallory *after* Old Monsanto had already agreed to all of the terms. (*See* Ex. B to Kaley Aff., at 2.) Under Missouri law, this letter constituted P.R. Mallory's acceptance in Indiana of Old Monsanto's offer. *See Peet v. Randolph*, 33 S.W.3d 614, 618 (Mo. Ct. App. 2000) (stating that Missouri looks to the "outward manifestation of assent made to the other party") (internal citations omitted).[3] When Old Monsanto sent the SU to sign, and provided additional edits, it constituted an offer and P.R. Mallory's acceptance occurred in Indiana. The fact that Old Monsanto last signed the contract in Missouri is irrelevant for jurisdictional purposes as acceptance was "made" when P.R. Mallory signed the contract without any alterations or additions and returned it to Old Monsanto. *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. Ct. App. 2002). Additionally, P.R. Mallory's letter accepting the offer is dated February 4, 1972—the same date that appears on the signature page of the SU. Thus, the SU became effective on that date – not any later date based on Old Monsanto's receipt of the same or signature – and was "made" for purposes of jurisdiction in Indiana on February 4, 1972.

Plaintiffs also argue that Gillette's orders effectuating the purchase of PCBs create jurisdiction, but they do not. The invoices referenced by Plaintiffs clearly indicate that the PCBs were being provided "***Free on Board Sauget, Illinois***," not Missouri. (Kaley Aff. Ex. G (emphasis supplied).) Additionally, the invoices state that if there were no written agreements for the purchase

---

[3] Plaintiffs rely on *Baier v. Darden Rests.*, 420 S.W.3d 733, 740-41 (Mo. Ct. App. 2014), to argue that the terms of a contract "must be accepted by both parties for a contract to be formed." (KCG Opp. at 10, quoting *Baier*). *Baier* is inapposite here because the issue there was whether the defendant-employer was bound by an arbitration agreement that the defendant-employer failed to countersign. *Baier* does not analyze the jurisdictional question of *where* a contract is *made* for the purpose of assessing long arm jurisdiction. And the record here – based on documents provided by Plaintiffs – makes clear that the SUs were made in Indiana, not Missouri.

of products (and there were none alleged here), then the invoice would be subject to the terms therein and therefore "accepted" by Gillette's receipt of goods ***in Waynesboro, Tennessee***. (Ex. G.) Thus, if the purchase of PCBs by P.R. Mallory were considered a "transaction of business," it would be within the State of Tennessee, where the products were accepted. Whether the PCBs are viewed as shipped from Illinois or received in Tennessee, the transaction did not occur in Missouri.

Second, courts have rejected arguments that the mere sending of purchase orders and occasional visits are sufficient to "transact business" in Missouri anyway. Plaintiffs' argument that "negotiation" took place in Missouri relies, in large part, upon P.R. Mallory making phone calls to and/or sending letters to Missouri. But Missouri law is clear that the use of the mail or telephone communications to Missouri is not considered the transaction of business for long-arm jurisdiction purposes. *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002); *Scullin Steel Co. v. Nat'l Railway Util. Corp.*, 676 F. 2d 309, 312-13 (8th Cir. 1982). And one meeting in Missouri more than 50 years ago to discuss the SU is not a sufficient contact. Specifically, Plaintiffs argue that *Scullin* is inapposite here because in that case "negotiations of sales contact [*sic*] all [occurred] in Pennsylvania" and there were "no visits to Missouri." (KCG Opp. at 15.) However, the lack of visits to Missouri by itself was not dispositive of that case. *See also State ex rel. Barnes v. Gephard*, 834 S.W.2d 902 (Mo. Ct. App. 1992) (finding single visit insufficient to establish personal jurisdiction). It was simply one of many facts considered by the Court.

Additionally, although Plaintiffs claim that representatives of P.R. Mallory later visited Missouri a few more times years after the SU was formed, the cause of action must directly arise from P.R. Mallory's activities in the state, which is simply not the case here merely because a representative attended a conference hosted by Old Monsanto ***years after the SU's execution***.

4

(Kaley Aff. Ex. F); s*ee Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 141 S. Ct. 1017, 1025 (2021) (noting that the plaintiff's claims "must arise out of or relate to the defendant's contacts") (internal citations omitted).

Plaintiffs' reliance on *Mead v. Conn*, 845 S.W.2d 109, 112 (Mo. Ct. App. 1993) is also misplaced. In *Mead*, an individual defendant physician purposefully availed himself of the Missouri jurisdiction by transmitting medical exam results to Missouri for analysis under a business relationship "where he paid for said services and stood to profit from the same." *Id*. at 112. Plaintiffs here have not alleged that P.R. Mallory ever targeted Missouri specifically to conduct business or to profit; it just happened to be where Old Monsanto was located at the time. And Plaintiffs' forum-related activities cannot be attributed to Gillette. *See, e.g., Fastpath, Inc. v. Arbela Technologies Corp.,* 760 F.3d 816, 823 (8th Cir. 2014). Moreover, the court in *Mead* found that such limited contacts, ultimately, could not support the assertion of personal jurisdiction over the defendant in Missouri. *Mead*, 845 S.W.2d at 113 (affirming dismissal where assuming personal jurisdiction for the mere sending of records into Missouri "would violate due process and offend traditional notions of fair play and substantial justice.")

Third, Gillette did not commit a tortious act within Missouri. Plaintiffs have failed to make a showing of negligence as to Gillette and cannot demonstrate personal jurisdiction as a result. *See, e.g., Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1140 (E.D. Mo. 2016). Additionally, even if Plaintiffs' negligent misrepresentation claim had been sufficiently pleaded (and it is not), for extraterritorial acts to create jurisdiction in Missouri those acts must include a course of action that is intentionally designed to have consequences in Missouri. Plaintiffs' "negligence" claim alleges no such intentional conduct.

5

Finally, Gillette did not contract for insurance pursuant to Section 506.500.1(5). Plaintiffs claim that Gillette's Motion did not address Section 506.500.1(5), (KCG Opp. at 17 n.13), but that is not true. (*See* Dkt. No. 93, Motion to Dismiss at 5.) Additionally, and not surprisingly, Plaintiffs cite no authority that the SU amounts to a contract for insurance for purposes of Section 506.500.1(5). Rather, Plaintiffs rely upon a Seventh Circuit case that does not address jurisdiction at all and has no bearing on Missouri law, which has found that indemnification agreements do not constitute insurance contracts. *E.g., Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co.*, 714 S.W.2d 597, 602 (Mo. Ct. App. 1986) ("Contracts of indemnity are not synonymous with contracts of insurance"); *see also Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999) (same). This is consistent with other jurisdictions that reject jurisdiction based on indemnification agreements. *See, e.g., Boney v. Carnival Corp.*, 2009 WL 10712207 (S.D. Fla. Oct. 29, 2009) (rejecting argument that insurance provision of Florida's long-arm statute should confer jurisdiction because of an "indemnification agreement" with defendant). Plaintiffs failed to meet their burden to demonstrate the applicability of Section 506.500.1(5).

  **B.**  **Exercising Jurisdiction over Gillette Would Run Afoul of Due Process**

Personal jurisdiction "can be asserted *only if* it comports with the strictures of the Due Process Clause." *Viasys., Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F. 3d 589, 594 (8th Cir. 2011) (emphasis added). Gillette's contacts with Missouri related to the SU do not amount to Gillette (or P.R. Mallory) having purposefully availed itself of Missouri law such that it could reasonably anticipate being haled into Missouri's courts. *See, e.g., World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

To evaluate the sufficiency of Defendant's contacts, this Court considers five factors: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interests of the forum state in providing a

forum for its residents; and (5) the convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc*., 97 F .3d 1100, 1102 (8th Cir.1996). Significant weight is afforded to the first three factors, and the other factors are secondary and not dispositive. *Id*.[4]

As discussed herein and in the Motion, the SU was made in Indiana, where P.R. Mallory accepted the terms of Old Monsanto's offer and manifested its intent to accept Old Monsanto's offer by executing the document. Even if the SU could be deemed to have been made in Missouri, contracting with a Missouri entity is insufficient to establish the necessary minimum contacts. *See Fastpath, Inc. v. Arbela Techs. Corp*., 760 F.3d 816, 821 (8th Cir. 2014); *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922-23 (8th Cir. 1995); *Cepia, LLC v. Universal Pictures Visual Programming Ltd.,* 177 F.Supp.3d 1129, 1139 (E.D. Mo. 2016). And "[t]he [U.S. Supreme] Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic ... theories of the place of contracting or of performance.'" *Burger King*, 471 U.S. at 478 (citations omitted); *see also Fastpath, Inc*., 760 F.3d at 821.

Relying on two cases, Plaintiffs argue that the "nature and terms" of the SUs create connections with Missouri sufficient to satisfy due process because Defendants knew or should have known that they could be required to defend or indemnify Old Monsanto in Missouri. (KCG Opp. at 19). Plaintiffs are wrong. There is no basis to argue that the SU itself creates such a "substantial connection" with Missouri that Gillette should have reasonably expected to be haled into the Missouri courts. The cases cited by Plaintiffs are not analogous to the situation at hand.

---

[4] Plaintiffs seek to bolster their due process argument by highlighting Missouri's generic interest in providing a forum for its residents and claiming that litigation in Missouri would not inconvenience the parties. However, Gillette (and P.R. Mallory) has not purposefully availed itself of the protections of Missouri law merely by contracting with a Missouri entity or sending purchases orders into the state, and the convenience of the parties factor is neutral. Missouri may be convenient for Plaintiffs; but not for Gillette. *See Burlington Indus., Inc.*, 97 F .3d 1100 at 1103. The same is true here. In fact, Plaintiffs allege they have been sued across the country.

7

*U.S. Durum Milling Inc v. Frescala Foods, Inc*. 785 F.Supp. 1369 (E.D. Mo. 1992) involved facts where the contract anticipated the defendant driving into Missouri to pick up the contracted goods and failed to recognize that the mere entering of a contract is insufficient to satisfy due process. *Divers. Ingred. Inc. v. Triple-T Foods, Inc*., 2010 WL 1930009 (E.D. Mo. May 10, 2010) involved the storage of goods in Missouri. No such facts exist here.[5] Additionally, Plaintiffs' two cases predate *Walden v. Fiore*, 571 U.S. 277, 289 (2014), which warns against "attribut[ing] a plaintiff's forum connections to the defendant and mak[ing] those connections decisive in the jurisdictional analysis," which is exactly what Plaintiffs seek to do here.

Plaintiffs next contend that (generically) Defendants' purchases of PCBs were governed by Missouri choice-of-law provisions. (KCG Opp. at 20). However, the choice-of-law provisions Plaintiffs point to as connections to Missouri are not actually terms or conditions of the SUs (the only contracts at issue in this case). Plaintiffs do not argue that the Gillette SU contains *any* choice-of-law provision, let alone a provision that would indicate Gillette purposefully availed itself of Missouri's laws with respect to its purported obligations thereunder. In any event, such choice-of-law provisions are insufficient anyway. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd*., 89 F.3d 519 (8th Cir. 1996) (finding choice-of-law provisions insufficient to satisfy due process). Plaintiffs admit this. (*See* KCG Opp. at 20 n. 15.).

Plaintiffs also contend (generically) that due process is satisfied by Defendants' purchase of PCBs "through a series of purchases that were accepted in Missouri." (KCG Opp. at 19-20).

---

[5] Plaintiffs cite *Burnham v. Sup. Court of Cal., Cnty of Marin*, 495 U.S. 604, 619 (1990), for the proposition that physical presence alone constitutes due process. However, *Burnham* arose in a completely different context. The question there was whether personal service of a summons on the individual defendant in the state of California was still sufficient to exercise personal jurisdiction over the defendant in divorce proceedings. There are no such issues in this case.

8

But the only invoices Plaintiffs attach relating to P.R. Mallory and referencing PCBs list shipments *not from Missouri* but instead *from Sauget, Illinois* to *Waynesboro, Tennessee*. (Kaley Aff. Ex. E.)

Finally, although Plaintiffs attempt to characterize P.R. Mallory's purchase of PCBs as sufficient contact with Missouri, such contacts are not directly connected to Plaintiffs' claims concerning the SU, and P.R. Mallory did not engage in meaningful contact with Missouri to acquire the products. P.R. Mallory issued its purchase orders from outside Missouri, and even then merely had telephone conversations or sent letters from outside of Missouri, and the shipments were made from outside of Missouri. (*See* Kaley Aff. Exs. E and F.) This is insufficient to create personal jurisdiction in Missouri. Consequently, the quantity and quality of the minimal contacts Plaintiffs try to create are not sufficient under the Due Process Clause to justify this Court's exercise of jurisdiction over Gillette.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF IN COUNTS I AND V, AND FOR ANY FEES AND COSTS INCURRED PRIOR TO MAY 13, 2022

As set forth in Gillette's Motion to Dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. There must be more than "a sheer possibility that a defendant has acted unlawfully" and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Conclusory allegations are "disentitle[d]. . . to the presumption of truth." *Id.* at 681.

9

### A.     Plaintiffs Fail to State a Claim for Breach of Contract for Refusal to Defend

In the operative complaint, Plaintiffs concede they did not tender defense of the PCB Lawsuits to Gillette until May 13, 2022. (Pet. at ¶ 229.) And this tender only covered a very limited number of cases; most PCB Lawsuits were not tendered to Gillette until many months later; and apparently some still have never been tendered to Gillette at all. (*Id.*) In Plaintiffs' Opposition, rightly, "Monsanto agrees that its breach of contract claims against Gillette *are uniquely limited* by the date of its initial tender to Gillette." (*See* KCG Opp. at 32 (emphasis supplied).) Plaintiffs try to argue, however, that because *something* against Gillette *might* potentially survive on *some unidentified* claim relating to *some unidentified* underlying PCB Lawsuit, Gillette's Motion to Dismiss ought to be denied in full. Under this Hail Mary argument, both this Court and Gillette are *forced to guess* which (if any) specific underlying PCB Lawsuit and/or which specific tender relating thereto is supposedly the source of Plaintiffs' claimed breach of contract. But this does nothing to satisfy the basic pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Vagueness and guesswork are insufficient to state a claim. Count I should therefore be dismissed against Gillette.

### B.     Count V is Barred By the Statute of Limitations Because Plaintiffs Sustained and Were Capable of Ascertaining Damages Prior to August 3, 2017

The complaint facially establishes that the statute of limitations has run on Plaintiffs' Count V claim for Negligence. *See Cush-El v. Synchrony Bank*, No. 4:19-cv-2771, 2020 WL 122926, at *2 (E.D. Mo. Jan. 10, 2020) (granting Rule 12(b)(6) dismissal on statute of limitations grounds where defense was established on the face of the complaint). Negligence is subject to a five-year statute of limitations. Mo. Rev. Stat. § 516.120. Negligence claims accrue "when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. Plaintiffs do not dispute that damage sustained need not be precise; rather, "[t]he most

10

that is required is that *some damages* have been sustained, so that the claimants know that they have a claim for some amount." *Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. banc 1983) (emphasis supplied). "[A] cause of action may accrue even though the full extent of the plaintiff's injuries is not yet determinable." *Duvall v. Yungwirth*, 613 S.W.3d 71, 80 (Mo. Ct. App. 2020).

Plaintiffs concede they named Gillette as a defendant on August 3, 2022, seeking damages incurred in defending and resolving the PCB Lawsuits. *See* Pet. ¶ 290. But Plaintiffs also specifically allege they were on notice of these injuries earlier than August 3, 2017—more than five years prior to the filing of the complaint. Specifically, the complaint acknowledges Plaintiffs were named as defendants and started to incur costs of defense in PCB Lawsuits *more than five years* prior to filing. *See, e.g.*, Pet. Ex. 11 (complaint filed on August 3, 2015 in *City of San Diego v. Monsanto Co., et al.*, No. 3:15-cv-578 (S.D. Cal)); *see also* Dkt. No. 93, Gillette Motion to Dismiss at 9 n. 6); Pet. ¶¶ 169, 178, 189, 197. And Plaintiffs admit they even started resolving these PCB Lawsuits (and incurring liability) before August 3, 2017—for example, settling and paying "a significant amount" to resolve certain PCB Lawsuits in 2016. *Id.* ¶ 176. Under Missouri law, this triggered the statute of limitations. *See Dixon*, 649 S.W.2d at 438 (finding appellants had suffered "some damage" when they hired counsel that would have otherwise been unnecessary); *Bormaster v. Baldridge*, 723 S.W.2d 533, 540 (Mo. Ct. App. 1987) (negligence accrued when appellant paid initial $500 fee to attorney to represent him in litigation that had not yet settled).

While Plaintiffs claim that a question of fact prevents dismissal, such assertion is without any support. This is not surprising in light of the Eighth Circuit recently stating that: "The capable of ascertainment standard is an objective one; therefore, when relevant facts are uncontested, the statute of limitations issue can be decided by the court ***as a matter of law***." *City of Carthage*

11

*v. Un. Pac. RR, Co*., 61 F.4th 565, 569 (8th Cir. 2023) (emphasis added) (internal citations omitted). Analogously here, taking Plaintiffs' allegations as true, the claim should be dismissed.

Nor have Plaintiffs established the continuing wrong rule applies here. Plaintiffs merely claim they alleged a breach both before and after signing of the SU. But the SU with Gillette was signed fifty years ago. As the Eighth Circuit recently explained: "Almost all the Missouri court of appeals opinions interpreting *Davis* apply the continuing wrong rule when the defendant engages in ongoing affirmative acts that harm the plaintiff." *Id*. at 571. Plaintiffs' allegations do not plausibly allege any ongoing affirmative acts by Gillette (or even P.R. Mallory) that harm Plaintiffs today. As such, the negligence claims are time barred.

## III.   CONCLUSION

For the above reasons, those set forth in Gillette's Motion to Dismiss, and those set forth in the other joint and separate briefing of the Defendants in which Gillette has joined, Gillette respectfully requests that this Court dismiss Plaintiffs' First Amended Petition against Gillette in its entirety and grant such other and further relief as the Court may deem just and proper.

Dated: June 27, 2023

Respectfully submitted,
BERRY SILBERBERG STOKES PC

*/s/ Robert P. Berry*
Robert P. Berry, #46236 (MO)
Andrew D. Lamb, #59600 (MO)
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5881
Facsimile: (314) 480-5884
Email: rberry@berrysilberberg.com
           alamb@berrysilberberg.com

*Attorneys for Defendant*
*The Gillette Company LLC*

12

**CERTIFICATE OF SERVICE**

I certify that on June 27, 2023, a true and accurate copy of the foregoing was filed with the Court via CM/ECF, which will send a notice of electronic filing to all counsel of record.

/s/ Robert P. Berry