**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

MONSANTO COMPANY,  )
PHARMACIA, LLC, and  )
SOLUTIA, INC.,  )
 )
      Plaintiffs,  )
 )
vs.  )
 )
MAGNETEK, INC.,  )    CASE NO: 4:23-cv-00204-HEA
GENERAL ELECTRIC CO.,  )
PARAMOUNT GLOBAL,  )
KYOCERA AVX COMPONENTS,  )
CORNELL DUBILIER ELECTRONICS, INC.,  )
and THE GILLETTE COMPANY, LLC,  )
 )
      Defendants.  )

<u>**DEFENDANTS GE, PARAMOUNT, KAVX, CDE, AND GILLETTE'S REPLY IN
SUPPORT OF THEIR JOINT MOTION TO DISMISS COUNTS I-IV AND VII OF
PLAINTIFFS' FIRST AMENDED PETITION**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

ARGUMENT ................................................................................................................... 1

I.     PLAINTIFFS DO NOT ALLEGE PCB LAWSUIT LIABILITIES WITHIN THE
SCOPE OF DEFENDANTS' SPECIAL UNDERTAKINGS ............................................ 1

     A.     No SU Provision Negates The Requirement That Plaintiffs Plead And
Prove A Connection Between A PCB Liability And Post-SU PCBs Sold
To A Particular Defendant ...................................................................................... 1

     B.     Plaintiffs Do Not Allege Sufficient Connections Between The PCB
Lawsuits And Post-SU PCBs Sold To Particular Defendants ................................ 4

          1.     Plaintiffs Propose An Improper Insurance Context Standard.................... 4

          2.     Plaintiffs Do Not Otherwise Allege Facts Sufficient To State A
Claim ....................................................................................................... 7

          3.     Plaintiffs Have Pleaded No Connection Between PCB Lawsuits
And PCBs Sold To Particular Defendants ................................................ 9

II.     NEITHER OLD NOR NEW MONSANTO HAS THE RIGHT TO ENFORCE
THE SPECIAL UNDERTAKINGS ......................................................................... 10

     A.     Old Monsanto Has No Right To Enforce Special Undertakings And Is Not
A Party To Them ................................................................................................... 10

     B.     New Monsanto Is Not Entitled To Enforce The SUs As An "Agent" Or
"Future Agent" Of Either Old Monsanto Or Solutia ........................................... 13

III.     THE COURT SHOULD DISMISS PLAINTIFFS' DECLARATORY
JUDGMENT CLAIMS ........................................................................................... 15

     A.     Plaintiffs Have Not Pled Ripe Claims For A Declaratory Judgment Of
Defendants' SU Liability On All Future PCB Lawsuits ...................................... 15

     B.     Plaintiffs' Have Not Pleaded A Ripe Claim For Declaratory Relief Of
Defendants' Liability For Indemnity As To Ongoing Claims .............................. 18

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE
CONTRIBUTION ................................................................................................... 20

     A.     The Petition Does Not Adequately Allege That Plaintiffs And Defendants
Are Joint Tortfeasors............................................................................................ 20

B.    The Equitable Contribution Claim Must Be Dismissed For Impermissible
       Group Pleading ................................................................................................ 21

C.    Threadbare Recitals Of The Elements Of A Claim Are Insufficient To
       State A Claim For Equitable Contribution As To PCB Lawsuits Resolved
       By Settlement .................................................................................................... 22

CONCLUSION ............................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*,
  968 F.2d 707 (8th Cir. 1992) ................................................................ 16, 17, 19

*Alessi v. Mid-Century Ins. Co., Inc.*,
  464 S.W.3d 529 (Mo. Ct. App. 2015) ................................................................ 5

*Allen v. Cont'l W. Ins. Co.*,
  436 S.W.3d 548 (Mo. 2014) ................................................................ 6

*Allied World Specialty Ins. Co. v. City of Ferguson, Mo.*,
  No. 4:18-CV-827 RLW, 2019 WL 1118137
  (E.D. Mo. Mar. 11, 2019) ................................................................ 19

*Allison v. Barnes Hosp.*,
  873 S.W.2d 288 (Mo. Ct. App. 1994) ................................................................ 5, 8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................ 4, 5, 23

*Bach v. Winfield-Foley Fire Prot. Dist.*,
  257 S.W.3d 605 (Mo. 2008) ................................................................ 15

*Capitol Indemnity Corp. v. Miles*,
  978 F.2d 437 (8th Cir. 1992) ................................................................ 19

*Castleberry v. Goldome Credit Corp.*,
  418 F.3d 1267 (11th Cir. 2005) ................................................................ 6

*Certain Underwriters at Lloyd's, London v. C&S Properties, LLC*,
  No. 4:21-CV-422-AGF, 2022 WL 103303
  (E.D. Mo. Jan 11, 2022) ................................................................ 19

*Cont'l Airlines, Inc. v. Boatmen's Nat. Bank of St. Louis*,
  13 F.3d 1254 (8th Cir. 1994) ................................................................ 5

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*,
  241 F.3d 154 (2d Cir. 2001) ................................................................ 17

*Employers Ass'n v. United Steelworkers AFL-CIO-CLC*,
  32 F.3d 1297 (8th Cir. 1994) ................................................................ 18

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
  193 F.3d 966 (8th Cir. 1999) ................................................................ 5

*Ethridge v. TierOne Bank*,
    226 S.W.3d 127 (Mo. 2007) ....................................................................... 15

*Former Vacuum & Janitor Supply Co. v. Renard Paper Co.*,
    No. 4:06-cv-00905, 2007 WL 9805665
    (E.D. Mo. July 2, 2007) ...................................................................... 7, 21

*Gorog v. Best Buy Co., Inc.*,
    760 F.3d 787 (8th Cir. 2014) ..................................................................... 11

*Hartford Accident & Indemnity Co. v. Doe Run Resources Corp.*,
    663 F. Supp. 2d 771 (E.D. Mo. 2009) ...................................................... 16

*Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co.*,
    714 S.W.2d 597 (Mo. Ct. App. 1986) ........................................................ 5

*Hossaini v. Western Missouri Med. Cntr.*,
    140 F.3d 1140 (8th Cir. 1998) ..................................................................... 4

*In re Am. Commercial Lines, Inc.*,
    781 F.2d 114 (8th Cir. 1985) ..................................................................... 16

*Lankford v. Webco, Inc.*,
    No. 06-3339-CV-S-FJG, 2007 WL 4333193
    (W.D. Mo. Dec. 7, 2007) ........................................................................... 19

*Marine Equip. Mgmt. Co. v. United States*,
    4 F.3d 643 (8th Cir. 1993) ......................................................................... 16

*McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*,
    989 S.W. 168 (Mo. 1999) ............................................................................ 8

*Mecklenburg Farm v. Anheuser-Busch, Inc.*,
    250 F.R.D. 414 (E.D. Mo. 2008) .............................................................. 14

*Monsanto Co. v. Gould*,
    965 S.W.2d 314 (Mo. Ct. App. 1998) ................................................. 2, 3, 4

*New York Am. Water Co. v. Dow Chem. Co.*,
    No. 19-CV-2150 (NG) (RLM), 2020 WL 9427226
    (E.D.N.Y Dec. 11, 2020) ....................................................................... 21, 22

*Paraquad, Inc. v. St. Louis Housing Authority*,
    259 F.3d 956 (8th Cir. 2001) ..................................................................... 17

*Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*,
    620 F.3d 926 (8th Cir. 2010) ..................................................................... 19

*Shapiro Sales Co. v. Alcoa, Inc.*,
  No. 4:06-CV-638 CDP, 2006 WL 2228987
  (E.D. Mo. Aug. 3, 2006) ............................................................................................ 18

*Skaggs Regional Medical Ctr. v. Powers*,
  419 S.W.3d 920 (Mo. Ct. App. 2014) ...................................................................... 12

*State ex rel. Missouri Highways & Transp. Comm'n v. Westgrove Corp.*,
  364 S.W.3d 695 (Mo. Ct. App. 2012) ...................................................................... 15

*Tansil v. Honda Motor Co., Ltd.*,
  No. 4:16-CV-1220 (CEJ), 2016 WL 6396166
  (E.D. Mo. Oct. 28, 2016) .......................................................................................... 10

*Thompson v. Davis*,
  No. 4:18-CV-267 RWS, 2018 WL 2238193
  (E.D. Mo. May 16, 2018)........................................................................................... 23

*Torres v. Simpatico, Inc.*,
  781 F.3d 963 (8th Cir. 2015) .................................................................................... 14

*Warren v. Kirwan*,
  598 S.W.2d 598 (Mo. Ct. App. 1980)....................................................................... 12

## OTHER AUTHORITIES

4 Moore's Federal Practice, § 17.11 ............................................................................ 14

Defendants General Electric Co. ("GE"), Paramount Global ("Paramount"), Kyocera

AVX Components Corp. ("KAVX"), Cornell-Dubilier Electronics, Inc. ("CDE"), and the

Gillette Company, LLC ("Gillette"), respectfully submit this reply in support of their Motion to

Dismiss Counts I-IV and VII of Plaintiffs' First Amended Petition (ECF Nos. 90-91).

## ARGUMENT

## I.   PLAINTIFFS DO NOT ALLEGE PCB LAWSUIT LIABILITIES WITHIN THE SCOPE OF DEFENDANTS' SPECIAL UNDERTAKINGS

Plaintiffs have amassed thousands of distinct PCB Lawsuit liabilities and are suing six

different Defendants—each with its own, unique SU obligation—for alleged defense and

indemnity obligations as to each of them. Plaintiffs are using that massive scope and complexity

to attempt to avoid basic pleading requirements that would undoubtedly be enforced if this case

concerned one PCB liability and were pleaded against one Defendant. The Court should not

allow it.

### A.   No SU Provision Negates The Requirement That Plaintiffs Plead And Prove A Connection Between A PCB Liability And Post-SU PCBs Sold To A Particular Defendant

Plaintiffs begin by arguing that three phrases in the SUs establish broad defense and

indemnity obligations. (Pls.' Resp. to Joint Mot., ECF No. 103 ("Resp.") at 10-13.) None of

them has the effect Plaintiffs contend, and none solves Plaintiffs' pleading deficiencies.

First, Plaintiffs argue that the SU "arising out of or in connection with" phrase obviates

the need to prove that Defendants' post-SU PCBs are a "direct cause" of the PCB Lawsuits and

requires only "an established or discoverable relationship" between the PCB Lawsuits and

Defendants' post-SU PCBs. How Plaintiffs reach that conclusion is unclear. None of the cases

they cite makes that distinction. Nor is it clear what distinction Plaintiffs are drawing between an

"established or discoverable relationship" and a "direct cause." But it makes no difference. The

Petition establishes *no* relationship, even in part, between a particular PCB liability and a particular Defendant's post-SU PCBs. That is the pleading problem here.

Second, Plaintiffs claim that Defendants "overlook" the importance of the phrase "any and all" that precedes the SUs' "liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses" language. (*Id.* at 11.) But other than to say, again, that the SUs are very broad as a result, Plaintiffs don't explain the importance of that phrase either. And in fact, its importance is minimal at best to the issue at hand. That's because Defendants' Motion doesn't contend that the underlying PCB Lawsuits are *not* liabilities, claims, expenses, etc., such that the "any and all" phrase might be relevant. Instead, the Motion contends that the Petition does not connect the PCB Lawsuits with post-SU PCBs sold to any particular Defendant. The "any and all" phrase does not help Plaintiffs on that point.

Third, Plaintiffs accuse Defendants of failing to "meaningfully grapple" with the SUs' "alone or in combination with other substances" phrase. Not so. Nothing about that phrase relieves Plaintiffs from establishing some connection between PCB Lawsuits and post-SU PCBs sold to a particular Defendant. And Plaintiffs don't dispute that requirement. (*See, e.g.*, Resp. at 13 (arguing that Defendants "incorrectly" claim Plaintiffs are attempting to assert liability without regard to whether PCB Lawsuits involve post-SU PCBs); *id.* at 16 (claiming that Plaintiffs have alleged that PCB Lawsuits are based, at least in part, on contamination from Defendants' post-SU PCBs).) In other words, the Petition is deficient despite the "alone or in combination with other substances" clause because Plaintiffs fail to allege even a minimal connection between PCB Lawsuits and any particular Defendant's post-SU PCBs.

Plaintiffs next argue *Gould* saves their claims. Not true. The *Gould* Court read the SU at issue in that matter—an SU that had the same phrases Plaintiffs emphasize here—to require, at a

minimum, a partial connection between an underlying liability, claim, or expense and a post-SU

PCB sold to a particular defendant.[1] That is the SUs' plain meaning, which *Gould* did not

disturb.

Plaintiffs further incorrectly claim that under *Monsanto Co. v. Gould*, Defendants' SU

defense and indemnity obligations "apply to ***claims*** that involve both post-Special Undertaking

PCBs and 'other substances.'" (Resp. at 12-13 (emphasis added).) *Gould* held no such thing. In

*Gould* the defendant ***used*** post-SU PCBs in combination with pre-SU PCBs: it mixed both pre-

and post-SU PCBs into a storage tank, and then filled the transformer with that blended mixture.

965 S.W.2d 314, 317 (Mo. Ct. App. 1998). And the court read the "alone or in combination with

other substances" clause to modify the SU's ***use*** clause, not its ***claims*** or ***liabilities*** clause, as

Plaintiffs wrongly contend: "The Undertaking provides for Gould to hold Monsanto harmless for

'use . . . of such PCBs . . . by Buyer, whether alone or in combination with other substances.'"

*Id.* The *Gould* Court had no occasion to, and did not, read the SU to apply to a ***liability caused by***

PCBs alone or in combination with other substances.

Finally, Plaintiffs' current claims regarding the supposed relaxed SU causation

requirements are contradicted by Monsanto Company's prior repeated statements to the Missouri

Court of Appeals in the *Gould* appeal, admitting the need to plead a causal connection between a

post-1972 PCB and an underlying liability:

| Plaintiffs' Current Reading of the SU | Monsanto Company's Prior Reading of the SU |
|---|---|
| The SU's "arising out of or in connection with" phrase "***does not*** (as Defendants | "The only sensible way to read this contract is as Monsanto does: ***the claim against*** |

---

[1] Defendants do not concede that the "other substances" wording in the SUs includes PCBs within its meaning. To read the SUs in that manner would contradict the clear intent of the parties that the SU defense and indemnity obligations apply only "with respect to any and all PCB's sold or delivered by or on behalf of Monsanto to Buyer on or after the date hereof . . . ." (Pet. Exs. 1-6.) The Court need not resolve that issue, however, to grant Defendants' Motion.

| suggest) ***require*** that Defendants' 'receipt, purchase, possession, handling, use, sale or disposition of' post-Special Undertaking PCBs be the ***direct cause*** of the claims in the underlying PCB lawsuits." (Resp. at 11.) | ***Monsanto 'arises out of' the sale of Askarel*** to [Gould] ***if there is a causal connection*** between the sale and the claim"). (*Gould* Brief at 45, Ex. E.) |
| The phrase "arising out of or in connection with" "has a ***much broader meaning than 'caused by.'***" (Resp. at 11.) | "The phrase 'arising out of' ***means 'caused by.'***" (*Gould* Brief at 41, Ex. E.) |
| The "alone or in combination with other substances" phrase "expand[s] the scope of Defendants' defense and indemnity obligations to apply to ***claims*** that involve both post-Special Undertaking PCBs and 'other substances.'" (Resp. at 12-13.) | The Special Undertaking "requires Gould to indemnify Monsanto for claims arising out of the ***use*** by ITE of Askarel 'whether alone or in combination with other substances.'" (*Gould* Brief at 44, Ex. E.) |

Having prevailed in that appeal, Plaintiffs are judicially estopped from taking their current inconsistent positions, and hinging their entire case on a misreading of *Gould. See Hossaini v. Western Missouri Med. Cntr.*, 140 F.3d 1140, 1142-43 (8th Cir. 1998) (to protect the integrity of the judicial process, parties are estopped from taking positions inconsistent with those asserted and accepted by a court in earlier litigation).

### B.  Plaintiffs Do Not Allege Sufficient Connections Between The PCB Lawsuits And Post-SU PCBs Sold To Particular Defendants

Plaintiffs next argue that they have sufficiently alleged connections between PCB Lawsuits and particular Defendants' post-SU PCBs. Plaintiffs are wrong.

### 1.  Plaintiffs Propose An Improper Insurance Context Standard

Tellingly, Plaintiffs begin by arguing for a relaxed pleading standard. They claim that, with respect to the duty to defend, the Court need determine only that there is a "possibility or potential" that the PCB Lawsuits meet the Special Undertaking coverage requirements—not that the pleaded claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This argument has several flaws. First, it concerns only the duty to defend. Plaintiffs make no argument that *Iqbal* doesn't apply with respect to the duty to indemnify. Plaintiffs thus concede

that they must meet the *Iqbal* standard with respect to their claims that Defendants breached any SU duty to indemnify.

Substantively, Plaintiffs' argument is wrong because it applies an inapplicable insurance context standard. In Missouri, "[c]ontracts of indemnity are not synonymous with contracts of insurance." *Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co.*, 714 S.W.2d 597, 602 (Mo. Ct. App. 1986); *see also Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999) (refusing to apply Missouri contractual indemnity law in insurance context). In an insurance policy, coverage provisions "are to be liberally construed in favor of the insured to provide the broadest possible coverage." *Alessi v. Mid-Century Ins. Co., Inc.*, 464 S.W.3d 529, 531 (Mo. Ct. App. 2015). By contrast, "Missouri courts strictly construe indemnity contracts." *Cont'l Airlines, Inc. v. Boatmen's Nat. Bank of St. Louis*, 13 F.3d 1254, 1259 (8th Cir. 1994).

Indeed, the Missouri Court of Appeals has rejected Plaintiffs' exact argument. *Allison v. Barnes Hosp.*, 873 S.W.2d 288, 292 (Mo. Ct. App. 1994), concerned an indemnity agreement negotiated between two commercial entities, Barnes and Millar. Barnes argued, like Plaintiffs here, that the agreement's duty to defend clause created an obligation separate from the duty to indemnify clause, and should be viewed liberally. *Id.* The court disagreed and affirmed the trial court's ruling that the indemnity and defense obligations should be "strictly construed together as one agreement." *Id.* Applying that standard, the court determined that there was no duty to defend under the circumstances presented "[i]n the absence of clear, unequivocal provisions" evidencing that intent. *Id.* at 293.[2]

---

[2] The Eleventh Circuit, applying New York law to the same effect, has aptly explained the reason for distinguishing between a duty to defend arising from an insurance policy and a duty to defend arising from a commercial indemnity agreement:

> In particular, an insurer's contractual duty to defend its insured is read broadly. The rationale for the application of the traditional rules of interpreting any ambiguity in the

Further, even under the heightened insurance context standard, dismissal is still required. The insurance standard requires a court to "compare[] the policy language with the allegations in the petition from the underlying lawsuit. If the underlying petition alleges facts that give rise to a claim potentially covered by the policy, the insurer has a duty to defend." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014). Here, the Petition does not provide the information necessary to perform that analysis. Plaintiffs attached only some exemplar complaints from those underlying cases. And those exemplar complaints do not establish that Plaintiffs have stated a claim as to any PCB Lawsuit, much less *every* PCB Lawsuit. For example, the complaint in *Kelly v. Monsanto Co.*, a Food Case in Missouri, limits its liability theories to Monsanto's actions with respect to PCBs sold "for open and non-controllable applications." (Pet. Ex. 10, ECF No. 1-3, at ¶¶ 21, 23.) That complaint presents no possibility of a duty to defend because Plaintiffs admit that no Defendant purchased PCBs for open applications after entering into the SUs, and because Old Monsanto ceased selling PCBs for open applications altogether before any Defendant signed an SU. (Pet. ¶ 2.)

Further adding to Plaintiffs' burden, Plaintiffs seek to hold six different Defendants liable under their respective SUs. But the exemplar complaints don't establish a potential for coverage

---

policy in favor of finding of coverage is that **the insurance policy is generally an adhesion contract** and therefore the insured has no ability to negotiate for or control the wording of the provisions contained therein. This liberal rule of construction is particularly appropriate in determining the insurer's duty to defend the insured from claims potentially within the scope of the policy coverage. Thus, an insurer's duty to defend is triggered whenever the allegations in a complaint, liberally construed, suggest a reasonable possibility of coverage, or when the insurer has actual knowledge of facts establishing such a reasonable possibility. . . . **In contrast,** in a non-insurance indemnity case, the rule of construction is just the opposite: **a non-insurance indemnity agreement is strictly construed, and a duty to indemnify should not be found "absent manifestation of a 'clear and unmistakable intent' to indemnify.**"

*Castleberry v. Goldome Credit Corp.*, 418 F.3d 1267, 1272 (11th Cir. 2005) (emphasis added).

as to any particular Defendant for each of the numerous PCB Lawsuits. To meet their pleading burden Plaintiffs must allege facts connecting *each* underlying case to *each* Defendant. *See, e.g.*, *Former Vacuum & Janitor Supply Co. v. Renard Paper Co.*, No. 4:06-cv-00905, 2007 WL 9805665, at *2 (E.D. Mo. July 2, 2007) ("Under Missouri law, to recover under a theory of contractual indemnity the indemnitee must establish that the indemnitor breached a contract and that this breach resulted in liability on the part of the indemnitee.") (internal quotations omitted). Plaintiffs haven't done that. They attempt instead to plead this case as if it concerns one underlying liability (with repeated references to undifferentiated "PCB lawsuits") and one Defendant (with repeated references to "Defendants" as if they are a collective entity), which is insufficient.

### 2.     Plaintiffs Do Not Otherwise Allege Facts Sufficient To State A Claim

Plaintiffs next argue, in a few different ways, that the Petition's allegations sufficiently state a claim for breach of the SUs as to each PCB Lawsuit and each Defendant, despite not directly and specifically alleging the necessary connections. Plaintiffs are wrong, again.

First, Plaintiffs argue that their generalized allegations regarding the four types of PCB Lawsuits do the trick. They claim that (1) the Food and (2) Water Cases are covered because those plaintiffs sought to impose liability on Plaintiffs for manufacturing "any and all" PCBs; (3) the School Cases are covered because they are premised on Defendants' post-SU PCBs in building products; and (4) the Occupational Cases are covered because the plaintiffs alleged PCB exposure from light ballasts and working with transformers and other electrical equipment. (Resp. at 15-16.) Those conclusory allegations are plainly insufficient. Concerning the Food and Water Cases, it cannot be and is not true that those plaintiffs sued regarding "any and all" PCBs Old Monsanto manufactured. The State of Oregon, for example, was not injured by, did not have to remediate, and thus could not and did not seek damages for PCB contamination in other states.

7

Similarly, no Food Case plaintiffs could have sued regarding PCBs to which they were never exposed. For the School Cases and Occupational Cases, the Petition does not remotely identify products at issue in those cases (much less products that failed and caused contamination) traceable to any or all Defendants. And again, Plaintiffs' group pleading tactic of referring to all Defendants together as one collective entity is not entitled to credit.

Second, Plaintiffs argue that their generalized allegations are sufficient based on the line of decisions denying motions to dismiss where relevant facts are "peculiarly within defendants' possession and control." (*Id.* at 17.) Those cases do not apply here. Both the duty to defend and the duty to indemnify are determined by reference to evidence from the underlying case at issue. *See Allison*, 873 S.W.2d at 293 (affirming district court decision on duty to defend based on evidence from underlying action); *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W. 168, 173 (Mo. 1999) ("The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement."). Indeed, a claim for indemnity is not ripe until the facts are established at the underlying trial or settlement. *See id.* at 173-74. The relevant facts are thus not within Defendants' control. The proper sources of relevant facts are the PCB Lawsuits that Plaintiffs have defended and continue to defend through settlement and trial. Plaintiffs have had every opportunity to gather the facts from those proceedings—over seven years, in some instances—and plead them here. They have not done so.

Third, Plaintiffs' collective liability theory fails as a matter of law based on the plain language of the SUs. Plaintiffs argue that under the SUs "each Defendant is individually and collectively liable for 'any and all' of the amounts Monsanto has paid to defend and resolve the underlying PCB lawsuits." (Resp. at 19.) In support, Plaintiffs cite a case in which multiple

insurers were held liable for the full policy coverage amount despite the existence of concurrent coverage of "the same risk" under other policies. (*Id.*) The obvious flaw in Plaintiffs' argument is that Defendants did not each agree to defend and indemnify Old Monsanto for ***the same risk***. Rather, each Defendant's SU obligation is specific only to PCBs Old Monsanto sold to that Defendant. (*See* Pet. Exs. 1-6 (". . . with respect to any and all PCB's sold or delivered by or on behalf of Monsanto to Buyer . . . .").) In other words, no SU requires any Defendant to indemnify Old Monsanto for PCB liabilities completely unconnected to PCBs sold to that Defendant. That plain meaning of each SU defeats Plaintiffs' collective liability theory as a matter of law.

### 3. Plaintiffs Have Pleaded No Connection Between PCB Lawsuits And PCBs Sold To Particular Defendants

Plaintiffs' final argument identifies a few PCB Lawsuits for which they claim to have pleaded a direct connection to particular Defendants (Magnetek, GE, and Paramount only) (Resp. at 19), thereby ***conceding*** that they have failed to plead those required allegations in all other instances. But even for those few PCB Lawsuits the Petition is deficient. First, it means nothing that a single light ballast allegedly manufactured by Magnetek or its predecessor was found in the Sky Valley Education Center. (*Id.*) Missing are any allegations that the ballast contained post-SU PCBs and, even more fundamentally, that it failed and contributed to the contamination at issue in that case.[3] Regarding the Water Cases Plaintiffs point to, similarly missing are well-pleaded allegations that post-SU PCBs sold to GE or Paramount were among the PCBs required to be remediated. That connection remains nothing more than speculation.

---

[3] Plaintiffs have tried Sky Valley Education Center cases to judgment. If there were any such facts in the evidence from those cases, Plaintiffs no doubt would have pleaded them here.

## II.      NEITHER OLD NOR NEW MONSANTO HAS THE RIGHT TO ENFORCE THE SPECIAL UNDERTAKINGS

### A.      Old Monsanto Has No Right To Enforce Special Undertakings And Is Not A Party To Them

Plaintiffs' Response presents an about-face from the plain language of the Petition, now asserting that when Plaintiffs pleaded Solutia was assigned "right, title, and interest…in and to *all* of the Chemical Assets" by Old Monsanto, which the Petition alleges were "defined to include '…*all rights* in the nature of insurance, indemnification or contribution," and "*including the rights to enforce* the Special Undertaking Agreements," Plaintiffs did not actually mean "*all rights*," they meant only *"some of its rights*." (*See* Pet. ¶ 8; Resp. at 25 (emphasis added).) Plaintiffs' argument is contrary to both the allegations they pleaded in the Petition itself and the agreements Plaintiffs quote and cite in the Petition.

First, Plaintiffs pleaded a full, unconditional assignment of *all rights* in the SUs to Solutia. Despite Plaintiffs' new assertion that "the FAP does not allege that Old Monsanto assigned *all* of its rights in the Special Undertaking Contracts to Solutia," the Petition alleges that "Old Monsanto assigned certain rights to Solutia, including **the rights** to enforce the Special Undertaking Agreements." (Pet. ¶ 8 (emphasis added).)[4] Plaintiffs cannot utilize a "contradictory assertion . . . in response to [a] motion to dismiss" to avoid dismissal of their claims, because when a party files a complaint they have "certified that the factual allegations…have evidentiary support." *Tansil v. Honda Motor Co., Ltd*., No. 4:16-CV-1220 (CEJ), 2016 WL 6396166, at *2 (E.D. Mo. Oct. 28, 2016) (finding "Plaintiff's contradictory assertion of Michigan citizenship in

---

[4] An assignment of "all rights . . . in the nature of insurance, indemnification or contribution" (Pet. ¶ 8) *includes* the duty to defend. *See Allison*, 873 S.W.2d at 292 (duty to defend and duty to indemnify in commercial indemnity agreement "should be strictly construed together as one agreement").

response to the motion to dismiss cannot satisfy her burden to establish subject matter jurisdiction" when the complaint stated Plaintiff was a citizen of Missouri). Thus, Plaintiffs' new partial assignment theory is fatally contradictory.

Further, Plaintiffs' new "partial assignment" theory contradicts the Distribution Agreement (pursuant to which Solutia was created and assigned certain liabilities and assets of Old Monsanto in 1997, including the SUs), which Plaintiffs only selectively quote in their Petition. The Distribution Agreement transferred the "Chemicals Assets" to Solutia at its separation from Old Monsanto, and provided that the parties would execute instruments to transfer to Solutia "all of the right, title and interest of the Monsanto Group in the ***Chemicals Assets***." Distribution Agreement § 2.03, Ex. F (emphasis added).[5] The transferred "Chemicals Assets" included "***all contracts***, leases and licenses exclusively dedicated to the Chemicals Business, and such rights under other contracts, leases or licenses as the parties have otherwise agreed pursuant to this Agreement . . . ." *Id.* § 1.01(11) (emphasis added). The ultimate executed instrument, the Assumption and Assignment Agreement, reinforces that Old Monsanto assigned to Solutia "all right, title and interest" in the SUs: "Monsanto hereby sells, assigns and conveys unto Chemicals ***all of the right, title and interest*** of the Monsanto Group in and to ***all of the Chemicals Assets*** not heretofore transferred to Chemicals." Assignment and Assumption Agreement, § 1, Ex. G (emphasis added).

Plaintiffs' reliance on the definition of "Assets" (Pet. ¶ 8; Resp. at 26)—which is *not* what was actually transferred to Solutia—does not compel a different result. The definition of

---

[5] While Plaintiffs did not attach a copy of the Distribution Agreement to their Petition, the court can consider it because Plaintiffs referenced and quoted it in the Petition. *See Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014) (documents necessarily embraced by the complaint are not matters outside the pleadings and may be considered on a motion to dismiss).

Assets makes clear that, consistent with common sense, Solutia was assigned both defense and indemnity rights, not just indemnity rights:

> 7. Assets: any and all assets, properties and rights…including, without limitation, the following: (xv) **all rights under contracts**, agreements, warranties or guaranties…; [and] (xvi) all rights under insurance policies and **all rights in the nature of** insurance, **indemnification** or contribution…

*See* Distribution Agreement, § 1.01(7), Ex. F (emphasis added). This section references "all" rights under contracts, not just portions,[6] so Plaintiffs are simply making up a limitation that does not exist to salvage their case for parties that do not belong in it. The Distribution Agreement does not separately assign or otherwise dispose of rights to defense. Thus, under the unambiguous terms of the Distribution Agreement, Old Monsanto assigned to Solutia "all contracts" dedicated to the Chemicals Business, including the SUs.[7]

---

[6] "[A]ll" rights means *all rights*, not only certain rights Plaintiffs recently decided they'd rather not have been assigned to Solutia. The cases Plaintiffs rely upon show that to effect such a partial assignment, specific language or reference to a specific statute is utilized. In *Skaggs Regional Medical Ctr. v. Powers*, the assignment of a medical claim to a collection agency stated that, "pursuant, to 425.300 RSMO, [assignor] hereby assigns and transfers to [assignee], ***for the purposes of billing, collection, and bringing suit*** as the real party in interest in Assignee and Assignor's names, all of Assignor's rights, title, and interest in any and all monies due…" 419 S.W.3d 920, 921 n.1 (Mo. Ct. App. 2014) (emphasis added). The court there found that in that specific context, the assignment clearly demonstrated that the assignor "retain[ed] a beneficial interest" in the action assigned. *See id.* at 922; *see also Warren v. Kirwan*, 598 S.W.2d 598, 599 (Mo. Ct. App. 1980) (holding that limiting language in an assignment, stating that "[t]he Insured hereby assigns…to the Insurer any and all claims or causes of action . . . ***to the extent of the payment made above***…." was sufficient to render the assignment merely a partial assignment of the cause of action) (emphasis added). No such language indicating a conditional or partial assignment is present in the Petition or in the Distribution Agreement it quotes.

[7] Plaintiffs acknowledge the SUs are contracts. (*See, e.g.*, Pet. ¶¶ 239, 253 ("The Special Undertaking Agreements are valid contracts that are enforceable against Defendants."); Resp. generally (referring to SUs as "Special Undertaking Contracts").)

In sum, Plaintiffs' Response on this point is a pure *post hoc* backtrack to convert their complete assignment of the SUs to Solutia into a partial one because it suits their argument. Pharmacia's claims in Counts I through IV therefore should be dismissed. (*See* Resp. at 25–26.)[8]

### B.    New Monsanto Is Not Entitled To Enforce The SUs As An "Agent" Or "Future Agent" Of Either Old Monsanto Or Solutia

Defendants explained at length in their Motion that New Monsanto is not a real party in interest in this case, because it lacks any enforcement rights in the SUs. (Defs.' Br. in Supp. of Joint Motion to Dismiss, ECF No. 91, hereafter "Mot." at 16–20.) None of Plaintiffs' arguments in their Response changes that simple fact.

Plaintiffs argue New Monsanto has rights to enforce the SUs because the SUs state Defendants shall defend and indemnify Old Monsanto and its "present, past, and future agents." Specifically, Plaintiffs argue New Monsanto became the "agent" or "future agent" of Old Monsanto (n/k/a Pharmacia), through the 2008 Power of Attorney designating New Monsanto as such (attached to the Response as Ex. B). Even if true, that fact does not render New Monsanto a party in interest with rights to enforce the SUs, because Old Monsanto alleges it had already assigned all of its SU rights to Solutia more than a decade prior. (*See* Pet. ¶ 9.) "Where an assignor [Old Monsanto] has assigned the entire claim, it cannot sue on the claim because it

---

[8] That Magnetek, who did not join the Joint Motion to Dismiss, may have asserted as a defense to Plaintiffs' claims that the assignment of the SUs to Solutia was invalid does not bind the Defendant signatories to the Joint Motion to Dismiss. Indeed, Plaintiffs have taken contradictory positions on this point as well, including in their litigation with Magnetek in New Jersey. *See, e.g.*, Monsanto Co., Pharmacia LLC and Solutia, Inc.'s *Memorandum ISO Defs' Renewed Mot. to Dismiss for Failure to Join Indispensable Parties*, *Magnetek Inc. v. Monsanto Co.*, et al., No. BER-L-3362-17 (N.J. Sup. Ct. Sept. 21, 2022), at 15 ("[A] judgment finding the Special Undertaking unenforceable would prejudice Solutia's and New Monsanto's rights because Solutia is the assignee of Old Monsanto's right to enforce the Special Undertaking, and New Monsanto's right to receive reimbursement for funds expended in defense of the PCB lawsuits depends on Solutia's ability to enforce the Special Undertaking against Magnetek."), Ex. H.

retains no interest on which to base an action." *Mecklenburg Farm v. Anheuser-Busch, Inc.*, 250 F.R.D. 414, 417 (E.D. Mo. 2008) (quoting 4 Moore's Federal Practice, § 17.11[1][a]).[9] As a result, once Old Monsanto assigned "all rights" in the SUs to Solutia in 1997, Old Monsanto retained "no interest" therein, and thus could not *after* such assignment "grant New Monsanto authority" to enforce the SUs, as Old Monsanto itself no longer possessed a right to identify any subject "agents" with third party beneficiary status. (*See* Pet. ¶ 9; Resp. at 28.)[10]

Only *Solutia*—the sole entity that gained the right to enforce the SUs in its 1997 spinoff from Old Monsanto, as alleged in the Petition—could even possibly convey enforcement rights to New Monsanto, and Plaintiffs plead no allegations to support such a theory. Plaintiffs never once allege in their Petition that New Monsanto is an agent of Solutia. Plaintiffs' only allegations that even potentially come close are that "in connection with Solutia's Chapter 11" case, Solutia agreed to assert indemnification rights "for the benefit of New Monsanto," and that Solutia "granted New Monsanto the right to any benefits recovered by Solutia." (*See* Pet. ¶ 9.) At most, these allegations show Solutia had responsibilities to New Monsanto; they do not establish, as they must for Plaintiffs' theory to prevail, that New Monsanto is an "agent" of Solutia with respect to the SUs such that it has rights to enforce them. "[T]o establish a principal/agent relationship . . . the principal [Solutia] must have a 'right to control' the agent [New Monsanto]."

---

[9] The Power of Attorney actually reinforces this fact. Therein, Pharmacia grants to New Monsanto only the "power and authority to do and perform all and every act…*as Pharmacia might or could do* if acting through its own officers or delegates." (Resp. Ex. B, § 1(b) (emphasis added).)

[10] Plaintiffs' citation to *Torres v. Simpatico, Inc.* does not compel a different result, because the agreement at issue there specifically stated it was "intended to benefit and bind certain third party non-signatories," and specifically named the entities the court found were third party beneficiaries thereto. 781 F.3d 963, 971 (8th Cir. 2015). Here, where the SUs fail to define any particular agents, third party beneficiaries, or class thereof, logic dictates that the only plausible entities with any third party beneficiary status are agents to the entity with rights to the Special Undertakings at that time—Solutia.

*Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. 2008). Plaintiffs do not allege that New Monsanto is acting subject to Solutia's control with respect to enforcement of the SUs. Nor do Plaintiffs plead that Solutia has any control over New Monsanto's conduct as relevant to the rights Solutia holds in the SUs. There is simply no allegation in the Petition that New Monsanto is Solutia's agent, and thus there is no allegation conveying New Monsanto rights to enforce the SUs.

Finally, as a last-ditch effort to argue that New Monsanto has rights to enforce the SUs "in some form under Missouri law," Plaintiffs argue that New Monsanto should be deemed a "conventional or equitable" subrogee. But equitable subrogation is "a fairly drastic remedy" and is "allowed only in extreme cases bordering on if not reaching the level of fraud." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 134 (Mo. 2007). Accordingly, for equitable subrogation to apply, New Monsanto must be carrying out duties and making payments for which it has ***no liability*** and for which Defendants bear full responsibility for having caused. *See State ex rel. Missouri Highways & Transp. Comm'n v. Westgrove Corp.*, 364 S.W.3d 695, 700 (Mo. Ct. App. 2012) ("The Missouri Supreme Court . . . stated that for equitable subrogation to apply, the party against whom the doctrine would be applied must have 'engaged in fraudulent conduct or committed acts bordering on fraud that created the condition that caused the . . . loss.'"). This is simply not the case here, and the Court should disregard Plaintiffs' attempt to shoehorn the facts of this case into an extreme equitable remedy that simply does not apply.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS

### A.   Plaintiffs Have Not Pled Ripe Claims For A Declaratory Judgment Of Defendants' SU Liability On All Future PCB Lawsuits

Plaintiffs' vigorous defense of their claimed right to a declaratory judgment as to any future PCB Lawsuits filed against Old Monsanto is bizarre and unfounded. What if the complaint

or evidence in a future lawsuit reveals that it concerns only pre-SU PCBs? Or PCBs sold for

open applications, which Defendants did not manufacture? Or contamination caused by a PCB

purchaser who is not among the six Defendants? Or only some but not all of the Defendants?

Those are real possibilities, but Plaintiffs apparently believe that none of them matters, and that

each and every Defendant can be declared liable—right now—under its respective SU for all

future lawsuits against Plaintiffs involving PCBs. That cannot be, and is not, the law.

Plaintiffs' argument to the contrary is that their declaratory relief claims are ripe because

there is a "substantial probability" that Plaintiffs will continue to be sued in cases involving

PCBs. (Resp. at 23-24.) But none of Plaintiffs' cases supports that position—in fact, they

undermine it. In *Marine Equip. Mgmt. Co. v. United States*, the plaintiff sought a declaratory

judgment that it had successfully abandoned a barge and thus could not be held liable to anyone

for future damages under a federal law. 4 F.3d 643, 646 (8th Cir. 1993). The Eighth Circuit

affirmed ***dismissal*** of those claims. *Id.* at 647 ("Plaintiffs also request a declaration that it cannot

be held liable to any unknown future litigants who claim to have been damaged by a resurrected

RR-215B. Again, this fails to create a controversy sufficient to support jurisdiction."); *see also In

re Am. Commercial Lines, Inc.*, 781 F.2d 114 (8th Cir. 1985) (declaratory relief claims not ripe);

*Hartford Accident & Indemnity Co. v. Doe Run Resources Corp.*, 663 F. Supp. 2d 771, 776 (E.D.

Mo. 2009) (dismissing declaratory relief claims because plaintiff could not show that an injury

was "certainly impending").

Plaintiffs identify two cases in which a court found declaratory relief claims to be partly

ripe regarding future litigation. Unsurprisingly, both are entirely distinguishable. In *Aetna Cas. &

Sur. Co. v. Gen. Dynamics Corp.*, General Dynamics had been sued or settled with

environmental protection agencies for cleanup costs as to twelve sites, and had received letters

from agencies demanding cleanup at four others. 968 F.2d 707, 709-11 (8th Cir. 1992). Aetna sought a declaratory judgment that it had *no* duty to defend or indemnify as to any of the sites based on a pollution exclusion to coverage. *Id.* Here, in contrast, Plaintiffs seek a blanket declaration of coverage for any and all future suits. In *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, a case not binding on this Court, the court permitted a declaratory relief claim regarding insurance coverage for pattern litigation where there was a likelihood that the excess insurance carriers' policies would be reached. 241 F.3d 154, 177-78 (2d Cir. 2001). In contrast to this case, there was not an open question in *E.R. Squibb* as to whether the coverage would apply to the *merits* of the underlying cases, just simply a question as to whether excess layers of coverage were likely to be triggered. *See id.* at 177-78.

Neither case stands for the untenable proposition Plaintiffs assert here: that a party may be determined liable for SU defense and indemnity as to theoretical, future third-party claims before the facts of any such claims are known and *despite the real potential for any such claims to have nothing to do with PCBs sold to a particular Defendant*.[11] That type of uncertainty is why the ripeness requirement "seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Paraquad, Inc. v. St. Louis Housing Authority*, 259 F.3d 956, 958 (8th Cir. 2001) (affirming dismissal of claim as unripe). What is it that Plaintiffs want the Court to conclude in the abstract? Based on the facts currently known (i.e., none), Plaintiffs' answer must be that each Defendant has an SU duty to defend and indemnify Plaintiffs for any claim ever brought in the future against Plaintiffs in any way related

---

[11] In the cases Plaintiffs cite, there was not a potential that the underlying facts would make the insurance policy inapplicable in the first instance. The SUs' requirements that a PCB Lawsuit involve PCBs sold to the particular SU signatory finds no parallel in any of the insurance cases upon which Plaintiffs rely.

to injuries caused by PCBs, regardless of the facts of that claim and regardless of each SU's specific causal requirements. No authority supports Plaintiffs' proposition.

Finally, Plaintiffs argue that declaratory relief need not await a breach. (Resp. at 21-22.) True enough, but the injury must be "certainly impending." *Employers Ass'n v. United Steelworkers AFL-CIO-CLC*, 32 F.3d 1297, 1299 (8th Cir. 1994). And nothing about a theoretical future claim that may be brought by unknown plaintiffs, in unknown locations, based on unknown facts, concerning an unknown form of PCB contamination presents a "certainly impending" injury.

Plaintiffs' requested declaratory judgment of Defendants' SU liability as to any future claims against Plaintiffs involving PCBs is not ripe and must be dismissed.[12]

### B.     Plaintiffs' Have Not Pleaded A Ripe Claim For Declaratory Relief Of Defendants' Liability For Indemnity As To Ongoing Claims

For similar reasons, Plaintiffs' request for a declaratory judgment that Defendants are liable for SU indemnity as to all pending PCB Lawsuits fares no better. Under Missouri law, a court cannot decide whether an indemnitor has a duty to indemnify until the facts have been conclusively established at the underlying trial or through settlement. (*See* Mot. at 15 (discussing *Shapiro Sales Co. v. Alcoa, Inc.*, No. 4:06-CV-638 CDP, 2006 WL 2228987, at *3 (E.D. Mo. Aug. 3, 2006).) Plaintiffs' response is that that opinions in this District have rejected that rule as contrary to Eighth Circuit precedent (Resp. at 22), but no case has outright rejected *Shapiro*. Rather, the cases upon which Plaintiffs rely have distinguishing circumstances, including that they all involve insurance policies, rather than indemnity agreements.

---

[12] Plaintiffs suggest that the Court should, at a minimum, stay those claims. Unless the Court intends to keep this case open indefinitely, awaiting the filing of any and all future PCB Lawsuits, it should decline.

For example, in Plaintiffs' lead case, *Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926 (8th Cir. 2010), the insurer sought a declaratory judgment that there was ***no*** duty to defend an underlying complaint (and thus also no narrower duty to indemnify) due to a pollution exclusion. *Id.* at 934. Under those circumstances, the Eighth Circuit found the declaratory judgment claims ripe. *Id.* That of course is not the situation here. *Scottsdale* found that an exclusion to an insurance policy can apply on the face of an underlying complaint—it does not remotely stand for the proposition that a contractual indemnitee can receive a declaratory judgment finding indemnity obligations are triggered before the facts upon which that determination must be made are established. As in the case of future lawsuits, there are too many unknowns.

Plaintiffs' other cases are to the same effect. None aids their cause, and most involve an insurer seeking a declaratory judgment that coverage should ***not*** apply. *See Certain Underwriters at Lloyd's, London v. C&S Properties, LLC*, No. 4:21-CV-422-AGF, 2022 WL 103303 at *3-4 (E.D. Mo. Jan 11, 2022) (insurer sought declaratory judgment based on underlying complaint that policy exclusion precluded a duty to defend and therefore duty to indemnify); *Aetna Cas. & Sur. Co.*, 968 F.2d at 711 (same); *Capitol Indemnity Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992) (same); *Allied World Specialty Ins. Co. v. City of Ferguson, Mo.*, No. 4:18-CV-827 RLW, 2019 WL 1118137, at *2 (E.D. Mo. Mar. 11, 2019) (same); *see also Lankford v. Webco, Inc.*, No. 06-3339-CV-S-FJG, 2007 WL 4333193, at *1-2 (W.D. Mo. Dec. 7, 2007) (insured joined insurer as third-party defendant and brought ripe claim for declaratory judgment of coverage in the event that court found insured liable to plaintiff in ongoing case).

The Court should dismiss as not ripe Plaintiffs' declaratory judgment claims on the duty to indemnify regarding ongoing litigation.

## IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE CONTRIBUTION

Plaintiffs' response to the clear deficiencies of the Petition is to simply insist that the

threadbare, conclusory, and unsubstantiated allegations lumping together all Defendants must be

sufficient to state a claim. (Resp. at 30-33.) Not so. Plaintiffs offer no authority to support their

arguments and ignore the case law relied upon by Defendants that establishes the insufficiency of

the equitable contribution claim. The claim for equitable contribution must be dismissed.

### A.     The Petition Does Not Adequately Allege That Plaintiffs And Defendants Are Joint Tortfeasors

Plaintiffs contend that the Petition states a claim for equitable contribution against all

Defendants because it "includes sufficient allegations establishing that (i) each Defendant

negligently released PCBs into the environment through various means [], and (ii) the PCBs

released by Defendants (both before and after entering into the Special Undertaking Contracts)

are among the PCBs identified by the plaintiffs in the underlying PCB lawsuits as allegedly

causing them injury or damage." (Resp. at 30-31.) In purported support of these contentions,

Plaintiffs cite to Petition paragraphs 104-66, 170-173, 183-184, 190-192, 195, and 198-201. (*Id.*)

But these paragraphs do nothing more than generally allege that Defendants purchased

PCBs and released PCBs into the environment, refer generally to the PCB Lawsuits without

connecting any specific Defendant to the PCB Lawsuits, and state only that that the PCB

Lawsuits "seek to impose liability on Plaintiffs for manufacturing any and all PCBs, including

those purchased by the Defendants . . ." (*See* Pet. ¶¶ 104-66, 170-173, 183-184, 190-192, 195,

and 198-201.) Glaringly absent are factual allegations as to the elements required to state a claim

for equitable contribution: that Plaintiffs and Defendants are ***joint tortfeasors*** and that the

Defendants ***actually*** participated in the tort that forms the basis of the PCB Lawsuit plaintiffs'

claims.[13] *See Former Vacuum & Janitor Supply Co.*, 2007 WL 9805665, at \*3. The absence of

any allegations in the Petition to establish that the ***actual*** PCBs purchased by Defendants were

improperly released into the environment ***and*** are the ***same*** PCBs alleged to have caused injury

to the PCB Lawsuit plaintiffs dooms Plaintiffs' equitable contribution claim. Plaintiffs offer no

response to this critical deficiency.

Nor do Plaintiffs attempt to distinguish the authority Defendants cited in which a

Missouri federal court dismissed an equitable contribution claim because the plaintiff did not

allege that the defendant was a joint tortfeasor who participated in the alleged tort. (*See* Mot. at

21 (citing *Former Vacuum & Janitor Supply Co.*, 2007 WL 9805665, at \*7-8).) Plaintiffs' failure

to do so speaks for itself. Accordingly, the Petition fails to state a claim for equitable

contribution.

## B.    The Equitable Contribution Claim Must Be Dismissed For Impermissible Group Pleading

Plaintiffs' equitable contribution claim also fails because the Petition improperly lumps

all Defendants together and does not sufficiently allege who did what to whom. (Mot. at 22.)

Tellingly, Plaintiffs do not address or distinguish any of the case law Defendants cited in their

Motion dismissing a complaint for impermissible group pleading. Instead, Plaintiffs respond that

their allegations "provide Defendants sufficient notice of their alleged misconduct" and rely on

one unpublished New York case in which the court permitted group pleading because the

plaintiffs were asserting "identical claims" against each defendant. (*See* Resp. at 31 (*citing New

York Am. Water Co. v. Dow Chem. Co.*, No. 19-CV-2150 (NG) (RLM), 2020 WL 9427226, at \*4

---

[13] Certain Defendants argue that Plaintiffs' claim for negligence (Count V) must be dismissed. If this Court agrees, there is no basis by which these Defendants *could* be joint tortfeasors who are liable to Plaintiffs for contribution.

(E.D.N.Y Dec. 11, 2020)).) *New York Am. Water Co*. is inapposite here because Plaintiffs are ***not*** asserting identical claims for contribution against each Defendant. Instead, Plaintiffs seek contribution for ***hundreds of different*** lawsuits with different plaintiffs with different exposures and injuries against different entities which, *inter alia*, have substantially different geographic profiles, functioned at different manufacturing plants, and manufactured different products. Yet, the Petition fails to allege a factual basis for liability against any specific Defendant and fails to identify the particular PCB Lawsuit for which Plaintiffs seek contribution from each Defendant. Plaintiffs' conclusory allegations that Defendants purchased PCBs and allegedly released PCBs into the environment are woefully insufficient to put each Defendant on adequate notice of the basis of Plaintiffs' claim for contribution and the particular PCB Lawsuit for which they seek contribution.

Further, this is not a viable legal theory. If each of the claims is "identical" despite the obvious differences noted above, Plaintiffs are essentially saying the purchase of even a single PCB makes an entity automatically jointly liable for all PCB-related harm. There is no basis in the law to support such a theory.

### C. Threadbare Recitals Of The Elements Of A Claim Are Insufficient To State A Claim For Equitable Contribution As To PCB Lawsuits Resolved By Settlement

The Petition separately fails to state a claim for equitable contribution with respect to the PCB Lawsuits resolved by settlement, which requires the additional showing that the settlement be both "reasonable" and "extinguish the liability between the defendant and third-party."

As set forth in Defendants' Moving Brief, the Petition does nothing more than make conclusory and threadbare recitals of the elements of a claim for equitable contribution for lawsuits resolved by settlement. (*See* Pet. ¶¶ 311-312; Mot. at 23.) Specifically, the Petition contains only Plaintiffs' bare assurances that the settlements were "reasonable" and

"extinguished Defendants' liabilities," and are not supported by a *single* fact.[14] Incredibly, Plaintiffs balk at the idea that they "must plead facts" establishing the basic elements of a claim for contribution towards a settlement. (Resp. at 32.) That position is meritless and ignores the well-settled law that "threadbare recitals of the elements of a cause of action . . . supported by mere conclusory statements" are insufficient to state a claim and require dismissal. *Thompson v. Davis*, No. 4:18-CV-267 RWS, 2018 WL 2238193, at *1 (E.D. Mo. May 16, 2018) (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs have not cited any authority that suggests a different result.

In explanation of their pleading deficiencies, Plaintiffs offer only that their allegation that the settlements "extinguished Defendants' liabilities" is "not conclusory" because it is somehow "supported by underlying allegations that the suits resolved by these settlements asserted claims involving PCBs released by Defendants or from Defendants' products." (Resp. at 33.) In other words, Plaintiffs are asserting that their conclusory statements that the settled PCB Lawsuits somehow "involve" the Defendants—despite providing no factual allegations actually linking the differently situated underlying plaintiffs with the differently situated Defendants—somehow prove that the terms of the underlying settlement agreements actually released and extinguished Defendants' liability. That conclusion does not make logical sense. Plaintiffs' position also ignores the reality of the situation at hand: to the extent that Plaintiffs' settlement of any PCB Lawsuit actually extinguished any of Defendants' purported liabilities, Plaintiffs undoubtedly

---

[14] The Petition's *sole* allegation regarding the reasonableness of PCB Lawsuit settlements provides, "The amount Monsanto paid and/or has agreed to pay in settlement of some of the Food Chain Cases and some of the Water Cases was reasonable." (Pet. ¶ 312.) Its sole allegation regarding Defendants' liability in the underlying settlements is equally conclusory: "For example, Plaintiffs' settlement of some of the Food Chain Cases and some of the Water Cases extinguished Defendants' liabilities for those alleged injuries." (*Id.* ¶ 311.)

possess such information. And yet, Plaintiffs fail to plead **any** such facts.[15] Regardless, this piling of one conclusory statement upon another does nothing to fix the clear pleading deficiencies.

Plaintiffs' equitable contribution claim must be dismissed as to any PCB Lawsuits resolved by settlement.

## CONCLUSION

For all of the foregoing reasons, and those set forth in Defendants' Motion, the Court should dismiss Counts I-IV and VII of Plaintiffs' First Amended Petition.

---

[15] Perhaps this is because it is unlikely that each and every Defendant's liabilities were, in fact, extinguished in each of the underlying settlements where (i) the Defendants were not named in any of the underlying litigations and (ii) Plaintiffs do not link any Defendant with a particular underlying litigation.

Dated:  June 27, 2023.                    Respectfully submitted,


                                          /s/ Peter W. Herzog, III
                                          Peter W. Herzog III #36429 (MO)
                                          Wheeler Trigg O'Donnell LLP
                                          One Metropolitan Square
                                          211 N. Broadway, Suite 2825
                                          St. Louis, MO  63102-2723
                                          Telephone: 303.244.1800
                                          Facsimile: 303.244.1879
                                          Email: pherzog@wtotrial.com

                                          Michael L. O'Donnell (*admitted pro hac vice*)
                                          Marissa S. Ronk (*admitted pro hac vice*)
                                          Erik D. Nadolink (*admitted pro hac vice*)
                                          Wheeler Trigg O'Donnell LLP
                                          370 Seventeenth Street, Suite 4500
                                          Denver, CO  80202-5647
                                          Telephone: 303.244.1800
                                          Facsimile: 303.244.1879
                                          Email:  odonnell@wtotrial.com
                                                   ronk@wtotrial.com
                                                   nadolink@wtotrial.com

                                          Attorneys for Defendant General Electric Co.

Dated:  June 27, 2023.                          Respectfully submitted,


/s/ David B. Helms
David B. Helms, #48941 (MO)
GM Law PC
8000 Maryland Ave., Suite 1060
St. Louis, MO 63105
Telephone: (314) 504-4166
Facsimile: (816) 471-2221
davidh@gmlawpc.com

Benjamin D. Mooneyham, #65341 (MO)
GM Law PC
1201 Walnut Street, Suite 2000
Kansas City, MO 64106
Telephone: (816) 4 71-7700
Facsimile: (816) 471-2221
benm@gmlawpc.com

Nicholas A. Butto (admitted pro hac vice)
Kaitlyn Crowe (admitted pro hac vice)
LisaMarie Collins (admitted pro hac vice)
Mintz Levin PC
919 Third Avenue, 38th Floor
NY, NY 10022
Telephone: (212) 935-3000
nabutto@mintz.com
kacrowe@mintz.com
lfcollins@mintz.com


Attorneys for Defendant Kyocera AVX Components
Corporation

Dated:  June 27, 2023.                    Respectfully submitted,


                                          /s/ Gerard T. Carmody
                                          Gerard T. Carmody, #24769 (MO)
                                          David M. Fedder, #38823 (MO)
                                          Tyler C. Schaeffer, #60847 (MO)
                                          Carmody MacDonald PC
                                          120 S. Central Avenue, Suite 1800
                                          St. Louis, MO 63105
                                          Telephone: (314) 854-8600
                                          Facsimile: (314) 854-8660
                                          gtc@carmodymacdonald.com
                                          dmf@carmodymacdonald.com
                                          tcs@carmodymacdonald.com

                                          Yehudah Lev Buchweitz (*admitted pro hac vice*)
                                          Cameron Mae Bonk (*admitted pro hac vice*)
                                          Weil, Gotshal & Manges LLP
                                          767 Fifth Avenue
                                          New York, NY 10153
                                          Telephone: (212) 310-8256
                                          Facsimile: (212) 310-8007
                                          yehudah.buchweitz@weil.com
                                          cameron.bonk@weil.com

                                          C. Michael Evert (*admitted pro hac vice*)
                                          Evert Weathersby Houff
                                          3455 Peachtree Road NE, Suite 1550
                                          Athens, GA 30326
                                          Telephone: ( 678) 651-1200
                                          Facsimile: (678) 651-1201
                                          cmevert@ewhlaw.com

                                          Christopher G. Conley (*admitted pro hac vice*)
                                          Evert Weathersby Houff
                                          200 Cleveland Road, Suite 6
                                          Bogart, GA 30622
                                          Telephone: (706) 389-7300
                                          Facsimile: (706) 389-7301
                                          cgconley@ewhlaw.com

                                          Attorneys for Defendant Paramount Global

Dated:  June 27, 2023.                          Respectfully submitted,


/s/ Hampton S. French
Hampton S. French, Esq. #70965 (MO)
Segal McCambridge Singer & Mahoney, Ltd.
8112 Maryland Ave., Suite 400
St. Louis, MO 63105
Telephone: (314) 300-5780
hfrench@smsm.com

Jonathan M. Ettinger (admitted pro hac vice)
Aaron F. Lang (admitted pro hac vice)
Foley Hoag LLP
155 Seaport Blvd., Suite 1600
Boston, MA 02210
Telephone: (616) 832-3064
jettinger@foleyhoag.com
alang@foleyhoag.com

Attorneys for Defendant Cornell-Dubilier Electronics,
Inc.

Dated:  June 27, 2023.                          Respectfully submitted,


                                                /s/ Robert P. Berry
                                                Robert P. Berry, #46236 (MO)
                                                Andrew D. Lamb, #59600 (MO)
                                                16150 Main Circle Drive, Suite 120
                                                St. Louis, Missouri 63017
                                                Telephone: (314) 480-5881
                                                Facsimile: (314) 480-5884
                                                rberry@berrysilberberg.com
                                                alamb@berrysilberberg.com

                                                John M. Allen, #49642 (MO)
                                                Sarah B. Mangelsdorf, #59918 (MO)
                                                Goldberg Segalla LLP
                                                8000 Maryland A venue, Suite 640
                                                St. Louis, MO 63105
                                                Telephone: (314) 446-3370
                                                jallen@goldbergsegalla.com
                                                smangelsdorf@goldbergsegalla.com

                                                Attorneys for Defendant The Gillette Company, LLC

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on June 27, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel and parties of record who have appeared.

*s/ Peter W. Herzog, III*