# Exhibit E

IN THE MISSOURI COURT OF APPEALS
EASTERN DISTRICT

| | | |
|---|---|---|
| MONSANTO COMPANY, | ) | |
| Plaintiff/Respondent | ) | |
| vs. | ) | No. 71916 |
| GOULD ELECTRONICS, INC., | ) | |
| Defendant/Appellant | ) | |

---

Appeal from the Circuit Court of St. Louis County
The Honorable Robert S. Cohen
Circuit Judge

---

Brief Of Respondent Monsanto Company

---

Mark G. Arnold, #28369
Husch & Eppenberger
100 North Broadway, Suite 1300
St. Louis, MO 63102
Office: (314) 421-4800
Fax No: (314) 421-0239

Attorneys for Respondent
Monsanto Company

address these arguments. If the common law rule did apply to this U.C.C. contract, the Special Undertaking fully applies to the LSU litigation.

## II. **The Trial Court Correctly Entered Summary Judgment For Monsanto, Because There Is No Genuine Dispute That The Special Undertaking Applies To The LSU Litigation, In That ITE Could Not Have Manufactured The Transformer Without Continued Shipments Of PCBs After The Effective Date Of The Agreement.**

Gould's second point asserts that there is a "factual dispute" over whether the Askarel in the failed transformer was delivered after January 12, 1972, the effective date of the Special Undertaking. Since shipments arriving after that date were commingled with the fluid on hand, Gould claims that Monsanto cannot trace every single molecule in the failed transformer to deliveries after January 12, 1972.

This argument is just silly. In the LSU litigation, Gould admitted that it received the Askarel in the failed transformer in the first quarter of 1972. The only shipments Monsanto made in the first quarter of 1972 arrived on or after the effective date of the Special Undertaking. Moreover, ITE promised to indemnify Monsanto for any claims against Monsanto "arising out of . . . the receipt" of Askarels on or after January 12, 1972. The phrase "arising out of" means "caused by." Gould admits that ITE could not have manufactured the failed transformer without continued shipments of Askarels after the effective date of the Special Undertaking. Thus, post-contract sales had a direct causal connection to the claims against Monsanto, and the LSU litigation arose from such sales.

would have been unable to continue producing PCB transformers. L.F. 74, ¶ 70; L.F. 671, ¶ 70. Gould admits this too. L.F. 671, ¶ 70.

This evidence establishes the requisite causal connection between Monsanto's continued sale of Askarel in 1972 and the claims against Monsanto in the LSU litigation. Without those sales, ITE could not have continued making Askarel transformers, including the one that failed. If ITE had not manufactured that transformer, it could not have failed – and Monsanto would not have been sued. The claims against Monsanto clearly "arose from" ITE's continued receipt and use of Askarel fluids on or after the effective date of the Special Undertaking.

Gould's argument is erroneous even on its own terms. Gould claims that the fluids were intermingled, so that Monsanto cannot differentiate between pre-contract fluids and post-contract fluids in the mixture in the failed transformer. Br. at 23. The Special Undertaking imposes no such obligation. It requires Gould to indemnify Monsanto for claims arising out of the use by ITE of Askarel "whether alone or in combination with other substances." L.F. 89. The possible presence of pre-contract Askarel fluids in the failed transformer does not affect the enforceability of the Special Undertaking.

Gould's theory would deprive the Special Undertaking of any meaning whatever. Gould claims that Monsanto cannot prove that the Askarel in the failed transformer was post-contract, because ITE hypothetically could have segregated pre-contract fluids for use in that transformer.[2] Gould could make the same argument whether ITE

---

[2] As a matter of law, "hypothetical doubts" are "not sufficient to defeat a summary judgment." Student Loan Marketing Ass'n v. Raja, 878 S.W.2d 830, 831 (Mo. App. 1994).

manufactured that transformer months or even years after the effective date of the Special Undertaking. On that hypothetical, the Special Undertaking would never be enforceable. That is directly contrary to the rule that courts "do not favor the destruction of agreements, but will, if feasible, construe agreements so as to carry into effect the reasonable expectations of the parties." Computer Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 674 (Mo. App. 1988).

The only sensible way to read this contract is as Monsanto does: the claim against Monsanto "arises out of" the sale of Askarel to ITE if there is a causal connection between the sale and the claim. Since ITE could not have manufactured the failed transformer without post-contract shipments – a fact that Gould expressly admits – the requisite causal connection is apparent.

Once again, these arguments are not new. Monsanto presented them all to the trial court. Gould evidently believes that all these unpleasant facts will go away if Gould ignores them. Monsanto has clearly proven that the Special Undertaking applies to the LSU litigation, and Gould does not even try to dispute Monsanto's reasons for that conclusion.

## III. The Trial Court Correctly Denied Gould A Jury Trial On The Reasonableness Of Monsanto's Attorneys Fees, Because That Is A Question Of Law For The Court Rather Than A Question Of Fact.

Once the trial court granted Monsanto's motion for partial summary judgment, the only issue left in the case was the reasonable value of Monsanto's attorneys fees and

913 S.W.2d at 62. In the instant case, of course, Gould stands in the shoes of an insurance company; participated in the underlying litigation; and was well aware of its obligations to Monsanto.

Monsanto is entitled to prejudgment interest on its liquidated claim from the date it authorized payment of the bills.

## Conclusion

For these reasons, Monsanto respectfully submits that the Court should affirm the trial court's judgment in full.

Respectfully Submitted,

HUSCH & EPPENBERGER

By:

Mark G. Arnold, #28369
100 North Broadway, Suite 1300
St. Louis, MO 63102
Office: (314) 421-4800
Fax No: (314) 421-0239

Attorneys for Respondent Monsanto Co.

**Certificate Of Service**

The undersigned hereby certifies that two copies of the foregoing brief were mailed, postage prepaid, this 2nd day of ~~June~~ July 1997, to:

Donald L. James, Esq.
Joseph R. Swift, Esq.
T. Michael Ward, Esq.
James A. Harfst, Esq.
Brown & James, P.C.
705 Olive Street, Suite 1100
St. Louis, MO 63101