IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC., <br><br>　　　　　　　Plaintiffs, <br>　　v. <br><br>MAGNETEK, INC., <br>GENERAL ELECTRIC CO., <br>PARAMOUNT GLOBAL, <br>KYOCERA AVX COMPONENTS CORPORATION, <br>CORNELL-DUBILIER ELECTRONICS, INC. <br>And THE GILLETTE COMPANY LLC, <br><br>　　　　　　　Defendants. | Case No.  4:23-cv-00204-HEA <br><br>Jury Trial Demanded |

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY KRAFT HEINZ FOODS COMPANY

Plaintiffs' Complaint seeks relief against defendant The Gillette Company LLC ("Gillette") based on the alleged conduct of P.R. Mallory & Co. Inc. ("Mallory") occurring before 1988. (ECF No. 4, First Amended Petition ¶ 15 (hereinafter "Complaint" or "FAC"); *see also id.* ¶¶ 52, 161-66.)  The Complaint alleges Gillette is the "successor-in-interest to P.R. Mallory & Co. Inc." with respect to this alleged PCB liability. (FAC ¶ 15.) However, most of the responsibility for Mallory's alleged pre-1988 conduct belongs to Kraft Heinz Foods Company ("Kraft Heinz") pursuant to a 1988 Stock Purchase Agreement entered by and between the predecessors of Kraft Heinz and Gillette ("1988 Stock Purchase Agreement"), whereby liability based on the allegations in the Complaint (except any potential liability that pertains to Mallory's legacy batteries business, which may not be at issue in this case) was retained by Kraft Heinz. It was never transferred to

Gillette. Kraft Heinz, therefore, moves to intervene as a defendant in this case in light of its role as the actual "successor-in-interest to P.R. Mallory & Co. Inc." to protect its interest.[1]

## Factual Background

### This Action

In August 2022, Monsanto Company; Pharmacia, LLC, also known as Monsanto Chemical Co., hereinafter "Old Monsanto"; and Solutia, Inc. (collectively, "Monsanto") expanded this action to add Gillette and various other new defendants. Herein, Monsanto seeks indemnity for liability stemming from underlying lawsuits relating to PCBs that Monsanto allegedly manufactured and sold to several companies, including Mallory, at least as early as 1935 until at least as late as 1977. (FAC ¶ 2.) Monsanto asserts, among other things, that Mallory and the Defendants negligently allowed those PCBs to be "released into the environment through products manufactured by Defendants." (*Id*. ¶ 288.)

Additionally, Monsanto alleges that Mallory executed a "Special Undertaking Agreement" in or about 1972 to secure continued supply of PCBs through 1977 and promising, among other things, to defend, indemnify, and hold harmless Monsanto for liabilities, claims, damages, actions, suits, losses, costs, and expenses arising out of the supply of PCBs ("1972 SU"). (*Id*. ¶¶ 3, 4, 97-103.) Monsanto claims that the manufacture and sale of PCB-containing products by Mallory and others caused "The PCB Lawsuits" and damages including "the costs of defending the PCB Lawsuits[,] . . . the amounts paid to settle some of the Food Chain Cases, the amounts paid and/or

---

[1] In the present motion, Kraft Heinz is seeking to intervene, but neither Kraft Heinz nor Gillette is asking Plaintiffs or this Court to dismiss Gillette based on this successor-in-interest issue at this time. At the appropriate time, Gillette will present Monsanto, and, if necessary, the Court, with evidence showing that the limited Mallory battery-related business Gillette obtained in connection with the 1988 Stock Purchase Agreement is a not a source of PCB liability to Monsanto *even if* Monsanto is ever able to state or prevail on a claim against other Defendants in this case.

agreed to be paid to settle some of the Water Cases, the judgments entered in the Sky Valley School Cases, and all other amounts Plaintiffs have reasonably paid and/or agreed to pay to resolve claims . . . ." (*Id.* ¶ 290.)  Monsanto asserts causes of action against all Defendants for breach of contract and declaratory judgment based on the 1972 SUs; and negligence and equitable contribution based on all previously mentioned conduct. (FAC Counts I, II, III, IV, V & VII.)

Plaintiffs' Complaint names Gillette as a defendant as the purported "successor-in-interest to P.R. Mallory & Co. Inc." with respect to claims based on Mallory's business conduct before the Closing date of the 1988 Stock Purchase Agreement. (FAC ¶ 15; *see also id.* ¶¶ 2, 52, 161-166.)

*The 1988 Stock Purchase Agreement*

The 1988 Stock Purchase Agreement effectuated the transfer of the stock of Mallory—then known as Duracell, Inc.—to Gillette's predecessor while retaining for Kraft, Inc. (now Kraft Heinz) responsibility for certain specific Mallory liabilities—some of which are alleged in this case. (**Exhibit A**.)

Several corporate history facts are pertinent. In June 1980, Mallory changed its name to Duracell International, Inc.  Also in 1980, Duracell International, Inc.'s parent, Dart Industries, Inc., became a wholly owned subsidiary of Dart & Kraft, Inc.  In October 1986, Dart Industries, Inc. transferred the stock of Duracell International, Inc. to Dart & Kraft, Inc.  In May 1987, Dart & Kraft, Inc. changed its name to Kraft, Inc.  In 1988, Kraft, Inc. as "Seller" entered into the 1988 Stock Purchase Agreement involving the sale, among other things, of Duracell International, Inc. (f/k/a Mallory) to Duracell Holdings Corporation (the "Buyer," now known as The Gillette Company LLC by subsequent mergers and name change).

Under the 1988 Stock Purchase Agreement, Kraft, Inc. retained responsibility for liability allegedly resulting from the operations and activities of Mallory taking place prior to the 1988

Stock Purchase Agreement's Closing other than liabilities arising out of or relating to the Mallory historic battery business. (*See* **Exhibit A** §§ 1.13, 10.2(b).) As the successor-in-interest of Kraft, Inc., Kraft Heinz stands in the shoes of the "Seller" to the 1988 Stock Purchase Agreement and is the proper party responsible for certain claims based on pre-1988 Mallory non-battery operations. (*Id.*) Kraft Heinz is a Pennsylvania limited liability company with co-headquarters in Pittsburgh, Pennsylvania and Chicago, Illinois. Kraft Heinz's members are Kraft Heinz Intermediate Corporation II and HJH Development Corporation, both of which are Delaware corporations with their principal places of business in Pittsburgh, Pennsylvania. Consequently, Gillette tendered this suit to Kraft Heinz under the 1988 Stock Purchase Agreement. In turn, Kraft Heinz accepted, subject to a reservation of rights, that it is responsible for paying all costs to defend and resolve Plaintiffs' claims involving Mallory's alleged non-battery conduct.

*Argument*

**A.     The Court Should Permit Kraft Heinz to Intervene as of Right under Rule 24(a).**

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) "claims an interest relating to the property or transaction that is the subject of the action"; (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) is not adequately represented by the existing parties. *See* Fed. R. Civ. P. 24(a)(2). A court ruling on a motion to intervene must accept as true all material allegations in the motion to intervene and the motion should be construed liberally, with all doubts resolved in favor of the intervenor. *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 973-74 (8th Cir. 2014) (citations omitted).

As discussed below, application of the above factors weighs conclusively in favor of allowing Kraft Heinz to intervene as of right.

4

**1. Kraft Heinz's Motion is Timely.**

In determining whether a motion is timely, the court considers three factors: "[(1)] the reason for any delay by the proposed intervenor in seeking intervention; [(2)] how far the litigation has progressed before the motion to intervene is filed; and [(3)] how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158-59 (8th Cir. 1995). Prejudice is determined by evaluating "whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *Id*.

Here, looking at the totality of the circumstances, Kraft Heinz's motion to intervene is timely. This case remains in its early stages with discovery still to be started, let alone completed, and no scheduling order has been issued. Monsanto filed its Complaint on August 3, 2022, a summons was not issued until October 20, 2022, and Gillette was not served with the Complaint until November 16, 2022. However, it was not until nearly May 2023 that various parties to the action filed motions to dismiss. (ECF Nos. 82, 85, 87, 90, 92.) The briefing on these motions was not concluded until early August, and the Court has not yet issued any rulings. As such, the motions are still pending. To address its response to the Complaint (*e.g.*, Rule 24(c))—if permitted to intervene—Kraft Heinz proposes to join the previously briefed motions filed by Defendants General Electric Co., Paramount Global, Kyocera AVX Components Corp., Cornell-Dubilier Electronics, Inc., and Gillette (ECF Nos. 90 and 92), as well as the respective replies. Kraft Heinz agrees that the oppositions filed in response to these motions (ECF Nos. 103 and 105) would also apply to it as well.[2] As such, no additional work with respect to those pending motions would be

---

[2] Pursuant to Rule 24(c), Kraft Heinz has submitted a proposed joinder with this filing as set forth in **Exhibit B**.

5

required by any other party or the Court if Kraft Heinz were to intervene.  As there has been no significant case progression, there has been no delay by Kraft Heinz in filing its motion, and no party would be prejudiced by Kraft Heinz's intervention[3], this intervention motion is timely.

### 2. Kraft Heinz Has a Recognized Interest in this Litigation.

As noted above, an applicant for intervention must demonstrate "an interest in the subject matter of the litigation." *Union Elec. Co.*, 64 F.3d at 1161.  That interest may not be "tangential," but rather, must be "substantial" and "legally protectable."  *Id*.  In this case, there can be no question that Kraft Heinz has a substantial, legally protectable interest in this matter, given that it retained responsibility for certain liability allegedly resulting from the operations and activities of Mallory taking place prior to the 1988 Stock Purchase Agreement's Closing, other than liabilities arising out of or relating to the historic Mallory battery business.  (*See* Exhibit A §§ 1.13, 10.2(b).) Given that any liabilities relating to the historic Mallory non-battery business have been retained by Kraft Heinz, it has a substantial interest in protecting itself against the alleged liabilities raised in the Complaint and has an interest in being a party to litigate the claims directly in this case.

### 3. Intervention is Necessary to Protect Kraft Heinz's Interests.

The third showing a proposed intervenor must make is that the disposition of the case might impair its interest.  In the Eighth Circuit, a proposed intervenor need only show that its interest *may* be impaired, not that it undoubtedly would be impaired.  *See Kansas Public Employees Retirement System v. Reimer & Koger Assocs., Inc*., 60 F.3d 1304, 1307-08 (8th Cir. 1995).

---

[3] Nor would adding Kraft Heinz as a defendant disturb this Court's subject-matter jurisdiction over the case.  While federal question jurisdiction applies to this case, even under a diversity analysis, adding Kraft Heinz—a Pennsylvania entity with headquarters in Pennsylvania and Illinois and members with Pennsylvania and Delaware citizenship—would not destroy complete diversity. To the extent necessary, Kraft Heinz further consents to and joins the removal of this action from state court.

Monsanto has erroneously named Gillette as the "successor-in-interest" to *all* of Mallory's pre-1988 liabilities.  As such, Kraft Heinz's interest is similar to that of any defendant, and not being able to assert its own arguments and defenses may impact its ability to protect its rights—leading to potentially significant legal and financial liabilities.  In fact, this litigation will likely seek to determine the rights and obligations of various agreements in which Kraft Heinz allegedly has an interest, including the 1972 SU, and without its involvement Kraft Heinz's rights may be impaired, as such rulings might affect later proceedings through application of *res judicata*, collateral estoppel, or *stare decisis*.  Moreover, as it is likely that Monsanto would add Kraft Heinz at some point in this litigation anyway (*e.g.*, once it fully recognized the history and flow of the relevant corporate liabilities), becoming a party to this action later would impose unnecessary burdens upon Kraft Heinz and the litigation itself.

**4. Kraft Heinz's Interests Cannot Be Adequately Protected by Any Other Party.**

The burden to satisfy the fourth element—the adequacy of the representation of the intervenor's interest by the existing parties—is "minimal." *Kansas Public Employees Retirement System*, 60 F.3d at 1308 (stating that this last "element is met by a minimal showing that representation 'may be' inadequate").

While certainly aligned in many material ways, the interests of Kraft Heinz are not fully represented by any of the Defendants, including Gillette.  All liabilities relating to the pre-1988 Mallory non-battery business were transferred to and retained by Kraft Heinz years ago. As a result, Kraft Heinz has the ultimate incentive to defend this claim.  Additionally, permitting the proper putatively responsible party to defend the case directly will better facilitate the conduct of this litigation.  Kraft Heinz's predecessors were the former owners of Mallory during time periods relevant to this lawsuit, and Kraft Heinz, if anyone, may have any surviving records regarding

7

historic pre-1988 Mallory non-battery operations in its possession, custody, or control. (Although given the 40- to 80-year-old time periods at issue in the Complaint, the present survival of documents would likely be limited.) Therefore, to the extent documents still exist now many years later, Kraft Heinz would potentially have greater access to the historic information relating to Mallory's non-battery business. As such, Kraft Heinz is better equipped to aggressively defend this litigation. It also has more reasons to do so. Kraft Heinz has clearly met its burden.

### 5. Kraft Heinz Can Establish Standing.

The Eighth Circuit requires that prospective intervenors under Rule 24(a) have independent Article III standing to litigate their matters in federal court. *United States v. Metropolitan St. Louis Sewer Dist.,* 569 F.3d 829, 833–34 (8th Cir. 2009) ("In our circuit, a party seeking to intervene must establish Article III standing in addition to the requirements of Rule 24(a)"). The standing inquiry requires the litigant to (1) have suffered an injury in fact, (2) establish a causal connection between the injury and the challenged action, and (3) show that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

An alleged injury must be "concrete, particularized, and either actual or imminent." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (internal quotation marks omitted). "The law recognizes economic, non-economic, and indirect economic injuries, for standing purposes." *Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524, 527 (D. Minn. 2006). A prospective intervening defendant may establish an imminent injury sufficient for the purpose of standing by demonstrating that the remedies sought by the plaintiff, if granted, would threaten the prospective intervenor's interests. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir. 2003) (concluding that "[s]uccess by [the plaintiff] in the whole litigation would impair the proposed intervenors' interests," and reversing the district court's denials of the motions to

8

intervene).

Because the remedies sought by Plaintiffs, if awarded, against the successor-in-interest to Mallory could result in a significant monetary judgment for which Kraft Heinz would have ultimate responsibility, Kraft Heinz has a sufficient injury. In light of Kraft Heinz's responsibility for the potential liability allegedly resulting from the non-battery operations and activities of Mallory taking place prior to the 1988 Stock Purchase Agreement's Closing, Rule 24(a) is satisfied, and Kraft Heinz should be permitted to intervene as a defendant in this case as a matter of right.

**B.     Alternatively, The Court Should Permit Kraft Heinz to Intervene Permissively Under Rule 24(b).**

At a minimum, Kraft Heinz should be granted permissive intervention. Permissive intervention is granted where the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S. D. ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). The Eighth Circuit has described intervention as "serv[ing] the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.3d 83, 86 (8th Cir. 1992).

Given that Kraft Heinz has retained potential liabilities resulting from the non-battery operations and activities of Mallory taking place prior to the 1988 Stock Purchase Agreement's Closing, it cannot reasonably be disputed that Kraft Heinz would have a claim or defense that shares a "common question of law or fact" with the main action, especially since Monsanto seeks liability against Mallory's "successor-in-interest." Additionally, permitting Kraft Heinz to

9

intervene and participate in the case will avoid potential piecemeal and duplicative litigation that may otherwise be required to resolve the issues implicating Kraft Heinz's interests that are raised by the instant action. Accordingly, even if the Court disagrees that Kraft Heinz has a *right* to intervene, it should nevertheless *permit* Kraft Heinz to intervene.

## *Conclusion*

Based on the foregoing reasons, Kraft Heinz respectfully requests that the Court grant its Motion to Intervene as a defendant; amend the case caption to reflect Kraft Heinz Foods Company as a defendant; deem the joinder submitted herewith as Exhibit B filed *instanter*; and grant such other, further, and additional relief as the Court deems just and appropriate.

Dated: September 29, 2023

Respectfully submitted,

| BERRY SILBERBERG STOKES PC<br><br>By: */s/ Robert P. Berry*<br>Robert P. Berry, #46236 (MO)<br>16150 Main Circle Drive Suite 120<br>St. Louis, MO 63017<br>(314) 480-5881<br>(314) 480-5884 Fax<br>rberry@berrysilberberg.com<br><br>Attorneys for Kraft Heinz Foods Company | BERRY SILBERBERG STOKES PC<br><br>By: */s/ Robert P. Berry*<br>Robert P. Berry, #46236 (MO)<br>16150 Main Circle Drive Suite 120<br>St. Louis, MO 63017<br>(314) 480-5881<br>(314) 480-5884 Fax<br>rberry@berrysilberberg.com<br><br>Attorneys for The Gillette Company LLC |
|---|---|

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 29, 2023, the foregoing was submitted electronically for filing through this Court's CM/ECF system to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                   */s/ Robert P. Berry*