IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, PHARMACIA, LLC, and SOLUTIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAGNETEK, INC., <br> GENERAL ELECTRIC CO., <br> PARAMOUNT GLOBAL, <br> KYOCERA AVX COMPONENTS CORPORATION, <br> CORNELL-DUBILIER ELECTRONICS, INC. <br> And THE GILLETTE COMPANY LLC, <br><br> Defendants. | Case No. 4:23-cv-00204-HEA <br><br> Jury Trial Demanded |

**REPLY IN SUPPORT OF MOTION TO**
**INTERVENE BY KRAFT HEINZ FOODS COMPANY**

BERRY SILBERBERG STOKES PC
Robert P. Berry, #46236 (MO)
Andrew D. Lamb, #59600 (MO)
16150 Main Circle Drive Suite 120
St. Louis, MO 63017
(314) 480-5881
(314) 480-5884 Fax
rberry@berrysilberberg.com
alamb@berrysilberberg.com

Attorneys for Kraft Heinz Foods Company

**Introduction**

Kraft Heinz Foods Company ("Kraft") seeks to intervene because it, and not current defendant Gillette Company LLC, is the actual successor-in-interest to P.R. Mallory & Co. Inc. ("Mallory") for the alleged liabilities at issue in this suit, including those under the 1972 Special Undertaking (except for liability for Mallory's legacy battery business, which is not at issue). Monsanto Company ("Monsanto")[1] misrepresents the record from prior court proceedings to argue that Kraft supposedly did not retain such alleged liability. *Monsanto is 100% factually wrong, as demonstrated below, but regardless this Court need not decide that question now because it must accept as true all of Kraft's allegations in its Motion under Rule 24's deferential pleading standards*. This Motion is timely, necessary, non-prejudicial, and offers the most accurate and practical way to promptly bring the correct Mallory-legacy party before this Court.

**A.      Monsanto Ignores The Standard On A Motion To Intervene**

Under Eighth Circuit law, this Court "must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor." *Nat'l Parks Cons. Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 973 (8th Cir. 2014). This is identical to the standard applied to a motion to dismiss. *Id.*; *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of St. Louis*, 894 F.3d 959, 965 (8th Cir. 2018); *Glenn Golden v. Stein*, 2021 WL 3087861, at *6 (S.D. Iowa Feb. 3, 2021) ("the court 'must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor.'")

Therefore, this Court must accept as true the material allegation that, as the successor by merger and name change of Kraft, Inc., Kraft Heinz Foods Company stands in the shoes of the

---

[1] Monsanto filed an Opposition to Kraft's Motion to Intervene. (ECF No. 125.) The other Plaintiffs, Pharmacia, LLC and Solutia, Inc., state no objection to the Motion.

1

"Seller" to the 1988 Stock Purchase Agreement ("1988 SPA") and is the proper party responsible for certain claims alleged in the Complaint (to the extent Plaintiffs can ever tie their claims to PCBs at those Mallory operations). Once the Court properly relies upon such allegations, Monsanto's arguments against intervention based on Kraft merely being a supposed "contractual indemnitor" have no support.

**B.     Kraft Retained Liabilities Relating To The Historic Mallory Non-Battery Business**

Under the standard set forth above, the Court need not decide this issue in order to grant this Motion. Nonetheless, Kraft sets forth the relevant corporate history below for the Court's understanding in light of Monsanto's incorrect assertions and accusations in its Opposition.

    **1.   Under The 1988 SPA, Kraft Retained Liabilities Arising From Mallory's Pre-1988 Business Operations And Rights To Insurance Covering Those Liabilities**

Monsanto's Opposition rests on the incorrect premise that Kraft is merely Gillette's "indemnitor" with respect to alleged liabilities that Plaintiffs claim belong to Gillette as successor to Mallory. But this mischaracterization of the 1988 SPA between Kraft's and Gillette's predecessors, among other transactions, is belied by the corporate documents, decades of court rulings, sworn testimony, expert analysis, and repeated statements by Kraft and Gillette themselves, both of whom have engaged in a long course of dealing based on their mutual and correct understanding that Kraft, as Mallory's former owner, retained and is responsible for Mallory's pre-1988 non-battery business liabilities. The terms of the 1988 SPA confirm this intention, *which has already been judicially accepted and enforced. See P.R. Mallory & Co., Inc. v. Am. States Ins. Co.*, No. 54C01-0005-CP-00156, 2004 WL 1737489, at *4, *15 (Ind. Cir. Ct. July 29, 2004) (holding that the 1988 SPA reserved for Kraft, Inc. then known as Kraft Foods North America, Inc., its "liability and policy rights" related to certain pre-closing Mallory operations. As described herein, Kraft Heinz Foods Company is the successor by merger and name

change to Kraft, Inc. and Kraft Foods North America, Inc.)

Far from creating the mere contractual indemnitor relationship Monsanto misstates here, the 1988 SPA acknowledges that Kraft *already possessed* and *intended to retain* certain pre-sale liabilities of Mallory and others, which were expressly defined as "Seller Liability." *See* 1988 SPA § 1.13 (ECF No. 123-1). Kraft's "Seller Liability" included those liabilities of Mallory other than those arising from past, present, or future "Battery Business" operations after the closing. *Id.* The "Buyer" (who was Gillette's predecessor) was required to cooperate with Kraft as needed to enable Kraft to defend against "any" claim "arising out of or relating to any Seller Liability" it retained. *See id.* § 5.1(d). Precisely because Kraft retained the pre-closing Mallory non-battery business liabilities, it also agreed to hold harmless and indemnify the Buyer (now Gillette) against such alleged liabilities if it was ever improperly sued (as here). *See id.* § 10.2(b). To cover its retained Mallory liabilities and any costs of defending and indemnifying the Buyer, Kraft also retained its rights under insurance policies issued to or covering Mallory. *See id.* §§ 5.11(a), 5.11(h).

Thus, the agreement (and clear intention of) of the parties to the 1988 SPA, as long understood by Kraft and Gillette alike, was that Kraft retained pre-sale liabilities arising from Mallory's pre-1988 non-battery business operations and its associated insurance rights, while the Duracell battery business passed on to the Buyer, in whose shoes Gillette now stands.

### 2. The Record And 2004 Decision From The *P.R. Mallory* Environmental Coverage Litigation Confirmed That Kraft Retained Historic Mallory Liabilities

Kraft's allegations here are fully consistent with the litigation history. For example, in 2000, Kraft initiated an insurance recovery action in the name of P.R. Mallory to recover more than $50 million in costs that Kraft paid to remediate sites that were allegedly contaminated by Mallory's historic discontinued non-battery operations. *See P.R. Mallory & Co., Inc. v. Am. States Ins. Co.*, No. 54C01-0005-CP-00156, 2004 WL 1737489, at *1 (Ind. Cir. Ct. July 29, 2004) ("*P.R.

3

*Mallory*"). Kraft sought recovery as an insured under policies issued to or covering Mallory, premised upon *its own legal obligation* to pay for liability allegedly arising from Mallory's historic pre-1988 business operations.

Prior to Kraft and its insurers filing cross-motions for partial summary judgment regarding Kraft's insurance rights, Kraft and Gillette entered into a "Statement of Confirmation of Right to Recovery Under Insurance Policies Issued to or Covering P.R. Mallory & Company, Inc." (the "Statement of Confirmation"), which confirmed their mutual understanding that Kraft possessed its ***own*** insurance rights for its ***own*** historic Mallory liabilities, which it had retained under the 1988 SPA.  Kraft and Gillette agreed, among other things, that: Kraft "sold its ongoing Duracell battery business" in 1988, which Gillette thereafter possessed, but Kraft "remained legally obligated for the liabilities" for "Mallory's capacitor business and discontinued operations" prior to the 1988 closing. (*See* Statement of Confirmation, attached hereto as **Exhibit A**, at 1-2.) Kraft's corporate representative also provided substantial testimony during the *P.R. Mallory* litigation corroborating that Kraft had retained those pre-1988 Mallory liabilities. *See* Aug. 5, 2003 T. Giller 30(b)(6) Dep. Tr. at 37:19-23, 120:4-9, 131:23-132:11 which can be found in *Stoll v. Kraft Foods Global, Inc.*, Case No. 1:09-cv-00364-TWP-DML (S.D. Ind.) ("*Stoll*," ECF No. 137-12). Professor John C. Coates IV of Harvard Law School buttressed these conclusions in his October 2003 expert report, which was filed in the *P.R. Mallory* case. (*See Stoll*, ECF No. 137-8 at ¶¶ 9-12.)  Ruling on certain of those motions, the *P.R. Mallory* court fully agreed that, through these corporate transactions, Kraft had "reserved" pre-1988 Mallory liabilities and insurance rights for those liabilities. *P.R. Mallory*, 2004 WL 1737489, at *4. The court also concluded that Kraft's "satisfaction" of environmental liabilities arising from Mallory's operations "was not voluntary because *Kraft's payment was required by its reservation of liability* and policy rights," among

4

other reasons. *Id.* at *15 (emphasis added).[2]

### 3. The Full History Of The *Stoll* Litigation Confirms The 2004 *P.R. Mallory* Decision's Conclusion That Kraft Retained Mallory's Pre-1988 Non-Battery Business Liabilities

Monsanto here attempts to revise how Kraft, Gillette, and courts have understood and decreed this corporate history for decades by pointing to a misleading, cherry-picked selection of filings from *Stoll v. Kraft Foods Global, Inc.*, No. 1:09-CV-00364-TWP-DML (S.D. Ind.), a class action involving more than 100 families that brought claims against Kraft related to alleged contamination caused by an historic Mallory manufacturing facility in Attica, Indiana. Specifically, Monsanto refers to arguments initially made in one set of summary judgment briefs that were filed in *Stoll* by outside counsel for Kraft who were not involved in the prior *P.R. Mallory* coverage litigation. Those arguments mistakenly attempted to deny that Kraft was responsible for alleged Mallory liabilities related to the Attica, Indiana site.

It appears Monsanto dove half-way into the record of that old case to provide these summary judgment briefs to this Court, but then chose to stop reading. ***If Monsanto had kept reading, it would have learned that this filing was promptly withdrawn, corrected, and abandoned by Kraft's counsel.*** Specifically, Monsanto omits that Kraft's *Stoll* counsel: (1) filed a motion to withdraw those same summary judgment arguments; (2) directly confirmed through amended discovery responses that Kraft is, in fact, "the successor-in-interest for P.R. Mallory's

---

[2] Kraft's pending insurance coverage complaint seeking recovery of costs related to Monsanto's claims in this action fully accords with the foregoing record and rulings in the *P.R. Mallory* action. *See, e.g.*, *Kraft Heinz Foods Company v. ACE Property & Casualty Insurance Company, et al.*, No. 49D01-2309-PL-038476 (Marion Cnty., Ind.), Compl. ¶ 85 ("Under the 1988 Stock Purchase Agreement, Kraft retained and possesses the presently constituted rights and obligations of Mallory's non-battery business, including liability allegedly at issue in the *Monsanto* Suit and insurance rights therefor under the Liability Insurance Policies."); *accord, id.* ¶ 64 (citing *P.R. Mallory*, 2004 WL 1737489, at *4, 11). This complaint is attached hereto as **Exhibit B**.

5

ownership and operation of the Radio Materials facility in Attica, Indiana for the period from 1957 through January 1, 1979"; and (3) promptly settled the *Stoll* litigation, with the court denying all pending summary judgment motions as moot. (*Stoll*, ECF Nos. 152, 153-3, 162). Monsanto blindly relies on subsequently withdrawn and corrected arguments in a prior proceeding in which the court did not rule that anyone other than Kraft is the successor-in-interest for Mallory's pre-1988 non-battery business liabilities.[3]

In sum, (1) Kraft's positions set forth in its Motion to Intervene in this litigation, (2) its positions in the pending Indiana coverage action related to this case, (3) its ultimate positions and the outcome of the *Stoll* case, (4) its positions and the court rulings based on a full record in the earlier *P.R. Mallory* case, and (5) the language of the 1988 SPA and Statement of Confirmation, all fully align with the long-established conclusion that Kraft is not merely an "indemnitor" of Gillette but fully retained for itself the alleged liabilities from Mallory's pre-1988 non-battery

---

[3] Based on their incomplete reading of the *Stoll* case filings, Monsanto argues that Kraft "should be judicially estopped from taking positions regarding its status as a corporate successor to Mallory that are inconsistent with the facts and the briefs in *Stoll*" and cites to *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) in support of this proposition. (Opp'n at 9.) However, the factors enumerated in *Van Horn* demonstrate why judicial estoppel would be inappropriate here. "We look to three factors to determine whether judicial estoppel should apply: (1) whether a party's later position is 'clearly inconsistent' with its previous position; (2) whether the party succeeded in persuading the first court to accept its position; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage ... if not estopped.'" *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (*citing Stallings v. Hussmann Corp*., 447 F.3d 1041, 1047 (8th Cir. 2006) *quoting New Hampshire v. Maine*, 532 U.S. 742 (2001)). The Supreme Court in *New Hampshire* noted that the purpose of the judicial estoppel doctrine is to "protect the integrity of the judicial process." 532 U.S. at 749. In examining the second factor, the Supreme Court stated, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Id*. at 750-51 (internal citations and quotations omitted). Here, not only did Kraft not succeed in persuading the *Stoll* court to accept its position, it affirmatively withdrew that position and, as a result, Kraft's position is also not "clearly inconsistent" in this case. (*Stoll*, ECF No. 152, 153-1.) Lastly, as to the third factor, Kraft would not derive an unfair advantage in this case by claiming to be the actual successor-in-interest to Mallory for the alleged liabilities at issue in this suit.

business operations (and associated insurance rights).

### 4. Kraft Heinz Foods Company Is The Successor To Kraft, Inc., The Party To The 1988 SPA

Finally, Monsanto asserts that even if some Kraft entity retained the Mallory liabilities, it is not Kraft Heinz Foods Company (the proposed intervenor here) that possesses them today. Again, this is not true (and contrary to the allegations here anyway so the Court need not decide this question now). As a matter of contract and law, Kraft Heinz Foods Company, in fact, possesses the foregoing rights and liabilities that Kraft, Inc. retained as the "Seller" under the 1988 SPA, based on the following corporate history since that agreement was entered:

- On or about December 29, 1989, Kraft, Inc. merged with General Foods, Inc., another Delaware company, with the surviving entity being Kraft General Foods, Inc. *See* June 27, 2013 Delaware Certification of various Kraft corporate history facts attached hereto as **Exhibit C**.

- On or about January 4, 1995, Kraft General Foods, Inc. changed its name to Kraft Foods, Inc., which remained a Delaware corporation. *Id.*

- On or about March 12, 2001, Kraft Foods, Inc. (DE), changed its name to Kraft Foods North America, Inc. *Id.*

- On or about March 19, 2004, Kraft Foods North America, Inc. changed its name to Kraft Foods Global, Inc. *Id.*[4]

- On or about March 16, 2012, Kraft Foods Global, Inc., previously a Delaware corporation, re-domesticated and converted itself to Kraft Foods Group, Inc., a Virginia corporation. At that time, Kraft Foods Group, Inc. was a subsidiary of a Virginia corporation named Kraft Foods, Inc. (originally incorporated as Kraft Holdings Virginia Inc. in 2000, and different from the Delaware Kraft Foods, Inc. referenced above). *See* March 12, 2012 Virginia Articles of Domestication and Articles of Incorporation of Kraft Foods Group, Inc. attached hereto as **Exhibit D**.

---

[4] Kraft Foods North America, Inc. is the entity that filed the above-referenced successful motions for partial summary judgment in the *P.R. Mallory* litigation against certain insurers that issued policies to or covering Mallory. *See* 2004 WL 1737489, at *1. Following the 2004 name change, proceedings in that case continued with Kraft Foods Global, Inc. as a named plaintiff. *See P.R. Mallory & Co., Inc. v. Am. Cas. Co. of Reading, Pa.*, 920 N.E.2d 736 (Ind. Ct. App. 2010).

- On or about October 1, 2012, Kraft Foods, Inc. (VA) spun off its North American grocery business, Kraft Foods Group, Inc. to its shareholders. *See* September 26, 2012 Articles of Restatement of the Articles of Incorporation of Kraft Foods Group, Inc. attached hereto as **Exhibit E**.

- In July 2015, through a series of transactions, Kraft Foods Group, Inc. merged with and into Kraft Heinz Foods Company (formerly known as H.J. Heinz Company), a Pennsylvania corporation. *See* **Exhibits F-I** hereto.

As a result, Kraft Heinz Foods Company is the successor by merger and name change to Kraft, Inc., and stands in Kraft, Inc.'s shoes as the "Seller" under the 1988 SPA. That is what is alleged; and that is what is true. Kraft thus possesses pertinent alleged pre-1988 Mallory non-battery business liabilities and is the proper party for intervention in this action.

**C.     Kraft's Motion Is Timely**

Monsanto argues that the Motion to Intervene is untimely in light of what it claims is a five- to seven-month "delay" in filing. But, as a matter of law, the Eighth Circuit does not focus on any particular length of time. "Whether a motion to intervene is timely is determined by considering all the circumstances of the case." *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993). The Eighth Circuit has recognized that "[n]o ironclad rules govern this determination," *id.*, and has delineated several factors that courts consider, including any prejudice that the intervention may cause, how far the litigation has progressed before the motion is filed, and the reason for the proposed delay in seeking intervention. *See id*. (citing *Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985)). These factors must be analyzed on a case-by-case basis.

The Eighth Circuit's broad flexibility in granting intervention is evident in *Mille Lacs*. In that case, landowners filed their motion to intervene eighteen months after the suit had commenced and nine months after the deadline for filing motions to add parties. 989 F.2d at 999. The Court observed that even though the proposed intervenors had received ample notice of the lawsuit and

that the issues involved in the case could affect their land rights, it emphasized that the underlying litigation had not progressed to such a point that the proposed intervention would have delayed the trial or otherwise prejudiced any of the parties. *Id*. Accordingly, the Court ruled that the motions to intervene should have been granted and held that the District Court's denial of the motion to intervene as untimely was an abuse of discretion. *Id.*

Here, this case has progressed even less than the *Mille Lacs* case, and remains in its infancy. In fact, it has not yet progressed *at all.* No scheduling order has been issued, no discovery has commenced, and the Court has not ruled on any pending motions. This is not a "ninth-inning-with-two-outs intervention attempt" disfavored by the Eighth Circuit. *See, e.g.*, *Mille Lacs*, 989 F.2d at 999. ("Although a substantial time passed between the commencement of the suit and the landowners' motion to intervene, the legal proceedings were still at a preliminary stage."); *Hadley v. Isanti County*, 2015 WL 13697929, *7 (D. Minn. Nov. 18, 2015) ("The fact that the parties have only recently commenced discovery indicates that it is not likely that Plaintiff or the Defendants would be prejudiced should the Court grant the motion to intervene, and weighs strongly in favor of the motion being timely.")

Nor has this case proceeded to a point that intervention would cause delay or prejudice any of the parties. This is not a case like *U.S. v. Ritchie Special Credit Investments, Ltd*., 620 F.3d 824 (8th Cir. 2010). In *Richie*, the proposed intervening party (who was a creditor) initially moved to intervene on certain grounds after the issuance of an injunction. *Id*. at 829. In light of various other rulings, the creditor then filed a second motion to intervene seeking to attack the original injunction based on issues that could have been raised in the first motion. *Id*. at 830-31. Unlike here, the litigation proceedings in *Ritchie* were "frequent and fervent" and numerous court orders were already issued. *Id*. at 832. Finally, the Court in *Ritchie* found that the party's interests as a creditor

9

were also adequately protected by its participation in another related action. *Id*. at 834. None of the facts that existed in *Ritchie* exist here.

Seeking to bolster its timeliness argument, Monsanto cites a handful of cases with various snippets concerning timeliness – but when the facts of those cases are analyzed it is manifest that none support a conclusion of untimeliness here. *See, e.g., In re Wholesale Grocery Prod. Antitrust Litig.*, 849 F.3d 761, 767-68 (8th Cir. 2017) (refusing to permit putative class member to intervene as a plaintiff years into the action where class certification had already been denied, where intervenor could not be bound by the outcome, and where substantial litigation had ensued – including significant discovery, motions for summary judgment, class certification, and multiple appeals); *St. Charles Tower, Inc. v. Cnty of Franklin*, 2009 WL 3852462, at *1-2 (E.D. Mo. Nov. 17. 2009) (denying intervention where intervenors sought to intervene *after* parties had resolved the litigation and submitted a consent judgment for the Court's approval); *Glenn Golden v. Stein*, 2021 WL 3087861, at *5-6 (S.D. Iowa Feb. 3, 2021) (***granting*** motion to intervene even on the eve of trial, and explaining that the intervenor raised questions (including who the real party in interest was) that the Court found should be resolved before the expense of a trial).

*Despite Monsanto's failure to identify any prejudice to it at all*, Monsanto claims that Kraft has not adequately justified the short, few months' time it took to seek intervention in this case. But Kraft's timing in filing this Motion was a result of reasonable factors. As Monsanto itself concedes, Kraft did not even receive notice of the action until February 2023 and only accepted tender of Gillette's defense in late April 2023. Below counsel entered his appearance for Gillette in the case on May 1, 2023. As the Court is fully aware, Plaintiffs' operative complaint for indemnity against Gillette as the purported successor-in-interest of Mallory is exceedingly complex on its face and, in fact, expressly incorporated by reference (through its Exhibit 8) nearly

10

100 separate and additional product lawsuits. (ECF No. 4-8.) Through subsequent letters, Monsanto's tenders to Gillette ballooned to over 250 such lawsuits – all of which contain many years of court filings and records and all of which needed to be reviewed to determine if and/or whether Mallory's legacy battery or non-battery conduct was at issue in each suit to assess potential liability retained under the 1988 SPA. This review process was a Herculean and time-consuming effort. (Plaintiffs, of course, were already fully familiar with these proceedings as they have been a party in some cases for decades *without ever tendering any such cases to Gillette or Kraft*. They did nothing to make this review process easier or more efficient.)

Thereafter, in mid-June, the named parties engaged in a mediation. While that mediation did not resolve this action, this process required time and, in light of a possible resolution of the action, intervention did not make sense at the time anyway. Thereafter, below counsel has been forced to address ongoing discovery Monsanto directed to Gillette in separate actions in New Jersey, Vermont, Delaware, Illinois, and Washington. Throughout that time, counsel diligently continued its investigations into the underlying tendered PCB lawsuits and the extensive corporate history of Kraft and Gillette (including the transactional and litigation history set out above) before filing this Motion to Intervene in this case on September 29, 2023.

There were only 4 months and 28 days between below counsel's entry of appearance in this case and the filing of the Motion to Intervene. Given the extensive and above-listed work that needed to be completed, which does not even account for the investigation of Kraft's own corporate transaction history, the passage of a few months was not only reasonably justified but fully necessary. Monsanto has not cited a single case in its infancy (like this one) where intervention was denied merely because the Court found the explanation for the timing of filing the intervention motion insufficient. Every case Monsanto cited evaluated the totality of the

11

circumstances, and still other cases not cited by Monsanto (often in their infancy) demonstrated situations where the Court has little concern over the explanation or found such fact to be less significant. *See, e.g.*, *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) (reversing denial of intervention, even where intervenor's explanation was "belied" by various evidence because the case was in its infancy and there was no prejudice); *Innova Specialties Inc. v. Parnell Laboratories (AUST) Pty, Ltd*., 2010 WL 2757287, at *2 (E.D. Mo. July 12, 2010) (granting intervention motion and stating that "[a]lthough Parnell Tech has not explained the six-month delay between its intention to file a motion to intervene and it doing so, the Court finds the motion timely"). As there has been no significant case progression here, there has been no prejudicial delay in filing this Motion and no party would be prejudiced by Kraft's intervention. The Court, respectfully, should find the intervention Motion is timely.

**D.     Kraft Met The Requirements of Rule 24(a)**

     **1. Kraft Has A Recognized Interest In This Litigation**

An applicant for intervention must demonstrate "an interest in the subject matter of the litigation." *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id*. at 1162 (internal quotations and citations omitted). Other than incorrectly mislabeling Kraft as a mere indemnitor, Monsanto does not dispute that if Kraft retained any liability *vis-à-vis* the 1988 SPA it would have a recognized interest in this litigation. Consequently, given that any liabilities relating to the historic Mallory pre-1988 non-battery business have been alleged to be retained by Kraft, *see supra* § A (and as explained herein were in fact retained by Kraft, *see supra* § B), Kraft has a substantial interest in protecting itself against the alleged liabilities raised in the Complaint and has an interest in directly

12

litigating this case as a party.

### 2. Intervention Is Necessary To Protect Kraft's Interests

Monsanto contends it is not certain Kraft's interests would be impaired without intervention, but once again Monsanto ignores the relevant legal standard. Rule 24(a) requires only that the interest "*may* as a practical matter be impaired by the present litigation." *See Union Elec. Co.*, 64 F.3d at 1167 (emphasis added). The impairment need not be a certainty. *Kansas Pub. Emps. Retirement Sys. v. Reimer & Kroger Assocs., Inc.*, 60 F.3d 1304, 1307-08 (8th Cir. 1995). Here, the remedy requested by Plaintiffs in their Complaint is to impose significant liability on the successor-in-interest to Mallory. This litigation will likely seek to determine the rights and obligations of various agreements in which Kraft allegedly has an interest, including the 1972 Mallory SU, and without its involvement Kraft's rights may be impaired, as such rulings might affect later proceedings through application of *res judicata*, collateral estoppel, or *stare decisis*. This is sufficient, and Kraft has adequately demonstrated this action may as a practical matter impair or impede its interests.

### 3. Gillette Cannot Adequately Protect Kraft's Interests

Consistent with the liberal policy favoring intervention, the requirement of inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Berger v. N. Car. State Conf. of NAACP*, 142 S. Ct. 2191, 2204 (2022) ("a movant's burden" to show inadequate representation is "minimal."). This element is evaluated by "comparing the interests of the proposed intervenor with interests of the current parties to the action, and intervention is appropriate if the interests are disparate, even if they share the same legal goal." *Animal Prot. Inst. v. Merriam*, 242 F.R.D. 524, 528 (D. Minn. 2006) (*citing Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992)). While

13

both parties may be similarly interested in defeating the liability alleged in the Complaint, such similarity is insufficient here. As the Supreme Court confirmed, where parties' interests do not "overla[p] fully," there is no presumption of adequate representation. *Berger*, 142 S. Ct. at 2204. Because Kraft's and Gillette's interests do not "overlap fully," Kraft's burden is minimal.

Seeking to avoid this easily met burden, Monsanto cites numerous inapplicable and fundamentally different cases. For example, Monsanto cites *Arrow v. Gambler Supply*, 55 F.3d 407 (8th Cir. 1995) for the assertion that adequate representation is presumed "when the prospective intervenor's interest is identical to that of an existing party." (Opp'n at 11-12.) In *Arrow*, the court found the interests identical because not only were the parties on the same side, but the intervenor's "interests are literally identical with the Tribe's because 25 U.S.C. § 81 requires an equal distribution between them of any amount recovered." *Id.* at 410. Here, however, Monsanto has made no such showing and merely assumes Kraft's interest is identical to Gillette's as an indemnitor. As Monsanto's assumption runs contrary to Kraft's allegations and the facts (*see* supra §§ A, B), Monsanto has not shown that Gillette and Kraft have "identical" interests. And because Gillette is not the successor-in-interest for the Mallory's pre-1988 non-battery business, its incentive is to focus on that fact – arguing it has no liability for *anything* in this case – and it has less of an incentive to parse out the meaning, application, and history of the 1972 SU and other alleged grounds for pre-1988 Mallory liabilities. In short: Kraft and Gillette have different incentives to focus on different arguments in this case.

Monsanto's other cases fare no better. For example, *Little Rock Sch. Dist. v. N. Little Rock Schl. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) involved a presumption that a government agency will adequately represent the public. ("We presume that the government entity adequately represents the public."). There are no such government agencies here. Monsanto then cites *Arnold*,

14

*Haddley*, and *Blake* for the position that an indemnitor's interest is adequately represented by an indemnitee. Even presuming such cases stand for such proposition, they do not apply here because Kraft is not a mere indemnitor. (*See supra* § B.1.) It has its own interests. Moreover, the Ninth Circuit's 1977 decision in *Blake*, which discounts the application of *stare decisis* in the intervention analysis, conflicts with Eighth Circuit precedent, which states that "[the intervenor] need not show that, but for its intervention, its interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather only that its interest '***may be***' so impaired." *See*, *e.g.*, *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308 (8th Cir. 1995) (emphasis added).

Similarly, *United Fire & Cas. Co. v. Titan Contractors Serv. Inc.*, 2012 WL 3065517 (E.D. Mo. July 27, 2012), does not apply. *United Fire* involved an insurance dispute between the insurance company and the insured that was a defendant in an underlying personal injury action. The plaintiffs in the underlying action, which involved injuries allegedly suffered by Titan's negligence, sought to intervene in the declaratory judgment action to determine if United Fire had a contractual obligation to indemnify Titan in the underlying lawsuit. *United Fire & Cas. Co. v. Titan Contractors Serv. Inc.*, 2014 WL 4851801, at *3 (E.D. Mo. Sept. 29, 2014). The court held that the "virtual[ ] nonexisten[ce]" of common factual questions and the presence of entirely different issues of law militated against intervention. *Id*. The court also found the fundamental problem with the motion to intervene was "movants seek to intervene to step into Titan's shoes and defend against its insurer, United Fire, not to assert their own claims or defenses." *Id*. Consequently, the court indicated that the co-defendant had not met its burden to show inadequate representation by the insured. *Id*. That is not the case here.  Kraft seeks to assert its own defense to the liability alleged against the successor-in-interest to Mallory alleged in the Complaint.

15

Finally, *Union Cent. Life Ins. Co. v. Hamilton Steel Prod. Inc*., 374 F.2d 820 (7th Cir. 1967) addressed a situation where a Union sought to intervene because its members were already litigants. The court found that the "appropriate officers and agents of the Union have been sued in their representative capacities and indeed are represented by the same counsel as the Union. There has been no showing by the Union why these representatives cannot adequately represent the Union's interests." *Id*. at 823. Here, however, the relationship between Gillette and Kraft is not remotely equivalent to that between a Union and its officers or agents.

Nor does Kraft's ability to control Gillette's defense or the use of common counsel render Kraft's intervention unnecessary. These are still unique entities with unique interests. Gillette and Kraft are differently situated here because Gillette's position is that the limited Mallory battery-related business it obtained under the 1988 SPA is not a source of PCB liability to Monsanto *even if* Monsanto is able to state or prevail on a claim against other Defendants. Meanwhile, Kraft's position is that while the claims in the Complaint take aim at Mallory liability that it retained under the 1988 SPA, no such liability can or will be proven. While Kraft is aligned with many of the Defendants, that does not mean its interests are fully and completely represented by any other Defendant, including Gillette. Ultimately, as the holder of the relevant potential liability, Kraft is better equipped to aggressively defend this litigation. Kraft has clearly met its burden.

### 3.     **Kraft Can Establish Standing**

As set forth in Kraft's Memorandum, because the remedies sought by Plaintiffs against the successor-in-interest to Mallory, if awarded, could result in a significant monetary judgment for which Kraft would have ultimate responsibility, Kraft has a sufficient injury to establish Article III standing. (Mem. at 8-9.) Monsanto only claims the Court should reject these allegations because Kraft "is not the entity on the hook" for liability. (Opp'n at 13.) However, as explained herein,

16

Kraft adequately alleged and demonstrated that under the 1988 SPA, its predecessor, Kraft, Inc., retained responsibility for liability allegedly resulting from the non-battery business operations and activities of Mallory taking place prior to the 1988 SPA's Closing and has, therefore, adequately demonstrated standing.

**E.     Alternatively, The Court Should Permit Kraft To Intervene Under Rule 24(b)**

If the Court denies Kraft's request for intervention under Rule 24(a)(2), it should nevertheless exercise its discretion to grant permissive intervention under Rule 24(b)(1)(B). Monsanto does not dispute that there are common issues of law and fact between Kraft's defense and Plaintiffs' claims. Monsanto contends only that allowing Kraft to intervene would potentially lead to other motions to intervene by other indemnitors or insurers. Neither argument succeeds.

First, "[t]he principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S. D. ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). The Eighth Circuit has described intervention as "serv[ing] the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.3d 83, 86 (8th Cir. 1992). Permitting Kraft to intervene and participate in the case would avoid potential piecemeal and duplicative litigation that may otherwise be required to resolve the issues implicating Kraft's interests that are raised by the instant action.

Second, Monsanto's claim that it would be prejudiced due to duplicative arguments and expansion of issues is based on factually distinguishable cases. (Opp'n at 14-15.)[5] *See Allied World*

---

[5] Monsanto's position is inconsistent. When it suits Monsanto, it argues Kraft will merely bring duplicative arguments and therefore intervention should be denied. At other times Monsanto claims the issues would be different and expansive and, therefore, intervention should be denied. Monsanto cannot have it both ways.

17

*Specialty Ins. Co. v. City of Ferguson, Missouri*, 2019 WL 8014407 (E.D. Mo. Aug. 8, 2019) (denying intervention in an insurance coverage case based on the same reasons set forth in *United Fire & Casualty Company v. Titan Contractors Service, Inc.*); *Jiang v. Porter*, 2016 WL 4415352 (E.D. Mo. Aug. 19, 2016) (denying permissive intervention and explaining that "[i]n their motion, the putative intervenors merely recite arguments the SNAP defendants have repeatedly presented ***that the Court has repeatedly rejected***.") Here, Kraft does not simply seek to intervene to parrot the arguments that Gillette might make or to raise arguments that this Court has already rejected (because there are none). In fact, Gillette is going to make separate arguments – including that Plaintiffs have erroneously named Gillette as the "successor-in-interest" to *all* of Mallory's pre-1988 liabilities.

Accordingly, even if the Court disagrees that Kraft has a *right* to intervene, it should nevertheless *permit* Kraft to intervene.

## Conclusion

For the reasons set forth herein and as set forth in their Motion to Intervene, Kraft and Gillette respectfully request that their joint Motion to Intervene be granted.[6]

---

[6] Monsanto's characterization of Paramount Global and General Electric's Motion to Reopen Solutia's Chapter 11 Case, and Gillette's Joinder thereto as "an ill-fated attempt" is inaccurate. While the Bankruptcy Court declined to reopen the Solutia bankruptcy and abstained in deference to this Court, it provided this Court with substantial guidance on the impact of choices made by Solutia in its bankruptcy case. Specifically, in Chief Judge Glenn's August 23, 2023 Opinion, the Bankruptcy Court concluded that the arguments that "Solutia is precluded from enforcing the SUAs" because (1) "the SUAs are executory contracts that were rejected under the terms of the [reorganization] Plan," and (2) "even if the SUAs were not executory contracts, Solutia failed to disclose the SUAs as assets and is thus judicially estopped from enforcing them" were not without merit. *In re Solutia*, 653 B.R. 99, 121 (Bankr. S.D.N.Y 2023). The Bankruptcy Court noted that there appeared to be no dispute that "if they SUAs were executory contracts they were rejected under the Plan and would not be enforceable." *Id*. at 121. Further, the Bankruptcy Court found Solutia's argument "that it reserved causes of action via its general reservation of rights" to be "unavailing." *Id*. at 124. The Bankruptcy Court stated that "while Solutia may be able to wordsmith the Plan into a colorable argument that they preserved causes of action, it is not the

Dated: October 23, 2023

Respectfully submitted,

| | |
|---|---|
| BERRY SILBERBERG STOKES PC<br><br>By: */s/ Robert P. Berry*<br>Robert P. Berry, #46236 (MO)<br>Andrew D. Lamb, #59600 (MO)<br>16150 Main Circle Drive Suite 120<br>St. Louis, MO 63017<br>(314) 480-5881<br>(314) 480-5884 Fax<br>rberry@berrysilberberg.com<br>alamb@berrysilberberg.com<br><br>Attorneys for Kraft Heinz Foods Company | BERRY SILBERBERG STOKES PC<br><br>By: */s/ Robert P. Berry*<br>Robert P. Berry, #46236 (MO)<br>Andrew D. Lamb, #59600 (MO)<br>16150 Main Circle Drive Suite 120<br>St. Louis, MO 63017<br>(314) 480-5881<br>(314) 480-5884 Fax<br>rberry@berrysilberberg.com<br>alamb@berrysilberberg.com<br><br>Attorneys for The Gillette Company LLC |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2023, the foregoing was submitted electronically for filing through this Court's CM/ECF system to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Robert P. Berry*

---

case that the Movant's claim that the causes of action were not specifically preserved is totally without merit." *Id.* at 125. The import of the Bankruptcy Court's ruling boils down to two main edicts: First, that *this* Court should decide, utilizing the substantial guidance from Chief Judge Glenn, whether the SUs survived the Solutia bankruptcy, arguments that will be presented to this Court at the first appropriate opportunity and, second, that these defenses "have merit." *See id.* at 123. As such, the Motion to Reopen and Gillette's joinder thereto were certainly not "ill-fated" and, ultimately, Monsanto is going to be barred by the doctrines of *res judicata* and judicial estoppel from asserting claims under the SUs.