UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:23-CV-00204-HEA |
| MAGNETEK, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**MONSANTO'S SUR-REPLY IN FURTHER OPPOSITION TO
KRAFT HEINZ FOODS COMPANY'S MOTION TO INTERVENE**

Nothing in KHFC's overlength reply brief supports the conclusion that KHFC should be allowed to intervene in this case. KHFC does not dispute the Mallory corporate history detailed by Monsanto. Nor does KHFC address Monsanto's argument that the indemnitor-indemnitee relationship created by the 1988 SPA is insufficient to support intervention. Instead, KHFC says the Court should rule in its favor because the prior statements Kraft Global made in *Stoll* about its relationship with Mallory were "mistaken," and the legal standard under Fed. R. Civ. P. 24 requires the Court to accept KHFC's incorrect legal conclusions about the 1988 SPA. KHFC's position is misplaced and should be rejected for three interrelated reasons.

1.  <u>The Court Should Not Accept KHFC's Incorrect Legal Conclusions</u>. KHFC leans heavily on the legal standard for Rule 24 in its Reply. Reply In Support Of Motion To Intervene By KHFC (ECF #128) at 1-2 ("KHFC Reply").[1] The glaring flaw in KHFC's argument is that its request to intervene hinges on the incorrect and unsupported legal conclusion that it "is the proper party responsible for certain claims alleged in the Complaint" under the 1988 SPA. *Id.* at 2.

---

[1] Unless noted otherwise, all terms are used as defined in Monsanto's Response in Opposition To KHFC's Motion To Intervene (ECF #125). Citations to exhibits and other previously-filed documents refer page numbers in the document—not file-stamped page numbers at the top of each page.

- 1 -

Although this Court must accept as true all well-pleaded factual allegations, it need not (and should not) accept KHFC's incorrect and unsupported *legal conclusions* regarding the 1988 SPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint ***is inapplicable to legal conclusions***.") (emphasis added); *Retro Television Network, Inc. v. Luken Communic'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012) ("Courts must accept a plaintiff's factual allegations as true but ***need not accept a plaintiff's legal conclusions***.") (emphasis added); *U.S. ex rel. Paulos v. Stryker Corp.*, No. 11-0041-CV-W-ODS, 2013 WL 2666346, at *14 (W.D. Mo. June 12, 2013) ("Plaintiff's allegation that Orthofix is Breg's successor in interest is a legal conclusion that *Iqbal* and *Twombley* [sic] dictate is not entitled to a presumption of correctness.") *aff'd*, 762 F.3d 688 (8th Cir. 2014).

2.  <u>The 1988 SPA Does Not Say What KHFC Says It Does</u>.  The key issue here is the legal effect of the 1988 SPA.  KHFC now claims that the 1988 SPA "acknowledges that [KHFC] already possessed and intended to retain certain pre-sale liabilities of Mallory."  KHFC Reply (ECF #128) at 3 (emphasis removed).  But KHFC does not point to *any* language in the 1988 SPA that actually says this.  KHFC also fails to explain how Kraft, Inc. purportedly "already possessed" liabilities of Mallory.  Nor can it.  At the time of the 1988 SPA, Mallory (then known as Duracell International) was an independent company and indirect subsidiary of Kraft, Inc.  There is nothing in Mallory's corporate history that establishes Kraft, Inc. ever merged with Mallory or otherwise expressly or impliedly assumed any of Mallory's liabilities, much less Mallory's obligations and liabilities under the Mallory Special Undertaking Contract.

KHFC points to Sections 1.13, 5.1(d), 10.2(b), and 5.11(a) and (h) of the 1988 SPA to support its position.  But none of those sections say anything about possession, assumption, or

retention of historic Mallory liabilities by Kraft, Inc. Section 1.13 provides a definition of the term "Seller Liability" "[a]s used in [the 1988 SPA]." *See* 1988 SPA (ECF #123-1) at 5-7, § 1.13; *id.* at 2, Art. I. The definition does not include *any* language expressly or impliedly stating that Kraft, Inc. "already possessed" any Mallory liabilities, or assumed or retained any Mallory liabilities as part of the transaction. KHFC Reply (ECF #128) at 3. To the contrary, the plain language of Section 1.13 makes clear that Kraft, Inc. only "retained or assumed" certain "Seller Liability" relating to pension plans, welfare plans, and taxes as part of the transaction. *See* 1988 SPA (ECF #123-1) at 5-7, § 1.13(iii) (defining "Seller Liability" to include "any Covered Business Liability to the extent that such Covered Business Liability . . . (iii) is **retained or assumed** by [Kraft, Inc.] in Sections 6.4, 6.5, or 7.3" of the 1988 SPA) (emphasis added); *id.* at 71-72, § 6.4 ("Except as provided in Section 6.6, Seller shall **retain** all assets and liabilities accrued through the Closing Date under the U.S. Company Pension Plans . . . .") (emphasis added); *id.* at 72, § 6.5 ("Seller shall **retain** all assets relating to the U.S. Company Employee Benefit Plans . . . .") (emphasis added); *id.* at 84, § 7.3 ("Seller shall **be liable for** . . . ." certain tax liabilities) (emphasis added).[2]

The other sections cited by KHFC also support Monsanto's position that KHFC is an indemnitor of Gillette. As KHFC admits in its Reply (and in *Stoll*), Section 10.2(b) requires KHFC to "indemnify and hold harmless [Gillette] . . . from and against (i) any and all Seller Liabilities incurred by or asserted against [Gillette]." *Id.* at 112, § 10.2(b); *see also* KHFC Reply (ECF #128)

---

[2] The fact that the 1988 SPA contains provisions stating Kraft, Inc. expressly retained and/or assumed certain "Seller Liability" (i.e., liabilities relating to pension plans (§ 6.4), welfare plans (§ 6.5), and taxes (§ 7.3)), but is silent as to the purported possession, assumption, or retention of other "Seller Liabilities" (i.e., historic Mallory liability) completely undermines KHFC's position. *See W. Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 40 N.E.3d 194, 205 (Ill. App. 2015) (applying "the maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)"); 1988 SPA (ECF #123-1) at 116, § 12.2 (applying Illinois law); *id.* at 116, § 12.3 (stating SPA is "entire agreement" and there are "no agreements [or] understandings . . . other than those set forth or referred to herein").

at 3.³  Section 5.1(d) requires Gillette to "cooperate" with KHFC "in the preparation for and prosecution of the defense of any claim, action or cause of action arising out of or relating to any Seller Liability" ***"[s]ubject to the provisions of Section 10.3***."  1988 SPA (ECF #123-1) at 42, § 5.1(d) (emphasis added).  Section 10.3 of the 1988 SPA sets forth the procedure for when Gillette seeks indemnity from KHFC under Section 10.2(b) for a claim made by a third party.  *See id*. at 113-14, § 10.3.  Finally, Section 5.11 of the 1988 SPA sets forth Gillette and KHFC's respective rights and obligations with regard to making claims and receiving proceeds of insurance policies that cover claims that arise out of occurrences prior to the closing of the transaction.  *See id*. at 57-62, § 5.11.

In short, the Court should reject KHFC's legal conclusions about KHFC's status as successor to Mallory.  Nothing in the 1988 SPA supports KHFC's position.  The clear intention of the parties to the 1988 SPA was to transfer 100% of the stock in Duracell, Inc. to Duracell Holdings with Kraft, Inc. bearing ultimate *financial* responsibility for any "Seller Liability" by way of the *indemnification* obligations in Section 10.2(b).  Being an indemnitor of Gillette for "Seller Liability" under the 1988 SPA is *not* the same thing as being the corporate successor to Mallory or to Mallory's obligations and liabilities under the Mallory Special Undertaking Contract.  KHFC is at best Gillette's indemnitor under the 1988 SPA and therefore should not be permitted to intervene in this case.

3.  <u>KHFC Mischaracterizes Its Prior Insurance Litigation</u>.  KHFC now argues that its interpretation of the 1988 SPA has been "judicially accepted" by other courts, citing a 2004 Indiana

---

³ Notably, the KHFC Reply fails to explain why a separate entity — The Kraft Heinz Company — assumed Gillette's defense and agreed to indemnify Gillette pursuant to its obligations under the 1988 SPA as the "successor to Kraft Inc."  *See* Exhibit 12 to Monsanto Resp. (ECF #125-12) at 1 ("[The] Kraft Heinz [Company], **as the successor to Kraft, Inc.**, agrees to indemnify and hold harmless [Gillette] . . . pursuant to [the 1988 SPA]") (emphasis added).  This omission casts further doubt as to whether KHFC is even the proper successor to Kraft Inc.'s indemnity obligations under the 1988 SPA (another *legal conclusion* that KHFC asks this Court to accept).

- 4 -

trial court order in *P.R. Mallory & Co. v. Am. States Ins. Co.*, No. 54C01-0005-CP-00156, 2004 WL 1737489 (Ind. Cir. Ct. July 29, 2004). *See* KHFC Reply (ECF #128) at 2 (emphasis removed). Once again, KHFC gets it wrong and takes a position directly inconsistent with Kraft Global's briefing in *Stoll*. Although the Indiana trial court allowed Kraft Global to recover under certain historic Mallory insurance policies, it explicitly found that Kraft Global was *not* a "corporate successor to Mallory" under the traditional definition of "corporate successor." *Am. States Ins.*, 2004 WL 1737489, at *5 ("While Kraft is neither a product-line successor **nor a corporate successor to Mallory**, the right to insurance coverage can transfer to Kraft as a successor to the reserved policy rights of Mallory by operation of law.") (emphasis added).[4] Kraft Global described the Indiana trial court's decision the same way in its briefing in *Stoll*, stating that the court "previously evaluated" the issue of corporate succession and "**conclusively held that Kraft [Global] was not a corporate successor to Mallory**." *See* Exhibit 1 to Monsanto's Response (ECF #125-1) at 14 (emphasis added).

KHFC tells this Court that it should ignore the briefing in *Stoll* as a "mistaken[] attempt[]" by Kraft Global's "outside counsel" (lawyers from the venerable Chicago-based law firm of Jenner & Block no less) "to deny that Kraft [Global] was responsible for alleged Mallory liabilities." KHFC Reply (ECF #128) at 5. Setting aside the pure absurdity of that assertion,[5] KHFC fails to

---

[4] *See also id*. at *9 ("As the term 'corporate successor' is used in the cases cited by ACE-Related Defendants, **Kraft was never the corporate successor to Mallory**. Kraft did not acquire Mallory's rights through the merger of the two corporations. Kraft did not dissolve Mallory upon its stock purchase and absorb all of Mallory's assets. The corporate history shows that Mallory/Duracell and Kraft remain as separate corporations, as Duracell exists today as a subsidiary of Gillette. Kraft also **did not** acquire its rights in the Mallory and Dart line of cases by 'operation of law,' **resulting from corporate succession**.") (citations omitted) (emphasis added).

[5] For example, baked into KHFC's statement are the assumptions that Kraft Global had no oversight or control over its "outside counsel," did not participate in developing the defense strategy in *Stoll* (a large putative class action), and did not review the *Stoll* briefs before they were filed. KHFC also asks the Court to believe that Kraft Global's "outside counsel" did not understand the historic insurance litigation. Even a cursory reading of the *Stoll* reply brief—which analyzes the prior insurance litigation—confirms that was not the case. *See* Exhibit 2 to Monsanto's Response (Doc. #125-2) at 3-5.

identify anything that Kraft Global's lawyers purportedly got wrong in *Stoll*. It cannot be the facts regarding Mallory's corporate history because KHFC does not dispute those in its Reply. So KHFC must be referring to the *legal conclusion* that Kraft Global's lawyers drew from those undisputed facts—i.e., that Kraft Global was *not* a corporate successor to Mallory's liabilities. But the position taken by Kraft Global in the *Stoll* briefing is not wrong simply because it conflicts with the position KHFC has taken here (or in any other litigation). Nor does Kraft Global's decision to withdraw its motion for summary judgment in *Stoll* and concede the issue of corporate succession in that case mean that its lawyers were mistaken.[6] As detailed above, and in Monsanto's Opposition to KHFC's Motion, the position taken by Kraft Global's lawyers in the *Stoll* briefing is the only position supported by the undisputed facts.[7]

---

[6] Notably, Kraft Global did not allude to an underlying mistake of fact or explain why it subsequently revised its legal conclusion regarding its successor status in its Motion to Partially Withdraw Summary Judgment Motion and Supporting Briefs or the Motion for Leave to Amend Responses to Plaintiffs' Requests For Admission filed in *Stoll*. *See Stoll*, Case No. 1:09-cv-0364 TWP-DML (ECF #152, 153). It appears from the docket that these were strategic decisions driven (at least in part) by a deposition notice issued by the plaintiffs for the deposition of Thomas Giller. *See Stoll*, Kraft Global's Mem. of Law in Supp. of Motion for Protective Order, Case No. 1:09-cv-0364 TWP-DML (ECF #155) at 1 (arguing that there was no longer a reason to re-depose Mr. Giller because "the successor liability issue that plaintiffs seek to re-depose Mr. Giller on will no longer be at issue in this case following Kraft [Global's] withdrawal of its Motion for Summary Judgment on successor liability issues and amendment of its Responses to Plaintiffs' Requests for Admission"). Kraft Global filed its Motion for Protective Order with regard to the deposition of Mr. Giller the same day (January 18, 2011) that it filed its Motion to Partially Withdraw its Summary Judgment Motion and Motion for Leave to Amend Responses to Plaintiffs' Requests For Admission. The parties also appear to have participated in a settlement conference two days later and then, as KHFC states in its Reply, "promptly settled" the case. *See* KHFC Reply (ECF #128) at 6; *see also Stoll*, Order Scheduling Status Conference, Case No. 1:09-cv-0364 TWP-DML (ECF #159) (February 7, 2011 order scheduling status conference "to address the parties' settlement agreement"); *Stoll*, Plaintiffs' Agreed Motion For Preliminary Approval Of Class Action Settlement, Case No. 1:09-cv-0364 TWP-DML (ECF #162) (filed on February 10, 2011).

[7] KHFC's reliance on the Statement of Confirmation (Exhibit A to KHFC Reply (ECF #128-1)), prior insurance litigation, corporate testimony, and an expert report in another case is similarly misplaced. KHFC Reply (Doc. #128) at 2-4. Statements made by Kraft or Gillette long *after* the 1988 stock sale are legal conclusions that have no evidentiary value with regard to the meaning of the 1988 SPA. The same is true of the Coates Expert Report, which Kraft Global itself argued in *Stoll* was "silent as to the issue of successor liability" and "limited to whether the corporate transactions by which the ownership and control of Mallory transferred to Dart, Dart & Kraft Inc., and Duracell Holdings Corporation constituted prohibited 'assignments of interest' under the Mallory insurance policies." Exhibit 2 to Monsanto Response (ECF #125-2) at 7. Finally, as explained by Kraft Global in *Stoll*, the prior insurance litigation by Kraft-related entities was about the "contractual right to assert claims for insurance coverage for environmental liabilities related to historical Mallory operations" and had nothing to do with whether KHFC (or any other Kraft-related entity) assumed historic Mallory liabilities. *See id.* at 1-2 ("The positions advocated by Kraft [Global] in the underlying insurance litigation were predicated on Kraft [Global's] ***contractual right to assert claims for insurance coverage*** for environmental liabilities related to historical Mallory operations.") (emphasis added; *id.*

\* \* \*

For these additional reasons, Monsanto respectfully requests that the Court deny KHFC's Motion.

Respectfully Submitted,

THOMPSON COBURN LLP

By: /s/ Christopher M. Hohn
Christopher M. Hohn #44124
Nicholas J. Lamb #33486
David M. Mangian #61728
Nicholas Schnell #73932
Brittney K. Mollman #65745
One U.S. Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000 (Telephone)
(314) 552-7000 (Facsimile)
chohn@thompsoncoburn.com
nlamb@thompsoncoburn.com
dmangian@thompsoncoburn.com
nschnell@thompsoncoburn.com
bmollman@thompsoncoburn.com

*Attorneys for Plaintiffs Monsanto Company, Pharmacia, LLC, and Solutia, Inc.*

---

at 4 ("As discussed above, the pleadings and other materials that plaintiffs content contain damaging Kraft [Global] admissions actually relate to Kraft [Global's] ***contractual rights to assert coverage claims*** with respect to Mallory's historical environmental obligations . . . .") (emphasis added).

- 8 -

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing has been filed with the Court for service on all counsel of record via the Court's CM/ECF system on November 17, 2023.

/s/ Christopher M. Hohn