**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MONSANTO COMPANY,<br>PHARMACIA, LLC, and<br>SOLUTIA, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>MAGNETEK, INC.,<br>GENERAL ELECTRIC CO.,<br>PARAMOUNT GLOBAL,<br>KYOCERA AVX COMPONENTS CORPORATION,<br>CORNELL DUBILIER ELECTRONICS, INC., and THE GILLETTE COMPANY, LLC,<br><br>Defendants. | CASE NO: 4:23-cv-00204-JMD |

**<u>Declaration of Erik D. Nadolink</u>**

I, Erik D. Nadolink, declare as follows:

1. I am over twenty-one years of age, of sound mind, and competent to testify. Unless otherwise stated, I have personal knowledge of the facts stated in this declaration.

2. I am an attorney licensed to practice before all courts of the State of Colorado. I am admitted pro hac vice in this Court for this matter. I am a partner in the law firm of Wheeler Trigg O'Donnell LLP, which is counsel for Defendant General Electric Company ("GE").

3. Attached as Exhibit 1 is a March 8, 1940 letter with a request from Major Washburn of the Army Signal Corp for Pyranol capacitors and approval of purchase by Order of the Chief Signal Officer. As discussed in GE's Notice of Removal, Pyranol was the

trade name for GE's proprietary PCB-containing dielectric fluid. (ECF 1 ¶ 21.) GE obtained Exhibit 1 through its search of federal government archives.

4. Attached as Exhibit 2 is an October 4, 1942 GE Application for a Necessity Certificate to the U.S. War Department. GE sought to expand its Pyranol capacitor manufacturing facilities for the Federal Government during World War II, explaining that 100% of the plant's Capacitor Department capacity was devoted to supplying equipment for the war effort, and no other facilities were available to increase production. (Ex. 2 at 3.) GE obtained Exhibit 2 through its search of federal government archives.

5. Attached as Exhibit 3 is teletype correspondence from November 1942 in which the U.S. Naval Bureau of Ordinance approves GE Pyranol transformers for purchase by the Naval Ammunition Depot in Hawthorne, Nevada. Each route slip specifies that the transformer Pyranol was "purchased from GE." (*See* Ex. 3 at 4-6.) The U.S. Navy required GE PCB-containing transformers at government facilities during World War II and purchased such transformers from GE. GE obtained Exhibit 3 through its search of federal government archives.

6. Attached as Exhibit 4 is a July 9, 1943 GE Application for a Necessity Certificate to the U.S. War Department. This time, GE sought to expand facilities to manufacture dielectric material to satisfy government contracts for hundreds of thousands of capacitors for the U.S. Armed Forces during World War II. (Ex. 4 at 1.) The application also states that the Federal Government provided over $14 million to fund GE's prior facility expansion. (*See id.* at 3.) GE obtained Exhibit 4 through its search of federal government archives.

7. Attached as Exhibit 5 is an excerpt of Volume 2 of the United States Civilian Production Administration's Alphabetic Listing of Major War Supply Contracts, June 1940 through September 1945. The selected page indicates that GE held multiple contracts to

supply transformers and capacitors to the Federal Government to support the war effort, including the Army Corps of Engineers, Navy Bureau of Ordnance, and the Department of the Treasury. GE obtained Exhibit 5 through its search of federal government archives.

8. Attached as Exhibit 6 is a June 15, 1945 compilation prepared by the U.S. War Production Board listing authorized war manufacturing facilities financed with public and private funds through December 1944. The ledger states that the Navy provided over $14 million to fund the expansion of GE's facility in Pittsfield, MA, with capacity to produce 2.5 million capacitors and 18,200 "modulators and transformers" per quarter for the Navy. (Ex. 6 at 1.) GE obtained Exhibit 6 through its search of federal government archives.

9. Attached as Exhibit 7 is a March 26, 1952 Navy Ship Parts Control Center letter to Newport News Supervisor of Shipbuilding. The Navy sought to secure equipment from GE for an aircraft carrier. The enclosed Stock Repair Parts List shows that capacitors were required for each of the 16 voltage regulators for each of the 8 separate ship's service generators aboard the ship. (Ex. 7 at 2.) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett (*See* December 9, 2025 Affidavit of Rear Admiral John B. Padgett ("Padgett Affidavit") at ¶¶ 36-37.) GE obtained Exhibit 7 through its search of federal government archives.

10. Attached as Exhibit 8 is a December 31, 1952 Navy Inspector of Machinery letter to the Bureau of Ships and the Supervisor of Shipbuilding forwarding GE's progress report for the voltage regulators discussed in Exhibit 7. The document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (Padgett Aff. at ¶ 37.) GE obtained Exhibit 8 through its search of federal government archives.

11. Attached as Exhibit 9 is a November 16, 1955 Navy Report of Preliminary Acceptance Trials and Material Inspection for the aircraft carrier U.S.S. Forrestal. The report memorializes the Board of Inspection's inspection and findings supporting

preliminary acceptance of the ship, including with respect to the ship's eight GE service generators and three emergency generators. (Ex. 9 at 34 (Section VIII-1).) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. ¶ 37.) GE obtained Exhibit 9 through its search of federal government archives.

12. Attached as Exhibit 10 is the June 12, 1956 Navy Report of Final Acceptance for the U.S.S. Forrestal. The report confirms that the GE generators' operation and material condition were excellent. (Ex. 10 at 31-32 (VIII-1 to VIII-2).) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. ¶ 37.) GE obtained Exhibit 10 through its search of federal government archives.

13. Attached as Exhibit 11 is a Federal Supply Catalog for Petroleum, Petroleum-Base Products, and Related Material dated August 1958. The catalog's purpose was to identify and provide supply management data for "items normally required" by the military. (Ex. 11 at 4.) The catalog identifies the approved insulating fluid with PCBs under federal stock number 9160-664-0051. (*Id.* at 63.) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. at ¶ 33.) GE obtained Exhibit 11 through its search of federal government archives.

14. Attached as Exhibit 12 is a February 1961 Federal Supply Catalog for Petroleum, Petroleum-Base Products, and Related Material. The catalog's purpose is to identify and provide supply management data of "items normally required" by the military. (Ex. 12 at 3.) The earlier entry for approved insulating material with PCBs in Exhibit 11 has been revised to specify that the required material was GE's "Transformer Pyranol 1467" or Monsanto's "Askarel 1467." (*Id.* at 62.) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. at ¶ 34.) GE obtained Exhibit 12 through its search of federal government archives.

15. Attached as Exhibit 13 is Federal Specification VV-I-1219 dated March 24, 1967. This federal specification governs the materials, performance, quality assurance, and labeling for noncombustible insulating electrical fluid for military and civilian federal agencies. Section 3.1 mandates the noncombustible insulating fluid "shall be a synthetic, non-flammable, electrical insulating and cooling liquid **of the chlorinated aromatic hydrocarbon type**." (Ex. 13 at 2 (emphasis added).) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. at ¶ 35.) GE located this document through its search for supplemental information relevant to this Court's jurisdiction.

16. Attached as Exhibit 14 is Standard Specification 54.090 from the Tennessee Valley Authority (an executive agency governed by a presidentially appointed board) dated May 10, 1968. The TVA's "Capacitor Design Data" called for the use of "Monsanto Aroclor 1242"—a PCB-containing dielectric fluid. Paramount located this document through its search for supplemental information relevant to this Court's jurisdiction.

17. Attached as Exhibit 15 is an Invitation, Bid, and Acceptance dated April 10, 1970, between the TVA and Westinghouse Electric Corporation (predecessor to Defendant Paramount) for capacitor equipment. The contract provides the performance standards and some delivery requirements for the units. (Ex. 15 at 3.) It also states that TVA's specifications would control in case of any conflicts with Westinghouse's bid. (*Id.*) It mandates all equipment comply with IEEE and NEMA standards, plus TVA's Standard Specification 54.090. (*Id.*; *see* Ex. 14.) Westinghouse had to provide drawings on all items to be reviewed and approved by TVA's engineer. (Ex. 15 at 21.) The contract incorporated restrictions from the Walsh-Healy Act on whom Westinghouse could employ, the hours they could work, and the minimum wages Westinghouse had to pay them. (*Id.* at 24.) Paramount

located this document through its search for supplemental information relevant to this Court's jurisdiction.

18. Attached as Exhibits 16, 17, and 18 are similar examples from July 27, 1970, August 24, 1970, and August 26, 1970. Exhibits 16, 17, and 18 each incorporate TVA's Standard Specification 54.090. (*See* Ex. 16 at 3; Ex. 17 at 5; Ex. 18 at 3.) Paramount located this document through its search for supplemental information relevant to this Court's jurisdiction.

19. Attached as Exhibits 19 and 20 are acknowledgments of Tennessee Valley Authority capacitor orders by the Westinghouse regional office dated April 29, 1970, and October 6, 1970. The acknowledgments state that the capacitors must be "in <u>strict accordance</u> with . . . TVA Standard Specification 54.090 (5-10-68)." (Ex. 19 at 4; Ex. 20 at 5.) Paramount located this document through its search for supplemental information relevant to this Court's jurisdiction.

20. Attached as Exhibits 21 and 22 are Drawing Transmittals dated November 25, 1970, and March 29, 1971, from Westinghouse. The transmittals indicate that drawings of capacitor equipment are released for manufacture for the Tennessee Valley Authority "in accordance with . . . TVA standard spec. 54.090 (5/10/68)." (Ex. 21 at 1; Ex. 22 at 1.) Paramount located this document through its search for supplemental information relevant to this Court's jurisdiction.

21. Attached as Exhibit 23 is a letter stamped March 26, 1974, from the Department of the Navy to GE concerning the Navy's "purchase of askarel liquids such as Pyranol." (Ex. 23 at 1.) The Navy acknowledged that it and other Department of Defense agencies "have a substantial number of transformers and electrical devices in which the use of askarel rather than ordinary transformer oil is essential." (*Id.*) The Federal Government needed GE to provide "the supplies necessary to keep [those components] operational." (*Id.*)

Finally, the Navy suggested contract language to protect GE from the Federal Government's use of GE's products, noting "it would be difficult to imagine a situation whereby a third party could legally hold [GE] liable for injuries resulting from the Government's handling and use" of GE's insulating fluids. (*Id.* at 1-2.) This document is further discussed in the Affidavit of Rear Admiral John B. Padgett. (*See* Padgett Aff. at ¶ 32.) GE located this document through its search for supplemental information relevant to this Court's jurisdiction.

22. Attached as Exhibit 24 is a June 26, 1987 memorandum from the Department of the Navy to the Judge Advocate General regarding the investigation into a PCB oil spill from a ruptured GE Pyranol transformer that had been in service for more than three decades at the Navy's Piti power plant. GE located this document through its search for supplemental information relevant to this Court's jurisdiction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2025

By: */s/ Erik D. Nadolink*
Erik D. Nadolink